No. _____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

WILHEN HILL BARRIENTOS, MARGARITO VELAZQUEZ-GALICIA, and
SHOAIB AHMED, individually and on behalf of all others similarly situated,

*Plaintiffs/Respondents*,

v.

CORECIVIC, INC.,

*Defendant/Petitioner.*

**On Certified Order from the District Court
for the Middle District of Georgia, Columbus Division,
No. 4:18-cv-00070-CDL**

**PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

CURRY LAW FIRM
Stephen E. Curry
3508-C Professional Circle
Augusta, Georgia 30907-8232
(706) 724-0022
*Attorneys for Defendant/Petitioner
CoreCivic, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE
DISCLOSURE STATEMENT ..................................................................C-1

INTRODUCTION ...................................................................................1

BACKGROUND ......................................................................................3

QUESTION PRESENTED .......................................................................8

REASONS TO GRANT THE PETITION ................................................8

    I.     The Petition Presents a Controlling Question of Law.........................8

    II.    There Is Substantial Ground for Difference of Opinion ......................9

         A.    Courts Must Construe Statutes Sensibly and
               Avoid Interpretations that Lead to Extreme or
               Absurd Results ...........................................................10

         B.    The TVPA Does Not Extend to Labor Performed
               by Immigration Detainees in Lawful Custody of
               the United States Government .................................13

    III.   This Appeal Will Materially Advance the Ultimate
         Termination of this Litigation ............................................21

RELIEF REQUESTED...........................................................................22

CERTIFICATE OF COMPLIANCE......................................................24

CERTIFICATE OF SERVICE ..............................................................24

EXHIBIT 1:  Order denying Defendant's Motion to Dismiss with Certificate for
Immediate Appeal [Doc. #38], filed August 17, 2018

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Acedo, Nicholas D.

Ahmed, Shoaib

Avalon Correctional Services, Inc.

Barrientos, Wilhen Hill

Bhatt, Priyanka

Burns Charest LLP

Burns, Warren T.

CCA South Texas, LLC

CCA UK Ltd.

Charest, Daniel H.

CoreCivic, Inc. ("CXW")

CoreCivic, LLC

CoreCivic of Kansas, LLC

CoreCivic of Tallahassee, LLC

CoreCivic TRS LLC.

Correctional Alternatives, LLC

Correctional Management, Inc.

Curry Law Firm

Curry, Stephen E.

C-1

Free, R. Andrew

Hesman, Ashlee B.

Hoosier One Investments, LLC

Land, Honorable Clay D.

Law Office of R. Andrew Free

Lee, Jacob B.

Lopez, Bryan

Love, Rachel

Nelson, Korey Arthur

Project South

Rivera, Laura G.

Shahshahani, Azadeh N.

Southern Poverty Law Center

Stewart, Meredith Blake

Struck, Daniel P.

Struck Love Bojanowski & Acedo, PLC

Time to Change, Inc.

Velazquez-Galacia, Margarito

Werner, Daniel

Wright, Lydia Anne

## INTRODUCTION

For decades, the federal government has partnered with private contractors like CoreCivic, Inc. to detain individuals awaiting immigration determinations. These private detention facilities are operated in strict compliance with federal requirements and standards.  Recently, however these partnerships have come under attack by immigration and other advocacy groups.  The underlying lawsuit is one of *six* copycat lawsuits—in the past year alone—filed in district courts across the country that attempt to erode those partnerships.[1]

At issue is the propriety of the federally mandated voluntary work programs at these facilities.  Congress recognized the necessity of these programs in 1950, when it authorized the federal government to pay allowances for labor performed by immigration detainees. *See* 8 U.S.C. § 1555(d). And in 1978, Congress appropriated up to $1 per day for such labor.  The plaintiffs in these lawsuits—former and current immigration detainees—claim, however, that Congress's subsequent enactment of the Trafficking Victims Protection Act ("TVPA") in 2000 criminalizes their labor if they allege it was forced.  The district court seemingly

---

[1] *See Martha Gonzalez v. CoreCivic, Inc.*, No. 1:18-cv-00169-LY (W.D. Tex. 2018); *Carlos Gonzalez v. CoreCivic, Inc.*, No. 3:17-cv-02573-JLS-NLS (S.D. Cal. 2018); *Novoa v. The GEO Group, Inc.*, No. 5:17-cv-02514-JGB-SHK (C.D. Cal. 2017); *Owino v. CoreCivic, Inc.*, No. 3:17-cv-01112-JLS-NLS (S.D. Cal. 2018); *Nwauzor v. The GEO Group, Inc.*, No. 3:17-cv-05769-RJB (W.D. Wash. 2017); *see also Washington v. The GEO Group, Inc.*, No. 3:17-cv-05806-RJB (W.D. Wash. 2017).

recognized that Congress could not have foreseen application of the TVPA in this context and that its application may be an "absurd public policy result," but it felt constrained by the statute's plain language.   (Ex. 1 at 9: "Congress … chose instead to broadly prohibit 'whoever' from 'obtain[ing]' labor' by any of the proscribed means") (quoting 18 U.S.C. § 1589(a).)

But the district court could have *and should have* employed other statutory-construction principles to discern and effectuate Congress's intent, and to avoid an extreme or absurd and unjust interpretation of a criminal statute.   Had the district court peeked behind the literal text of the statute and considered Congress's stated purpose—which it was permitted to do—it could have followed its intuition and appropriately cabined the statute's reach:   Congress did not intend for the statute to apply to labor performed by immigration detainees in the custodial setting.   The district court did recognize, however, that this issue is so significant and consequential that it sua sponte certified it for immediate appeal.

As discussed below, this Petition presents a purely legal question, for which there is substantial ground for difference of opinion, and an immediate appeal will materially advance the ultimate termination of the underlying litigation.   In fact, resolution of this issue now will likely save a significant amount of litigation and judicial resources in this Circuit prospectively. There are 129 immigration detention centers across the country. *See Detention Facility Locator*, U.S.

Immigration and Customs Enforcement, https://www.ice.gov/detention-facilities (last visited August 27, 2018) (select Search by State: Any). There are 11 detention facilities in the Eleventh Circuit alone. *See id.*, https://www.ice.gov/detention-facilities (search Alabama, Florida, and Georgia). Six of those facilities are privately operated. The detention facility at issue in this case is just one of many. Given the frequency in which these claims have been raised already, it will not be long before more lawsuits are filed in this Circuit.

## BACKGROUND

Plaintiffs are current or former immigration detainees detained at the Stewart Detention Center ("SDC") in Lumpkin, Georgia. (Dkt. 1, ¶¶ 1, 9-10, 14.) CoreCivic, Inc. operates SDC and detains immigrants awaiting immigration determinations "on behalf of" the federal government—and specifically the United States Immigration and Customs Enforcement ("ICE")—pursuant to an intergovernmental service agreement. (*Id.*, ¶¶ 12-13.) Plaintiff Wilhen Hill Barrientos, a citizen of Guatemala, is seeking asylum in the United States and has been at SDC intermittently since July 2015; Plaintiff Margarito Velazquez Galicia, a citizen of Mexico, is seeking relief from deportation and has been at SDC since January 2018; and Plaintiff Shoaib Ahmed, a citizen of Bangladesh, was at SDC from August 2017 to February 2018. (*Id.*, ¶¶ 9-11.)

Plaintiffs allege they are or were employed as kitchen workers at SDC and paid between $1 and $4 per day as part of the facility's Voluntary Work Program ("VWP"). (Dkt. 1, ¶¶ 9-11.) ICE requires its contracted facilities to have a VWP. *See* INS National Detention Standards – Voluntary Work Program (Sept. 28, 2000), https://www.ice.gov/doclib/dro/detention-standards/pdf/work.pdf, and ICE Performance-Based National Detention Standards 2011, § 5.8, at 406 (2016 ed.), https://www.ice.gov/doclib/detention-standards/2011/5-8.pdf. The purpose of the VWP is to reduce the negative impact of confinement through "decreased idleness, improved morale and fewer disciplinary incidents." (*Id.* at 405.) Detainees who participate in the VWP must "sign a voluntary work program agreement" and are paid "at least $1.00 (USD) per day." (*Id.* at 407-408.) Detainees can also volunteer for "temporary work details," which "may involve labor-intensive work."[2] (*Id.*) Although detainee participation in the VWP is voluntary and a

---

[2] According to Plaintiffs, participants in the VWP do the following: (a) scrub bathrooms, showers, toilets, and windows; (b) clean and maintain CoreCivic's on-site medical center; (c) clean patient rooms and medical staff offices; (d) sweep, mop, stripe, and wax floors; (e) wash detainees' laundry; (f) prepare, cook, and serve meals; (g) wash dishes; (h) clean the kitchen and cafeteria before and after meals; (i) perform clerical work; (j) provide barber services to detainees; (k) clean intake areas and solitary confinement units; and (l) clean and maintain recreational areas. (Dkt. 1, ¶ 30.)

detainee can stop participating at any time, ICE requires detainees "to do personal housekeeping."[3]  (*Id*. at 405-06.)

Plaintiffs allege, however, that participation in the VWP "is not 'voluntary' in any meaningful sense."  (Dkt. 1, ¶¶ 1, 36.)  According to Plaintiffs, CoreCivic deprives detainees "basic necessities like food, toothpaste, toilet paper, and soap – and contact with loved ones – so that they have to work in order to purchase those items and costly phone cards at CoreCivic's commissary."  (*Id*., ¶¶ 1, 36-39, 44-47.) They further allege that CoreCivic threatens detainees who refuse to participate in the voluntary work program with "'disciplinary segregation' (i.e., solitary confinement), criminal prosecution, downgrading the detained immigrants' housing, and/or revoking access to the commissary, among other sanctions."  (*Id*., ¶¶ 1, 48-58.)

Plaintiffs filed a complaint on behalf of themselves and "all others similarly situated," alleging that their forced participation in the VWP violates the TVPA, 18 U.S.C. § 1589.  (Dkt. 1, ¶¶ 1-2, 26, 32, 93, 103-111.)  They request declarative and injunctive relief, as well as exemplary, compensatory, and punitive damages.  (*Id*., ¶¶ 114-115 & at 29-30.) They also raise a state-law claim for unjust

---

[3] This Court may take judicial notice of these documents, which Plaintiffs refer to in their Complaint and are central to their claim. (Dkt. 1, ¶¶ 28 & n.18.) *See FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1297 (11th Cir. 2011).

enrichment and request disgorgement of any profits resulting from their labor.  (*Id.*, ¶ 122.) The putative class is defined as "[a]ll civil immigration detainees who performed work for CoreCivic at Stewart in the 'Volunteer Work Program' within the past ten years, up to the date the class is certified."  (*Id.*, ¶ 94(a).)[4]

CoreCivic moved to dismiss the TVPA claim, arguing that Congress did not intend for it to apply in the context of labor performed by immigration detainees in lawful custody of the United States government. (Dkt. 30-1.) The lack of congressional intent is supported by: (1) the codified purpose of the statute (to prosecute and deter human trafficking); (2) established federal common law (predating the TVPA) that allows detention facilities and prisons to require detainees/inmates to perform the type of labor alleged in the complaint; and (3) other federal statutes/regulations that are consistent with this non-intent.

The district court denied the motion, relying solely on a literal application of the statute's plain text, finding "CoreCivic points to no particular word or phrase in the TVPA that it claims must be corrected."  (Dkt. 38, attached as Ex. 1, at 9-10.) It did so despite acknowledging that: "CoreCivic's argument has superficial appeal and some support from the TVPA's legislative history"; "one can speculate that Congress did not foresee the application of its plain language to these

---

[4] Plaintiffs seek to certify a second identical class for their unjust-enrichment claim.  (Dkt. 1, ¶ 94(b).)

circumstances"; and that application of the TVPA to this case may be "an unintended consequence or even an absurd public policy result." (*Id*. at 11.) Nonetheless, it concluded, "Congress is alone responsible for any such absurdities and lack of legislative foresight."[5] (*Id*.)

Despite denying the motion, the district court determined that "given the nature of the issue to be decided on appeal and the implications of [its] ruling"— including extensive fact discovery and class certification proceedings—an immediate appeal from the TVPA ruling is appropriate pursuant to 28 U.S.C. § 1292(b). (Dkt. 38 at 17.) "If the Court's conclusion is wrong and the primary (maybe only) basis for federal jurisdiction is removed, these subsequent proceedings will have been for naught." (*Id*. at 16.) It expressly found that the issue "is a controlling question of law as to which there is substantial ground for difference of opinion," and that "an immediate appeal may materially advance the ultimate termination of the litigation." (*Id*.) CoreCivic timely filed this Petition. *See* 28 U.S.C. § 1292(b).

---

[5] CoreCivic also moved to dismiss the unjust-enrichment claim. (Dkt. 30-1.) The district court denied that aspect of the motion as well. (Dkt. 38 at 16.)

