IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, MARGARITO VELAZQUEZ GALICIA, and SHOAIB AHMED individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>        Defendant. | Civil Action No. 4:18-cv-00070-CDL |
| CORECIVIC, INC.,<br><br>        Counter-Claimant,<br><br>v.<br><br>WILHEN HILL BARRIENTOS, MARGARITO VELAZQUEZ GALICIA, and SHOAIB AHMED individually and on behalf of all others similarly situated,<br><br>        Counter-Defendants. | |

## ORDER FOR DATA PRESERVATION AND PRODUCTION

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter. For the purposes of this stipulation, ESI is defined as any type of information that is created, used, and stored in digital form and accessible by digital means, including but not limited to e-mails, text, chat, and instant messages; video, audio, and image files; word processing and spreadsheet files; and other structured and unstructured data contained on any media type, whether computer, mobile device, tape, hard disk drive, cloud storage, or other storage technology.

1

**General Principles**

1.      This Stipulation and Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Court's Local Rules, General Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

2.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the litigation consistent with the Court's Local Rules, General Orders, and any other applicable orders issues or rules promulgated by the Court.

3.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this Stipulation and Order shall be construed so as to ensure the prompt, efficient, and cost-effective exchange of information consistent with Fed. R. Civ. P. 1 and any orders issued by the Court.

       a.   Except as specifically limited herein, this Stipulation and Order governs the production of discoverable documents produced by the Parties during the litigation.

       b.   This Stipulation and Order shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure or the Court's orders, or imply that discovery produced under the

terms of this Stipulation and Order is properly discoverable, relevant, or admissible in this or any other action.

c.   All documents that are disclosed or that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein, subject to any Protective Order which may be entered by the Court. Nothing in this Stipulation and Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable. Additionally, nothing in this Stipulation and Order shall be deemed to waive or limit any Party's right to move for an order to compel discovery pursuant to Fed. R. Civ. P. 37(a)(3). Likewise, nothing in this Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order pursuant to Fed. R. Civ. P. 26(c), on the ground that sources are not reasonably accessible because of undue burden or cost.

4.     The Parties agree to promptly alert the other Party concerning any technical problems associated with complying with this Stipulation and Order. To the extent compliance with this Stipulation and Order is believed to impose an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

5.     The Parties will attempt to resolve, in person, in writing (including e-mail), or by telephone, disputes regarding the issues set forth herein prior to seeking relief from the Court.  If

the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek the Court's intervention in accordance with the Court's procedures and applicable rules.

**Liaisons**

6.      The Parties will identify liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Plaintiffs' liaison is Jessica Hasen. Defendant's liaison is Michael Giardina. Each e-discovery liaison will be, or will have access to, those who are knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties' liaisons will be present during conferences about ESI, as possible, and will help resolve disputes without Court intervention wherever possible.

**ESI Discovery Procedures**

7.      On-site inspection of electronic media. Such an inspection shall not be required absent a demonstration by the Requesting Party of specific need and good cause or by agreement of the parties.

8.      Time zone. The parties agree that the entirety of each party's ESI should be processed using a single zone, identified as a fielded value in the production database load file.

9.      De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources based on MD5 or SHA-1 hash values, applied at the family value. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. The duplicate custodian information removed during the de-duplication process must be tracked and produced in a duplicate/other custodian field in the database load file.

10.     Email Threading and Suppression. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Any party electing to utilize an email threading and suppression workflow in this manner must reasonably ensure that all non-privileged responses, replies, forwards, and blind copies relating to any responsive e-mail have been produced.

11.     Parent-Child Document Relationships. The parties agree to produce full document families (i.e. an email and its attachments) in the same production set, with the parent-child relationship captured in the "BEGATTACH" and "ENDATTACH" fields in the database load file. Full document families will be produced even if a single part of the family, taken out of the family context, may be non-responsive.[1] Parties may withhold privileged documents from otherwise responsive document families by producing a single-page Bates-stamped TIFF image placeholder stating the document has been withheld for privilege. To the extent that the Producing Party believes there is good cause to deviate from this standard, it may also withhold, on a case-by-case basis, non-responsive or privileged parent documents or attachments, which are otherwise production-eligible, by producing a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been withheld as privileged or non-responsive. For any document withheld in this manner, the Producing Party shall still provide the applicable metadata fields, subject to modification for privilege, as set forth in Appendix 1 and Paragraph 35.

---

[1] However, the parties agree that 1 kb or zero-length .htm file, which do not contain any recognizable text, but rather which contain only html or xml code, such as mailto instructions in an email signature block may be omitted from the production at ingestion, and need not be produced.

