IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| **WILHEN HILL BARRIENTOS, MARGARITO VELAZQUEZ GALICIA, and SHOAIB AHMED** individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>**CORECIVIC, INC.,**<br><br>        Defendant. | **Civil Action No. 4:18-cv-00070-CDL** |
| **CORECIVIC, INC.,**<br><br>        Counter-Claimant,<br>v.<br><br>**WILHEN HILL BARRIENTOS, MARGARITO VELAZQUEZ GALICIA, and SHOAIB AHMED** individually and on behalf of all others similarly situated,<br><br>        Counter-Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

CoreCivic's Counterclaim is the epitome of greed. It is a shameless pleading to this Court that CoreCivic is legally entitled to guaranteed double profits off the backs of detained immigrants.[1] CoreCivic receives from the United States government, and specifically U.S.

---

[1] Plaintiffs refer to individuals detained in Stewart as "detained immigrants" with the caveats that Plaintiffs intend the colloquial meaning of "immigrants" rather than the specific legal meaning as defined in 8 U.S.C. § 1101(a)(15) and that there are United States citizens detained in Stewart and in other civil immigration detention centers across the nation. *See, e.g.*, William Finnegan, *The Deportation Machine*, THE NEW YORKER (Apr. 29, 2013), https://www.newyorker.com/magazine/2013/04/29/the-deportation-machine (reporting on the case of Mark Lyttle, a U.S. citizen who was wrongfully detained in Stewart and deported to Mexico).

1

Immigration and Customs Enforcement ("ICE"), $62.03 per detained person per day of detention[2] at its privately owned and operated Stewart Detention Center ("Stewart") in Lumpkin, Georgia. Doc. 1 ¶ 25; *but see* Doc. 59 ¶ 25 (claiming insufficient knowledge about the amount of money CoreCivic receives per day per detained person). Included in that figure is a healthy profit component. Doc. 1 ¶ 26. But for CoreCivic, this is not enough.

CoreCivic operates a so-called Voluntary Work Program ("VWP") at Stewart, and through this program, CoreCivic uses detained immigrants to perform work that directly contributes to institutional operations. Without detained people's work, CoreCivic would have to pay federally contracted workers at least $7.25 per hour, and likely much more. Doc. 1 ¶ 31. Yet, for this work, CoreCivic pays detained people as little as $1 *per day*. *Id.* Plaintiffs and the putative class members have had no choice but to participate in the VWP. If they refuse, CoreCivic imposes punishments and withholds basic necessities from an already torturous existence. *See generally* Doc. 1 ¶¶ 36-60. For years, CoreCivic has been saving hundreds of dollars per week in labor costs for every single detained person at Stewart forced to participate in the VWP.

Faced with Plaintiffs' claims of forced labor and unjust enrichment, and the prospect of having to pay Plaintiffs and purported class members an equitable award to compensate for their work, CoreCivic claims it is nonetheless entitled to double profits. CoreCivic contends that it can deduct from any judgment in favor of Plaintiffs money for housing, food, and the other services it is legally obligated to provide to Plaintiffs and the class. In other words, according to CoreCivic's Counterclaim, detained immigrants would need to pay CoreCivic for the very things for which the U.S. government is already paying CoreCivic to provide at a rate that results in millions of dollars

---

[2] CoreCivic pays Stewart County 85 cents per detained person per day for its "administrative costs." Doc. 1 ¶ 25.

of profits for CoreCivic. *See* Doc. 1 ¶¶ 18-26. Inherent in CoreCivic's pleadings in this matter, including in its Counterclaim, is the notion that detained immigrants in CoreCivic's custody have diminished rights and should simply be grateful for any services they receive. Moreover, for the reasons set forth below, CoreCivic's Counterclaim fails as a matter of law because it is not ripe for adjudication and does not state a claim upon which relief can be granted.

