IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| **WILHEN HILL BARRIENTOS, et al**,<br><br>      Plaintiffs,<br>v.<br><br>**CORECIVIC, INC.,**<br><br>      Defendant. | Civil Action No.  4:18-cv-00070-CDL |
| **CORECIVIC, INC.,**<br><br>      Counter-Claimant,<br>v.<br><br>**WILHEN HILL BARRIENTOS, et al.**,<br><br>      Counter-Defendants. | |

**Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Trinity Services Group, Inc.'s Response to Subpoena**

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion to Compel the response of Trinity Services Group, Inc. ("Trinity") to Plaintiffs' Rule 45 subpoena for documents. Ex. 1 (Subpoena). The subpoena contains seven targeted requests related to Trinity's role in the Stewart Detention Center's Voluntary Work Program ("Work Program") and the provision of food to the nearly 2,000 individuals detained there.  Since serving the subpoena seven months ago, Plaintiffs have narrowed their requests and paid, up front, for Trinity's stated costs of production.

1

Although Trinity has partially complied with the subpoena, Trinity continues to withhold relevant materials Plaintiffs requested nearly seven months ago. Plaintiffs seek to compel the production of three discrete categories of documents: (1) the emails that Trinity claims it cannot produce because they allegedly contain personally identifying information (PII) and/or personal health information (PHI) about detained individuals and any additional emails responsive to the search terms that are still in dispute (Request 2); (2) the identities of the approximately three to six Trinity employees at SDC and payroll information for those employees for the Relevant Period[1] (Request 4); and (3) the unredacted price per meal rate term in the Trinity-CoreCivic contract for Stewart Detention Center ("SDC") (Request 6). These requests are narrow and highly relevant to Plaintiffs' claims, and Trinity is withholding them under the guise of baseless objections. The Court should order Trinity to produce the information in compliance with the subpoena.

## BACKGROUND

### I. Introduction

Plaintiffs and the putative class members are former and current detained individuals at SDC who performed nearly free labor for Defendant CoreCivic, Inc. ("CoreCivic") under threat of punishment and deprivation of basic necessities. *See generally* Doc. 87 (Amend. Compl.). CoreCivic contracts with Trinity to administer food services at SDC, which means Trinity's role intersects with CoreCivic's improper policies in two key ways. Doc. 83, at 1. First, CoreCivic's policy of depriving individuals of basic necessities includes the failure to provide those individuals adequate food through its agent, Trinity. Doc. 87 ¶ 38. Trinity staff engages in meal planning for the detained population at SDC, including creating menus. *See* Trinity Services Group, *Food*

---

[1] For purposes of the subpoena, "Relevant Period" is defined as the period from December 23, 2008 through the present for all requests. Ex. 1 at 3.

*Services*, http://www.trinityservicesgroup.com/food-service-2/ (last visited Feb. 22, 2021). Second, Trinity staff supervises the hundreds of detained workers in the SDC kitchen who cook and serve food to thousands of individuals, three times per day. *See* Doc. 87 ¶ 30; Doc. 83, at 2. All named Plaintiffs worked in the SDC kitchen and were supervised by Trinity staff. *See* Doc. 87 ¶¶ 63, 79, 89. Trinity thus possesses key evidence relevant to Plaintiffs' claims and defenses.

### II.     Procedural History

#### A.     Plaintiffs Subpoena Trinity in August 2020.

On August 28, 2020, Plaintiffs served Trinity with a document subpoena. *See* Ex. 1. The subpoena commanded Trinity to produce documents to Plaintiffs by September 28, 2020. *Id.* On September 24, Trinity's in-house counsel requested an extension until October 9 to provide responses and objections to the subpoena, to which Plaintiffs' counsel consented. Four days later, without prior notice or any attempt to confer with Plaintiffs, Trinity filed a Motion to Quash the Subpoena. Doc. 83. On October 9, Trinity served objections to the Subpoena.[2]

