**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| **WILHEN HILL BARRIENTOS, et al**,<br><br>        Plaintiffs,<br>v.<br><br>**CORECIVIC, INC.,**<br><br>  Defendant. | Civil Action No.  4:18-cv-00070-CDL |

**Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Defendant CoreCivic's Response to Plaintiffs' First Discovery Requests**

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion to Compel Defendant CoreCivic, Inc. ("CoreCivic") to respond to Plaintiffs' First Set of Requests for Production ("RFPs") and Interrogatories (collectively, the "Requests"). It is time to put an end to CoreCivic's discovery gamesmanship. CoreCivic's dubious objections to producing documents that are directly relevant to Plaintiffs' claims are but one of the ways CoreCivic has engaged in obstruction and delay throughout the discovery period. In addition to granting the Parties' Joint Motion to Extend Discovery Deadlines, which includes interim production deadlines that will foreclose any further delay efforts by CoreCivic, the Court should also order the production of the highly relevant document categories discussed herein.

**BACKGROUND**

### I.    Plaintiffs' Attempts to Obtain Documents from CoreCivic

Plaintiffs served twenty requests for production and four interrogatories on CoreCivic on August 21, 2020. Ex. 1 (Pls.' First Requests for Production); Ex. 2 (Pls.' First Interrogatories). The Requests generally sought information (including ESI) related to the Voluntary Work Program

1

("Work Program") at Stewart Detention Center ("SDC"); the Intergovernmental Services Contract ("IGSA") with Immigration and Customs Enforcement ("ICE") governing CoreCivic's operation of SDC; CoreCivic's contracts with outside contractors at SDC, such as Trinity Services Group, Inc. ("Trinity"); CoreCivic's provision of basic necessities, including food, to individuals detained at SDC; CoreCivic's corporate structure and financials related to SDC; CoreCivic's operation of the SDC commissary; detained individuals' grievances; discipline of detained individuals; housing classification of detained individuals; and information related to the three named Plaintiffs. Plaintiffs issued comprehensive requests early in the discovery period to ensure production of the documents well before close of discovery.

On September 21, 2020, CoreCivic submitted a total of 50 pages of objections and responses to Plaintiffs' Requests. Ex. 3 (CoreCivic's Response to Pls.' First RFPs); Ex. 4 (CoreCivic's Response to Pls.' First Interrogatories). At that time, CoreCivic did not produce any responsive documents; rather, it referred Plaintiffs to the limited set of documents it produced contemporaneously with its initial disclosures. *See, e.g.*, Ex. 3 at 6. Plaintiffs promptly sought to confer with CoreCivic about its objections. That conferral took place on October 14 and 19, 2020. During those discussions, CoreCivic agreed to produce a subset of documents and information in response to Requests 1, 3, 5, 6, 8, 9, 10, 11, 13, 17, 19, 20. Plaintiffs also agreed to provide CoreCivic with information to narrow the scope of the Requests, including a narrowed list of policies and forms Plaintiffs requested, which Plaintiffs promptly provided to CoreCivic the following week. Ex. 5 (Nov. 19, 2020 Ltr from M. Stewart to J. Lee).

In its September 2020 responses to Plaintiffs' Requests, CoreCivic also agreed to produce

the ESI requested in RFPs 1 and 19 once the Parties agreed to a search protocol.[1] *See* Ex. 1 at 5-6, 7. On November 4, 2020, the Parties conferred about the ESI search protocol.

