# Exhibit 7



Fighting Hate
Teaching Tolerance
Seeking Justice

Southern Poverty Law Center
PO Box 57089
New Orleans, LA 70157
www.splcenter.org

*Sent via Email*

March 12, 2021

Jacob B. Lee
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 W. Ray Road, Suite 300
Chandler AZ 85226
Tel: 480.420.1601
jlee@strucklove.com

**Re: *Barrientos v. CoreCivic, Inc.*, 4:18-cv-00070-CDL (M.D. Ga.), Response to CoreCivic's March 9, 2021 Letter**

Dear Jacob,

We are in receipt of your March 9 letter raising a myriad of discovery issues. We write to respond to the issues raised in that letter as well as to provide our response to CoreCivic's counterproposals on the ESI search process and the site inspection that you submitted to us via email on March 3.

Defendant's Initial Disclosures

Plaintiffs are in receipt of CoreCivic's March 10, 2021 supplemental Rule 26(a) initial disclosures. We appreciate you serving the supplemental information. In those disclosures, you list 23 potential witnesses by name and 6 potential witnesses by category. Given that number, Plaintiffs would like to seek leave from the Court to expand the number of depositions from 15 to 30 per side. Please let us know if you would be willing to file a joint motion for leave to take those additional depositions.

Plaintiffs' Initial Disclosures

As an initial matter, your March 9 letter states that Plaintiffs have not supplemented their original Rule 26(a) disclosures that we served on July 10, 2020. That is incorrect. Plaintiffs served supplemental initial disclosures on November 6, 2020 via email to you and your co-counsel ("November 6 Amended Disclosures"). As a result, some of your concerns about our disclosures are simply false. For example, you state that our first category of witnesses encompasses all 32,000 detained individuals who participated in the Voluntary Work Program ("Work Program"). That category is entitled "Plaintiffs"; it clearly contemplates the three named Plaintiffs in this matter, who are specifically named in the November 6 Amended Disclosures.

*Witness and Document Disclosures*

You assert that we have not supplemented with enough specificity the list of potential witnesses or documents that we may use to prove our claims and defenses. We disagree that we have violated the

Federal Rules of Civil Procedure, the Court's local rules, or its orders by not filing supplemental disclosures between November 6, 2020 and March 9, 2021. First, Rule 26(a) makes clear that we are required to include only detailed information that is *reasonably available* to us and that we *may use* to support our claims and defenses. Fed. R. Civ. P. 26(a)(1)(A)(i), (E). Plaintiffs would very much like to serve CoreCivic with a complete list of witnesses and documents that they may use to prove their claims, and Plaintiffs will do so in a timely manner as required by Rule 26(e). However, CoreCivic's and other third parties' delay in producing discovery has prevented us from compiling such a list. These delays are well known to you and include:

- CoreCivic did not make a meaningful production of documents in response to Plaintiffs' August 21, 2020 First Set of Requests for Production ("RFPs") until December 7, 2020, after Plaintiffs sent CoreCivic a Rule 37 letter. That production was only partial and remains to be completed.
- CoreCivic still has not produced the vast majority of ESI it has agreed to produce, and you have not provided a timeline for that production.
- CoreCivic emailed a production of documents apparently responsive to Plaintiffs' First Set of RFPs on March 3, 2021. However, as you know, Plaintiffs were unable to access those documents. Plaintiffs' counsel Jessica Hasen sent an email to Struck Love paralegal Mike Giardina on March 9 to request a replacement file because there were errors with the load file you sent. Even if we could have uploaded those approximately 11,000 pages of documents to our document management platform, we would not have been able to review them, determine which ones we may use to support our claims, and supplement our disclosures within the *six days* between receiving the documents and your March 9 letter, or even by your March 23 deadline. You ultimately provided a new link to the production late in the day on March 10—well after you sent your March 9 letter. We also did not receive CoreCivic's Second Supplemental Responses and Objections to Plaintiffs' First RFPs until March 10, further preventing us from supplementing our disclosures with information from the March 3 production prior to your March 9 letter.
- CoreCivic did not supplement its original initial disclosures until March 10, 2021. CoreCivic's delay in supplementing the witness list in its disclosures has prevented us from clarifying our list.
- You have repeatedly obstructed our attempts to confer about discovery issues by refusing to make yourself available for calls entirely or until weeks after our initial conferral request.

