**EXHIBIT 1**

**Declaration of Jacob B. Lee**

**Declaration of Jacob B. Lee**

**EXHIBIT 1**

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>      Defendant. | Civil Action No. 4:18-cv-00070-CDL |

## DECLARATION OF JACOB B. LEE

I, Jacob B. Lee, state the following:

1. I am over the age of 18 years and competent to testify to the matters set forth in this Declaration. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, could competently testify to these facts. I am counsel of record for Defendant CoreCivic in the above-captioned matter and provide this Declaration in support of CoreCivic's Response to Plaintiffs' Motion to Compel Defendant CoreCivic's Response to Plaintiffs' First Discovery Requests.

2. Throughout discovery in this matter, CoreCivic has taken a broad view of relevance and produced (or agreed to produce and is in the process of producing) much of what Plaintiffs demand.

3. Specifically, CoreCivic has produced nine volumes of data to date, consisting of 17,793 documents, 151,525 pages, and 5,932 native documents such as spreadsheets, whose total page count if printed would likely number in the tens of thousands.

4. Included among these documents are:

      a. current and prior versions (for a period of 13 years subject to availability) of approximately three dozen policies, procedural guidelines, and post orders, as well as attachments and appendices to those documents;

      b. the Intergovernmental Service Agreement ("IGSA") between CoreCivic, Stewart County, and U.S. Immigration and Customs Enforcement ("ICE"), and all modifications to the IGSA, including all staffing plans attached to those documents;

      c. all available audit reports from ICE Enforcement and Removal Operations ("ERO"), the Office of Detention Oversight ("ODO"), and the Nakamoto Group spanning 2008 to 2021, including both reports maintained by CoreCivic and reports available online from ICE's FOIA Library;

      d. all available monthly invoices from CoreCivic to ICE, coversheets (where complete monthly invoices from CoreCivic to ICE are not available or functioning passwords to them could not be located despite reasonable efforts), and billing summaries from Stewart Detention Center ("SDC") to Stewart County through the end of 2020;

      e. aggregate data reports of purchase orders and invoices for personal hygiene items issued to detainees for the relevant time period;

      f. aggregate commissary purchase and inventory data for the relevant time period; and

      g. extracted data from CoreCivic's Offender Management System ("OMS") that details the deposit transactions to SDC detainees for their participation in the VWP.

5. The parties are also working to finalize an agreed-upon set of ESI search terms, which will likely result in the production of at least tens of thousands of additional documents and hundreds of thousands of additional pages given the number of custodians (74 facility-level employees, plus certain corporate personnel as needed) whose email accounts will be searched for a period of 13 years.

6. CoreCivic has also agreed to produce available excerpts from over 3,000 detainee files for the relevant time period consisting of disciplinary and grievance documents for certain disciplinary violations and grievance categories selected by Plaintiffs.

7. Plaintiffs' discovery overreach is best demonstrated by RFP No. 1, which sought "any and all DOCUMENTS RELATING TO CoreCivic POLICIES AND PROCEDURES … RELATING TO the WORK PROGRAM during the RELEVANT PERIOD." (Doc. 139-4.)

8. In its original response, CoreCivic stated that it believed it had produced all known available iterations of the requested policies, but attached an Index of the complete set of SDC policies and stated it would meet and confer with Plaintiffs regarding any additional policies they believed were relevant and responsive. (Doc. 139-6.)

9. Plaintiffs provided CoreCivic with a highlighted copy of the Index and demanded that CoreCivic produce all the highlighted policies, procedural guidelines, and post orders.

10. In response, CoreCivic produced the remainder of the approximately three dozen policies, procedural guidelines, and post orders referenced above that it had not already produced, even though they were not strictly related to the VWP. (Attachment A.)

11. CoreCivic declined to produce approximately 58 policies, procedural guidelines, and post orders—including the three policies at issue here—as being too far removed from the claims and defenses at issue in this matter, as they covered such topics as Policy Management, General Counsel Office of Investigations/Internal Investigations, Workers' Compensation Benefits, Paid Time Off, Security Threat Group Management, Suicide Prevention/Risk Reduction, and more. (Id.)

12. In its original response to RFP No. 13, CoreCivic produced a 2019 Nakamoto Group report and a 2019 ODO report and stated that it would supplement the response with additional reports. (Doc. 139-6.) On May 12, 2021, CoreCivic produced various reports from ERO/Nakamoto Group, ERO/Creative Corrections, and ODO from 2008, 2012, 2015, 2017, 2018, 2019, and 2020 as downloaded from ICE's FOIA Library at https://www.ice.gov/foia/library (last accessed May 31, 2021)—a date necessitated not by the Motion to Compel, but by time required to prepare the reports and the other documents produced with them for production.

13. Plaintiffs also have reports available to them from their subpoenas duces tecum to Nakamoto Group, Inc., served on December 22, 2020 (Attachment B), and the U.S. Department of Homeland Security (including ICE), served on August 21, 2020 (Attachment C), both of which sought audit and inspection reports pertaining to SDC.

14. Although CoreCivic maintains its position that audit and inspection reports that do not specifically reference the VWP are irrelevant, it nevertheless produced another round of reports on May 31, 2021 comprising the rest of the ICE/ERO/Nakamoto/ODO reports in its possession.

15. Specifically, the production includes 12 reports from ERO/Nakamoto and ODO for various years between 2012 and 2021.

16. CoreCivic is not in possession of any additional ICE/ERO/Nakamoto/ODO reports, such that there is nothing more to compel as to those reports.

17. CoreCivic has not, as Plaintiffs claim, objected "in full" to producing "revenue and expenditure data for SDC."

18. To the contrary, CoreCivic has produced all available monthly invoices from CoreCivic to ICE, coversheets (where complete monthly invoices from CoreCivic to ICE are not available or functioning passwords to them could not be located despite reasonable efforts), and billing summaries from SDC to Stewart County through the end of 2020; aggregate data reports of purchase orders and invoices for personal hygiene items issued to detainees for the relevant time period; aggregate commissary purchase and inventory data for the relevant time period; and extracted data from OMS that details the deposit transactions to SDC detainees for their participation in the VWP.

19. Plaintiffs have obtained additional financial documents regarding SDC from Stewart County (Attachment D), Trinity (Attachment E), and ICE (Attachment C) in response to their subpoenas.

20. During the parties' meet and confer efforts regarding payroll documents, CoreCivic informed Plaintiffs that SDC's janitorial staff do not clean areas of the facility that are part of the VWP, but clean secure areas of the facility detainees are not permitted in, such as the areas occupied by ICE personnel.

21. Nevertheless, CoreCivic promised to produce payroll information for SDC's janitors and maintenance workers on May 4, 2021 (Doc. 139-11) and produced the information on May 31, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of June, 2021 in Chandler, Arizona.

s/ Jacob B. Lee<br>Jacob B. Lee