# Exhibit 6



**U.S. Department of Homeland Security**
Immigration and Customs Enforcement
Office of Professional Responsibility
Inspections and Detention Oversight
Division Washington, DC 20536-5501

# Office of Detention Oversight Compliance Inspection

# Enforcement and Removal Operations ERO Atlanta Field Office Stewart Detention Center Lumpkin, Georgia

## August 29-31, 2017

# COMPLIANCE INSPECTION
## for the
## STEWART DETENTION CENTER
## Lumpkin, Georgia

## TABLE OF CONTENTS

**OVERVIEW**
    Facility Overview ......................................................................................................... 1
    Findings by Performance-Based National Detention Standards (PBNDS) 2011 Major
    Categories ..................................................................................................................... 2

**COMPLIANCE INSPECTION PROCESS** ......................................................................... 3

**DETAINEE RELATIONS** .................................................................................................... 4

**COMPLIANCE INSPECTION FINDINGS**

    **SAFETY**
    Environmental Health and Safety .................................................................................. 6

    **SECURITY**
    Admission and Release ................................................................................................. 6
    Custody Classification System ...................................................................................... 7
    Facility Security and Control ........................................................................................ 7
    Sexual Abuse and Assault Prevention and Intervention ............................................... 8
    Special Management Units ............................................................................................ 8
    Staff Detainee Communication ..................................................................................... 9

    **ACTIVITIES**
    Telephone Access .......................................................................................................... 9

    **JUSTICE**
    Detainee Handbook ..................................................................................................... 10
    Grievance System ....................................................................................................... 10
    Law Libraries and Legal Materials ............................................................................. 11

**CONCLUSION** .................................................................................................................. 11

---

**COMPLIANCE INSPECTION TEAM MEMBERS**

| | | |
|---|---|---|
| (b)(6), (b)(7)(C) | Lead Inspections and Compliance Specialist | ODO |
| | Inspections and Compliance Specialist | ODO |
| | Inspections and Compliance Specialist | ODO |
| | Contractor | Creative Corrections |
| | Contractor | Creative Corrections |
| | Contractor | Creative Corrections |
| | Contractor | Creative Corrections |

# FACILITY OVERVIEW

The Office of Detention Oversight (ODO) conducted a compliance inspection of the Stewart Detention Center (SDC), in Lumpkin, Georgia, from August 29-31, 2017[1]. SDC opened in 2006 and is owned and operated by Core Civic. The Office of Enforcement and Removal Operations (ERO) began housing detainees at SDC in 2006 under the oversight of ERO's Field Office Director (FOD) in Atlanta. The facility operates under the Performance-Based National Detention Standards (PBNDS) 2011.

ERO Deportation Officers (DO) and a Detention Services Manager (DSM) are assigned to the facility. An SDC warden is responsible for oversight of daily facility operations and is supported by ▮▮▮ personnel. TKC Holding Inc. provides food services and medical care is provided by the ICE Health Service Corps (IHSC). The facility holds an American Correctional Association (ACA) accreditation.

| Capacity and Population Statistics | Quantity |
|---|---|
| ICE Detainee Bed Capacity[2] | 1,966 |
| Average ICE Detainee Population[3] | 1,848 |
| Male Detainee Population (as of 8/29/2017) | 1,497 |
| Female Detainee Population (as of 8/29/2017) | N/A |

In FY 2015, ODO conducted an inspection of SDC and found ten (10) deficiencies in the following areas: Admission and Release (4 deficiencies), Classification System (1), Special Management Units (3), Food Service (1), and Grievance System (1).

