IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>Defendant. | Civil Action No. 4:18-cv-00070-CDL |

**DEFENDANT CORECIVIC'S SUR-REPLY RE: PLAINTIFFS' MOTION TO COMPEL DEFENDANT CORECIVIC'S RESPONSE TO PLAINTIFFS' FIRST DISCOVERY REQUESTS**

Defendant, CoreCivic, Inc. ("CoreCivic"), respectfully submits this Sur-Reply to Plaintiffs' Reply In Support Of Their Motion to Compel Defendant CoreCivic's Response to Plaintiffs' First Discovery Requests. (Dkt. 146.) The Court should disregard the evidence and argument Plaintiffs improperly presented for the first time in their Reply that they could and should have raised in their original Motion. But even if the Court were to consider this newly raised evidence and argument, none of it changes the result that Plaintiffs are not entitled to the discovery they seek in their Motion to Compel (Dkt. 139), which is still irrelevant to the claims and defenses at issue, and is therefore not proportionate to the needs of the case. CoreCivic's Sur-Reply is supported by the following Memorandum of Points and Authorities and the Court's record herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     Factual Background.**

At the time Plaintiffs filed their Motion to Compel on May 11, 2021 (Dkt. 139-1), they had most of the records they attached to their Reply. Specifically, either CoreCivic or Plaintiffs

produced Exhibits ("Ex") 1–4, Ex. 7, and Ex. 9 between December 7, 2020 and March 3, 2021. (*See* Dkt. 146-1.) CoreCivic produced Ex. 5–6 and 8 on May 12, 2021, and Plaintiffs produced Ex. 10–12 to CoreCivic on May 28, 2021. Although the date Ex. 10–12 were produced by Trinity to Plaintiffs is unknown to CoreCivic, Plaintiffs may have received the records anytime between the Court's April 15, 2021 Order granting Plaintiffs' Motion to Compel documents from Trinity (Dkt. 134) and May 11, 2021, when Plaintiffs filed their Motion to Compel.

## II. Argument and Evidence Raised for the First Time in a Reply is Improper and Should Be Disregarded.

"Generally, a party cannot introduce new evidence or new arguments in a reply brief." *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 2019 WL 4686353, at *1 (N.D. Ala. Feb. 28, 2019); *Saenz v. Old Dominion Freight Line, Inc.*, 2019 WL 6622840, at *2 (N.D. Ga. June 7, 2019) (finding new evidence submitted with a reply brief usually is improper, except when it is submitted only to respond to the opponent's argument made in a response brief.).

Here, Plaintiffs' Reply in Support of Their Motion to Compel (Dkt. 146) contains new evidence in the form of twelve exhibits that were not attached to the original Motion and new arguments concerning the evidence. The evidence and argument were not to respond to arguments in CoreCivic's Response, but to bolster Plaintiffs' arguments in their Motion to Compel. To illustrate, Plaintiffs use the 2020 Commissary Sales, Securus Rate Sheet, 2017 Talton Contract, 2009 Securus Contract, and February 27, 2019 Town Hall Meeting Minutes to support their argument that CoreCivic's financial documents should be disclosed. Plaintiffs assert that these documents show CoreCivic profits through phone calls (it does not), commissary purchases (it does not), and participation in the Voluntary Work Program ("VWP") (it does not), and that it compelled people to work in the interest of profiting (it did not). Although CoreCivic challenged the relevance and discoverability of its financial documents in its

Response, nothing it argued in the Response made these documents necessary to bring to the Court's attention for the first time in Plaintiffs' Reply. Rather, they could have—and should have—raised them in their original Motion to give CoreCivic a chance to address them.

Additionally, Plaintiffs use the 2020 SDC Work Program Guidelines, 2017 ODO Compliance Inspection Report, and the February 8, 2018 and April 24, 2019 IGSA Modifications to support their argument that staffing reports are "relevant and necessary," as these reports "may be" evidence that CoreCivic does not employ sufficient security staff or "will show" whether staffing expectation are being met. (Dkt. 146 at 5–6.) Lastly, Plaintiffs use the CCA 2014 Q2 Self-Monitoring Tool, CCA Audit Tool 2016, and CoreCivic 2018 ICE PBNDS 2011 Audit Tool to assert that internal audits should be produced because they address the VWP and "conditions at SDC" that allegedly compelled Plaintiffs to work. (Dkt. 146 at 6.) Because Plaintiffs use these twelve exhibits as evidence to advance their original arguments, and not to rebut CoreCivic's arguments in its Response to Plaintiffs' Motion to Compel, they are improper and should be disregarded.

