## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

WILHEN HILL BARRIENTOS, et al.,

                Plaintiffs,

v.

CORECIVIC, INC.,

                Defendant.

Civil Action No. 4:18-cv-00070-CDL

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO REQUESTS FOR PRODUCTION

### I.  Factual Background

Plaintiffs, Wilhen Hill Barrientos, Gonzalo Bermudez Gutierrez, and Keysler Urbina Rojas (collectively, "Plaintiffs"), are three former immigration detainees who were housed at Defendant, CoreCivic, Inc.'s ("CoreCivic"), Stewart Detention Center ("Stewart" or "SDC") in Lumpkin, Georgia, at various times from 2015 to 2020. (Dkt. 87 at ¶¶ 9–11.) They seek damages and injunctive relief against CoreCivic for (1) violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, et seq. by forcing and/or coercing them to participate in SDC's Voluntary Work Program ("VWP"), and (2) unjust enrichment as a result of the forced and/or coerced labor; Plaintiffs bring both claims on behalf of themselves and similarly situated detainees. (Id. at ¶¶ 3, 114–133.) Plaintiffs claim that CoreCivic's actions have caused them to suffer unspecified physical and emotional injuries. (See, e.g., Dkt. 87 at ¶¶ 16 ["Detained immigrants are frequently subjected to punitive and long-term solitary confinement, inadequate medical care, [and] sexual and physical assault."], 52 n.38 [citing an article in which a "former ICE officer and Stewart guard describe[ed] physical abuse and verbal mistreatment of detained

immigrants at Stewart"], 76 [alleging a "scheme, plan, and pattern to threaten or inflict physical restraint and/or serious harm upon [Barrientos] if he refused to work"], 86 [same as to Bermudez Gutierrez], 102 [same as to Urbina Rojas], 119 ["The serious harm CoreCivic caused and threatened was physical and non-physical harm, including psychological harm."], 121 [alleging that CoreCivic violated the TVPA "by means of a scheme, plan, or pattern" intended to cause Plaintiffs to believe that if they did not participate in the VWP, they "would suffer serious harm"], 132 ["Plaintiffs and Unjust Enrichment Class Members have suffered concrete harm and injury, including physical and emotional injury."].)

CoreCivic served its First Requests for Production of Documents to Plaintiffs on May 5, 2021. Plaintiffs then served their initial Responses and Objections on July 6, 2021. All three Plaintiffs served Amended Responses and Objections on August 30, 2021, and Plaintiff Hill Barrientos served his Second Amended Responses and Objections on September 30, 2021. (Ex. 1, Plaintiff Bermudez Gutierrez's Amended Responses and Objections to CoreCivic, Inc.'s First Request for Production of Documents; Ex. 2, Plaintiff Urbina Rojas's Amended Responses and Objections to CoreCivic, Inc.'s First Request for Production of Documents; Ex. 3, Plaintiff Hill Barrientos's Second Amended Responses and Objections to CoreCivic, Inc.'s First Request for Production of Documents.)

Plaintiffs produced, or agreed to produce, very few documents in response to CoreCivic's requests, instead asserting improper and lengthy objections. CoreCivic therefore requested supplemental responses via letter dated November 23, 2021. Counsel for the parties then met and conferred telephonically on November 30, 2021, but were unable to reach an agreement. On December 1, 2021, counsel for CoreCivic sent a follow-up email to Plaintiffs' counsel attaching a detainee grievance that had been produced by CoreCivic that contained a stamp confirming it

was submitted to the immigration court in the detainee's immigration proceedings, demonstrating the relevance of Plaintiffs' immigration records and asking whether the grievance changed Plaintiffs' position as to those records. On December 2, 2021, Plaintiffs' counsel sent a letter to counsel for CoreCivic memorializing Plaintiffs' positions as to each request at issue, some of which were stated during the parties' meet and confer, and some of which were not. Although Plaintiffs' indicated, for the first time on December 2, that they were willing to meet and confer further about some of the requests, CoreCivic is filing this Motion now to preserve the issues and avoid an argument that the Motion was filed after the fact discovery deadline expired. For the reasons that follow, Plaintiffs should be required to provide complete responses and document productions in response to CoreCivic's Requests for Production.

## II.     Legal Argument

### A.     Plaintiffs Should Be Required to Produce Immigration and Detention Records.

Request Nos. 1–5 to Plaintiff Bermudez Gutierrez asked him to produce: (1) his complete A-file as maintained by U.S. Citizenship and Immigration Services; (2) all applications (I-765) he has submitted for employment authorization and supporting documents, including documents showing the ultimate outcome of the applications; (3) all documents issued or submitted in any proceeding before an Immigration Judge related to his alleged fear of returning to Mexico, his detention at Stewart, or his detention at any other immigration detention facility; (4) all documents issued or submitted in any proceeding before the Bureau of Immigration Appeals related to his alleged fear of returning to Mexico, his detention at Stewart, or his detention at any other immigration detention facility; and (5) all documents issued or submitted in any proceeding before the Executive Office of Immigration Review related to his alleged fear of returning to Mexico, his detention at Stewart, or his detention at any other immigration detention facility.

