IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| **WILHEN HILL BARRIENTOS, et al.**<br><br>                    Plaintiffs,<br>v.<br><br>**CORECIVIC, INC.,**<br><br>                    Defendant. | **Civil Action No. 4:18-cv-00070-CDL** |

**Plaintiffs' Memorandum of Law in Opposition to**
**Defendant's Motion to Compel Responses to Requests for Production**

Plaintiffs respectfully submit this Memorandum of Law in opposition to Defendant CoreCivic Inc.'s ("CoreCivic") Motion to Compel Responses to Requests for Production ("Motion") (Doc. 168). Fact discovery closed on December 3, 2021. During discovery, Plaintiffs promptly disclosed relevant information, produced responsive documents, updated their productions when new information was located, and offered to compromise on points of disagreement. Now, on the close of fact discovery, CoreCivic demands Plaintiffs respond to untimely, harassing, and burdensome requests that seek only irrelevant documents. In view of the tenuous relevance and unreasonable burden of these requests, the Court should deny its Motion.

**BACKGROUND**

**I.      Claims for Relief**

Plaintiffs are individuals who were held at the Stewart Detention Center ("Stewart" or "SDC") in Lumpkin, Georgia. Doc. 87, ¶ 3. CoreCivic is a private prison company that owns and operates SDC. *Id.* ¶ 13. At SDC, CoreCivic runs a "Voluntary" Work Program ("WP") through which detained immigrants work in jobs that are critical for operating the facility. *Id.* ¶ 27. CoreCivic coerces individuals to participate in the WP by, for example, depriving them of

necessities such as food and clothing and/or threatening them with disciplinary action such as "segregation" (i.e., solitary confinement). *See, e.g., id.* ¶¶ 36–61. CoreCivic reaps substantial financial benefit from this scheme because it allows CoreCivic to operate the facility with nearly-free labor instead of hiring full-time workers at standard wages. *Id.* ¶ 32.

Plaintiffs bring this action against CoreCivic on behalf of themselves and a putative class of formerly and currently detained individuals who participated in the WP. They bring (1) claims under the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589, 1594, and 1595, seeking damages equal to the value of the labor they performed, *see* Doc. 87 at ¶¶ 114–27; and (2) unjust enrichment claims under Georgia common law, seeking damages equal to the value of the benefit they conferred on CoreCivic and/or disgorgement, *see* Doc. 87 at ¶¶ 128–33.

## II.    Discovery in this Case

Fact discovery began in June 2020 and closed on December 3, 2021. Plaintiffs promptly served discovery requests on CoreCivic in August 2020. *See* Doc. 139-1 at 1. CoreCivic, however, did not serve any discovery requests on Plaintiffs until May 5, 2021—almost a year into the discovery period. Ex. 1 (Conferral Letter) at 1. This included over forty requests for production ("RFPs") that sought many categories of documents—far more than the permitted number by the Court's scheduling order. *E.g.*, Doc. 168-2 (Bermudez Gutiérrez Amended Responses & Objections); Doc. 63 at 3–5 (permitting 30 RFPs "per side directed to any other party"). Upon receiving the discovery request, Plaintiffs asked for a 30-day extension to respond, to which CoreCivic agreed. Ex. 1 at 1. Plaintiffs kept to the new deadline and served their responses in July 2021. *Id.*

Plaintiffs complied with their ongoing discovery obligations and amended their RFP responses in August 2021. *Id.* Plaintiff Hill Barrientos supplemented his responses a second time in September 2021. *Id.*

On November 3, the deadline for service of all written discovery passed. *Id.* at 4; Doc. 55 at 6; Doc. 160. Then, on November 23, 2021—after that deadline, two days before Thanksgiving, and six business days before the close of fact discovery—CoreCivic for the first time raised supposed issues with Plaintiffs' discovery responses. Ex. 1 at 1. The Parties conferred on November 30. *See id.* During that conference, Plaintiffs realized the supposed issues CoreCivic raised were caused by its attempt to broaden the original requests. For example, Request No. 9 to Mr. Bermudez Gutiérrez sought various documents that "refer to, describe, or document this lawsuit or any events that are the subject of this lawsuit." Doc. 168-2 at 22. In the conference, however, CoreCivic demanded that Plaintiffs produce any document *relevant to* any fact or issue in the lawsuit, regardless of whether it "refer[s] to, describe[s], or document[s]" the lawsuit or an underlying event. *See* Ex. 1; Doc. 168 at 17–18. Request 8 to Mr. Bermudez Gutiérrez sought social media "pertaining to the incident, this lawsuit, the allegations, . . . your alleged damages, or the pursuit of a potential claim." Doc. 168-2 at 20. In the conference, CoreCivic newly demanded blanket account access, regardless of content. *See* Ex. 1; Doc. 168 at 13–17.

