IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>  Defendant. | Civil Action No. 4:18-cv-00070-CDL |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR PAYMENT OF EXPERT FEES**

**I.   Factual Background**

CoreCivic disclosed Joseph V. Penn, MD CCHP FAPA as its mental health expert on February 2, 2022. (Ex. 1 at ¶ 2) The disclosure included Dr. Penn's fee schedule, which clearly states he charges $1,000 per hour for deposition and trial testimony. (Ex. 1 at ¶ 3; Ex. 2 at ¶ 40.)

Two weeks later, on February 15, 2022, Plaintiffs served a Subpoena to Testify at a Deposition in a Civil Action directed at Dr. Penn on counsel for CoreCivic. (Ex. 1 at ¶ 4.) Neither the subpoena nor the transmittal email objected to Dr. Penn's fee or request a lower hourly rate for his testimony. (Ex. 1 at ¶ 5.)

The parties eventually agreed on Tuesday, March 8, 2022 for the deposition. (Ex. 1 at ¶ 6.) In light of issues Dr. Penn had recently experienced obtaining payment for his deposition testimony in *Jensen, et al. v. Shinn, et al.*, No. CV-12-00601-PHX-ROS, D. Ariz., on February 24, 2022, CoreCivic reminded Plaintiffs of Dr. Penn's hourly rate and asked that they pay him in advance for the number of hours they anticipated taking for the deposition. (Ex. 1 at ¶ 7.) On that same date, and in response to CoreCivic's request, Plaintiffs objected for the first time to

Dr. Penn's hourly rate, stating they would only agree to pay Dr. Penn $400 per hour—i.e., 40% of his stated rate. (Ex. 1 at ¶ 8.)[1] Plaintiffs also objected to pre-paying Dr. Penn for his deposition and stated that they intended to take at least five hours for the deposition but reserved the right to take the full seven hours allowed by Rule 30. (Ex. 1 at ¶ 11.)

Dr. Penn is triple board-certified in forensic psychiatry, general psychiatry, and child and adolescent psychiatry. (Ex. 2, Dec. of Joseph V. Penn, MD CCHP FAPA, ¶ 3.) All of these boards are under the American Board of Psychiatry and Neurology (ABPN), which is a member board of the American Board of Medical Specialties (ABMS) that grants board certification for psychiatrists and neurologists in the United States. (Ex. 2 at ¶ 3.) Dr. Penn is fully licensed as a health care professional, specifically as a medical doctor (M.D.), to practice medicine in Texas and specializes in correctional psychiatry, to which he has devoted most of his professional time in the past 20-plus years in both the practice and teaching of general adult, child and adolescent, and forensic and correctional psychiatry. (Ex. 2 at ¶ 3.)

After graduating from medical school at the University of Texas Medical Branch (UTMB), Galveston, Texas in 1992, Dr. Penn completed three residency and fellowship training programs for a total of seven years of specialty/subspecialty residency training—four years of

---

[1] Dr. Penn's hourly rate for other expert work, such as records review, attorney conferences, and preparation of his report is $500 per hour. (Ex. 1 at ¶ 9.) Thus, Plaintiffs originally wanted to pay 20% less per hour for Dr. Penn's deposition testimony than CoreCivic is paying Dr. Penn to prepare his opinions and prepare for his deposition. *See Edin v. Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 547 (D. Ariz. 1999) (finding it reasonable for an expert to charge "a modestly higher fee for a deposition taken by adverse counsel" because "depositions of an adverse expert are, at times, stressful and, unfortunately, usually adversarial in nature," and "require better preparation and more thoughtful and precise answers by the deponent than a casual office visit with retaining counsel or a patient"). Meanwhile, Plaintiffs are paying their expert economist, Steven Schwartz, Ph.D., who holds a Ph.D. from the University of Maryland, $595 per hour for all work he performs in this matter. (Ex. 1 at ¶ 10.) Given his qualifications, Dr. Penn is entitled to a higher rate than Dr. Schwartz.

