**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

**WILHEN HILL BARRIENTOS, et al**,

**Plaintiffs,**

v.

**CORECIVIC, INC.,**                                    Civil Action No.  4:18-cv-00070-CDL

**Defendant.**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO CORECIVIC'S MOTION FOR PAYMENT OF EXPERT FEES

CoreCivic and its expert Dr. Joseph V. Penn (hereinafter Dr. Penn) seek to extract an exorbitant rate for Dr. Penn's deposition in this matter. Dr. Penn's $1,000 per hour deposition rate far exceeds his peers' rates and even his own rate from just a few years ago. Further, Dr. Penn's rate would effectively charge Plaintiffs twice what CoreCivic is paying Dr. Penn per hour, a pricing scheme for which Dr. Penn has no coherent explanation.

Plaintiffs have already paid Dr. Penn $595 per hour for his deposition. CoreCivic has simply not met its burden of showing Dr. Penn is entitled to more money. Plaintiffs therefore request that the Court deny CoreCivic's Motion for Payment of Expert Fees (Doc. 186).

### FACTUAL BACKGROUND

On February 2, 2022, CoreCivic disclosed the report of its expert, Dr. Joseph V. Penn. The report includes as an attachment a document purporting to be a fee schedule that contains no signature and does not list the name of this case or any other case. Doc. 186-2 at 7. On February 15, 2022, Plaintiffs noticed Dr. Penn's deposition via subpoena. On February 24, 2022, the Parties scheduled Dr. Penn's deposition for March 8, 2022. Also on February 24, CoreCivic's counsel

noted Dr. Penn's $1,000 per hour rate for depositions and requested payment in advance of his deposition. Plaintiffs' counsel declined to pay Dr. Penn in advance, as such is not required under the Federal Rules of Civil Procedure or applicable case law, and objected to Dr. Penn's $1,000 per hour deposition rate as unreasonable. Plaintiffs instead offered to pay Dr. Penn $400 per hour for his deposition. Ex. A (Emails Between CJ Sandley and Jacob Lee) at 5-9.

On Sunday, March 6, ten days after the Parties' last communication about Dr. Penn's fees and less than two days before Dr. Penn's scheduled deposition, CoreCivic's counsel emailed Plaintiffs' counsel to "insist that Plaintiffs agree to pay Dr. Penn's full hourly fee in order for the deposition to proceed" or "to postpone the deposition while [CoreCivic] seek[s] an Order from the Court resolving the issue." *Id.* at 3-4. The following morning, Plaintiffs' counsel responded, again objecting to Dr. Penn's $1,000 per hour rate as unreasonable and offering to pay Dr. Penn $400 per hour for his deposition, refusing to postpone the deposition in light of CoreCivic's late request to do so, and offering to continue negotiating Dr. Penn's rate. *Id.* at 2-3. CoreCivic's counsel responded, stating that if Plaintiffs agreed to pay Dr. Penn $595 per hour, CoreCivic would "leave litigation of whether Plaintiffs should have to pay the remainder of Dr. Penn's full fee *until after the deposition*." (emphasis added). Plaintiffs agreed to this. *Id.* at 1-2. On March 7, the night before Dr. Penn's deposition, CoreCivic filed its Motion seeking Dr. Penn's $1,000 per hour rate. Doc. 186. Dr Penn was deposed on March 8. CoreCivic's counsel sent Plaintiffs' counsel Dr. Penn's invoice and W-9 form the next day. Plaintiffs' counsel promptly issued payment.

## LEGAL STANDARD

Under Rule 26(b)(4)(E)(i), "[u]nless manifest injustice would result, the court must require that the party seeking discovery . . . pay [an opposing party's] expert a reasonable fee for time spent responding to discovery," including time spent being deposed. Fed. R. Civ. P. 26(b)(4)(E)(i).

An expert's own personal estimate of a reasonable fee is not the proper measure of what constitutes an objectively reasonable fee. *Putnal v. Guardian Life Ins. Co. of Am.*, No. Civ. A. 5:04-CV-130-4, 2005 WL 3532381, at *3 (M.D. Ga. Dec. 22, 2005) (explaining that an adverse expert will not be paid "his heart's desire" (quoting *Anthony v. Abbott Lab.*, 106 F.R.D. 461, 465 (D.R.I. 1985))). Instead, the determination of whether a fee is "reasonable" is within the district court's discretion, taking into account the following factors:

> (1) the witness' area of expertise; (2) the education and training that is required to provide the expert insight which is sought; (3) the prevailing rates of other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the fee actually being charged to the party who retained the expert; (6) fees traditionally charged by the expert on related matters; and (7) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26.

