# Exhibit G

Page 1

```
 1            UNITED STATES DISTRICT COURT

 2         FOR THE MIDDLE DISTRICT OF GEORGIA

 3

 4
     WILHEN HILL BARRIENTOS,   )
 5   ET AL.,                   )
                               )
 6            Plaintiffs,      )
                               ) CIVIL ACTION FILE
 7         vs.                 )
                               ) NO: 4:18-CV-00070-CDL
 8   CORECIVIC, INC.,          )
                               )
 9            Defendant.       )

10

11

12

13

14         DEPOSITION OF JOSEPH V. PENN, M.D.

15                   ATLANTA, GEORGIA

16               TUESDAY, MARCH 8, 2022

17

18                  (Reported Remotely)

19

20

21

22

23   REPORTED BY:  TANYA L. VERHOVEN-PAGE,
                   CCR-B-1790
24

25   FILE NO.  207281
```

Page 2

                    March 8, 2022

                      9:59 a.m.


                    Deposition of

JOSEPH V. PENN, M.D., held in Atlanta,

Georgia before Tanya L. Verhoven-Page,

Certified Court Reporter and Notary Public

of the State of Georgia.

```
 1

 2                   APPEARANCES OF COUNSEL

 3   On behalf of the Plaintiffs:

 4         SOUTHERN POVERTY LAW CENTER
           400 Washington Avenue
 5         Montgomery, Alabama 36104

 6         BY:  CAITLIN SANDLEY, ESQ.

 7              MEREDITH STEWART, ESQ.

 8              VIDHI BAMZAI, ESQ.

 9              REBECCA CASSLER, ESQ.

10              JACKIE ARANDA OSORNO, ESQ.
                (Via Zoom)
11

12

13   On behalf of the Defendant:

14         STRUCK LOVE BOJANOWSKI & ACEDO
           3100 West Ray Road
15         Chandler, Arizona 85226

16         BY:  JACOB LEE, ESQ.
                (Via Zoom)
17

18

19                       -   -   -

20

21

22

23

24

25
```

Page 4

```
 1

 2                      I N D E X

 3

 4           WITNESS: JOSEPH V. PENN, M.D.

 5
```

```
 6     Examination                                    Page

 7  BY MS. SANDLEY                                      6
    BY MR. LEE                                        301
 8  BY MS. SANDLEY                                    303

 9

10                      EXHIBITS:

11   Plaintiffs'
      (Penn)
12      Exhibit          Description               Page

13
     Exhibit 1        Expert Report of s
14                    Joseph V. Penn, M.D.          23

15   Exhibit 2        Document bearing Bates
                      number CCBVA0000333185         40
16
     Exhibit 3        Dr. Penn's report from
17                    Hughes versus Judd             42

18   Exhibit 4        Article: Disparities in
                      Justice and Care               96
19
     Exhibit 5        Document bearing Bates
20                    numbers CCBVA0000333500
                      through CCBVA0000333513        149
21
     Exhibit 6        Document bearing Bates
22                    numbers CCBVA0000333514
                      through CCBVA0000333520        172
23
     Exhibit 7        Document bearing Bates
24                    numbers CCBVA0000333451
                      through CCBVA0000333486        191
25
```

Page 5

EXHIBITS:

Plaintiffs'
(Penn)
Exhibit              Description                          Page

| Exhibit | Description | Page |
|---|---|---|
| Exhibit 8 | Document bearing Bates numbers CCBVA0000333404 through CCBVA0000333428 | 195 |
| Exhibit 10 | Expert Report of Dr. Pablo Stewart | 219 |
| Exhibit 11 | Nakamoto Report | 257 |
| Exhibit 12 | Nakamoto Inspection Worksheet | 260 |
| Exhibit 13 | OIG Report | 290 |
| Exhibit 14 | Document bearing Bates numbers CCBVA0000333201 through CCBVA0000333380 | 294 |

