# Exhibit 2

(This document contains a publicly available version of Restricted Exhibit 2, which has been designated CONFIDENTIAL).

**AGREEMENT BETWEEN STEWART COUNTY**
**AND**
**CORRECTIONS CORPORATION OF AMERICA**

**This Agreement** is hereby entered into between **Corrections Corporation of America (CCA)** and **Stewart County, Georgia (the County)** as of the 27th day of June 2006.

**WHEREAS,** the County entered into an Intergovernmental Services Agreement (IGSA) with the Bureau of Immigration and Customs Enforcement (ICE) dated June , 2006, Agreement # DRO-IGSA-06-0003 to house federal inmates, a copy of which is attached hereto as Exhibit A;

**WHEREAS**, ICE and other federal entities need inmate housing in excess of the County's available space;

**WHEREAS**, CCA owns Stewart Detention Center (Facility) in Georgia and desires to house federal inmates at the Facility;

**WHEREAS**, the County desires to utilize CCA's Facility to supplement services rendered to ICE and other federal entities pursuant to the IGSA.

**NOW THEREFORE**, the parties agree as follows:

1.    Upon reaching population capacity in its own facility and upon direction of a federal entity pursuant to the IGSA, the County will house any federal inmates received pursuant to the IGSA in CCA's Facility unless CCA does not accept said inmates in accordance with paragraph 3 below. The County shall have the option, at its sole discretion subject to Paragraph 3, to house such federal inmates at CCA's Facility prior to reaching capacity in its own facility.

2.    For federal inmates housed in CCA's Facility pursuant to this Agreement, CCA shall provide all required services in compliance with the terms of the IGSA.

3.    CCA shall not be obligated to accept federal inmates at the Facility if space is not available or if the terms of the IGSA are not commercially reasonable as determined by CCA which determination shall be made at CCA's sole discretion. The County will not amend, terminate or otherwise change the terms of the IGSA without CCA's prior written approval. The County will use its best efforts and work in good faith to maintain the IGSA with terms and conditions agreeable to both the County and CCA.

1

4.      Only prisoners housed by CCA pursuant to the IGSA to which the County is a party shall be considered inmates for the purposes of this Agreement.

5.      The County will pay CCA all funds received pursuant to the IGSA less an administrative fee of $.850 per inmate per day.  CCA agrees to submit the necessary documentation for payment to the County as set forth in the IGSA.  The County will pay amounts due to CCA within ten (10) working days after receipt of funds.  To the extent allowed under the IGSA, CCA will be the designated Payee and funds due pursuant to the IGSA will be paid directly to CCA.  In that instance, CCA will deduct the administrative fee and forward that amount to the County within ten (10) working days of receipt of funds.

6.      During any month in which the average daily population for that month is between 1 and 35, CCA will pay the County an additional sum of $1,700.00 to cover the County's administrative costs.

7.      Upon execution of this Agreement, CCA shall pay the County a one-time sum of $10,000.00 in consideration for initial costs associated with the negotiation and execution of the IGSA.

8.      (a) CCA shall indemnify, defend and save harmless the County, its agents, employees, and representatives from and against any and all suits, actions, claims, demands, damages or losses arising from the acts or omissions of CCA, its agents, employees, representatives or subcontractors. CCA shall, at its own cost and expense, defend any such claim and any suit, action or proceeding which may be commenced thereunder, and shall pay any and all judgments which may be recovered in any such suit, action or proceeding, and any and all expense, including, but not limited to, costs, attorneys' fees and settlement expenses which may be incurred therein.  The County may elect, at its own expense, to retain separate counsel, in addition to that provided by CCA.  CCA's indemnification obligations hereunder shall not be construed to extend to any claim arising prior to CCA's operation of the Facility or any claim challenging the validity of a conviction or sentence.  In no event shall this provision be construed to extend CCA's indemnification obligation to any suit, action, claim, demand, damage or loss arising from the acts or omissions of the County, its agents, employees, representatives or subcontractors, other than CCA.

        (b) Such indemnity set forth above shall include provision of indemnity for any claim or lawsuit originating from or arising out of any negligent act or omission regarding CCA's performance of duties under the IGSA between Stewart County, Georgia and ICE as such duties are set forth in the following sections of the IGSA: Performance (according to standards specified in the IGSA), Transportation Services, Guard Services, Medical Services (only as such section is applicable to CCA and specifically excluding the acts or omissions of USPHS) and Receipt and Discharge of Federal Detainees.

2

9.     CCA shall name the County as an additional insured on its general liability policy. CCA shall provide the County with a copy of the declaration page of the policy within thirty days of commencement of this Agreement.

10.    The term of this Agreement shall be for a period commencing on July 1, 2006 and expiring on December 31, 2011. The parties may renew the Agreement for additional four-year periods upon mutual written agreement.

11.    Either party may terminate this Agreement if a breach of this Agreement by the other party remains uncured for more than sixty (60) days after written notice.

12.    The failure of performance of any of the terms and conditions of this Agreement resulting from acts of God, war, civil insurrection or riot shall not be a breach.

13.    The provisions of this Agreement are for the sole benefit of the parties hereto and shall not be construed as conferring any rights on any other person or entity.

14.    This Agreement shall not be altered, changed or amended except in writing executed by both parties.

15.    This Agreement incorporates all the agreements, covenants and understandings between the parties. No prior contract or understandings, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in this Agreement.

16.    All notices sent pursuant to this Agreement shall be sent certified mail, return receipt requested to:

County:  Chairman of Stewart County Commission
         Clerk of Stewart County Commission
         Stewart County Courthouse
         Lumpkin, Georgia 31815

CCA:   G. A. Puryear IV, General Counsel
       Corrections Corporation of America
       10 Burton Hills Boulevard
       Nashville, TN 37215

17.    No waiver of any breach of any of the terms or conditions of this Agreement shall be a waiver of any other or subsequent breach; nor shall any waiver be valid or binding unless the same shall be in writing and signed by the party alleged to have granted the waiver.

**STEWART COUNTY, GEORGIA**

BY: _John S Patterson_

ITS: _Chairman, Stewart County Board of Commissioners_

**CORRECTIONS CORPORATION OF AMERICA (CCA)**

BY: _____

ITS: _UP, Federal Customer Relations_

4