# Exhibit 26

# (REDACTED)

This Exhibit contains the specific pages of the deposition Plaintiffs are referencing. The entire deposition was separately filed in the record pursuant to LR 5.1 and the M.D. Ga. CM/ECF Administrative Procedures Manual.

Page 1

1               UNITED STATES DISTRICT COURT

                          for the

2               MIDDLE DISTRICT OF GEORGIA

3

4

5        WILHEN HILL BARRIENTOS ET AL.,

6

7               Plaintiffs,          CIVIL ACTION FILE NO.:

8          vs.                           4:18-CV-00070-CDL

9

10

         CORECIVIC, INC,

11

12               Defendant.

13

14

15                  REMOTE DEPOSITION OF

16                    SUSAN HUFFMAN

17                   JULY 14, 2021

18                    9:00 AM EST

19             SOUTHERN POVERTY LAW CENTER

20          201 ST. CHARLES AVENUE SUITE 2000

21             NEW ORLEANS, LOUISIANA 70115

22

23

24

25         ANGELA A. SANDERS, CCR 6607-8767-7573-9392

Susan Huffman                                July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 2

```
 1              REMOTE APPEARANCES OF COUNSEL
 2     ON BEHALF OF THE PLAINTIFFS:
 3              MEREDITH STEWART, ESQUIRE
                SOUTHERN POVERTY LAW CENTER
 4              201 ST. CHARLES AVENUE SUITE 2000
                NEW ORLEANS, LA 70115
 5              Office: (504) 615-3334
                E-mail: MEREDITH.STEWART@SPLCENTER.ORG
 6
 7
       ON BEHALF OF THE DEFENDANT:
 8
                JONATHAN EDWARDS, ESQUIRE
 9              ALSTON & BIRD, LLP
                1201 W. PEACHTREE STREET SUITE 38-128
10              ATLANTA, GEORGIA 30309
                Office:  (404) 881-7000
11              E-mail:  JONATHAN.EDWARDS@ALSTON.COM
12
13              RACHEL LOVE, ESQUIRE
                STRUCK LOVE BOJANOWSKI & ACEDO, PLC
14              3100 WEST RAY ROAD SUITE 300
                CHANDLER, ARIZONA 85012
15              Office:  (480) 420-1600
                E-mail:  RLOVE@STRUCKLOVE.COM
16
17     ALSO PRESENT REMOTELY:
18              CAITLYN SANDLEY, ESQUIRE
19              VIDHI BAMZAI, ESQUIRE
20              JACKIE ARANDA OSORNO, ESQUIRE
21              ALAN HOWARD, ESQUIRE
22              JESSICA EVERETT-GARCIA, ESQUIRE
23              ALEXANDER CHOSID, TRINITY SERVICES GROUP
24              LEONORA RENDA, CENTRAL ARIZONA DIETETIC
                ASSOCIATION
25
```

Susan Huffman                                          July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 22

1    knowledge of the work program, including recruitment and

2    discipline of detained workers?

3         A    Yes.

4         Q    And did you make any effort to educate

5    yourself on the Stewart specific topics within Topics 2

6    and 3?

7         A    I did not.

8         Q    Explain why you are the most knowledgeable

9    person at Trinity to provide testimony on Topics 2 and

10   3.

11        A    Because I've been working in this contract for

12   a very long time.

13        Q    When you say "this contract," you're referring

14   to the Trinity-CoreCivic contract?

15        A    Yes.

16        Q    And when you say you've been working in this

17   contract for a long time, can you explain what you mean

18   by that.

19        A    I've been working with CoreCivic for many

20   years.  I mean, I've been managing this contract.

21        Q    Okay.  Your current employer is Trinity

22   Services Group; correct?

23        A    Yes.

24        Q    And have you ever worked directly with

25   CoreCivic or for CoreCivic?

Susan Huffman
July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 23

1      A    I have not.

2      Q    And what is your current title at Trinity?

3      A    Regional vice president.

4      Q    How long have you held that title?

5      A    Seven years, eight years.

6      Q    What are your duties as regional vice

7   president?

8      A    I manage the agreement between Trinity and

9   CoreCivic.

10      Q    And what is managing the agreement entail?

11      A    We provide food services to their facilities,

12   and I have general oversight of the contract.

13      Q    Have you held other positions at Trinity,

14   other than regional vice president?

