# **Exhibit 42**

# (REDACTED)

This Exhibit contains the specific pages of the deposition Plaintiffs are referencing. The entire deposition was separately filed in the record pursuant to LR 5.1 and the M.D. Ga. CM/ECF Administrative Procedures Manual.



Deposition of:

# 30(b)(6) Marquita Crawford, Vol. II

*August 23, 2021*

In the Matter of:

# Barrientos, Wilhen Hill v. CoreCivic Inc.

Veritext Legal Solutions

800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Page 263

1          IN THE UNITED STATES DISTRICT COURT

2       MIDDLE DISTRICT OF GEORGIA COLUMBUS DIVISION

3    _____

4    WILHEN HILL BARRIENTOS, GONZALO

5    BERMUDEZ GUTIÉRREZ, and KEYSLER

6    RAMON URBINA ROJAS, individually

7    and on behalf of all others

8    similarly situated,

9            Plaintiffs,

10      v.                          Case No.

11   CORECIVIC, INC.,              4:18-cv-00070-CDL

12           Defendant.

13   _____

14             VIDEOCONFERENCE DEPOSITION OF

15              MARQUITA CRAWFORD VOLUME II

16   DATE:         Monday, August 23, 2021

17   TIME:         9:36 a.m.

18   LOCATION:     Remote Proceeding- GA

19                 146 CCA Road

20                 Lumpkin, Georgia, 31815

21   REPORTED BY:  Daniel Almekinder, Notary Public

22   JOB No.:      4760608

23

24

25

Page 264

1                    A P P E A R A N C E S

2     ON BEHALF OF PLAINTIFFS WILHEN HILL BARRIENTOS, ET

3     AL.:

4          MEREDITH STEWART, ESQUIRE (by videoconference)

5          Southern Poverty Law Center

6          233 Peachtree Street Northeast, Suite 2150

7          Atlanta, GA, 30303

8          meredith.stewart@splcenter.org

9          (504) 486-8982

10

11         REBECCA CASSLER, ESQUIRE (by videoconference)

12         Southern Poverty Law Center

13         P.O. Box 1287

14         Decatur ,GA 30031

15         rebecca.cassler@splcenter.org

16

17         CAITLIN C.J. SANDLEY, ESQUIRE (by

18     videoconference)

19         Southern Poverty Law Center

20         400 Washington Avenue

21         Montgomery, AL 36104-4344

22         cj.sandley@splcenter.org

23

24

25

```
                                                    Page 265

 1              A P P E A R A N C E S (Cont.)

 2     ON BEHALF OF PLAINTIFFS WILHEN HILL BARRIENTOS, ET

 3     AL.(CONT.):

 4          VIDHI BAMZAI, ESQUIRE (by videoconference)

 5          Southern Poverty Law Center

 6          233 Peachtree Street Northeast, Suite 2150

 7          Atlanta, GA, 30303

 8          vidhi.bamzai@splcenter.org

 9

10          JACKIE ARANDA OSORNO, ESQUIRE (by

11     videoconference)

12          Southern Poverty Law Center

13          233 Peachtree Street Northeast, Suite 2150

14          Atlanta, GA, 30303

15          jackie.aranda@splcenter.org

16

17          ALAN B. HOWARD, ESQUIRE (by videoconference)

18          Perkins Coie LLP

19          1155 Avenue of the Americas, 22nd Floor

20          New York ,NY 10036

21          ahoward@perkinscoie.com

22

23

24

25
```

Case 4:18-cv-00070-CDL   Document 238-46   Filed 07/01/22   Page 6 of 21

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 266

1              A P P E A R A N C E S (Cont.)

2      ON BEHALF OF PLAINTIFFS WILHEN HILL BARRIENTOS, ET

3      AL.(CONT.):

4           JESSICA L. EVERETT-GARCIA, ESQUIRE (by

5      videoconference)