## QUESTION PRESENTED

The district court certified the following issue for immediate appeal: "Whether the TVPA applies to work programs in federal immigration detention facilities operated by private for-profit contractors."  (Dkt. 38 at 16.)

## REASONS TO GRANT THE PETITION

An immediate appeal from an interlocutory order is appropriate if the appeal "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion" and "[3] may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see OFS Fitel, LLC v. Epstein, Becker and Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008).  The district court's certification of these factors was "enough to give [this Court] discretion to exercise appellate jurisdiction now instead of waiting until after final judgment."  *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004).

## I.     The Petition Presents a Controlling Question of Law.

An issue is a "controlling question of law" if it is an "abstract legal issue" or "one of 'pure' law."  *McFarlin*, 381 F.3d at 1258 (quoting *Ahrenholz v. Bd. of Trustees of the Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000)).  The issue need not be dispositive to be a "controlling question."  *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702 n.10 (5th Cir. 1961).

This prong is easily satisfied.  The question here is a purely legal question: whether Congress intended for the TVPA to apply to work programs in federal immigration detention facilities.  *See Al-Amin v. Smith*, 637 F.3d 1192, 1195 (11th Cir. 2011) ("The interpretation of a federal statute is a question of law."). Moreover, because this appeal derives from the denial of a motion to dismiss, the allegations in the complaint constitute the entire record and must be taken as true. *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003).  Thus, the court need not "delve beyond the surface of the record in order to determine the facts."  *McFarlin*, 381 F.3d at 1259.

## II.     There Is Substantial Ground for Difference of Opinion.

A substantial ground for difference of opinion exists when this Court is presented with a question of law in which it is not in "complete and unequivocal agreement" with the district court and resolution of the issue is not "so clear." *McFarlin*, 381 F.3d at 1258.  This Court has also found this prong satisfied if the petition presents an issue of first impression.  *See*, *e.g.*, *Adams v. Florida Power Corp.*, 255 F.3d 1322, 1323 (11th Cir. 2001); *Ray v. Edwards*, 725 F.2d 655, 658 (11th Cir. 1984).  Under either formulation, this prong is satisfied here.

The district court concluded that "Plaintiffs have stated a claim for relief under the TVPA," relying exclusively on the plain language of the statute.  *See* 18 U.S.C. § 1589(a) (prohibiting "whoever" from "obtain[ing] labor" by force).  The

court refused to look beyond the plain language of the statute—for example, to its congressional history or purpose—apparently believing it could not do so because of commentary by Bryan Garner.  (Dkt. 38 at 9-11.)  That approach ignores well-defined principles of statutory construction and binding Supreme Court and Circuit precedent.  And when you consider the congressional history and purpose, it is clear that Congress could not have intended the statute to apply to labor performed by immigration detainees in the custodial setting.

### A.   Courts Must Construe Statutes Sensibly and Avoid Interpretations that Lead to Extreme or Absurd Results.

The Court's "ultimate goal [in statutory interpretation] is to give effect to congressional intent." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir. 1993).  Although a court should start with the plain language of the statute to discern Congress's intent, the analysis does not end there.  As this Court has recognized, courts may decline to apply the plain meaning of a statute "if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd." *Durr v. Shinseki*, 638, F.3d 1342, 1349 (11th Cir. 2011) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997).  Indeed, this Court has refused to adopt the plain meaning of a statute when doing so would lead to an absurd result. *See*, *e.g.*, *In re Lehman*, 205 F.3d 1255, 1257 (11th Cir. 2000); *Clark v. Riley*, 595, F.3d 1258, 1266-67 (11th Cir. 2010); *Durr*, 638 F.3d at 1349.

In *United States v. Katz*, 271 U.S. 354, 362 (1926), the Supreme Court applied this principle in interpreting a criminal statute and held that, where the literal application of a criminal statute "would lead to extreme or absurd results, and where the legislative purpose gathered from the whole act would be satisfied by a more limited interpretation," the "[g]eneral terms descriptive of a class of persons made subject to a criminal statute may and should be limited."  In fact, it has consistently refused to apply the plain language of a statute when necessary to avoid an absurd interpretation.  *See*, *e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 429 n.14 & 454-55 (1998); *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916); *United States v. Kirby*, 74 U.S. 482, 486–87 (1868).

Relying on commentary from Bryan Garner, the district court refused to go beyond the plain language of the statute because there was no word or phrase in the TVPA "whose inclusion or omission was obviously a technical or ministerial error." (Dkt. 38 at 10.)  But that limiting condition to the absurdity doctrine has never been recognized by this Court and it is contrary to the above authority.  In fact, the Supreme Court has disagreed with it.  *See Clinton*, 524 U.S. at 429 n.14 (rejecting dissenting opinion that there was "nothing so bizarre as to declare a 'scrivener's error'" in the statute so as to apply the absurdity doctrine).  And to the extent it is a limiting principle, its application is limited to typographical errors. *See Lehigh v. Comm'r, Soc. Sec. Admin.*, 6:16-CV-0902-JR, 2017 WL 4324545, at

*2 n.2 (D. Or. Sept. 5, 2017), *report and recommendation adopted*, 6:16 CV 00902-JR, 2017 WL 4322819 (D. Or. Sept. 25, 2017) (noting that Garner's limiting exception to the absurdity doctrine applies to typographical errors).

The district court also misconstrued CoreCivic's argument.   CoreCivic's argument is *not* that any one word within the statute must be construed contrary to its plain meaning.  Indeed that would violate another principle of statutory construction: "[w]e do not look at one word or term in isolation, but instead we look to the entire statutory context."  *U.S. v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999).  It is that Congress could not have intended the statute to apply to labor in the custody setting.   Indeed, at least three courts have veered from the plain language of the TVPA.  *See United States v. Toviave*, 761 F.3d 623, 630 (6th Cir. 2014) (holding that the TVPA did not apply in the case of a man who forced children in his care to do household chores); *United States v. McTague*, No. 5:14-CR-055, 2017 WL 1378425, at *5 (W.D. Va. Apr. 10, 2017) (refusing to literally apply plain language of TVPA, explaining "fundamentally, the omitted meaning of which the defendants complain may be reliably supplied by common sense" and that "[t]he alternative is absurd" because it would effectively remove criminal assault which forces a victim to perform involuntary labor from the statute's protection); *Plaintiff A v. Schair,* No. 2:11-CV-00145-WCO, 2012 WL 12864367, at *3 (N.D. Ga. Nov. 28, 2012) (refusing to literally apply plain meaning of "any"

to stay a civil action for damages under Section 1595(a) pending a foreign prosecution, noting "the legislative history underlying the TVPA's stay provision supports an interpretation that 'any' is limited to any *federal* criminal prosecution") (emphasis in original).   The district court's refusal to look beyond the plain language is contrary to these authorities.

### B.   The TVPA Does Not Extend to Labor Performed by Immigration Detainees in Lawful Custody of the United States Government.

Had the district court looked beyond the plain language of the statute, it would have concluded that Congress did not intend for it to apply to this case. Congress enacted the TVPA in 2000.  Congress explicitly declared that the purpose of the TVPA was "to combat *trafficking in persons*, a contemporary manifestation of *slavery* whose victims are predominantly women and children, to ensure just and effective punishment of *traffickers*, and to protect their victims."  Pub. L. No. 106-386, § 102, 114 Stat. 1488 (2000) (emphasis added).  That stated purpose was supported by twenty four (24) congressional findings, all of which focused on the evils of "trafficking of persons" and "slavery" and punishing those who participate in the "trafficking scheme."  *Id.*  The TVPA's purpose and findings are codified at 22 U.S.C. § 7101.

Given the TVPA's express purpose to eradicate modern-day slavery and target, prosecute, and deter human traffickers—those who transport persons "across international borders" or take them "from their home communities to

unfamiliar destinations" and force them to work—Congress could not have intended the TVPA to apply in the context of labor performed by immigration detainees in lawful custody of the federal agency obligated to detain them.[6] Applying the TVPA in that context would go far beyond Congress's stated (and codified) intent. Neither ICE nor CoreCivic is engaged in a trafficking scheme or criminal enterprise to enslave immigrants. ICE "is the federal agency 'responsible for the apprehension and detention of inadmissible and deportable aliens." *Doe v. Neveleff*, A-11-CV-907-LY, 2013 WL 489442, at *1 (W.D. Tex. Feb. 8, 2013), *report and recommendation adopted*, A-11-CV-907-LY, 2013 WL 12098684 (W.D. Tex. Mar. 12, 2013) ("*Doe I*") (quoting *Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland Sec.*, 711 F. Supp. 2d 697, 703 (S.D. Tex. 2008)); *see also Adras v. Nelson*, 917 F.2d 1552, 1553 (11th Cir. 1990) (Immigration and Naturalization Service responsible for alien detention). Its authority derives from Congress. *See* 8 U.S.C. § 1103(a); 8 C.F.R. Part 236.

Here, ICE was engaged in that statutorily mandated duty. It did not remove Plaintiffs from their homes and bring them to Georgia. Moreover, ICE contracted

---

[6] Plaintiffs and the district court improperly focused on the "who" (the perpetrator) and not the "what" (the conduct—"labor or services"). Moreover, CoreCivic does not argue that the TVPA is limited to only cases involving international trafficking victims. The Court need not reach that conclusion to deny Plaintiffs' claim. CoreCivic's argument is that Congress did not intend for the statute to criminalize labor or services in the custodial setting, irrespective of who has physical custody or the purported victim's origin.

with CoreCivic to "detain immigrants on behalf of ICE." (Dkt. 1, ¶¶ 13, 25.)  In

housing immigration detainees (and Plaintiffs), CoreCivic was "performing a

federal function." *Doe v. United States*, 831 F.3d 309, 316-17 (5th Cir. 2016)

("*Doe II*"); *see also Doe I*, 2013 WL 489442, at *13 ("There is no dispute that

CCA carried out purely federal functions at the Hutto facility.").  Nothing in the

TVPA demonstrates a clear expression of intent by Congress to impinge upon

ICE's authority to detain immigration detainees and transform into a federal crime

the work performed by federal detainees pursuant to the terms of their detention.

Indeed, the labor and services alleged by Plaintiffs—e.g., cleaning the

facility, laundry, preparing and serving food, etc.—are the type that courts have

found are expected to be performed by detainees in custody.  *See Toviave*, 761

F.3d at 625.  For example, in *Channer v. Hall*, 112 F.3d 214, 215 (5th Cir. 1997),

an immigration detainee alleged federal officials "compel[ed] him to work in the

Food Services Department while he was an INS detainee," in violation of the

Thirteenth Amendment (involuntary servitude). The detainee alleged he was

"intimidated and threatened with solitary confinement if he failed to work."  *Id*. at

218.  The Fifth Circuit held that the detainee was not subjected to involuntary

servitude because "the federal government is entitled to require a communal

contribution by an INS detainee in the form of housekeeping tasks."  *Id*. at 218-19

(citing *United States v. Kozminski*, 487 U.S. 931, 943 (1988)).  The court relied on

other cases that exempted housekeeping chores by civil detainees, such as "fixing meals, scrubbing dishes, doing the laundry, and cleaning the building." *Id*. at 219 (citing *Bayh v. Sonnenburg*, 573 N.E.2d 398 (Ind. 1991); *Jobson v. Henne*, 355 F.2d 129 (2d Cir. 1966)); *see also Owuor v. Courville*, 2:11-CV-926, 2013 WL 7877306, at *4 (W.D. La. Aug. 7, 2013), *report and recommendation adopted*, 2:11-CV-926, 2014 WL 949433 (W.D. La. Mar. 10, 2014) (applying rule in *Channer*); *Hutchinson v. Reese*, 5:07CV181-DCB-MTP, 2008 WL 4857449, at *4 (S.D. Miss. Nov. 7, 2008) (same).

The Fourth, Seventh, and Eighth Circuits have similarly recognized that requiring pretrial detainees to perform "general housekeeping responsibilities" is permissible. *See Bijeol v. Nelson*, 579 F.2d 423, 424-25 (7th Cir. 1978) (denying pretrial detainee's claim that he was required to perform general housekeeping duties in his cell and community areas "without pay and, when refusing to do so, he was placed in segregation" because "general housekeeping responsibilities are not punitive in nature and for health and safety must be routinely observed in any multiple living unit"); *Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993) (denying pretrial detainee's involuntary servitude claim that alleged no more than "general housekeeping responsibilities" of common areas); *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Requiring a pretrial detainee to perform general housekeeping chores, on the other hand, is not" punishment); *see also*

*Mendez v. Haugen*, CV 14-4792 ADM/BRT, 2015 WL 5718967, at *5 (D. Minn. Sept. 29, 2015) (recognizing involuntary servitude does not prohibit pretrial detainee from performing general housekeeping chores such as "fixing and distributing meals, scrubbing dishes, laundering the sheets and clothing of other inmates, cleaning communal bathrooms and shower stalls, removing trash from common areas, and sweeping, mopping, and vacuuming general-use hallways and rooms"). These cases recognize that, in a communal custody setting where thousands of detainees reside and are provided (free) basic necessities (shelter, food, healthcare, programming), detainees are expected to assist in cleaning and maintaining the facility in which they live, prepare the food that they eat, and wash the clothes that they wear.