12.     Hard Copy Documents. Hard copy documents should be scanned and produced as single-page, Group IV, 300 DPI TIFF images, with an .opt image cross-reference file and a delimited database load file (i.e., .dat). The database load file should contain the following fields: "BEGBATES," "ENDBATES," "BEGATTACH," "CUSTODIAN," "PGCOUNT," "CDVOL," "DOCTYPE," "CONFIDENTIALITY," and "EXTRACTEDTEXT"[2] as defined in the attached Appendix 1: Metadata and Coding Fields. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. Scanned documents shall maintain the orientation of the original document. If an original document contains relevant information in color that is necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images. To the extent that the Producing party OCR's the document for its own benefit, OCR should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. OCR shall be in a separate searchable ASCII or Unicode text file for each document, and those files will be included in the production deliverable. Each file will be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**Search Methodology**

13.     Responsive documents that are known to exist (as opposed to documents that would only become known to the Producing Party through an email or system search) will be

---

[2] EXTRACTEDTEXT need not be populated for handwritten notes.

produced in the format(s) set forth in this Stipulation and Order and in the normal course of discovery, i.e., as required under Rules 26 and 34.

14.    For documents that would only become known to the Producing Party through an email or system search, the parties shall timely confer to attempt to reach agreement on an iterative search protocol, including appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

15.    Prior to running searches:

a.    The Producing Party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. If the Producing Party runs any sample searches, it may provide hit counts for each search query.

b.    The Requesting Party is entitled to, within 14 days of the Producing Party's disclosure, add no more than 10 search terms or queries to those disclosed by the Producing Party absent a showing of good cause or agreement of the parties.

c.    The following provisions apply to search terms / queries of the Requesting Party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term or query.

A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term or query unless they are variants of the same word. The Producing Party may identify each search term or query return overbroad results, demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

16.     After production: within 21 days of the Producing Party notifying the Receiving Party that it has substantially completed the production of documents responsive to a request, the Receiving Party may request no more than 10 additional search terms or queries consistent with Paragraph 15(c).

17.     The mere fact that a document is hit or captured by the application of any search term or query does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party based upon review of the documents hit or captured by the application of agreed-upon search terms.

18.     Upon reasonable request, and subject to the remaining discovery limits, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

**Form of Production**

19.     ESI will be produced to the Requesting Party as single-page, Group IV TIFFs at a resolution of 300 DPI or greater. All ESI should be produced with a delimited database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection. To the extent metadata does not exist, is not reasonably accessible or available for any documents produced, or would be unduly burdensome to provide, the Parties will meet and confer in good faith, but nothing in this Stipulation and Order shall require any party to engage in any computer or document forensics, or manual review and data entry, to extract, capture, collect, or produce such data. The Parties also agree that certain documents identified and collected as part of a targeted collection, including but not limited to files which originated as ESI, but are sent via e-mail or other means to Producing Counsel, may be produced without metadata fields. The Parties will meet and confer to the extent that one Party disagrees with the identification of certain documents as part of a targeted collection subject to the preceding sentence. TIFF images should show any and all text and images that would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. Color originals may be produced in black & white TIFF image format only if the loss of color does not detract from the usability or the ability to understand the information imparted in the original is not reduced. Unless otherwise agreed to by the parties, presentation and spreadsheet files produced in TIFF image format should be produced in color. Categorical or wholesale requests by the Requesting Party to reproduce documents in color are deemed invalid, but either Party may request by Bates number(s) a replacement set of images in color.

20.     Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as source code, audio, video, spreadsheet, presentation, database, and drawing files, will be produced in native format. The parties may elect to utilize native redaction software tools such as "Blackout" to apply redactions directly to native files and produce a redacted native file instead of a TIFF image.[3] If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NativeLink field. To the extent either Party believes that native files should be produced for a specific document or class of documents not specified in this Stipulation and Order, or to the extent records do not easily conform to native or image format (i.e., structured data), the Parties will meet and confer in good faith regarding the production.

21.     The Producing Party will provide an .opt image cross-reference file for all images. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata, and, where applicable, the revision history.

---

[3] The parties may, at their discretion, produce a redacted TIFF image file in lieu of a native file, if redactions are necessary, and individual application may be more efficient. To the extent the Requesting Party believes that any redactions applied render a file insufficiently useable, such documents will be identified by Bates number(s), and the Parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.

22.     If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

23.     The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in either searchable ASCII or Unicode text format and shall be named with a unique Bates Number corresponding to the first page of the production version of the document.