## FACTUAL ALLEGATIONS

**I.    Plaintiffs' Lawsuit to End and Provide Relief from CoreCivic's Forced Labor Scheme and Unjust Enrichment**

Plaintiffs are immigrants who were detained at the time the Complaint was filed and were forced to work for Defendant CoreCivic at Stewart. Doc. 1 ¶ 3. CoreCivic is a for-profit corporation providing correctional and detention services. *Id.* ¶ 12.

Immigration detention has expanded roughly eightfold over the past two decades, with CoreCivic specifically benefitting from a rapidly increasing share of contracts for new detention beds. *Id.* ¶¶ 18, 20. As part of its immigration detention enterprise, CoreCivic owns and operates Stewart under contract with Stewart County, Georgia ("Stewart County"). *Id.* ¶¶ 13, 23. Stewart County maintains an Intergovernmental Service Agreement ("IGSA") with ICE to detain immigrants on behalf of ICE. *Id.* ¶13. Pursuant to the IGSA, ICE pays Stewart County $62.03 per detained immigrant per day. *Id.* ¶ 25. Under its 2006 contract with CoreCivic, the County keeps only 85 cents per detained immigrant per day for "administrative costs," with the remaining money –***$61.18 per detained person per day*** – going to CoreCivic. *Id.* With nearly 2,000 beds available to fill, CoreCivic made approximately $38 million in revenue from Stewart in 2016 alone. *Id.* ¶¶ 24-25.

CoreCivic has compounded its economic bounty through its so-called Voluntary Work Program. By systematically withholding basic necessities from detained immigrants to ensure that

CoreCivic has a readily available, captive labor force that cleans, maintains, and operates its facilities for subminimum wages under threats of solitary confinement, criminal prosecution, and other sanctions, CoreCivic has been able to expand tremendously its massive profits from detaining immigrants at Stewart. *Id.* ¶ 26.

Notwithstanding immigration detention's civil nature and purpose, detained immigrants face prison-like conditions at Stewart. *Id.* ¶ 16. At Stewart, most detained immigrants live in open dormitories where conflict and violence are commonplace. *Id.* ¶ 56. Up to 66 people share a single bathroom with three to four toilets, three to four urinals, and four sinks. *Id.* The shared bathroom is often filthy, and the showers do not have temperature control, instead providing only extremely hot water. *Id.* It is difficult for detained people to maintain personal hygiene because soap, toothpaste, and toilet paper are scant. *Id.* ¶ 42. Contact with the outside is limited, incoming packages containing personal items are prohibited,[3] and outgoing calls are prohibitively costly. *Id.* ¶¶ 46-47. Furthermore, CoreCivic fails to provide detained immigrants with adequate food. *Id.* ¶¶ 40, 43-44. Detained immigrants at Stewart regularly resort to purchasing extra food, clothing, and hygiene items with their own money at Stewart's commissary, which is owned and operated by CoreCivic. *Id.* ¶¶ 36-37.

Against this backdrop, CoreCivic operates the VWP, an allegedly "voluntary" work program whereby detained immigrants mop, sweep, and wax floors; scrub toilets and showers; wash dishes; do laundry; clean medical facilities; and cook and prepare food and beverages daily for the nearly 2,000 individuals detained at Stewart. *Id.* ¶¶ 2; 27-30. In return for this labor,

---

[3] *See* CoreCivic, Stewart Detention Center, Inmate Mail Information (Oct. 2017), *available at* https://www.corecivic.com/hubfs/_facilities/files/Stewart%20Detention%20Center%20Final%20 2.0.pdf.

4

CoreCivic pays detained immigrants between $1 and $4 per day and occasionally more for longer shifts. *Id.* ¶31.

Once a worker is in the program, CoreCivic maintains a corporate scheme, plan, and pattern of threatening detained immigrants who refuse to work, organize a work stoppage, or participate in a work stoppage with "disciplinary segregation" (solitary confinement), criminal prosecution, downgrading the detained immigrants' housing, and/or revoking access to the commissary, among other sanctions. *Id.* ¶ 48.