#### B.     Plaintiffs Confer in Good Faith and Narrow Their Requests.

Between October 13, 2020 and February 3, 2021, Plaintiffs and Trinity ("the Parties") conferred multiple times in an attempt to resolve their disputes related to the subpoena. The results of the Parties' conferrals are summarized in various status reports and motions filed with the Court. *See, e.g.*, Docs. 90, 116, 119. During that time, Plaintiffs significantly narrowed their requests, including by declining to pursue Request 7 entirely, narrowing Request 2 to seek only emails to or from a single email account, and declining to pursue Trinity's communications relating to the CoreCivic-Trinity contract. As a result, the Parties have substantially resolved Requests 1, 3, and 5. In response to those Requests, Trinity has produced:

---

[2] On December 8, 2020, the Court terminated the Motion to Quash. Doc. 112.

>**Request 1**: Policies and procedures relating to training provided to Trinity employees at SDC during the Relevant Period (7 documents).
>
>**Request 3**: Menus, meal schedules, nutritional information, and policies and procedures about the distribution and storage of food provided at SDC (31 documents).
>
>**Request 5**: Non-privileged emails related to this litigation and a privilege log (8 documents).

### C.  Trinity Possesses, but Refuses to Produce Three Key Categories of Responsive Documents.

Despite the conferrals, Trinity maintained its objections to Requests 2, 4, and 6 in part. Request 4 seeks names, job descriptions, and payroll information for Trinity staff at SDC. According to Trinity, there are three to six Trinity SDC employees. *See* Doc. 119, at 3. Trinity objects to Request 4 in part because it claims the information is not relevant to Plaintiffs' claims. *Id.* Therefore, in response to Request 4, Trinity only produced the following documents:

>**Request 4:** Detainee job descriptions and Trinity staff job descriptions (4 documents).

With respect to Request 6, Trinity produced its contract with CoreCivic, but refused to produce the price per meal rate term in that contract for the services it provides CoreCivic at SDC. In response to Request 6, Trinity produced the following:

>**Request 6**: A copy of the Trinity-CoreCivic contract effective 2010 to June 30, 2020 with several redactions, including the price per meal rate term (1 document).

Trinity's response to Request 2, which seeks Trinity's communications about the SDC Work Program, has a more complicated history. In response to Request 2, Trinity agreed to produce any emails to or from Trinity's dedicated SDC email account that are potentially responsive to the first seven rows of search strings on Plaintiffs' list of proposed search terms, as well as the eleventh search string, which begins with "pay." *See* Doc. 116, at 2-3; Ex. 2 (Nov. 13,

4

2020 Ltr. from Pls. to Trinity) at 3 (listing Plaintiffs' Proposed ESI Search Terms). These search strings include the Plaintiffs' names, their DHS identification numbers, and emails with "Work Program" or "VWP" and one of four other terms (money, pay, paid, or salary). The Parties have referred to this production as Phase 1.

Trinity declined to run searches for the majority of Plaintiffs' proposed search terms because it objected to those terms on relevance and burden grounds. *See* Ex. 2, at 1. Those terms relate to the discipline of detained workers, work stoppages, grievances, and the provision of food at SDC. *See id.* at 3 (Rows 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 are in dispute).[3] The Parties agreed to revisit their disputes about those search terms after Trinity produced the Phase 1 emails. Docs. 116, at 3-4; 119, at 3. The Parties have referred to that potential production as Phase 2.

Shortly after reaching agreement about the Phase 1 emails, Trinity submitted a demand for $10,000 in costs as a prerequisite to producing the emails. Ex. 3, at 1 (Dec. 21, 2020 Ltr. from Pls. to Trinity). Plaintiffs agreed to pay the demanded cost amount and to Trinity's revised definition of Phase 1, while also reserving the right to challenge Trinity's apparent attempt to seek costs to which it was not entitled, including for attorneys' fees for preparing the Motion to Quash. *See id.* at 1-2. Plaintiffs agreed to Trinity's terms in a good-faith attempt to relieve in large part the claimed burden on Trinity and to move the ball forward on resolving the subpoena. *See id.* at 2.