CoreCivic did not produce any of the agreed-upon documents in response to the Requests until December 7, 2020 and only after Plaintiffs informed CoreCivic that they intended to file a motion to compel if CoreCivic did not produce the documents by December 7. *See* Ex. 5 at 1. The December 7 production was incomplete, and it did not include many of the documents CoreCivic had agreed to produce. Ex. 6 (Apr. 1, 2021 Ltr from M. Stewart to J. Lee).[2]

CoreCivic did not produce any additional documents until March 10, 2021. That production was also incomplete and did not include any ESI or many of the documents CoreCivic had agreed to produce months before. *Id.* Plaintiffs first requested to confer about this production on April 1, 2021. CoreCivic's counsel did not make themselves available for this conferral until April 27, 2021. CoreCivic's counsel's refusal to respond promptly to Plaintiffs' conferral requests has been an ongoing issue throughout discovery, further contributing to CoreCivic's pattern of delay. *See* Ex. 7 (Mar. 12, 2021 Ltr from M. Stewart to J. Lee) at 2; Doc. 132-1 at 14.

During the April 27 conferral, CoreCivic revealed (for the first time) that it would not meet the Parties' agreed-upon May 1 substantial completion deadline, *see* Doc. 113 at 3; it would not be producing the ESI before the close of fact discovery; and it intended to request a six-month extension to the discovery schedule. Plaintiffs' counsel responded stating their intention to file a motion to compel and ultimately agreeing to a four-month extension with Court-ordered interim

---

[1] That is, the search terms to be used and the specific people, or custodians, whose ESI would be searched.

[2] During this time, the Parties also negotiated an extension to the discovery schedule, which the Court entered on December 14, 2020. Doc. 113. That extension was largely necessitated by CoreCivic's delay in producing the ESI. Doc. 113. The Parties' proposed schedule also reflected the agreed-upon May 1, 2021 date for substantial completion of written discovery. *See id.*

production deadlines, which Plaintiffs now need due to CoreCivic's delay and failure to communicate its inability to meet the interim production deadline. *See* Ex. 8 (Apr. 28-May 4, 2021 Emails between J. Lee and M. Stewart). The Parties filed the Joint Motion to Extend Discovery Deadlines and Set Interim Production Deadlines on May 11, 2021. Doc. 138.

## II.   CoreCivic Is Withholding Documents that Are Directly Relevant to Plaintiffs' Claims

Even after multiple conferrals, discussed above, CoreCivic is still withholding a number of documents critical to Plaintiffs' claims. Those documents fall into four categories:

(1) Three policies related to the Work Program, discipline, the provision of basic necessities, and housing, responsive to RFPs 1, 7, 14, 17, including Policy 01-22, Audits, Inspections, Corrective Actions; Policy 5-1, Incident Reporting; and 16-1, Access to Telephones.

(2) CoreCivic staffing plans and vacancy reports submitted by the ICE contract liaison (known as the Contracting Officer's Technical Representative (COTR)) in response to RFP 11.

(3) Certain audit and inspection reports of SDC in response to RFP 13, including those performed by CoreCivic's Quality Assurance Division, even if they mention the Work Program.

(4) CoreCivic financial information for SDC in response to Interrogatory 4 (and corresponding RFP 20).

Ex. 6; Ex. 8. As discussed below, these narrow categories of documents are relevant to Plaintiffs' claims and proportional to the needs of the case. Plaintiffs have conferred with CoreCivic multiple times about these categories of documents and have made adjustments to their Requests in order to further tailor them to the needs of the case. CoreCivic has objected to production of this very limited set of documents primarily on relevance grounds. *See* Ex. 6.

## ARGUMENT

Rule 26 of the Federal Rules of Civil Procedure dictates the scope of permissible discovery and permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules." *Bledsoe v. Remington Arms Co., Inc.*, No. 1:09-cv-69 (WLS), 2011 WL 13244134, at *2 (M.D. Ga. Feb. 9, 2011) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Federal Rule of Civil Procedure 37 permits a party to file a motion to compel production of documents when a party fails to produce documents that are discoverable under Rule 26. Fed. R. Civ. P. 37(a)(1), (3)(B)(iv). For the following reasons, the Court should order CoreCivic to produce the documents it is withholding.