Plaintiffs have also experienced delays obtaining documents from third parties, which they need to inform their witness and document lists. CoreCivic is aware of the delay involved in receiving most of the documents from Trinity Services Group, Inc. ("Trinity"). *See* Doc. 122 (Pls' Mot. to Compel). Similarly, we have received a paltry number of documents in response to Plaintiffs' *Touhy* subpoena to the Department of Homeland Security ("DHS") compared to the total universe of documents we are asking DHS and its component agencies to produce. We have received only one document in response to our subpoena to Nakamoto Group. We understand that CoreCivic is not responsible for these delays, but we include them here to establish why Plaintiffs have been unable to provide a more fulsome supplement to the November 6 Amended Disclosures.

Second, even if our failure to supplement during the three-month window when CoreCivic produced the majority of the documents were a violation, that violation would be harmless. The cases you cite in your March 9 letter involve parties attempting to use testimony of witnesses at summary judgment or trial whom they did not disclose during discovery. *See, e.g.*, *Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017). That simply is not the case here. Further, as you note in your March 9 letter,

2

Plaintiffs have timely produced to you the documents they have obtained via Rule 45 subpoena.[1]  Like nearly all discovery documents in this case, those documents are in your custody and control and should come as no surprise to you if we ultimately disclose them in our supplemental Rule 26(a) disclosures.

*Damages Calculations*

Regarding the damages computation, you state that Plaintiffs have failed to comply with Rule 26(a)(1)(A)(iii). This assertion is incorrect. The 1993 Advisory Committee notes to Rule 26 make clear that "a party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person." Given CoreCivic's extensive delays in producing documents responsive to Plaintiffs' First Set of RFPs, along with third parties' delays in responding to Plaintiffs' subpoenas, Plaintiffs lack sufficient information to calculate the class representatives' damages.[2] Similarly, the 1993 Advisory Committee notes state that the duty to produce documents or other evidentiary material on which each computation is based "applies only with respect to documents then reasonably available to it and not privileged or protected as work product." Because Plaintiffs lack the documents necessary to compute the class representatives' damages, they do not have an obligation at this time to make those documents available to CoreCivic.

Moreover, Plaintiffs intend to comply with the Rule 26 requirement to supplement their initial disclosures to include damages computations in a timely manner, and certainly "within the discovery period," *Jackson v. United Artists Theatre Circuit, Inc.,* 278 F.R.D. 586, 593 (D. Nev. 2011), in the spirit of "eliminat[ing] surprise and assist[ing CoreCivic] in preparing for settlement negotiations, mediation, and trial," *Thorpe v. BJ's Restaurants, Inc.*, 2017 WL 10084190, at *2 (M.D. Fla. Oct. 20, 2017), as required by the cases CoreCivic has cited in its letter. For the reasons stated above, CoreCivic's demand that Plaintiffs do so now—while discovery is actively underway and CoreCivic and third parties are woefully delayed in their production of key documents—is premature. Plaintiffs also reserve the right to supplement their damages computations following the close of discovery if CoreCivic or third parties do not produce the necessary documents prior to the close of discovery. *Cf. Luna v. Del Monte Fresh Produce (Se.), Inc.*, 2007 WL 1500269, at *3–4 (N.D. Ga. May 18, 2007) (denying defendants' motion to compel a specific damages computation where the plaintiffs agreed to allow defendants to produce the necessary records "several weeks late," and in turn "agreed to supplement their initial disclosures with the required calculation as soon as [they] received full access to" the necessary records, and plaintiffs later did supplement as agreed).

---

[1] You state that Plaintiffs have not produced all the documents we received from Securus.  According to our records, Plaintiffs' counsel Jessica Hasen emailed Mike Giardina, copying you and other Struck Love personnel, links to a LeapFile containing the Securus documents you claim we did not provide to you on December 18, 2020 (SECURUS000001- SECURUS000094) and February 15, 2021 (SECURUS000095 - SECURUS000156).