---

[1] This facility holds male detainees with low, medium low, medium high, and high security classification levels for periods greater than 72 hours.
[2] Data Source: ERO Facility List Report as of September 18, 2017
[3] *Ibid*

# FY 2017 FINDINGS BY PBNDS 2011 MAJOR CATEGORIES

| PBNDS 2011 STANDARDS INSPECTED[4] | DEFICIENCIES |
|---|---|
| **Part 1 - Safety** | |
| Environmental Health and Safety | 1 |
| **Sub-Total** | **1** |
| **Part 2 - Security** | |
| Admission and Release | 4 |
| Custody Classification System | 2 |
| Facility Security and Control | 1 |
| Funds and Personal Property | 0 |
| Sexual Abuse and Assault Prevention and Intervention | 3 |
| Special Management Units | 3 |
| Staff-Detainee Communication | 3 |
| Use of Force and Restraints | 0 |
| **Sub-Total** | **16** |
| **Part 4 - Care** | |
| Food Service | 0 |
| Medical Care | 0 |
| Medical Care (Women) | 0 |
| Significant Self-harm and Suicide Prevention and Intervention | 0 |
| **Sub-Total** | **0** |
| **Part 5 - Activities** | |
| Telephone Access | 3 |
| **Sub-Total** | **3** |
| **Part 6 - Justice** | |
| Detainee Handbook | 2 |
| Grievance System | 3 |
| Law Libraries and Legal Materials | 1 |
| **Sub-Total** | **6** |
| **Total Deficiencies** | **26** |

---

[4] For greater detail on ODO's findings, see the *Inspection Findings* section of this report

# COMPLIANCE INSPECTION PROCESS

ODO conducts oversight inspections of ICE detention facilities with an average daily population greater than ten, and where detainees are housed for over 72 hours, to assess compliance with ICE National Detention Standards (NDS) 2000, or the Performance-Based National Detention Standards (PBNDS) 2008 or 2011, as applicable. These inspections focus solely on facility compliance with detention standards that directly affect detainee life, health, safety, and/or well-being.[5] ODO identifies violations linked to ICE detention standards, ICE policies, or operational procedures as *deficiencies*.

For facilities governed by either the PBNDS 2008 or 2011, ODO specifically notes deficiencies related to ICE-designated "priority components" which are considered *critical* to facility security and the legal and civil rights of detainees. ODO also highlights instances when the facility resolves deficiencies prior to completion of the ODO inspection--these corrective actions are annotated with "C" under the Inspection Findings section of this report.

At the conclusion of each inspection, ODO holds a closeout briefing with facility and local ERO officials to discuss preliminary findings. A summary of these findings is also shared with ERO management officials. Thereafter, ODO provides ICE leadership with a final compliance inspection report to (i) assist ERO in developing and initiating corrective action plans and (ii) provide senior executives with an independent assessment of facility operations. Additionally, ODO findings inform ICE executive management decision making in better allocating resources across the agency's entire detention inventory.

---

[5] ODO reviews the facility's compliance with selected standards in their entirety.

# DETAINEE RELATIONS

There were 33 detainees who voluntarily agreed to be interviewed by ODO. Most detainees interviewed reported satisfaction with facility services with the exception of those items listed below. One detainee indicated that he had experienced instances of verbal abuse and mistreatment.

*Admission and Release:* Six detainees claimed they did not see the facility orientation video.

- Action Taken: ODO interviewed facility staff and found all detainees have an opportunity to see the orientation video as it is played Monday –Friday at 0815 a.m. on televisions in every housing unit. At ODO's request, facility staff ensured each of the six detainees watched the orientation video.

*Admission and Release:* Twenty (20) detainees claimed they did not receive the ICE National Handbook and/or Local supplement Handbook.

- Action Taken: ODO reviewed each detainee's detention file and determined that each of them actually signed a receipt for both handbooks. However, given the detainees' claims, the facility reissued each of the 20 detainees both handbooks prior to the conclusion of ODO's inspection.

*Detainee Handbook:* One detainee from Pakistan as well as five other detainees speaking Napoli, Hatian-Creole, French, and Vietnamese claimed they did not understand the detainee handbook as they either did not speak or read English or Spanish.

- Action Taken: ODO reviewed the detainees' files, which revealed the detainees were issued and signed for receipt of both the ICE National Detainee Handbook and the facility handbook, in either English or Spanish. Facility staff indicated they were unaware the detainees did not understand the handbooks. Prior to conclusion of the inspection and through language line interpreters, ERO read the detainees important excerpts of the handbook in a language they could understand. *See* the *Compliance Inspection Findings: Detainee Handbook* section of this report for further information.