### III. Plaintiffs Fail to Meet Their Burden of Proving that the Financial Data is Relevant.

To the extent the Court considers the new evidence and argument presented in Plaintiffs' Reply, Plaintiffs still have not met their burden of proving that the vast financial records they seek from CoreCivic are relevant to the merits of their narrow claims concerning the VWP and unjust enrichment. Plaintiffs complain about profit margins of certain commissary items and the differences in phone call costs from one telephone services provider to the next, but fail to explain how these facts expose CoreCivic to disgorgement of all profits earned at SDC. They cite no authority for the proposition that forcing and/or coercing detainees to participate in the VWP, or allegedly underpaying VWP participants, somehow entitles them to disgorgement of all profits CoreCivic generated with respect to SDC, regardless of their source, rather than the

amount by which it allegedly underpaid them, or even any authority from which such a proposition could be analogized.

Plaintiffs do not dispute that the profits generated from the commissary are placed in an "Inmate Welfare Fund" ("IWF") or that any expenditures from the IWF "must benefit all detainees in the facility, and **cannot be used for any other purpose**."[1] (Dkt. 146 at 2; Dkt. 142-8 at ¶ 15.) Absent a legal basis to believe that Plaintiffs could theoretically recover all profits generated by CoreCivic with respect to SDC, CoreCivic's full financial expenditure and revenue data is not relevant, such that production of it will impose a burden that is disproportionate to the needs of the case. *See Edmondson v. Velvet Lifestyles*, LLC, 2016 WL 5682591, at *5 (S.D. Fla. Oct. 3, 2016) ("Proportionality and relevance are 'conjoined' concepts; 'the [lesser] the relevance of the information in issue, the [more] likely its discovery will be found to be disproportionate.'") (quoting *Viagasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.").

Plaintiffs also assert that they are entitled to CoreCivic's financial expenditure and revenue data because it includes the "total profits" CoreCivic received under the Securus Contract, and that these profits show that "CoreCivic knowingly benefitted from offering phone services at exorbitant rates that compelled people to work so they could afford phone calls." (Dkt. 146 at 3.) Plaintiffs attach documents showing that CoreCivic was "guaranteed" a

---

[1] There are also safeguards in place to ensure that funds are not spent on anything other than for the benefit of detainees. For example, if funds are to be spent out of the IWF, some of CoreCivic's contracts with ICE require that ICE's Contracting Officer Representative approve the use. (Dkt. 142-8 at ¶ 17.)

commission on a portion of Securus's gross revenue at SDC and the phone rates. But Plaintiffs do not dispute that CoreCivic does not set the phone rates (Dkt. 142 at 8), and their assertion that because CoreCivic generated revenue from phone calls means that its entire financial data should be disclosed is speculative at best, and is not enough to show relevance on a motion to compel discovery. *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673, 677 (S.D. Ga. 2016) (denying plaintiffs' motion to compel interrogatory responses where relevance is based on pure speculation and nothing "[s]peculation should never bait a relevancy hook"); *Apotex, Inc. v. Mylan Pharmaceuticals, Inc.*, 2013 WL 8184264, at *6 (S.D. Fla. June 4, 2013) (finding that "speculation does not establish a minimal showing of relevance and provides no basis to compel" production). Plaintiffs fail to establish that the full financial data is relevant to their claims or that CoreCivic should be compelled to produce it.[2]

## IV.  Plaintiffs Fail to Meet Their Burden of Proving that Staffing Reports are Relevant.

Plaintiffs have not met their burden proving that the staffing reports they seek from CoreCivic are relevant to the merits of their narrow claims concerning the VWP and for unjust enrichment. Like their arguments concerning phone call revenue, Plaintiffs' assertion that staffing reports are relevant is based on nothing but speculation, which, as shown above, is not enough to show relevance in order to compel discovery. Specifically, Plaintiffs refer to a 2017 ICE Office of Detention Oversight Compliance Inspection Report finding non-compliance with ICE security staffing and that it was a "repeat deficiency." Using this "evidence," Plaintiffs speculate that monthly staffing reports thus "may" provide evidence that CoreCivic does not

---

[2] This Sur-Reply does not address Plaintiffs' argument that the financial documents are allegedly relevant to Plaintiffs' damages calculation, as Plaintiffs have presented no new argument or evidence on this particular point. Nonetheless, CoreCivic maintains its objection that financial documents are not relevant to Plaintiffs' damages calculation for the reasons stated in its Response. (Dkt. 142.)

employ sufficient security staff and that insufficient security staff "could show" CoreCivic's dependency on "forced labor." Plaintiffs' argument is confusing. It is not clear how the issue of whether CoreCivic employs sufficient security staff is relevant to whether CoreCivic depends on "forced [detainee] labor."