(Ex. 1.) Request No. 12 asked Plaintiff to produce his complete detention files from each facility he was detained in. (Ex. 1.)[1] In response to each request, Plaintiff Bermudez Gutierrez asserted lengthy objections and stated he "will not produce documents" on the basis of them.[2]

Plaintiff objected to these requests as "irrelevant to any party's claim or defense and … not reasonably calculated to lead to the discovery of admissible evidence." Plaintiffs' Complaint, however, alleges that detained immigrants are "subjected to prison-like conditions at Stewart," that CoreCivic "withhold[s] basic necessities from detained immigrants to ensure a readily available and captive labor force" by way of threat of solitary confinement, criminal prosecution, or other sanctions; SDC features "deplorable" and "unsafe conditions"; CoreCivic deprives detained immigrants of basic necessities and outside contact with loved ones and threatens them with serious harm, isolation, and criminal prosecution; and labor is provided because of CoreCivic's threats of "physical restraint, serious harm, and/or abuse of the legal process." (Dkt. 1 at ¶¶ 16, 27, 36, 76, 86, 102.)   Plaintiff also stated in his response to CoreCivic's Interrogatory No. 8 that "it was widely understood among detained people at SDC that CoreCivic had the power to initiate a process leading to criminal consequences against detained individuals. This constant, implicit threat that CoreCivic—which had complete power over detained individuals—could do them even more harm coerced participation in the Work

---

[1] The requests also gave Plaintiff the option to sign a release for the records instead of obtaining and producing them himself. (Ex. 1.)

[2] Request Nos. 1, 3–5, and 12 to Plaintiff Urbina Rojas and Request Nos. 2–3, 5–7, and 15 to Plaintiff Hill Barrientos sought similar documents, to which these Plaintiffs gave similar responses. (Ex. 2 and 3.) Plaintiffs Urbina Rojas and Hill Barrientos should be required to produce their immigration records in response to these requests for the same reasons as Plaintiff Bermudez Gutierrez. CoreCivic does not seek to compel a response to Request No. 2 (employment authorization applications and related documents) to Plaintiff Urbina Rojas, however, as he stated in response to that request that he "has no documents that are responsive to this request." (Ex. 2.)

Program." (Ex. 4, Plaintiff Bermudez Gutierrez's Responses and Objections to CoreCivic, Inc.'s First Set of Interrogatories.)

The immigration and detention records are expected to lead to the discovery of admissible evidence related to these allegations. For example, the immigration records will reflect whether Plaintiff asserted or did not assert in his immigration paperwork, immigration hearings, or before an immigration judge or appellate authority that he has been subjected to "prison-like" conditions, deprived of basic necessities, threatened with serious harm, criminal prosecution, and isolation, or was forced to work. Indeed, Plaintiffs recently used as a deposition exhibit a food-related grievance filed by another detainee that bears a stamp from the Stewart Immigration Court confirming it was "Received In Court" by the "Clerk of Court" on April 23, 2018, the same day the detainee wrote and signed it. (Ex. 5, Detainee Grievance dated April 23, 2018.)[3] It is reasonable to believe that Plaintiff may have done the same in his own immigration proceedings. Such statements by Plaintiff, or any other statements he may have made about his detention at SDC in his immigration proceedings, may be admissible as party-opponent admissions.[4] *See* Fed. R. Evid. 801(d)(2). The absence of any such statements is also relevant as evidence refuting Plaintiff's claims. Detention records will reflect whether Plaintiff participated in any other voluntary work programs at other facilities, including facilities operated by federal, state, or local government entities, whether and to what extent he was compensated for that

---

[3] Because the detainee is not a named Plaintiff, his name and A-number have been redacted pursuant to 8 C.F.R. § 236.6, as have other detainee names and A-numbers referenced therein.

[4] Evidence that Plaintiffs complained of similar conditions at other immigration facilities, in particular facilities operated by federal, state, or local government entities, would also be relevant to CoreCivic's defense that it operates the VWP pursuant to ICE standards the same way that these other facilities do, such that it does not violate the TVPA and has not been unjustly enriched.

participation, and the type and amount of "basic necessities" provided to him, all of which are relevant to the claims and defenses at issue in this case.