After the conference, on December 2, 2021, Plaintiffs sent CoreCivic a letter reiterating their willingness to cooperate and further negotiate. Ex. 1. For example, Plaintiffs offered to confer about the request for their detention files and ICE Health Service Corps ("IHSC") medical records. *Id.* at 3, 5. Regarding requests directed to immigration files, Plaintiffs offered to stipulate that their immigration files do not contain information or statements about conditions of their detention at SDC or this litigation. *Id.* at 3.  Plaintiffs also began to review the immigrations files again to confirm that there was no responsive information.

CoreCivic filed its Motion to Compel on December 3, 2021, the last day of fact discovery. CoreCivic's Motion concerns five categories of requests: (1) immigration records including A-

files, detention files, and employment authorization documents; (2) media statements; (3) income records; (4) social media; (5) documents referring to, describing, or documenting the lawsuit or related events; and (6) IHSC records.

Since then, Plaintiffs have produced additional documents to CoreCivic, including portions of Plaintiffs' immigration records that could possibly be viewed as relevant to conditions at SDC or this litigation. Plaintiffs also informed CoreCivic that Plaintiff Urbina Rojas' IHSC medical records had already been produced, and that Plaintiffs had requested the IHSC medical records for the other two Plaintiffs in June 2021 but had not received them yet from ICE. Plaintiffs agreed to produce IHSC medical records for Plaintiffs Hill Barrientos and Bermudez Gutiérrez promptly upon receipt, as they did with the records for Mr. Urbina Rojas. Finally, Plaintiffs agreed to seek and produce the demanded detention files. Ex. 2 (Email Serving Additional Documents).

**ARGUMENT**

Rule 26 permits parties to obtain discovery regarding "nonprivileged matter" that is both "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Discoverability considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "In short, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance." *Pinehaven Plantation Props., LLC v. Mountcastle Fam. LLC*, No. 12-cv-62, 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013) (citing *Cent. Ga. Anesthesia Servs., P.C. v. Equitable Assurance Soc'y of U.S.*, No. 06–cv–25, 2007 WL 2128184, *2 (M.D. Ga. July 25, 2007)). The moving party "has the burden of showing the information is relevant and necessary." *Colony Ins. Co. v. All Cities Enters., Inc.*, No.

18-CV-00126, 2019 WL 5850548, at *3 (M.D. Ga. June 11, 2019) (quoting *Williams v. Art Inst. of Atl.*, No. 06-CV-0285, 2006 WL 3694649, at *3 (N.D. Ga. Sept. 1, 2006)).

CoreCivic's outstanding requests seek sensitive personal information that is irrelevant, untimely, and unduly burdensome. The Court should deny the Motion.

## I.  CoreCivic's Motion to Compel Detention Files and IHSC Medical Records is Moot

Plaintiffs have agreed to produce or have already produced the Plaintiffs' IHSC medical records and detention files from facilities other than SDC at which they were detained.  These issues are moot. CoreCivic's Motion should be denied as to those categories of documents.

CoreCivic demanded Plaintiffs produce complete copies of their detention or institutional files maintained by each facility in which they were held.  Plaintiffs are not in possession of those files, but have agreed to provide CoreCivic with the names of the facilities and signed waivers so that CoreCivic can request them. Ex. 2.

CoreCivic demanded that Plaintiffs obtain and produce copies of their IHSC medical files. Doc. 168-1 at 18–19. Plaintiffs have agreed to disclose these records. Ex. 2. Indeed, before CoreCivic filed its Motion, Plaintiffs had already produced the complete IHSC records of Plaintiff Urbina Rojas. As for the other IHSC records, Plaintiffs are simply waiting on ICE to produce them pursuant to a FOIA request submitted in June 2021—as CoreCivic knows. Ex. 1 at 3. When the other IHSC records are received, they will be produced, too. Ex. 2.

Thus, the requests as to detention files and IHSC medical records are not ripe for review. *See, e.g.*, *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 678–79 (N.D. Ala. 2015).

## II.  The Plaintiffs' Work Authorization Documents, Immigration Records, and Income Records Are Not Relevant

CoreCivic demands Plaintiffs' work authorization applications, complete A-files, all documents issued or submitted by Plaintiffs in immigration proceedings before an immigration

judge, the "Bureau" of Immigration Appeals,[1] or the Executive Office of Immigration Review, and income and tax records. Doc. 168-1 at 3, 11. This highly sensitive information is not relevant to the claims and defenses and, to the extent it is minimally relevant, the burden of disclosure outweighs any probative value.

### A.  Work Authorization Documents

CoreCivic does not articulate a single reason why work authorization applications and all supporting documents are relevant to the case. This is likely because the information on the work authorization filings CoreCivic seeks (USCIS Forms I-765 and I-912 and the I-766 Employment Authorization Document) is not related in any way to the conditions at SDC or the WP. Nor does CoreCivic's flawed argument for compelling production of Plaintiffs' A-files or income records apply to work authorization documents.  The work authorization documents do not provide the applicant the opportunity to discuss detention conditions, wage rates, or disclose any other potentially relevant information about the lawsuit.[2] The work authorization information is wholly irrelevant to the case, and CoreCivic's failure to argue otherwise is grounds for denial of the Motion as to this category of documents.