general psychiatry in 1996 at Brown University, Providence, Rhode Island; two years of child and adolescent psychiatry in 1998 at Brown University, Providence, Rhode Island; and one year of forensic psychiatry at Yale University, New Haven, Connecticut, in 1999. (Ex. 2 at ¶ 5.) Since 1999, Dr. Penn has focused his clinical, administrative, and forensic work within correctional settings including detention facilities, jails, and prisons. (Ex. 2 at ¶ 6.) He has also achieved and maintained specialized certification as a Certified Correctional Health Professional (CCHP) by the National Commission on Correctional Health Care (NCCHC) since 2004, and, more recently, CCHP-MH (Mental Health).[2] (Ex. 2 at ¶ 6.) This requires passing a written national examination, demonstration of proficiency in national correctional health standards, annual attestation of continuing medical education credits, full medical licensure without restrictions, and annual re-certification. (Ex. 2 at ¶ 6.)

Since 2008, Dr. Penn has served as the Director of Mental Health Services for UTMB Correctional Managed Care (CMC). (Ex. 2 at ¶ 8.) In this capacity, Dr. Penn oversees the provision of psychiatric, psychological, and mental health services to approximately 80% (approximately 110,000 adult offenders) of the entire Texas state jail and state adult prison population housed within the Texas Department of Criminal Justice (TDCJ) facilities statewide. (Ex. 2 at ¶ 8.) He also oversees the delivery of psychiatric services to approximately 800 youths housed statewide within state juvenile correctional institutional facilities (referred to as state schools) and halfway houses within the Texas Juvenile Justice Department (TJJD) as well as several county jails and short-term detention facilities in Texas. (Ex. 2 at ¶ 8.) Additional roles, responsibilities, and qualifications of Dr. Penn are set forth in his declaration. (Ex. 2 at ¶¶ 2–38.)

---

[2] NCCHC began offering the Mental Health certification in 2013. (*See* https://www.ncchc.org/cchp-mh-announce.)

There can be no serious argument that Dr. Penn is not highly qualified and one of the top forensic psychiatrists practicing in corrections and detention.

After reviewing Plaintiffs' cited legal authority in support of their objection to Dr. Penn's hourly rate, performing its own research, and conferring with Dr. Penn, CoreCivic withdrew its request for pre-payment on March 6, 2022 but requested that Plaintiffs agree to pay Dr. Penn's full hourly fee within 30 days after the deposition. (Ex. 1 at ¶ 15.) CoreCivic highlighted Dr. Penn's qualifications and cited cases in which similarly qualified experts were paid the same rate or higher for their deposition testimony and informed Plaintiffs that if they would agree to pay Dr. Penn's full fee within 30 days after the deposition, CoreCivic would not object to producing Dr. Penn for his deposition on March 8, 2022. (Ex. 1 at ¶ 16.) If they would not, however, CoreCivic stated that the deposition would need to be postponed pending resolution of this issue with the Court. (Ex. 1 at ¶ 17.)

Plaintiffs responded on March 7, 2022. (Ex. 1 at ¶ 18.) Although they would not agree to postpone the deposition until the fee issue is resolved, upon further negotiation, they did agree to promptly pay Dr. Penn $595 per hour upon receipt of a W-9 and an invoice as an undisputed portion of his fee, with the parties to litigate payment of the remainder of the fee. (Ex. 1 at ¶ 18.)

## II.   Legal Argument

"Unless manifest injustice would result, the court must require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery," including for depositions. *See* Fed. R. Civ. P. 26(b)(4)(A), (E)(i). "The purpose of the rule is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 879 (9th Cir. 1986). "The party seeking reimbursement of deposition fees bears the burden of proving reasonableness." *New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 468 (W.D.N.Y. 2002)

(citations omitted). A blanket comparison between Plaintiffs' and Defendant's experts' fees is not relevant to determine whether an expert fee is reasonable. *See Est. of Harvey v. Jones*, No. C05-1170RSM, 2006 WL 8454886, at *1 (W.D. Wash. Sept. 8, 2006) (noting the defendants' conclusory comparison of their own expert witness to the plaintiff's expert was meaningless because they failed to cite any support in the record that the two were comparable).