*Putnal*, 2005 WL 3532381, at *2.

It is the courts' "duty to prohibit recovery of unreasonable expert expenses" under Rule 26(b)(4)(E), and thus courts have the authority to limit or alter unreasonably high expert fees. *See High Five Invs., LLC v. Floyd Cnty.*, 2008 WL 11417506, at *3 (N.D. Ga. Mar. 18, 2008). District courts must "patrol the battlefield to [e]nsure fairness" when it comes to expert fees because "the circumstances invite extortionate fee-setting." *Healthier Choice Flooring, LLC v. CCA Glob. Partners, Inc.*, 2013 WL 12101905, at *16 (N.D. Ga. Jan. 4, 2013) (explaining that the party seeking fees handpicks the expert, and the opposing party "has neither options nor bargaining power if it desires to obtain the pretrial discovery which the rule permits") (quoting *Anthony v. Abbott Laboratories*, 106 F.R.D. 461, 465 (D.R.I. 1985)), *report and recommendation adopted*, 2013 WL 12108229 (N.D. Ga. Jan. 30, 2013); *see also High Five Invs.*, 2008 WL 11417506, at *4 ("The Court . . . 'is mindful that while a party may contract with any expert that it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the

3

expert.'") (quoting *Kernke v. Menninger Clinic, Inc.*, No. 00-2263-GTV, 2002 WL 334901, at *1 (D. Kan. Feb. 26, 2002)).

The party seeking to recover expert fees has the burden of establishing that the fees sought are reasonable. *High Five Invs.*, 2008 WL 11417506, at *3.

ARGUMENT

CoreCivic has not met its burden of showing that Dr. Penn's excessive fees are reasonable. Dr. Penn's $1,000 per hour rate is grossly unreasonable for the following reasons.

**I.      Dr. Penn's $1,000 per Hour Rate Is Unreasonably Higher than Other Experts in His Field**

Dr. Penn's $1,000 per hour rate is well outside the range of what other experts in his field charge in this type of case. While an expert is "entitled to charge whatever fees he wishes in private matters, assuming he can find patients to pay them, in a public matter he is limited to charging fees that are perceived by the community and members of his profession as being reasonable." *Putnal*, 2005 WL 3532381, at *3. CoreCivic has failed to meet its burden of showing Dr. Penn's rate is reasonable relative to the rates charged by other experts in his field.

First, CoreCivic cites only cases involving orthopedic surgeons who were paid the same or higher rates than Dr. Penn for their depositions. Doc. 186-1 at 7-8 (citing *Hayles v. Smith*, No. CV610-031, 2013 WL 596372, at *1 (S.D. Ga. Feb. 15, 2013) (permitting orthopedic surgeon to charge $1,500 for the first hour of his deposition and $750 for the remaining hours); *Miller v. Credit*, No. 12–00138–BAJ–RLB, 2013 WL 1833310, at *3 (M.D. La. May 1, 2013) (permitting orthopedic surgeon to charge $1,500/hour for deposition testimony); *Axelson v. Hartford Ins. Co. of the Midwest*, No. 2:11–cv–01827–RCJ–GWF, 2013 WL 1261757, at *1-2 (D. Nev. Mar. 26, 2013) (permitting "orthopedic physician" to charge $1,500 per hour for deposition testimony regarding whether the plaintiff was a candidate for surgery); *Marcelli v. Ace Am. Ins. Co.*, No. 10–

4

cv–03025–PAB–KMT, 2012 WL 3744635, at *1, 3 (D. Colo. Aug. 29, 2012) (reducing an orthopedic surgeon's fee for deposition testimony from $1,500/hour to $1,000/hour); *Burdette v. Steadfast Commons II, LLC*, No. 2:11-980-RSM, 2012 WL 3762515, at *5-6 (W.D. Wash. Aug. 29, 2012) (same). Orthopedic surgeons' rates are not the proper comparator here. Orthopedic surgeons are among the highest paid specialists in the medical field, one of only two specialties with an average compensation over $500,000. In contrast, psychiatrists' earnings fall within the bottom third among specialists, averaging $275,000 per year *See* Physicians Thrive, *Physician Compensation Report* 7-8 (2022), https://physiciansthrive.com/wp-content/uploads/2022/02/Physician-Compensation-Report-2022.pdf; Alan Condon, *Orthopedics is no longer the highest-paid specialist*, Becker's Spine Review (May 7, 2021), https://www.beckersspine.com/orthopedic/item/51748-orthopedics-no-longer-the-highest-paid-specialty-19-insights-on-compensation-net-worth-more.html. Dr. Penn is not an orthopedic surgeon, or a surgeon of any kind, and simply cannot command the same rates as an orthopedic surgeon in private practice or as an expert witness.