(Plaintiffs' (Penn) Deposition Exhibit No. 9 was not marked for the record.)

```
 1                    J. PENN, M.D.
 2      objections will be consistent with the
 3      requirements of Rule 30.
 4              MS. SANDLEY:  All right.
 5   BY MS. SANDLEY:
 6      Q    Dr. Penn, you've been deposed before; is
 7   that right?
 8      A    Yes.
 9      Q    And you understand you're giving
10   testimony under oath today?
11      A    Yes.
12      Q    And do you understand that you're sworn
13   and obligated to tell the whole truth today?
14      A    Yes.
15      Q    Have you been deposed by video conference
16   like this before?
17      A    Yes.
18      Q    Okay.  So you probably understand that
19   it's a little bit different than a typical
20   deposition.  I want to just give you a few reminders
21   to make sure things go smoothly.  Okay?
22              First, please make sure to give me a
23   verbal response when I ask you a question, so the
24   court reporter can get your answer down, rather than
25   a head nod, okay?
```

Page 35

1                    J. PENN, M.D.
2    his initial report recently, but I do recall there
3    were some photos of different housing areas in the
4    facility.  That's fair.
5         Q    Do you know if you were provided all of
6    the photos that were taken during that tour?
7         A    I'm not -- I'm not sure.  I don't know.
8         Q    Let's look at PDF Page 138.  Okay.
9              Dr. Penn, is this the fee schedule that's
10   included in your report for this case?
11        A    Yes.
12        Q    And you charge $500 an hour for document
13   review, research and consultation; is that correct?
14        A    Yes, that's fair.
15        Q    And you charge $1,000 an hour for
16   testimony at deposition and testimony in court,
17   correct?
18        A    Yes.
19        Q    Why do you charge double the rate for
20   testimony than you do for other work?
21        A    That's how I bill.  That's my standard
22   practice.
23        Q    Is there any -- do you have any
24   explanation for why you charge double the rate?
25        A    No.  I mean, I think the issue of billing

Page 36

1         J. PENN, M.D.
2   is something that's not really written about or
3   published. I have talked to colleagues, but I think
4   I'm very careful about the issue of price fixing or
5   -- you know, trying to -- it's kind of a sensitive
6   issue, but no.
7            Frankly, the reason why I charge more is
8   because there's more involved, time and travel. I
9   have to take vacation time. My vacation time is very
10  valuable to me. I'm a state of Texas employee, so I
11  can't do work on state time. So because of the
12  amount of time and travel -- I don't bill like when
13  I'm sitting on an airplane.
14           So that's kind of how I do it. I know
15  that other experts do it differently. They have a
16  higher hourly rate and they keep the same rate, but
17  that's how I -- that's how I do my billing.
18       Q    Okay. Well, you do have a separate rate
19  structure for out-of-town cases that involve travel,
20  correct?
21       A    Correct, yes.
22       Q    All right. So for a deposition like this
23  one today, why could do you bill $1,000 an hour which
24  is double your rate for other work?
25       A    Sure. That's my standard rate. That's

Page 37

1                     J. PENN, M.D.
2    how -- that's why that is.
3         Q    Okay.  And you filed a declaration in
4    this case yesterday stating that you charged the
5    rates reflected in this rate sheet for three years;
6    is that correct?
7         A    Well, I don't mean to quibble, but I
8    didn't file it.  I'm not an attorney.  I believe
9    Mr. Lee filed it.  But yeah, I provided the
10   information for him and I believe he was the one who
11   filed it.
12        Q    Sure.  I can rephrase that.
13             CoreCivic filed a declaration, signed by
14   you, in this case yesterday; is that correct?
15        A    That's fair, yes.
16        Q    And you stated in that declaration that
17   you charged the rates reflected in this rate sheet
18   that we're looking at right now for three years,
19   correct?
20        A    Yes, that's correct.
21        Q    What were your rates before that?
22        A    I don't recall.  I don't have all of my
23   rate sheets for the previous years.  I believe that
24   my rates were previously 350 an hour, then they went
25   up to 400, then they went up to 450 and now they're

```
                                                          Page 38
 1                      J. PENN, M.D.
 2    at 500.
 3              And same thing, I think deposition was
 4    750 an hour and then went up to 850 an hour.  So I've
 5    had a gradual increase in my rates due to a variety
 6    of reasons over the last 15, 20 years.
 7         Q    Okay.  And let's scroll down.
 8              This rate sheet included in your expert
 9    report submitted in this case is not signed, correct?
10         A    That is correct.
11         Q    And it doesn't list the name of this
12    particular case, correct?  And we can scroll up.
13         A    That's correct.
14         Q    The name of the --
15         A    I'm sorry.  I didn't mean to interrupt
16    you.  I apologize.  Say that again, please.
17         Q    The name of the case is not on this rate
18    sheet, correct?
19         A    That's correct.
20         Q    Are you actually billing CoreCivic the
21    rates set out in your fee schedule?
22         A    Yes.
23         Q    But you testified earlier that you
24    haven't actually submitted an invoice to Struck Love
25    for this case yet, correct?
```

```
                                                           Page 39
 1                     J. PENN, M.D.
 2        A     That's correct.
 3        Q     And you don't know, as we sit here today,
 4   how much time you've billed on this case, correct?
 5        A     That's fair, yes.
 6        Q     And this rate sheet says that you require
 7   a $5,000 retainer.  Did CoreCivic or Struck Love pay
 8   you that $5,000 for this case?
 9        A     No, they did not.
10        Q     Why not?
11        A     I think because of the time involved,
12   like how quickly this was happening.  They had a
13   deadline.
14              And I've done that before, where -- like,
15   for example, when I worked for the U.S. Attorney's
16   Office or like in a Department of Justice case or
17   when I work for a state attorney general's office or
18   other state or county entity.  I've had cases for
19   Harris County, Montgomery County Attorney's Office,
20   different county attorneys, I typically -- even
21   though I have the retainer, that's more for private
22   law firms.  But when it's state or government, I
23   don't typically -- I basically like waive the
24   retainer amount.
25        Q     Okay.  You're aware that Struck Love is a
```