15      A    Yes.

16      Q    What positions have you held there?

17      A    I was the director of projects, and I was a

18   district manager.  And I have been a food service

19   director.

20      Q    Okay.  So prior to being regional vice

21   president, which title did you hold at Trinity?

22      A    Director of projects.

23      Q    And how long did you have that title?

24      A    Probably about five years or so.

25      Q    What were your duties as director of projects?

Susan Huffman                                                  July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 24

1          A    I would -- I oversaw new program

2    implementation or initiatives and roll it out for the

3    region.  I reported directly to the RVP.

4          Q    Can you repeat the last thing you said.

5          A    I would report in to the RVP.

6          Q    What is RVP?

7          A    The regional vice president.

8          Q    And that's the job you currently hold;

9    correct?

10         A    Correct.

11         Q    Who was regional vice president at the time

12   you were director of projects?

13         A    It was Dave Ponce.

14         Q    And as director of projects, were your duties

15   related to CoreCivic?

16         A    Yes.

17         Q    Were they related to the Trinity and CoreCivic

18   contract?

19         A    Yes.

20         Q    So prior to serving as director of projects,

21   what title did you have at Trinity?

22         A    I was a district manager.

23         Q    Where were you a district manager?

24         A    In the southeast.

25         Q    How long did you hold that title?

Susan Huffman
Barrientos, Wilhen Hill v. CoreCivic Inc.
July 14, 2021

Page 25

1          A      Seven years.

2          Q      And what were your duties as the district

3     manager?

4          A      I oversaw a district, doing food service.

5          Q      And just educate me.  What does overseeing a

6     district to do food service involve?

7          A      Well, we provided food service in a

8     correctional environment.

9          Q      And, as district manager, were your duties

10    related to CoreCivic?

11         A      Yes.

12         Q      They were related to the CoreCivic-Trinity

13    contract?

14         A      Yes.

15         Q      Did your duties exclusively relate to

16    CoreCivic?

17         A      Yes.

18         Q      And, prior to district manager, did you have

19    another title at Trinity?

20         A      I was a food service director.

21         Q      How long were you a food service director?

22         A      Probably five, six years.

23         Q      Where were you a food service director?

24         A      At Martin Correctional.

25         Q      Where is Martin Correctional?

Page 64



Susan Huffman
July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 65



Susan Huffman                                                    July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 66



Susan Huffman                                    July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.



Page 67

Susan Huffman                                    July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 68



Susan Huffman                                        July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 161



Susan Huffman                                      July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 230

1    creation.  Per the contract, one of Trinity's duties is
2    to create menus for the facility; correct?
3         A    Yes.
4         Q    And although Trinity creates the menus,
5    CoreCivic has final approval of them?
6         A    They're reviewed with CoreCivic, and then --
7    yes.  Yep.
8         Q    And how does the final approval process work?
9              MR. EDWARDS:  Objection, vague.
10             You can answer.
11             THE WITNESS:  The menu is presented and
12        discussed and reviewed, to start with, in an
13        e-mail.  And then it could be a conference call or
14        something to answer any questions.
15   BY MS. STEWART:
16        Q    But, ultimately, it's CoreCivic that has to
17   sign off on the menu?
18        A    So every agreement is a little bit different.
19   And so it may require, you know, CoreCivic's customer
20   approval.  And I'm not sure if that's a courtesy or a
21   requirement.
22        Q    Okay.  And has CoreCivic ever refused to give
23   final approval, to your knowledge?
24        A    So, no, that wouldn't necessarily happen.
25   Discussions would had to, you know, get the menu to what

Susan Huffman
Barrientos, Wilhen Hill v. CoreCivic Inc.
July 14, 2021

Page 231

1    CoreCivic wanted or what the customer was asking for.

2        Q    Okay.  So can CoreCivic, for example, say,

3    "serve less chicken this week."

4        A    No, that's not the way that our agreement

5    works.  We serve the menu.  The menu's agreed upon.  So

6    no, they wouldn't say that.

7        Q    Okay.  But they ultimately do have to agree

8    upon the menu that is served at Stewart?

9        A    Yes.

10        Q    Are the menus at Stewart also approved by ICE?

11        A    I don't know if they're approved.  That's

12    CoreCivic's agreement with ICE.  I, you know, said

13    earlier that it's -- I don't know if it's a courtesy or

14    if it has to be approved.

15        Q    So you don't know whether ICE approves the

16    menus that Trinity creates for Stewart?