6           Perkins Coie LLP

7           2901 North Central Avenue, Suite 2000

8           Phoenix, AZ 85012-2740

9           jeverettgarcia@perkinscoie.com

10

11     ON BEHALF OF DEFENDANT CORECIVIC, INC.:

12          EDEN G. COHEN, ESQUIRE (by videoconference)

13          Struck Love Bojanowski & Acedo PLC

14          3100 West Ray Road, Suite 300

15          Chandler, AZ 85226

16          ecohen@strucklove.com

17

18     ON BEHALF OF WITNESS TRINITY SERVICES GROUP, LLC:

19          JONATHAN T. EDWARDS, ESQUIRE (by videoconference)

20          Alston & Bird LLP

21          1201 West Peachtree Street

22          One Atlantic Center, Suite 4900

23          Atlanta, GA 30309

24          jonathan.edwards@alston.com

25

Case 4:18-cv-00070-CDL   Document 238-46   Filed 07/01/22   Page 7 of 21

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 267

1                    A P P E A R A N C E S (Cont.)

2      ON BEHALF OF WITNESS TRINITY SERVICES GROUP, LLC

3      (CONT.):

4            ALEXANDER CHOSID, ESQUIRE (by videoconference)

5            TKC Holdings, Inc.

6            1260 Andes Boulevard

7            St. Louis, MO 63132

8            alex.chosid@tkcholdings.com

9

10     ALSO PRESENT:

11           Leonora Renda, Plaintiff's Expert (by

12     videoconference)

13           Scott Long, Veritext Observer (by

14     videoconference)

15

16

17

18

19

20

21

22

23

24

25

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 287

1    it.

2         Q    Has your last name changed in the past ten

3    years?

4         A    Yes.

5         Q    Was it previously Lyles?

6         A    Yes.

7         Q    And what year did it change to Crawford?

8         A    My anniversary is today, so 2014, I think.

9    I think it was 2014 is when I changed my name.

10        Q    Congratulations on your anniversary.

11        A    Thank you.

12        Q    What is your educational background?

13        A    I am -- I graduated from high school.  Yeah.

14   Also, I did a year in college.

15        Q    And do you speak any language other than

16   English?

17        A    No.

18        Q    Going back to your last name, did you use

19   the last name Lyles at work later than 2014?

20        A    Some people still called me by Lyles just

21   because when I started working here, that was my last

22   name.  Yes.  But legally, I'm Crawford.

23        Q    And did 2014, you changed it with Trinity to

24   Crawford?

25        A    Yes.

30(b)(6) Marquita Crawford, Vol. II         August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 288

1        Q    Have you ever worked for CoreCivic?

2        A    No.

3        Q    And what is your current title at Trinity?

4        A    Food Service Director.

5        Q    How long have you held that title?

6        A    Five years.

7        Q    And prior to being Food Service Director at

8    Trinity, what were you doing?

9        A    I was the Assistant Food Service Director.

10       Q    How long were you Assistant Food Service

11   Director?

12       A    Two years.

13       Q    And you were Assistant Food Service Director

14   for Trinity at Stewart?

15       A    Yes.

16       Q    And prior to being Assistant Food Service

17   Director at Stewart, what were you doing?

18       A    I was a Food Service Supervisor for Trinity.

19       Q    At Stewart?

20       A    Yes.

21       Q    How long were you a Food Service Supervisor?

22       A    Four to five years.

23       Q    And other than Food Service Director,

24   Assistant Food Service Director, Food Service

25   Supervisor, have you held any other positions at

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 289

1      Trinity?

2          A     No.

3          Q     So you have been employed by Trinity at

4      Stewart for approximately 12 years?

5          A     Yes.  Almost 13.

6          Q     And what are your duties and

7      responsibilities as Food Service Director?

8          A     I oversee the food program here.  The

9      purchasing.  The quality of the food.  I direct all of

10     my workers.  Delegate jobs to my supervisors.  And

11     financial reports.

12         Q     Anything else?

13         A     Yes.  It's -- it's a lot more, but those are

14     the basics.

15         Q     And what were your job duties as the

16     Assistant Food Service Director?

17         A     Some of the same things.  Most of the same

18     things.  Ordering foods.  Making sure food is good.

19     The quality of the food is good.  Food safety.  Doing

20     orientation with the trainees.  Training them.  Those

21     sorts of things.

22         Q     As the Food Service Director now, do your

23     job duties include orientation and training of

24     detained workers?

25         A     Yes.

Page 290

1      Q    And what were your job duties and

2    responsibilities as a Food Service Supervisor?

3      A    Delegating jobs to the detainee workers.

4    Cleaning the kitchen.  Assigning duties.  Just

5    completing paperwork.  Supervising the line and

6    supervising the production area.  And ensuring food

7    safety.

8      Q    All three positions you've held at Trinity

9    have required you to ensure food quality and safety?