The Eleventh Circuit recognized this proposition in *Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997). In that case, the court held that a pretrial detainee is not an "employee" for purposes of the Fair Labor Standards Act. *Id*. at 207. It reached that conclusion because pretrial detainees "are in a custodial relationship" and provided "everyday needs such as food, shelter, and clothing." *Id*. at 206. And it quoted *Danneskjold v. Hausrath*, 82 F.3d 37, 43 (2d Cir. 1996), for the proposition that:

> [N]o Court of Appeals has ever questioned the power of a correctional institution to compel inmates to perform services of the institution without paying the minimum wage. Prisoners may thus be ordered to cook, staff the

> library, perform janitorial services, work in the laundry,
> or carry our [sic] numerous other tasks that serve various
> institutional missions of the prison, such as recreation,
> care and maintenance of the facility, or rehabilitation.
> Such work occupies prisoners' time that might otherwise
> be filled by mischief; it trains prisoners in the discipline
> and skills of work; and it is a method of seeing that
> prisoners bear a cost of their incarceration.

*Id*. at 207.   Although *Danneskjold* involved labor by convicted prisoners, the court's holding did not turn on any punitive effect.   And the court in *Villarreal* had no problem extending its holding to pretrial detainees.   The common thread was the custodial setting.   That fact is present here.[7]

There are three additional statutory clues that suggest Congress did not intend to criminalize labor by immigration detainees in lawful custody.   First, § 1589(a) only imposes criminal liability on "[w]hoever" obtains forced labor, and 18 U.S.C. § 1595(a) only provides a cause of action against "whoever" participated in a venture with the perpetrator.   Congress's definition of the word "whoever" does not include the federal government, *see* 1 U.S.C. § 1, and there is no indication in the TVPA that Congress intended otherwise in this context.   *See*

---

[7] In the district court, Plaintiffs attempted to distinguish these cases on the ground that they all involved government-operated facilities, who, unlike private entities, do not profit. That distinction is immaterial. The reason for these holdings is the fact of involuntary confinement, not because the facility operator was the government.  None of them mention profit or cost-savings. The distinction is also artificial because, under Plaintiffs' theory, government-operated facilities equally profit because they save money by requiring detainees to perform tasks they would otherwise have to hire others to do.

*Mojsilovic v. Oklahoma ex rel. Bd. of Regents for the Univ. of Oklahoma*, 101 F.
Supp. 3d 1137, 1142 (W.D. Okla. 2015), *aff'd*, 841 F.3d 1129 (10th Cir. 2016)
(holding that there was no indication in the TVPA that Congress intended the word
"whoever" to include States or public agencies).  To the contrary, excluding ICE
from the reach of the statute is consistent with Congress's decision to delegate the
detention of aliens to ICE.   Although the definition of "whoever" includes
corporations "unless the context indicates otherwise," 1 U.S.C. § 1, the context
indicates otherwise.  CoreCivic is acting at the direction, and for the benefit, of
ICE and is "performing a federal function." (Dkt. 1, ¶¶ 13, 28.)  *See Doe II*, 831
F.3d at 316-17.  Moreover, it would be inconsistent (and illogical) to conclude that
the statute permits conduct done by the federal government, but criminalizes it
when its contractors and local partners engage in the *same* conduct.

The second clue is 8 U.S.C. § 1555(d), which authorizes ICE to pay
"allowances (at such rate as may be specified from time to time in the
appropriation Act involved) to aliens, while held in custody under the immigration
laws, for work performed."  Congress then set that rate: "not in excess of $1 per
day."  Department of Justice Appropriation Act, Pub. L. No. 95-86, 91 Stat. 426
(1978).  Thus, Congress knew (and expected) that immigration detainees in ICE
custody performed labor for up to $1 per day *and even for no pay at all*.  *See*
*Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990) ("The amount of

payment was set by congressional act."). If it had intended to criminalize that labor in 2000, it would have amended § 1555(d) or issued an overriding appropriations bill to permit allowances only for "*voluntary* work performed." But it did not, which suggests that it never intended the TVPA to apply in the custodial setting.

The third clue is 28 C.F.R. § 545.23. That regulation provides:

> (a) Each sentenced inmate who is physically and mentally able is to be assigned to an institutional, industrial, or commissary work program. …

> (b) A pretrial inmate may not be required to work in any assignment or area other than housekeeping tasks in the inmate's own cell and in the community living area, unless the pretrial inmate has signed a waiver of his or her right not to work ….

Congress is presumed to have been aware of this regulation at the time it enacted the TVPA. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *U.S. v. Chukwura*, 5 F.3d 1420, 1424 (11th Cir. 1993). Construing § 1589 to criminalize housekeeping tasks by immigration detainees would also criminalize the same tasks by federal inmates and pretrial detainees. There is no relevant distinction between the two, but criminalizing the former would effectively abrogate the regulation. That cannot be what Congress intended. Nothing in the legislative history suggests it did.

## III.  This Appeal Will Materially Advance the Ultimate Termination of this Litigation.

This third prong is satisfied if resolution of the issue would "shorten the time, effort, and expense of the litigation." *McFarlin*, 381 F.3d at 1259 (quoting *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 683 F. Supp. 1139, 1176 (D. Me. 1994)); *see also Harris v. Luckey*, 918 F.2d 888, 892 (11th Cir. 1990) ("The statute requires an 'order' from the district court that is directly associated with the disposition of at least a claim, if not the entire case itself."); *Garner v. Wolfinbarger*, 433 F.2d 117, 122 (5th Cir. 1970) (finding an issue materially advances termination of the litigation where proceeding without an appeal would be "both expensive and senseless" if the petitioner is ultimately correct).

If CoreCivic is correct that Congress did not intend the TVPA to apply, the crux of Plaintiffs' complaint (Count I) will be dismissed.  What would be left is their derivative unjust enrichment claim (Count II), which cannot stand alone. *See*, *e.g.*, *Malivuk v. Ameripark, LLC*, No. 1:15-CV-2570-WSD, 2016 WL 3999878, at *5 (N.D. Ga. July 26, 2016), *aff'd*, 694 F. App'x 705 (11th Cir. 2017) (dismissing unjust enrichment claim based solely on plaintiff's alleged entitlement to tips under the FLSA where the underlying FLSA claim fails). At a minimum, "the primary (maybe only) basis for federal jurisdiction is removed."  (Dkt. 38 at 16.)

Even if that state law claim were to survive and remain in federal court, the scope and expense of this lawsuit will be significantly reduced.  (*See* Dkt. 38 at 16

21

[noting that the litigation, if allowed to proceed now, "will not only involve extensive fact discovery but also class certification proceedings"]; *see also* Dkt. 1, ¶ 94(a) [seeking to certify a class of all civil immigration detainees who performed work at SDC in the past ten years].)   Either way, this Court's resolution of the certified issue will materially advance the ultimate resolution of this case.

## RELIEF REQUESTED

For these reasons, the Court should grant this Permission.

DATED this 27th day of August, 2018.

By    s/ Stephen E. Curry
      Stephen E. Curry
      CURRY LAW FIRM
      3508-C Professional Circle
      Augusta, Georgia 30907-8232
      (706) 724-0022

      *Attorneys for Defendant/Petitioner*
      *CoreCivic, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.   This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1):

   __X__   This document contains 5,181 words.

2.   This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   _____

   __X__   this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman.

   DATED this 27th day of August, 2018.

   By   s/ Stephen E. Curry
   _____
   Stephen E. Curry
   CURRY LAW FIRM
   3508-C Professional Circle
   Augusta, Georgia 30907-8232
   (706) 724-0022

   *Attorneys for Defendant/Petitioner*
   *CoreCivic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

A true copy of the foregoing will be emailed to counsel of record as follows:

Priyanka Bhatt                    priyanka@projectsouth.org
Laura Rivera                      laura.rivera@splcenter.org
Bryan Lopez                       bryan.lopez@splcenter.org
Daniel Werner                     daniel.werner@splcenter.org
Meredith B. Stewart               meredith.stewart@splcenter.org
Warren T. Burns                   wburns@burnscharest.com
Daniel H. Charest                 dcharest@burnscharest.com
Lydia A. Wright                   lwright@burnscharest.com
Korey A. Nelson                   knelson@burnscharest.com
R. Andrew Free                    andrew@immigrantcivilrights.com
Azadeh Shahshahani                azadeh@projectsouth.org

                                  s/ Stephen E. Curry

3490900.1

**EXHIBIT 1**

**EXHIBIT 1**

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 30 of 89
Case: 18-15081   Date Filed: 09/27/2018   Page: 30 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 1 of 17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

WILHEN HILL BARRIENTOS,            *
MARGARITO VELAZQUEZ-GALICIA,
and SHOAIB AHMED, *individually*   *
*and on behalf of all others*
*similarly situated*,              *

    Plaintiffs,                  *      CASE NO. 4:18-CV-70 (CDL)

vs.                                *

CORECIVIC, INC.,                   *

    Defendant.                   *

_____

O R D E R

    Stewart Detention Center ("Stewart") is an immigration detention facility in Stewart County, Georgia operated by CoreCivic, Inc.  Plaintiffs Wilhen Barrientos, Margarito Velazquez-Galicia, and Shoaib Ahmed are current and former Stewart detainees.  They bring this class action, asserting claims against CoreCivic under the Trafficking Victims Protection Act ("TVPA"), as amended, 18 U.S.C. §§ 1589, 1594-95, and under Georgia law. They allege that CoreCivic operates a "deprivation scheme" in which it forces detainees to work through threats of physical violence, solitary confinement, and deprivation of basic necessities. CoreCivic moved to dismiss the action (ECF No. 30).  For the following reasons, CoreCivic's motion to dismiss is denied.

1

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 31 of 89
Case: 18-95082   Date Filed: 09/27/2018   Page: 31 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 2 of 17

STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include enough factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

The Court accepts the allegations in Plaintiffs' Complaint as true for purposes of the pending motion. Plaintiffs allege the following:

**I.   Conditions in Stewart Detention Center**

Stewart County, Georgia has an intergovernmental services agreement with United States Immigration and Custom Enforcement to house immigration detainees like Plaintiffs. Compl. ¶ 13, ECF No. 1. Stewart County contracts with CoreCivic, a for-profit

2

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 32 of 89
Case: 18-90035    Date Filed: 09/27/2018    Page: 32 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 3 of 17

corporation, to operate the Stewart Detention Center ("Stewart").
*Id.* ¶ 12.  Stewart has nearly 2,000 beds and is one of the largest
immigration detention centers in the nation.  *Id.* ¶ 24.

Plaintiffs allege that the conditions at Stewart are
deplorable.  The bathrooms are in poor condition.  *Id.* ¶ 41.  Some
showers have no hot water, while other showers have no cold water.
*Id.*  The open dormitories house 66 people in bunk beds with no
privacy.  *Id.* ¶ 56.  Each dormitory has one bathroom with several
sinks and toilets.  *Id.*  The showers in the shared bathroom do not
have temperature control.  *Id.*  Conflict and violence occur
frequently in the open dormitories.  *Id.*  Detainees refer to the
open dormitories as the "Chicken Coop" because of the unsanitary
conditions and overcrowding.  *Id.*

CoreCivic does not adequately furnish detainees with basic
hygiene products like toilet paper, soap, lotion, or toothpaste.
*Id.* ¶ 42.  Instead, CoreCivic instructs detainees to buy these
basic necessities from the commissary.  *Id.*  CoreCivic also
provides no means for detainees to contact people outside Stewart
other than expensive phone cards available for purchase at the
commissary.  *Id.* ¶¶ 45-47.  The commissary is the only place
detainees can purchase hygiene products, clothes, or phone cards.
*Id.* ¶ 37.  Detainees must use funds from their inmate fund accounts
to make purchases.  *Id.* ¶ 38.  Detainees therefore rely on access

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 33 of 89
Case: 18-13501   Date Filed: 08/27/2018   Page: 33 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 4 of 17

to the commissary to purchase basic necessities and phone cards. *Id*. ¶ 58.

## II.  Stewart's "Voluntary Work Program"

CoreCivic operates a "voluntary work program" at Stewart. *Id*. ¶ 27.  CoreCivic assigns program participants to various jobs in the facility.  *Id*. ¶ 29.  Responsibilities include scrubbing bathrooms, cleaning the medical center, preparing meals, washing detainees' laundry, and cleaning floors.  *Id*. ¶ 30.  CoreCivic generally pays detainees in the program between $1 and $4 per day. *Id*. ¶ 31.  CoreCivic deposits detainees' wages into their inmate fund accounts so the detainees may purchase items at the commissary.  *Id*. ¶ 38.