24.     To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database (including but not limited to documents with the following file extensions: .accbd, .accde, .dbf, .nsf, .mdb, .sas, .sas7dbat, and .sql), the Parties will endeavor to extract such data into a single table in .xls, .csv, or text-delimited format, with header-rows. If the Producing Party contends that such data cannot easily be exported into such a format, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

25.     Documents shall be exchanged on DVD-ROMs, CD-ROMS, USB drives, portable hard drives, or through secure file transfer protocols (e.g., FTP) or similar secure transmission. Documents produced by Plaintiffs need only be sent to Michael Giardina, Jacob Lee, and Sherri Wolford. Documents produced by Defendant via FTP need only be sent to: Jessica Hasen. The receiving designees will be responsible for ensuring any other co-counsel has access to the document production. The production media shall be labeled with the Volume Number and the Bates Number range(s) of the materials should be provided in the file name of the volume, on the physical media, and/or in the transmittal documentation (whether by letter or e-mail) for each volume. Any document production that may contain "Confidential Information" (subject to any Protective Order which may be entered by the Court); "non-public personal information" (as

defined in the Gramm-Leach-Bliley Act); or "Confidential Health Information" (as defined and protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy Rule, 45 C.F.R., Parts 160 and 164, and/or any other applicable state or federal law or regulation concerning confidential health information) may be produced in encrypted form and the production media shall be labelled "MAY CONTAIN CONFIDENTIAL INFORMATION"; "MAY CONTAIN NON-PUBLIC PERSONAL INFORMATION"; or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt or "unlock" the files.

**Preservation of ESI**

26.     The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

27.     Absent a showing of good cause by the Requesting Party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

28.     The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made.

29.     Except as provided below, the Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably

accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in not reasonably accessible sources may be substantially outweighed by the burden and cost of preservation, collection, review, and production of ESI from sources that are not reasonably accessible. The parties agree that the following categories of ESI are not reasonably accessible and need not be preserved:

a. Data retained only on back-up tapes.

b. Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics.

c. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

d. On-line access data such as temporary internet files, history, cache, cookies, and the like.

e. Data stored on photocopies, scanners and fax machines.

f. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

g. Back-up data that are duplicative of data that are more accessible elsewhere.

h. Workstation, server, system or network logs.

i. Data remaining from systems no longer in use that is unintelligible on the systems in use.

j. Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of

all such electronic data is automatically saved or synched in real time

elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

30.    During the course of this litigation, the Parties may later agree that any of these categories of ESI is reasonably accessible, and likewise, may also agree that any other category of ESI is not reasonably accessible, without requiring a formal amendment of this Stipulation and Order.

31.    Unless otherwise agreed to or ordered by the Court, the parties do not have to obtain a forensic image of the preserved data if the native files and associated metadata are preserved.

**Phasing**

32.    The Producing Party will endeavor to produce known and responsive documents pursuant to Paragraph 13 first. When a production of collected ESI in response to a Request for Production cannot be completed within the time specified in the request, the Parties will meet and confer to discuss prioritization for the collection, processing, and review of the production so that (1) the ESI is produced within a reasonable period of time as required by Fed. R. Civ. P. 34(b)(2)(B), and (2) the ESI that is most relevant and responsive to the subject matter, claims, issues, and defenses is produced first, in proportion to the relative technical difficulty and resource burden to conduct such collection, processing, and review. ESI so collected will be produced in phases, and the Parties will continue to meet and confer regarding the need for, and if necessary, to prioritize the subsequent order of, later waves of production.

33.    Nothing in this Stipulation shall prevent a party from requesting that any information or documents identified above be preserved and produced upon demonstrating a

particular need for such evidence that justifies the burden of preservation and retrieval, as provided in Fed. R. Civ. P. 26(b)(2)(B) or otherwise.

**Privilege and Privilege Logs**

34.    A Producing Party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Stipulation and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection).

35.    For ESI, the privilege log may be generated using available metadata, including author or to/from/cc/bcc names, the subject matter, custodian, date sent/date created (as applicable), date received or date modified (as applicable), filename, custodian, and hashvalue. If the Requesting Party requires further information to assess the claim of privilege, it shall explain in writing the need for such information and identify, by Bates number(s) or other unique identifier, each document for which it seeks this information. Within 10 business days of such a request, the Producing Party must either (1) provide the requested information or (2) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try and reach a mutually agreeable solution. To the extent that the Producing Party believes any metadata field above, if provided, would reveal privileged information, that Party may amend that field to avoid disclosure of privileged information while ensuring that, at minimum, all information required by Fed. R. Civ. P. 26(b)(5) is included. The Producing Party must indicate where such amendment was made by counsel.