On April 17, 2018, Plaintiffs filed this lawsuit. Plaintiffs seek to represent a class of immigrants who were or are detained at Stewart and worked or work in the VWP. They allege that the VWP amounts to forced labor in violation of the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1594, and 1595, and unjust enrichment under Georgia common law. *Id.* ¶¶ 103-22. Plaintiffs seek injunctive relief to end to this unlawful scheme and to recover damages, statutory restitution, and an equitable award to remedy the unjust enrichment resulting from CoreCivic's illegal labor practices. *Id.* ¶¶ 93-94, 102, 113-16, 122.

The Court denied CoreCivic's motion to dismiss, stayed the case, and *sua sponte* certified a question of law for appeal. Doc. 38 at 16. On February 28, 2020, the Eleventh Circuit affirmed the Court's denial of CoreCivic's motion to dismiss and concluded that the TVPA applies to work programs in federal immigration detention facilities operated by private for-profit contractors. *Barrientos v. CoreCivic*, 951 F.3d 1269, 1280 (11th Cir. 2020). Following the Eleventh Circuit's ruling, Plaintiffs moved to lift the stay. Doc. 47. CoreCivic opposed that motion and moved for leave to file another motion to dismiss or to require Plaintiffs to file an amended complaint. Docs. 48, 49. The Court denied CoreCivic's motion and lifted the stay. Doc. 54. On June 17, 2020, CoreCivic answered Plaintiffs' Complaint and asserted a single counterclaim for unjust

enrichment. Doc. 59 Countercl. ¶¶ 1–21

## II. CoreCivic's Counterclaim Seeking Double Payment for Plaintiffs' "Basic Necessities"

In its Counterclaim, CoreCivic explains that it housed federal immigration detainees at Stewart during the times referenced in Plaintiffs' Complaint, "consistent with the terms and conditions of its detention services agreements with ICE, including administration of the Detainee Voluntary Work Program." Doc. 59 Countercl. ¶¶ 4, 9-10. CoreCivic further alleges that it provides "basic necessities" to all detained immigrants at Stewart, including Plaintiffs, "*[p]ursuant to its detention services agreement with ICE*." *Id.* ¶¶ 13, 19 (emphasis added). These "basic necessities" are alleged to include "housing, food, clothing, and recreation." *Id.* ¶ 13. Despite alleging that it provides basic necessities to Plaintiffs pursuant to its agreement with ICE, CoreCivic now claims that if Plaintiffs prevail on their unjust enrichment claim arising out of their forced labor, CoreCivic is "*equitably entitled*" to an award of "all costs and expenses incurred in providing basic necessities to Plaintiffs and the putative class members." *Id.* ¶ 21 (emphasis added). In other words, CoreCivic maintains that if Plaintiffs prove their claims, CoreCivic should nonetheless be able to deduct from Plaintiffs' damages award the costs of services ***that the U.S. Government already is paying CoreCivic to provide***.

Plaintiffs now move to dismiss CoreCivic's Counterclaim for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

The Court should dismiss CoreCivic's Counterclaim for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and, in the alternative, for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

When a court lacks subject matter jurisdiction, the proper remedy is dismissal under Rule

12(b)(1). *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234-35 (11th Cir. 2008) (per curiam); *Digit. Props. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir. 1997); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."). Courts do not have subject matter jurisdiction over claims not yet ripe. *Digit. Props.*, 121 F.3d at 591.

Subject matter jurisdiction challenges come in two forms: facial and factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990) (per curiam); *Hooks v. United States Postal Serv.*, No. 1:08-cv-116-WLS, 2010 WL 11651681, at *2 (M.D. Ga. Sept. 13, 2010). A facial attack requires the court to determine "if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence*, 919 F.3d at 1529); *In re Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994) (holding that, in a facial attack on subject matter jurisdiction, the non-moving party "receives the same protections as it would defending against a motion brought under [Federal Rule of Civil Procedure] 12(b)(6)" (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990))).[4] A party invoking federal court jurisdiction bears the burden of alleging facts that support jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)); *Owners Ins. Co. v. P & T Rentals, Inc.*, No. 1:18-cv-01, 2018 WL 9963816, *2 (M.D. Ga. May 23, 2010).