On December 18, after requiring repeated confirmation that Plaintiffs had mailed the check for costs to Trinity, Trinity informed Plaintiffs that its two-week search of the Phase 1 search terms produced zero responsive emails. *See id.* After Plaintiffs communicated with Trinity regarding the

---

[3] Trinity did not object to row 16, but has nevertheless declined to run those terms and produce any responsive emails.

5

implausibility of this search result, Trinity agreed to re-run the search, which prompted it to discover an error in the procedure it used to conduct the search. *See* Doc. 116, at 3. On December 29, 2020, Trinity informed Plaintiffs it had found 10,707 emails potentially responsive to the Phase 1 search terms. *See id.*

On January 7, 2021, Trinity agreed to produce the 10,707 emails and suggested a one-to-two week timeline for production. *See id.* On that same day, Trinity confirmed receipt of $10,000 from Plaintiffs' counsel to cover Trinity's stated costs for Phase 1. Doc. 119, at 2. On January 28, 2021, Trinity produced 105 emails to Plaintiffs. *Id.* at 3. Trinity subsequently informed Plaintiffs that 7,150 of the 10,707 emails are from the domains of Office Depot, Borden Dairy, and/or Butterball (555) or are calendar events (6,595). *See id.* at 2. Plaintiffs confirmed they wanted all emails from the outside domains and the calendar events, but the Parties agreed to deprioritize those emails temporarily to prevent further delay. *See id.* Trinity also advised it had encountered emails that it alleges contain PII or PHI of individuals currently or formerly detained at SDC and/or privileged information. Trinity stated it would not produce the PII/PHI emails without a court order. *See* Ex. 4 (Feb. 5, 2021 Ltr. from Trinity to Pls.); Doc. 119, at 2-3. In the meantime, Trinity agreed to produce the approximately 700 emails that do not fall into the alleged PII/PHI category and the approximately 7,150 deprioritized emails provided they do not contain PII/PHI. *See id.*[4]

On February 8, 2021, the Court ordered the Parties to submit discovery motions on February 22. Doc. 120. On February 11, Plaintiffs' counsel emailed Trinity's counsel to attempt to resolve Request 2 (the emails) prior to filing this Motion. Trinity's counsel did not respond until February 20, 2021—two days before this Motion was due—to notify Plaintiffs' counsel of

---

[4] Trinity has not yet produced the 7,150 deprioritized emails or provided Plaintiffs with a timeline for their production. Plaintiffs reserve the right to compel production of those emails should Trinity delay their production or refuse to produce them.

6

the production of 707 additional emails. Trinity's counsel also informed Plaintiffs' counsel that Trinity would produce a log for the emails it claims constitute PII/PHI on February 22, 2021. As of the filing of this Motion, Trinity has not produce the log. In sum, Trinity agreed to produce 10,707 emails in exchange for $10,000 in costs, which it received from Plaintiffs' counsel six weeks ago. To date, Trinity has produced 810 of those 10,707 emails.

Plaintiffs submit this Motion to compel Trinity to produce the emails Trinity labels as PII/PHI and any emails responsive to the disputed search terms; the identities of the Trinity employees at SDC and their payroll information for the Relevant Period; and the unredacted price per meal rate at SDC in the Trinity-CoreCivic contract.

## ARGUMENT

A party may use a Federal Rule of Civil Procedure 45 subpoena to obtain documents relevant to a pending lawsuit from a non-party. *D.R. v. Grant*, No. 1:10-CV-24 (WLS), 2011 WL 13323638, at *2 (M.D. Ga. Feb. 18, 2011). The scope of subpoenas for production of documents under Rule 45 "is the same as the scope of discovery under Rule 26(b)." *Dering v. Serv. Experts All. LLC*, No. 1:06-cv-00357-RWS, 2007 WL 4299968, at *2 (N.D. Ga. Dec. 6, 2007) (quoting *Commissariat A L'Energie Atomique v. Samsung Elec. Co.*, No. 8:06-mc-44-T-30TBM, 2006 WL 5003562, at *2 (M.D. Fla. June 14, 2006)); *see also D.R.*, 2011 WL 13323638, at *2. Under Rule 26, parties are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"At any time, on notice to the commanded person," the party who served a subpoena "may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Courts can compel nonparties to produce documents where a nonparty has access to documents and production is not "disproportionate to the needs of