## I. SDC Policies about Audits, Inspections, and Corrective Actions; Incident Reporting; and Access to Telephones

The Parties have reached agreement on a substantial portion of the non-ESI policy documents at issue in Plaintiffs' RFPs 1, 7, 14, and 17, which seek policies relating to the Work Program, discipline, the provision of basic necessities, and housing with respect to detained individuals at SDC during the relevant period. However, three relevant SDC policies remain in dispute: Policy 01-22, Audits, Inspections, Corrective Actions; Policy 5-1, Incident Reporting; and 16-1, Access to Telephones. Policies 1-22 and 5-1 relate to CoreCivic's internal mechanisms for ensuring compliance with its contracts and applicable detention standards and for engaging in corrective action when there is non-compliance. Plaintiffs' claims allege that CoreCivic's operation of the Work Program violates applicable standards requiring that the program be truly voluntary. *See, e.g.*, Doc. 87 ¶¶ 28, 36, 49. Therefore, any policies designed to ensure compliance with such requirements at SDC are directly relevant to Plaintiffs' claims. Policy 16-1 relates to the provision of telephone services to people detained at SDC. Plaintiffs allege that "detained immigrants are forced to submit to CoreCivic's labor scheme in order to buy necessities from the commissary (including food, hygiene products, and phone cards)" and that "[m]any detained

5

immigrants submit to the Work Program to purchase these costly phone cards so they can maintain contact with loved ones." *Id.* ¶¶ 36, 48; *see also id.* ¶¶ 37, 45, 47. CoreCivic's single policy governing detained individuals' access to telephones is therefore relevant to Plaintiffs' claims.

CoreCivic has not asserted that it would be unduly burdensome to produce these three policies, nor could it. The policies are readily accessible to CoreCivic, just like the various policies that CoreCivic has already produced to Plaintiffs. Indeed, the list of SDC policies CoreCivic produced includes hyperlinks to an internal website where these policies appear to be stored, indicating that collecting them for production may be as simple as downloading the three files. The Court should order production of the three policies that remain in dispute because they are relevant and producing them will not be unduly burdensome.

## II.    SDC Monthly Staffing Reports

Plaintiffs' RFP 11 seeks SDC monthly staffing vacancy reports sent by CoreCivic to the ICE Contracting Officer's Technical Representative (COTR). Per the IGSA, CoreCivic is required to submit monthly reports to ICE with the average monthly vacancy rate at SDC and any individual positions that have been vacant for more than 120 days.

Actual staffing levels at SDC are highly relevant to Plaintiffs' claims. CoreCivic employs janitorial and maintenance staff whose duties overlap with Work Program participants' jobs. Shortages in these paid employee positions would be evidence of CoreCivic's motive to force detained people to work in order to keep SDC running. CoreCivic also relies on detention officers to complete tasks that overlap with the Work Program. Evidence of detention officer shortages would thus reveal CoreCivic's motive to force detained people to perform cleaning and other essential tasks detention officers are regularly assigned. Additionally, a staffing shortage may mean that there are not sufficient paid employees to perform food service tasks in the event of a

6

Work Program shortage or strike, again placing more demand on the Work Program to fill these shortages.

Plaintiffs' request for SDC staffing plans is further justified by credible reports of chronic staffing shortages at SDC throughout the relevant period. *See, e.g.*, Elly Yu, *An ICE Detention Center's Struggle With 'Chronic' Staff Shortages*, WABE (May 31, 2018), https://www.wabe.org/exclusive-an-ice-detention-centers-struggle-with-chronic-staff-shortages/ ("Multiple employees at the facility brought up the issue of staffing shortages to inspectors. One CoreCivic manager said his biggest concern at Stewart Detention Center 'is staffing shortages which pose a risk to the staff's safety.'"); Dep't of Homeland Sec., Office of Inspector Gen'l, *Concerns about ICE Detainee Treatment and Care at Detention Facilities* 3 (Dec. 11, 2017), https://www.oig.dhs.gov/sites/default/files/assets/2017-12/OIG-18-32-Dec17.pdf ("We also received reports at the Stewart Detention Center of inadequate staffing at intake."). The best evidence of actual staffing levels at SDC is the monthly reports sent by CoreCivic to ICE.