[2] For example, CoreCivic states in its Second Supplemental Responses and Objections to Plaintiffs' First RFPs that it has produced all IGSA modifications in its possession, but it has only produced modifications through #29, dated February 2018. At least ten modifications were made to the IGSA since that date. Due to CoreCivic's failure to produce the most recent IGSA modifications, Plaintiffs have undertaken the time-consuming effort of seeking to obtain the missing modifications from DHS, and DHS has not yet produced the documents in question. IGSA modifications contain staffing and wage data necessary to calculate Plaintiffs' damages. CoreCivic is also refusing to produce other requested information that will likely be relevant to Plaintiffs' damages computation, including but not limited to financial information requested in RFP 20 and Interrogatory 4.  Relatedly, Trinity is refusing to produce the wage data for its employees at Stewart Detention Center ("SDC"), which Plaintiffs need to make their damages computations. As you know, after months of negotiations with Trinity, Plaintiffs have had to resort to motion practice to compel Trinity to disclose that information. Doc. 122.

Nevertheless, we agree to supplement Plaintiffs' November 6 Amended Disclosures with a preliminary damages formula for the computation of damages for the class representatives[3] after reviewing CoreCivic's March 3 document production, which CoreCivic only just produced via a functional format on the afternoon of March 10. We will provide a more detailed computation before the close of discovery, as is required by the rule. Plaintiffs also agree to provide CoreCivic bates numbers for any underlying documents or other evidentiary information that Plaintiffs relied upon to create the computation, pursuant to Rule 26a)(1)(A)(iii). Plaintiffs anticipate that the forthcoming computation will be incomplete; Plaintiffs will supplement the computation and provision of underlying documents, as appropriate under Rule 26(e), after they receive additional documents and information.

Sampling Methodology

You have indicated that you are still assessing the burden of producing the detention file samples Plaintiffs have requested. As a reminder, Plaintiffs have made significant effort to minimize the burden on CoreCivic of producing detention file samples. Plaintiffs have limited their requests for detention files to only excerpts of those files. Plaintiffs have saved CoreCivic hours of work by cross-referencing the spreadsheets produced by CoreCivic and generating lists of grievance and disciplinary samples. Moreover, the grievance and disciplinary sample selection requested in Plaintiffs' February 19 revised proposal will require CoreCivic to produce documents from approximately 1,704 individuals' detention files.[4]

Regarding your request for clarification of which "underlying disciplinary records" Plaintiffs seek, Plaintiffs are requesting production of the following forms: I-883 (Disciplinary Segregation Order); I-884 (Incident of Prohibited Acts and Notice of Charges); I-887 (Disciplinary Segregation Review Form); I-890 (Investigation Report); I-891 (Unit Disciplinary Committee Report of Findings and Actions); I-893 (Notice of Institution Disciplinary Panel Hearing); and I-894 (Institution Disciplinary Panel Report) forms. Plaintiffs are willing to agree to omit I-892 (Detainee Rights at the Institutional Disciplinary Panel Hearing) forms from the production unless excerpting that form in the document collection process adds to the burden of production. Plaintiffs will agree not to seek daily or weekly confinement activity records. Plaintiffs are willing to discuss "additional reviews" but first need clarification about what you mean by that term.

More broadly, to address your stated concerns about limiting the detention file sampling only to individuals who participated in the Work Program, Plaintiffs have requested sample documents relating both to Work Program participants and non-participants. *See* Pls.' Feb. 19, 2021 Detention File Sample Selection Revised Proposal at §§ I, II (1) – (2), III. The only sample requests Plaintiffs have limited to Work Program participants are requests for the two largest relevant disciplinary categories – Disorderly

---

[3] You demand a formula for the calculation of class damages, but the initial disclosures required by Rule 26(a) only relate to "a party." Fed. R. Civ. P. (a)(1)(A). Because no class has yet been certified, the named Plaintiffs are the only parties required to disclose a damages computation under Rule 26(a)(1)(A)(iii). *See Luna*, 2007 WL 1500269, at *4 ("The Court has not certified a class under Rule 23 . . . . The named representative plaintiffs are therefore the only 'parties' subject to the mandatory disclosure requirements of Rule 26(a)(1)."); *Hyland v. Home Servs. of Am.*, 2008 WL 11357996, at *4 (W.D. Ky. Mar. 26, 2008) (similar). Furthermore, Plaintiffs anticipate providing more information about class damages in a forthcoming expert report. *See Hyland*, 2008 WL 11357996, at *4 (concluding that where no class was certified, disclosure by plaintiff's expert of the methodology for calculating damages should a class be certified was sufficient to apprise defendants of the plaintiff's general theory of damages).