*Medical Care:* One detainee stated he was diabetic and in need of medication and that no medication had been given to him. He stated that since his arrival at the facility, medical staff checked his blood sugar levels twice per day.

- Action Taken: ODO determined the detainee arrived at SDC on August 16, 2017 and reported a history of diabetes, which he claimed was treated with desmopressin nasal spray. The detainee was evaluated the same day by a mid-level provider and enrolled in the facility's chronic care program. No medication was ordered at that time. In following up with the facility regarding the detainee's medication concern, ODO learned the detainee was seen on August 30, 2017, and based on lab results, a referral to an outside endocrinologist was ordered to help determine next steps.

*Sexual Assault Awareness and Prevention Intervention:* Five detainees claimed when officers of the opposite sex enter the housing units they do not consistently announce their presence.

- Action Taken:  ODO reminded the ERO Supervisory Detention and Deportation Officer (SDDO) about the requirement of opposite sex announcements under the Sexual Abuse and Assault Prevention and Intervention Standard.  *See* the *Compliance Inspection Findings:  Sexual Abuse and Assault Prevention and Intervention* section of this report for further information.

*Staff Detainee Communication:*  One detainee claimed a staff member in housing unit 3 verbally abused him, yelling, "Get the hell out of here, this is my house."  The detainee also claimed the staff person walks through the housing unit early in the morning while detainees are still sleeping with her radio purposely turned up very loud.

- Action Taken:  The detainee informed ODO he had not submitted a grievance regarding this incident.  ODO informed the SDDO and the facility leadership of the detainee's allegation.  The facility identified the alleged party and temporarily moved the staff officer to another housing unit pending an investigation into the detainee's claims.

*Staff Detainee Communication*:  Seven detainees claimed they have not seen or rarely see their deportation officers.  Examination of the housing unit logbooks found ERO signed in for their scheduled and unscheduled visits and that most visits ranged from two to twenty minutes in total.

- Action Taken: ODO reminded the on-site ERO Supervisory Detention and Deportation Officer (SDDO) about the frequency of visits required under the Staff Detainee Communication standard.  *See* the *Compliance Inspection Findings:  Staff Detainee Communication* section of this report for further information.

*Telephone Access:*  One detainee claimed the Detainee Reporting Information Line (DRIL line) and other toll free phone numbers are blocked.

- Action Taken:  ODO interviewed facility staff and observed attempts to make toll free calls, finding toll free numbers do not go through without charging the detainee.  The facility informed the telephone service provider, TALTON Communications, of the issue and requested they update their system to ensure detainees are not charged for calling the mandatory toll free numbers.  As an interim solution instructions were posted throughout the facility to instruct detainees how to call the toll free numbers at no cost.  ODO informed the ICE HQ Talton contracting officer's representative on this matter, as it has been observed at several ICE facilities in recent months.  *See* the *Compliance Inspection Findings:  Telephone Access* section of this report for further information.

CCBVA0000150247

# COMPLIANCE INSPECTION FINDINGS

## SAFETY

**ENVIRONMENTAL HEALTH AND SAFETY (EH&S)**

An interview with facility staff found all areas of the facility are protected by an automatic smoke detector and sprinkler system. However, the smoke detection system's annual inspection expired on June 12, 2017. Although Integrated Fire Protection, Inc. had inspected the smoke detector on both February 6, 2017 and July 31, 2017, they were unable to re-set the main panel on both occasions in order to renew the annual inspection. Consequently, by the time of ODO's review, SDC still had not passed an inspection by a licensed professional in accordance with the standard **(Deficiency EH&S-1[6])**, and this issue was not resolved prior to the conclusion of ODO's inspection.

## SECURITY

**ADMISSION AND RELEASE (A&R)**

During intake, detainees are required to change into clothing provided by the facility. ODO observed staff instruct a group of newly arriving individuals to change clothing in the open holding area, affording them no privacy **(Deficiency A&R-1[7])**.