As discussed in CoreCivic's Response, absent security staff are replaced only by other security staff, including for cleaning duties in secure locations, because only security personnel can supervise detainees and be in secure areas. Detainees are never provided jobs as detention officers, or that would place them in a position of authority over other detainees, whether they are VWP participants or not. Plaintiffs' assertion that staffing reports are relevant because they will purportedly "show if CoreCivic is meeting staffing expectations and whether it has, in fact, ever employed enough security staff to do the work of 140 detained kitchen workers, 85 porters, 20 trash/floor porters, and 15 laundry workers, if needed" is confusing. CoreCivic does not regularly employ staff members to fill these roles, so no staffing report would—or could—show whether CoreCivic was employing enough staff to do the listed work. (Dkt. 142-7 at ¶ 10.) Because Plaintiffs have not shown, through evidence or otherwise, that the staffing reports are relevant to their TVPA and unjust enrichment claims, their Motion to Compel should be denied as to such documents.

### V.     Plaintiffs Fail to Show Internal Audit Reports [3] are Relevant and Necessary.

Plaintiffs have not met their burden of proving that CoreCivic's internal audit reports are relevant and necessary. Plaintiffs reference three internal audit tools: CCA 2014 Q2 Self-

---

[3] This Sur-Reply does not address Plaintiffs' argument that Policies 1-22, 5-1, and 16-100 are relevant to Plaintiffs' claims, as Plaintiffs introduce no new evidence or argument concerning the policies. Nonetheless, CoreCivic continues to oppose the production of the policies, as they are not relevant or proportional to the needs of the case, as stated in CoreCivic's Response. (Dkt. 142.)

Monitoring Tool, CCA Audit Tool 2016, and CoreCivic 2018 ICE PBNDS 2011 Audit Tool, to argue that these audits "specifically look at the Work Program and all look at the conditions at SDC that Plaintiffs have alleged compel them to work, including food service, discipline, housing assignments, segregation, commissary, hygiene items, and phone prices." (Dkt. 146 at 8.) However, Plaintiffs do not cite to any specifics within these reports showing the particular aspects of the VWP that are evaluated during internal audits or how such information is relevant to their claims. Moreover, Plaintiffs continue to speculate that internal audit reports are relevant by stating that they "assume" the internal audit findings are different from the external audit findings because CoreCivic "appears to audit more frequently, on a quarterly rather than yearly basis" and citing to the CCA 2014 Q2 Self-Monitoring Tool without explaining why this means they are entitled to internal audit reports.[4] Because Plaintiffs fail to make any connection between the internal audit reports and the merits of their claims, they have not established that the internal audit reports are relevant to their claim. As such, the Court should deny Plaintiffs' Motion to Compel.

/ / /

/ / /

/ / /

---

[4] Plaintiffs' argument that the lack of detainee interviews in preparation of CoreCivic's internal audits calls into question their reliability has nothing to do with whether the reports are relevant in the first place, and ignores the realities of operation of a secure detention facility. CoreCivic has no need to interview detainees because CoreCivic staff interact with detainees every day, and regularly respond to detainees' requests and grievances.

## VI. Conclusion

For the foregoing reasons and those set forth in Defendant's Response to Plaintiffs' Motion to Compel Defendant CoreCivic's Response to Plaintiffs' First Discovery Requests, Plaintiffs' Motion to Compel should be denied.

Dated: June 25, 2021                                      Respectfully submitted,

s/ Jacob B. Lee
Daniel P. Struck *(pro hac vice)*
　Lead Counsel
Rachel Love *(pro hac vice)*
Nicholas D. Acedo *(pro hac vice)*
Ashlee B. Hesman *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com


Jacob D. Massee (GA Bar No. 551890)
David Bobo Mullens (GA Bar No. 258029)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
dbmullens@olivermaner.com

*Attorneys for Defendant CoreCivic, Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 25th day of June, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Priyanka Bhatt | priyanka@projectsouth.org |
| Meredith B. Stewart | meredith.stewart@splcenter.org |
| Rebecca M. Cassler | rebecca.cassler@splcenter.org |
| Caitlin J. Sandley | cj.sandley@splcenter.org |
| Vidhi Bamzai | vidhi.bamzai@splcenter.org |
| Daniel H. Charest | dcharest@burnscharest.com |
| R. Andrew Free | andrew@immigrantcivilrights.com |
| Azadeh Shahshahani | azadeh@projectsouth.org |
| Jessica Hasen | jhasen@perkinscoie.com |
| Emily B. Cooper | ecooper@perkinscoie.com |
| John T. Dixon | johndixon@perkinscoie.com |
| Alan B. Howard | ahoward@perkinscoie.com |
| John H. Gray | jhgray@perkinscoie.com |
| Jessica L. Everett-Garcia | jeverettgarcia@perkinscoie.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

  N/A

                s/ Jacob B. Lee