Plaintiffs have been compelled to produce such records when, as here, they are relevant to the parties' claims and defenses. *See Faour Abdallah, Fraihat v. Cohen, Unit Manager at CCA*, 2007 WL 3333117, at *3 (S.D. Cal. Nov. 6, 2007) (compelling plaintiff to produce immigration records and recognizing that "the information Plaintiff has provided to date does not demonstrate that Plaintiff's disciplinary and immigration records warrant any heightened degree of protection. … Furthermore, to the extent Plaintiff has any expectation of confidentiality in his disciplinary or immigration records (Plaintiff has provided no authority to support such a notion), he has waived it by placing his disciplinary history and immigration status at issue via the claims in this case").

Plaintiff's immigration and detention records are also relevant to his damages claims, and specifically his claims of emotional and psychological injury, as CoreCivic is entitled to discovery of evidence showing other potential stressors to Plaintiff given those claims. *See, e.g., Giacchetto v. Patchogue-Medford Union Free School Dist.*, 293 F.R.D. 112, 116 (E.D.N.Y. 2013) (finding evidence from social media postings that had any bearing on the plaintiff's mental or emotional state, such as "alternative potential stressor[s]"/"other potential sources/causes of distress," were relevant and discoverable where the plaintiff sought damages for "emotional injury"); *see also Michael Brown, Sr. v. City of Ferguson*, 2017 WL 386544, at *2 (E.D. Mo. Jan. 27, 2017) (finding that, where the plaintiff sought damages for various types of emotional distress, relevant and discoverable evidence would include social media content regarding emotions, feelings, the plaintiff's mental state, relationships between Plaintiff and family and friends, etc.); *Holter v. Wells Fargo and Co.*, 21 F.R.D. 340, 344 (D. Minn. 2011) (ordering the

plaintiff, who had alleged loss of employment and put her mental disability and emotional state at issue, to produce any social media content that "reveals or refers to: (1) any emotion, feeling or mental state, including but not limited to any reference of depression, anxiety or mental disability; (2) to any events that could reasonably be expected to produce a significant emotion, feeling, or mental state; (3) defendant, plaintiff's employment at defendant[,] or termination of employment from defendant; and (4) plaintiff's search for employment following her termination of employment from defendant"). Plaintiff's immigration and detention records are relevant to his claims here, and he should be required to produce them.

Plaintiff also objected that his immigration and detention records were sought "for the purpose of intimidating and harassing Plaintiff, other Plaintiffs, class members, their family members, their relatives, or third-party witnesses." As discussed above, CoreCivic seeks these records because they are relevant to the claims and defenses in this matter, and not for the purpose of harassing or intimidating Plaintiff or others.

The cases cited by Plaintiff in his objections do not support his position, as those cases mainly involved E.E.O.C. claims, there was evidence on the record that disclosure would cause a "chilling" or "in terrorem" effect, and/or there was no evidence as to how the records were relevant. *See David v. Signal Int'l, LLC*, 257 F.R.D. 114, 126 (E.D. La. 2009) (denying inquiry into plaintiffs' "current" immigration status because, based on "replete … competent" evidence on the record that doing so would cause a "chilling" or "in terrorem" effect); *U.S. Equal Employment Opportunity Commission v. SOL Mexican Grill LLC*, 2019 WL 2896933, at *2 (D.D.C. June 11, 2019) (involving E.E.O.C. claim and denying inquiry into immigration out of concern that claims of alleged employment abuses might not be brought); *Centeno-Bernuy v. Becker Farms*, 219 F.R.D. 59, 61-62 (W.D.N.Y. 2003) (denying discovery on information

concerning plaintiffs' residences and places of employment where relevance was outweighed by the potential the information could be used to harass, oppress, and intimidate plaintiffs, and there was evidence on the record of same); *Francis v. Apex USA, Inc.*, 2020 WL 548565, *1-2 (W.D. Okla. Feb. 4, 2020) (denying discovery into immigrants' employment in TVPA case where defendants were unable to establish relevance, but also holding that the court "makes no finding, at this time, as to whether the information might be discoverable in later phases of this action"); *Silva v. Campbell*, 378 F. Supp. 3d 928 (E.D. Wash. 2018) (denying disclosure of immigration status where defendants failed to establish how the information was relevant to the substance of plaintiff's claim).

There is no evidence on the record in this case that disclosure will cause a "chilling" or "in terrorem" effect. To the contrary, the concern about causing a "chilling effect" on future plaintiffs in the cases cited by Plaintiff arose where the claims were brought by non-detained non-citizens working for private employers. *See, e.g., SOL Mexican Grill LLC*, 2019 WL 2896933 at 2 (noting that Title VII protects all individuals from unlawful discrimination, whether or not they are U.S. citizens); *David*, 257 F.R.D. at 124 (noting that undocumented workers face the possibility of being reported to INS by their employer, subjecting them to deportation proceedings or criminal prosecution). Here, however, Plaintiff's claims arise out of his time in immigration detention, and there is no dispute either that he was a non-citizen at the time of the events at issue or that he was already subject to detention, immigration proceedings, and possible deportation. The concerns expressed by the courts in the cases Plaintiff cites simply do not apply to Plaintiff in this case.