### B. Immigration Records

CoreCivic makes two arguments regarding the relevance of immigration records. Both arguments fail. *First*, CoreCivic says that Plaintiffs might or might not have asserted in immigration-related proceedings that they have been subject to particular conditions. This point is

---

[1] Plaintiffs assume CoreCivic is referring to the *Board* of Immigration Appeals.

[2] *See* Form I-765, Application for Employment Authorization
https://www.uscis.gov/sites/default/files/document/forms/i-765.pdf; Form I-912, Request for Fee Waiver, https://www.uscis.gov/sites/default/files/document/forms/i-912.pdf.

moot, however, as Plaintiffs have produced any possibly responsive information and stipulate to the absence of additional responsive information. *E.g.*, Ex. 1 at 3.

*Second*, CoreCivic insists that the remaining documents are relevant to damages, specifically "claims of emotional and psychological injury." Doc. 168-1 at 6. CoreCivic misunderstands the nature of Plaintiffs' claims despite Plaintiffs' repeated efforts to explain their damages claims (in counsel correspondence, initial disclosures, and expert reports). CoreCivic nevertheless insists that Plaintiffs have raised "claims of emotional and psychological injury" and that information is therefore relevant if it might "show[] other potential stressors to Plaintiff." *Id.* (alteration in original) (citing *Giacchetto v. Patochogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 116 (E.D.N.Y. 2013)).

But Plaintiffs do not seek specific, individualized emotional distress damages for emotional injuries. They seek class-wide damages for forced labor and CoreCivic's unjust enrichment. All of CoreCivic's cited cases in support of its demand for documents, in contrast, involve specific *claims* for emotional distress. Doc. 168 at 6–7. For instance, *Faour Abdallah, Fraihat v. Cohen, Unit Manager at CCA*, No. 06cv1452, 2007 WL 3333117, at *2 (S.D. Cal. Nov. 6, 2007), involved a standalone claim for "serious mental distress" in which the underlying injury was severe enough to apparently require medical intervention. *Giacchetto* involved "claims of physical and emotional damages" that were specific enough that the court limited discovery to social-media postings about "specific references to the emotional distress she claims she suffered or treatment she received," as well as "other potential sources/causes of *that distress*." 293 F.R.D. at 114–16 (emphasis added). *Michael Brown, Sr. v. City of Ferguson* involved "severe emotional or mental injury." No. 15CV00831, 2017 WL 386544, at *2 (E.D. Mo. Jan. 27, 2017). And "mental disability and emotional state" were at issue in *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 344 (D. Minn.

2011). That is to say, those litigants claimed damages for serious and specific emotional injury. Here, the forced labor and common law unjust enrichment claims allow for damages related to the value of the benefit conferred on the defendant.  *See*, *e.g.*, 18 U.S.C. § 1593(b)(3) (TVPA); *Zampatti v. Tradebank Int'l Franchising Corp.*, 508 S.E.2d 750, 757–58 (Ga. Ct. App. 1998) (noting damages under an unjust enrichment theory are based on "the benefit conferred upon the defendant."). Accordingly, CoreCivic's "emotional injury" damages cases are off base. The claims in this case do not warrant unrestricted access to Plaintiffs' sensitive files. *Cf. NAACP v. Waffle House, Inc.*, No.05-CV-0084, 2006 WL 8432336, at *2 (N.D. Ga. Feb. 2, 2006) ("[A] general claim for emotional distress does not permit unrestrained access into an individual's confidential medical records.").

At any rate, any claim that emotional distress is reflected in the undisclosed portions of Plaintiffs' immigration files, which do not mention SDC, is speculative and tenuous. As even CoreCivic's own cases caution, courts have been skeptical of granting broad discovery simply because "anything that a person says or does might in some theoretical sense be reflective of [his] emotional state." *Giacchetto*, 293 F.R.D. at 115 (citation omitted); *see also Holter*, 281 F.R.D. at 344 ("This Court would not allow depositions of every friend and acquaintance to inquire about every conversation and interaction with plaintiff. So too, the Court will not require plaintiff to produce all information from all her social media websites to obtain similar information.").

## C.    Income Records

CoreCivic demands all income and tax records relating to any job held from three years before detention at SDC to the present. Doc. 168-1 at 11. These requests seek irrelevant information, and the burden of producing this information far outweighs any marginal relevance it might have.