Rather, courts weigh various factors to determine the reasonableness of an expert's fee: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality, and complexity of the discovery responses provided; (5) the fees actually charged to the party that retained the expert; (6) fees traditionally charged by the expert on related matters, and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26. *See Putnal v. Guardian Life Ins. Co. of Am.*, No. 5:04–CV–130–4, 2005 WL 3532381, at *2 (M.D. Ga. Dec.22, 2005). Experts are not limited to time spent under oath, but are also entitled to be compensated for time spent preparing for and traveling to and from the deposition. *See High Five Investments, LLC v. Floyd Cty., GA*, No. 4:06-CV-0190-HLM, 2008 WL 11417506, at *4–*5 (N.D. Ga. Mar. 18, 2008).

These factors are non-exhaustive and serve to guide the Court's review. *See Adams v. Mem'l Sloan Kettering Cancer Ctr.*, No. 00 Civ. 9377, 2002 WL 1401979, at *1 (S.D.N.Y. June 28, 2002). The "ultimate goal" is to balance the parties' interests so that the party retaining the expert witness is not "unduly hampered in [its] efforts to attract competent experts" while the opposing party is not "unfairly burdened by excessive ransoms which provide windfalls for the [opposing side's] experts." *Cabana v. Forcier*, 200 F.R.D. 9, 15–16 (D. Mass. 2001) (quoting *Anthony v. Abbott Lab.*, 106 F.R.D. 461, 465 (D.R.I. 1985)). In resolving a challenge to an

expert's fees, courts also consider whether the challenging party had notice of the charged expert fee. *See Hurst v. United States*, 123 F.R.D. 319, 321 (D.S.D. 1988) (awarding requested expert hourly rate in part because the deposing party was warned by the other party that their expert's time was very expensive).

Here, analysis of these factors shows that Dr. Penn's fee is reasonable and that Plaintiffs should be required to pay Dr. Penn for his time spent in the deposition at his full hourly rate. As to the first two factors, Dr. Penn practices in a highly specialized area in which he has over 20 years of experience. (Ex. 2 at ¶¶ 2–6.) After graduating from medical school, Dr. Penn completed seven years of specialty/subspecialty training during three residency and fellowship training programs at Brown University and Yale University, both Ivy League schools. (Ex. 2 at ¶ 5.) He is triple board-certified, including in both general and forensic psychiatry, and has been a Certified Correctional Health Professional-Mental Health (CCHP-MH) since 2004. (Ex. 2 at ¶ 3.) Dr. Penn's list of qualifications is lengthy, and is set forth in detail in his declaration. (Ex. 2 at ¶¶ 2–38.) These factors weigh in favor of a finding that Dr. Penn's hourly rate is reasonable.

As to the third factor, Dr. Penn's rate is similar to other comparably qualified and respected available experts. Plaintiffs' mental health expert, Pablo Stewart, M.D., is not fellowship-trained or board certified in forensic psychiatry. (Ex. 2 at ¶ 39.) The fact that he is only charging $350 per hour for his services therefore has no effect on whether Dr. Penn's rate is reasonable. Other psychiatric physicians who are board certified in both general and forensic psychiatry and have similar years of experience in correctional psychiatry charge similar amounts. For example, Dr. Michael Champion (Champion Consulting), a forensic psychiatrist based in Honolulu, Hawaii bills $750 per hour for depositions/trial testimony. (Ex. 2 at ¶ 41.) Similarly, Dr. Charles Scott, a forensic psychiatrist based at UC Davis, California charges a fixed

rate of $800 per hour for all services, regardless of whether it is for deposition, travel, record review, etc. (Ex. 2 at ¶ 41.)