Next, Dr. Penn's declaration cites two other forensic psychiatrists' rates. Doc. 186-3 ¶41. According to Dr. Penn's declaration, Dr. Michael Champion is based in Honolulu, Hawaii, and Dr. Charles Scott is based at the University of California, Davis—markets that are significantly more expensive than Columbus, Georgia, where this case is pending, and Conroe, Texas, where Dr. Penn is based. *See* BestPlaces, https://www.bestplaces.net/compare-cities/ (last visited Mar. 25, 2022) (using a cost-of-living scale where 100 points is average, and listing Columbus, Georgia as a 74.4, Conroe, Texas as 94.9; Honolulu, Hawaii as 176.5, and Davis, California as 161.0); *see Est. of Keith v. Munoz*, No. CV-12-J-1996-S, 2013 WL 12134189, at *2 (N.D. Ala. May 7, 2013) (discussing reasonable rates of psychiatrists, ordering reduction of excessive expert psychiatrist

rate, noting that New York City had at the time 116.7 percent higher cost of living than the average

urban area, and citing authority that in New York psychiatrist reasonable fees were in the $350 to

$400 per hour range at that time). Yet Dr. Champion and Dr. Scott charge less than Dr. Penn. Dr.

Champion charges $750 per hour for deposition testimony. Doc. 186-3 at 51. Dr. Scott charges

$800 per hour for deposition testimony. Doc. 186-3 at 54.[1] Dr. Penn provides no justification for

charging $200-$250 more per hour than the two comparators *he* selected.

A more comprehensive survey of psychiatrists and medical doctors who regularly serve as

experts in federal prison and detention conditions cases reveals that Dr. Penn's rates are far outside

the typical range. Indeed, even the $595 per hour that Plaintiffs have already paid Dr. Penn is at

the top end of the range of prison and detention expert rates. Ex. B (Table Showing Rates of

Psychiatrist and Medical Doctor Experts in Prison and Detention Conditions Cases). Among these

other experts are medical doctors and psychiatrists with multiple board certifications and National

Commission on Correctional Healthcare certification, the same credentials CoreCivic claims make

Dr. Penn's time worth $1,000 per hour. *Id.*; Doc. 186-1 at 2-3. And most of these other experts

have more years of experience, in some case decades more, than Dr. Penn. Ex. B. Yet none of

them charge more than $600 per hour for deposition testimony.

CoreCivic has simply failed to meet its burden of showing that Dr. Penn's rate is reasonable

in comparison to his peers'.

**II.      Dr. Penn's $1,000 per Hour Rate Is Unreasonably Higher than His Own Rate in Prior Cases and His Own Rate for Other Work on This Case**

The $1,000 per hour that CoreCivic seeks to extract from Plaintiffs is unreasonable for the

additional reason that it far exceeds Dr. Penn's rate as charged in other recent cases as well as

---

[1] CoreCivic did not provide either Dr. Champion's or Dr. Scott's curriculum vitae, so Plaintiffs cannot assess Dr. Penn's level of experience or qualifications in comparison.

charged to CoreCivic for his work in this case. Neither CoreCivic nor Dr. Penn has provided a

plausible explanation for these discrepancies.

Dr. Penn states that he has charged a rate of $1,000 per hour for testimony for three years.

Doc. 186-3 at 17. It may well be the case that he has sought to earn this windfall rate for testimony

for the last three years, but he has provided no explanation for apparently ratcheting up his fees

three years ago. In May 2018, he testified that he was charging the party retaining him a mere $400

per hour for in-court testimony. Ex. C, Excerpt of Tr. of Proceedings at 46, *Ferreira v. Penzone*,

No. CV15-01845-PHX-JAT (D. Ariz. June 13, 2018), ECF No. 383.[2] In today's dollars, this equals

a rate of $450.36 per hour.[3] Before that, in 2013 he charged $375 per hour for all expert work

including testimony. Ex. D, Excerpt of Ex. in Supp. of Corizon Health, Inc.'s Mot. For Summ. J.,

Report of Dr. Penn at 49, *Hughes v. Polk Cnty. Sheriff*, No. 8:12-cv-00568-SDM-MAP (M.D. Fla.

Mar. 15, 2013), ECF No. 294-3, and in 2012 he charged $350 per hour for his trial testimony. Ex.

E, Excerpt of Tr. of Trial on the Merits Vol. 3 at 150, *Jackson v. Ford*, No. A 10-CA-522 SS (W.D.