Page 40

1                    J. PENN, M.D.
2    private law firm, correct?
3         A    Yes.
4         Q    And you're aware that CoreCivic is a
5    corporation, correct?
6         A    Yes.
7         Q    You're aware that there's no government
8    entity that's a party in this case, correct?
9         A    Yeah, to the best of my knowledge, that's
10   fair.
11              (Plaintiffs' (Penn) Deposition
12         Exhibit No. 2 was marked for the record.)
13              MS. SANDLEY:  Let take a look at
14         Exhibit 2, and the Bates number is CCBVA
15         33185.  Okay.  Vidhi, can we zoom out
16         just a little bit.
17   BY MS. SANDLEY:
18        Q    We're going to mark this as Exhibit 2.
19             Dr. Penn, have you seen this document
20   before?
21        A    I'm having trouble reading it.
22        Q    We can zoom in.  I want you to be able to
23   see the signature at the bottom.  Let's zoom in now.
24             So, Dr. Penn, can read it?
25        A    I'm sorry.  Is there a way to scroll

D I S C L O S U R E

STATE OF GEORGIA    )   DEPOSITION OF:

FULTON COUNTY       )   JOSEPH V. PENN, M.D.

    Pursuant to Article 8.B of the Rules and Regulations of the Board of Court Reporting of the Judicial Council of Georgia, I make the following disclosure:

    I am a Georgia Certified Court Reporter. I am here as a representative of TSG Reporting.

    TSG Reporting was contacted by the offices of Southern Poverty Law Center to provide court reporting services for this deposition. TSG Reporting will not be taking this deposition under any contract that is prohibited by O.C.G.A. 15-14-37 (a) and (b).

    TSG Reporting has no contract or agreement to provide court reporting services with any party to the case, or any reporter or reporting agency from whom a referral might have been made to cover the deposition.

    TSG Reporting will charge its usual and customary rates to all parties in the case, and a financial discount will not be given to any party in this litigation.

    Dated: March 18, 2022

*Tanya L. Verhoven-Page*
_____
Tanya L. Verhoven-Page,
Certified Court Reporter,
B-1790.

1

2          C E R T I F I C A T E

3

4   STATE OF GEORGIA:

5   FULTON COUNTY:

6

7           I hereby certify that the foregoing
8       deposition was reported, as stated in the
9       caption, and the questions and answers
10      thereto were reduced to written page
11      under my direction, that the preceding
12      pages represent a true and correct
13      transcript of the evidence given by said
14      witness.
15          I further certify that I am not of
16      kin or counsel to the parties in the
17      case, am not in the regular employ of
18      counsel for any of said parties, nor am I
19      in any way financially interested in the
20      result of said case.
21          Dated this 18th day of March, 2022.
22
23          *Tanya L. Verhoven-Page*
            _____
            Tanya L. Verhoven-Page,
24          Certified Court Reporter,
            B-1790.
25