17        A    I do not know that.  My agreement is with

18    CoreCivic.  You know, my contract is with CoreCivic; not

19    with ICE.

20        Q    Have you ever gotten feedback directly from

21    ICE about the Trinity menu at Stewart?

22        A    No.

23        Q    Have you ever heard from CoreCivic that ICE

24    gave CoreCivic feedback about a Trinity menu at Stewart?

25        A    I don't recall exactly the timing; but there

Susan Huffman                                                     July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 232

1    were some requested changes from ice, yes.

2          Q     When did that happen, roughly?

3          A     I would be really guessing in maybe 2012, '13.

4          Q     Okay.  Other than those times -- that time in

5    2012 or '13, are there any other times when you've heard

6    from CoreCivic that ICE gave feedback about the menus at

7    Stewart?

8          A     No.

9          Q     And, per the contract, the food products are

10   supplied by CoreCivic; is that correct?

11         A     No.

12         Q     Okay, who supplies the food products?

13         A     Trinity.

14         Q     Okay.  And so what does "supplied" mean in the

15   context of the contract?  Does Trinity actually purchase

16   the products?

17         A     Yes.

18         Q     And CoreCivic reimburses Trinity for the cost

19   of the food?

20         A     CoreCivic pays Trinity a price per meal.

21         Q     And are the costs of food incorporated in the

22   price-per-meal rate?

23         A     Yes.

24         Q     And it's incorporated in the price per --

25   well -- scratch that.

Susan Huffman                                    July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 233

1          Is Trinity receiving kind of a direct,

2     one-to-one reimbursement via the price-per-meal rate for

3     the cost of food?

4          A    No.

5          Q    Does the price-per-meal rate build in a profit

6     for Trinity?

7          A    Yes.

8          Q    And does Trinity choose the food vendors?

9          A    Yes.

10         Q    Does CoreCivic have the right to reject or

11     request certain vendors?

12         A    Yes.

13         Q    And who creates the menus -- or who, from

14     Trinity, creates the menus for Stewart?

15         A    So the menu for Stewart was created -- I don't

16     know exactly who created the original one, but our

17     dietitian reviews it.  I was involved in menu planning.

18         Q    Okay.  So you're involved in menu creation?

19         A    Menu planning, yes.

20         Q    Okay.  And I think you also said that

21     Trinity's dietitian is involved in menu planning?

22         A    Correct.

23         Q    Is anyone else from Trinity involved in menu

24     planning?

25         A    Not really, uh-uh.

Susan Huffman                                           July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 235

1    the CoreCivic facilities, or does it vary from facility

2    to facility?

3           A     It's different in every -- in most facilities.

4           Q     And the registered dietitian is required to

5    certify the menus; correct?

6           A     Yes.

7           Q     And does the dietitian conduct a nutritional

8    analysis of the menus?

9           A     Yes.

10          Q     How often is that nutritional analysis

11   conducted?

12          A     I don't recall if Stewart is -- well, let

13   me -- annually; minimally, annually.

14          Q     Okay.  So the dietitian reviews the Stewart

15   menus annually?

16          A     Yes.  It could be semiannually but, yeah, at

17   least once a year.

18          Q     Are you familiar with the dietitian's process

19   for reviewing the menus for nutritional adequacy?

20          A     They run it through our program.

21          Q     And what's that program?

22          A     CBORD.

23          Q     CBORD?

24          A     CBORD, yes.

25          Q     Are you familiar with the CBORD program?

Susan Huffman
Barrientos, Wilhen Hill v. CoreCivic Inc.

July 14, 2021

Page 243

1          questions, going back to the contract provision.

2          So you can close the last exhibit opened.  You can

3          open up Exhibit 2.  I'm going to be referring to

4          section 5 in the 2010 contract, but my questioning

5          is about the price-per-meal rate.  So it's possible

6          you will need to refer to the contract to answer

7          these questions, but go ahead and open it if you'd

8          like.

9     BY MS. STEWART:

10         Q    What is the price-per-meal rate?

11         A    It varies by facility.

12         Q    I guess, generally, what is it?

13         A    It varies by facility.  I can't give you a

14    specific number.

15         Q    I'm not asking for a specific number.  I'm

16    just asking, generally, what constitutes the

17    price-per-meal rate?