10     A    Yes.

11     Q    And all three positions that you've held

12   with Trinity at Stewart have involved interactions

13   with the volunteer work program?

14     A    Yes.

15     Q    Is there anyone other than you who has

16   primary responsibility for overseeing Trinity's

17   operations at Stewart?

18     A    My assistant.

19     Q    Who is your assistant?

20     A    Derico Countryman.  D-E-R-I-C-O Countryman,

21   C-O-U-N-T-R-Y-M-A-N.

22     Q    What is Derico's title?

23     A    He's the Assistant Food Service Director.

24     Q    How long has he been with Trinity?

25     A    Three years.

Case 4:18-cv-00070-CDL   Document 238-46   Filed 07/01/22   Page 12 of 21

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 291

1        Q     Do you know if Derico Countryman used to
2     work for CoreCivic?
3        A     He did.
4        Q     Do you know what his position was with
5     CoreCivic?
6        A     He was a counselor.
7        Q     Have you worked at any Immigrant Detention
8     Facilities other than Stewart?
9        A     I have not worked, but I have helped out at
10    other facilities.
11       Q     What other facilities have you helped out
12    at?
13       A     Adams County.
14       Q     Is that located in Louisiana?
15       A     It's in Mississippi.
16       Q     Adams County, Mississippi.  How long were
17    you at Adams County?
18       A     Two weeks.
19       Q     And what were you doing there?
20       A     Assisting with the food service program.
21       Q     Is there a work program at Adams County?
22       A     It is.
23       Q     Did your two weeks of work at Adams County
24    involve interactions with the detained workers?
25       A     Yes.

30(b)(6) Marquita Crawford, Vol. II        August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 292

1          Q     Have you ever worked at a correctional

2     facility?

3          A     No.   Currently I work at one, but not

4     previously.

5          Q     My question is more have you ever worked for

6     a correctional facility that houses individuals

7     convicted of crimes?

8          A     No.

9          Q     Okay.   I want to ask you some questions

10    about Trinity staffing at Stewart.   How many employees

11    does Trinity employ to work in the Stewart kitchen?

12         A     We have a staffing pattern of eight Trinity

13    supervisors.

14         Q     In addition to Food Service Director?

15         A     In addition to Food Service Director and

16    Assistant Food Service Director.

17         Q     Okay, Trinity then employs 10 people to work

18    in the kitchen at Stewart?

19         A     Yes.

20         Q     Eight Food Service Supervisors, an Assistant

21    Food Service Director, and a Food Service Director.

22    Is that right?

23         A     That's correct.

24         Q     And how many Trinity staff work on each

25    shift?

Page 295

1    Q    So there's always at least one kitchen

2    officer in the kitchen?  Correct?

3    A    Correct.

4    Q    And depending on the number of detained

5    workers in the kitchen at any given time, that informs

6    how many Trinity staff you need there?

7    A    Yes.

8    Q    And that's because the Trinity staff

9    supervise the detained workers?

10   A    Correct.

11   Q    Have there been occasions when the total

12   Trinity staff, which we determined earlier was ten

13   people, was less than ten people?

14   A    What are you asking?  I'm sorry.

15   Q    I'm asking if there are times when Trinity a

16   short-staffed such that there are --

17   A    Yes.

18   Q    -- less than ten people?

19   A    Yes.

20   Q    And how often does that happen?

21   A    It has happened as often as we -- we don't

22   have any workers.  If we don't have the staff, you

23   know, of course, we'll be short-staffed.  And if we

24   are short-staffed, we would have -- we would ask for

25   someone to come in from another facility to help out.

Page 317

1        Q    And you communicated over that e-mail

2    address?

3        A    No.

4        Q    Why not?

5        A    I didn't have a need to.

6        Q    Do you know if other Trinity employees use

7    that e-mail address to communicate?

8        A    I don't.



Page 335



BY MS. STEWART:

Q    Have you ever reported it in real-time to CoreCivic like Mr. Marrero did here?

A    Not exactly like he has there, but I have made them aware when we're short.

Q    And the goal of giving that information is

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 336

1        so that you can get more detained workers in the

2        kitchen?

3              A      Yes.

4              Q      And prevent any delays in the meal service?

5              A      That's correct.

6              Q      You testified earlier that as Food Service

7        Director, you are responsible for tracking the

8        attendance of detained workers in the kitchen.