Detainees in the voluntary work program are spared from some of Stewart's more unfavorable conditions.  Program participants are not housed in the Chicken Coop.  Instead, they are provided more favorable living quarters with private two-person cells, a shared common area, a bathroom shared with only one other cellmate, and a shower with temperature control.  *Id*. ¶ 55.  But when participants refuse to work, CoreCivic threatens to transfer them back to the Chicken Coop, *id*. ¶ 54, revoke their access to the commissary, *id*. ¶ 57, transfer them to solitary confinement, *id*. ¶ 59, or initiate criminal proceedings against them, *id*. ¶ 50.

Plaintiffs allege that CoreCivic maintains deplorable conditions as part of a "deprivation scheme" that provides

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 34 of 89
Case: 18-15081   Date Filed: 03/27/2018   Page: 34 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 5 of 17

CoreCivic with a cheap supply of labor to operate the facility, thereby enabling CoreCivic to increase its profits. *Id.* ¶¶ 1-2, 59-60. According to Plaintiffs, this scheme operates as follows: (1) CoreCivic deprives detainees of basic necessities, including toothpaste, soap, toilet paper, privacy, safety, and contact with loved ones; (2) detainees must participate in the voluntary work program to move to humane accommodations and to earn money to purchase necessities at the commissary; and (3) once detainees are in the program, CoreCivic threatens to harm or actually harms those who refuse to work. *Id.* ¶ 1. Therefore, according to Plaintiffs, participation in the "voluntary" work program is "not 'voluntary' in any meaningful sense." *Id.* ¶ 36.

### III. Named Plaintiffs

Barrientos, Velazques-Galicia, and Ahmed either are working or previously worked as kitchen workers in the program. *Id.* ¶¶ 62, 78, 86. Specifically, Barrientos alleges CoreCivic threatened to transfer him to the Chicken Coop, *id.* ¶¶ 69-70, revoke his access to the commissary, *id.* ¶ 71, and put him in solitary confinement, *id.* ¶ 72, when he refused to work or when CoreCivic believed he was organizing a work stoppage. Velazquez-Galicia alleges that he witnessed CoreCivic threaten to transfer detainees who decline to work from the preferable two-person cells to the Chicken Coop. *Id.* ¶ 82. Ahmed alleges that CoreCivic threatened to put him in solitary confinement if he stopped working. *Id.* ¶ 89. He also

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 35 of 89
Case: 18-15025   Date Filed: 08/27/2018   Page: 35 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 6 of 17

alleges that CoreCivic actually put him in solitary confinement
for ten days for threatening a work stoppage after he had not been
paid.  *Id*. ¶ 90.  All three allege that they participate (or
participated) in the work program because of CoreCivic's threats
of harm and because of CoreCivic's deprivation scheme.  *Id*. ¶¶ 75,
83, 91.  They bring this action on behalf of themselves and all
others similarly situated.  Plaintiffs' proposed classes are
limited to detainees who actually participate or participated in
the voluntary work program.  *Id*.

DISCUSSION

Plaintiffs assert two categories of claims against CoreCivic:
(1) civil liability for violations of the TVPA and (2) claims for
unjust enrichment under Georgia law.  CoreCivic moved to dismiss
all of Plaintiffs' claims.  For the following reasons, CoreCivic's
motion is denied.

**I.   TVPA Claims**

As to Plaintiffs' TVPA claims, the question presented is
whether Plaintiffs have alleged sufficient facts in their
Complaint, which if ultimately proven to be true, could subject
CoreCivic to civil liability under the TVPA.  The TVPA provides a
private cause of action against anyone:

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 36 of 89
Case: 18-15025   Date Filed: 09/27/2018   Page: 36 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 7 of 17

(a)  Who[] knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1)  by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2)  by means of serious harm or threats of serious harm to that person or another person;

(3)  by means of the abuse or threatened abuse of law or legal process; or

(4)  by means of any scheme . . . intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.]

18 U.S.C. § 1589(a).  The TVPA defines "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  *Id*. § 1589(c)(2).

CoreCivic contends that Plaintiffs fail to state a claim under the TVPA because Congress did not intend the statute to apply to lawfully held detainees.  In the alternative, CoreCivic argues that Plaintiffs failed to allege sufficient facts to state a claim under the "abuse of legal process" prong.  *Id*. § 1589(a)(3).  Finally, CoreCivic contends that Plaintiffs' TVPA claims for

7

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 37 of 89
Case: 18-15035   Date Filed: 09/27/2018   Page: 37 of 147
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 8 of 17

conduct prior to December 23, 2008 are barred.  These arguments
are addressed in turn.

> A.   Plaintiffs Stated Claims under the Plain Language of the
> TVPA

CoreCivic argues that the TVPA is intended to apply narrowly
to forced labor in the human trafficking context and that applying
it to detainee work programs is "absurd" and contrary to the
intentions of Congress.  CoreCivic's argument has superficial
appeal and some support from the TVPA's legislative history.  But
it ignores the plain language of the statute.  It also
misunderstands "the absurdity doctrine," which is a narrow
exception to the fundamental principle that statutory
interpretation must be anchored to the plain language of the
statute.

CoreCivic points to evidence of congressional intent in
support of its position.  *See* 22 U.S.C. § 7101 (setting forth the
congressional purposes and findings regarding the TVPA); *id*.
§ 7101(a) ("The purposes of this chapter are to combat trafficking
in persons, a contemporary manifestation of slavery whose victims
are predominantly women and children, to ensure just and effective
punishment of traffickers, and to protect their victims.").  But
when interpreting a statute, the Court must presume that Congress
says what it means and means what it says.  *Conn. Nat'l Bank v.
Germain*, 503 U.S. 249, 253-54 (1992).  If Congress intended the

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 38 of 89
Case: 18-16085   Date Filed: 02/22/2018   Page: 30 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 9 of 17

TVPA to apply narrowly to human traffickers or human trafficking-related labor only, it could have easily limited § 1589 or § 1595 to those circumstances by saying so in those sections of the Act. Congress placed no such restriction in the statute but chose instead to broadly prohibit "whoever" from "obtain[ing] labor" by any of the proscribed means.  18 U.S.C. § 1589(a).  The Court thus declines to read an implied exclusion for lawfully confined victims into the statute.  Of course, the lawful force necessary to detain the detainees cannot be the source for the TVPA claims.  But Plaintiffs allege that although they may be lawfully detained, they cannot be forced to labor in violation of the TVPA.[1]

To the extent CoreCivic relies on the "absurdity doctrine" as an exception to the fundamental principle that courts must apply statutes as written, the Court finds that this exception does not apply here.  The "absurdity doctrine" can be traced back to the English common law.  As Blackstone explained in his Commentaries, "[W]here words bear . . . a very absurd signification, if literally understood, we must a little deviate from the received sense of them."  William Blackstone, *Commentaries on the Laws of England* § 2, at 60 (4th ed. 1770).  As understood in the English common law: "[I]n construing . . . all written instruments, the

---

[1] CoreCivic points to other textual "clues" that bolster its position that the statute did not intend to apply to immigrant detainees.  But these textual clues from other statutes do nothing to undermine the plain language of the TVPA.

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 39 of 89
Case: 18-16085   Date Filed: 02/22/2018   Page: 39 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 10 of 17

grammatical and ordinary sense of the words is to be adhered to, unless that would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified so as to avoid that absurdity and inconsistency, but no farther." *Grey v. Pearson,* (1857) 10 Eng. Rep. 1216, 1234; 6 H.L. Cas. 61, 106 (Lord Wensleydale).

The absurdity doctrine, however, does not authorize "judicial revision of public and private texts to make them (in the judge's view) more reasonable." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012). To avoid such judicial mischief, the doctrine has two limiting conditions: (1) "[t]he absurdity must consist of a disposition that no reasonable person could intend;" and (2) "[t]he absurdity must be reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error." *Id*. at 237-38. The drafter's failure to fully appreciate the effect of a plainly written statute does not bring it within the absurdity doctrine. *Id*. at 238.

CoreCivic points to no particular word or phrase in the TVPA that it claims must be corrected. Instead, it argues that the statute does not apply to persons who are held lawfully as detainees by the government. It relies upon no language in the statute for this broad assertion. It simply points to legislative

10

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 40 of 89
Case: 18-96085    Date Filed: 02/22/2018    Page: 40 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 11 of 17

history outlining the motivation for the enactment of the statute.
Thus, it asks the Court rewrite the statute by effectively adding
a provision stating, "this statute shall not apply to anyone who
uses labor of detainees who are lawfully detained pursuant to a
contract with a governmental agency." The absurdity doctrine does
not authorize the Court to re-draft a statute. CoreCivic may find
it absurd that Congress drafted the TVPA in such a way that it
theoretically reaches the conduct alleged here. And one can
speculate that Congress did not foresee the application of its
plain language to these circumstances. But this Court cannot
rewrite statutes to avoid what it may perceive to be an unintended
consequence or even an absurd public policy result. Congress is
alone responsible for any such absurdities and lack of legislative
foresight. Moreover, the Constitution gives it the exclusive power
to fix them.

The Court's ruling today that Plaintiffs have stated a claim
for relief under the TVPA certainly does not mean they will
ultimately prevail. They must of course still prove their
allegations. And in doing so, they will be required to point to
evidence that supports the reasonable conclusion that CoreCivic
threatened them with a serious risk of harm if they did not persist
as laborers. That burden will be a heavy one. But they have today

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 41 of 89
Case: 18-16085   Date Filed: 02/22/2018   Page: 41 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 12 of 17

plausibly stated such allegations to overcome CoreCivic's motion to dismiss.[2]

B.   Plaintiffs Alleged Sufficient Facts to State a Claim under § 1589(a)(3)

CoreCivic alternatively contends that Plaintiffs have not plausibly alleged that CoreCivic obtained their labor through actual or threatened abuse of the legal process under § 1589(a)(3). Under the statute, "[t]he term 'abuse or threatened abuse of the legal process' means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." 18 U.S.C. § 1589(c)(1).   According to the Complaint, CoreCivic provided each detainee with a "detainee orientation handbook," which explains that refusing to work or organizing a work stoppage is punishable by initiation of criminal proceedings.  Compl. ¶ 50. And Plaintiffs clearly allege that CoreCivic threatened to

---

[2] CoreCivic does not argue that Plaintiffs have failed to *allege* a sufficient threat of harm under the TVPA.  Thus, the Court leaves for another day whether Plaintiffs must prove that the conditions in the Chicken Coop do not meet the constitutional conditions of confinement standard in order to show a serious threat of harm for TVPA purposes. For prison conditions of confinement claims, deprivations must be objectively and sufficiently serious or extreme such that they constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).  The same standard applies in the pretrial detainee context.  *Keith v. Dekalb Cty.*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014).

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 42 of 89
Case: 18-90015   Date Filed: 08/22/2018   Page: 42 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 13 of 17

initiate criminal proceedings against detainees when detainees refused to work.  *Id.* ¶ 111.  If discovery reveals that CoreCivic made no such threats, then summary judgment will be proper.  But at this stage, Plaintiffs have plausibly alleged a claim under the "legal process" prong of the TVPA.

C.   Plaintiffs Stated TVPA Claims for Conduct Prior to December 23, 2008

When Congress first enacted the TVPA in 2000, it did not authorize a private right of action for violation of its provisions.  *See generally* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464. Congress amended the TVPA in 2003 to provide a private right of action against "perpetrators" of TVPA violations.  Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875.  Congress amended the TVPA again in December 2008 to expand the class of individuals against whom a private right of action could be brought.  After the 2008 amendments, a plaintiff could bring a TVPA claim not only against "perpetrators," but also against "whoever knowingly benefits" financially or otherwise from a scheme they knew or should have known violated the TVPA.  William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044.

CoreCivic characterizes Plaintiffs' TVPA claims as arising exclusively under this "financial benefit" prong of the TVPA's

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 43 of 89
Case: 18-96085    Date Filed: 02/22/2018    Page: 45 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 14 of 17

private right of action provision. *See* 18 U.S.C. § 1595(a). Therefore, it contends that Plaintiffs cannot state a TVPA claim for conduct prior to December 23, 2008 (the date Congress expanded the TVPA's private right of action). But Plaintiffs' Complaint arguably alleges a cause of action against CoreCivic as both a perpetrator and as a financial beneficiary. *See* Compl. ¶ 104 ("Plaintiffs are authorized to bring this [TVPA] claim . . . because CoreCivic violated the forced labor provisions of [§ 1589]."); *id.* ¶ 105 ("Plaintiffs . . . *also* are authorized to bring this [TVPA] claim . . . because CoreCivic knowingly benefitted financially" from the deprivation scheme (emphasis added)). Therefore, to the extent Plaintiffs' TVPA claim is premised on CoreCivic actually perpetrating TVPA violations as opposed to only benefitting financially from violations, this claim may encompass conduct as early as 2003, subject to the applicable statute of limitations. But CoreCivic cannot be liable for only knowingly benefitting from the deprivation scheme until after December 23, 2008.[3]

---

[3] The Court notes that Plaintiffs' proposed TVPA class is defined as all participants in the voluntary work program "within the past ten years up to the date the class is certified." Compl. ¶ 94(a). Plaintiffs filed this action on April 17, 2018. And the Court has not yet certified the class. Therefore, unless the class is certified before December 23 of this year, Plaintiffs' TVPA claims will effectively be limited to conduct occurring after the 2008 amendments anyway.