36.    Privilege logs will be produced to all other Parties no later than 15 business days after delivering a substantially complete production unless an earlier deadline is agreed to by the Parties.

37. Redactions need not be logged so long as the basis for the redaction is clear on the face of the redacted document.

38. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and need not be produced.

39. The Parties agree that the following privileged communications or documents need not be included in a privilege log: (a) any law firm communications internal to a law firm representing any Party; (b) any communications between law firms representing any Party or Parties with common interests; (c) and communications regarding litigation holds or preservation, collection, or review in this or any other litigation or arbitration, including communications to or from outside legal counsel for any Party;

> ADDED BY THE COURT:  Given the items above that are exempted from the privilege log, the Court is unconvinced at this time that including other items in the privilege log will be unduly burdensome on Defendant.

40. The Parties agree that an entire family will be treated consistently as privileged, with respect to all attachments and all portions of the email thread, so that the Parties may save time and proceed more expeditiously than redacting each portion of a lengthy e-mail thread, with the exception of any email thread in which non-privileged communications occur subsequent in time to the privileged communications on the thread. In that case, the Party must undertake all efforts, including producing a redacted copy of the e-mail, to ensure that all attachments and messages which are not privileged have been produced.

**Non-Waiver and Clawback**

41.     If information subject to a claim of attorney-client privilege, work product immunity, or any other privilege or immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or immunity for such information under the law.

42.     If a Party receives a document or information that the Receiving Party knows or has reason to believe may be subject to a claim of attorney-client privilege, work product immunity or any other applicable privilege or immunity, the Receiving Party shall: (1) promptly notify the Producing Party (including non-parties responding to a subpoena duces tecum); (2) immediately cease reading the document; (3) upon request from the Producing Party, promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other subsequent copies generated by the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (4) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

43.     If a Party (or subpoenaed non-party) discovers that it has inadvertently produced a document or information that is subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity, it shall promptly inform the Receiving Party that the document or information is privileged or otherwise protected, and indicate whether or not any of the metadata contains any privileged information. Should the metadata for any such document contain privileged information, a replacement load file for that information, complying with Paragraph 35, should be provided as soon as possible following, if not contemporaneously with, the notice. Upon receiving such notice, the Receiving Party shall: (1) immediately cease

reading the document; (2) promptly and permanently delete all non-placeholder images, native files, and extracted text files, as well as all other subsequent copies generated by the Receiving Party, and any metadata for which the Producing Party has provided a replacement; and (3) certify in writing to the Producing Party that the non-placeholder images, native files, extracted text, subsequently generated copies, and replaced metadata have been properly deleted and/or destroyed.

44.      At any time a Party is notified that a document or information that is subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or immunity was inadvertently produced, and the document or information is already part of a filing with the Court, the Filing Party shall either withdraw the document or information or the Parties shall agree to brief the issue for the Court pursuant to applicable law, including the Federal Rules of Civil Procedure, this Court's Local Rules, General Orders, and any other applicable orders issued by this Court or rules promulgated by this Court.

**Third Parties**

45.      A party that issues a subpoena duces tecum to a non-party (the "Issuing Party") shall include a copy of this Stipulation and Order with the subpoena and state that the parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party. If the non-party production is not Bates-stamped, the Issuing Party will brand the non-party production images with unique prefixes and Bates numbers prior to producing to the opposing party, consistent with the technical specifications outlined herein. Nothing in this Stipulation and Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the parties or third parties to object to a subpoena.

**Good Faith**

46.     The parties shall make their best efforts to comply with, and resolve any differences concerning compliance with, this Order. If a Producing Party cannot comply with any material aspect of this Order, such party shall inform the Requesting Party as to why compliance with the Order is unreasonable or not possible within fifteen (15) days after so learning. No party may seek relief from the Court concerning compliance with the Order unless it has first conferred in good faith with the other affected party to the action.

**No Effect on Discovery or Admissibility**

47.     This Stipulation and Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. Nothing in this Stipulation and Order shall be construed to affect the admissibility of any document or data produced pursuant to it. All objections to the admissibility of any document or data are preserved and may be asserted at any time.

**Protective Order**

48.     Nothing in this Stipulation and Order shall be deemed to limit, modify, or override any provision of any Protective Order which may be entered by the Court.

**Modification**

49.     This Stipulation and Order may be modified by a further Stipulation and Order of the Parties or by the Court in the interests of justice or for public policy reasons.

        IT IS SO ORDERED.

        Signed: July 16,_____, 2020.


                        S/Clay D. Land
        _____
                        CLAY D. LAND
                        United States District Court Judge