Under Rule 12(b)(6), a complaint that does not allege "enough facts to make a claim for

---

[4] A factual attack, on the other hand, challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Lawrence*, 919 F.2d at 1529.

relief plausible on its face" must be dismissed. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012). While a plaintiff need not make "detailed factual allegations," a well-pleaded claim "requires more than labels and conclusions, and a formulaic recitation of the elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and construe them, along with the reasonable inferences therefrom, in the light most favorable to the non-moving party. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

## ARGUMENT

### I. The Court Does Not Have Subject Matter Jurisdiction over CoreCivic's Counterclaim Because It Is Not Ripe

This Court should dismiss CoreCivic's Counterclaim because the allegations pleaded demonstrate as a facial matter that the Counterclaim is entirely contingent upon uncertain future events and is not ripe for review. Article III of the U.S. Constitution permits federal courts to adjudicate only "cases and controversies of sufficient concreteness to evidence a ripeness for review." *Digit. Props.*, 121 F.3d at 589. "Ripeness goes to whether the district court has subject matter jurisdiction to hear the case." *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.7 (11th Cir. 1989). "The ripeness doctrine involves consideration of both jurisdictional and prudential concerns." *Digit. Props.*, 121 F.3d at 589. The Eleventh Circuit considers two factors when determining whether a claim is ripe: "(1) the fitness of the issues for judicial decision and

(2) the hardship to the parties of withholding court consideration." *Id.* (citing *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

A claim for relief is not ripe for adjudication when it rests upon "contingent future events that may not occur as anticipated . . . ." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (quoting 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3532 (1984)); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1020 (1984) (concluding that Monsanto's challenge to the constitutionality of a statutory arbitration and compensation scheme was not ripe because an arbitrator had not yet made an award). The Eleventh Circuit and district courts within the Circuit have concluded in numerous cases that claims contingent on future events are not ripe and should be dismissed. *E.g.*, *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995) ("Because the Access Act sets only the maximum penalties, leaving the courts with broad discretion to determine length of imprisonment or the amount of fines or civil penalties to be assessed in each case . . . we cannot determine from the face of the Act what penalties will actually be imposed."); *CHSPSC, Inc. v. St. Francis Hosp., LLC*, No. 4:15-CV-133-CDL, 2015 WL 6964309, at *4 (M.D. Ga. Nov. 10, 2015) ("Because CHSPSC's right to relief is contingent on a future event that may or may not occur—whether St. Francis sells the hospital to another buyer—CHSPSC's claim to recover the deposit is not presently ripe."); *Canal Indem. Co. v. Richardson*, No. 5:14-cv-431-WLS, 2015 WL 13449666, at *2 (M.D. Ga. Apr. 1, 2015) (dismissing a counterclaim contingent on a final judgment in state court not yet entered); *Dixie Emergency Physician, LLC v. Team Health, Inc.*, No. 7:16-cv-1622, 2018 WL 9801615, at *3 (N.D. Ala. Mar. 5, 2018) ("Team Health's counterclaim [for attorney's fees and costs] rests on the eventual disposition of [other] claims constituting 'contingent future events that may not occur as anticipated . . . .'") (quoting *Thomas*, 473 U.S. at 580-81); *Canal Ins. Co. v. INA Trucking, LLC*,

No. 1:16-cv-82, 2017 WL 1146984, at *8 (M.D. Ala. Mar. 10, 2017) (concluding that a "plaintiff's indemnity claim is not ripe because the indemnity question is unresolved in the underlying action").

Here, CoreCivic's Counterclaim is entirely contingent on the future event of Plaintiffs prevailing on their unjust enrichment claim. Doc. 59 at Countercl. ¶ 21. CoreCivic alleges that *"[i]n the event* Plaintiffs/Counter-Defendants and the putative class members prevail on their theory that CoreCivic has been unjustly enriched by their participation in the Detainee Voluntary Work Program, CoreCivic is equitably entitled to recover its costs and expenses associated with detaining Plaintiffs/Counter-Defendants and the putative class members." *Id.* (emphasis added). Therefore, by its own terms, CoreCivic's Counterclaim is not ripe.