the case." *Monat Global Corp. v. Miller*, No. 3:18-mc-24-J-32MCR, 2018 WL 8578017, at *2-3 (M.D. Fla. Nov. 27, 2018) (granting plaintiffs' motion to compel after finding nonparty's initial production was "deficient"); *see also Kemper v. Equity Insurance Co.*, No. 1:15-cv-2961-TCB, 2016 WL 7428215, at *6-7 (N.D. Ga. Apr. 29, 2016) (granting party's motion to compel document production from nonparties because the information could be relevant to the party's defense and substantive claims). When evaluating proportionality, a court may consider the following factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### I. Plaintiffs' Requests Are Relevant to Their Claims and Proportional to the Needs of the Case.

Plaintiffs seek to compel production of highly relevant and specific information: Trinity's emails related to the Work Program contained in a single email account, Trinity SDC employee payroll information, and Trinity's contract pricing term. Because Trinity feeds the detained population at SDC and supervises the Plaintiffs and the putative class members who work in the kitchen, this information is relevant to Plaintiffs' Trafficking Victims Protection Act ("TVPA") and unjust enrichment claims. This information is also relevant to Plaintiffs' defense against CoreCivic's unjust enrichment counterclaim, which asserts that if Plaintiffs are awarded damages for their forced labor, they should pay CoreCivic the cost of their room and board while at SDC.[5] Doc. 94, Countercl. ¶¶ 8-21. Plaintiffs' requests to Trinity fall squarely within the scope of discovery authorized under Rule 26(b)(1).

---

[5] A motion to dismiss this counterclaim remains pending. Doc. 96.

### A. Request 2 – Trinity's Communications Related to the Work Program at SDC.

Request 2 seeks communications relating to the Work Program at SDC for the Relevant Period. Plaintiffs have narrowed this request to seek all email communications to or from a single email address—Trinity's dedicated SDC email account—during the Relevant Period that are responsive to a specific list of search terms. Ex. 2. The remaining disputes regarding this request fall into two categories: (1) the emails Trinity labels as PII/PHI and (2) any emails responsive to a set of search terms that are still in dispute. Trinity should be compelled to produce both categories.

#### 1. <u>The Emails Trinity Labels as PII/PHI.</u>

Trinity is withholding emails that it claims contain PII/PHI even though the Protective Order adequately protects that information. Trinity has not produced a log of the PII/PHI emails it is withholding. Trinity has indicated some emails contain "full lists of all inmates [sic] currently incarcerated—the vast majority of whom are not parties to the suit—along with inmate numbers, and DOB's." *See* Ex. 4, at 2. If that is the case, those emails should be produced. Any personally identifiable information is protected by Federal Rule of Civil Procedure 5.2 and the Protective Order (Doc. 67, at 11-12). Trinity claims it will not release this information without court order, but this Order already exists. *See* Doc. 67, at 3 (explicitly including PII and PHI in the list of information that may be designated CONFIDENTIAL); Doc. 68 ¶ 25 (permitting a producing party to encrypt and label as confidential ESI containing PII or PHI).

Trinity has not informed Plaintiffs what categories of emails it asserts contain PHI or its reasoning as to why they would be PHI. Based on Trinity's role at SDC, it is likely that Trinity is classifying as PHI emails relating to special medical diets of detained individuals. Trinity can also produce these emails pursuant to the Orders in this case. The Protective Order and the Order for Data Preservation and Production explicitly allow producing parties to designate "personal

healthcare information" as Confidential and to encrypt and label as Confidential ESI containing PHI; there is no reason why Trinity cannot do so here. Doc. 67, at 3; Doc. 68, at 11-12, ¶ 25. Moreover, this Court has the authority to order disclosure of PHI protected by HIPAA regulations. *Gumm v. Sellers*, 5:15-cv-00041-MTT-CHW, 2017 WL 5885316, at *2, *4 (M.D. Ga. Nov. 21, 2017) (concluding that this Court has "authority to order the disclosure of the relevant medical and mental-health records pursuant to HIPAA and the corresponding regulations [45 C.F.R. § 164.512(e)(1)(i-ii)]" and ordering defendant prison officials to produce documents containing PHI pursuant to the protective order already in place). To the extent Trinity is simply seeking the assurance of another court order directing it to produce the PII/PHI materials for fear (however unfounded) that the production could implicate privacy laws, Plaintiffs respectfully ask the Court to give Trinity that order so that production may proceed.