Production of these reports is proportional to the needs of the case. These reports are sent monthly and presumably electronically to an ICE representative and should not be difficult to gather and review. As discussed, they contain relevant information about CoreCivic's actual staffing levels during the relevant period.

### III.  Audits and Inspections of SDC

Plaintiffs' RFP 13 seeks documents related to inspections or audits of SDC during the relevant period. CoreCivic has only produced two audits in response to this request – a 2019 Nakamoto Group audit report commissioned by ICE and a 2019 ICE Office of Detention Oversight (ODO) audit report. During the Parties' first conferral about Plaintiffs' Requests, Plaintiffs raised CoreCivic's deficient production in response to RFP 13. CoreCivic agreed to produce all ODO

7

reports and Nakamoto Group audits for the relevant period, to provide information regarding other SDC audits and inspections that have been performed during the relevant period, and to determine whether CoreCivic is willing to produce its internal quality assurance audits. *See* Ex. 9 (Oct. 20, 2020 Ltr. to CoreCivic) at 4. During the Parties' April 27, 2021 conferral, CoreCivic retracted this agreement, stating that it would only produce third-party audit reports that explicitly conclude that inadequate conditions of confinement compel people to participate in the Work Program and that it would not produce any inspection or audit reports generated by CoreCivic for quality assurance purposes even if they explicitly mention the Work Program. *See* Ex. 8 at 3-6.

All SDC inspection and audit reports generated by CoreCivic or by third parties (such as various DHS components) that discuss the provision of food, housing, discipline, segregation, phone access, clothing and hygiene items, commissary access, staffing, or the Work Program are relevant, given that Plaintiffs' claims broadly implicate the conditions of confinement at SDC in CoreCivic's forced labor scheme. For example, Plaintiffs allege that CoreCivic forces detained individuals to work by threatening them with serious harm in the form of segregation. Doc. 87 ¶ 119. Findings by third parties and CoreCivic's own quality assurance staff that the conditions in segregation at SDC meet or fall below the various confinement standards that apply at SDC are therefore relevant to the issue of whether segregation, or the threat thereof, amounts to serious harm. Similarly, Plaintiffs allege CoreCivic forces detained individuals to work by depriving them of basic necessities such as food, clothing, hygiene items, and affordable phone calls. *Id.* ¶¶ 36-48, 119. Inspection and audit reports finding such deprivation are highly relevant to Plaintiffs' claims even if they do not explicitly address whether such deprivation compels people to work.

Indeed, evidence of living conditions is often relevant in labor trafficking and exploitation cases as proof of actual or threatened serious harm and deprivation of basic necessities. *See, e.g.*,

*Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 450, 453-54, 458-59 (E.D. Va. 2015) (finding a TVPA violation when, among other things, "[t]hey prohibited [plaintiff] from leaving the house, from communicating with anyone outside their presence, and denied her access to medical care, while subjecting her to verbal abuse and inhumane living conditions"); *David v. Signal Int'l*, No. 08–cv-1220, 2012 WL 10759668, at *10 (E.D. La. Jan. 4, 2012) ("Upon arriving at Signal, Plaintiffs were sorely disappointed in the man camp accommodations, including the food. According to Plaintiffs, their $35 per day bought them life in overcrowded and cramped labor camps, with insufficient bathroom and shower facilities for the number of men housed in each bunkhouse . . . Plaintiffs contend that the squalid conditions in the man camp were conducive to the spread of disease and illness." (footnote omitted)); *E.E.O.C. v. Hill Country Farms*, 899 F. Supp. 2d 827, 833 (S.D. Iowa 2012) ("At the time that the Bunkhouse was closed by the State of Iowa due to substandard construction, hazards and other unsafe living conditions, the disabled workers residing there were also plagued with a leaky roof and insect infestation."). Moreover, the audit and inspection reports, or any lack thereof, are evidence of CoreCivic's knowledge or willful ignorance of any such deficiencies and are therefore relevant to Plaintiffs' allegations that CoreCivic knowingly engages in a pattern and scheme that compels people to work. Doc. 87 ¶¶ 121-23.