[4] Plaintiffs note that CoreCivic produced aggregated commissary data on March 3. Because of the timing and load file errors discussed above, Plaintiffs have not yet been able to review this data to determine whether they will agree to accept it in response to RFPs 8 and 12. Additionally, CoreCivic has not yet confirmed whether disciplinary and grievances logs from prior to January 2013 exist and reserve the right to request additional sample disciplinary and grievance records should additional logs be produced.

4

Conduct and Failure to Follow Verbal or Posted Rules and/or Orders. Plaintiffs are willing to confer about an alternative way to select approximately 471 disciplinaries from those two categories that would include both WP participants and non-participants.

To be clear, Plaintiffs will not accept the 2,000 detention files that will be produced in *Owino* in response to their request for detention file samples. CoreCivic is not entitled to tell Plaintiffs how to prove their case, especially when Plaintiffs are seeking relevant evidence. The *Owino* sample of 2,000 random files from the pool of everyone detained at SDC during the relevant period is not designed to lead to the discovery of relevant evidence in this case. *See* Fed. R. Civ. P. 26(b)(1). Plaintiffs are seeking sample selections tailored to the schemes they allege – a deprivation scheme and a punishment scheme. For example, Plaintiffs know that there were at least 207 grievances about food service at SDC. Plaintiffs are entitled to see those grievances to determine whether they evidence a scheme of depriving people of adequate food that would compel a reasonable person to work to provide food for himself. *See Menocal v. GEO Group, Inc.*, 882 F.3d 905, 918-22 (10th Cir. 2018) (permitting the use of circumstantial evidence to establish Rule 23 class certification requirements); *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 532 (D. Md. 2014) (quoting *United States v. Sabhnani*, 599 F.3d 215, 244 (2d Cir.2010)) ("Relevantly, a scheme or conspiracy 'can be inferred from circumstantial evidence.'").

Plaintiffs' First Set of RFPs and ESI Search Terms

In the "Additional Considerations" section of your March 9 letter, you state your position on various of Plaintiffs' First Set of RFPs.  Your position is informed by the March 3 production.  Because we have not been able to download that production, we cannot respond to your position at this time.  Once we review that production, we can evaluate the status of the RFPs and will be happy to confer at that point, if necessary.

In your March 3 email, you propose a process for the collection of the ESI, including the "robustness evaluation" protocol. We appreciate your willingness to test Plaintiffs' supplemental proposed search terms, and we are generally in agreement with your proposal for doing so.  However, we remain concerned about CoreCivic's refusal to provide us with a timeline for production.  We again request an estimated timeline for the following: (1) production of sample batches that are potentially responsive and (2) a report on the robustness rate of the search terms.

Site Inspection

Plaintiffs are in receipt of CoreCivic's March 3, 2021 counterproposal regarding Plaintiffs' Rule 34 site inspection notice. In light of CoreCivic's proposal to allow counsel to inspect in-person once all staff and detained individuals at SDC are vaccinated, CJ Sandley emailed you on March 4, 2021 to inquire when COVID-19 vaccines would be available to all staff and detained individuals at SDC. You have not responded.

Nevertheless, Plaintiffs will not agree to a virtual site inspection or to an in-person site inspection that excludes their experts. As Plaintiffs have already pointed out, numerous courts throughout the country have ordered in-person site inspections and expert tours of prisons, jails, and immigration detention centers during the COVID-19 pandemic. *See, e.g.*, *Malam v. Adducci*, No. 20-10829 (E.D. Mich. Dec. 3, 2020), ECF No. 439; *Braggs v. Dunn*, No. 2:14-cv-601, 2020 WL 5909086 (M.D. Ala. Oct. 1, 2020); *Alvarez v. LaRose*, No. 3:20-cv-782, 2020 WL 5594908 (S.D. Cal. Sept. 18, 2020) (involving a CoreCivic facility); *Garcia v. Wolf*, No. 1:20-cv-821, 2020 WL 4815048 (E.D. Va. Aug. 18, 2020); *Torres v. Milusnic*, No. 2:20-cv-04450-CBM-PVC (C.D. Cal. Aug. 18, 2020), ECF No. 74; *Chunn v. Edge*, 1:20-CV-01590, 2020 WL 1872523 (E.D.N.Y. Apr. 15, 2020). The Court in *A.S.M. v. Washburn*, which you reference, emphasized the fact that Petitioners in that case were requesting expedited site inspections. *See* Dkt. 50 at 1-3, 6. Also, notably, *A.S.M.* was decided very early in the pandemic when new information about coronavirus and how to prevent its spread emerged almost hourly.