SDC policy states detainees will shower prior to entering their assigned housing unit whenever possible. However, SDC staff members informed ODO that detainees are only given the opportunity to shower once they are transferred to the housing unit **(Deficiency A&R-2[8]) (R-1)**.

ODO's review of the SDC Orientation video found it provides the detainees with a good overview of the facility and is available in both English and Spanish. However, there was no documentation of ERO's approval of SDC's orientation procedures **(Deficiency A&R-3[9])(R-2)**.

---

[6] "Every facility shall develop a written fire prevention, control and evacuation plan that includes the following: inspection, testing and maintenance of fire protection equipment, in accordance with NFPA codes." *See* ICE PBNDS 2011, Standard, Environmental Health and Safety, Section (V)(C)(3)(d).

[7] "Staff shall permit the detainee to change clothing and shower in a private room without being visually observed by staff." *See* ICE PBNDS 2011, Standard, Admissions and Release, Section (V)(B)(2).

[8] "To maintain standards of personal hygiene and to prevent the spread of communicable diseases and other unhealthy conditions within the housing units, where possible, every detainee shall shower before entering his/her assigned unit." *See* ICE PBNDS 2011, Standard, Admissions and Release, Section (V)(B)(2)(d). **This is a repeat deficiency**.

[9] "All facilities shall have a method to provide ICE/ERO detainees an orientation to the facility as soon as practicable, in a language or manner the detainees understand. Orientation procedures in CDF's and IGSA's must be approved in advance by the local ICE/ERO Field Office." *See* ICE PBNDS 2011, Standard, Admissions and Release, Section (V)(F). **This is a priority component. This is a repeat deficiency**.

CCBVA0000150248

ODO confirmed release procedures meet the requirements of the standard; however, there was no documentation to confirm ERO approval **(Deficiency A&R-4[10])**. Despite numerous conversations with SDC staff who advised ODO they would provide documentation of ERO's approval for orientation and release procedures, it was not provided prior to the completion of the inspection.

## CUSTODY CLASSIFICATION SYSTEM (CCS)

ODO observed several different mass movements of detainees. ODO observed high-level detainees were not being escorted as required by the standard **(Deficiency CCS-1[11])**. Procedures are in place for the review of classification levels every 60 to 90 days, and for special reassessments prior to detainee releases from disciplinary segregation and any time additional information becomes known. However, ODO's review of detention files for several individuals identified no documentation of the facility's completion of reclassification within the time limits required by the standard **(Deficiency CCS-2[12])**.

> *Corrective Action*: The facility initiated corrective action during the inspection by reclassifying the detainees and placing the required documents into their detention files, **(C-1)**.

## FACILITY SECURITY AND CONTROL (FS&C)

ODO observed the co-mingling of high-level detainees without adequate supervision in several areas of the facility including the medical waiting area, video conference waiting area, intake area, and the dining room area. Although staff were present in those spaces, they often were engaged in other tasks and made little or no attempt to supervise detainees or maintain separation between the different levels of detainees **(Deficiency FS&C-1[13])(R-3)**.

---

[10] "Facility staff assigned to processing must complete certain procedures before any detainee's release, removal, or transfer from the facility. Necessary steps include, but are not limited to: completing out-processing forms; closing files and fingerprinting; returning personal property; reclaiming facility-issued clothing; and checking wants and warrants. ICE/ERO shall approve all facility release procedures." *See* ICE PBNDS 2011, Standard, Admissions and Release, Section (V)(H).

[11] "High custody detainees: are considered high-risk, require medium - to maximum-security housing, and are always monitored and escorted." *See* ICE PBNDS 2011, Standard, Custody Classification System, Section (V)(F)(3).