The cases cited by Plaintiff do not establish that requests for immigration and detention records from named plaintiffs who are (or were at all relevant times) immigration detainees

asserting claims for unjust enrichment and violation of the TVPA arising out of their participation in an ICE-mandated program (i.e., the VWP) are improper. *See Mancha through Martinez v. Immigration & Customs Enf't*, 2009 WL 10701798 (N.D. Ga. Apr. 6, 2009) (granting the plaintiffs' request for a protective order that prohibited discovery as to the immigration status of witnesses to the subject incident, finding the status of the witnesses not relevant to whether they saw the incident); *E.E.O.C. v. v. DiMare Ruskin, Inc.*, 2012 WL 12067868, at *4 (M.D. Fla. Feb. 15, 2012) (finding, in E.E.O.C. case, "[w]here parties do not seek front pay, back pay, lost wages, or benefits, immigration status of the charging parties is not relevant to the Title VII claims."); *Rojas v. China Max of Countryside Mall, Inc.*, 2010 WL 11629555, at *2 (M.D. Fla. Dec. 28, 2010) (denying discovery into immigration status of non-detained plaintiff seeking relief under the Fair Labor Standards Act against a private employer). Plaintiffs should be required to produce their immigration and detention records.[5]

### B.   Plaintiffs Should Be Required to Produce Documents Containing Statements Regarding Their Detention at SDC and Fear of Returning to Their Home Countries.

Request No. 6 asked Plaintiff Bermudez Gutierrez to produce all communications, documents, recordings, or articles pertaining to any statement or interview Plaintiff or anyone acting on his behalf gave to any media outlet relating to his detention at the SDC or his fear of returning to Mexico. (Ex. 1.)[6] Plaintiff responded with lengthy objections and stated that he had

---

[5] In their December 2, 2021 letter, Plaintiffs stated they are willing "to confer about production of non-SDC [detention] files that balances both sides' interest in non-SDC discovery," but made no proposals or gave any indication as to what they consider to be "production … that balances both sides' interest in non-SDC discovery." Moreover, Plaintiffs have never explained what "non-SDC discovery" from CoreCivic has to do with their claims.

[6] Request No. 6 to Plaintiff Urbina Rojas and Request No. 9 to Plaintiff Hill Barrientos made similar requests. (Ex. 2 and 3.)

no responsive documents relating to his detention at SDC and that he would not produce other documents in response to the request. (Ex. 1.)[7]

Plaintiff's response to this interrogatory is incomplete. For instance, Plaintiff stated that the "information sought is publicly available, equally available or readily ascertainable by CoreCivic from other sources or is already in CoreCivic's possession, custody, or control," but did not identify any of these "publicly available" sources. (Id.) To the extent they exist, he should be required to identify them or direct CoreCivic to where they are located. Any argument Plaintiff  may make that CoreCivic is just as able to search for these "publicly available" statements is misplaced. Although it *can* do so, the point is that Plaintiff's incomplete response *requires* it to do so in order to answer *its own* discovery request. Plaintiff, on the other hand, already knows what statements he or his representatives have made, such that the burden on him to inform CoreCivic of what statements were made, when they were made, and to whom they were made is much lower. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (allowing the Court to limit discovery where it can be obtained from a source that is more convenient, less burdensome, or less expensive). CoreCivic will incur a greater burden attempting to answer its own request than Plaintiff will in answering it fully.

Plaintiff also stated that he has no "communications, documents, recordings, or articles pertaining to … SDC," but said nothing about whether he has any of these items pertaining to his "fear of returning to Mexico." To the extent Plaintiff has responsive documents concerning his fear of returning to Mexico, he should be required to produce them, as CoreCivic is entitled to

---

[7] Plaintiff Urbina Rojas gave a similar response to his own Request No. 6. (Ex. 2.) He should be required to produce records containing his statements about his detention at SDC and fear of returning to his home country in response to this request for the same reasons as Plaintiff Bermudez Gutierrez. Plaintiff Hill Barrientos's response to Request No. 9 is addressed separately below.

discovery of evidence showing other potential stressors to Plaintiff given his claim of emotional and psychological injury in this case. *See, e.g., Giacchetto*, 293 F.R.D. at 116; *see also Michael Brown, Sr.*, 2017 WL 386544 at *2; *Holter*, 21 F.R.D. at 344. If such records do not exist, Plaintiff should be required to say so. If they do, he should be required to produce them.

Plaintiff Hill Barrientos, on the other hand, produced (in response to this request) three documents that appear to be (1) Facebook messages to Plaintiff about a news story the author did on Plaintiff's mother's attempts to secure his release from SDC, and (2) emails between Plaintiff and a news producer looking to do a story about his time at SDC during which they discussed only the logistics of an interview. Neither document is responsive to the request, either as to statements about Plaintiff's time at SDC or as to statements about his fear of returning to Guatemala. Nevertheless, Plaintiff states this constitutes "all non-privileged, responsive document[s] in Plaintiff's possession, custody, or control." (Ex. 3.)