CoreCivic argues that Plaintiffs' income and tax records are relevant to their unjust enrichment claim, but this argument is based on a persistent misunderstanding of Plaintiffs' damages claim. Plaintiffs' unjust enrichment damages are based on the actual value of the labor that Plaintiffs performed at SDC. That value is calculated by what wages and benefits CoreCivic would have had to pay full-time employees had CoreCivic not forced Plaintiffs to work. Plaintiffs' income outside of SDC at unrelated jobs has no bearing on the value of the labor CoreCivic coerced—Plaintiffs' damages claims are based on market rates for the services they provided.

CoreCivic's cited cases granting motions to compel income records were not in "similar circumstances" because this is not a "loss of earnings" case – i.e., Plaintiffs do not seek back wages or front pay. *See* Doc. 168-1 at 13. For instance, the damages claim in *Patton* was predicated on the defendant's misconduct that caused the plaintiff's demotion and resulting loss of earnings. *Patton v. S. Bell. Tel. & Tel. Co.*, 38 F.R.D. 428, 429–30 (N.D. Ga. 1965). The plaintiff expressly pled "loss of earnings." *Id.* Those "earnings" were the exact ones that were being sought. Similarly, *McKinstry* concerned a back-pay claim in which the damages were the difference between the plaintiff's actual pay and what she would have made but for the illegal discrimination at issue. *McKinstry v. Ikon Off. Sols., Inc.*, No. 05-CV-3119, 2006 WL 8432450, at *8 (N.D. Ga. Aug. 10, 2006). This is not such a case: even absent the illegal conduct (e.g., threats and coercion), Plaintiffs would still have been detained, and so a comparison to hypothetical earnings *outside* the detention center is inapposite. And *Gordon* involved prototypical "loss of earnings" too. *Gordon v. Rice*, No. 13-cv-00514, 2014 WL 903205, at *1, *6 (D. Colo. Mar. 7, 2014). In *Gordon*, the defendant hit the plaintiff with a truck. *Id.* Because the plaintiff contended the injury impaired her employment, it was of course relevant to what she would otherwise have made at that same job.

Here, in contrast, the focus is not on what Plaintiffs *lost* but on what CoreCivic improperly *gained*: the measure of the work's value is not reflected in various other jobs that Plaintiffs have held. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1367 (11th Cir. 2021) ("Sometimes . . . 'the remedy for unjust enrichment gives the plaintiff something . . . the plaintiff did not previously possess.' [] This species of restitution is called disgorgement, and it generally allows a plaintiff to recover the defendant's 'wrongful gain,' even if that gain exceeds the plaintiff's provable loss." (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a (Am. L. Inst. 2011)). Plaintiffs' income records are not relevant to their damages claims.  Even if this discovery were minimally relevant, that relevance would be outweighed by the burden of producing income and tax records from the past six to ten years.[3]

Finally, CoreCivic argued that income records were necessary for damages calculation because Plaintiffs' expert disclosures about damages were not due until after the close of fact discovery. Doc. 168-1 at 12 n.9. These expert disclosures have now been made, *see* Ex. 2, so this argument is moot.

### III.   Any Marginal Relevance the Immigration Files and Employment Records Might Have Is Outweighed by the Chilling Effect of Disclosure

Even if the remaining immigration and employment records were minimally relevant, the *in terrorem* effect of their disclosure would outweigh any probative value.

Courts have barred disclosure of immigration and employment information when such disclosure would have a chilling effect on plaintiffs' will to redress illegal conduct through a legal proceeding. *See, e.g.*, *David v. Signal Int'l, LLC*, 257 F.R.D. 114, 126 (E.D. La. 2009), *objections*

---

[3] CoreCivic seeks all income records relating to any job held from three years before detention at SDC to the present. Based on this request, CoreCivic seeks income records from 2012 to the present for Plaintiffs Hill Barrientos and Urbina Rojas and from 2016 to the present for Plaintiff Gutierrez. *See* Doc. 87 ¶¶ 9–11.

*overruled*, No. CIV.A. 08-1220, 2009 WL 2030382 (E.D. La. June 2, 2009) ("[A]ny inquiry into plaintiffs' current immigration status, current residence and/or post-termination employment history will most assuredly strike paralyzing fear in the plaintiffs sufficient to chill any inclination they may have had to prosecute their pending [TVPA] claims."); *Francis v. Apex USA, Inc*., No. CIV-18-583, 2020 WL 548565, at *2–4 (W.D. Okla. Feb. 4, 2020) (barring discovery into plaintiffs' employment history in TVPA forced labor case, concluding that any relevance of the information, which was "attenuated at best" and was "outweighed by the in terrorem effect accompanying disclosure of information about Plaintiffs' subsequent employment and the potential disclosure of Plaintiffs' immigration status"); *U.S. E.E.O.C. v. Sol Mexican Grill LLC*, No. 18-2227, 2019 WL 2896933, at *5 (D. D.C. June 11, 2019) ("[A]ny marginal relevance such information may pose is outweighed by the potential for harassment and intimidation. . . . Courts have recognized the chilling effect that inquiries into work histories can have on those bringing claims for unlawful employment practices."). These concerns exist for immigrant plaintiffs, future immigrant litigants, and the public interest in prosecuting civil rights claims. *See Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1065 (9th Cir. 2004) (holding that discovery regarding immigration status would constitute substantial burden on the immigrant plaintiffs and the public interest in prosecuting civil rights claims); *Silva v. Campbell*, 378 F. Supp. 3d 928, 930 (E.D. Wash. 2018) ("Regardless of Plaintiff's own immigration status, requiring a plaintiff to disclose his immigration status will likely deter individuals from coming forward regarding immigration-related due process issues such as this. This chilling effect is a real and substantial harm.").