Other courts have found hourly rates such as Dr. Penn's, or even higher than Dr. Penn's, to be reasonable. *See Hayles v. Smith*, No. CV610-031, 2013 WL 596372, at *1 (S.D. Ga. Feb. 15, 2013) (finding the plaintiff's expert orthopedic surgeon's fees of $1,500 for the first hour of his deposition and $750 for the remaining hours to be reasonable where the surgeon was double board-certified, went to medical school at Yale University and did a subspecialty fellowship at Harvard University, and where his rates were "comparable to those of the other members of his practice, [were] the same he traditionally charges, and [were] applicable to Plaintiff as well as Defendants"); *Miller v. Credit*, No. 12–00138–BAJ–RLB, 2013 WL 1833310, at *3 (M.D. La. May 1, 2013) (finding the defendants' expert's fee of $1,500/hour for deposition testimony was reasonable where the expert was board-certified and the fee was "consistent with the 'prevailing rates of other comparably respected available experts'" and similar to what the expert was charging the defendants); *Axelson v. Hartford Ins. Co. of the Midwest*, No. 2:11–cv–01827–RCJ–GWF, 2013 WL 1261757, at *2 (D. Nev. March 26, 2013) (finding the plaintiff's expert's fee of $1,500/hour for deposition testimony to be reasonable where it was "in line with those charged by similarly qualified expert witnesses in this community" and requiring pre-payment of the first hour of the deposition and prompt payment for any time over one hour based on the $1,500/hour rate); *Marcelli v. Ace Am. Ins. Co.*, No. 10–cv–03025–PAB–KMT, 2012 WL 3744635, at *3 (D. Colo. Aug. 29, 2012) (reducing an orthopedic expert's fee for deposition testimony from $1,500/hour to $1,000/hour); *Burdette v. Steadfast Commons II, LLC*, No. 2:11-980-RSM, 2012 WL 3762515 (W.D. Wash. Aug. 29, 2012) (same, and approving the expert's

two-hour minimum payment requirement). This factor weighs in favor of a finding that Dr. Penn's hourly rate is reasonable.

As to the fourth factor, this case is far from simple. In a matter of first impression, Plaintiffs allege that CoreCivic violated the federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1594, and 1595, by forcing and/or coercing immigration detainees to participate in the Voluntary Work Program (VWP) (Dkt. 87), a program required by ICE that is intended to provide detainees an opportunity to work and earn money while detained and reduce the negative impacts of detention through decreased idleness, improved morale, and fewer disciplinary incidents (*see* https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf). (Ex. 2 at ¶ 42.) Moreover, Plaintiffs seek to certify a class of all immigration detainees who participated in the VWP from April 2008 to the present—a period of over 13 years. (Dkt. 87 at ¶ 105; Ex. 2 at ¶ 43.) Dr. Penn has therefore reviewed extensive records in preparation of his opinions, including the original and rebuttal expert reports of Dr. Stewart (including attachments/exhibits) and the rebuttal report of Dr. Schriro, and recently conducted a site inspection of CoreCivic's Stewart Detention Center. (Ex. 2 at ¶ 44.) Nevertheless, Dr. Penn does not intend to charge Plaintiffs for the 10 hours he spent preparing for the deposition, and will not need to charge Plaintiffs for travel time, as the deposition will be virtual. (Ex. 2 at ¶¶ 45–46.) Even in the virtual deposition, however, Plaintiffs have stated they intend to spend at least five, and as many as seven, hours extensively questioning Dr. Penn about his opinions and the bases for them. (Ex. 1 at ¶ 11.) In order to allow them to do so, Dr. Penn must take time off from his job with the state and arranging coverage for his patients. (Ex. 2 at ¶ 47.) This factor weighs in favor of a finding that Dr. Penn's hourly rate is reasonable.