Tex. Jan. 25, 2012), ECF No. 168.

Moreover, CoreCivic provides no evidence that any court has ever approved of Dr. Penn's

exorbitant fees, nor that he has ever successfully collected his sky-high fee of $1,000 per hour for

---

[2] Specifically, less than four years ago Dr. Penn testified that $400 per hour—less than half his
current rate—was "a lot of money":

> Q: . . . And how much are you compensated?
> A: I'm trying to remember. I think it's $400 an hour. And that may seem like a lot
> and it is a lot of money, but it is because I'm one of maybe 30 psychiatrist [*sic*] in
> the country are [*sic*] triple-boarded and that work in correctional settings like I do
> and there's very few of us.

Ex. C, at 46:13-18.

[3] CPI Inflation Calculator, U.S. Bureau of Lab. Stat.,
https://www.bls.gov/data/inflation_calculator.htm (comparing $400 in June 2018 to today's
dollars, using February 2022, the latest comparator month available); *see also Burdette*, 2012
WL 3762515, at *6 n.2 (citing the U.S. Bureau of Labor Statistics' inflation calculator to
determine appropriateness of expert fees).

deposition testimony from an opposing party. Indeed, the three examples he cites in his declaration do little to demonstrate that this fee is reasonable. The first example is an invoice for $1,000 per hour for deposition testimony charged to *defendants'* attorney after the plaintiff deposed Dr. Penn in *Knox v. Renzi*. *See* Doc. 186-3 at 56-57 (Dr. Penn's invoice sent to Alexandra Rice at Cassiday Schade LLP); Ex. F at 4-5, Excerpt of Civil Docket, *Knox v. Melvin*, No. 1:17-CV-01237-JEH (C.D. Ill. May 5, 2017), listing Ms. Rice as counsel for three of the defendants). The second example is an agreement that appears to be between Dr. Penn and a defendant's firm retaining him as a medical expert but containing only Dr. Penn's signature and obviously missing attachments. Doc. 186-3 at 59. These first two examples merely suggest that Dr. Penn has found defendants willing to engage him at his stated rate, not that this rate satisfies the Rule 26 "reasonableness" standard. *See, e.g.*, *Putnal*, 2005 WL 3532381, at *3; *High Five Invs.*, 2008 WL 11417506, at *4. The third example is a statement in Dr. Penn's declaration that he has attempted to charge plaintiffs' counsel in *Jensen v. Shinn*, formerly captioned *Parsons v. Ryan*, No. CV-12-00601-PHX-ROS (D. Ariz.), $1,000 per hour for deposition testimony, but has not yet been paid because the plaintiffs objected to his hourly rate. Doc. 186-3 at 18. This example shows that in at least one other case, an opposing party has argued that Dr. Penn's fee is unreasonable, which, if anything, weighs against CoreCivic's motion.

Furthermore, according to Dr. Penn's fee schedule, he intends to charge CoreCivic $500 for all expert work other than deposition and court testimony, which are to be billed at double that rate. Doc. 186-2 at 7. In effect, this fee schedule would result in Dr. Penn charging Plaintiffs double that which he represents he will charge CoreCivic for all work other than in-court testimony.[4] It is

---

[4] While Dr. Penn's fee schedule suggests that he will charge CoreCivic $1000 per hour for in-court testimony, Dr. Penn has thus far been working for CoreCivic on this case without requiring that they pay him in accordance with his fee schedule. Dr. Penn testified that he has not yet billed

not clear why Dr. Penn purportedly charges this double rate for testimony, and particularly for

virtual testimony. Dr. Penn testified in his deposition that he charges this double rate for testimony

"because there's more involved, more time and travel" and that he "do[esn't] bill like when [he's]

sitting on an airplane." Penn Dep. Ex. G, 35:19-36:13. But this explanation makes no sense given

that his fee schedule actually sets out a separate rate for travel days, and thus the hourly rate for

depositions and in-court testimony would be inapplicable where travel is involved. *See* Doc. 186-

2 at 7 (Penn's fee schedule stating he bills for "out-of-town cases" at a rate of $4,000 for a

minimum of 4 hours and $8,000 for 8 hours per day "and will include any/all travel time," with

any additional time billed at $1,000 per hour). Penn acknowledged this separate rate structure for

out-of-town cases in his deposition. Penn Dep. Ex. G, 36:18-21. He also offered no explanation

for the double rate for virtual testimony, when no travel is involved, instead just stating that $1,000

per hour is his "standard rate," and "that's why that is." Penn Dep. Ex. G, 36:22-37:2. In sum, Dr.