18         A    It's the food and the service.

19         Q    Okay.  So the price-per-meal rate is -- I

20    guess I'll ask a more poignant question.

21              The price-per-meal rate is the rate that

22    Trinity charges to CoreCivic for every meal it provides

23    to detained workers at Stewart?

24         A    Correct.

25         Q    Okay.  And when you say it's food and

Susan Huffman
Barrientos, Wilhen Hill v. CoreCivic Inc.

July 14, 2021

Page 244

1    services, do you mean that the price-per-meal rate

2    includes the cost of Trinity's labor and the cost of

3    food?

4         A    Yes.

5         Q    And I think I -- let me clarify my question.

6              The price-per-meal rate is the price, per

7    meal, that Trinity charges CoreCivic for every meal it

8    provides to detained people at Stewart Detention Center;

9    correct?

10        A    Yes.

11        Q    And other than Trinity's labor costs and

12   Trinity's food costs, are there other factors that are

13   included in the price-per-meal rate?

14        A    It would be kitchen, you know -- some kitchen

15   supplies, cleaning supplies, some paper supplies.

16        Q    Anything else?

17        A    Nothing really, no.

18        Q    And I think you testified earlier that

19   Trinity's profit is also built into the price-per-meal

20   rate; correct?

21        A    Yes.

22        Q    And did the way the price-per-meal rate was

23   calculated in 2010 change in the 2020 contract?

24        A    No, not really.

25        Q    And how does Trinity calculate its labor costs

Susan Huffman                                    July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 245

1   for Stewart in order to calculate the price-per-meal
2   rate?
3        A    So, I mean, it's the dollars that the labor
4   would be.  I mean, we have a performer, like most
5   companies.  And we input the information, and it gives
6   us a price point.
7        Q    And the price point for Trinity's labor costs
8   relies on an assumption about the number of workers that
9   CoreCivic will provide to the Stewart kitchen?
10        A    Correct.
11        Q    And Trinity is able to make the assumption
12   about how many workers CoreCivic will provide to the
13   Stewart kitchen because CoreCivic is contractually
14   required to provide a set number of detained workers to
15   work in the kitchen?
16        A    Of workers, yes.
17        Q    What, if any, aspect of the price-per-meal
18   rate is negotiated with CoreCivic?
19        A    It would be the labor portion or the food
20   portion.
21        Q    Both of those portions are negotiable?
22        A    They're discussed, yeah.
23        Q    And the price-per-meal rate can be adjusted
24   per the contract; correct?
25        A    Yes.

Page 260

1              D I S C L O S U R E

2     STATE OF GEORGIA

      COUNTY OF GWINNETT

3

4              Pursuant to Article 10.B of the rules and

5     regulations of the Board of Court Reporting of the

6     Judicial Council of Georgia, I make the following

7     disclosure:

8              I am a Georgia Certified Court Reporter.  I am

9     here as an independent contractor for Veritext Legal

10    Solutions.  Veritext Legal Solutions was contacted by

11    the Southern Poverty Law Center to provide court

12    reporting services for this deposition.  Veritext Legal

13    Solutions will not be taking this deposition under any

14    contract that is prohibited by O.C.G.A. 15-14-37(a) and

15    (b).  Veritext Legal Solutions has no contract/agreement

16    to provide court reporting services with any party to

17    the case, any counsel in the case, or any reporter or

18    reporting agency from whom a referral might have been

19    made to cover this deposition.

20

21

22

23              (Continued on next page.)

24

25

Page 261

1              Veritext Legal Solutions will charge its usual

2      and customary rates to all parties in the case, and a

3      financial discount will not be given to any party to

4      this litigation.

5

6              This, the 28th day of July 2021.

7

8

9                               ANGELA A. SANDERS

10                            Certified Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Susan Huffman                          July 14, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 262

C E R T I F I C A T E

STATE OF GEORGIA

COUNTY OF GWINNETT


        I hereby certify that the foregoing transcript
was taken down and recorded by me, as stated in the
caption; the colloquies, statements, questions, and
answers thereto were reduced to typewriting under my
direction and supervision; and the transcript is a true
and correct record of the testimony/evidence given, to
the best of my ability.
        I further certify that I am not a relative or
employee or attorney or counsel of any of the parties,
nor am I a relative or employee of such attorney or
counsel, nor am I financially interested in the action.


        This, the 28th day of July 2021.


                              ANGELA A. SANDERS
                              Certified Court Reporter