9        Correct?

10             A      Yes.

11             Q      And you do that on the 11-1K form.  Correct?

12             A      On the 11-1K form.  Yes.

13             Q      SO when you realize that the detained

14       workers who were scheduled to work that day didn't

15       show up, what do you?  Can you walk me through your

16       next steps?

17             A      If the detainees do not show up to work?

18             Q      Yes.  What do you do?

19             A      We call the unit and see where the detainees

20       are.  If they're in court and they're going to report

21       to work after court, then we don't need the volunteer.

22       We can just wait until they get there.  If they're in

23       medical and they're going to be in medical for a long

24       time, we can wait on those people to report to work.

25       Now if -- if it's over two hours, yeah, we'll go ahead

Page 351

1    worked more than eight hours?

2         A    No.  We -- at the end of the shift, we send

3    them back to the unit.  The officer is in charge of

4    the timesheets and everything.  They handle all of --

5    all of that.  We just assign them to their work

6    groups.  But more than likely, they will work less

7    than eight hours.  Once everything is done in the

8    kitchen, they're allowed to go back to the unit.

9         Q    Well, what about in instances when the meal

10   service goes over eight hours?  In that case, would

11   they work more than eight hours?

12        A    The meal service won't go over eight hours.

13        Q    Has it ever gone over eight hours?

14        A    No.

15        Q    You referenced that it is the unit managers

16   who track the detained worker's time.  Correct?

17        A    No.  The unit team, I said.  I'm not sure if

18   it's the unit manager, the counselors, or whoever's in

19   the unit that's handling the detainee pay.  They track

20   it.  And the kitchen officer, they log it in.  They

21   have a timesheet they log in.  So the unit team does

22   it.

23        Q    Trinity doesn't have any responsibility with

24   respect to tracking the times the detained workers

25   work?

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 360

1     stated here that kitchen workers will not get a phone

2     card if they only show up to work after Trinity

3     requested volunteers?

4          A    No.  This -- this has to be a form that they

5     had in the unit because I don't have this form.  This

6     is not a part of my packet.

7                    MS. STEWART:  Okay.  We can take down

8     Exhibit 32.

9     BY MS. STEWART:

10         Q    Are you familiar with the practice of

11    allowing detained kitchen workers were to receive

12    extra food as a benefit of working in the kitchen?

13         A    That -- they do get extra food.  They eat

14    the left-over food, the short line.  They do.  But

15    that's not a -- a put in in writing for them to say

16    hey, that's -- you're going to get extra food if you

17    come to the kitchen.  That's just part of working the

18    kitchen before we were done with everything that's --

19    we can't utilize the food anymore, yes they are

20    allowed to eat food during their lunch break.

21         Q    So there's a general practice of allowing

22    detained kitchen workers to eat extra food including

23    the leftovers?

24         A    Yes.

25         Q    In your experience, does the extra food

Page 507

1    whom the foregoing proceedings were taken, do hereby

2    certify that any witness(es) in the foregoing

3    proceedings, prior to testifying, were duly sworn;

4    that the proceedings were recorded by me and

5    thereafter reduced to typewriting by a qualified

6    transcriptionist; that said digital audio recording of

7    said proceedings are a true and accurate record to the

8    best of my knowledge, skills, and ability; that I am

9    neither counsel for, related to, nor employed by any

10   of the parties to the action in which this was taken;

11   and, further, that I am not a relative or employee of

12   any counsel or attorney employed by the parties

13   hereto, nor financially or otherwise interested in the

14   outcome of this action.

15

16                          Notary Public in and for the

17                                State of Georgia

18

19   [X] Review of the transcript was requested.

20

21

22

23

24              CERTIFICATE OF TRANSCRIBER

25           I, NATASCHA WISE, do hereby certify that

30(b)(6) Marquita Crawford, Vol. II          August 23, 2021
Barrientos, Wilhen Hill v. CoreCivic Inc.

Page 508

1      this transcript was prepared from the digital audio

2      recording of the foregoing proceeding, that said

3      transcript is a true and accurate record of the

4      proceedings to the best of my knowledge, skills, and

5      ability; that I am neither counsel for, related to,

6      nor employed by any of the parties to the action in

7      which this was taken; and, further, that I am not a

8      relative or employee of any counsel or attorney

9      employed by the parties hereto, nor financially or

10     otherwise interested in the outcome of this action.

11

12

13                                    NATASCHA WISE

14

15

16

17

18

19

20

21

22

23

24

25