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 44 of 89
Case: 18-96085   Date Filed: 02/22/2018   Page: 44 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 15 of 17

## II.   Unjust Enrichment Claims

Plaintiffs assert claims under Georgia law for unjust enrichment.  "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received."  *Vernon v. Assurance Forensic Accounting, LLC*, 774 S.E.2d 197, 212 (Ga. Ct. App. 2015) (quoting *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011)) (explaining that for purposes of an unjust enrichment claim conferring a "benefit" means providing "any form of advantage" even if it was not "earned"); *see also Reynolds v. CB&T,* 805 S.E.2d 472, 478-79 (Ga. Ct. App. 2017) (reversing grant of summary judgment on unjust enrichment claim based upon lender inducing borrower to finish construction of home and nevertheless foreclosing on the home when construction complete).  Although most unjust enrichment claims are based on the party being induced into some transaction with a reasonable expectation of receiving something in return, the Georgia courts have recognized that an unjust enrichment claim can be based on allegations of coercion. *See Estate of Crook v. Foster*, 775 S.E.2d 286, 287-90 (Ga. Ct. App. 2015) (reversing trial court's grant of summary judgment on unjust enrichment claim where plaintiff claimed defendant coerced her into putting defendant's name on deed).

15

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 45 of 89
Case: 18-16085   Date Filed: 02/22/2018   Page: 45 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 16 of 17

Here, Plaintiffs allege that CoreCivic coerced them to provide labor to CoreCivic, that CoreCivic benefitted from that labor, and that CoreCivic should compensate Plaintiffs for the benefit they conferred on CoreCivic because allowing CoreCivic to keep that benefit would be unjust.  The Court cannot say that Georgia would not recognize an unjust enrichment claim under these circumstances.   Accordingly, CoreCivic's motion to dismiss Plaintiffs' unjust enrichment claims is denied.

CONCLUSION

Based on the foregoing, CoreCivic's motion to dismiss (ECF No. 30) is denied.

CERTIFICATE FOR IMMEDIATE APPEAL

Whether the TVPA applies to work programs in federal immigration detention facilities operated by private for-profit contractors is a controlling question of law as to which there is substantial ground for difference of opinion.  The Court today finds that the TVPA does apply under the circumstances alleged in Plaintiffs' Complaint.  This determination thus allows this litigation to proceed which will not only involve extensive fact discovery but also class certification proceedings.  If the Court's conclusion is wrong and the primary (maybe only) basis for federal jurisdiction is removed, these subsequent proceedings will have been for naught.  Therefore, an immediate appeal may materially advance the ultimate termination of the litigation.  Of course, if

Case 4:18-cv-00070-CDL   Document 40   Filed 12/12/18   Page 46 of 89
Case: 18-96085   Date Filed: 08/22/2018   Page: 46 of 47
Case 4:18-cv-00070-CDL   Document 38   Filed 08/17/18   Page 17 of 17

today's order is affirmed, these proceedings will have arguably been unnecessarily delayed.  But given the nature of the issue to be decided on appeal and the implications of today's ruling, the undersigned is of the opinion that an immediate appeal is appropriate pursuant to 28 U.S.C. § 1292(b).  All proceedings in this Court are stayed pending resolution of any application for interlocutory appeal.

IT IS SO ORDERED, this 17th day of August, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 30, 2018

Stephen E. Curry
Curry Law Firm
3508 PROFESSIONAL CIR STE C
AUGUSTA, GA 30907-2220

Appeal Number:  18-90025-G
Case Style:  CoreCivic INC v. Wilhen Barrientos, et al
District Court Docket No:  4:18-cv-00070-CDL

Please take notice that the following motion has been filed:

MISCELLANEOUS CASE DOCKETED. Petition for permission to appeal pursuant to 1292(b) filed by Petitioner CoreCivic INC. Served 08/27/2018 US mail - Attorney for Respondents: Bhatt, Charest, Lopez, Nelson, Rivera, Werner, Wright; email - Attorney for Respondents: Burns, Free, Shahshahani, Stewart.

Any response which a party wishes to file must be received by this office on or before ( **September 10, 2018** ) , after which the motion and the response will be forwarded to the court for ruling without oral argument.

Copies of the court's decision will be sent to all counsel and to pro se parties.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Bryon Robinson, G
Phone #: (404) 335-6185

Enclosure(s)

MOT-1 Motion filed letter

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

No. 18-90025

_____

Wilhen Hill Barrientos, Margarito Velazquez Galicia, and Shoaib Ahmed,
individually and on behalf of all others similarly situated,

*Plaintiffs/Respondents*,

v.

CoreCivic, Inc.,

*Defendant/Petitioner*.

_____

On Certified Order from the United States District Court
for the Middle District of Georgia, Columbus Division,
No. 4:18-cv-00070-CDL (Land, J.)

_____

## PLAINTIFFS/RESPONDENTS' ANSWER IN OPPOSITION TO
## CORECIVIC, INC.'S PETITION FOR PERMISSION TO APPEAL
## PURSUANT 28 U.S.C. § 1292(b)

_____

Meredith B. Stewart                          R. Andrew Free
**Southern Poverty Law Center**             **Law Office of R. Andrew Free**
201 St. Charles Avenue, Suite 2000          P.O. Box 90568
New Orleans, LA 70170                        Nashville, TN 37209
Tel.: (504) 486-8982                         Telephone: (844) 321-3221x1
Fax: (504) 486-8947                          Facsimile: (615) 829-8959
meredith.stewart@splcenter.org              Andrew@ImmigrantCivilRights.com

*(Appearances continue on following page)*

Azadeh Shahshahani
Priyanka Bhatt
**Project South**
9 Gammon Avenue SE
Atlanta, GA 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

*Attorneys for Plaintiffs/Respondents*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the Plaintiffs/Respondents submit their Certificate of Interested Persons and Corporate Disclosure Statement and furnish the following list of individuals and entities having an interest in the outcome of this particular case:

Acedo, Nicholas D.

Ahmed, Shoaib

Barrientos, Wilhen Hill

Bhatt, Priyanka

Burns Charest LLP

Burns, Warren T.

Charest, Daniel H.

CoreCivic, Inc. ("CXW")

CoreCivic, LLC

Curry Law Firm

Curry, Stephen E.

Free, R. Andrew

Hesman, Ashlee B.

Land, Honorable Judge Clay D.

i

Law Office of R. Andrew Free

Lee, Jacob B.

Lopez, Bryan

Love, Rachel

Nelson, Korey Arthur

Project South

Rivera, Laura G.

Shahshahani, Azadeh N.

Southern Poverty Law Center

Stewart, Meredith Blake

Struck, Daniel P.

Struck Love Bojanowski & Acedo, PLC

Velazquez-Galicia, Margarito

Werner, Daniel

Wright, Lydia Anne

The undersigned attorney further certifies, pursuant to Federal Rule of Appellate Procedure 26.1, that Plaintiffs/Respondents have no parent corporations and that no corporation directly or indirectly holds 10% or more of the ownership interest in any of the Plaintiffs/Respondents.

Respectfully submitted,

/s/ Meredith B. Stewart
Meredith B. Stewart
Attorney for Plaintiffs/Respondents

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS………………………………………i

TABLE OF CONTENTS…………………………………………………………….iv

TABLE OF AUTHORITIES………………………………………………….....vi

INTRODUCTION……………………………………………………………………1

FACTUAL BACKGROUND…………………………………..…………....3

ARGUMENT……………………………………………………………………5

    I.    The Question as Presented in Not a Pure Question of
Law…………………………………………………………...……..6

    II.    There Are No Grounds for Substantial Difference of Opinion on the
Question...…………………………………………………..…9

        A. All Courts that Have Considered this Question Have Agreed: The
TVPA Applies to Private Prison Companies that Contract with
ICE…………………………………………………………..10

        B. The Plain Language of the Stature Offers No Grounds for a
Substantial Difference of Opinion…………………………………..11

            1. The Plain Language of § 1589 Does Not Exclude Private Prison
Companies, like CoreCivic, From Liability…………………12

            2. The Legislative History of § 1589 Confirms the TVPA's Broad
Reach and Remedial Purpose……………………………...15

3.  Plaintiffs Have No Duty to Enrich a Private, For-Profit

Corporation……………………………………………...17

III.  The Appeal Will Not Terminate the Litigation…………………………21

CONCLUSION……………………………………………………………...22

v

# TABLE OF AUTHORITIES

## CASES

*Burrell v. Board of Trustees of Georgia Military College,*

    970 F.2d 785 (11th Cir. 1992) ...............................................................10

*Carlos Gonzalez v. CoreCivic, Inc.,*

    No. 3:17-cv-02573-JLS-NLS (S.D. Cal. 2017) ....................................22

*Channer v. Hall,*

    112 F.3d 214 (5th Cir. 1997) ........................................... 17, 18, 19, 20

*Clark v. Riley,*

    595 F.3d 1258 (11th Cir. 2010) ...........................................................14

*Conroy v. Aniskoff,*

    507 U.S. 511 (1993)................................................................................15

*Correctional Services Corp. v. Malesko,*

    534 U.S. 61 (2001).................................................................................19

*Danneskjold v. Hausrath,*

    82 F.3d 37 (2d Cir. 1996) ......................................................................20

*David v. Signal International, LLC,*

    37 F. Supp. 3d 822 (E.D. La. 2014)......................................................16

*Drummond Co., v. Conrad & Scherer, LLP,*

    885 F.3d 1324 (11th Cir. 2018) .................................................. 6, 7, 17

*Durr v. Shinseki,*

    638 F.3d 1342 (11th Cir. 2011) ............................................................14

*Estate of Crook v. Foster,*

    775 S.E.2d 286 (Ga. Ct. App. 2015).....................................................21

*Harris v. Garner,*

    216 F.3d 970 (11th Cir. 2000) ..............................................................11

*Hutchinson v. Florida,*

    677 F.3d 1097 (11th Cir. 2012) ............................................................18

*In re Lehman,*

    205 F.3d 1255 (11th Cir. 2000) ............................................................14

*Jobson v. Henne,*

    355 F.2d 129 (2d Cir. 1966) .................................................................19

*Lozada Sanchez Bustamante v. Mamani,*

    137 S. Ct. 1579 (2017)...........................................................................6

*Mamani v. Berzain,*

    825 F.3d 1304 (11th Cir. 2016) .........................................................6, 7

*Martha Gonzalez v. CoreCivic, Inc.,*

    No. 1:18-cv-00169-LY (W.D. Tex. 2018)............................................21

*McFarlin v. Conseco Services, LLC,*

    381 F.3d 1251 (11th Cir. 2004) .................................................. passim

*Menocal v. GEO Grp., Inc.,*

    113 F. Supp. 3d 1125 (D. Colo. 2015).......................................................... 10, 18

*Menocal v. GEO Grp., Inc.,*

    882 F.3d 905 (10th Cir. 2018) ...............................................................10

*Merritt v. Dillard Paper Co.,*

    120 F.3d 1181 (11th Cir. 1997) ...............................................................12

*Minneci v. Pollard,*

    565 U.S. 118 (2012).............................................................................19

*Nice v. L-3 Commc'ns Vertex Aerospace LLC,*

    885 F.3d 1308 (11th Cir. 2018) ...........................................................6, 7

*Nunag-Tanedo v. E. Baton Rouge Par. School Board,*

    790 F. Supp. 2d 1134 (C.D. Cal. 2011) ...............................................16

*Owino v. CoreCivic, Inc.,*

    No. 17-CV-1112 JLS(NLS), 2018 WL 2193644 (S.D. Cal. May 14,

    2018) ................................................................................. 10, 20, 22

*Plaintiff A v. Schair,*

    No. 2:11-CV-00145-WCO, 2012 WL 12864367 (N.D. Ga. Nov. 28,

    2012) .............................................................................................14