At least one district court in the Eleventh Circuit has repeatedly dismissed unripe contingent unjust enrichment counterclaims analogous to CoreCivic's Counterclaim in this action. *E.g.*, *Kowalski v. Jackson Nat'l Life Ins. Co.*, No.: 12-cv-60597, 2013 WL 11941580, at *3 (S.D. Fla. May 6, 2013) ("[Counterclaimant's] unjust enrichment claim is premised on the fact that if the Court awards the policy proceeds to the estate, she will have conferred a benefit on the estate. Because the Court has yet to determine who is entitled to the policy proceeds, however, the Court finds that [counterclaimant] has failed to demonstrate she has suffered an actual or imminent injury."); *Iglesia Cristiana El Buen Samaritano v. Guardian Servs., LLC*, No. 11-cv-21888, 2011 WL 5854640, at *4-5 (S.D. Fla. Nov. 21, 2011) (concluding that an unjust enrichment counterclaim premised on the theory that "*if* the plaintiffs succeed in this lawsuit and the Court determines that the mortgages were satisfied, then—and only then—the Receiver will have conferred a direct benefit on the plaintiffs" was not yet ripe because defendants' injury was "purely hypothetical"). Similarly, whether Plaintiffs in this action will be "unjustly enriched" based on

10

CoreCivic's alleged injury cannot be adjudicated at this time.

Moreover, CoreCivic will not suffer prejudice if its Counterclaim is dismissed because CoreCivic has asserted several "affirmative defenses" based upon the same general theory as the Counterclaim. CoreCivic asserts as a defense that "it would be inequitable for Plaintiffs and the putative class members to recover any damages because . . . Plaintiffs and the putative class members received other material benefits, including but not limited to housing, food, clothing, and recreation, from CoreCivic while detained." Doc. 59 ¶ 27. CoreCivic also asserts the affirmative defense that Plaintiffs' damages should be offset by the "costs incurred by CoreCivic in providing material benefits, including but not limited to housing, food, clothing, and recreation, to Plaintiffs and the putative class members while detained, as well as costs incurred in operating the Detainee Voluntary Work Program." *Id.* ¶ 28. Thus, dismissing the unripe Counterclaim will not prevent CoreCivic from pursuing in discovery and at trial its theory, as misguided as it is, that CoreCivic is entitled to double profits.

CoreCivic has not met its burden of pleading facts sufficient to support subject matter jurisdiction over its Counterclaim. The Counterclaim is not ripe for adjudication and should be dismissed.

## II.     CoreCivic Fails to State a Claim for Unjust Enrichment

A plaintiff asserting an unjust enrichment claim under Georgia law must establish that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it." *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011). Under Georgia law, "[f]or unjust enrichment to apply, 'the party conferring the labor and things of value

must act with the expectation that the other will be responsible for the cost.'" *Morris v. Britt*, 620 S.E.2d 422, 424 (Ga. Ct. App. 2005) (quoting *Hollifield v. Monte Vista Biblical Gardens*, 553 S.E.2d 662, 670 (2001). Finally, "unjust enrichment is available only when there is no legal contract." *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1372 (N.D. Ga. 2006); *see also Tidikis v. Network for Med. Commc'n & Rsch. LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005) (holding that an unjust enrichment claim was properly dismissed when benefits were conferred in accordance with unchallenged contract).

CoreCivic fails to state a claim for unjust enrichment for three independent reasons. First, CoreCivic does not allege that it expected that Plaintiffs or purported class members would reimburse CoreCivic for the cost of their detention. Second, CoreCivic provided all alleged "benefits" to Plaintiffs and purported class members pursuant to a contract with ICE, and therefore CoreCivic's unjust enrichment claim must fail as a matter of law. Third, CoreCivic has not plausibly alleged facts demonstrating that it would be inequitable for Plaintiffs or purported class members to retain any future unjust enrichment award entered by this Court.