Finally, Trinity has suggested it cannot produce the alleged PII/PHI emails because Plaintiffs' putative class has not been certified. The lack of a certified class cannot bar discovery here. Plaintiffs are entitled to class-wide discovery now pursuant to the Scheduling Order because that order does not bifurcate class and merits discovery. *See* Doc. 63, at 5. Indeed, CoreCivic has already produced documents to Plaintiffs containing PII and PHI of numerous people detained at SDC.  Trinity should be compelled to produce any emails it claims are PII/PHI.

### 2. **Emails Responsive to the Phase 2 Search Strings.**

The Phase 1 email search involved one-third of Plaintiffs' proposed search strings.  For the other two-thirds of the proposed search strings, Trinity has objected to running searches of those terms altogether. The Parties have referred to these disputed search strings as Phase 2. The Parties previously agreed to revisit those terms once Plaintiffs reviewed the Phase 1 emails.  However, because Trinity has only produced 810 of the 10,707 Phase 1 emails, and the vast majority of that

production occurred two days ago, Plaintiffs cannot rely on the Phase 1 production to inform the Phase 2 dispute. As a result, Plaintiffs seek to compel production of any emails responsive to the Phase 2 search strings. Trinity objects to these search strings on the basis that they are not relevant and their production would be overly burdensome. *See* Ex. 2, at 1. Trinity's relevance objection is wrong, and its claim of burden is unsubstantiated.

The Phase 2 search strings include terms relating to the discipline of detained workers, work stoppages, grievances, and the provision of food at SDC. *See id.*, at 3 (Rows 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 are in dispute). Emails responsive to these terms are relevant to Plaintiffs' claims. Plaintiffs allege that CoreCivic has a policy and scheme of disciplining Work Program participants who refuse to work. *See* Doc. 87, ¶¶ 49-61. Given that Trinity supervises the detained workers in the SDC kitchen, emails relating to work stoppages and discipline of those workers are relevant to the scheme alleged. Similarly, emails related to the quality and quantity of food, and any food-related grievances, are relevant to Plaintiffs' allegation that CoreCivic deprives detained individuals of food. *See* Doc. 87, ¶ 38. Given Trinity's significant role in the Work Program and in the provision of food at SDC, Trinity cannot plausibly argue these emails are not relevant.

Finally, any burden that Trinity alleges is hypothetical at this point because Trinity will not even agree to run a search to ascertain if these emails exist and, if so, how many. *See In re: Subpoena Issued to OneSource Orthopedics, Inc.*, No. 1:10-CV-01782-JEC-GGB, 2010 WL 11508011, at *2 (N.D. Ga. Aug. 3, 2010) (holding that non-party's "[c]onclusory statements" are not sufficient to establish undue burden). In any event, it would take a significant burden for it to be "undue" because, as explained above, the documents are highly relevant and go to the core of the litigation. Trinity should be ordered to produce these emails.

### B. Request 4 – The Identities, Job Assignments, and Payroll Information of Trinity Employees at SDC.

Request 4 seeks the identities, job assignments, and payroll information of the Trinity staff who worked in the SDC kitchen during the Relevant Period. Trinity has declined to produce names or payroll information of the three to six SDC Trinity employees, claiming that information is not relevant to Plaintiffs' claims.[6] Unlike with Request 2, Trinity does not assert that Request 4 imposes an undue burden. *See* Ex. 4, at 2. Trinity's relevance objection lacks merit.