The Court should therefore order CoreCivic to produce all SDC inspection and audit reports generated by third parties or CoreCivic during the relevant period with findings relating to the provision of food, housing, discipline, segregation, phone access, clothing and hygiene items, commissary access, staffing, or the Work Program.

### IV. CoreCivic's Financial Information

Plaintiffs' RFP 20, together with Interrogatory 4, seeks CoreCivic's financial expenditure and revenue data for SDC during the relevant period. CoreCivic objects in full to producing its

revenue and expenditure data for SDC. This financial information is directly relevant to Plaintiffs' claims and damages calculations. First, if Plaintiffs prevail on their unjust enrichment claim, they will be entitled to disgorgement of CoreCivic's unjustly acquired profits, which can be calculated with CoreCivic's revenue and expenditure data. *See* Doc. 87 ¶ 133. CoreCivic maintains the only relevant figures for damages calculations are wages paid to detained workers and wages that would have been paid to employees for the same tasks. Ex.8. But CoreCivic's labor cost savings is not the only relevant data point for calculating CoreCivic's unjustly acquired profits. The profit CoreCivic makes on its exorbitantly priced commissary items, for which detained workers are forced to spend their wages, and the profit that CoreCivic made from the sale of phone cards to detained people, also factor into Plaintiffs' unjust enrichment calculation. *See* Doc. 87 ¶¶ 45, 61. The amount of unjust enrichment also includes detained workers' contributions to the overall value of SDC by performing necessary tasks like food service, cleaning, painting, and floor waxing. Finally, CoreCivic has depended on forced labor to keep SDC in operation, so all of the profits generated from SDC during the relevant period are at issue. *Id.* ¶¶ 29-30 (alleging the jobs and tasks performed by detained workers); *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1367 (11th Cir. 2021) ("Sometimes . . . 'the remedy for unjust enrichment gives the plaintiff something . . . the plaintiff did not previously possess.' This species of restitution is called disgorgement, and it generally allows a plaintiff to recover the defendant's 'wrongful gain,' even if that gain exceeds the plaintiff's provable loss." (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (Am. L. Inst. 2011)); *Yoh v. Daniel*, 497 S.E.2d 392, 393 (Ga. App. Ct. 1998) ("This evidence in toto authorized the jury to award the value of improvements to the house, even if it exceeded the cost of the materials and labor." (footnote omitted)).

Additionally, CoreCivic's expenditures and revenue, and more specifically its labor costs,

are evidence of CoreCivic's knowingly benefitting from forced labor, a critical element of Plaintiffs' TVPA claim. *See* Doc. 87 ¶¶ 21-23, 27, 32, 35, 61; 18 U.S.C. § 1589(b). Moreover, CoreCivic's expenditures, or lack thereof, on food, clothing, and hygiene items, and its phone and commissary revenue, are relevant to Plaintiffs' allegations about deprivation of basic necessities. *See* Doc. 87 ¶¶ 36-48.

Plaintiffs presented this request for information to CoreCivic as both an interrogatory and an RFP to allow CoreCivic to choose the least burdensome means of producing this information. Either way, this information is highly relevant to Plaintiffs' damages claims and its production is proportional to the needs of the case.