Plaintiffs are not aware of any case law precedent distinguishing the scope of discovery permitted under Fed. R. Civ. P. 26 in what you refer to as "conditions cases" from other types of cases involving secured facilities. In any event, Plaintiffs' claims very much relate to the conditions of confinement at SDC and how those conditions compel detained individuals to participate in the Work Program. *See* Amend. Compl.

Finally, CoreCivic cannot unilaterally exclude Plaintiffs' experts from discovery, particularly when no *Daubert* motions have been filed. CoreCivic has offered no legal basis for excluding Plaintiffs' experts from an in-person site inspection even though CoreCivic is willing to allow Plaintiffs' counsel to conduct an in-person inspection.

Plaintiffs therefore offer the following counterproposal in response to CoreCivic's March 3, 2021 site inspection counterproposal.

1. Plaintiffs propose an in-person inspection including 3 experts and 4 members of Plaintiffs' litigation team. Plaintiffs are willing to negotiate with CoreCivic further regarding PPE and COVID testing requirements for those who will be attending the inspection.

2. Plaintiffs propose that the in-person inspection occur on a single day and last from 8:00am to 5:00pm with entrance processing/security clearance beginning at 7:30am and including a 30-minute lunch break.

3. Plaintiffs are willing to agree to the following language proposed by CoreCivic: facility staff member will accompany the tour participants with a facility camera, and will take photographs of areas designated by Plaintiffs, who will be able to review each photo to ensure it captures what they want it to capture before moving on if they wish to do so. [CoreCivic] will produce the photos after the inspection after reviewing them to ensure no safety- or security-sensitive information is inadvertently included.

4. Plaintiffs are willing to agree to limit the in-person inspection to the following facility areas:
   a. Intake/R&D*
   b. Exemplar housing units*, including the three kitchen worker pods (currently 3A, 3C, 3F), one pod housing women, and three other general population pods (such as 4F,, 5F, and 6F)
   c. Kitchen/Chow Hall*, including food storage, food preparation, and food service areas
   d. Laundry*
   e. Commissary*
   f. Segregation

   * included in CoreCivic's counterproposal

5. Plaintiffs propose that their experts be allowed to ask CoreCivic and its contractors' staff clarifying questions about what portion or operation of the facility they are observing.

6. Plaintiffs propose that Plaintiffs' experts be permitted to speak confidentially with up to ten detained individuals per expert. Plaintiffs are willing to negotiate with CoreCivic further regarding the logistics of such confidential interviews, including the process for obtaining lists of detained individuals in advance, obtaining consent from detained individuals, and complying with COVID-19 and other safety and health protocols while also ensuring sound confidentiality within the facility.

We are available to confer about the site inspection and sampling methodology proposals next week. Please let us know days and times that work for you, and we will make ourselves available.

Sincerely,

Meredith B. Stewart
Senior Supervising Attorney
Southern Poverty Law Center
(334) 531.6807
meredith.stewart@splcenter.org

CC:

CJ Sandley, Counsel for Plaintiffs, CJ.Sandley@splcenter.org
Alan Howard, Counsel for Plaintiffs, AHoward@perkinscoie.com
John Gray, Counsel for Plaintiffs, JHGray@perkinscoie.com
Jessica Hasen, Counsel for Plaintiffs, JHasen@perkinscoie.com
Vidhi Bamzai, Counsel for Plaintiffs, Vidhi.Bamzai@splcenter.org
Jessica Everett-Garcia, Counsel for Plaintiffs, JEverettGarcia@perkinscoie.com

Rachel Love, Counsel for Defendant, rlove@strucklove.com
Dan Struck, Counsel for Defendant, dstruck@strucklove.com
Ashley Hesman, Counsel for Defendant, ahesman@strucklove.com
Nick Acedo, Counsel for Defendant, nacedo@strucklove.com
Steve Curry, Counsel for Defendant, securry@currylawfirm.com

7