[12] "All facility classification systems shall ensure that a detainee is reassessed and/or reclassified. Reclassification assessments shall take into account, among other factors, the detainee's risk of victimization or abusiveness. Staff shall record whether a classification process is being conducted for an initial classification or subsequent reclassification: The first reclassification assessment shall be completed 60 to 90 days after the date of the initial classification. Special Reclassification Assessments Staff shall complete a special reclassification within 24 hours before a detainee leaves the Special Management Unit (SMU)...." *See* ICE PBNDS 2011, Standard, Custody Classification System, Section (V)(H)(1)(3).

[13] "Security staffing shall be sufficient to maintain facility security and prevent or minimize events that pose a risk of harm to persons and property. The facility administrator shall determine security needs based on a comprehensive staffing analysis and a staffing plan that is reviewed and updated at least annually. Essential posts and positions shall be filled with qualified personnel." *See* ICE PBNDS 2011, Standard, Facility Security and Control, Section (V)(A). **This is a repeat deficiency**.

**SEXUAL ABUSE AND ASSAULT PREVENTION AND INTERVENTION (SAAPI)**

SDC has a sexual abuse and assault prevention policy, identified as *14-2-DHS, Sexual Abuse Prevention Response,* which was revised on August 16, 2017 and approved by the facility administrator. However, the facility's written policy and procedures for the SAAPI program had not been reviewed and approved by the Field Office Director **(Deficiency SAAPI-1[14])**.

The SDC facility investigator uses a Sexual Abuse Incident Check Sheet to ensure all steps in the process are covered. SDC documents their notification to ERO and the Stewart County Sheriff's Office on the ICE Incident Notification Form. However, ODO found that the SAAPI Compliance Manager does not maintain all case records associated with claims of sexual abuse in a secure area **(Deficiency SAAPI-2[15])**.

ODO observed and verified detainee interview claims that officers of the opposite sex do not consistently announce their presence when entering the housing units **(Deficiency SAAPI-3[16])**.

**SPECIAL MANAGEMENT UNITS (SMU)**

A review of segregation documentation confirmed that facility personnel issue SMU orders; however, neither administrative nor disciplinary segregation orders were translated into Spanish in accordance with the standard **(Deficiency SMU-1[17])(R-4)**.

ODO also found administrative segregation reviews are not conducted using the Form I-885, **(Deficiency SMU-3[18])**.

---

[14] "The facility's written policy and procedures require the review and approval of the Field Office Director." *See* ICE PBNDS 2011, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (V)(A). **This is a priority component**.

[15] "Each facility shall maintain in a secure area all case records associated with claims of sexual abuse, including incident reports, investigative reports, offender information, case disposition, medical and counseling evaluation findings, and recommendations for post-release treatment, if necessary, and/or counseling shall be maintained in appropriate files in accordance with these detention standards and applicable policies, and retained in accordance with established schedules." *See* ICE PBNDS 2011, Standard, Sexual Abuse and Assault Prevention and Intervention, Section (V)(O).

[16] "Staff of the opposite gender shall announce their presence when entering an area where detainees are likely to be showering, performing bodily functions, or changing clothing." *See* ICE PBNDS 2011, Standard, Sexual Abuse and Assault Prevention and Intervention, Appendix 2.11.A: (D)(1)(f).

[17] "The administrative segregation order shall be immediately provided to the detainee in a language or manner the detainee can understand unless delivery would jeopardize the safe, secure, or orderly operation of the facility. All written materials provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency." *See* ICE PBNDS 2011, Standard, Special Management Units, Section (V)(A)(2)(e). **This is a priority component and repeat deficiency**.

[18] "All facilities shall implement written procedures for the regular review of all detainees held in administrative segregation, consistent with the procedures specified below. A supervisor shall conduct a review within 72 hours of the detainee's placement in administrative segregation to determine whether segregation is still warranted. The review shall include an interview with the detainee, and a written record shall be made of the decision and the justification. The administrative segregation review (Form I-885) shall be used for the review. *See* ICE PBNDS 2011, Standard, Special Management Units, Section (V)(A)(3)(a)(2). **This is a priority component**.

ODO observed detainees on disciplinary segregation were handcuffed by staff when escorted from their cells contrary to the standard **(Deficiency SMU-3[19])**. ODO confirmed with the Chief of Security this practice is in place for all detainees on disciplinary segregation, regardless of the reason for their SMU placement.