Plaintiff Hill Barrientos's response to this request is silent as to whether he has any documents in his possession, custody, or control regarding his fear of returning to Guatemala. If he has any, they are responsive for the reasons stated above, and he should be required to produce them. If he does not, he should be required to say so.

### C.    Plaintiffs Should Be Required to Produce Income Records.

Request No. 7 asked Plaintiff Bermudez Gutierrez to produce all income records, including but not limited to income tax withholding reports and pay stubs, relating to any and all jobs he has held during the period from three years before his first admission to SDC to the present. (Ex. 1.) Plaintiff asserted lengthy objections to the request and stated he "will not

produce documents in response" other than his SDC pay records from his time in the VWP, which are already in CoreCivic's possession. (Ex. 1.)[8]

Specifically, Plaintiff objected that the request "seeks sensitive personal information that is irrelevant to any party's claim or defense and not reasonably calculated to lead to the discovery of admissible evidence" and the request is "overly broad, unduly burdensome, not proportional to the needs of the case." Plaintiff's objections are misplaced, as Plaintiff put his income directly at issue by raising a claim for unjust enrichment in Count II (Dkt. 1 at ¶¶ 128–133). Plaintiff conceded as much when he stated in his Reply in Support of [His] Motion to Compel that "CoreCivic's labor savings are determined by the fair market value CoreCivic would have paid for the labor performed by detained workers, less what CoreCivic actually paid for that labor. CoreCivic appears to agree with this principle, see Doc. 142 at 7, but the parties disagree about which wage statute should be used to calculate the fair market value." (Dkt. 146 at 4 n.3.)[9] Further, Plaintiff alleges he was paid subminimum wages at SDC (Dkt. 1 at ¶¶ 27, 119); and he moved to compel Defendant CoreCivic's responses to Plaintiffs' Request for Production No. 20 and Interrogatory No. 4, which together sought CoreCivic's financial

---

[8] Request No. 7 to Plaintiff Urbina Rojas and Request No. 10 to Plaintiff Hill Barrientos sought similar documents, to which these Plaintiffs gave similar responses. (Ex. 2 and 3.) Plaintiffs Urbina Rojas and Hill Barrientos should be required to produce their income records in response to these requests for the same reasons as Plaintiff Bermudez Gutierrez.

[9] During the parties' meet and confer, Plaintiffs' counsel stated that "fair market value" is a statutory calculation, as referenced in Plaintiffs' Initial Disclosure Statement. The only statute cited there, however, is "the Service Contract Act, 41 U.S.C. § 351, *et seq*." Plaintiffs have not specified, in their Rule 26(a) disclosures or elsewhere, what specific formula they believe should be used to calculate the "fair market value" of their labor, or even a specific statutory provision that they believe contains the appropriate formula. They should not be allowed to now refuse to provide relevant discovery on this nebulous basis, or on the basis that they will provide such a formula with their expert disclosures, which are not due until after the close of fact discovery. (Dkt. 160.)

expenditure and revenue data for SDC during the relevant time period. (Dkt. 139-1 at 9.) CoreCivic is entitled to discover information regarding wages Plaintiff has earned outside of SDC as evidence of the fair market value of his labor.

Courts have granted motions to compel such records under similar circumstances. *See Patton v. Southern Bell Tel. & Tel. Co.*, 38 F.R.D. 428, 430 (N.D. Ga. 1965) ("[P]laintiff's income tax returns [are] relevant to his loss of earnings, and [are] subject to discovery."); *McKinstry v. Ikon Office Sols., Inc.*, 2006 WL 8432450, at *8-9 (N.D. Ga. Aug. 10, 2006) (finding the plaintiff's employment status, wages, and income tax records "highly relevant" to her claim for damages where she sought back pay, which was calculated as the difference between the actual wages earned and the wages the individual would have earned in that position, but for the discrimination, the individual would have obtained); *Gordon v. Rice*, 2014 WL 903205, at *1, 7-9 (D. Colo. Mar. 7, 2014) (ordering plaintiff to produce W-2 forms and copies of paystubs showing a reduction in earnings, where plaintiff asserted a claim for lost earnings).

The cases cited by Plaintiff in his response do not establish that his employment background or information regarding his current and former employers are irrelevant to his claims against CoreCivic or any possible defenses. Indeed, the district court in *SOL Mexican Grill LLC*, 2019 WL 2896933, at *2, suggested that where back pay, front pay, or reinstatement were at issue, information on work history may be relevant to claims for damages.