*In terrorem* effects are compounded when the underlying disclosure is "irrelevant to any material claim." *Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002). The question is whether "whatever value the information might hold" about a relevant issue "is outweighed by the chilling

and prejudicial effect of disclosure." *Barrera v. Boughton*, No. 07cv1436, 2010 WL 1240904, at *5 (D. Conn. Mar. 19, 2010).  As discussed above, CoreCivic has not shown how the remaining portions of Plaintiffs' immigration files, their employment authorization documents, or their income records are relevant to this case. Meanwhile, this information is precisely the type that courts have found will have a chilling effect on plaintiffs, including those litigating TVPA claims. *See David*, LLC, 257 F.R.D. at 126; *Francis*, 2020 WL 548565, at *2–4. CoreCivic's motion to compel this irrelevant and sensitive information should be denied.

CoreCivic first argues that there is no evidence that disclosure will actually cause an *in terrorem* effect on these Plaintiffs. Doc. 168-1 at 8. But CoreCivic's own cited cases do not require specific evidence of chilling. Many of them do not mention any evidence of chilling a party's actions at all. *See Francis*, 2020 WL 548565, at *2–4; *Sol Mexican Grill*, 2019 WL 2896933, at *5; *Silva*, 378 F. Supp. at 930–31. Nor is this case like *Fraihat*, which did not involve *in terrorem* objections but a plaintiff's contention that a defendant's conduct caused him to lose his immigration case—a contention that directly put the merits of his immigration case at issue and prompted the court to order production of the immigration files. 2007 WL 3333117, at *1.

CoreCivic insists that there cannot be an *in terrorem* effect if a litigant is already in detention and immigration proceedings, and therefore already in danger of deportation. Doc. 168-1 at 8. But CoreCivic provides no cases supporting this bright-line categorical rule. At any rate, courts have found an *in terrorem* effect as to individuals already in removal proceedings. *E.g.*, *Macareno v. Thomas*, No. 18-CV-00421, 2019 WL 355244, at *3 (W.D. Wash. Jan. 29, 2019) (barring discovery into plaintiffs' immigration history on *in terrorem* grounds despite defendants already possessing his removal order); *E.E.O.C. v. v. DiMare Ruskin, Inc.*, No. 11-CV-158, 2012 WL 12067868, at *4 (M.D. Fla. Feb. 15, 2012) (granting protective order preventing discovery

into immigration status even though government was aware of plaintiffs' undocumented status); *Barrera*, 2010 WL 1240904, at *2, *5. And that makes sense: the risk of deportation is not the only risk that can discourage a litigant. This is particularly true here, where two Plaintiffs filed applications for asylum, and, as such, their A-files are replete with extremely sensitive information about the danger they and their families face in their countries of origin. *See generally* 8 C.F.R. § 208.6 (prohibiting the disclosure to third parties of information contained in or pertaining to asylum applications, credible fear determinations, and reasonable fear determinations). Disclosure of sensitive immigration information in these files not only poses a risk to Plaintiffs, but also to their family and friends. *E.g.*, *Rivera*, 364 F.3d at 1065 (finding that "(e)ven documented workers may be chilled by the type of discovery at issue here . . . [as they] may fear that their immigration status would be changed, or that their status would reveal the immigration problems of their family or friends").

Finally, CoreCivic argues it seeks these records only for their relevance, and "not for the purpose of harassing or intimidating Plaintiff or others." Doc. 168-1 at 7. Of course, CoreCivic does not admit intent to harass or intimidate. Regardless, an express intent to harass or intimidate is not required for a valid *in terrorem* objection—if a chilling effect would be felt by current or potential litigants, the objections are justified. The *in terrorem* standard asks whether disclosure would unduly chill participation in this *or similar* lawsuits—by these litigants, or others in the future. Here, where the relevance is both tenuous and speculative, granting expansive discovery would not only expose Plaintiffs and those connected with Plaintiffs, but it would also signal to future litigants that such cases are best not brought by those who would face similar risks. Moreover, as explained above, Plaintiffs have already produced more of their immigration files than necessary. What remains is not relevant enough to overcome the potential harms of disclosure.

IV.     **Media Statements About Detention and Fear of Returning to Home Countries**

CoreCivic demands that each Plaintiff produce documents pertaining to "any statement or interview Plaintiff or anyone acting on his behalf gave to any media outlet relating to his detention at the SDC or his fear of returning to" another country. Doc. 168-1 at 9.