As to the fifth factor, Dr. Penn is charging CoreCivic the same rate for any testimony he may give at trial as he is charging Plaintiffs for any testimony he may give in his deposition. (Ex. 1 at ¶ 19; Ex. 2 at ¶ 48.) As to the sixth factor, Dr. Penn has been charging this rate for 3 years. (Ex. 2 at ¶ 49.) He recently provided, or agreed to provide, deposition testimony at the same rate in two cases in addition to *Jensen*. (Ex. 1 at ¶¶ 12–13; Ex. 2 at ¶¶ 51–54.) These factors weigh in favor of a finding that Dr. Penn's hourly rate is reasonable.

As to the seventh factor, Plaintiffs and their attorneys were aware of Dr. Penn's hourly rate before they requested his deposition and stated that they intended to depose him for at least five hours and as many as seven. (Ex. 1 at ¶¶ 2–3, 11.) At least some of Plaintiffs' attorneys have known Dr. Penn's hourly deposition rate since at least October 2021. (Ex. 1 at ¶¶ 12–13.) All of Plaintiffs' attorneys in this case have known Dr. Penn's hourly deposition rate since February 2, 2022. (Ex. 1 at ¶¶ 2–3.) And yet, Plaintiffs did not inform CoreCivic of their objection to Dr. Penn's hourly rate until CoreCivic raised the issue due to his difficulty receiving fair compensation for the services he provided in *Jensen*. (Ex. 1 at ¶¶ 2–8.) Had CoreCivic not done so, it can only assume Plaintiffs would have waited to object until they received Dr. Penn's bill, as did the *Jensen* plaintiffs. Such "gotcha" tactics should not be permitted, especially against a non-party expert. Plaintiffs should be required to pay Dr. Penn's full hourly rate for the hours they spend deposing him.

### III.   Conclusion

Dr. Penn is entitled to be paid his full fee in connection with his deposition. If Plaintiffs want to reduce their litigation costs, the way to do so is to focus their questions and limit the time they spend deposing Dr. Penn. It is not to take a full-day deposition and then refuse to pay his full fee, of which they had sufficient notice. For the foregoing reasons, CoreCivic respectfully

requests that the Court enter an Order requiring Plaintiffs to pay the remainder of Dr. Penn's full hourly rate (i.e., $405 per hour) for all time spent in his deposition.

Dated: March 7, 2022                Respectfully submitted,

                                                         s/ Jacob B. Lee
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
Nicholas D. Acedo *(pro hac vice)*
Ashlee B. Hesman *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
Eden G. Cohen *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
ecohen@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
David Bobo Mullens (GA Bar No. 258029)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
dbmullens@olivermaner.com

Attorneys for Defendant CoreCivic, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 7th day of March, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Priyanka Bhatt | priyanka@projectsouth.org |
| Meredith B. Stewart | meredith.stewart@splcenter.org |
| Rebecca M. Cassler | rebecca.cassler@splcenter.org |
| Caitlin J. Sandley | cj.sandley@splcenter.org |
| Vidhi Bamzai | vidhi.bamzai@splcenter.org |
| Jaqueline A. Osomo | jacki.aranda@splcenter.org |
| Daniel H. Charest | dcharest@burnscharest.com |
| R. Andrew Free | andrew@immigrantcivilrights.com |
| Azadeh Shahshahani | azadeh@projectsouth.org |
| Jessica Hasen | jhasen@perkinscoie.com |
| Emily B. Cooper | ecooper@perkinscoie.com |
| John T. Dixon | johndixon@perkinscoie.com |
| Alan B. Howard | ahoward@perkinscoie.com |
| John H. Gray | jhgray@perkinscoie.com |
| Jessica L. Everett-Garcia | jeverettgarcia@perkinscoie.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

      N/A

                                                  s/ Jacob B. Lee