Penn's explanation for his double rate for testimony—that he does not bill for travel time—simply

does not hold up because he does not use that double rate when travel is involved, and even if the

double rate could be justified in cases involving travel, it is not justified here where the deposition

occurred remotely and thus no travel was required. Penn Dep. Ex. G,7:15-17 (indicating deposition

occurred by video conference).

---

CoreCivic at all, including not charging them the $5,000 retainer that his fee schedule states is
standard. Penn Dep. Ex. G, 38:20-39:9. Dr. Penn's prior testimony also demonstrates that in at
least one recent instance, his fee schedule set out a bifurcated fee structure with a double rate for
testimony, but he in fact charged the party retaining him the lower, non-testimony rate for in-
court testimony, as opposed to the double rate listed on the fee schedule. *Compare* Ex. H Excerpt
of Ex. in Supp. of Mot. in Lim., Report of Dr. Penn at 85, *Ferreira*, No. CV15-01845-PHX-JAT
(D. Ariz. Feb. 28, 2018), ECF No. 261-1 (showing a rate of $400 per hour for expert work other
than testimony, which was to be charged at double that rate), *with* Ex. C at 46 (testifying that he
was charging $400 per hour for his time testifying at trial in the same case).

Not only has CoreCivic failed to support Dr. Penn's bifurcated fee structure in this instance, courts have also rejected attempts by experts to charge higher rates to opposing parties for depositions than they charge to a retaining party for other types of work. *See, e.g.*, *Taylor v. Dean*, No. 5:05-cv-397-Oc-10GRJ, 2006 WL 8439858, at *1 (M.D. Fla. Nov. 15, 2006) (rejecting expert fee of $1,250 per hour charged to the defendants when the expert only charged the plaintiff $380 per hour, and ordering that the defendants pay expert at the same rate charged to the plaintiff); *Reynolds v. Freightliner, LLC*, No. 05-70-GFVT, 2006 WL 8446152, at *5 (E.D. Ky. June 13, 2006) (finding there was little basis to justify an $800 appearance fee for a deposition on top of standard rate charged for expert work). To permit Dr. Penn to charge Plaintiffs double the rate he is charging CoreCivic for his expert services in this case is just the type of "excessive ransom" producing a "windfall" for Dr. Penn that courts have repeatedly warned against. *See Anthony*, 106 F.R.D. at 465; *Healthier Choice Flooring,* 2013 WL 12101905, at *18; *High Five Invs.* 2008 WL 11417506, at *4.

## CONCLUSION

Plaintiffs have already paid Dr. Penn $595 per hour for his deposition—a rate at the top end of Dr. Penn's peers' rates. CoreCivic has simply not met its burden of showing Dr. Penn is entitled to more money. Plaintiffs therefore request that the Court deny CoreCivic's Motion for Payment of Expert Fees (Doc. 186).

Dated: March 28, 2022

Respectfully submitted,

/s/ Caitlin J. Sandley_____

Caitlin J. Sandley (GA Bar No. 610130)
Jaqueline Aranda Osorno*
**SOUTHERN POVERTY LAW CENTER**
400 Washington Ave.
Montgomery, AL 36104
Telephone: (334) 303-6822
Facsimile: (334) 956-8481
cj.sandley@splcenter.org
jackie.aranda@splcenter.org

Meredith B. Stewart*
Rebecca M. Cassler (GA Bar No. 487886)
**SOUTHERN POVERTY LAW CENTER**
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org
rebecca.cassler@splcenter.org

Vidhi Bamzai*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol St., Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (601) 948-8885
vidhi.bamzai@splcenter.org

R. Andrew Free*
**LAW OFFICE OF R. ANDREW FREE**
P.O. Box 90568
Nashville, TN 37209
Telephone: (844) 321-3221x1
Facsimile: (615) 829-8959
andrew@immigrantcivilrights.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
**PROJECT SOUTH**
9 Gammon Avenue SE
Atlanta, GA 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137

Alan B. Howard*
John T. Dixon*
Emily B. Cooper*
**PERKINS COIE LLP**
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
AHoward@perkinscoie.com
JohnDixon@perkinscoie.com
ECooper@perkinscoie.com

Jessica L. Everett-Garcia*
John H. Gray*
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
jeverettgarcia@perkinscoie.com
jhgray@perkinscoie.com

Jessica Tseng Hasen*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com

Daniel H. Charest*
**BURNS CHAREST LLP**
900 Jackson St., Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
dcharest@burnscharest.com

azadeh@projectsouth.org
priyanka@projectsouth.org

*Admitted *pro hac vice*

***Attorneys for Plaintiffs***