*Richardson v. McKnight,*

    521 U.S. 399 (1997)....................................................................... 19, 20

*United States v. Calimlim,*

    538 F.3d 706 (7th Cir. 2008) ................................................................16

*United States v. Callahan,*

    801 F.3d 606 (6th Cir. 2015) ....................................................... 13, 14

*United States v. Kaufman,*

    546 F.3d 1242 (10th Cir. 2008) ................................................... 12, 15

*United States v. Kozminski,*

    487 U.S. 931 (1988)............................................................ 15, 17, 18

*United States v. Marcus,*

    487 F. Supp. 2d 289 (E.D.N.Y. 2007) .................................................13

*United States v. McNeal,*

    No. 2:15CR199-MHT, 2018 WL 1811474 (M.D. Ala. Apr. 17, 2018) ..............18

*United States v. McTague,*

    No. 5:14-CR-055, 2017 WL 1378425 at (W.D. Va. Apr. 10, 2017)...................15

*United States v. Norris,*

    No. 1:05-CR-479-JTC, 2007 WL 9655844 (N.D. Ga. June 27, 2007) ..............13

*United States v. Toviave,*

    761 F.3d 623 (6th Cir. 2014) ............................................................14

*Villarreal v. Woodham,*

    113 F.3d 202 (11th Cir. 1997) ..........................................................20

ix

*Wong Wing v. United States,*

   163 U.S. 228 (1896)..................................................................20

## STATUTORY AUTHORITIES

18 U.S.C. § 1584.......................................................................15

18 U.S.C. § 1589(a) ............................................................ passim

28 U.S.C. § 1292(b) ............................................................ passim

## RULES AND REGULATIONS

Fed. R. App. P. 32(a)(6)............................................................24

Fed. R. App. P. 32(f)................................................................24

## INTRODUCTION

Defendant/Petitioner CoreCivic, Inc. ("CoreCivic") is a billion-dollar corporation in the business of operating prisons.   One quarter of its business is running detention facilities for Immigration and Customs Enforcement ("ICE"), including Stewart Detention Center ("Stewart").   To operate Stewart, CoreCivic relies on the nearly free labor of the immigrants detained there. Plaintiffs/Respondents allege that CoreCivic guarantees the availability of this cheap labor pool by depriving detained individuals of basic necessities, such as food, toilet paper, and soap, to coerce them into joining a "voluntary work program" where they can earn funds to purchase those items at CoreCivic's commissary.   CoreCivic ensures their continued labor by threatening those who refuse to work with sanctions, including solitary confinement.   As result of this scheme, CoreCivic avoids employing workers for a living wage, securing itself an economic windfall.

Plaintiffs/Respondents Wilhen Hill Barrientos, Margarito Velazquez Galicia, and Shoaib Ahmed (collectively "Plaintiffs") are individuals who were detained at Stewart.  Plaintiffs submitted to the work program to obtain basic necessities, such as toilet paper and food.  They remained in the program as a result of CoreCivic's policy of threatening and/or actually inflicting serious harm on them and others for refusing to work.  They seek to vindicate their rights and those of a putative class

1

under the Trafficking Victims Protection Act ("TVPA") and Georgia state unjust enrichment law.

At issue in this proposed appeal is CoreCivic's claim that it is absolutely immune from suit under the TVPA. No other corporation or industry enjoys such a sweeping immunity, likely because the plain text of the statute does not provide for an exemption of any kind. CoreCivic nevertheless urges the Court to make an exception for one type of corporation – private prison companies housing ICE detainees. This exempted category of one finds not even a thread of plausibility in the statutory text and would, if granted, require an unprecedented judicial rewriting of the statute. CoreCivic's suggested interpretation would not only slam the courthouse door on Plaintiffs, but also on countless other trafficking victims – many of whom barely find the courage and resources to make it to the courthouse – whose employers/traffickers decide they too should benefit from such a novel reading of the statute. This outcome is decidedly against the letter and purpose of the TVPA.

CoreCivic's plea to this Court to insulate it from suit should be dismissed because the company cannot meet its heavy burden under 28 U.S.C. § 1292(b). The question presented requires the Court to consider fact-driven issues that are not appropriate for a § 1292(b) appeal. Moreover, the unambiguous language of the statute leaves little room for a substantial difference of opinion, as evidenced

by the rulings of four other courts, including the district court below, that considered the exact question and declined to exempt private prison companies from the TVPA.  Finally, granting this appeal will not further the end of this litigation, as Plaintiffs' class-wide unjust enrichment claim will survive regardless of the outcome here.  CoreCivic's Petition should be denied.

## FACTUAL BACKGROUND

With some 2,000 beds, Stewart is one of the biggest civil immigration detention centers in the country.  Pls.' Compl., Doc. 1 at ¶ 24.[1]  It is located in Stewart County, Georgia ("County").  The County has an Intergovernmental Service Agreement with ICE to house immigrants at Stewart.  *Id.* ¶ 13.  The County then contracts with CoreCivic to operate the facility.  *Id.*

Stewart is part of CoreCivic's growing portfolio of properties in immigrant detention, serving ICE as its "primary customer."  *Id.* ¶ 22.  This market has proven enormously profitable for CoreCivic.  *Id.* ¶ 21.  Revenues from immigrant detention in 2017 exceeded $444 million, making up a quarter of CoreCivic's total revenue of $1.765 billion.  *Id.* ¶ 22.  CoreCivic pocketed approximately $38 million in revenue from Stewart alone in 2016.  *Id.* ¶ 25.

Like any company, CoreCivic maximizes profits by minimizing costs. Unlike many, though, it is entrusted with the care of human beings, and required to

---

[1] Record citations refer to the docket entry number of the district court.

comply with contractual and regulatory standards governing safety, food, housing, hygiene, and labor.  *Id.* ¶ 40.  The human beings in its care are individuals detained for civil – not criminal – immigration infractions or processing.  *Id.* ¶¶ 14-15. CoreCivic shirks its custodial obligations to these individuals by failing to provide them with basic necessities, such as food, toilet paper, soap, and contact with loved ones on the outside.  *Id.* ¶¶ 40-43.

CoreCivic runs a work program it calls "voluntary" that "offers" a range of jobs including barber, commissary, kitchen, laundry, library, night floor crew, recreation, and several kinds of porters.  *Id.* ¶ 29.  These workers clean all areas of the detention center, wash laundry for its entire population, and cook meals for some 2,000 people three times a day, every day.  *Id.* ¶¶ 2, 30, 62, 78, 86.  As the breadth of these tasks demonstrates, CoreCivic outsources the lion's share of the labor that sustains Stewart to the detained immigrants.  *Id.* ¶ 34.

In exchange, workers are paid $1 to $4 a day, and for kitchen staff who work 12 hours or more, up to $8 a day – far below the federal minimum wage.  *Id.* ¶ 31. Much of these meager wages are funneled directly back to CoreCivic's coffers at the commissary, where workers purchase the necessities – like food and toiletries – that Plaintiffs and the Department of Homeland Security's Office of the Inspector General ("OIG") have found CoreCivic fails to provide.  *Id.* ¶¶ 37-39, 42-43.

Once a worker is in the program, CoreCivic takes coercive measures to ensure a compliant labor force.  *Id.* ¶¶ 48-50.  Detained immigrants who refuse to work are put in solitary confinement and/or threatened with sanctions like solitary confinement and loss of safe, sanitary, and private housing.  *Id.*

On April 17, 2018, Plaintiffs filed suit against CoreCivic on behalf of themselves and others similarly situated under the TVPA and Georgia unjust enrichment law.  On August 17, 2018, the district court denied CoreCivic's motion to dismiss Plaintiffs' claims.  Doc. 38.  Relying on the statute's plain language, the court ruled that the TVPA does not exempt CoreCivic from liability.  *Id.* at 11.  In doing so, the court declined CoreCivic's invitation to "rewrite the statute by effectively adding a provision" stating that the TVPA does not apply to companies like CoreCivic.  *Id.*  Despite this ruling, the court certified the following question for appeal: "Whether the TVPA applies to work programs in federal immigration detention facilities operated by private for-profit contractors."  *Id.* at 16-17.  CoreCivic filed its Petition for Permission to Appeal on August 27, 2018.  Plaintiffs hereby submit their Answer in Opposition to the Petition.

## ARGUMENT

Review under § 1292(b) is a "rare exception."  *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004).  The party seeking interlocutory review bears a heavy burden, and must show the court that the question: (1) is a

pure question of law; (2) presents substantial grounds for differences of opinion; and (3) would, if resolved, substantially reduce the amount of litigation necessary on remand.  *Id.*; *see also* 28 U.S.C. § 1292(b).  "Even when all of [the] factors are present, the court of appeals has discretion to turn down a § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259.  As discussed below, the Court should decline to hear this appeal because CoreCivic cannot meet its burden.

## I.  THE QUESTION AS PRESENTED IS NOT A PURE QUESTION OF LAW

Under § 1292(b), a pure question of law must be "an abstract legal issue" that "the court of appeals can decide quickly and cleanly." *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016), *cert. denied sub nom. Lozada Sanchez Bustamante v. Mamani*, 137 S. Ct. 1579 (2017).  A question is not appropriate for review where its answer depends on the specific circumstances of the case. *Drummond Co., v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1336-37 (11th Cir. 2018) (declining to review question about agency principles and crime-fraud exception to privilege doctrine where answer depended on role and rank of putative agent who committed fraud).  Review is also inappropriate where answering the question requires resolving a disputed issue of fact.  *Nice v. L-3 Commc'ns Vertex Aerospace LLC*, 885 F.3d 1308, 1313 (11th Cir. 2018) (declining to consider question about applicability of a defense where it would have been required to first determine the proper defendant).

CoreCivic's Petition makes clear the question presented is not a pure question of law. CoreCivic urges the Court to venture well beyond the plain language of the statute to infer an exemption from the TVPA for companies like itself. This journey requires the Court to consider disputed fact issues that are not appropriate for a § 1292(b) appeal. *See Drummond*, 885 F.3d at 1336–37 (denying §1292(b) petition to hear a pure legal issue when petitioner injected factual issues into the question); *Mamani*, 825 F.3d at 1312 (declining to hear appeal of motion to dismiss when doing so would require a review of "scores of factual allegations" in plaintiffs' complaint).[2]

First, CoreCivic claims that the "custodial setting" of the detainees, wherein they are "provided (free) basic necessities," insulates CoreCivic from liability under the TVPA. *See* Pet. at 2, 14 n.6, 17. But whether CoreCivic is upholding its duty as a custodian is a core factual issue in this case. Plaintiffs have alleged that CoreCivic abrogates that duty by failing to provide them with basic necessities, safety, and care. Doc. 1 ¶¶ 40-47, 56. These allegations draw not only from Plaintiffs' individual experiences, but also from the independent observations of

---

[2] If the Court starts and ends its inquiry with the plain language of the statute, as the district court did, then the question presented is likely a pure question of law. However, as stated in Section II below, this resolution does not present the grounds for substantial disagreement required for a § 1292(b) appeal. The Petition should still be denied on that basis. *See Nice*, 885 F.3d at 1313 n.8 ("Even if the defendants could satisfy the first condition, we would exercise our discretion not to review this appeal.").

the OIG.  Doc. 1 ¶¶ 41-43, 52.  The abrogation of this duty nullifies the "custodial" relationship that provides the premise for CoreCivic's urged exemption from the TVPA.  Whether CoreCivic has failed to maintain a "custodial setting" at Stewart is a disputed question of fact not appropriate for an appeal under § 1292(b).

Second, CoreCivic claims that "housekeeping duties" performed in a custodial setting can never qualify as forced labor.  Pet. at 15-18.  Putting aside that nothing in the TVPA prevents those tasks from qualifying as "labor or services" under the statute, Plaintiffs allege that they performed work that goes far beyond housekeeping tasks in their own cell or community living area, including cooking food daily for up to 2,000 detained immigrants and performing clerical, barber, and janitorial tasks across the detention center, among other duties.  *See* Doc. 1 ¶¶ 9-11, 30, 62-63, 78-79, 86-87.  The extent of the labor the Plaintiffs performed is yet another factual issue that CoreCivic asks this Court to consider.

Third, CoreCivic states that Plaintiffs claim the enactment of § 1589 "criminalizes their labor *if they were forced*."  Pet. at 1 (emphasis added).  That contention highlights another core factual dispute – whether CoreCivic unlawfully forced Plaintiffs to work.  Plaintiffs are not alleging their confinement or the "voluntary work program" is *per se* unlawful; rather, it is CoreCivic's coercive policies that place Plaintiffs' labor squarely within the ambit of § 1589. CoreCivic conflates its role in operating the work program with engaging in forced labor in

8

order to claim a broad exemption from the TVPA.  However, CoreCivic's liability is rooted in its coercive labor policies, and the existence and extent of those policies is a factual issue to be determined first by the district court.