**A. CoreCivic failed to allege that it expected that Plaintiffs would be responsible for the cost of "basic necessities" while locked up at Stewart.**

CoreCivic's unjust enrichment claim fails to state a claim because CoreCivic has not alleged that it provided "benefits"—here, basic necessities—to the Plaintiffs or purported class members expecting that Plaintiffs or class members would be responsible for the cost.[5] This is not

---

[5] This Court has recognized that "most unjust enrichment claims are based on the party being induced into some transaction with a reasonable expectation of receiving something in return," but that, as with Plaintiffs' unjust enrichment claim, "an unjust enrichment claim can be based on allegations of coercion." *Barrientos v. CoreCivic, Inc.*, 332 F. Supp. 3d 1305, 1313 (M.D. Ga. 2018), *aff'd*, 951 F.3d 1269 (11th Cir. 2020). As to CoreCivic's counterclaim, coercion plainly is not present, and thus CoreCivic must allege that it expected to receive compensation in return from Plaintiffs for providing them basic necessities.

surprising, as it would defy all logic to suggest that CoreCivic expected immigrants detained against their will to reimburse CoreCivic for mere basic necessities like food and housing.

It is black-letter law in Georgia that "[f]or an unjust enrichment claim to apply, 'the party conferring the labor and things of value *must act with the expectation that the other will be responsible* for the cost.'" *Morris*, 620 S.E.2d at 424  (emphasis added) (quoting *Hollifield*, 553 S.E.2d at 670); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1330 (N.D. Ga. 2019) (dismissing unjust enrichment claim where certain plaintiffs "failed to show" that they had an expectation that defendant would be responsible for the cost of the alleged "thing of value" conferred); *Somerson v. McMahon*, 956 F. Supp. 2d 1345, 1357-58 (N.D. Ga. 2012) (dismissing plaintiff's unjust enrichment claim where he did not allege in his complaint that he performed his wrestling activities with the expectation that defendant would be responsible for paying him any royalties). This element exists because "[t]he concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Morris*, 620 S.E.2d at 424 (quoting *Hollifield*, 553 S.E. 2d at 662). CoreCivic ignores this principle and fails to allege any facts from which the Court plausibly could infer that detained immigrants induced CoreCivic to provide basic necessities such that CoreCivic expected the immigrants to reimburse it for those costs. Indeed, given that CoreCivic is already being reimbursed, and more, by the U.S. Government for these very same necessities, it is impossible that CoreCivic ever had an expectation of receiving payment from the people detained at Stewart.

### B. CoreCivic cannot recover for unjust enrichment because it provided the "basic necessities" to Plaintiffs pursuant to its agreement with ICE.

CoreCivic's unjust enrichment claim should also be dismissed because, under Georgia law, "unjust enrichment is available only when there is no[] legal contract." *Am. Casual Dining, L.P.*,,

426 F. Supp. 2d at 1372; *see also Tidikis*, 619 S.E.2d at 485 (Ga. Ct. App. 2005) (. Accordingly, where any benefit conferred is triggered by a provision in a contract, an unjust enrichment claim fails as a matter of law. *Tidikis*, 619 S.E.2d at 485 ("[A]ny benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither Tidikis nor the defendants challenge. Under these circumstances, the unjust enrichment claim fails as a matter of law."). Here, any benefit conferred to Plaintiffs is simply a benefit CoreCivic was already obligated to provide under its contract with ICE, as CoreCivic alleges in its Complaint. Doc. 59 Countercl. ¶ 13.