The identities and payroll information of the Trinity staff at SDC are relevant to Plaintiffs' claims. Trinity staff supervises the detained workers in the SDC kitchen, including all of the named Plaintiffs. Those individuals are witnesses to Plaintiffs' claims. The identities of the Trinity staff are unquestionably relevant. They should be produced.

Trinity's SDC employee payroll information is also relevant. Indeed, it is the only evidence of the labor costs required to run the SDC kitchen. The payroll information will shed light on how much CoreCivic saves in labor costs by relying on forced, detained labor. If CoreCivic did not rely on detained labor to staff the SDC kitchen, then it would have to hire paid employees—either through Trinity, another subcontractor, or directly. Those workers would likely be paid comparably to the Trinity workers because Trinity employees perform the work of Work Program workers. *See Kitchen Worker – Stewart Detention Center*, Indeed.com, https://www.indeed.com/viewjob?cmp=Trinity-Services-Group,-

---

[6] Trinity previously objected to production of this information on the grounds that it would unduly violate its employees' privacy. Trinity has since abandoned that objection. *See* Ex. 4; Doc. 119, at 3.

Inc.&t=Kitchen+Worker&jk=6b5787ab3798ab29&vjs=3 (last visited Feb. 22, 2021) (Trinity job posting for SDC noting that "[i]n some cases, you may actually prepare and cook the meals.").[7]

CoreCivic's labor costs and savings establish that CoreCivic receives a financial benefit from its forced labor scheme, which is a critical element of Plaintiffs' TVPA claim. *See* 18 U.S.C. § 1598(b). CoreCivic's labor costs and savings are also relevant to calculating disgorgement damages for Plaintiffs' unjust enrichment claim. Doc. 87, at 33. When payroll records are relevant to the claims, as they are here, courts regularly order their production. *See, e.g.*, *Rosenbaum v. Becker & Poliakoff, P.A.*, 708 F. Supp. 2d 1304, 1312-14, (S.D. Fla. Apr. 28, 2010) (granting motion to compel seeking payroll records and PTO accrual rates on grounds that the information sought was previously proven relevant in damages calculations and should apply in the present discovery battle); *Smith v. Sohaan Development, Inc.*, No. 6:12-cv-1369-Orl-18DAB, 2013 WL 12392465, at *2 (M.D. Fla. Aug. 28, 2013) (ordering production of payroll records to plaintiff because they were relevant to the litigation).

Finally, Trinity should also be compelled to produce its employee names and payroll because the information is only in the custody and control of Trinity. Trinity pays its employees directly, per the contract between Trinity and CoreCivic. And, unlike CoreCivic's direct employees, whose wages are set by the federal government, Trinity's employees' wages are not a matter of public record. *See* Doc. 119, at 3 ("They are paid by Trinity as Trinity employees."). Thus, only Trinity knows its employees' pay and hours. Plaintiffs cannot obtain this information

---

[7] Trinity produced employee job descriptions, but those descriptions are not specific to SDC. Ex. 5 (Trinity Employee Job Descriptions, redacted and filed under seal). While the descriptions indicate that Trinity staff perform supervisory work, there is nothing in them that establishes that is all that Trinity staff do at SDC or that would confirm that is what they do at any facility in practice. To the contrary, Plaintiffs understand that that Trinity staff at SDC do, at least occasionally, perform non-supervisory tasks in the kitchen.

from any other source. Trinity should be compelled to produce the names of the Trinity staff at SDC and their payroll information.

### C. Request 6 – The Trinity-CoreCivic Contract's Price Per Meal Rate Term.

Trinity produced a version of the Trinity-CoreCivic contract with several redactions. Plaintiffs move to compel Trinity to lift one redaction of a key financial term that is relevant to Plaintiffs' claims—the price per meal rate at SDC—which is the flat rate that Trinity charges CoreCivic for its services. Trinity has refused to lift the redaction, claiming that the term constitutes proprietary information. This objection is meritless in light of the robust protections afforded to confidential material by the Protective Order.