**V.  CoreCivic Is Withholding Relevant Documents without Substantial Justification**

Upon the Court's grant of this Motion, Plaintiffs should be awarded the reasonable expenses, including attorney's fees, incurred in pursuing the outstanding discovery, including, but not limited to, this Motion. Fed. R. Civ. P. 37(a)(5)(A). Rule 37 "creates a rebuttable presumption in favor of sanctions." *Hall v. Gov't Emps. Ins. Co.*, No. 5:07–CV–332 (HL), 2008 WL 2373808, at *2 (M.D. Ga. June 6, 2008). The noncomplying party may rebut the presumption in favor of sanctions by showing that its objections were substantially justified. *Id.*; Fed. R. Civ. P. 37(a)(5)(A)(ii). A party's objection to a discovery request is substantially justified if the objection raises an issue about which there is a genuine dispute or if reasonable people could differ as to the appropriateness of the discovery request. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As set forth above, CoreCivic's bases for withholding the above-described documents are not substantially justified because the documents are indisputably relevant to Plaintiffs' claims. *See Hall*, 2008 WL 2373808, at *2 (concluding that objections to interrogatories directly relating to plaintiff's allegations were "groundless," "absurd," and "without merit"); *Carter v. Butts*

11

*County, Georgia*, No. 5:12-CV-209 (LJA), 2016 WL 1274557, at *15 (M.D. Ga. Mar. 31, 2016) (concluding that failure to disclose highly relevant information was not substantially justified and sanctions were appropriate); *Vincent v. Am. Hondo Motor Co.*, No. 1:08-cv-067, 2009 WL 10678766, at *3 (S.D. Ga. Nov. 4, 2009) (ordering fees under Rule 37 "where nearly all of Plaintiff's RFPs were relevant to his case and . . . Defendant had failed to make the necessary particularized showing that the requests were overly broad and unduly burdensome"); *Wilcher v. Confederate Packaging, Inc.*, No. 3:05-cv-1292006, WL 8433776, at *3 (S.D. Ga. Jan. 31, 2006) (awarding costs and fees where party's objection to an interrogatory was "clearly groundless").

## CONCLUSION

For all the forgoing reasons, Plaintiffs respectfully request the Court order production of the documents that CoreCivic is withholding, consistent with the production deadlines set forth in the Parties' Joint Motion to Extend Discovery Deadlines and Set Interim Production Deadlines filed on May 11, 2021.

Dated: May 11, 2021                                                  Respectfully submitted,

/s/ Caitlin J. Sandley
Caitlin J. Sandley (GA Bar No. 610130)           Rebecca M. Cassler (GA Bar No. 487886)
**SOUTHERN POVERTY LAW CENTER**                  **SOUTHERN POVERTY LAW CENTER**
400 Washington Ave.                              150 E. Ponce de Leon Avenue, Suite 340
Montgomery, AL 36104                             Decatur, GA, 30030
Telephone: (334) 303-6822                        Telephone: (404) 521-6700
Facsimile: (334) 956-8481                        Facsimile: (404) 221-5857
cj.sandley@splcenter.org                         rebecca.cassler@splcenter.org

Meredith B. Stewart*                             Alan B. Howard*
**SOUTHERN POVERTY LAW CENTER**                  John T. Dixon*
201 Saint Charles Avenue, Suite 2000             Emily B. Cooper*
New Orleans, LA 70170                            **PERKINS COIE LLP**
Telephone: (504) 486-8982                        1155 Avenue of the Americas
Facsimile: (504) 486-8947                        22nd Floor
meredith.stewart@splcenter.org                   New York, NY 10036-2711
                                                 Telephone: (212) 262-6900
Vidhi Bamzai*                                    Facsimile: (212) 977-1649

**SOUTHERN POVERTY LAW CENTER**
111 East Capitol St., Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (601) 948-8885
vidhi.bamzai@splcenter.org

R. Andrew Free*
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
**PROJECT SOUTH**
9 Gammon Avenue SE
Atlanta, A 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

AHoward@perkinscoie.com
JohnDixon@perkinscoie.com
ECooper@perkinscoie.com

Jessica L. Everett-Garcia**
John H. Gray**
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
jeverettgarcia@perkinscoie.com
jhgray@perkinscoie.com

Jessica Tseng Hasen*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com

Daniel H. Charest*
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com