### STAFF-DETAINEE COMMUNICATION (SDC)

ODO reviewed staff-detainee communication logbooks and found multiple gaps in time between entries. Therefore, ODO was unable to confirm how often ERO officers visit the housing units. ODO also reviewed four months of ERO weekly inspection sheets and found only two instances documenting communication with detainees (one of which pertained to the lack of ICE "Pod Visits") **(Deficiency SDC-1[20])**.

## ACTIVITIES

### TELEPHONE ACCESS (TA)

ODO observed posted information related to free legal services, consulate lists, and OIG posters throughout the housing areas. ODO conducted operational checks of telephones in the housing units and called randomly selected pre-programmed numbers finding them in good working order. However, the phone check also found the facility telephone system does not have a 1-800 operating platform allowing detainees to make free calls to state and federal government offices **(Deficiency TA-1[21])**.

The facility's telephone system has a recorded message that advises detainees that calls are subject to monitoring. However, ODO did not find notices at each monitored telephone stating the procedures to obtain an unmonitored phone call **(Deficiency TA-2[22])**. Telephone calls are

---

[19] "Placement in an SMU does not constitute a valid basis for the use of restraints while in the SMU or during movement around the facility. Consistent with standard 2.15, restraints should only be used if necessary as a precaution against escape during transfer, for medical reasons (when directed by the medical officer), or to prevent self-injury, injury to others, or serious property damage." See ICE PBNDS 2011, Standard, Special Management Units, Section (V)(E).

[20] "ICE/ERO detainees shall not be restricted from having frequent informal access to and interaction with key facility staff members, as well as key ICE/ERO staff, in a language they can understand." *See* ICE PBNDS 2011, Standard, Staff Detainee Communication, Section (V)(A). **This is a priority component**.

[21] "Even if telephone service is generally limited to collect calls, each facility shall permit detainees to make direct or free calls to the offices and individuals listed below. Full telephone access shall be granted in order for a detainee to contact the following: the Executive Office for Immigration Review or local immigration court; the Board of Immigration Appeals; federal and state courts where the detainee is or may become involved in a legal proceeding; consular officials; DHS/OIG; legal representatives, to obtain legal representation, or for consultation when subject to expedited removal (when a detainee is under an expedited removal order, his/her ability to contact pro bono legal representatives shall not be restricted); legal service providers or organizations listed on the ICE/ERO free legal service provider list; United Nations High Commissioner for Refugees (UNHCR), from asylum-seekers and stateless individuals; federal, state or local government offices to obtain documents relevant to his/her immigration case; immediate family or others for detainees in personal or family emergencies or who otherwise demonstrate a compelling need (to be interpreted liberally); or ICE/OPR Joint Intake Center (JIC)." *See* ICE PBNDS 2011, Standard, Telephone Access, Section (V)(E). **This is a priority component**.

[22] "If telephone calls are monitored, the facility shall: at each monitored telephone, place a notice that states the following: the procedure for obtaining an unmonitored call to a court, a legal representative or for the purposes of

CCBVA0000150251

generally limited to 20 minutes and all telephones are accessible throughout the day. However, telephone access hours are not posted in the housing units **(Deficiency TA-3[23])**.

**DETAINEE HANDBOOK (DH)**

ODO's review of the detainee handbook revealed it fails to notify detainees of the scheduled hours and days that ICE/ERO are available to be contacted by detainees **(Deficiency DH-1[24])**.

Each SDC facility handbook is printed in the required English and Spanish versions. ODO was informed via a staff interview that the facility provides translation assistance to detainees exhibiting literacy or language problems and to those who request it. However, during detainee interviews, ODO found one detainee from Pakistan as well as those speaking Napoli, Hattian-Creole, French and Vietnamese who stated they did not understand the handbooks that were provided (in English or Spanish) and were not provided interpretation or translation services **(Deficiency DH-2[25])**.