### D.    Plaintiffs Should Be Required to Produce Social Media Records.

Request No. 8 asked Plaintiff Bermudez Gutierrez to produce, among other documents, information from his social media accounts "pertaining to the incident, this lawsuit, the allegations in the Complaint, [his] alleged damages, or the pursuit of a potential claim against any entity or person arising out of [his] detention at SDC." (Ex. 1.) Plaintiff asserted lengthy

- 13 -

objections and stated that he has no responsive document, but it became clear during the parties'
meet and confer that Plaintiff views this request narrowly as seeking only posts that explicitly
mention the lawsuit. (Ex. 1.)[10]

This request, however, is not as narrow as Plaintiff makes it out to be. If Plaintiff has
posted anything on any social media account about this case, his claims, and/or his damages, that
information is relevant and must be produced.[11] This includes evidence that has any bearing on
Plaintiff's mental or emotional state, such as "alternative potential stressor[s]"/"other potential
sources/causes of distress," as he seeks damages for "emotional injury." *See Giacchetto*, 293
F.R.D. at 116. By way of example, but not limitation, this would include content regarding
emotions, feelings, Plaintiff's mental state, relationships between Plaintiff and family and
friends, his time at SDC, Plaintiff's lifestyle after leaving SDC, etc. *See Michael Brown, Sr.*,
2017 WL 386544 at *2; *see also Holter*, 21 F.R.D. at 344. This request seeks information
regarding these and any related matters, whether such information supports or negates Plaintiff's
claims.

---

[10] Request No. 8 to Plaintiff Urbina Rojas and Request No. 11 to Plaintiff Hill Barrientos
sought similar documents, to which these Plaintiffs gave similar responses. (Ex. 2 and 3.)
Plaintiffs Urbina Rojas and Hill Barrientos should be required to produce their income records in
response to these requests for the same reasons as Plaintiff Bermudez Gutierrez.

[11] During the parties' meet and confer efforts, Plaintiffs took the position that CoreCivic's
request for social media information was a new request because counsel referenced cases in
which courts ordered the production of user names and passwords. The requests, however, seek
production of "Twitter, Facebook, and/or other social media accounts or pages owned,
maintained, and/or operated by you, or on your behalf, pertaining to the incident, this lawsuit,
the allegations in the Complaint, your alleged damages, … whether prepared prior to or following
the date of the incident, in their native format." (Ex. 1, 2, and 3.) Whether this is accomplished
by production of user names and passwords or through the use of available download tools,
CoreCivic has not made a new and untimely request, as Plaintiffs argue.

It is well-settled that Plaintiff's social media information, as well as Plaintiff's direct messaging communications, are relevant and discoverable. *See Howell v. Buckeye Ranch, Inc.*, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012) ("Relevant information in the private section of a social media account is discoverable."). This is especially true with regard to claims of emotional distress and economic losses. *See, e.g., Hinostroza v. Denny's Inc.*, 2018 WL 3212014, at *6–*7 (D. Nev. June 29, 2018) (citing cases); *Roberts v. Clark County School Dist.*, 312 F.R.D. 594, 608 (2016); *Holter*, 21 F.R.D. at 344; *Giacchetto*, 293 F.R.D. at 116–17; *Michael Brown, Sr.*, 2017 WL 386544 at *1–2; *Waters v. Union Pacific Railroad Co.*, 2016 WL 3405173, at *2–3 (D. Kan. June 21, 2016); *E.E.O.C. v. Simply Storage Management, LLC*, 270 F.R.D. 430, 434-436 (S. D. Ind. 2010); *Sourdiff v. Texas Roadhouse Holdings, LLC*, 2011 WL 7560647, at *1 (N.D.N.Y. Oct. 24, 2011); *Robinson v. Jones Lang LaSalle Ams., Inc.*, 2012 WL 3763545, at *1 (D. Or. Aug. 29, 2012).

In particular, "Facebook usage depicts a snapshot of the user's relationships and state of mind at the time of the content's posting." *See Bass v. Miss Porter's School*, 2009 WL 3724968, at *1 (D. Conn. Oct. 27, 2009). Because a person's social media posts are akin to a written diary, it is well-settled that "[r]elevant information in the private section of [an individual's] social media account is discoverable." *Howell*, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012). Many courts have gone so far as to require production of the plaintiff's user names and passwords. *See, e.g., Largent v. Reed*, 2011 WL 5632688 (Pa. Ct. Com. Pl. Nov. 8, 2011) (granting the defendant's motion to compel and requiring the plaintiff to turn over Facebook username e-mail and password); *see also Ledbetter v. Wal-Mart Stores, Inc.*, 2009 WL 1067018 (D. Colo. Apr. 21, 2009) (denying the plaintiff's request for a protective order regarding social media content); *McMillen v. Hummingbird Speedway, Inc.*, 2010 WL 4403285 (Pa. Com. Pl.

Sept. 9, 2010) (denying the plaintiff's request for a protective order for his user name and log-in information on social media sites).