Plaintiffs did not withhold anything responsive to this request. Only Plaintiff Hill Barrientos and family members on his behalf gave interviews, but he has nothing related in his possession, custody, or control. And Plaintiffs are not obligated to search for and identify publicly available information *outside* their possession (here, information available in the media) on the theory that it would be discoverable if it *were* in Plaintiffs' possession. *See, e.g.*, Fed. R. Civ. P. 26(b)(1) (considering "the parties' relative access to relevant information"), 26(b)(2)(C)(i) (directing court to limit discovery where information sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"); *Bloodworth v. United States*, 623 F. App'x 976, 979 (11th Cir. 2015) ("A party does not have authority to compel the production of documents outside the possession, control or custody of a party . . . ."). Even if Plaintiffs *had* any public media statements, discovery would not necessarily be warranted, especially because CoreCivic has not explained why it would be overburdened by its own search to find a public article itself. *E.g.*, *Thomas v. City of Jacksonville*, No. 13-CV-776, 2014 WL 12708970, at *1 (M.D. Fla. July 16, 2014) ("[I]t is well established that discovery need not be required of documents of public record which are equally accessible to all parties." (quoting *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973)) (denying motion to compel production of transcript that one party already had, even though other party would have to pay for its production).

Plaintiffs have produced any responsive documents in their possession, custody, or control, and the unbounded request to produce any information about any statement about SDC or fear of return to any media outlet at any time is overly broad and unduly burdensome.

## V.     Social Media

CoreCivic's demand for Plaintiffs' social media accounts is not supported by the claims or the case law. Plaintiffs have already produced all responsive discovery for this request, and CoreCivic's untimely attempt to seek unfettered access to Plaintiffs' accounts should be denied.

CoreCivic demands unfettered access to Plaintiffs' social media accounts based on a misinterpretation of their damages claims.  It insists that Plaintiffs "seek damages for 'emotional injury,'" and therefore evidence is relevant if it "has any bearing on Plaintiff's mental or emotional state, such as 'alternative potential stressor[s].'" Doc. 168-1 at 14 (alteration in original) (citing *Giacchetto*, 293 F.R.D. at 116); *id.* at 15 (invoking "emotional distress"). This evidence, they insist, would include "content regarding emotions, feelings, Plaintiff's mental state, relationships between Plaintiff and family and friend, his time at SDC, Plaintiff's lifestyle after leaving SDC, etc." Doc. 168-1 at 14.  This is not a standalone emotional distress case. It is a case about violation of the TVPA and unjust enrichment. As a result, CoreCivic's arguments and favored cases are inapposite. *See id.* at 14–15 (citing cases).

Moreover, CoreCivic's cited cases refer to social media as "contemporaneous" evidence of a person's mental state. *See, e.g.*, *Hinostroza v. Denny's Inc.*, No. 17-cv-02561, 2018 WL 3212014, at *6 (D. Nev. June 29, 2018). But Plaintiffs had no social media access while detained at SDC, so there is no "contemporaneous" information. Any subsequent posting might reflect Plaintiffs' "relationships and state of mind at the time of the content's posting," *see* Doc. 168-1 at 15, not their state of mind while detained. CoreCivic's cited cases, *Bass v. Miss Porter's School*, No. 08cv1807, 2009 WL 3724968 (D. Conn. Oct. 27, 2009), and *Howell v. Buckeye Ranch, Inc.*,

No. 11-cv-1014, 2012 WL 5265170 (S.D. Ohio Oct. 1, 2012), are thus inapposite. That said, even when social media evidence *is* relevant, courts do not automatically provide unrestricted access, as shown by CoreCivic's cases. In those cases, social media discovery was limited by time period, platform, and subject matter, and the account-holder's attorney accessed the accounts, not opposing counsel. *E.g.*, *Hinostroza*, 2018 WL 3212014, at *6–7; *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 434 (S.D. Ind. 2010) (making clear that even where "the contours of social communications relevant to a claimant's mental and emotional health are difficult to define, that does not mean that everything must be disclosed").

CoreCivic likewise insists that social media is broadly discoverable "with regard to claims of . . . economic losses." Doc. 168-1 at 15. Again, CoreCivic misunderstands the damages claims—no such claim exists. And while CoreCivic asserts that social media is categorically "discoverable" in such cases, it offers no reason why social media evidence beyond the information already produced (which was the product of a fulsome search) would lead to anything that bears on this case. In contrast, CoreCivic's supposed legal support is not comparable. Unlike this case, *Sourdiff v. Texas Roadhouse Holdings, LLC*, involved a "*claim* of economic loss," the court provided no reasoning for the decision, and the ordered discovery was limited to particular topics, not blanket access. No. 10-CV-0408, 2011 WL 7560647, at *1 (N.D.N.Y. Oct. 24, 2011). And in *Waters v. Union Pacific Railroad Co.*, the economic loss resulted from the plaintiff's missed workdays as a result of his injuries—an injury for which contemporaneous social media postings could have provided information. No. 15-1287, 2016 WL 3405173, at *1–3 (D. Kan. June 21, 2016). Plaintiffs here are not seeking damages for missed outside work or another contemporaneous economic opportunity.