Finally, CoreCivic argues it should be exempt from the TVPA because it is a federal contractor that is operating the program on behalf of ICE and pursuant to federal detention standards.  Pet. at 4, 14-15.  However, Plaintiffs allege that CoreCivic is not complying with its contractual and regulatory duties imposed by ICE.  *See* Doc. 1 ¶¶ 36, 41-43, 52, 56, 66, 80, 88.  CoreCivic's compliance with its contract with ICE – and the terms of that contract – are factual issues not appropriately before the Court at this stage.  *Cf. Novoa v. GEO Grp., Inc.*, No. EDCV-17-2514-JGB(SHKX), 2018 WL 4057814, at *3 (C.D. Cal. Aug. 22, 2018) (question of whether private prison operator adhered to contract with ICE when operating work program is factual issue not appropriate for a motion to dismiss).

The numerous factual issues that CoreCivic injects into the requested appeal are reason alone to deny its Petition.

## II.    THERE ARE NO GROUNDS FOR SUBSTANTIAL DIFFERENCES OF OPINION ON THE QUESTION

An interlocutory appeal should not be granted unless there is a "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning."  *McFarlin*, 381 F.3d at 1259.  Grounds for substantial differences means that "there is serious doubt as to how [the question]

9

should be decided." *See id.* at 1256 (citation omitted).  By contrast, where this Court is in full agreement with the district court's answer to the question, it should decline review.  *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992).  The question presented here does not raise grounds for substantial differences of opinion.

## A.    All Courts that Have Considered this Question Have Agreed: The TVPA Applies to Private Prison Companies that Contract with ICE.

The resolution of the question presented does not raise serious doubts. Three other district courts have considered the exact question, and all have held that the TVPA applies to private prison companies that contract with ICE.  *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644 (S.D. Cal. May 14, 2018) (denying CoreCivic's motion to dismiss plaintiffs' TVPA claim); *Novoa*, 2018 WL 3343494 at *12 (C.D. Cal. June 21, 2018) ("There is no basis for Defendant's proposition that a federal detention center run by a private entity is excluded from the reach of the TVPA."); *Menocal v. GEO Grp., Inc.*, 113 F. Supp. 3d 1125, 1132-33 (D. Colo. 2015) (denying private prison company's motion to dismiss detained immigrants' forced labor claims and rejecting defendant's attempt to narrow broad language of § 1589).[3]

---

[3]  Relatedly, the Tenth Circuit upheld certification of a TVPA class action against a private prison operator under nearly identical facts to those alleged here. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 916 (10th Cir. 2018) *reh'g & reh'g en banc denied* (Mar. 5, 2018).

Not one of these courts entertained the defendant's argument that private prison companies that contract with ICE should be categorically exempt from the TVPA. Rather, like the district court here, they relied on the plain language of the text to conclude that the TVPA does apply to companies like CoreCivic. Indeed, no court that has considered this question has held otherwise. These cases show that the "resolution of [the question] is so clear that the 'substantial ground for difference of opinion' requirement" is not met here. *McFarlin*, 381 F.3d at 1258 (citation omitted).

## B.   The Plain Language of the Statute Offers No Grounds for a Substantial Difference of Opinion.

The district court based its ruling that CoreCivic may be held liable under the TVPA on the plain language of the statute. Given the undisputed primacy of plain language among the canons of statutory construction, the question does not present a "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning." *Id.* at 1259. To the contrary, the district court did exactly what this Court's precedent requires: "begin [its] construction of [the statute] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000).

11

Even if there were substantial disagreement about the district court's application of the plain language canon to the question, CoreCivic's arguments that the Court should go beyond the statutory text fail.

### 1. The Plain Language of § 1589 Does Not Exclude Private Prison Companies, like CoreCivic, From Liability.

The plain language of § 1589 does not, in any way, limit who it holds liable or cabin what may be considered "labor or services." Because the statute's language is unambiguous, the "judicial inquiry is complete." *See Merritt v. Dillard Paper Co*., 120 F.3d 1181, 1186 (11th Cir. 1997) (citation omitted).

Nothing in the plain text of § 1589 limits who may be liable for forced labor. 18 U.S.C. § 1589(a) ("*Whoever* knowingly . . . obtains [] labor or services . . . by means of physical restraint . . . threats of serious harm . . . or threatened abuse of legal process . . . shall be punished . . . ") (emphasis added).[4] Likewise, the phrase "labor and services" does not limit what may be considered "labor," let alone provide for an exemption for labor performed in a custodial setting as CoreCivic claims. Accordingly, courts have interpreted the phrase broadly. *See, e.g., United States v. Kaufman*, 546 F.3d 1242, 1260-62 (10th Cir. 2008) (refusing to limit "labor or services" to "work in an economic sense," upholding jury instructions defining labor as "expenditure of physical or mental effort" and services as

---

[4] CoreCivic concedes the text does not limit liability to only those acts involving international trafficking victims. Pet. at 14, n.6.

"conduct or performance that assists or benefits someone or something"); *United States v. Marcus*, 487 F. Supp. 2d 289, 304 (E.D.N.Y. 2007), *vacated on other grounds,* 538 F.3d 97 (2d Cir. 2008), *rev'd on other grounds*, 560 U.S. 258 (2010) (defining labor or services to include website development and recruitment of other trainees); *cf. United States v. Norris*, No. 1:05-CR-479-JTC, 2007 WL 9655844, at *8 (N.D. Ga. June 27, 2007) ("[N]o person could be said not to understand the term 'forced labor.'") *report and recommendation adopted*, 2007 WL 9657881 (N.D. Ga. Sept. 20, 2007).  Language this clear should foreclose further inquiry. *See United States v. Callahan*, 801 F.3d 606, 618 (6th Cir. 2015) (holding § 1589 is unambiguous and therefore refusing to consider legislative history).

Yet, CoreCivic, relying on the "absurdity doctrine," urges the Court to disregard the statutory text because it ostensibly conflicts with CoreCivic's policy preferences.  *See* Pet. at 12.  The absurdity doctrine does not apply here.  This Court has set forth an "exacting standard for finding absurdity" that requires "ambiguity in statutory language be shown *before* a court delves into legislative history."  *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224, 1228 (11th Cir. 2001) (emphasis included).   As CoreCivic apparently concedes ("CoreCivic's argument is not that any one word within the statute must be construed contrary to its plain meaning." Pet. at 12), and other courts have found,

13

there is no ambiguity in the statute.  *See Callahan*, 801 F.3d at 618; *supra* Section

II.A.  The inquiry should end there.  *See CBS Inc.*, 245 F.3d at 1223.[5]

CoreCivic notes three instances where courts have departed from the plain

language of the TVPA, but those cases are inapposite.  In *United States v. Toviave*,

the court did not rely on the absurdity doctrine to justify wholesale exemptions

from the statute. Rather, the court declined to "criminalize activity [(child abuse)]

traditionally regulated by the states." 761 F.3d 623, 27 (6th Cir. 2014). *Toviave* did

not categorically exempt parents – or household chores – from the forced labor

statute.  *See Callahan*, 801 F.3d at 620 ("In *Toviave*, . . . we did *not* hold that

household chores do not constitute labor or services.") (emphasis included).  The

other TVPA cases CoreCivic cites are irrelevant because the courts did not apply

the absurdity doctrine or stray from the statute's plain language to the extent

CoreCivic urges the Court to do here.  *See Plaintiff A v. Schair*, No. 2:11-CV-

00145-WCO, 2012 WL 12864367, at *3 (N.D. Ga. Nov. 28, 2012) (interpreting

plain language of "any" in § 1595(a) in context of statute); *United States v.*

---

[5] CoreCivic cites to *Durr v. Shinseki*, 638 F.3d 1342 (11th Cir. 2011), *Clark v. Riley*, 595 F.3d 1258 (11th Cir. 2010), and *In re Lehman*, 205 F.3d 1255 (11th Cir. 2000), but those cases are distinguishable.  In those cases, the Court interpreted statutory language consistent with the law's framework to avoid nullifying entire sections of the statute.  Here, § 1589's plain language is in harmony with the rest of the TVPA and does not nullify, or even conflict with, the statutory framework.

*McTague*, No. 5:14-CR-055, 2017 WL 1378425 at *5 (W.D. Va. Apr. 10, 2017)

(relying on statute's definition of "serious harm" to interpret phrase).

Here, "[t]he language of the statute is entirely clear; and if that is not what

Congress meant then Congress has made a mistake and Congress will have to

correct it." *Conroy v. Aniskoff*, 507 U.S. 511, 528 (1993) (Scalia, J., concurring).

### 2. The Legislative History of § 1589 Confirms the TVPA's Broad Reach and Remedial Purpose.

Even if the plain text of the statute were ambiguous, the legislative history of

§ 1589 makes clear it was intended to *broaden* the TVPA's reach, not codify the

arbitrary limitations CoreCivic suggests.  Congress enacted § 1589 to make it clear

beyond any doubt that the TVPA punished labor coerced by psychological as well

as physical threats or injury as a rebuttal to the Supreme Court's decision in *United

States v. Kozminski*, 487 U.S. 931, 952 (1988).  In *Kozminski*, the Court construed

"involuntary servitude" under 18 U.S.C. § 1584 narrowly to include only forced

labor by means of physical harm or abuse of the legal process.  *See id.*   In

response, Congress enacted § 1589 to broaden significantly the scope of federal

protections to "combat severe forms of worker exploitation that do not rise to the

level of involuntary servitude as defined in *Kozminski*."   *Kaufman*, 546 F.3d at

1261 (quoting H.R. Conf. Rep. No. 106–939, at 101, as reprinted in 2000

U.S.C.C.A.N. 1380, 1393).

Consistent with congressional intent, the jurisprudence on forced labor now extends well beyond sex work, slavery, and trafficking and into a variety of industries and types of labor. *See, e.g.*, *United States v. Calimlim*, 538 F.3d 706, 708-10 (7th Cir. 2008) (domestic worker); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 822, 824-25 (E.D. La. 2014) (welders); *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 790 F. Supp. 2d 1134, 1138 (C.D. Cal. 2011) (teachers). For example, in *Nunag-Tanedo*, a case involving the forced labor of teachers, the court found it had a "duty . . . to provide a forum for the alleged victims [], regardless of the severity of the alleged circumstances" because congressional intent "shows the broad reach of the TVPA and the broad class of individuals whom it protects." 790 F. Supp. 2d at 1147.

CoreCivic ignores the addition of § 1589 to the TVPA entirely and instead urges the Court to consider "clues" supposedly indicative of congressional intent. Pet. at 18-20. The district court correctly declined to consider CoreCivic's hints because "these textual clues from other statutes do nothing to undermine the plain language of the TVPA." Doc. 38 at 9 n.1. In addition, the "clues" require this Court to consider a number of factual issues, including whether CoreCivic is complying with its contractual obligations and performing a "federal function"; whether CoreCivic is paying in excess of the alleged $1 per day "cap"; and whether Plaintiffs perform work that goes far beyond basic housekeeping tasks.

16

"The purpose of § 1292(b) is not to provide interlocutory appellate review of such fact-driven issues." *Drummond*, 885 F.3d at 1337.

### 3. Plaintiffs Have No Duty to Enrich a Private, For-Profit Corporation.

CoreCivic argues that it should be permitted to force the labor performed by Plaintiffs because such labor is "expected" of detainees in custody. *See* Pet. at 15. CoreCivic's argument fails because the law does not require Plaintiffs to enrich a private corporation.

CoreCivic relies on a Fifth Circuit case, *Channer v. Hall*, that was decided under the "civic duty exception" to the Thirteenth Amendment. 112 F.3d 214 (5th Cir. 1997). In *Channer*, a *pro se* detainee of the Immigration and Naturalization Service ("INS"), ICE's predecessor agency, brought an action against the warden of a federal Bureau of Prisons facility and other federal officials for reducing him to involuntary servitude by compelling him to work under threat of solitary confinement. *Id.* at 215. The *Channer* court relied on *Kozminski* to hold that the federal government may require a communal contribution from an INS detainee and not violate the Thirteenth Amendment's prohibition on involuntary servitude. *Id.* at 218. The fatal defect in CoreCivic's argument is that when the Fifth Circuit decided *Channer*, the law upon which Plaintiffs' forced labor claim is based on did not exist. Because Congress's purpose in enacting § 1589 was to expand the narrow construction in *Kozminski*, CoreCivic's reliance on *Channer* misses the

17

mark.  *See Menocal*, 113 F. Supp. 3d at 1133 ("[§ 1589] is . . . broader than the

language at issue in *Kozminski* and *Channer*, and intentionally so.").

Moreover, because the legislative reaction to *Kozminski* was to provide a

remedial avenue to individuals coerced to perform work by means of serious harm,

including psychological harm, CoreCivic's argument would contravene the very

purpose of the forced labor statute's enactment.   This Court has noted "the

psychological effects of spending extended periods in solitary confinement . . .

may impair an inmate's mental capabilities[.]" *Hutchinson v. Florida*, 677 F.3d

1097, 1106 (11th Cir. 2012); *see also United States v. McNeal*, No. 2:15CR199-

MHT, 2018 WL 1811474, at *2 (M.D. Ala. Apr. 17, 2018) ("[E]xtended isolation

of prisoners in conditions of solitary confinement poses a substantial risk of

psychological harm and decompensation").  Although Congress expressly included

psychological harm as a means of coercion under § 1589, CoreCivic argues that it

may still somehow legally require work to be compelled under threat of solitary

confinement.  It is this conclusion – not a straightforward reading of the plain

language of the statute – that would lead to absurd and unjust results.