Indeed, pursuant to its contract with ICE, CoreCivic has already been compensated for the services it is required to provide Plaintiffs and has made a profit from that compensation. *Id.* ¶ 13 (admitting that the IGSA between ICE and Stewart County specifically provides for the detention of ICE detainees at CoreCivic's Stewart facility), ¶ 21 (admitting that CoreCivic's "2017 revenues were approximately $1.765 billion"), ¶ 22 (admitting that "CoreCivic's detention services agreements with ICE accounted for 25% of CoreCivic's total revenues in 2017"). Yet CoreCivic asks this Court to make Plaintiffs pay CoreCivic for these basic necessities—which CoreCivic is already required to provide and is compensated for with taxpayer dollars under its contract with ICE—thereby padding CoreCivic's profits further. Because Georgia law does not permit recovery for unjust enrichment where the party conferring the benefit did so pursuant to a contract, CoreCivic's Counterclaim should be dismissed.

### C. CoreCivic does not (and cannot) establish that it is equitably entitled to be paid by Plaintiffs.

CoreCivic cannot come close to plausibly alleging the fourth prong of an unjust enrichment claim—that "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it." *Jenkins*, 822 F. Supp. 2d at 1377. An unjust enrichment claim is premised on the equitable doctrine that the benefitted party equitably ought to either return or

compensate for the benefits conferred. *Morris*, 620 S.E.2d at 424. As explained above, not only were Plaintiffs detained against their will when receiving "benefits" pursuant to CoreCivic's agreement with ICE, but CoreCivic was already compensated for providing those benefits. CoreCivic otherwise has alleged no facts to show that it would be "inequitable" for Plaintiffs to retain the "benefit" of basic necessities. Instead, CoreCivic advances only a contingent and conclusory allegation that "[i]n the event" Plaintiffs succeed on their unjust enrichment claim, then CoreCivic "is equitably entitled to recover its costs." Doc. 59 Countercl. ¶¶ 20-22. CoreCivic fails to recognize that if Plaintiffs win on their unjust enrichment claim, then a jury will have already decided that the equities weigh in *Plaintiffs'* favor.

In sum, CoreCivic's contingent unjust enrichment claim is premised on the theory that it would be inequitable for CoreCivic to be held liable for unjust enrichment unless it is compensated by Plaintiffs for the basic necessities CoreCivic provides—necessities which CoreCivic is already paid to provide under its contract with ICE. In CoreCivic's world, apparently the only equitable outcome is one in which it is paid both by ICE to detain immigrants and by the immigrants whose labor CoreCivic exploits. CoreCivic's claim has no support in Georgia law and should be dismissed for failure to state a claim.

## CONCLUSION

CoreCivic's Counterclaim is a shameless and legally flawed attempt to recover double profits for detaining human beings at Stewart. For the foregoing reasons, the Court should grant Plaintiffs' motion to dismiss CoreCivic's Counterclaim because it is not ripe for adjudication and fails to state a claim upon which relief can be granted.

Dated: August 7, 2020                                          Respectfully submitted,

/s/ Caitlin J. Sandley_____

Caitlin J. Sandley (GA Bar No. 610130)
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave.
Montgomery, AL 36104
Telephone: (334) 303-6822
Facsimile: (334) 956-8481
cj.sandley@splcenter.org

Meredith B. Stewart*
**SOUTHERN POVERTY LAW CENTER**
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org

Laura Rivera (GA Bar No. 143762)
Rebecca Cassler (GA Bar No. 487886)
**SOUTHERN POVERTY LAW CENTER**
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA, 300030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
laura.rivera@splcenter.org
rebecca.cassler@splcenter.org

R. Andrew Free*
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
**PROJECT SOUTH**
9 Gammon Avenue SE
Atlanta, A 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

Alan B. Howard**
John T. Dixon**
Emily B. Cooper**
**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
AHoward@perkinscoie.com
JohnDixon@perkinscoie.com
ECooper@perkinscoie.com

Jessica Tseng Hasen*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com

Korey A. Nelson*
Lydia A. Wright*
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
Facsimile: (504) 881-1765
knelson@burnscharest.com
lwright@burnscharest.com

Warren T. Burns*
Daniel H. Charest*
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com

*Admitted *pro hac vice*
***pro hac vice* admission pending

*Attorneys for Plaintiffs*