#### 1. The Price Per Meal Rate Term Is Relevant to Plaintiffs' Claims.

The price per meal rate is a flat rate per meal that Trinity charges CoreCivic for its services. Trinity's services include the provision of labor to staff the SDC kitchen and to supervise the detained workers there; therefore, the price per meal rate includes Trinity's labor costs. To set that rate, Trinity must reliably know how many staff it will need to provide to CoreCivic. Because the Trinity staff supervises the detained kitchen workers, and those workers perform many of the tasks required to operate the SDC kitchen, Trinity's staffing levels are informed by the anticipated number of workers (both detained and non-detained) that CoreCivic will provide. As stated above, how much CoreCivic is paying or saving in labor costs at SDC by relying on detained labor, including to run the kitchen, is relevant to Plaintiffs' unjust enrichment damages, their TVPA claim, and their defense against CoreCivic's counterclaim. *See supra* Section I.B.

The price per meal rate has additional relevance: the rate, and how it has evolved over time, will establish that CoreCivic has an incentive and, indeed, a contractual obligation to supply a specific amount of detained labor to the SDC kitchen. The financial arrangement underlying

Trinity's contract with CoreCivic undermines any claim by CoreCivic that the Work Program at SDC is voluntary. The price per meal rate term is thus relevant to the core of Plaintiffs' claims and defenses; Trinity should be compelled to produce it.

### 2. The Price Per Meal Rate Term Is Not Proprietary and Is Adequately Protected by the Protective Order.

Trinity's only objection to producing the price per meal rate term is that it constitutes proprietary information. Trinity has the burden of establishing this information is proprietary, which it has failed to do here. *See Sams v. GA West Gate, LLC*, 316 F.R.D. 693, 698 ("The party resisting discovery must first establish that the information sought is . . . [otherwise confidential] and then demonstrate its disclosure might be harmful.") (citation omitted). Proprietary or confidential business information is not protected by an "'absolute privilege' . . . rather the court weighs 'the claim to privacy against the need for disclosure, and commonly enter[s] a protective order restricting disclosure.'" *Classic Soft Trim, Inc. v. Albert*, No. 6:18-cv-1237-Orl-78GJK, 2020 WL 6731037, at *6 (M.D. Fla. Mar. 12, 2020). Trinity already produced this term, unredacted, for over twenty CoreCivic detention facilities in *Owino v. CoreCivic*, Inc., No. 3:17-cv-01112-JLS-NLS (S.D. Cal. filed May 31, 2017). The production of this term in *Owino*, a national class action, calls into question Trinity's labeling of this information as proprietary in the first instance. And if the information ever were a trade secret (which Trinity has not shown), Trinity cannot seriously argue that it warrants special protection as a trade secret now that it has voluntarily chosen to provide the unredacted information to others.

Even assuming it is proprietary information, Trinity acknowledges that the Protective Order would cover the term, but takes issue with the adequacy of that protection claiming the Order's categories of "qualified persons" are too broad. *See* Doc. 119, at 6. Trinity has not explained which of the eight categories of qualified persons in the Protective Order would place

15

at risk its alleged proprietary information, nor could it.  Doc. 67, at 4-5. (listing "Persons Qualified" to receive information as "a) the Court and its officers; b) attorneys in this action and their support staff, including paralegals, legal interns, and legal assistants; c) testifying or consulting experts and their support staff; d) any person noticed for deposition or designated as trial witness to the extent reasonably necessary to prepare such person to testify, or to examine such person, except as prohibited by this Order; e) court-reporters and court-reporting companies engaged to transcribe depositions in this action; f) U.S. agency officials who are decision-makers with respect to this litigation; g) persons to whom production is required by the Federal Rules of Civil Procedure; or h) persons to whom production is ordered by the Court."). This list does not include any potential competitors or third parties who may wrongfully use the price per meal rate information. Rather, the Court, its personnel, counsel, and potential deponents are necessary persons to *any* litigation and are all bound by the Order and/or legal doctrines preventing the disclosure of confidential information. Tellingly, the *Owino* case has a similar list of qualified persons in its protective order, yet Trinity produced the pricing term there.  *See* Ex. 6, at 6, ¶ 13 (order granting Joint Motion for Entry of Protective Order, No. 3:17-cv-01112-JLS-NLS (S.D. Cal. Aug. 13, 2018)).