## JUSTICE

**GRIEVANCE SYSTEM (GS)**

The Grievance System at SDC allows detainees the opportunity to submit informal oral and written grievances, formal grievances, medical grievances and emergency grievances. Detainees have the right to skip the informal process and proceed directly to the formal grievance stage. However, the results of informal grievances are not logged into the grievance log, and SDC personnel fail to file a copy of the grievances in the detainee's file **(Deficiency GS-1[26])**.

A review of the SDC grievance policy found it allows the Grievance Officer (GO) to grant an extension of up to 15 days if more time is required to reach a resolution. However, the 15 days SDC allows for selected grievance responses is well beyond the 5 days the standard limits facilities to **(Deficiency GS-2[27])(R-5)**.

Grievances submitted by detainees are logged into the facility grievance log and assigned a tracking number by the GO. ODO selected 30 files to review for proper grievance compliance.

---

obtaining legal representation." *See* ICE PBNDS 2011, Standard, Telephone Access, Section (V)(B)(3)(b).
[23] "Telephone access hours shall also be posted." *See* ICE PBNDS 2011, Standard, Telephone Access, Section (V)(C).
[24] "While all applicable topics from the handbook must be addressed, it is especially important that each local supplement notify each detainee of: contact information for the ICE/ERO Field Office and the scheduled hours and days that ICE/ERO staff is available to be contacted by detainees at the facility." *See* ICE PBNDS 2011, Standard, Detainee Handbook, Section (V)(B)(15). **This is a priority component**.
[25] "The local handbook supplement provided to detainees shall generally be translated into Spanish. Where practicable, provisions for written translation shall be made for other significant segments of the population with limited English proficiency." *See* ICE PBNDS 2011, Standard, Detainee Handbook, Section (V)(C).
[26] "If an informal grievance is resolved, the employee need not provide the detainee written confirmation of the outcome, but shall document the result for the record in the detainee's detention files and in any logs or data systems the facility has established to track such actions." *See* ICE PBNDS 2011, Grievance System, Section (V)(C)(1).
[27] "Detainee shall be provided with a written or oral response within five days of receipt of the grievance." *See* ICE PBNDS 2011, Grievance System, Section (V)(C)(3)(b)(1)(b)). **This is a repeat deficiency**.

Seven of the 30 files were missing copies of grievances filed by the detainee **(Deficiency GS-3[28])**.

**LAW LIBRARIES AND LEGAL MATERIALS (LL&LM)**

Although SDC has devised a schedule to permit detainees to use the law library 15 hours a week (from 6:00a.m to 10:00pm), the facility handbook fails to inform detainees of the law library schedule **(Deficiency LLM-1[29])**.

# CONCLUSION

During this inspection, ODO reviewed the facility's compliance with seventeen (17) standards and found the facility compliant with six (6) standards. ODO found twenty-six (26) deficiencies in the remaining eleven (11) standards, including nine (9) priority components and five (5) repeat deficiencies. Finally, ODO identified one instance where the facility initiated corrective action prior to completion of the inspection. ODO recommends ERO work with facility personnel to remedy any deficiencies that remain outstanding, as applicable and in accordance with contractual obligations.

| Compliance Inspection Results Compared | FY 2015 (PNDS 2011) | FY 2017 (PNDS 2011) |
|---|---|---|
| Standards Reviewed | 16 | 17 |
| Deficient Standards | 5 | 11 |
| Overall Number of Deficiencies | 10 | 26 |
| Deficient Priority Components | 2 | 9 |
| Corrective Action | 4 | 1 |

---

[28] "A copy of the grievance disposition shall be placed in the detainee's detention file and provided to the detainee within five days. *See* ICE PBNDS 2011, Grievance System, Section (V)(D)." **This is a priority component.**
[29] "The detainee handbook or supplement shall provide detainees the rules and procedures governing access to legal materials, including the following information: if applicable, that LexisNexis is used at the facility and that instructions for its use are available." *See* ICE PBNDS 2011, Law Libraries and Legal Materials, Section (V)(N)(8).