The entire purpose of social media is to facilitate the sharing of information. *See Romano v. Steelcase Inc.*, 907 N.Y.S.2d 650, 656 (Sup. Ct. 2010); *see also Simply Storage Management*, 270 F.R.D. at 434 ("[A] person's expectation and intent that her communications be maintained as private is not a legitimate basis for shielding those communications from discovery."). A user's use of the platform's privacy settings does not change this. *Id.*; *see also Romano*, 907 N.Y.S.2d at 656.

Although Plaintiff stated he has no responsive documents, this request seeks more than just explicit mentions of the lawsuit, as discussed above. Moreover, Plaintiff himself cannot be the sole arbiter of what constitutes relevant and discoverable information. At a minimum, he must provide his attorneys access to the accounts so they can, as officers of the court, determine whether any information contained in the accounts is relevant and discoverable. *See, e.g., Hinostroza*, 2018 WL 3212014, at *7; *Holter*, 281 F.R.D. at 344; *Giacchetto*, 293 F.R.D. at 117.

This is not to say, however, that counsel can sit as the sole arbiter of what is relevant, picking and choosing what to produce. *See Upton v. McKerrow*, 1996 WL 193807, at *5 (N.D. Ga. Feb. 20, 1996) (agreeing that a party should not be allowed to "unilaterally decide" what portions of responsive documents are relevant, and granting motion to compel the requested documents); *Barton & Associates, Inc. v. Liska*, 2020 WL 8299750, at *2 (S.D. Fla. May 11, 2020) ("If the Court finds that the Defendants, acting in concert or individually, cherry-picked certain text messages to produce to Plaintiff, did not produce all relevant text messages, and disposed of their phones while under a duty to preserve, the Court will not hesitate to take further action."); *Shapiro v. Sherr*, 2018 WL 8809130 (E.D. Mich. Oct. 4, 2018) ("The parties are

forewarned that the Court will not tolerate them unilaterally and unreasonably deciding that requested discovery is not relevant or discoverable under proportionality based solely on their own litigation position."); *Lucas v. Protective Life Ins. Co.*, 2010 WL 569743, at *3 (W.D. Ky. Feb. 11, 2010) (rejecting argument that underwriting materials were not discoverable based upon the insurer's "unilateral decision that these other guidelines are not relevant to the claims and defenses in this action"). Documents produced in response to Request No. 9 to Plaintiff Hill Barrientos shows that he at least maintains a Facebook account. Plaintiffs should be required to produce all responsive documents, including but not limited to documents pertaining to their current and former employment and alleged emotional injuries.

### E. Plaintiffs Should Be Required to Produce Documents That Refer to, Describe, or Document This Lawsuit or Events That Are At Issue in the Lawsuit.

Request No. 9 asked Plaintiff to produce various documents that "refer to, describe, or document this lawsuit or any events that are subject of this lawsuit, including descriptions of the incident itself or that support any of the claims made in this lawsuit against CoreCivic." (Ex. 1.) Plaintiff asserted lengthy objections, including new objections that he had not previously raised in response to this request, and produced one document with redactions. (Ex. 1.)[12]

As with Request No. 8, this request is not limited to explicit references to the lawsuit, but includes all documents that reflect Plaintiff's current and former employment (as relevant to his claims for unjust enrichment) and alleged emotional and psychological injuries, both of which are fairly encompassed within the request for documents "that support any of the claims made in

---

[12] Request No. 9 to Plaintiff Urbina Rojas and Request No. 12 to Plaintiff Hill Barrientos sought similar documents, to which these Plaintiffs gave similar responses. (Ex. 2 and 3.) Plaintiffs Urbina Rojas and Hill Barrientos should be required to produce responsive documents in response to these requests for the same reasons as Plaintiff Bermudez Gutierrez.

this lawsuit against CoreCivic." Documents that fall within these categories should be produced for the reasons stated above.

Plaintiffs Bermudez Gutierrez and Urbina Rojas made significant redactions to the documents they produced in response to this request on the basis of their "in terrorem" objections. (Ex. 1 and 2.) These objections, however, are misplaced as discussed above.

Moreover, those and other new objections asserted by Plaintiffs in their amended responses are waived. Rule 34 requires that the party to whom the request for production is directed "respond in writing within 30 days after being served … ." Failure to raise an objection within thirty days "waives any objection to the discovery request." *See United States v. Providence Learning Ctr. & Dev. Corp.*, 2007 WL 9701665, at *2 (N.D. Ga. Jan. 17, 2007) (quoting *United States v. Kahn*, 2005 W.L. 3801810, at *2 (M.D. Fla. Nov. 18, 2005)).