Next, CoreCivic argues that "at a minimum, [each Plaintiff] must provide his attorneys access to the accounts so they can, as officers of the court, determine whether any information contained in the accounts is relevant and discoverable." Doc. 168-1 at 16. But *that was already done*. Plaintiffs' counsel did access Plaintiffs' accounts and did apply a uniform search protocol with a broad set of search terms relating to Plaintiffs' claims, allegations, and conditions at SDC to find responsive information. Ex. 1 at 4 n.2 (listing search terms used). That information was produced if it existed. *Id*. at 4. CoreCivic's cited cases, *see* Doc. 168-1 at 16, demand nothing beyond what was already done. Plaintiffs provided CoreCivic with these search terms, and CoreCivic has raised no issues with them, so any subsequent demand for their expansion, is untimely and waived.

CoreCivic also argues that Plaintiffs' counsel cannot be "the sole arbiter of what is relevant, picking and choosing what to produce." *Id*. But that was not the case. Plaintiffs' counsel applied a full and transparent set of search terms that were provided to CoreCivic. And this is exactly how CoreCivic's productions in response to Plaintiffs' discovery requests were handled. To the extent CoreCivic suggests that *both* Parties' attorneys must have access to the accounts, CoreCivic cannot have it both ways and would certainly oppose Plaintiffs' having access to CoreCivic's ESI databases.

Further, in the cases CoreCivic itself cites, the producing party's attorneys alone accessed the content. *Id*. (citing *Hinostroza*, 2018 WL 3212014, at *7). And any cited cases in which one side's review was inadequate cannot be stretched to fit the facts here. In *Upton*, heavily redacted board meeting minutes had been produced with "no justification" for what was left out, with any supposed irrelevance decided subjectively by the producing party's attorneys in unclear ways.

*Upton v. McKerrow*, No. 94-cv-353, 1996 WL 193807, at *5 (N.D. Ga. Feb. 20, 1996). In contrast, Plaintiffs' search protocol was clear and objective.[4]

CoreCivic complains that Plaintiffs narrowed their responses to only posts that "explicitly mention the lawsuit." Doc. 168-1 at 13–14. That is wrong: Plaintiffs' counsel applied a broad, transparent, and expansive search protocol that *did* encompass all posts "about this case, [their] claims, and/or [their] damages"—just as CoreCivic demands. *See id.* at 14. And CoreCivic raised no concerns with the collection protocol until the November 30 conferral, when it untimely demanded usernames and passwords to the accounts. *See* Ex. 1 at 4; Doc. 55 at 6; Doc. 160.[5]

CoreCivic is fishing. And courts generally do not allow fishing expeditions with total access to social media accounts and passwords. *E.g.*, *Martin v. Halifax Healthcare Sys., Inc.*, No 12-cv-1268, 2013 WL 12153535, at *2 (M.D. Fla. Dec. 31, 2013) (agreeing that "requesting a wholesale production of all postings is no more than a fishing expedition"); *Jewell v. Aaron's, Inc.*, No. 12-CV-0563, 2013 WL 3770837, at *3 (N.D. Ga. July 19, 2013) (denying access to whole-account download for lack of a "generalized right to rummage at will" and go "fishing"); *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012) (denying authorization to access where request was "the proverbial fishing expedition, in the hope that there *might* be something of

---

[4] CoreCivic's other cited authority is also inapplicable here. *Barton* concerned a spoliation investigation. *Barton & Assocs., Inc. v. Liska*, No. 19-cv-81023, 2020 WL 8299750, at *2 (S.D. Fla. May 11, 2020). CoreCivic's citation of *Shapiro* is likewise misleading: *Shapiro* had nothing to do with social media, or the appropriate reviewing party, but was simply an order setting procedural rules for a motion to compel. *See Shapiro v. Sherr*, No. 18-11187, 2018 WL 8809130 (E.D. Mich. Oct. 4, 2018). In *Lucas* certain underwriting guidelines had been withheld in a "unilateral" manner based on perceived and unexplained irrelevance to defenses, and without any showing that further production would be inappropriate. *See Lucas v. Protective Life Ins. Co.*, No. 08CV-00059, 2010 WL 569743 (W.D. Ky. Feb. 11, 2010).

[5] CoreCivic also insists that there is no privacy right over social media because the "entire purpose" of social media is "the sharing of information," regardless of "privacy settings." Doc. 168-1 at 16. But nothing was withheld on the basis of privacy settings or concerns.

relevance in Plaintiff's Facebook account").[6] Instead, courts require attorneys to conduct targeted and objective searches of their clients' accounts, producing material in good faith. That is exactly what happened here.  No further discovery is warranted.