Even if *Channer*'s civic duty exception applied here – which it does not –

the exception is inapplicable to for-profit, private prison companies like CoreCivic.

The Supreme Court has repeatedly accepted arguments from private prison

corporations that they do not become federal actors subject to liability as a result of

contracting with the federal government.  *See Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (rejecting proposition that private prison-management firm is federal agent like federal employee); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001) (refusing to imply *Bivens* remedy against private prison company); *Richardson v. McKnight*, 521 U.S. 399, 409 (1997) (denying qualified immunity to guards employed by CoreCivic, formerly known as Corrections Corporation of America).

This distinction is critical.  Unlike the federal-run facility in *Channer*, CoreCivic has a profit motive that animates its staffing and management decisions at Stewart.  The forced labor that Plaintiffs allege occurred not at the urging of the federal government, but rather, at the insistence of CoreCivic – a "firm [that] is systematically organized to perform a major administrative task *for profit*." *Richardson*, 521 U.S. at 409 (emphasis added).  In contrast to *Channer*, the forced labor in this case profits a private corporation, not a government entity. *See Channer*, 112 F.3d at 219 ("*[T]he federal government* is entitled to require communal contribution by an INS detainee in the form of housekeeping tasks.") (emphasis added); *Jobson v. Henne*, 355 F.2d 129, 132 (2d Cir. 1966) ("[T]he *states* are not [ ] foreclosed from requiring that a lawfully committed inmate perform without compensation certain chores designed to reduce the financial burden placed on a *state* . . . .") (emphasis added).  Thus *Channer* has no

19

persuasive value where, as here, the coercive defendant is a private actor.  *See Novoa*, 2018 WL 3343494, at *13 (holding *Channer's* civic duty exception "inapplicable to a claim against a private prison corporation contracting with the federal government to run an immigration detention facility"); *Owino*, 2018 WL 2193644, at *10 (same).[6]

Nor does CoreCivic's focus on the fact of involuntary confinement in *Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997) or *Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996) have relevance to this case.  Both cases involve *correctional* facilities and the power of those facilities to compel criminal detainees to work to "serve various institutional missions of the prison" including "rehabilitation."  *Villarreal*, 113 F.3d at 207; *see also Danneskjold*, 82 F.3d at 43 ("Voluntary work serves all of the *penal* functions of forced labor").  Immigrant detention centers do not carry the same penal or rehabilitative missions because detainees are not held by reason of having been convicted of or charged with a crime. *See Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896).

---

[6] CoreCivic argues the distinction between government and for-profit entities is "immaterial," but the Supreme Court disagrees. *See, e.g.*, *Richardson*, 521 U.S. at 409 (denying qualified immunity to CoreCivic prison guards in part because it is a for-profit entity).  Thus, like CoreCivic's reliance on *Channer*, its citations to out-of-circuit cases involving alleged involuntary servitude at government-run facilities are unavailing. *See* Pet. at 15-17.

### III.   THE APPEAL WILL NOT TERMINATE THE LITIGATION

The proposed appeal will not materially advance the termination of this litigation.  The Plaintiffs' unjust enrichment claim will survive regardless of the outcome of the TVPA question.    Contrary to CoreCivic's unsubstantiated contention, the unjust enrichment claim is not "derivative" of the TVPA claim.  As the district court noted, an unjust enrichment claim can be premised on allegations of coercion.  Doc. 38, at 15 (citing *Estate of Crook v. Foster*, 775 S.E.2d 286, 287-90 (Ga. Ct. App. 2015)).    Thus, even if CoreCivic cannot be held liable for its coercive conduct under the TVPA, it could still be found liable for this same conduct under Plaintiffs' unjust enrichment theory.  Further, the unjust enrichment claim is alleged on a class-wide basis and will require considerable resources to determine class certification, liability, and damages.  Deciding this appeal will therefore not "substantially reduce the amount of litigation left in the case." *McFarlin*, 381 F.3d at 1259.

Nor will answering this question in favor of CoreCivic prevent detained immigrants from wholesale filing lawsuits against private prison companies regarding prison work programs.  Many of the cases that CoreCivic points to as evidence of an impending deluge of litigation plead claims that are separate from the TVPA, including wage and other state law claims.  *See, e.g.*, *Martha Gonzalez v. CoreCivic, Inc*., No. 1:18-cv-00169-LY (W.D. Tex. 2018) (alleging negligence

claim); *Owino*, No. 3:17-cv-01112-JLS-NLS (alleging state wage claim); *Carlos Gonzalez v. CoreCivic, Inc.*, No. 3:17-cv-02573-JLS-NLS (S.D. Cal. 2017) (same). Like Plaintiffs' unjust enrichment claim, these potential claims remain plausible regardless of the outcome here.  Though CoreCivic would certainly like to have immunity from any and all claims related to abuses in its work programs, granting this appeal will not achieve that goal.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request the Court deny Defendant's Petition for Permission to Appeal pursuant to 28 U.S.C. § 1292(b).

DATED: September 17, 2018                    Respectfully submitted,

/s/ Meredith B. Stewart
Meredith B. Stewart
Southern Poverty Law Center
201 St. Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org

R. Andrew Free
Law Office of R. Andrew Free
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
Andrew@ImmigrantCivilRights.com

Azadeh Shahshahani
Priyanka Bhatt
Project South

22

9 Gammon Avenue SE
Atlanta, GA 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

*Attorneys for Plaintiffs/Respondents*

23

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.     This document complies with the type-volume limit of Fed. R. App. P. 5(c)(1) because this document contains 5,188 words, excluding the part of the documents exempted by Fed. R. App. P. 32(f).

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

DATED: September 17, 2018                 /s/ Meredith B. Stewart
                                          Meredith B. Stewart
                                          *Attorney for Plaintiffs/Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.  Notice of this filing will be sent by email to all parties by the Court's electronic filing system.

A true copy of the foregoing also will be e-mailed to counsel of record in the district court case as follows:

Stephen E. Curry          securry@currylawfirm.com
Nicholas D. Acedo         nacedo@strucklove.com
Ashlee B. Hesman          ahesman@strucklove.com
Rachel Love               rlove@strucklove.com
Daniel P. Struck          dstruck@strucklove.com

/s/ Meredith B. Stewart
Meredith B. Stewart
*Attorney for Plaintiffs/Respondents*

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  18-90025-G

_____

CORECIVIC INC,

Petitioner,

versus

WILHEN HILL BARRIENTOS,
individually and on behalf of all others similarly situated,
MARGARITO VELAZQUEZ-GALICIA,
individually and on behalf of all others similarly situated,
SHOAIB AHMED,
individually and on behalf of all others similarly situated,

Respondents.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

Before TJOFLAT, MARTIN, and ROSENBAUM, Circuit Judges.

BY THE COURT:

Petitioner CoreCivic Inc.'s petition for permission to appeal pursuant to 28 U.S.C.

§ 1292(b) is GRANTED.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 12, 2018

Stephen E. Curry
Curry Law Firm
3508 PROFESSIONAL CIR STE C
AUGUSTA, GA 30907-2220

Daniel P. Struck
Struck Love Bojanowski & Acedo PLC
3100 W RAY RD STE 300
Suite 300
CHANDLER, AZ 85226

Appeal Number:  18-90025-G
Case Style:  CoreCivic Inc v. Wilhen Barrientos, et al
District Court Docket No:  4:18-cv-00070-CDL

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.**

GENERAL DOCKET NUMBER: 18-15081-G

Enclosed is the court's order granting permission to appeal. Pursuant to this order this cause has been docketed under the general docket number shown above which should be used in all future correspondence and filings instead of the previously assigned number.

11th Cir. R. 33-1(a) requires appellant to file a Civil Appeal Statement in most civil appeals. You must file a completed Civil Appeal Statement, with service on all other parties, within 14 days from the date of this letter. Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov, and as provided by 11th Cir. R. 33-1(a).

Every motion, petition, brief, answer, response and reply filed must contain a Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Appellants/Petitioners must file a CIP within 14 days after the date the case or appeal is docketed in this court; Appellees/Respondents/Intervenors/Other Parties must file a CIP within 28 days after the case or appeal is docketed in this court, regardless of whether appellants/petitioners have filed a CIP. See FRAP 26.1 and 11th Cir. R. 26.1-1.

On the same day a party or amicus curiae first files its paper or e-filed CIP, that filer must also complete the court's web-based CIP at the Web-Based CIP link on the court's website. Pro se filers (except attorneys appearing in particular cases as pro se parties) are **not required or authorized** to complete the web-based CIP.

Pursuant to Fed.R.App.P 5(d), appellant must within fourteen (14) days after the date of entry of this order pay to the district court clerk the docketing and filing required by statute (28 U.S.C. § § 1913, 1917). This appeal will be dismissed without further notice [11th Cir. R. 42-1(b)] unless the fee is paid within fourteen (14) days, with notice to this office.

Pursuant to Fed.R.App.P. 10(b), appellant must also within fourteen (14) days order any transcript required. A Transcript Information Form is available from the district court clerk. Appellant is required to file and serve copies of the form in accordance with the instructions included on the form. UNLESS A TRANSCRIPT IS ORDERED, APPELLANT'S BRIEF MUST BE FILED WITHIN 40 DAYS OF THE DATE THE APPEAL WAS DOCKETED IN THIS COURT. See 11th Cir. R. 12-1 and 31-1. This appeal will be dismissed without further notice [11th Cir. R. 42-1(b)] unless the appellant files a Transcript Information Form within fourteen (14) days.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1. In addition, all attorneys (except court-appointed counsel) who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days. Application for Admission to the Bar and Appearance of Counsel Form are available on the Internet at www.ca11.uscourts.gov. The clerk may not process filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-6.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Bryon Robinson, G
Phone #: (404) 335-6185

Enclosure(s)

DKT-10 Petition Permission Granted

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 12, 2018

Stephen E. Curry
Curry Law Firm
3508 PROFESSIONAL CIR STE C
AUGUSTA, GA 30907-2220

Daniel P. Struck
Struck Love Bojanowski & Acedo PLC
3100 W RAY RD STE 300
Suite 300
CHANDLER, AZ 85226

Appeal Number:  18-15081-G
Case Style:  Shoaib Ahmed, et al v. CoreCivic Inc
District Court Docket No:  4:18-cv-00070-CDL

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.**

The referenced case has been docketed in this court. Please use the appellate docket number noted above when making inquiries.

Attorneys who wish to participate in this appeal must be properly admitted either to the bar of this court or for this particular proceeding pursuant to 11th Cir. R. 46-1. In addition, all attorneys (except court-appointed counsel) who wish to participate in this appeal must complete and return an appearance form within fourteen (14) days. Application for Admission to the Bar and Appearance of Counsel Form are available on the Internet at www.ca11.uscourts.gov. The clerk may not process filings from an attorney until that attorney files an appearance form. See 11th Cir. R. 46-6.

11th Cir. R. 33-1(a) requires appellant to file a Civil Appeal Statement in most civil appeals. You must file a completed Civil Appeal Statement, with service on all other parties, within 14 days from the date of this letter. Civil Appeal Statement forms are available on the Internet at www.ca11.uscourts.gov, and as provided by 11th Cir. R. 33-1(a).

Every motion, petition, brief, answer, response and reply filed must contain a Certificate of Interested Persons and Corporate Disclosure Statement (CIP). Appellants/Petitioners must file a

CIP within 14 days after the date the case or appeal is docketed in this court; Appellees/Respondents/Intervenors/Other Parties must file a CIP within 28 days after the case or appeal is docketed in this court, regardless of whether appellants/petitioners have filed a CIP. See FRAP 26.1 and 11th Cir. R. 26.1-1.

On the same day a party or amicus curiae first files its paper or e-filed CIP, that filer must also complete the court's web-based CIP at the Web-Based CIP link on the court's website. Pro se filers (except attorneys appearing in particular cases as pro se parties) are **not required or authorized** to complete the web-based CIP.

Pursuant to Eleventh Circuit Rule 42-1(b) you are hereby notified that upon expiration of (14) days from this date, this appeal will be dismissed by the clerk without further notice unless the default(s) noted below have been corrected:

Pay to the DISTRICT COURT clerk the docketing and filing fees, with notice to this office, **or** request leave to proceed in forma pauperis on appeal in the district court. See Fed.R. App.P. 24(a). If the district court denies such leave, appellant may file in this court a Motion to Proceed in forma pauperis in this court with a financial affidavit.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Bryon Robinson, G
Phone #: (404) 335-6185

DKT-2 Appeal WITH Deficiency