      Thus, if the price per meal rate term were proprietary, the existing Protective Order would afford it sufficient protection. *See, e.g.*, *Sams*, 316 F.R.D. at 698 (citing *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006), for the proposition that "the selective disclosure of protectable trade secrets is not per se unreasonable and oppressive, when appropriate protective measures are imposed"); *Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 669 (S.D. Fla. Sept. 30, 2010) (ordering production of documents containing non-party's pricing structure information when a protective agreement would alleviate any confidentiality concerns). Trinity should be compelled to lift that redaction.

## II.     Plaintiffs Have Taken Steps to Minimize Any Undue Burden on Trinity.

Plaintiffs have worked diligently with Trinity to reduce any burden of complying with the subpoena. Plaintiffs have narrowed their requests considerably, allowed a more than reasonable amount of time for Trinity to comply, and have fronted Trinity's alleged costs associated with the Phase 1 production.

Trinity cannot legitimately assert that the documents Plaintiffs seek to compel now would be burdensome to produce. Trinity has not provided any specifics regarding burdens it may face if it complies with Plaintiffs' requests for Trinity employee information and the unredacted price per meal rate term, likely because producing one document with employee names, records generated from an automated payroll system, and an unredacted pricing term would not be resource-intensive in any context.

If Trinity claims that running the Phase 2 search terms will be unduly burdensome, or if Trinity demands more costs to comply with the remaining requests, then those arguments should be dismissed. Plaintiffs have already paid, up front, Trinity's requested costs for the Phase 1 production.  That production is still incomplete and was prolonged by Trinity's misguided initial search and subsequent, multi-layer review of the emails. *See* Doc. 116, ¶ 10-11 (describing search errors and attempts to expedite review); Doc. 119, 2-3 (describing its search). Plaintiffs should not have to pay the price for Trinity's mistakes and delay, particularly when Plaintiffs still have not received over 90% of the emails for which they paid. In these circumstances, additional cost shifting is not appropriate. *See, e.g.*, *In re: Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2017 WL 11539486, at *3 (N.D. Ala. Aug. 1, 2017) ("While the court is required to shift reasonable costs to the requesting parties, the failure of a non-party to work efficiently and in

good faith to respond to a subpoena, causing the costs to rise unnecessarily, may result in a finding that some costs are simply unreasonable. Such costs will not be shifted to the requesting party.").

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion to Compel Trinity to produce (1) the emails Trinity labels as PII/PHI and any additional emails responsive to the disputed (Phase 2) search terms; (2) the unredacted price per meal rate term in the Trinity-CoreCivic contract for SDC; and (3) the identities of the Trinity employees at SDC and payroll information for those employees for the Relevant Period.

Dated: February 22, 2021                                     Respectfully submitted,

s/ Meredith B. Stewart
Meredith B. Stewart*
**SOUTHERN POVERTY LAW CENTER**
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org

Caitlin J. Sandley (GA Bar No. 610130)
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave.
Montgomery, AL 36104
Telephone: (334) 303-6822
Facsimile: (334) 956-8481
cj.sandley@splcenter.org

Rebecca Cassler (GA Bar No. 487886)
**SOUTHERN POVERTY LAW CENTER**
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA, 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
rebecca.cassler@splcenter.org

Alan B. Howard*
John T. Dixon*
Emily B. Cooper*
**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
ahoward@perkinscoie.com
johndixon@perkinscoie.com
ecooper@perkinscoie.com

Jessica Tseng Hasen*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com

Vidhi Bamzai*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol St., Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (601) 948-8885
vidhi.bamzai@splcenter.org

R. Andrew Free*
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

Daniel H. Charest*
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com

Jessica L. Everett-Garcia*
John H. Gray*
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
jeverettgarcia@perkinscoie.com
jhgray@perkinscoie.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
**PROJECT SOUTH**
9 Gammon Avenue SE
Atlanta, A 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*