Each Plaintiff's amended responses included new objections. (*See* Ex. 1 at Request Nos. 8, 9; Ex. 2 at Request Nos. 8, 9; Ex. 3 at Request Nos. 4, 11.) Because Plaintiffs did not assert these objections in a timely manner, they are waived, and any documents they withheld, or redactions they made, based on them must be produced in their entirety.

**F.     Plaintiffs Should Be Required to Produce IHSC Medical Files.**

Request No. 11 asked Plaintiff Bermudez Gutierrez to produce a complete copy of his medical files created and maintained by ICE Health Services Corps ("IHSC"), which provides medical and/or mental health care at many facilities housing ICE detainees. (Ex. 1.) Plaintiff stated that he has "requested medical records from IHSC [and] [a]fter receiving and reviewing

the requested records, [he] will produce the portions of the records that contain information relevant to the claims and defenses in this case." (Ex. 1.)[13]

This fails to fully respond to the discovery request (which requests a complete copy) and improperly places Plaintiff and his attorneys as the gatekeepers and sole arbiters of relevance. *See Upton*, 1996 WL 193807 at *5; *Barton & Associates, Inc.*, 2020 WL 8299750 at *2; *Shapiro*, 2018 WL 8809130; *Lucas*, 2010 WL 569743 at *3. The complete copy of Plaintiff's IHSC medical records is relevant, as Plaintiffs allege in their Complaint that they were subject to unspecified physical abuse, physical harm, and physical injury while at SDC, as well as unspecified emotional and psychological injury. Plaintiff's complete IHSC medical file is relevant to determine whether and to what extent those claims are true, and to identify any pre-existing conditions and/or other potential causes of the injuries Plaintiff claims. Specifically, records that precede Plaintiff's detention at SDC are relevant to show which conditions pre-dated his detention at SDC, and records that follow his detention at SDC are relevant to show the extent of any injuries he suffered (or to confirm that he did not suffer any such injuries) at SDC. Plaintiff should be required to produce the complete records, and not just those cherry-picked portions that he and/or his counsel believe are relevant under their narrow view of the term.[14]

---

[13] Request No. 11 to Plaintiff Urbina Rojas and Request No. 14 to Plaintiff Hill Barrientos sought similar documents, to which these Plaintiffs gave similar responses. (Ex. 2 and 3.) Plaintiffs Urbina Rojas and Hill Barrientos should be required to produce responsive documents in response to these requests for the same reasons as Plaintiff Bermudez Gutierrez. In their December 2, 2021 letter, Plaintiffs again stated they are "willing to confer with Defendants about production of these records when we receive them," but gave no indication as to when they expected to receive them and made no proposal as to what "production of these records" would entail.

[14] During the parties' November 30, 2021 meet and confer, Plaintiffs' counsel stated they would only produce medical records regarding changes in Plaintiffs' height and weight. Plaintiffs, however, appear to be confusing Request Nos. 11 (complete IHSC medical file) and 13 (complete medical files for each provider identified in response to Interrogatory No. 19,

### III.   Conclusion

For the reasons stated above, Plaintiffs should be required to provide complete responses and document productions in response to CoreCivic's Requests for Production.

Dated:  December 3, 2021

Respectfully submitted,

s/ Jacob B. Lee
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
Nicholas D. Acedo *(pro hac vice)*
Ashlee B. Hesman *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
Eden G. Cohen *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
ecohen@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
David Bobo Mullens (GA Bar No. 258029)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
dbmullens@olivermaner.com

*Attorneys for Defendant CoreCivic, Inc.*

---

which sought the identities of each medical provider who recorded Plaintiff's weight, height, and BMI if Plaintiff contends that the meals served at SDC are nutritionally deficient). (Ex. 1; *see also* Ex. 2 at Request Nos. 11 and 13 and Ex. 3 at Request Nos. 14 and 16.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of December, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Priyanka Bhatt | priyanka@projectsouth.org |
| Meredith B. Stewart | meredith.stewart@splcenter.org |
| Rebecca M. Cassler | rebecca.cassler@splcenter.org |
| Caitlin J. Sandley | cj.sandley@splcenter.org |
| Vidhi Bamzai | vidhi.bamzai@splcenter.org |
| Jaqueline A. Osomo | jacki.aranda@splcenter.org |
| Daniel H. Charest | dcharest@burnscharest.com |
| R. Andrew Free | andrew@immigrantcivilrights.com |
| Azadeh Shahshahani | azadeh@projectsouth.org |
| Jessica Hasen | jhasen@perkinscoie.com |
| Emily B. Cooper | ecooper@perkinscoie.com |
| John T. Dixon | johndixon@perkinscoie.com |
| Alan B. Howard | ahoward@perkinscoie.com |
| John H. Gray | jhgray@perkinscoie.com |
| Jessica L. Everett-Garcia | jeverettgarcia@perkinscoie.com |
| Mikaela N. Colby | mcolby@perkinscoie.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

s/ Jacob B. Lee