**VI.    Documents That "Refer to, Describe, or Document" the Lawsuit or Subject Events**

CoreCivic demands documents that "refer to, describe, or document this lawsuit or any events that are the subject of this lawsuit." Doc. 168-1 at 17–18. Plaintiffs already complied with CoreCivic's requests for this information, and CoreCivic's most recent effort to broaden the request is untimely.

The original request sought documents regarding "this lawsuit or events that are the subject of this lawsuit." But CoreCivic now asserts that the original request covered "all documents that reflect Plaintiff's current and former employment." CoreCivic has not explained how this new category of document would refer to, describe, or document the lawsuit or any events that are the subject of it. Indeed, CoreCivic apparently seeks documents that *do not* "refer to, describe, or document this lawsuit or any events that are the subject [thereof]." This is a new request propounded after the November 3, 2021 deadline. Ex. 1 at 4; Doc. 55 at 6; Doc. 160. Even if the new request for employment records were timely, it should be denied because, as stated above, employment records are not relevant to the claims here.

Nor have Plaintiffs waived their supplemental objections. *See* Doc. 168-1 at 18. *First*, Plaintiffs withheld no additional documents on the basis of these supplemental objections that had

---

[6] Few cases have resulted in blanket access to social media accounts, and those came about under much different circumstances. *See* Doc. 168-1 at 15 (citing *Largent v. Reed*, No. 2009-1823, 2011 WL 5632688 (Pa. Ct. Com. Pl. Nov. 8, 2011), and *McMillen v. Hummingbird Speedway, Inc.*, No. 113-2010, 2010 WL 4403285 (Pa. Ct. Com. Pl. Sept. 9, 2010)). For example, *Largent* involved legal claims directly linked to particular social media posts. *Largent*, 2011 WL 5632688. *McMillen* involved a privilege objection, which is not the case here. *McMillen*, 2010 WL 4403285.

not been withheld on the basis of the original objections. *Second*, CoreCivic had more than fair notice of the supplemental objections—in Plaintiffs' initial responses, they asserted the *in terrorem* objection generally, asserted irrelevance and overbreadth objections generally and specifically, and reserved the right to supplement their objections and responses given that document collection was ongoing. Ex. 1 at 1–2. The only cases CoreCivic cites are off the mark. Both *United States v. Providence Learning Center & Development Corp.*, No. 05-CV-2981, 2007 WL 9701665 (N.D. Ga. Jan. 17, 2007), and *United States v. Kahn*, No. 03-CV-436, 2005 WL 3801810 (M.D. Fla. Nov. 18, 2005), involved a party that failed to make *any* timely objection to discovery requests. Plaintiffs' initial objections were timely, and they merely exercised their right to supplement those objections during discovery.

Finally, CoreCivic asserts that certain redactions in the documents produced by Plaintiffs Bermudez Gutiérrez and Urbina Rojas are improper. Plaintiffs redacted statements in those documents that relate to Plaintiffs' immigration cases and employment history. As discussed above, this sensitive information is irrelevant to the claims and defenses at bar, and its disclosure would have a chilling effect on the Plaintiffs and future litigants.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny CoreCivic's Motion to Compel.

Dated: January 10, 2022

Respectfully submitted,

/s/ Meredith B. Stewart
Meredith B. Stewart*
**SOUTHERN POVERTY LAW CENTER**
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org

Caitlin J. Sandley (GA Bar No. 610130)
Jaqueline Aranda Osorno*
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave.
Montgomery, AL 36104
Telephone: (334) 303-6822
Facsimile: (334) 956-8481
cj.sandley@splcenter.org
jackie.aranda@splcenter.org

Vidhi Bamzai*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol St., Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (601) 948-8885
vidhi.bamzai@splcenter.org

R. Andrew Free*
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
**PROJECT SOUTH**
9 Gammon Avenue SE
Atlanta, GA 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org

Rebecca M. Cassler (GA Bar No. 487886)
**SOUTHERN POVERTY LAW CENTER**
150 E. Ponce de Leon Avenue, Suite 340
Decatur, GA, 30030
Telephone: (404) 521-6700
Facsimile: (404) 221-5857
rebecca.cassler@splcenter.org

Alan B. Howard*
John T. Dixon*
Emily B. Cooper*
**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
AHoward@perkinscoie.com
JohnDixon@perkinscoie.com
ECooper@perkinscoie.com

Jessica L. Everett-Garcia*
John H. Gray*
Mikaela Colby
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
jeverettgarcia@perkinscoie.com
jhgray@perkinscoie.com
mcolby@perkinscoie.com

Jessica Tseng Hasen*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com

*Admitted *pro hac vice*

**Attorneys for Plaintiffs**

Daniel H. Charest*
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com