IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA

| | |
|---|---|
| WILHEN HILL BARRIENTOS, GONZALO BERMUDEZ GUTIÉRREZ, AND KEYSLER RAMÓN URBINA ROJAS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No. 4:18-cv-00070-CDL |
| Plaintiffs, | **DECLARATION OF STEVEN SCHWARTZ, PH.D.** |
| v. | |
| CORECIVIC, INC., | |
| Defendant. | |

DECLARATION OF STEVEN SCHWARTZ, PH.D.

## I.    Introduction

### A.    Qualifications

1.    I am an economist and Managing Director with Intensity, LLC ("Intensity"), based in Dallas, TX.  I have been employed by Intensity since January 2021.  Intensity has been retained by Plaintiffs' Counsel on behalf of a class of Plaintiffs who were detained at the Stewart Detention Center ("Stewart" or "SDC") operated by CoreCivic, Inc. ("CoreCivic" or "Defendant").  I have been asked to assess the damages to the Plaintiffs as a result of CoreCivic's paying detained workers a below-market wage for allegedly coerced work by the detained workers at SDC.

2.    Until December 31, 2020, I was an economist and Vice President with Charles River Associates, Inc. ("CRAI"); I joined CRAI in June 2015.  Prior to my employment at CRAI, I was a Managing Director and head of the economics practice with Alvarez & Marsal Global Forensics and Disputes ("A&M-GFD"), based in New York, NY.  I was employed by A&M-GFD from December 2011 until June 2015.  Before joining A&M-GFD, I was an economist and Senior Vice President with NERA Economic Consulting ("NERA"), based in White Plains, NY.  I began working at NERA in July 1984.

3.    I received my bachelor's degree from Wesleyan University (Middletown, CT) in 1976.  I graduated cum laude and with Departmental Honors in Economics.  I earned my M.A. and Ph.D. degrees in Economics from the University of Maryland (College Park, MD) in 1978 and 1980, respectively.  After I completed my graduate studies, I served as a member of the economics faculty at Miami University (Oxford, OH) from 1980–1984.  My complete educational and employment history is set forth in my CV, attached to my initial expert report as Attachment A-1. My CV contains a list of all publications I have authored in the past 10 years and a list of all cases in which, during the past 4 years, I have testified as an expert at trial or by deposition.  Included as Exhibit 1 to this Declaration is an update to the CV previously provided.

4.    Previously, I submitted an expert report on behalf of the Plaintiffs in which I set forth my analysis and conclusions with respect to the damages suffered by the Plaintiff class as a

DECLARATION OF STEVEN SCHWARTZ, PH.D.

result of the challenged behaviors of CoreCivic (the "Schwartz Report").[1]  A true and correct copy of the Schwartz Report is attached hereto as Exhibit 2.

**B.    Scope of work**

5.    I have been asked to address certain aspects of Defendant's Motion to Exclude Steven Schwartz's Classwide Damages Model ("Motion to Exclude") (Dkt. No. 248),[2] as well as assess and respond to the Declaration of Michael N. Giardina, ACP ("Giardina Declaration") (Dkt. No. 248-1) submitted in support of the Motion to Exclude.[3]

**II.    Defendant's Motion to Exclude**

6.    CoreCivic purports to identify several bases supporting its assertion that the Schwartz Report is unreliable.  The purported issues were largely already considered and addressed in my report, and I additionally address some of the purported issues below.

7.    Section 5.2.1. of the Schwartz Report identifies several pieces of information required to calculate the damages owed to the detained individuals who worked in the Voluntary Work Program ("VWP"), including total hours worked, total wages paid (or hourly wage paid), and job performed.  Typically, based on my experience, this information would be contained in timecard and payroll data.[4]  While I understand that CoreCivic was asked to produce such comprehensive data for detained individuals who worked in the VWP during the class periods, CoreCivic did not produce this information.  In fact, the pay data produced by CoreCivic was missing much of this key information.[5]  For example, the data produced by CoreCivic did not contain basic information on the number of shifts worked, total hours worked, and had limited (and often indecipherable) information on the job title and/or work performed by the detained workers.[6]

---

[1]  Report of Steven Schwartz, Ph.D. ("Schwartz Report"), 12/22/2021.

[2]  Defendant's Motion to Exclude Steven Schwartz's Classwide Damages Model ("Motion to Exclude"), 8/17/2022.

[3]  Declaration of Michael N. Giardina, ACP ("Giardina Declaration"), 8/13/2022.

[4]  Schwartz Report ¶ 30.

[5]  Schwartz Report ¶ 31.

[6]  Schwartz Report ¶ 31.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

8.        ██████████████████████████████████████████

████████████████████████████████████,[7] however, these complete records were not produced by CoreCivic.  Therefore, I had to make certain assumptions based on the facts and evidence in the record to determine the amount of time the detained workers worked.  When actual hours worked are unavailable, schedules are the best and most reliable estimate of actual time worked in a given shift; thus, using scheduled shift lengths is a reasonable and reliable estimate of hours worked.

9.        Using both information produced and deposition testimony in this matter, I determine that a six-hour shift is a reasonable estimate for the average shift length.[8]  I considered information on scheduled shifts, as well as the breakdown of jobs worked by individual—including that the most common position identified in CoreCivic's produced pay data was "Kitchen Worker."[9] As noted in my report, CoreCivic produced rosters of scheduled shifts in this matter where workers other than the kitchen workers had shifts of six hours or *more*.[10]

10.        Further, despite CoreCivic's claims that "only a small minority" of total shifts identified in the pay data were kitchen workers, those values presented by CoreCivic—33.6% of the TVPA Class; 34.8% of the Unjust Enrichment Class—are misleading.[11]  These values are among *all* shifts, regardless of whether there was information on the job position, that is, including those with blank or undecipherable entries.  For a large portion of the data, CoreCivic did not provide any information on job performed.  To be precise, 43.9% of the TVPA Class entries and 32.8% of the Unjust Enrichment Class entries had no information on job performed.[12]  When considering the share of shifts only with *identifiable* jobs, the share of kitchen workers is 59.9% of the TVPA Class

---

[7]  See discussion in Schwartz Report ¶ 31.

[8]  Schwartz Report ¶¶ 46–47.

[9]  Schwartz Report ¶¶ 46–47.

[10]  Schwartz Report ¶ 46.

[11]  Motion to Exclude at 5.

[12]  Schwartz Report Attachments E-2 and E-3.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

and 51.8% of the Unjust Enrichment Class.[13]  The handwritten timecards relied upon in the Giardina Declaration, too, show that kitchen workers are the most prevalent position, with 58.5% of recordable shifts being among kitchen workers.[14]

11.    Since kitchen workers make up *over* half of job-identifiable shifts, it is reasonable to put more weight on this type of shift length than other, lesser-worked positions.  As set forth in my report, there is a substantial basis for the assumption of a 6-hour shift length and the report provides my reasoning for this estimate in detail.  Further, as set forth in my report, my analysis is conservative (that is, advantageous to CoreCivic) in important respects.  For example, while I assume that each workday consisted of only one shift, there is ample evidence of detained workers working multiple shifts in a day.  Additionally, there is evidence that workers could work longer than their scheduled shift times.  See discussion in Schwartz Report, Section 5.3.1.

12.    CoreCivic alleges that "Schwartz's classwide damages model is based on an unreliable methodology that improperly assumes away these important factual differences among individual class members by creating a hypothetical person, *i.e.*, an 'average' detainee who worked all six hours of a kitchen worker's average scheduled shift, regardless of his actual work hours or job assignment."[15]  This mischaracterizes my analysis.  While my analysis utilizes some estimates when the data produced by CoreCivic were inadequate, the data I relied on were on an individual basis, aggregated to demonstrate total damages for each class period.

---

[13] Schwartz Report Attachments E-2 and E-3.

TVPA Class: (309,552 Kitchen Worker Shifts / 516,982 Any Job-Identified Shifts) × 100% = 59.9%.

Unjust Enrichment Class: (189,480 Kitchen Worker Shifts / 365,505 Any Job-Identified Shifts) × 100% = 51.8%.

[14] Giardina Declaration at Attachment G.

Kitchen Worker Count of Shifts: 2,288.

Total Count of Shifts: 3,913.

(2,288 / 3,913) × 100% = 58.5%.

[15] Motion to Exclude at 7.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

13. Had CoreCivic provided sufficient data, it is likely that fewer assumptions would have been necessary. However, as discussed above, the pay data produced by CoreCivic were deficient in many ways, including but not limited to, (a) some pay records were not analyzable, (b) there was not full information on jobs worked, (c) there was no information on actual shifts worked, (d) there was no information on hours worked (actual or scheduled), (e) there was no information on work hours that were not recorded in the system (*i.e.*, when detained workers were paid outside of the system or not paid at all), and (f) there was no information on VWP paid work after December 2020.[16] As such, I must rely on supplemental information produced in this matter, deposition testimony, research, and my experience to determine reasonable, conservative estimates to account for the missing data and information. My reliance on this supplemental information, and any and all assumptions / estimates made from that information, were reasonable. In the field of economics, when information is missing or not available, the next best economic option is to determine a proxy for that missing information. Economists often make fact-based, well-founded assumptions and/or estimations to act as proxies for missing information. That is precisely what I have done here.

14. Regarding my opinions on the damages related to benefits, CoreCivic claims I "assume[d] that CoreCivic benefitted by not having to provide health benefits to detainee workers."[17] This is incorrect and irrelevant; detained worker health benefits have no impact on my analysis.

15. The federal government would have either provided detained individuals with healthcare (prior to September 2018) or provided CoreCivic with remuneration specifically for doing so (starting in September 2018) regardless of participation in the VWP. Indeed, in Exhibit 2 to the Motion to Exclude, the language cited to states that "U.S. Public Health Services (USPHS) will be responsible for providing *all health care services provided under contract for detained aliens in the custody of ICE at the facility*[,]" prior to a September 2018 amendment placing that

---

[16] Schwartz Report Section 5.2.1.

[17] Motion to Exclude at 9.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

responsibility on CoreCivic in exchange for ICE's payment of costs.[18]  As such, whether or not hiring outside workers to replace VWP workers, the detained individuals at Stewart Detention Center would have been given health benefits.  This is separate from the contractual hourly payment for health benefits provided in the ICE-CoreCivic contracts and amendments, which would have been paid by CoreCivic to any hired contractual worker.

16.      CoreCivic also claims that I assume a one-to-one worker replacement rate in my analysis.[19]  This is a mischaracterization of my analysis; I assume a one-to-one replacement rate on *hours* (not employees).  This is a reasonable economic assumption, and it is supported based on the facts and information produced in this matter.  Documents and testimony that I reviewed in connection with my analysis discuss that any shifts not worked by VWP workers would have been filled by facility staff in order to complete the required tasks, because the tasks needed to be done.  Indeed, CoreCivic acknowledges this fact in the Motion to Exclude, stating "If a detainee does not show up for work or refuses to work, facility staff fill in and accomplish the task[.]"[20]

17.      Finally, CoreCivic alleges that "Schwartz's classwide damages model is unhelpful to the jury because . . . the calculation is based on a simple math formula that the jury is capable of doing on its own."[21]  This is also a misrepresentation of my analysis.  My analysis was based on a combination of economic research and rigorous data analysis, culminating in a final damages calculation that is arithmetic in nature.  For example, to analyze the CoreCivic pay data, because of its poor quality and many deficiencies (as discussed above), significant data preparation needed to be performed before any analysis could be performed.  See discussion in Schwartz Report Sections 5.2.1. and 5.2.2., the data appendix in Schwartz Report Attachment A-3, and Schwartz Report Attachment Section H, which provides the Stata code used to prepare and analyze the data.  Also

---

[18]  Motion to Exclude, Exhibit 2, at CCBVA0000000342–343 (emphasis added); *id.* at CCBVA0000149741–44.

[19]  Motion to Exclude at 10–11.

[20]  Motion to Exclude at 10–11.

[21]  Motion to Exclude at 9.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

due to the poor quality of the data (as discussed above), several assumptions had to be made to calculate damages.  Those assumptions were based on extensive research, my assessment of produced documents and deposition testimony, and my professional economic experience.

**III.    The Giardina Declaration**

18.    As support for Defendant's Motion to Exclude, CoreCivic relies on the Giardina Declaration.  The Giardina Declaration sets out to determine a shift length based on handwritten time data for a single month of the damages period, August 2020.[22]  The Giardina Declaration uses cherry-picked and unreliable data that cannot accurately capture a measure for classwide shift length, and thus, is not reliable.

19.    The records analyzed in the Giardina Declaration contain incomplete data, and Mr. Giardina offers no explanation or evidence explaining why these records should be considered reliable.  For example, the Giardina Declaration does not provide evidence that these time entries, as written, were actual hours worked or whether they were simply recorded for pay purposes.  While the Giardina Declaration assumes them to be actual work hours, irregularities in the data suggest this is not the case.

20.    There are many pages of records where *all* detained workers on the page are recorded as having worked the *exact same* hours, rounded to perfect hours, and some only for a single hour of the day.  Indeed, 24% of transcribed shifts were exactly one hour in length, many of which started and ended on the hour,[23] and sometimes starting and ending on the same hour, across numerous detained workers, no matter which work days/hours they were seemingly assigned, based on that sheet.  Such irregularities indicate that, rather than representing the actual hours worked, the data more likely represent recording simply for pay purposes, given that detained workers are paid

---

[22] Giardina Declaration at 4–5.

[23] Giardina Declaration at Attachment F.

There are a total of 942 shifts that are exactly one hour in length as recorded in the Giardina Declaration.

$(942 / 3,913) \times 100\% = 24.1\%$.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

by the day, not the hour.  Without further information, there is no economic basis for concluding these data are meaningful work records and, thus, this data should be considered unreliable. Substantial additional analysis is needed to determine which, if any, parts of the data can be relied on or extrapolated from, and the Giardina Declaration does not provide such analysis.

21.    Figure 1 below provides an example of the irregularities discussed above.  In this example page, the recorded time shows as time in at 7:00 and time out at 8:00 across several detained workers during different shifts on different days.

**Figure 1: Sample Handwritten Page of Time Entry**[24]



22.    Further, there is not enough information to determine on which days these shifts were worked, as recorded.  While there appears to be a date on the bottom of each page, there are several different workdays listed in the "WORK DAYS/HOURS" column, suggesting that these shifts occurred on different days.  There are also examples of handwritten dates on the bottom of

---

[24] CoreCivic, Handwritten Time Sheet, 8/1/2020, 8/4/2020, and 8/5/2020 (CCBVA0000104680–83, at CCBVA0000104682).

DECLARATION OF STEVEN SCHWARTZ, PH.D.

pages (as seen in the example in Figure 1, above), which indicate that at least some of these are for several different days. In Figure 1 above, there has been a note handwritten at the bottom implying that these shifts occurred on any of the days of August 1, 4, or 5 of 2020, however there is no indication of which shifts occurred on which of those particular days.

23.    In addition to these records being unreliable on their face, these data are incomplete. First, these data are incomplete due to some percentage of shifts being illegible, as conceded in the Giardina Declaration (though Mr. Giardina fails to identify what portion he considers to be illegible).[25] Further, the Giardina Declaration fails to provide any evidence for how much coverage these handwritten records (even assuming perfect legibility) provide within that given month. In other words, there is no information as to which (or what percentage) of the shifts, detained workers, days, and jobs worked during this month are captured in these documents.

24.    CoreCivic claims that these records are "representative data[.]"[26] There is no support for this assertion. There is no analysis or economic rationale offered as to why—or if— the records can be considered a representative sample of any group of people, including whether they are "representative" of the persons or time periods at issue here.

25.    The Giardina Declaration also provides no information on how this particular set of handwritten documents was chosen for production nor why they were chosen for the Giardina Declaration. Without this information, it is impossible to determine if this is truly a "representative sample," as claimed by the CoreCivic; in fact, it appears that it is not.

26.    More fundamentally, CoreCivic uses the term "representative data" incorrectly. When performing statistical analysis, as required here, the term "representative data" or "representative sample" is a technical statistical one, not simply a phrase that can be applied to any sample. For a sample to be statistically "representative," it must seek to pull a "subset of a

---

[25] Giardina Declaration at 4.

There also appears to be at least one error in the spreadsheet prepared in the Giardina Declaration. See Giardina Declaration, Attachment F, for "Source" CCBVA0000105572.

[26] Motion to Exclude at 6–7.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

population that seeks to accurately reflect the characteristics of the larger group."[27]  There are many sampling methods that are used to ensure a representative sample (*e.g.*, random sampling, systematic sampling, stratified random sampling).[28]  However, for a sample to truly be representative, the correct sampling method for the data at issue and the question being analyzed must be used. Otherwise, there is a higher risk of sampling error than if the sampling is done in a statistically robust way.[29]  In other words, when a sample is *not* truly representative of the population from which it is drawn, there would be unacceptably high levels of uncertainty around any statistical inferences drawn from an analysis of that sample.

27.     Further, utilizing very small samples of large populations of data for statistical inference increases the risk of sampling error.  Samples need be large enough to draw inferences that can be applied to a population with some degree of confidence, and high levels of variance are more likely to occur in small samples.[30]  According to the Giardina Declaration, there were a total of 3,913 legible shifts that were transcribed in August 2020.[31]  For the TVPA Class, based on my analysis of the CoreCivic pay data (which underestimates total days/shifts worked during both class periods), there were a total of ▮▮▮▮ work days and work shifts (assuming only one shift worked per day, per my analysis), while the Unjust Enrichment Class had a total of ▮▮▮▮.[32]  This means that the sample provided in the Giardina Declaration shift analysis accounts for—at a *maximum*— ▮▮▮▮ of recorded work days/shifts in the CoreCivic pay data for the TVPA Class, and ▮▮▮▮ for the

---

[27] Investopedia, "Representative Sample: Definition, Importance, and Examples," 10/29/2021, https://www.investopedia.com/terms/r/representative-sample.asp.

[28] Investopedia, "Representative Sample: Definition, Importance, and Examples," 10/29/2021, https://www.investopedia.com/terms/r/representative-sample.asp.

[29] Investopedia, "Representative Sample: Definition, Importance, and Examples," 10/29/2021, https://www.investopedia.com/terms/r/representative-sample.asp.

[30] Investopedia, "Sample Size Neglect," 9/1/2021, https://www.investopedia.com/terms/s/sample-size-neglect.asp.

[31] Giardina Declaration at 4.

[32] Schwartz Report Attachment B-2.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

Unjust Enrichment Class.[33] Such a small sample, collected in an unscientific and unprincipled manner, would yield high levels of uncertainty.

28.    The time period from which this data set is drawn also seriously undermines the inferences CoreCivic tries to draw from the data. The data are for only one month of one year, specifically August 2020. A sample based on a single month out of a much longer time period with factors that change over time is not random and should not be considered representative.[34] For example, using only one month of data means that the sample does not take into account changes in the VWP over time (*e.g.*, changes in jobs, shifts, VWP participation, size of detainee population) over the class period. Additionally, it does not account for any external factors that may have changed over time and likely affected VWP shifts (*e.g.*, contract changes, leadership changes, political climate). Further, other considerations were not made about August 2020 as a "representative month" including seasonality, the COVID pandemic, being after this lawsuit was already filed, among others.

29.    The deficiencies of the data used in the Giardina Declaration, including but not limited to the short, unclear timeline of the shifts, unclear coverage of total shifts or detained workers provided by these data, sometimes illegible records, and records that appear to have been written the same across all dates and detained workers, render an analysis on only these data unreliable. Further, even if these records were true as written (for which the Giardina Declaration provides no evidence), this miniscule sample in a single month of the entire class period has a very high level of uncertainty and bias. It simply cannot (and should not) be considered "representative," especially without any analysis, reasoning, or evidence. As such, the shift length analysis provided by the Giardina Declaration should not be relied on.

---

[33] Schwartz Report Attachment B-2.

[34] Corporate Finance Institute, "Time Period Bias," 5/15/2020, https://corporatefinanceinstitute.com/resources/knowledge/other/time-period-bias/.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed in Dallas, Texas, on October 7, 2022.

STEVEN SCHWARTZ, PH.D.

DECLARATION OF STEVEN SCHWARTZ, PH.D.

# EXHIBIT 1



INTENSITY, LLC
Dallas, Texas
469.257.5580
**intensity.com**

# Exhibit 1

October 2022

## Steven Schwartz, Ph.D.
*Managing Director*

Dr. Steven Schwartz is a Managing Director at Intensity, LLC. With extensive experience in economic consulting, he has been retained as an economic expert in numerous litigation and non-litigation matters and has provided testimony before the U.S. International Trade Commission and the U.S. Tax Court, federal and state courts.

Dr. Schwartz has over 35 years of economic consulting experience and has applied his expertise in high-stakes disputes related to commercial success, irreparable harm, lost profits, reasonable royalties, economic domestic industry considerations, and unjust enrichment. His areas of expertise include:

- Antitrust and Competition

- Intellectual Property Damages and Valuation

- Damages Assessment in Complex Commercial Disputes

- Class Certification

- Securities and Finance Litigation

Examples of Dr. Schwartz work include:

- Analysis of pricing behavior by a company that pled guilty to price fixing as a part of a larger conspiracy to determine the impact on the firm and to assess the portion of its price increases attributable to the conspiracy as opposed to non-collusive factors such as cost increases.

- Assessment to the damages suffered by a residential home builder and land developer as a result of alleged breaches of contracts and fraud by another home builder. The analysis included a determination of the number of homes the Plaintiff would have built and sold in the absence of the alleged breaches and fraud, as well as the losses the firm would incur as it attempted to re-enter the market, post-fraud.

- Analysis of the commercial success of a branded drug in the context of a Hatch-Waxman dispute; the branded drug was a late entrant into the market, i.e., after the entry of competitors selling generic versions of first and second-generation drugs, and Dr. Schwartz provided an assessment of the drug's performance and success in the context of a market dominated by generic competitors.

- Analyzed the damages suffered by an aircraft manufacturer as a result of a patent infringement by a rival manufacturer of a component of the aircraft at issue. The royalty

analysis considered the appropriate royalty in a case in which the infringing product was never sold.

Dr. Schwartz's consulting background spans many industries, such as hospitality, consumer goods, electronics, gaming, and pharmaceuticals, among others. He has also consulted in a variety of business, valuation and strategic planning issues.

## Education

Ph.D., Economics, University of Maryland

M.A., Economics, University of Maryland

B.A., Economics, Wesleyan University

## Professional Experience

Intensity, LLC. Managing Director, 2021 to present.

Charles River Associates, Vice President, 2015 to 2020.

Alvarez & Marsal, Global Forensic and Dispute Services, Managing Director, 2011 to 2015.

NERA Economic Consulting, Senior Vice President (Final Position), 1984 to 2011.

Miami University, Assistant Professor of Economics, 1980 to 1984.

Federal Trade Commission, Economist, 1979 to 1980.

## Publications and Papers

"An Overview of Trade Secret Misappropriation Damages." With Christopher Gerardi and Hong Qiao. *Trade Secret Protection: A Global Guide,* 2nd ed., edited by Trevor Cook, Globe Law and Business, June 2022.

"Antitrust Analysis of FRAND Licensing Post-FTC v. Qualcomm," *The Journal of the Antitrust and Unfair Competition Section of the California Lawyers Association,* Volume 31, No. 1, Spring 2021 (with Aminta Raffalovich).

"Pricing Challenges for Hotels in a Price Parity World." *The Price Point,* Volume 17, Issue 2, Spring 2017.

"The Economic Implications of American Needle on Joint Ventures and Other Collaborations." A roundtable discussion with Gregory Leonard, *Antitrust Insights,* NERA Economic Consulting, Fall 2009.

"Assessing the Competitive Impact of Resale Price Maintenance: Practical Implications of the Supreme Court's Decision in Leegin." A roundtable discussion with Timothy Daniel and Christine Meyer, *Antitrust Insights*, NERA Economic Consulting, April/June 2007.

"Monopoly Overcharges, Pass-Through Pricing, and Economic Damages." With Bryan Ray. *Antitrust Insights*, A NERA Perspective, March/April 2006.

"Beware the Transfer Pricing Trap." With Phillip Beutel and Bryan Ray. *Managing Intellectual Property*, June 2005.

"The Bottom Line on the Persistence of Profits." *Antitrust Insights, A NERA Perspective*, May/June 2002.

"Evenhandedness in Arbitration:  The Case of Major League Baseball." With O. H. Erekson and J. W. Moser. *Eastern Economic Journal,* April - June 1989.

"Interfirm Relationships." With H. P. Kitt, *The Cutting Edge of Antitrust: Lessons from Deregulation*, June 1988.

"The Economic Rationale for Contracts: A Theory and Some Implications." With H. P. Kitt. *Practising Law Institute:  Distribution and Marketing*, January 1988.

"Aspects of Relevant Market Analysis--The Product Dimension." With H. P. Kitt. *27th Annual Practising Law Institute Advanced Antitrust Seminar:  Mergers, Markets and Joint Ventures*, December 1987.

"The Intertemporal Behavior of Economic Profits." With R. Connolly. *International Journal of Industrial Organization* 3, 379-400, 1985.

"An Empirical Test of Managerial, Life Cycle, and Cost of Capital Models of Merger Activity." *Journal of Industrial Economics,* March 1984.

"The Factors Affecting the Probability of Being Acquired: Evidence for the United States." *Economic Journal*, 391-398, June 1983.

"Micro Determinants of Conglomerate Mergers." *Industrial Organization, Anti-Trust and Public Policy*, Craven, Ed., Kluwer-Nijhoff Publishers, Boston, October 1982.

"Savings Billions in Winter Fuel Costs: Quick Return Investments in Oil Heat Systems." With Paul London and Sueanne Pfifferling. Staff Research Paper No. 5, CONEG Policy Research Center, Washington, D. C., June 1979.

## Speaking Engagements

"What Can You Prove with Statistical Evidence, or How Do I Know if All Those Numbers Are Good or Bad", ABA Webinar Series, March 14, 2022.

"Valuing Intellectual Property in the Case of Free-to-Consumer Goods, Webinar, April 6, 2021, and June 29, 2021.

Panelist, "Cyber Breach Aftermath: Civil Litigation, Insurance Risks and SEC Perspective", American Bar Association Annual Meeting, Chicago, IL, August 2, 2018.

"Dealing with a Breach's Long-Term Fallout" *Corporate Counsel*, March 2018.

Panel Presentation "Cyber Breach Aftermath: Civil Litigation, Insurance Claims and Regulatory Perspective" Association of Corporate Counsel CLE Program, Chicago, IL, January 2018.

Presentation to McGuire Woods LLP, Dallas, TX, August 8, 2017.

Public Symposium, Developments in Trade Secret Protection, sponsored by United States Patent and Trademark Office, Washington, D.C., May 8, 2017.

"Presenting Statistical Evidence…Effectively." Presented live in St. Louis, MO and presented through intra-firm webinar, SNR Denton, October 19, 2011.

"Presenting Statistical Evidence…Effectively." Presented to Antitrust and Litigation Lawyers, Bryan Cave LLP, October 18, 2011.

## Testimony and Affidavits

1. Deposition Testimony in *PureCircle USA Inc. and PureCircle SDN BHD v. Sweegen, Inc. and Phyto Tech Corp. d/b/a Blue California,* Case No. 8:18-cv-1679 JVS (JDE), United States District Court, Central District of California, Southern Division, January 2022.

2. Deposition Testimony in *Baxalta Incorporated and Baxalta GmbH v. Genentech Inc. and Chugai Pharmaceutical Co., Ltd.*, District of Delaware, C.A. No. 17-509-TBD, August 2021.

3.      Deposition Testimony in *Panasonic Corporation v. Getac Technology Corporation and Getac, Inc.,* Central District of California, Case No. 8:19-CV-01118-DOC-DFM, March 2021.

4.      Deposition Testimony in *In re Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020. (Retained by counsel to KCC Class Action Services, LLC and Kurtzman Carson Consultants, LLC)

5.      Deposition Testimony in *Impax Laboratories, Inc. v. Zydus Pharmaceuticals (USA) Inc., et al.*, United States District Court, District of New Jersey, Civil Action No. 2:17-cv-13476 (SRC)(CLW), January 2020. (Retained by counsel to Impax Laboratories)

6.      Deposition Testimony in *Rockwell Automation, Inc., v. Radwell International, Inc.*, U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, December 2019. (Retained by counsel to Rockwell Automation, Inc.)

7.      Trial Testimony in *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), March 2019. (Retained by counsel to Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera and FidoPharm, Inc.)

8.      Trial Testimony in *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), June 2018. (Retained by counsel to Boehringer Ingelheim Pharmaceuticals, Inc. et al.)

9.      Deposition Testimony in *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, March 2018. (Retained by counsel to Breland Homes, LLC et al. and Louis W. Breland)

10.     Deposition Testimony in *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), December 2017. (Retained by counsel to Boehringer Ingelheim Pharmaceuticals, Inc. et al.)

11.     Deposition Testimony in *Impax Laboratories, Inc. v. Actavis Laboratories FL, Inc. and Actavis Pharma Inc.*, United States District Court, District of New Jersey, Civil Action No. 15-6934 (SRC) (CLW), October 2017 (Retained by counsel to Impax Laboratories)

12.     Deposition Testimony in *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), August 2017.

13.     Deposition Testimony in *Select Comfort v. Tempur Sealy International, Inc., d/b/a Tempur-Pedic*, United States District Court, District of Minnesota, 14-CV-00245-JNE-JSM, August 2016.

14.     Trial Testimony in T*homas Skold v. Galderma Laboratories, L.P., Galderma Laboratories, Inc., and Galderma, S.A.*, United States District Court, Eastern District of Pennsylvania, Case No. 2:14-cv-05280-TJS, June 2016.

15. Trial Testimony in Connection with *Airbus Helicopters S.A.S. and Bell Helicopter Textron Canada Limitee*, Federal Court of Canada, Docket: T-737-08, June 2016.

16. Deposition Testimony in Connection with *Steven C. Jacobs v. Las Vegas Sands Corp., et al.*, District Court, Clark County, Nevada, Case No; A-10-627691, Dept. No. XI. May 2016.

17. Deposition Testimony in *Thomas Skold v. Galderma Laboratories, L.P., Galderma Laboratories, Inc., and Galderma, S.A.*, United States District Court, Eastern District of Pennsylvania, Case No. 2:14-cv-05280-TJS, December 2015.

18. Trial Testimony in *Sleepy's, Inc. v. Select Comfort Wholesale Corporation, Select Comfort Retail Corporation and Select Comfort Corporation*, United States District Court, Eastern District of New York, July 2015.

19. Deposition Testimony in *TrueCar, Inc. v. Sonic Automotive, Inc. and Sonic Divisional Operation, LLC,* United States District Court, Central District of California, Western Division, Case No. CV1 13-5812 CBM (FFMx), May 2015.

20. Deposition Testimony in *Virginia Forklift, Inc. v. Crown Equipment Corporation* in Arbitration Before JAMS, January 2015.

21. Direct Testimony *In the Matter of Union Electric Company d/b/a Ameren Missouri's Tariff to Increase its Revenues for Electric Service* before the Missouri Public Service Commission, Case No. ER-2014-0258, December 2014.

22. Trial Testimony *in Aloe Vera of America et al. v. United States of America,* United States District Court for the District of Arizona, CIV-99-1794-JAT, July-August 2014.

23. Trial Testimony in *M.B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09, June 2014.

24. Deposition Testimony in *M.B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09 and *Cellular Cellutions, Inc. et al. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 1382 08, February 2014.

25. Deposition Testimony in *Aloe Vera of America et al. v. United States of America,* United States District Court for the District of Arizona, CIV-99-1794-JAT, August 2013.

26. Deposition Testimony in *Bristol-Myers Squibb Company v. Apotex, Inc. and Apotex Corp.*, United States District Court for the District of New Jersey, Civil Action No. 10-CV-5810, May 2013.

27. Trial Testimony in *RegScan, Inc. v. The Bureau of National Affairs, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-01129 (JCC-JFA), November 2012.

28. Deposition Testimony in *Realtime Data, LLC d/b/a IXO v. Goldman Sachs*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

29. Deposition Testimony in *Realtime Data, LLC d/b/a IXO v. J.P. Morgan Chase,* United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

30.     Deposition Testimony in *Realtime Data, LLC d/b/a IXO v. Morgan Stanley, et al.* (III), United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

31.     Deposition Testimony in *RegScan, Inc. v. The Bureau of National Affairs, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-01129 (JCC-JFA), May 2012.

32.     Deposition Testimony in *Jackson Hewitt, Inc. v. H&R Block, Inc., HRB Tax Group, Inc., and H&R Block Tax Services, LLC and HRB Tax Group, Inc. v. Jackson-Hewitt, Inc. and Jackson Hewitt Tax Service, Inc.*, United States District Court for the Southern District of New York, Civil Action No. 11-Civ-0641 (AKH), December 2011.

33.     Rebuttal Affidavit in *Cellular Cellutions, Inc. et al. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 1382 08, August 15, 2011.

34.     Rebuttal Affidavit in *M.B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09, August 15, 2011.

35.     Affidavit in *M.B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09, June 2011.

36.     Affidavit in *Cellular Cellutions, Inc. et al. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 1382 08, June 2011.

37.     Deposition Testimony in *CareFusion 213, LLC v. Professional Disposables International, Inc., and Nice-Pak Products, Inc.*, United States District Court for the District of Kansas, Civil Action No. 09-CV-2616 KHV/DJW, December 8, 2010.

38.     Trial Testimony in connection with Sudesh Agrawal's Motion for Class Certification in *Ford Motor Credit Company v. Sudesh Agrawal*, Cuyahoga County Court of Common Pleas, Case No. CV-04-536688, December 3, 2010.

39.     Trial Testimony in *Food Holdings, Ltd. and Dairy Holdings, Ltd. v. Bank of America*, United States District Court, Southern District of New York, 05CV9934, September 2009.

40.     Deposition Testimony in *CNET Networks, Inc. v. Etilize, Inc.*, United States District Court, Northern District of California, Case No. C 06 5378, Fall 2008.

41.     Deposition Testimony in *Gary W. Ogg and Janice Ogg v. Mediacom LLC*, Circuit Court of Clay County, Missouri at Liberty, Case No. CV101 2809CC, March 2008.

42.     Deposition Testimony in *AVX Corporation and AVX Limited v. Cabot Corporation*, United States District Court, District of Massachusetts, Civil Action No. 04-10467- RGS, February 2008.

43.     Deposition Testimony *In re Parmalat Securities Litigation*, United States District Court, Southern District of New York, (MDL) No. 04-MD-1653 (LAK), August 2007.

44.     Deposition Testimony in *Amgen, Inc. v. F. Hoffman-LaRoche, Ltd., Roche Diagnostics GmbH and Hoffman-La Roche, Inc.*, United States District Court, District of Massachusetts, Civil Action No. O5 Civ 12237 WGY, June 2007.

45. Deposition Testimony in *Hospira Incorporated v. Alphagary Corporation*, State of North Carolina, County of Mecklenburg, April 2007.

46. Trial Testimony in *RLH Industries, Inc. v. SBC Communications, Inc. and Pacific Bell Telephone Co. and Does 1 through 100, inclusive*, Superior Court of the State of California for the Court of Orange, Case No. O2CC16869, March 2007.

47. Trial Testimony in *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift America, Inc., et al.*, Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-300-00, January 2007.

48. Deposition Testimony in *Budget Pest Prevention, Inc., National Pest Control, Inc., and Pest Pros, Inc., individually and on behalf of persons similarly situated v. Bayer Corporation, Bayer Cropscience, L.P., and BASF Corporation*, United States District Court, Western District of North Carolina, Asheville Division, Civil Action No. 1:05CV90, October 2006.

49. Deposition Testimony in *Atofina Chemicals, Inc. and Atofina v. Hercules Incorporated and Hercules Incorporated v. Atofina Chemicals, Inc., Atofina, S.A., Elf Atochem, S.A., and Elf Atochem North America, Inc.*, United States District Court, District of Delaware, Case No. 02-1613, November 2005.

50. Affidavit *In Re: Bankest Capital Corporation, Debtor, Soneet Kapila, as the Chapter 7 Trustee for the Estate of Bankest Capital Corp. v. Espirito Santo Bank*, United States Bankruptcy Court, Southern District of Florida, Miami Division, ADV. No. 05-1113-BKC-AJC-A, October 2005.

51. Trial Testimony in *Advanced Executive Aircraft Ltd, v. Lucas Aerospace Ltd.*, in Arbitration, Case No. 50 T 181 00064 00, New York, New York, June 2005.

52. Deposition Testimony in *USA Cellular, Inc. v. Verizon Wireless*, in Arbitration, April 2005.

53. Declaration in *John B. Hayes Real Estate and Auction, Inc., d/b/a Hayes Equipment v. American Honda Motor Co., Inc.*, United States District Court for the Western District of Oklahoma, Case No. 04-6922-L, November 2004.

54. Deposition Testimony in *Crown Equipment Corporation v. Florida Lift Systems, Inc.*, in Arbitration, September 2004.

55. Deposition Testimony in *RLH Industries, Inc. v. SBC Communications, Inc. Pacific Bell Telephone Company and Does 1 through 100, inclusive*, Superior Court of the State of California For the County of Orange, Case No. 02CC16869, August 2004.

56. Trial Testimony in *Crown Equipment Corporation v. Florida Lift Systems, Inc.*, United States District Court, Southern District of Ohio, Western Division (Dayton), Case No. C-3-04-007, July 2004 (Motion for Preliminary Injunction).

57. Trial Testimony in *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C. and E.I. duPont de Nemours and Company, Inc.*, United States District Court, Eastern District of Pennsylvania, Civil Action No. 00-CV-3058, June 2003.

58. Deposition Testimony in *The Iams Company v. Nutro Products, Inc.*, United States District Court for the Southern District of Ohio, Western Division (Dayton), Case No. C-3-00-566, March 2003 and May 2003.

59.    Trial Testimony in *E.I. duPont de Nemours and Company, Claimant v. Unifi, Inc., Respondent and Unifi, Inc., Counterclaimant v. E.I. duPont de Nemours and Company, Counterclaim-Respondent*, In Arbitration, Washington, D.C., November 2002.

60.    Deposition Testimony in *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, L.L.C. and E.I. duPont de Nemours and Company, Inc.*, United States District Court, Eastern District of Pennsylvania, Civil Action No. 00-CV-3058, September 2002.

61.    Deposition Testimony in *Madison/OHI Liquidity Investors, LLC v. Omega Healthcare Investors, Inc.*, United States District Court, Eastern District of Michigan (Southern Division), Case No. 00-CV-72793-DT, January 2002.

62.    Trial Testimony *In the Matter of Certain Personal Watercraft and Components Thereof*, United States International Trade Commission, Investigation No. 337-TA-452, January 2002.

63.    Deposition Testimony *In the Matter of Certain Personal Watercraft and Components Thereof*, United States International Trade Commission, Investigation No. 337-TA-452, October 2001.

64.    Trial Testimony in *US Polo Association v. Meridian Hosiery Mills, Inc.*, American Arbitration Association, New York, New York, March 2001.

65.    Deposition Testimony in *Dupont Pharmaceuticals Company and Dupont Contrast Imaging v. Molecular Biosystems, Inc., Mallinckrodt, Inc. and Nycomed Imaging AS*; United States District Court for the District of Delaware, 99-273 (JJF), February 2001.

66.    Deposition Testimony in *Main Street Marketing of America, Inc. v. ICT Group, Inc.*, December 2000.

67.    Affidavit in *Filetech S.A. and Filetech USA, Inc. v. France Telecom S.A. and France Telecom, Inc.*; United States District Court, Southern District of New York, No. 95 Civ1848 (CSH), March 2000.

68.    Deposition Testimony in *The Iams Company v. Kal Kan Foods, Inc.*, United States District Court, District of Ohio, Case No. C-3-97-449, November 1999.

69.    Deposition Testimony in *Watkins & Son Pet Supplies v. The Iams Company,* United States District Court of Ohio, July 1999.

70.    Trial Testimony In the matter of the arbitration between *Upfront Technology Co., Ltd. and Cheyenne Communications, Inc.* No.: 9796/FMS/KGA, May 1999.

71.    Deposition Testimony in *Fitz-Randolph and Up Against the Wall v. Ralph Wilson Plastics,* U.S. District Court, District of New Jersey, February 1999.

72.    Trial Testimony in *Mr. Mattress Limited Partnership v. Sealy Mattress Co.,* United States District Court, District of Maryland, Northern Division, Case No. WMN-95-1157, January 1999.

73.    Deposition Testimony in *JTC Petroleum Company v. Koch Materials Company, et al.* United States District Court, Southern District of Illinois, Case No.: 96-334-GPM, August 1998.

74. Trial Testimony in *DHL Corporation and Subsidiaries et al. v. Commissioner of Internal Revenue,* Docket Nos. 19570-95 and 26103-95, August 1997.

75. Deposition Testimony in *Mr. Mattress Limited Partnership v. Sealy Mattress Company*, U.S. District Court, District of Maryland, March 1997.

76. Reply Affidavit in *The Iams Company v. Anthony Falduti d/b/a Countryside Feed and Supply*, U.S. District Court, Eastern District of Missouri, Eastern Division, No. 4:95-CV-1804-CDP, February 1997.

77. Deposition Testimony in *The Iams Company v. Anthony Falduti d/b/a Countryside Feed and Supply*, U.S. District Court, Eastern District of Missouri, Eastern Division, No. 4:95-CV-1804-CDP, December 1996.

78. Affidavit in *The Iams Company v. Anthony Falduti d/b/a Countryside Feed and Supply*, U.S. District Court, Eastern District of Missouri, Eastern Division, No. 4:95-CV-1804-CDP, October 1996.

79. Deposition Testimony in *Lerch v. Citizens First Bancorp, et al.*, U.S. District Court, District of New Jersey (testimony given September 1994).

80. Affidavit in Support of The Iams Company's Motions for Summary Judgment, *The Iams Company v. L.A. Pet Foods, Inc., et al.*, U.S. District Court, Western District of Ohio, September 1994.

81. Trial and Deposition Testimony in *American Professional Testing Service v. Harcourt Brace Legal and Professional Publications, Inc.*, U.S. District Court, Central District of California (testimony given March and May 1994).

82. Trial Testimony *In the Matter of Nestle Holdings, Inc., On Its Own Behalf and As the Successor In Interest to Nestle Enterprises, Inc. and Related Petitioners v. Commissioner of Internal Revenue*, U.S. Tax Court, Docket Nos. 21558-90; 21559-90; 21560-90; 21562-90; and 12245-91 (testimony given May 1994).

83. Trial and Deposition Testimony in *Koch Engineering Co., Inc. v. Glitsch, Inc., et al.*, U.S. District Court, Northern District of Texas, Dallas Division, Case No. CA 3:38-CV-0460-T (testimony given February and March 1993).

84. Deposition Testimony *In re: Zenith Laboratories Securities Litigation, Civil Action*, U.S. District Court of New Jersey (testimony given February 1993).

85. Deposition Testimony in *The Iams Company v. American Superior Feeds, et al.*, Civil Action No. C-3-90-14, U.S. District Court, Southern District of Ohio, Western Division (testimony given July 1992).

86. Trial and Deposition Testimony in *Trademark Research Corp. v. Maxwell Online, Inc.*, 90 Civ 5166(RJW), U.S. District Court, Southern District of New York (testimony given February, March and May, 1992).

87. Trial and Deposition Testimony in *Extrel FTMS, Inc. v. Bruker Instruments, Inc.*, Case 90-C-305-S, U.S. District Court, Western District of Wisconsin (testimony given August 1990 and September 1990).

88.    Trial and Deposition Testimony in *Medcom Holding Co., v. Baxter Travenol Laboratories, Inc. and Medtrain, Inc.*, Civil Action No. 87C 9853, U.S. District Court, Northern District of Illinois, Eastern Division (testimony given September 1988, February 1990, October 1990, February 1991 and September 1993).

89.    Trial Testimony in *Worlco Data Systems et al. v. Maxwell Communication Corp., et al.*, Civil Action No. 88-6597, U.S. District Court, Eastern District of Pennsylvania (testimony given February 1990).

90.    Testimony before the New York State Moreland Act Commission to Investigate the Operation and Administration of the Returnable Container Act (testimony given October 11, 1989).

91.    Trial and Deposition Testimony in *Revelations Antoine Ltee. v. K Mart Corp., et al.,* Case No. 88-0624, U. S. District Court, Eastern District of Virginia, Alexandria Division (testimony given July and September 1988).

92.    Trial Testimony in *Data Systems of New Jersey, Inc., et al. v. Philips Business Systems, Inc.*, Case No. 78 Civ 6015 (CLB), U.S. District Court, Southern District of New York (testimony given March 1988).

93.    Deposition Testimony in *Microbyte Corporation v. New Jersey State Golf Association*, U.S. District Court, District of New Jersey (testimony given October 1985 and February 1986).

94.    Deposition Testimony in *Monroe Systems for Business, Division of Litton Business Systems, Inc. v. SCI Systems, Inc.*, Case No. 84-2650-D, U.S. District Court, District of New Jersey (testimony given September 1986).

95.    Affidavit in Opposition to Plaintiff's Motion for Summary Judgment*, Henson Associates, Inc. v. Atari Games, Inc., et al.,* July 1985.

# Reports

1.  Expert Report of Steven Schwartz, Ph.D., *In Re: Google Play Store Antitrust Litigation: Match Group, LLC, Humor Rainbow, Inc., PlentyOfFish Media ULC, and People Media, Inc. v. Google LLC, Google Ireland Limited, Google Commerce Limited, Google Asia Pacific PTE. Limited, and Google Payment Corp.* United States District Court, Northern District of California, Case Nos. 3:21-md-02981 and 3:22-cv-02746. October 2022.

2.  Expert Report of Steven Schwartz, Ph.D., *Healthcare Recovery Group, LLC v. Coresource, Inc.,* In the Circuit Court of Cook County, Illinois, County Department, Law Division, Case No. 07-CH-016360, August 2022.

3.  Report of Steven Schwartz, Ph.D., in *Between Farmers Edge, Inc. and Precision Weather Solutions Inc., and Between Precision Weather Solutions Inc., and Farmers Edge Inc., Wade Barnes, Curtis Mackinnon, and Trevor Armitrage*, The Queen's Bench Winnipeg Center, File No. CI 15-01-99336, March 28, 2022.

4.  Report of Steven Schwartz, Ph.D., *PureCircle USA Inc. and PureCircle SDN BHD v. Sweegen, Inc. and Phyto Tech Corp. d/b/a Blue California,* United States District Court, Central District of California, Southern Division, Case No. 8:18-cv-1679 JVS (JDE), December 2021.

5.  Report of Steven Schwartz, Ph.D., *Barrientos et al. v. CoreCivic, Inc.* United States District Court, Middle District of Georgia, Case No. 4:18-cv-00070, December 2021.

6.  Rebuttal Expert Report of Steven Schwartz, Ph.D., *Baxalta Incorporated and Baxalta GmbH v. Genentech Inc. and Chugai Pharmaceutical Co., Ltd.*, District of Delaware, C.A. No. 17-509-TBD, June 2021.

7.  Report of Steven Schwartz, Ph.D., *Panasonic Corporation v. Getac Technology Corporation and Getac, Inc.,* Central District of California, Case No. 8:19-CV-01118-DOC-DFM, March 2021.

8.  Rebuttal Economist's Report of Steven Schwartz, Ph.D., *In re. Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020.

9.  Economist's Report of Steven Schwartz, Ph.D., *In re. Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020.

10. Expert Report of Steven Schwartz, Ph.D., *Impax Laboratories, Inc. v. Zydus Pharmaceuticals (USA) Inc., et al.*, United States District Court, District of New Jersey, Civil Action No. 2:17-cv-13476 (SRC)(CLW), November 2019.

11. Expert Report of Steven Schwartz, Ph.D., in Rebuttal to the June 14, 2019 Report of Matthew Hoelle and to the July 15, 2019 Report of David W. DeRamus *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, October 2019.

12. Supplement to June 14, 2019 Expert Report of Steven Schwartz, Ph.D., *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, October 2019.

13.  Expert Report of Steven Schwartz, Ph.D., in *Eli Lilly and Company v. Eagle Pharmaceuticals, Inc.*, United States District Court, District of Delaware, Case Mo. 17-cv-1293 (MSG), June 2019.

14.  Expert Report of Steven Schwartz, Ph.D., in *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, June 2019.

15.  Economist's Report in Connection with Plaintiff's Motion for Class Certification in *Medbor Chavez, individually and on behalf of all others similarly situated v. FBL Financial Group, Inc., Farm Bureau Property & Casualty Ins. Co., Farm Bureau Life Insurance and Western Agricultural Insurance Company*, U.S. District Court for the District of Kansas at Kansas City, Case No. 2:17-02393-DDC-ADM, May 2019.

16.  Rebuttal Expert Witness Statement and Report of Steven Schwartz, Ph.D., in Connection with *Hibernia v. Teza*, Hibernia Express (Ireland) Limited, successor to Hibernia Atlantic U.S. LLC v. Teza Technologies LLC, International Chamber of Commerce, ICC Case No. 22784/MK, June 2018.

17.  Expert Witness Statement and Report of Steven Schwartz, Ph.D., in Connection with *Hibernia v. Teza*, Hibernia Express (Ireland) Limited, successor to Hibernia Atlantic U.S. LLC v. Teza Technologies LLC, International Chamber of Commerce, ICC Case No. 22784/MK, April 2018.

18.  Update to Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, April 2018.

19.  Rebuttal Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, January 2018.

20.  Rebuttal Expert Report in Connection with a Confidential Arbitration in Stockholm, Sweden, December 2017.

21.  Expert Report in Connection with a Confidential Arbitration in Stockholm, Sweden, November 2017.

22.  Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, November 2017.

23.  Expert Report of Steven Schwartz, Ph.D., *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), October 2017.

24.  Expert Report of Steven Schwartz, Ph.D. Regarding Validity of U.S. Patent Nos. 8,557,283; 9,089,608, 9,463,246, and 9,533,046, *Impax Laboratories, Inc. v. Actavis Laboratories FL, Inc. and Actavis Pharma Inc.,* United States District Court, District of New Jersey, Civil Action No. 15-6934 (SRC) (CLW), September 2017.

25. Supplemental Economist's Report in Connection with *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), August 2017.

26. Economist's Report in Connection with *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), May 2017.

27. Initial Report of Steven Schwartz, Ph.D., in Connection with *Select Comfort v. Tempur Sealy International, Inc., d/b/a Tempur-Pedic*, United States District Court, District of Minnesota, 14-CV-00245-JNE-JSM, May 2016.

28. Report of Steven Schwartz, Ph.D., in Connection with *Airbus Helicopters S.A.S. and Bell Helicopter Textron Canada Limitee*, Federal Court, Docket: T-737-08, April 2016.

29. Initial Report in Connection with *Steven C. Jacobs v. Las Vegas Sands Corp., et al.*, District Court, Clark County, Nevada, Case No; A-10-627691, Dept. No. XI., March 2016.

30. Expert Report in *Thomas Skold v. Galderma Laboratories, L.P., Galderma Laboratories, Inc., and Galderma, S.A.*, United States District Court, Eastern District of Pennsylvania, Case No. 2:14-cv-05280-TJS, October 2015.

31. Expert Report in connection with *Timberline Energy, LLC v. Waste Connections of Kansas, Inc.*, Case No. 2014CV03269, District Court, City and County of Denver, State of Colorado, August 2015.

32. Expert Report in *TrueCar, Inc. v. Sonic Automotive, Inc. and Sonic Divisional Operations, LLC*, United States District Court, Central District of California (Western Division) Case No. 2:13-cv-05812-CBM-FFM, April 2015.

33. Expert Report in *Virginia Forklift, Inc. v. Crown Equipment Corporation* in Arbitration before JAMS, January 2015.

34. Expert Report in M.*B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09, January 2014.

35. Expert Report in *Cellular Cellutions, Inc. et al. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 1382 08, January 2014.

36. Expert Report and Rebuttal Expert Report in *Aloe Vera of America, Inc. et al. v. United States of America*, United States District Court for the District of Arizona Civil Action No. CIV-99-1794-PHX-JAT, June 2013 and July 2013.

37. Expert Report in *Bristol-Myers Squibb Company v. Apotex, Inc. and Apotex Corp.*, United States District Court for the District of New Jersey, Civil Action No. 10-CV-5810, March 2013.

38. Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. Goldman Sachs*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

39. Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. J.P. Morgan Chase,* United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

40. Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. Morgan Stanley, et al. (III)*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

41. Economist's Report, *RegScan, Inc. v. The Bureau of National Affairs, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-01129 (JCC-JFA), April 19, 2012.

42. Rebuttal Report, *Jackson Hewitt Inc. v. H&R Block Tax Services LLC, et al.*, United States District Court for the Southern District of New York, Civil Action No. 11-CV-0641, September 26, 2011.

43. Expert Report, *Jackson Hewitt Inc. v. H&R Block Tax Services LLC, et al.*, United States District Court for the Southern District of New York, Civil Action No. 11-CV-0641, July 7, 2011 and August 31, 2011.

44. Expert Report in *Official Committee of Administrative Claimants, on Behalf of LTV Steel Company, Inc. v. William H. Bricker, et al.,* United States District Court for the Northern District of Ohio, Eastern Division, Case No. 1:05 CV 2158 2011.

45. Expert Report, *CareFusion 213, LLC v. Professional Disposables International, Inc. and Nice-Pak Products, Inc.,* United States District Court for the District of Kansas, Civil Action No. 09-CV-2616 KHV/DJW, September 13, 2010.

46. Expert Report, *Dish Network, L.L.C. and Dish Network Corporation v. Federal Communications Commission; Julius Genachowski Chairman, and Michael J. Copps, Robert M. McDowell, Mignon Clyburn, Meredith Attwell Baker, Commissioners; and United States of America*, United States District Court, District of Nevada, June 2010.

47. Expert Report, *Sleepy's, Inc. v. Select Comfort Wholesale Corporation, Select Comfort Retail Corporation and Select Comfort Corporation,* Supreme Court of the State of New York, County of Nassau, Index No. 07-015070, June 2009.

48. Expert Report, *CNET Networks, Inc. v. Etilize, Inc.,* United States District Court, Northern District of California, Case No. C 06 5378, July 21, 2008.

49. Expert Report, *Gary W. Ogg and Janice Ogg v. Mediacom LLC*, Circuit Court of Clay County, Missouri at Liberty, Case No. CV101 2809CC, March 2008.

50. Expert Report, *Ford Motor Credit Company v. Sudesh Agrawal*, Cuyahoga County Court of Common Pleas, Case No. CV-04-536688, January 2008.

51. Expert Report, *AVX Corporation and AVX Limited v. Cabot Corporation*, United States District Court, District of Massachusetts, Civil Action No. 04-10467-RGS, December 2007.

52. Expert Report *In re Parmalat Securities Litigation*, United States District Court, Southern District of New York, (MDL) No. 04-MD-1653 (LAK), June 2007.

53.    Economist's Report in connection with *Amgen, Inc. v. F. Hoffman-LaRoche, Ltd., Roche Diagnostics GmbH and Hoffman-La Roche, Inc.* United States District Court, District of Massachusetts, Civil Action No. O5 Civ 12237 WGY, May 2007.

54.    Expert and Rebuttal Reports, *Datascope Corp. v. Stanton Rowe*, Superior Court of New Jersey Law Division, Civil Part Bergen County, Docket No.: L-4786-05, November 2006 and December 2006.

55.    Expert Report, *Budget Pest Prevention, Inc., National Pest Control, Inc., and Pest Pros, Inc., individually and on behalf of persons similarly situated v. Bayer Corporation, Bayer Cropscience, L.P., and BASF Corporation*, United States District Court, Western District of North Carolina, Asheville Division, Civil Action No. 1:05CV90, September 2006.

56.    Supplemental and Second Supplemental Expert Reports, *United States of America Ex Rel. Thornton G. Sanders and Thornton G. Sanders v. North American Bus Industries, Inc., et al.*, United States District Court, District of Maryland. Civil Action No. 02-CV-3084, June 2006 and September 2006.

57.    Economist's Report, *Hospira Incorporated v. Alphagary Corporation,* State of North Carolina, County of Mecklenburg, August 2006.

58.    Expert Report, *United States of America Ex Rel. Thornton G. Sanders and Thornton G. Sanders v. North American Bus Industries, Inc., et al.*, United States District Court for the District of Maryland. Civil Action No. 02-CV-3084, June 2006

59.    Expert, Supplemental and Rebuttal Reports, *Maintainco, Inc. vs. Mitsubishi Caterpillar Forklift America Inc., et al.*, Superior Court of New Jersey, Chancery Division: Bergen County, Docket No. C-300-00, May 2006.

60.    Expert and Rebuttal Reports, *Atofina Chemicals, Inc. and Atofina v. Hercules Incorporated and Hercules Incorporated v. Atofina Chemicals, Inc., Atofina, S.A., Elf Atochem, S.A., and Elf Atochem North America, Inc.*, United States District Court, District of Delaware, Case No. 02-1613,  October 2005 and November 2005.

61.    Economist's Report, *DenBraven Sealants B.V. v. Nedamco International B.V. and Nedamco North America Corporation, Inc.*, The Netherlands, Cause List Number, C0100350/BR, August 2005.

62.    Economist's Report, *Crown Equipment Corporation v. Toyota Material Handling, USA,* United States District Court for the Northern District of Ohio, August 2005.

63.    Expert Report and Supplemental Expert Report, *USA Cellular, Inc. v. Verizon Wireless*, in Arbitration, April 2005.

64.    Rebuttal Expert Report in Connection with Arbitration: *Florida Lift Systems, Inc. v. Crown Equipment Corp.*, October 2004.

65.    Economist's Rebuttal Report, *Advanced Executive Aircraft, Ltd., Claimant v. Lucas Aerospace, Ltd.*, Respondent, September 2004.

66.    Expert and Supplemental Expert Reports, *Hayes Equipment, Inc. v. American Honda Motors, Inc.,* United States District Court for the Western District of Oklahoma, Case No. 04-6922-L, September 2004 and October 2004.

67.    Expert Report in Connection with Arbitration: *Florida Lift Systems, Inc. v. Crown Equipment Corp.*, September 2004.

68.    Economist's Report, *Advanced Executive Aircraft, Ltd., Claimant v. Lucas Aerospace, Ltd.*, Respondent, August 2004.

69.    Economist's Report and Rebuttal Economist's Report, *Crown Equipment Corporation v. Florida Lift Systems, Inc.,* United States District Court, Southern District of Ohio, Western Division (Dayton), Case No. C-3-04-007, May 2004 and June 2004.

70.    Rebuttal and Supplemental Economist's Reports, *Kal Kan Foods, Inc. v. The Iams Company, et al.*, United States District Court, Southern District of Ohio, Western Division (Dayton), Case No. C-3-01-083, May 2003 and September 2003.

71.    Economist's Report, *Duck Walk Vineyards, Inc. v. St. Helena Wine Co., Inc. d/b/a Duckhorn Vineyards,* CV-01-4896 (ADS) (MLO), United States District Court, Eastern District of New York, May 2003.

72.    Expert Report, *Welch Allyn, Inc. v. Tyco International Services AG, et al.*, United States District Court, Northern District of New York, Civil Action No. 5:01-CV-1806 (FJS/GJD), January 2003.

73.    Preliminary, Rebuttal and Supplemental Economist's Reports, *The Iams Company v. Nutro Products, Inc.*, United States District Court for the Southern District of Ohio, Western Division (Dayton), No. C-3-00-566, December 2002, January 2003 and March 2003.

74.    Expert Report and Rebuttal Expert Report, *E.I. duPont de Nemours and Company, Claimant v. Unifi, Inc., Respondent and Unifi, Inc., Counterclaimant v. E.I. duPont de Nemours and Company, Counterclaim-Respondent*, In Arbitration, Washington, D.C., October 2002.

75.    Supplemental Expert Report, *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers L.L.C. and E.I. DuPont De Nemours and Co., Inc.,* United States District Court for the Eastern District of Pennsylvania, Civil Action No. 00-CV-3058, September 2002.

76.    Expert Witness Report, *Sony Electronics, Inc. et al. v. Soundview Technologies, Inc.*, United States District Court, District of Connecticut, Lead Docket No. 3:00-CV-00754 (JBA) U.S.D.C./New Haven, June 2002.

77.    Expert Report, *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers L.L.C. and E.I. DuPont De Nemours and Co., Inc.,* United States District Court for the Eastern District of Pennsylvania, Civil Action No. 00-CV-3058, March 2002.

78.    Expert Report, *Madison/OHI Liquidity Investors, LLC v. Omega Healthcare Investors, Inc.*, United States District Court, Eastern District of Michigan (Southern Division), Case No. 00-CV-72793-DT, December 2001.

79.    Expert Report *In the matter of CERTAIN PERSONAL WATERCRAFT AND COMPONENTS THEREOF*, United States International Trade Commission, Investigation No. 337-TA-452, September 4, 2001.

80.    Economist's Report, *US Polo Association v. Meridian Hosiery Mills, Inc.*, American Arbitration Association, New York, New York, March 2001.

81. Expert Report and Answering Expert Report, *Dupont Pharmaceuticals Company and Dupont Contrast Imaging v. Molecular Biosystems, Inc., Mallinckrodt, Inc. and Nycomed Imaging AS*, January 2001 and February 2001.

82. Economist's Report, *Main Street Marketing of America, Inc. v. ICT Group, Inc.*, July 27, 2000.

83. Economist's Report, *Wells Fargo Bank, National Association v. U.S. Bank National Association*, September 16, 1999.

84. Supplemental Economist's Report, *The Iams Co. v. Kal Kan Foods,* May 26, 1999.

85. Economist's Report, *Watkins & Son Pet Supplies v. The Iams Company*, May 4, 1999.

86. Economist's Report for Mobil Corporation (with P. Beutel, B. Ray and J. Hall), April 15, 1999.

87. Economist's Report for Mediation, *Pitney Bowes v. United States Postal Service*, April 1999 and May 1999.

88. Economist's Report, *Braun Inc. and The Gillette Company v. Optiva Corporation*, February 1999.

89. Economist's Report, *Biofertec Ltd. v. Louisville Laboratories, Inc.*, et al., December 1998.

90. Economist's Report, *JTC Petroleum Company v. Koch Materials Company, et al.*, August 1998.

91. Economist's Report, *Shimano Inc. and Shimano American Corporation v. SRAM Corporation*, August 1997.

92. Economist's Report, *Up Against the Wall, Inc. et al. v. Ralph Wilson Plastics, et al.*, August 1997.

93. Economist's Report, *Mr. Mattress Limited Partnership v. Sealy Mattress Company*, March 1997.

94. Economist's Report, *DHL Corporation and Subsidiaries, et al. vs. Commissioner of Internal Revenue*, Docket Nos. 19570-95 and 26103-95, March 13, 1997.

95. Economist's Report in Connection with Federal Funding of the Corporation for Public Broadcasting, March 29, 1995.

96. Economist's Report, U.S. Department of Justice Civil Investigative Demand No. 11882, February 24, 1995.

97. Economist's Report, *Nestle Holding, Inc. v. Commissioner of Internal Revenue*, Docket No. 21562-90, July 1994.

98. Economist's Report, *Citizen's First Securities Litigation*, May 1994.

99. Economist's Rebuttal Report, *Nestle Holding, Inc. v. Commissioner of Internal Revenue*, Docket No. 21562-90," March 1994.

100. Affidavits in Opposition to Defendant's Motions for Partial Summary Judgment, American Professional Testing Service, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc., January 1994.

101. Evaluation of Economic Issues in Connection with *USPS Proposed Regulation*, May 1991 (with P. A. Beutel).

102. Economist's Report in Connection with *Furr's Inc.*, November 1990.

103. Economist's Report, *Regency Oldsmobile, Inc. v. General Motors Corp.*, et al., April 1990.

104. Economist's Report, *Aristomenis Deligiannis et al. v. PepsiCo, Inc., et al.*, February 1990.

105. Economist's Report, *Wesco v. Alloy*, Case No. 84-C-10909, U.S. District Court, Northern District of Illinois.

106. Economist's Report, *AMCI v. Western Union*, Superior Court of New Jersey Law Division: Essex County, Docket No. L-45055-85E.

107. Economist's Report, *Monroe Systems for Business, Division of Litton Systems, Inc. v. SCI Systems, Inc.*, Case No. 84-2650-D, U.S. District Court, District of New Jersey.

108. The Economic Effects of New York State's Returnable Beverage Container Law (co-author).

109. Economist's Report, *Microbyte Corporation v. New Jersey State Golf Association, Microbyte Corporation, t/a Microbyte Computer Systems Corp. v. New Jersey State Golf Association*, Civil Action No. 84-0949, U.S. District Court, District of New Jersey.

110. An Economic Analysis of the Likely Competitive Effects of the Acquisition of Stanley Drapery Hardware by Newell Companies, Inc., January 31, 1985.

# EXHIBIT 2
# (Redacted)



INTENSITY, LLC
San Diego, California
858.876.9101
www.intensity.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| Wilhen Hill Barrientos, Gonzalo Bermudez Gutiérrez, and Keysler Ramón Urbina Rojas, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CoreCivic, Inc., <br><br> Defendant. | Case No. 4:18-cv-00070-CDL <br><br> **REPORT OF** <br> **Steven Schwartz, Ph.D.** |

Steven Schwartz, Ph.D.

December 22, 2021

# Summary of Contents

1. Introduction ................................................................................................................................. 1

2. Relevant Parties ......................................................................................................................... 6

3. Voluntary Work Program ......................................................................................................... 8

4. Alleged Conduct and Economic Benefits to CoreCivic from the Alleged Conduct ................... 12

5. Damages Analysis .................................................................................................................... 14

6. Conclusion ................................................................................................................................ 44

# Table of Contents

1. Introduction ....................................................................................................................................1

   1.1. Qualifications and scope of work ................................................................................1

   1.2. Understanding of the Legal Framework ...................................................................2

   1.3. Summary of opinions ......................................................................................................4

2. Relevant Parties ...........................................................................................................................6

   2.1. CoreCivic, Inc....................................................................................................................6

   2.2. Class definitions ...............................................................................................................7

3. Voluntary Work Program..........................................................................................................8

   3.1. Voluntary Work Program at Stewart ........................................................................8

   3.2. ICE Performance Based National Detention Standards......................................9

4. Alleged Conduct and Economic Benefits to CoreCivic from the Alleged Conduct....................12

5. Damages Analysis.......................................................................................................................14

   5.1. Damages theory .............................................................................................................14

   5.2. Data and data preparation.........................................................................................14

      5.2.1. CoreCivic VWP pay data................................................................................14

      5.2.2. Data preparation..............................................................................................17

   5.3. Analysis approach.........................................................................................................18

      5.3.1. Average shift length ........................................................................................21

      5.3.2. Comparison wages............................................................................................23

      5.3.3. Comparison benefits ........................................................................................38

   5.4. Estimated damages........................................................................................................40

      5.4.1. Forced Labor class............................................................................................40

      5.4.2. Unjust Enrichment class .................................................................................42

6. Conclusion ....................................................................................................................................44

# Table of Attachments

Section A                Expert Materials

Attachment A-1          Curriculum Vitae of Steven Schwartz, Ph.D.

Attachment A-2          Materials Considered

Attachment A-3          Data Appendix


Section B                Class Information

Attachment B-1          Class Definitions and Associated Damages Start Dates

Attachment B-2          Data Summary by Class


Section C                Data Preparation

Attachment C-1          Data Entry Preparation in CoreCivic's VWP Pay Data

Attachment C-2          Entries in CoreCivic's VWP Pay Data by Year, Forced Labor Class

Attachment C-3          Entries in CoreCivic's VWP Pay Data by Year, Unjust Enrichment Class


Section D                Federal Minimum Wage Analysis

Attachment D-1          Overview of Shifts in Analyzable Entries of VWP Pay Data, Pre-Federal
                        Minimum Wage Increase

Attachment D-2          Overview of Shifts in Analyzable Entries of VWP Pay Data, Post-Federal
                        Minimum Wage Increase

Attachment D-3          Hours Worked in CoreCivic's VWP Pay Data

Attachment D-4          Estimated Paid Hourly Wage of VWP Participants

Attachment D-5          Estimated Effective Federal Minimum Wage Rate

Attachment D-6          Value of VWP Labor in Wages Using Effective Federal Minimum Wage


Section E                Comparison Contract Wage Analysis

Attachment E-1          Comparison Wage Time Periods

Attachment E-2          Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data
                        by Comparison Wage Period, Forced Labor Class

Attachment E-3          Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data
                        by Comparison Wage Period, Unjust Enrichment Class

Attachment E-4          Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period, Forced Labor Class

Attachment E-5          Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period, Unjust Enrichment Class

Attachment E-6          Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period, Forced Labor Class

Attachment E-7          Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period, Unjust Enrichment Class

Attachment E-8          Comparison Wages and Benefits for Jobs Performed at Stewart Detention Center by Comparison Wage Period

Attachment E-9          Comparison Job Effective Wage Analysis, Forced Labor Class

Attachment E-10         Comparison Job Effective Wage Analysis, Unjust Enrichment Class

Attachment E-11         Value of VWP Labor in Wages and Benefits Using Comparison Job Effective Wage and Comparison Benefits, Forced Labor Class

Attachment E-12         Value of VWP Labor in Wages and Benefits Using Comparison Job Effective Wage and Comparison Benefits, Unjust Enrichment Class


Section F                EO Minimum Wage Analysis

Attachment F-1          EO Minimum Wage History

Attachment F-2          Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Forced Labor Class

Attachment F-3          Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

Attachment F-4          Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Forced Labor Class

Attachment F-5          Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

Attachment F-6          Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Forced Labor Class

Attachment F-7          Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period

                        and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

Attachment F-8          Comparison Job and EO Minimum Wage Effective Wage Analysis, Forced

                        Labor Class

Attachment F-9          Comparison Job and EO Minimum Wage Effective Wage Analysis, Unjust

                        Enrichment Class

Attachment F-10         Value of VWP Labor in Wages Using Comparison Job and EO Minimum Wage

                        Effective Wage, Forced Labor Class

Attachment F-11         Value of VWP Labor in Wages Using Comparison Job and EO Minimum Wage

                        Effective Wage, Unjust Enrichment Class


Section G               Summary

Attachment G-1          Damages Summary


Section H               STATA Code and Log Files

Attachment H-1          STATA Code for Data Preparation

Attachment H-2          STATA Log File for Data Preparation

Attachment H-3          STATA Code for Counts

Attachment H-4          STATA Log File for Counts

# 1.    Introduction

## 1.1.    Qualifications and scope of work

(1)    I am an economist and Managing Director with Intensity, LLC ("Intensity"), based in Dallas, TX.  I have been employed by Intensity since January 2021.  Intensity has been retained by Plaintiffs' Counsel on behalf of a class of Plaintiffs who were detainees at the Stewart Detention Center ("Stewart" or "SDC") operated by CoreCivic, Inc. ("CoreCivic") ("Defendant").  I have been asked to assess the damages to the Plaintiffs as a result of CoreCivic's paying detainees a below-market wage for allegedly coerced work by the detainees at SDC.[1]

(2)    Until December 31, 2020, I was an economist and Vice President with Charles River Associates, Inc. ("CRAI"); I joined CRAI in June 2015.  Prior to my employment at CRAI, I was a Managing Director and head of the economics practice with Alvarez & Marsal Global Forensics and Disputes ("A&M-GFD"), based in New York, NY.  I was employed by A&M-GFD from December 2011 until June 2015.  Before joining A&M-GFD, I was an economist and Senior Vice President with NERA Economic Consulting ("NERA"), based in White Plains, NY.  I began working at NERA in July 1984.

(3)    I received my bachelor's degree from Wesleyan University (Middletown, CT) in 1976.  I graduated *cum laude* and with Departmental Honors in Economics.  I earned my M.A. and Ph.D. degrees in Economics from the University of Maryland (College Park, MD) in 1978 and 1980, respectively.  After I completed my graduate studies, I served as a member of the economics faculty at Miami University (Oxford, OH) from 1980–1984.  My complete educational and employment history is set forth in my CV, attached to this report as Attachment A-1.  My CV contains a list of all publications I have authored in the past 10 years and a list of all cases in which, during the past 4 years, I have testified as an expert at trial or by deposition.

(4)    In carrying out my assignment, I considered and relied upon my education, professional background and experience and, as well, the documents and data cited throughout this report and the accompanying exhibits.  In forming my opinions, I reviewed documents and data

---

[1]    I understand that there are two alleged classes in this case.  In the discussion below, I will not distinguish between the alleged classes, except where such distinctions are important to the discussion.

Intensity is being compensated at a rate of $595 per hour for my work in this matter.  Intensity is being compensated for time spent by others on my team at rates that are lower than my hourly rate.  The compensation of Intensity is not dependent on the substance of my testimony or the outcome of this matter.

produced by both parties in discovery for this litigation, deposition testimony of Terrence Lane, Matthew Moye, Freddie Hood, Susan Huffman, Harrell Gray, Droudred Blackmon, Russell Washburn, Michael Swinton, Charlie Peterson, Troy Pollock, and Bethany Brazier.  I have also considered documents and other materials, which are cited herein and/or listed in Attachment A-2.

(5)   For purposes of my analysis, I have assumed CoreCivic's liability under the claims set forth in the Complaint.  In the discussion below, I do not offer any opinions regarding CoreCivic's liability as alleged in the Plaintiffs' complaint.

(6)   My analysis is ongoing, and my conclusions are based on information currently available to me.  If any additional information or testimony—including from any of the experts in this matter—becomes available to me, I reserve the right to consider such information and to supplement this report and my opinions, as appropriate.  I also reserve the right to supplement my report in light of any additional fact discovery, opinions by other experts, and/or trial testimony, and to respond to other experts and the testimony of any fact witnesses.

(7)   In addition, should I be asked to testify to my opinions at the trial of this matter, I reserve the right to prepare exhibits that summarize portions of my analysis and my opinions and to prepare demonstrative exhibits that help to explain elements of my analysis and opinions.  I have not yet selected the exhibits I may ultimately use.  In addition, I respectfully reserve the right to use animations, demonstratives, enlargements of actual attachments, and other information in order to convey my opinions.

(8)   The entirety of my report, including attachments and referenced materials, supplies the basis for my analysis and conclusions.  The organizational structure of the report is for convenience.  To the extent that facts, economic analysis, and other considerations overlap, I generally discuss such issues only once for the sake of brevity.  Neither the specific order in which each issue is addressed nor the organization of my report or attachments affects the ultimate outcome of my analysis.

## 1.2.   Understanding of the Legal Framework

(9)   Plaintiffs have alleged that Defendant obtained, or attempted to obtain, Plaintiffs' labor and services in violation of 18 U.S.C. § 1589 which provides that any person who "knowingly provides or obtains the labor or services of a person . . . by means of force, threats of force, physical restraint, or threats of physical restraint; by means of serious harm or threats of

serious harm . . . ; by means of the abuse or threatened abuse of law or legal process; or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished" by fine or imprisonment.[2]  Plaintiffs have brought their claims against Defendant pursuant to the civil remedies provision of the Trafficking Victims Protection Act (U.S.C. § 1595) that permits individuals to bring a civil action against anyone who knowingly "benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the act]" and entitles them to "recover damages."[3]  I understand that Plaintiffs are seeking compensatory damages and restitution in the full amount of their losses and punitive damages as a result of Defendant's conduct.[4]

(10)  Plaintiffs have alleged a claim for unjust enrichment and seek damages as a result of Defendant's "materially and significantly reduced" labor costs and expenses and its increased corporate profits obtained by undercompensating labor from Plaintiffs.[5]  I understand that, under Georgia law, the theory of unjust enrichment "applies when there is no legal contract and when there has been a benefit conferred which result in an unjust enrichment unless compensated" and that an award for unjust enrichment "must be supported by evidence from

---

[2]  Amended Complaint, 10/16/2020, ¶¶ 114–127.

18 U.S.C. § 1589(a)(1)-(4), and (d).

18 U.S.C. § 1594(a).  ("Whoever attempts to violate section . . . 1589 . . . shall be punishable in the same manner as a completed violation of that section.")

[3]  Amended Complaint, 10/16/2020, ¶ 15.

18 U.S.C. § 1595(a).

[4]  Amended Complaint, 10/16/2020, ¶¶ 124–127.

*Arreguin v. Sanchez,* 398 F.Supp.3d 1314, 1326–1329 (S.D. Ga. 2019).  Court awarded immigrant worker plaintiffs damages under the Trafficking Victims Protection Reauthorization Act for restitution, emotional distress, and punitive damages. ("'Restitution for a trafficking victim requires, at a minimum, compensation for the value of her services as guaranteed under the [Fair Labor Standards Act ("FLSA")]. *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 457 (E.D. Va. 2015) (citing 18 U.S.C. § 1593(b)(3)). The FLSA provides that "[a]ny employer who violates [the Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overpaid compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). . . Therefore, the Court finds that Plaintiffs are entitled to restitution under the TVPRA (for the value of their services as guaranteed under the FLSA) . . . "Punitive damages are generally appropriate under the [TVPRA] civil remedy provision because [the TVPRA] creates a cause of action for tortious conduct that is ordinarily intentional and outrageous.' . . . In deciding the amount of punitive damages, courts consider 'whether the harm was physical or economic, whether defendants acted with reckless disregard of the victim's health and safety, whether the conduct was repeated, and whether the conduct was a result of malice or deceit as opposed to mere accident.'")

[5]  Amended Complaint, 10/16/2020, ¶¶ 128–133.

which it can be determined to a reasonable certainty" that the Defendant realized such gains.[6]
I further understand that, under Georgia law, an unjust enrichment claim requires a plaintiff
to establish: (1) that plaintiff conferred a benefit on the defendant and (2) that equity requires
the defendant to compensate the plaintiff for the benefit.[7]

(11)   I understand that Plaintiffs seek declaratory and injunctive relief on behalf of themselves and
on behalf of those similarly situated.[8]  I further understand declaratory or injunctive relief is
permitted "where a party has taken action or refused to take action with respect to a class,
and final relief of an injunctive nature or of a corresponding declaratory nature, settling the
legality of the behavior with respect to the class as a whole, is appropriate."[9]

## 1.3.    Summary of opinions

(12)   Based on the material received and considered and my analysis to date, I summarize my
conclusions as follows:

- CoreCivic derived substantial value from the detainees who performed work pursuant to
  the work program in place at Stewart.
- That value derives from the difference between the wages paid to detainees (as reflected
  in documents and data provided by CoreCivic) from what I understand are its ordinary-
  course-of-business books and records and the wages (plus benefits) that it would have
  paid to employees hired to perform those same tasks.
- That value is properly calculated using a class-wide model and no individual-level
  analysis; a formulaic approach to the calculation described below is appropriate,
  reasonable, and does not rely on individual-specific evidence.  The value is calculated for
  two classes and two class periods.  The Forced Labor class period runs from April 17,
  2018 to the date of final judgment in this matter.  The Unjust Enrichment class period
  runs from April 17, 2014 to the date of final judgment in this matter.  The damages for
  the two classes are not additive.
- Because the data provided by CoreCivic were incomplete, a series of conservative
  assumptions were made about, among other things, the number of shifts worked by

---

[6]   O.C.G.A. § 9-2-7.  ("Ordinarily, when one renders a service or transfers property which is valuable to another, which the
latter accepts, a promise is implied to pay the reasonable value thereof.")

   *Cochran, et al. v. Ogletree,* 536 S.E.2d 194, 196–197 (Ct. App. Ga. 2000).

[7]   *Chem-Nuclear Systems, Inc. v. Arivec Chems., Inc.,* 978 F.Supp. 1105, 1110 (N.D. Ga. 1997).  ("[U]nder Georgia law, an unjust
enrichment claim requires the plaintiff to establish the following: (1) that the plaintiff conferred a benefit on the defendant
and (2) that equity requires the defendant to compensate the plaintiff for this benefit.")

[8]   Amended Complaint, 10/16/2020, at ¶¶ 104, 108, and 113.

[9]   Fed.R.Civ.P. 23(b)(2) at Notes of Advisory Committee on Rules – 1966 Amendment. ("Subdivision (b)(2). This subdivision is
intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief
of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the
class as a whole, is appropriate.")

detainees per day, the average shift length, and the comparison wage rate and/or comparison benefits rate to be used in determining the value derived by CoreCivic for job titles/descriptions for detainees working in the VWP.

- The estimated damages to the Forced Labor class in wages are between $37.6 million and $42.2 million; the estimated damages to the Unjust Enrichment class in wages are between $22.2 million and $26.6 million.
- The estimated damages to the Forced Labor class in benefits are between $6.3 million and $16.7 million; the estimated damages to the Unjust Enrichment class in benefits are between $5.9 million and $13.4 million.

## 2.    Relevant Parties

### 2.1.    CoreCivic, Inc.

(13)    CoreCivic, formerly the Corrections Corporation of America, is a for-profit corporation providing correctional and detention services.[10]  CoreCivic is incorporated in Maryland, with its principal office located in Tennessee;[11] it is the largest owner of partnership correctional, detention, and residential reentry facilities in the United States.[12]  CoreCivic is also one of the largest private prison operators in the United States.[13]  CoreCivic partners with the U.S. Marshals Service and Immigration and Customs Enforcement ("ICE") to provide detention centers where CoreCivic detains individuals such as Plaintiffs.[14]

(14)    CoreCivic operates in three sectors: CoreCivic Safety, CoreCivic Community, and CoreCivic Properties.[15]   CoreCivic Safety consists of correctional and detention facilities owned, controlled, or managed by CoreCivic.[16]  CoreCivic Community consists of residential and non-residential services that use monitoring and counseling to aid in the reentry of released individuals into society.[17]   CoreCivic Properties includes the designing, building, and managing of government real estate projects and facilities.[18]  CoreCivic earned total revenues of $1.905 billion in 2020, $1.981 billion in 2019, and $1.836 billion in 2018.[19]

---

[10]    CoreCivic, About, https://www.corecivic.com/about (accessed 10/21/2021).

CoreCivic, Form 10-K, 2020, at 7.

[11]    CoreCivic, Form 10-K, 2020, at 7.

[12]    CoreCivic, About, https://www.corecivic.com/about (accessed 10/20/2021).

[13]    CoreCivic, Form 10-K, 2020, at 7.

[14]    CoreCivic Website, Detention Services, https://www.corecivic.com/safety/detention-services (accessed 10/21/2021).

[15]    CoreCivic Website, Home Page, https://www.corecivic.com/ (accessed 10/21/2021).

[16]    CoreCivic, Form 10-K, 2020, at 8.

[17]    CoreCivic Website, Community, https://www.corecivic.com/community (accessed 10/21/2021).

[18]    CoreCivic Website, Home Page, https://www.corecivic.com/ (accessed 10/21/2021).

[19]    CoreCivic, Form 10-K, 2020, at 69.

CoreCivic, Form 10-K, 2019, at 61.

CoreCivic, Form 10-K, 2018, at 54.

---

(15)    CoreCivic's SDC is an immigrant detention facility located in Lumpkin, Georgia.[20]  It is owned and operated by CoreCivic through an Intergovernmental Service Agreement ("IGSA") between ICE and Stewart County to detain immigrants.[21]  Plaintiffs and class members, as defined in the Section 2.2, were detained at Stewart.[22]  Stewart opened in 2006, has a design capacity of 1,752 beds,[23] and employs approximately 350 to 360 non-exempt staff.[24]

## 2.2.    Class definitions

(16)    The Complaint alleges two classes.  One is a class of detained individuals who performed work for CoreCivic at Stewart in the Volunteer Work Program starting ten years prior to the date of the original complaint (filed April 17, 2018) through the final judgement in the matter ("Forced Labor class" or "FL class").[25]  The other class is defined as the detained individuals who performed work for CoreCivic at Stewart in the Volunteer Work Program starting four years prior to the date of the original complaint (filed April 17, 2018) through the final judgement in the matter ("Unjust Enrichment class" or "UE class").[26]

(17)    The damages period for the Forced Labor class begins April 17, 2008, and the damages period for the Unjust Enrichment class begins April 17, 2014.  See Attachment B-1.

---

[20]    Detention Watch Network, "Stewart Detention Center Expose & Close," 11/2012, at 1, available at: https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20Expose%20and%20Close%20Stewart.pdf.

[21]    Detention Watch Network, "Stewart Detention Center Expose & Close," 11/2012, at 1, available at: https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20Expose%20and%20Close%20Stewart.pdf.

[22]    Amended Complaint, 10/16/2020, ¶ 3.

[23]    Detention Watch Network, "Stewart Detention Center Expose & Close," 11/2012, at 1, 2, available at: https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20Expose%20and%20Close%20Stewart.pdf.

    CoreCivic, Form 10-K, 2020, at 21.

[24]    Russell Washburn, Dep. Tr., 12/1/2021, at 57:5–57:17, 62:14–62:20. ("Q (By Mr. Howard) Under the category "Design Capacity," you see it says 1,752? A Yes. Q What is that a reference to? A That's the contract that staffing -- staffing levels. Q What do you mean by that? A It's not the total number of beds that we have at the facility. That's the number that, in this case, ICE, the partner, has communicated that their desire is to potentially utilize up to seventeen fifty-two -- one thousand seven hundred and fifty-two beds…Q And how many nonexempt employees do you have?. . . A Nonexempt, and, again, I can't give you an exact number, but we're in that 350 to 360 -- somewhere between 350 and 360 mark outside – that are hourly.")

[25]    Amended Complaint, 10/16/2020, at 26.

[26]    Amended Complaint, 10/16/2020, at 27.

---

# 3.    Voluntary Work Program

## 3.1.    Voluntary Work Program at Stewart

(18)    Stewart provides an overview of its Voluntary Work Program ("VWP") (which is the subject of this litigation) in their Detainee Orientation Handbook.[27]   Eligibility to work in the VWP is determined by ICE and Stewart.[28]   Interested detained individuals need to send in a Detainee Information Request form to a case manager to be considered for the program.[29]   If selected to participate in the VWP, detained individuals are required to sign a 19-100B Detainee Voluntary Work Program Agreement and complete any work-related orientations or training prior to starting work.[30]

(19)    According to CoreCivic, pay periods run from Sunday to Saturday each week, and CoreCivic states that detained individuals are not permitted to work more than 8 hours per day or 40 hours per week.[31]   VWP participants are required to work according to an assigned work schedule.[32]   Compensation for VWP participants is $1 to $4 per day, depending on the work assignment.[33]   Unexcused absences or unsatisfactory work performance "[can] result in removal from the voluntary work program."[34]   Detained individuals can also volunteer for "special details" for temporary situations that would arise at Stewart.[35]   This "labor intensive" work (*e.g.*, digging trenches or removing topsoil) can last from a few hours to a few days.[36]

---

[27]    See, for example:

Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042–43).

Note that the description of the VWP at Stewart provided in this section is a high-level overview and is not intended to provide a detailed description of the VWP.

[28]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

Note that according to the handbook, eligibility was described to be determined by "ICE and CCA/SDC." CCA/SDC is defined earlier in the document as Corrections Corporation of America/Stewart Detention Center. CoreCivic was formerly the Corrections Corporation of America.

[29]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042–43).

[30]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

[31]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

[32]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

[33]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

[34]    Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–068, at CCBVA0000000042).

[35]    Resident Work Program Policies, 3/1/2013 (CCBVA0000003942–46, at CCBVA0000003944–45).

[36]    Resident Work Program Policies, 3/1/2013 (CCBVA0000003942–46, at CCBVA0000003944–45).

---

(20)    There are two main categories of jobs in the VWP: (1) jobs ████████████████████████ ███████ and (2) █████████████████████████████████.[37]  VWP positions offered to detained individuals and supervised by CoreCivic and ██████ include:[38]

- ████████████████████████
- ██████████████████
- ████████████████████████████
- █████████████████████
- ███████████████████
- Food Preparation Worker
- Cook
- Barber
- Front Office Porter
- Hall Porter
- Laundry Worker
- Pod Orderly
- Janitor or Sanitation Worker
- Commissary Worker / Clerk
- Outside Recreation / Worker
- Sanitation Orderly
- Medical / Clinic Worker

## 3.2.    ICE Performance Based National Detention Standards

(21)    ICE has various standards of care for facilities, depending on the type of facility or contract agreed upon between the entity and the Department of Homeland Security ("DHS").[39]  Non-dedicated ICE facilities are subject to ICE's National Detention Standards ("NDS"), and facilities that hold families have separate Family Residential Standards ("FRS").[40]  For facilities that are dedicated solely to holding individuals in ICE custody, the Performance Based National Detention Standards ("PBNDS") apply.[41]    Further, CoreCivic's Rule 30(b)(6)



[37]    See, for example:

████████████████████████ (CCBVA0000118412–421).

██████████████████ (CCBVA0000216451–6520).

[38]    ██████████████████████ (TRINITY00001653–662, at TRINITY00001653).

Inmate/Resident Job Description, (CCBVA0000004685–4710).

[39]    National Immigration Forum, "Fact Sheet: Immigration Detention in the United States," 1/27/2021, https://immigrationforum.org/article/fact-sheet-immigration-detention-in-the-united-states/.

[40]    National Immigration Forum, "Fact Sheet: Immigration Detention in the United States," 1/27/2021, https://immigrationforum.org/article/fact-sheet-immigration-detention-in-the-united-states/.

[41]    National Immigration Forum, "Fact Sheet: Immigration Detention in the United States," 1/27/2021, https://immigrationforum.org/article/fact-sheet-immigration-detention-in-the-united-states/.

representative and Warden at Stewart, Russell Washburn, testified that the VWP at Stewart must be conducted according to the PBNDS.[42]  Thus, the PBNDS apply to CoreCivic's Stewart facility.

(22)    ICE released the 2011 PBNDS and most recently revised them in December 2016.[43]  The PBNDS covers broad topics including safety, security, order, care, activities, justice, and administration and management.[44]

(23)    Further, PBNDS guidelines require participants to work according to a schedule, with a maximum of 8 hours per day and 40 hours weekly.[45]  For Service Processing Centers ("SPCs"), Contract Detention Facilities ("CDFs"), and dedicated IGSA facilities, detained individuals may not work more than one detail per day.[46]  For their work, detained individuals must receive monetary compensation of at least $1 per day.[47]  While the PBNDS guidelines set a minimum for payment to detained individuals, they do not *prohibit* the payment of more than $1 per day, or the $4 per day CoreCivic pays some of the detained workers.[48]

---

[42]    Russell Washburn, Dep. Tr., 12/1/2021, at 202:23–203:21. ("Q Okay.  You're familiar with PBNDS Section 5.8, correct?  A Yes, ma'am.  Q That's the voluntary work program section?  A Yes, ma'am.  . . .  Q Okay.  Let's go to pdf page 385.  This is the voluntary work program section?  A Yes.  Q Okay.  And do you agree that this section applies to Stewart?  A Yes.")

See, also:

Terrence Lane, Dep. Tr., 10/5/2021, at 71:22–71:24. ("Q. Okay.  Is it your understanding that the work program must comply with the PBNDS?  A. Yes, ma'am.")

[43]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[44]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at ii, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[45]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 407, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[46]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 405, 407, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[47]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 407, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[48]

---

(24)   Under the guidelines, detainee workers are expected to not evade attendance for work details, to perform the duties assigned, and to follow safety requirements.[49]   According to the standards, the repercussion for not following these expectations is dismissal from the program,[50] but does not include any disciplinary actions such as solitary confinement, housing changes, and others.[51]   That said, I understand that Plaintiffs allege that they are subjected to various disciplinary actions, including those purportedly prohibited by the PBNDS.

---

[49]   U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 408, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[50]   U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 407–08, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[51]   In fact, the PBNDS states that one of the expected outcomes of the detention standards for VWPs is to have *fewer* disciplinary incidents, along with improved morale and decreased idleness.  See:

U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 405, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

# 4.    Alleged Conduct and Economic Benefits to CoreCivic from the Alleged Conduct

(25)    CoreCivic is alleged to use coercive tactics on its VWP participants in order to ensure that essential work is performed at the Stewart facility, including threatening detained individuals who refuse to work, organize a work stoppage, or participate in a work stoppage with various sanctions.[52] The alleged conduct is described in detail in the Amended Complaint and is not summarized in detail here.[53] The damages claims for both alleged classes derive from the allegation that CoreCivic's actions with respect to the detainees are coercive; by using these coercive tactics, CoreCivic is able to avoid the costs of paying a non-detainee labor force and thereby employ a nearly-free labor force to maintain the Stewart facility.[54] Further, a portion of the costs associated with this labor is then paid back to CoreCivic through the commissary.[55] Thus, through these reduced costs, Stewart is able to operate at an "enormous profit."[56]

(26)    An economic consequence of the alleged behavior is that CoreCivic benefited from the work performed by detained individuals who participated in the VWP at Stewart. As discussed above, employing a nearly-free labor force and recouping a portion of paid wages through the commissary meant that Stewart was able to earn and sustain large profits.[57] If no detained

---

[52]    Amended Complaint, 10/16/2020, at 17.

[53]    Amended Complaint, 10/16/2020, at 14, 16, 17, 18, 19, and 25.

[54]    Amended Complaint, 10/16/2020, at 19.

[55]    Amended Complaint, 10/16/2020, at 19.

   See, also:

   Bethany Brazier, Dep. Tr., 11/18/2021, at 197:23–198:2. ("Q. People in the work program could use their wages from working to buy items in the commissary, right? A. Yes.")

[56]    Amended Complaint, 10/16/2020, at 19.

   See, also:



   (CCBVA0000106584–588).
   (CCBVA0000106578–583).
   (CCBVA0000106572–77).
   (CCBVA0000106566–571).
   (CCBVA0000106561–65).
   (CCBVA0000106555–560).

[57]    Amended Complaint, 10/16/2020, at 19.

individuals worked in the VWP, as a matter of economics, Stewart would have needed to hire and pay full-time workers at least the minimum wage (plus benefits) to perform work at the facility. Doing so would have been significantly more costly to CoreCivic. Thus, CoreCivic was able to realize value by saving on costs from operating the VWP while continuing to generate revenue.

(27)    The individuals who ran Stewart for CoreCivic also had an incentive to reduce labor costs and thereby increase the profitability of the facility. For example, CoreCivic ███████████ ████████████████████████████████████████.[58] ████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████

---

[58]    See, for example:

█████████████████████ (CCBVA0000258428–431, at CCBVA0000258429). ████████ ████████████████████████████████████████████████

Michael Swinton, Dep. Tr., 11/2/2021, at 84:22–86:14. ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ")

Charlie Peterson, Dep. Tr. 10/18/2021, at 81:18–82:21 ("████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████

# 5.    Damages Analysis

## 5.1.    Damages theory

(28)    The assumption of liability implies, of course, that there is a finding that CoreCivic ran the VWP in a manner that violated the law.  As such, the premise of the damages calculations described below is that in the but-for world, that is, absent the alleged conduct, CoreCivic would hire and pay non-detainee workers to perform duties at Stewart, and it would lose the value derived by using detainee labor.  Thus, CoreCivic must compensate participants in the VWP program in the amount of the value of their labor to CoreCivic, measured by what they would have had to pay for non-detainees to perform it if no detainees participated in the work program.   To the extent CoreCivic is ordered to disgorge profits gained from the coerced labor, I understand that the value of that labor discussed herein could also constitute the measure of those damages.

(29)    The per-hour damages to the classes alleged in the Complaint are measured by the difference between the hourly (market) wage and the lower rate paid under the coercive regime.  That difference is applied to the hours worked under the coercive system to determine the total labor cost savings, that is, the damages.  These damages are calculated on a class-wide basis, using a class-wide model.  No damages calculation is made on an individual-by-individual basis; while there are some differentiating factors in the calculation of damages (*e.g.*, different wages by job held, if applicable), the calculation of damages can be done formulaically and does not require individual-specific evidence.  My damages analysis does not depend on individual factors such as work quality and individual employee reviews, among others.  All detainees in the same position are paid the same wage per hour during the relevant period, and the possible alternative wage(s) can be determined widely by job category, making this a prime case for a class-wide damages model.

## 5.2.    Data and data preparation

### 5.2.1.    CoreCivic VWP pay data

(30)    In order to estimate damages owed to previously and currently detained individuals who worked as part of the VWP at Stewart, the following information is needed: (1) total hours worked by VWP participants, (2) total wages paid for those hours worked and/or the hourly wage rate paid, and (3) job titles or descriptions of work performed.   Ordinarily, this

information is contained in timecard or time punch data and/or payroll data.  These data would facilitate the estimation of total hours worked, paid time, and paid wages.

(31)    As I understand it, CoreCivic was asked to produce such comprehensive data for those detained individuals who participated in the VWP during the appropriate class periods. Instead, CoreCivic produced pay data presented in the form of Excel spreadsheets.[59]  These spreadsheets had no information on the number of shifts worked, total hours worked, and limited—and often indecipherable—information on job title and/or work performed.  I infer that the requested data existed at some point within CoreCivic, since there is evidence that

███████████████████████████████████████████████████████████████████████████

████████████████████████████████.  For example, according to ██████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████"[60]

(32)    The VWP pay data produced by CoreCivic consist of entries that appear to correspond to VWP worker payments only for work performed under the program.  Listed below are the seven variables in the CoreCivic data along with a description of the apparent meaning of those variables:[61]

- Agency #: VWP worker identification number.
- Name: VWP worker name.
- Receipt #: Pay receipt identification number.
- Deposit From: Text memo variable often containing information on dates when the work was performed for which the payment is being made.[62]
- Amount: Payment amount in USD.
- Description: Description of the line item.  Takes one of two values: "JOB PAY – NONREIMBURSABLE" or "REVERSED JOB PAY – NONREIMBURSABLE."
- Date: Date that the payment was made to the VWP worker.

---

[59]    ████████████████████████████████ (CCBVA0000006056-59 and CCBVA0000106554).  I understand that the natively produced spreadsheets ████████████████████████████████ which I used to create the combined analysis dataset correspond to these Bates-stamped documents.

[60]    CoreCivic, ██████████████████████████████ (CCBVA0000190017).

[61]    For list of variables, see headers in:

████████████████, 11/2/2004–12/23/2020 (CCBVA0000006056-59 and CCBVA0000106554).

[62]    Date information is recorded in inconsistent formats and is often difficult to parse, if it is recorded at all—over 10,000 records contain no date information.  While this memo occasionally includes information on shift type (e.g., "Kitchen 1st Shift"), it often does not contain useful information on job title or work performed.

---

(33)    I understand that CoreCivic stated through its counsel that the produced spreadsheets cover a period from November 2004 to December 2020; the data actually cover a date range beginning in October 2006[63] and all of the data are redacted entirely prior to December 2008.[64] As such, the combined, unredacted source data consist of 945,108 total pay entries from December 23, 2008 to December 23, 2020.[65] Figure 1 provides a screenshot of how the raw data appear, in the form in which I understand they were produced by CoreCivic.

**Figure 1: Screenshot of Produced CoreCivic VWP Pay Data[66]**



(34)    The CoreCivic data, as produced, do not provide the complete information necessary for me to complete my analysis of estimated damages for both classes in a readily useable form. In order for the CoreCivic data to be useable for analysis, the data have to be processed to transform CoreCivic's data dump into a useable analytical database.[67] A key task that had to be completed in preparing the CoreCivic data for analysis was to reasonably estimate the number of shifts worked for each pay record. This task required several steps of analysis

---

63    CoreCivic, Email from Jacob Lee about CoreCivic's Production, 9/10/2021.

       █████████████████████████ (CCBVA0000006056-59 and CCBVA0000106554).

64    █████████████████████ (CCBVA0000006056-59 and CCBVA0000106554).

65    █████████████████████ (CCBVA0000006056-59 and CCBVA0000106554).

       See attachment H-4.

66    ███████████████████ (CCBVA0000006058).

67    To prepare and analyze the CoreCivic VWP pay data, I use Stata, a statistical software program. I have provided copies of the programs (and log files) that were written to prepare and complete my analysis in Attachments H-1, H-2, H-3, and H-4.

---

within the CoreCivic raw data. First, where such information exists and can be reasonably parsed, "days worked" need to be extracted from the *deposit from* variable for those records. Second, using information produced by CoreCivic and deposition testimony from CoreCivic employees, estimated shifts per day and estimated hours per shift were applied to the extracted total number of workdays, as described in the first step. Finally, as I discuss below in Section 5.3.1, the assigned variable representing the number of shifts worked, *i.e.*, shift count, created in the data preparation process, can be used to estimate total hours worked in a given pay entry.

(35)    In preparing the data, I assume that VWP participants work one shift per day, which is consistent with CoreCivic's documents about the VWP. For example, ███████████████ ███████████████████████████████████████████████████.[68] However, there is evidence that detainee workers sometimes (perhaps often) work more than one shift in a day.[69] As such, my assumption of one shift per day ensures that my calculations are conservative, to the extent *some* VWP participants are likely to have worked more than one shift on some days.

### 5.2.2.   Data preparation

(36)    As discussed above, the combined data sources provided by CoreCivic contain 945,108 pay data records, or pay entries, spanning from December 23, 2008 to December 23, 2020 for potential use in the damages analysis. The data preparation process focused primarily on the review of text memos contained in the *deposit from* variable, the main source of qualitative information about each pay entry. These memos contained, in various forms and with varying degrees of completeness, the date or dates on which work was performed and the type of job performed. Ultimately, I identified sufficient information to allow approximately 94% of pay entries to be prepared for analysis. As noted in Attachment A-3 below, approximately 6% of entries cannot be used in my analysis.[70] As such, to the extent that these non-analyzable entries relate to work performed by detainee workers, my estimates of damages based on the CoreCivic pay data are conservative, as they do not account for all of the pay entries.

---

[68]         ███████████████████████████ (CCBVA0000118422–23).

[69]         Susan Huffman, Dep. Tr., 7/14/2021, at 135:18-135:21 ("Q: Do the detained workers at Stewart ever work more than one shift in a day? A: Depending on, you know, the situation; it's a possibility if they volunteer.").

[70]         Attachment A-3.

(37)  Because of the volume of produced pay data and extent of non-useful information, as well as peculiarities and discrepancies across pay entries, a systematic approach was taken in extracting shift information.  Additionally, throughout the data preparation process, I adopted a conservative approach.  For example, the systematic approach assigned low shift counts (*i.e.*, 1–4 shifts) in the vast majority of situations, and only assigned high shift counts in select situations where there was substantial information yielding a high degree of confidence in the accuracy of the higher count.  If a VWP worker worked multiple shifts on a single day, these double (or triple) shifts were not recorded in the pay data.  Consequently, my approach likely *undercounted* the total number of shifts performed by VWP workers, and thus *underestimated* the total number of hours worked.  This means that the approach may have overestimated the actual hourly wage paid to detained individuals and underestimated damages to the class.

(38)  To derive the number of workdays, and thus shifts, associated with each pay entry, dates worked by a detainee were extracted from the *deposit from* variable.  The pay data also contain a *date* variable, which appears to record the date on which the payment was issued, as opposed to the date on which work was performed.  If I extracted a single, clean date from the *deposit from* variable, and the extracted date was within 31 days of the *date* variable, I assumed the pay entry corresponded to a single workday, and thus single shift.  This type of pay entry accounted for approximately 87.7% of the total entries in the combined, unredacted data.[71]

(39)  For more complicated cases, my general approach was, first, to extract dates.  I then counted total dates as workdays, assumed one shift per workday, and assigned that quantity of shifts worked to the given pay entry, accordingly.  For an exhaustive list of steps performed in preparing the data for analysis, along with example entries to illustrate the step described, see Attachment A-3.

## 5.3.    Analysis approach

(40)  I calculate damages for both the Forced Labor class and the Unjust Enrichment class.  Note that the damages estimates for the two classes are *not* additive.  The damages analysis is based on a comparison of the estimated hourly wages paid to VWP participants for their labor at Stewart and a comparison wage, *i.e.*, the market or contractual wage that CoreCivic would have paid non-detained individuals to perform the same labor.  The difference between the

---

[71]     Attachment H-2.

829,315 pay entries fall into this category, out of 945,108.  829,315 / 945,108 = 87.7%.

estimated paid hourly wage and the comparison wage was then multiplied by the total number of hours worked throughout the appropriate damages period. That product is the estimate for the value of VWP labor to CoreCivic.

(41)    I needed to determine two additional inputs before calculating damages: (1) average shift length and (2) a comparison wage. Using the shift estimation done in the data preparation steps described in the section above, I calculated the average hourly rate for VWP workers using the average shift length and the produced paid wage from the VWP pay data. Then, using the comparison wage, I calculated the damages for those estimated worked hours.

(42)    This approach is conservative because its reliance on the VWP pay data does not account for instances where CoreCivic remunerated VWP participants using non-monetary means not reflected in the VWP pay data. For example, there is evidence in the documents and data that indicates a pattern whereby CoreCivic paid VWP participants in phone cards, occasionally for working additional shifts. For example:

a.    [72]

b.    [73]

c.    <u>Former Assistant Chief of Security at Stewart, Freddie Hood (2021),</u> testified (2021) that phone cards were used as compensation in instances where a VWP participant worked more than one shift per day.[74] Mr. Hood explained that non-monetary incentives were necessary in such situations owing to deficiencies in CoreCivic's payments system that prohibited CoreCivic from paying VWP participants in cash for more than one shift per

---

[72]    ████████████████ (CCBVA0000152098–99).

[73]    ████████████████ (CCBVA0000198558).

[74]    Freddie Hood, Dep. Tr., 10/22/2021, at 111:16–112:3. ("And so when they worked taking out the trash, money is deposited in their account as the payment for their job as a trash worker, right? A. Yes, ma'am. Q. And then if that worker also waxes and buffs the hallways -- A. Right. Q. --they get to choose what their payment is, right? A. Well they -- yeah, they could choose whether they wanted a phone call, commissary item, you know, extra tray.")

---

day.[75]  Mr. Hood also noted that CoreCivic employed additional incentives beyond phone cards in these situations, including commissary items or extra servings of food.[76]

(43)    In addition to the above instances, I understand, based on emails produced by CoreCivic, that CoreCivic ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████[77] ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ █████████.[78] ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████.[79]

(44)    I conclude that my damages analysis accounts for only a portion of the labor worked by VWP participants.  Instances where VWP participants received phone cards for hours worked, as well as instances where ██████████████████████████████████████████████ are hours that are not, as I understand it, reflected in the VWP pay data, and thus, are not captured by my analysis.

(45)    Additionally, the VWP pay data that have been produced by CoreCivic through the time of submission of this report are through December 2020.[80]  As such, the analysis provided herein estimates only damages through the end of these data though I understand plaintiffs are entitled to damages through the date of final judgment in this matter.  Since damages after

---

[75]    Freddie Hood, Dep. Tr., 10/22/2021, at 112:11–1112:17. ("Q. Whose – where did you – why was that your understanding that you couldn't pay them twice? A. The system wouldn't allow us to pay them twice. Q. So it was an issue with the computer system that y'all used to process the payments? A. Yes, ma'am.")

[76]    Freddie Hood, Dep. Tr., 10/22/2021, at 111:16–112:3. ("And so then when they worked taking out the trash, money is deposited in their account as the payment for their job as a trash worker, right?  A. Yes, ma'am. Q. And then if that worker also waxes and buffs the hallways -- A. Right. Q. --they get to choose what their payment is, right?  A. Well they -- yeah, they could choose whether they wanted a phone call, commissary item, you know, extra tray.")

[77]    ████████████████████████████████████ (CCBVA0000198559).

[78]    ████████████████████████████████████ (CCBVA0000229397–9400).

[79]    ████████████████████████ (CCBVA0000197030).

[80]    Attachment B-2.

the end of the data are not currently estimated, I reserve the right to amend my analysis if and when updated data are produced.

### 5.3.1.  Average shift length

(46)  There is varying information on the average length of a shift at Stewart.  Evidence includes:

a.   .[81]

b.  .[82] are occasionally difficult to decipher due to messy handwriting or poor scans, [83] .”[84] .[85]

c.  [86] are often not informative, either due to poor handwriting, to being left blank, or to being incomplete.[87] .[88]

---



[81]  (CCBVA0000118422–CCBVA0000118423).

[82]  See, for example:
(TRINITY-00033645–47).
(TRINITY-00033947–952).
(TRINITY-00035334–35).

[83]  (TRINITY-00033645–38710).

[84]  (TRINITY-00033645–38710).

[85]  (TRINITY-0003364538710).

[86]  (CCBVA0000256314–6580).

[87]  See, for example:
(CCBVA0000256314–6580, at CCBVA0000256372–374, CCBVA0000256414–15).

[88]  See, for example:
(CCBVA0000256314–6580, at CCBVA0000256565).



d. ███████████████████████████   ███████████████████████████
████████   ████[89]████████████████████████████████   ████████
████████████████.[90]

e. <u>Assistant Chief of Security at Stewart, Terrence Lane (2021)</u>, testified that shift length ranges from two hours to eight hours depending on the role performed.[91]

f. <u>Former Assistant Chief of Security at Stewart, Freddie Hood (2021)</u>, testified that kitchen workers tended to work eight-hour shifts.[92]

g. <u>Former Assistant Warden at Stewart, Harrell Gray (2021)</u>, testified that ████████████
███████████████████████████████████████████████████
████████.[93]

h. <u>Regional Vice President at Trinity, Susan Huffman (2021)</u>, testified that kitchen workers worked six-hour shifts.[94]

(47) I estimate that the average shift length is six hours.  This is likely a conservative estimate. The most common position identified in CoreCivic's produced pay data was "Kitchen Worker,"[95] and, per the evidence cited above, kitchen workers tended to work eight-hour shifts. The conservative nature of this approach is also underscored by the fact that VWP workers are assumed to have worked just one shift per day recorded.  While there is some limited evidence that some shifts may have lasted under six hours, there is a great deal of evidence that shifts for the most commonly represented type of worker lasted six hours to more than eight hours and, also, that workers could perform multiple shifts in a single day.  These facts ultimately support as conservative the assumption of six-hour shifts for damages calculations.

---

[89] ██████████████████████████████████ (CCBVA0000069503).

[90] ████████████████████████████ (CCBVA0000069503).

[91] Terrence Lane, Dep. Tr., 10/5/2021, at 91:22–92:5, 105:4–105:5, 105:24–106:2, and 120:11–120:13.

[92] Freddie Hood, Dep. Tr., 10/22/2021, at 110:19–111:11. ("A. So you can only pay them one time a day. So to compensate them for their voluntary work program, we'll allow them to choose whether they want a commissary item, an extra try or phone time. The only workers that worked the full eight hours were kitchen workers because they were on a shift.")

[93] Harrell Gray, Dep. Tr., 10/27/2021, at 210:7–210:11. ████████████████████████████████████
████████████████████████████████████████████████████
████████

[94] Susan Huffman, Dep. Tr., 7/14/2021 at 136:12–136:14. ("Q And how long are the shifts at Stewart? A If they have three shifts, it would be six hours.")

[95] Attachment H-4.

### 5.3.2.  Comparison wages

(48)  Without the availability of detained individuals to perform inexpensive labor, CoreCivic would need to source, hire, and pay non-detained individuals from the local labor market.  As I understand it, VWP participants perform labor that contributes directly and substantially to the daily operations of Stewart Detention Center.[96]  For example, former Case Manager at Stewart, Matthew Moye, testified that ███████████████████████████ ███████████████████████████████████████████  and that not having enough VWP participants working in the kitchen would pose a risk to the "safety, security[,] and sanitation of the facility."[97]

(49)  CoreCivic recognizes the importance of VWP participants to Stewart's operations.  For example, Assistant Chief of Security at Stewart, Terrence Lane, testified that he or another CoreCivic staff member would perform the duties of an "administration porter" without the availability of a VWP participant to do so.[98]  Susan Huffman, Regional Vice President at Trinity Services Group ("Trinity"), provided similar commentary.[99] ████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████.[100]

---

[96]    Amended Complaint, 10/16/2020, at ¶¶ 27, 30, 32.

See, also:

Matthew Moye, Dep. Tr., 10/21/2021, at 48:25–49:16. ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Troy Pollock, Dep. Tr., 9/30/2021, at 54:20–55:3. ("Q. To be clear, you needed to find a solution because the detained worker shortages could interrupt operations? A. Yes. We had a very high turnover of inmates, especially the ones that were from South America. There was an extremely high turnover with that administration, so we couldn't keep workers in the kitchen.")

[97]    Matthew Moye, Dep. Tr., 10/21/2021, at 55:11–56:6,64:4–64:7. ("Q. And not having enough detained workers in the kitchen places at risk the safety, security and sanitation of the facility? A. My opinion, yes.").

[98]    Terrence Lane, Dep. Tr., 10/5/2021, at 90:20–91:10. ("Q. If there were no volunteers for the administration porter job, who would do that cleaning?  A. If there were no volunteers for that job, ma'am?  Q. Uh-huh.  A. We would do that cleaning. Q. When you say "we," do you mean the assistant chief security or who?  A. Me -- yes, ma'am.  It would be the assistant chief of security would be one of those staff members that would have to ensure the cleanliness and sanitation of that facility.  Q. The CoreCivic or Stewart staff would be doing the cleaning; is that right?  A. Yes, ma'am.")

[99]    Susan Huffman, Dep. Tr., 7/14/2021 at 90:15-90:18 ("Q. When detained workers don't show up to work, then Trinity staff is required to perform those duties?  A. CoreCivic will supplement. They bring workers in, but the job needs to get done.").

[100]   ██████████████████████████ TRINITY00000704–865, at TRINITY00000735–37) ( ████████

---

(50)   Mr. Lane confirmed that, in instances where a full-time CoreCivic employee performed the work normally performed by a VWP participant, the CoreCivic employee would receive their normal pay and benefits.[101] ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████.[102]  Furthermore, the duties performed by VWP participants and full-time employees working in similar roles were comparable. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████.[103]

(51)   The federal minimum wage is a reasonable choice as the comparison wage.  I assume that, absent the availability of detained individuals to perform labor at Stewart, CoreCivic would have paid employees at least the federal minimum wage to perform the same labor.  The Georgia Department of Labor states the following on its website: "Georgia's minimum wage is

---



")

[101]   Terrence Lane, Dep. Tr., 10/5/2021, at 91:11–15.  ("Q. And if CoreCivic staffed to do that cleaning, they would receive their normal pay; right?  A. Yes, ma'am. Q. And their normal benefits, right? A. Yes, ma'am.")

[102]   . (TRINITY00000704–865, at TRINITY00000735–-38)

Ms. Huffman also testified in the current matter that CoreCivic employees who filled in for kitchen positions in an absence of detained individual labor during the COVID-19 pandemic would be paid. See:

Susan Huffman, Dep. Tr., 7/14/2021, at 172:19–172:25. ("Q. And you would expect that the CoreCivic employees who filled in for detained workers during the pandemic were paid for their work? A. They're -- correct, you know, CoreCivic employees. Q. And CoreCivic employees are paid? A Yes.")

[103]    (TRINITY00000704–865, at TRINITY00000745)

See also, from Ms. Huffman's deposition in the current matter:

Susan Huffman, Dep. Tr., 7/14/2021, at 90:1–90:9. ("Q. And among the tasks we just discussed in section 7, Inmate Workers of the contract, do Trinity employees perform any of the above tasks on a regular basis? A. Yes. Storeroom, serving line, cooking, cleaning floors, yeah. Q. And that's true for Trinity workers at Stewart specifically? A. Yes.")

---

$5.15 per hour, however, with some limited exceptions, the federal minimum wage rate applies."[104] The federal minimum wage was set at $6.55 per hour effective July 24, 2008 and was increased to $7.25 per hour effective July 24, 2009.[105] This represents the lower-bound but-for wage that CoreCivic would need to pay workers at Stewart, absent participation in the VWP resulting from the alleged coercive behavior.

(52) However, this wage rate may be too low. There is a contract (and related amendments[106]) between ICE and CoreCivic, which, among other terms, delineates the hourly wages owed to individuals performing various occupations under the contract between the two parties.[107] It is economically plausible that in the but-for world absent the alleged coercive behavior, CoreCivic would need to pay hired workers pursuant to the terms of this contract and related amendments and would need to offer the wages and benefits set forth in those agreements.

(53) I sought to determine the rates at which such full-time employees have been paid and the benefits they received, if any, under agreements with ICE. I identified amendments to a

---

[104] Georgia Department of Labor, Minimum Wage, https://dol.georgia.gov/minimum-wage (accessed 12/20/2021).

CoreCivic does not fall into any of the exempt categories as defined by Georgia's minimum wage statute. Furthermore, the statute indicates that the Georgia minimum wage does not apply to "any employer who is subject to the minimum wage provisions of any act of Congress as to employees covered thereby if such act of Congress provides for a minimum wage which is greater than the minimum wage which is provided for in this Code section." See:

Official Code of Georgia Annotated, § 34-4-3 (2001).

I note also that the U.S. Department of Labor's Wage and Hour Division website states that "Employers subject to the Fair Labor Standards Act must pay the current Federal minimum wage of $7.25 per hour." See:

U.S. Department of Labor Website, State Minimum Wage Laws, https://www.dol.gov/agencies/whd/minimum-wage/state, at "Georgia" (accessed 12/15/2021).

Finally, I note that CoreCivic's employees do not fall under categories of employers and employees exempt from the federal minimum wage; therefore, CoreCivic is subject to the Fair Labor Standards Act and the federal minimum wage applies. Exemptions noted under the Fair Labor Standards Act include executive, administrative, and professional employees; farm workers; employees of certain seasonal amusement/recreational establishments; and casual babysitters and persons employed to the elderly or infirm. See:

Fair Labor Standards Act, 29 U.S.C. § (1938).

[105] U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

Note that the change in minimum wage only affects the analysis for the Forced Labor class, as the change happened prior to the earliest pay entry employed in the analytical dataset for the Unjust Enrichment labor class.

[106] The IGSA amendments are also called modifications or mods. As such, I use the terms "amendments," "modifications," and "mods" interchangeably when referring to these IGSA agreements.

[107] CoreCivic, Inter-Governmental Service Agreement: Stewart County, Georgia, 6/30/2006 (CCBVA0000000340–45).

For an overview of the IGSA modifications with wage determinations, see Attachment E-1.

---

contract between ICE and Stewart County, Georgia, that list CoreCivic as "Sub-Contractor."[108] Many of these amendments contain a "REGISTER OF WAGE DETERMINATIONS UNDER THE SERVICE CONTRACT ACT;" in addition, these contracts often contain a year-specific version of the following note:[109]

> Under Executive Order (EO) 13658, an hourly minimum wage of $10.35 for calendar year 2018 applies to all contracts subject to the Service Contract Act for which the contract is awarded (and any solicitation was issued) on or after January 1, 2015.  If this contract is covered by the EO, the contractor must pay all workers in any classification listed on this wage determination at least $10.35 per hour (or the applicable wage rate listed on this wage determination, if it is higher) for all hours spent performing on the contract in calendar year 2018.  The EO minimum wage rate will be adjusted annually.  Additional information on contractor requirements and worker protections under the EO is available at www.dol.gov/whd/govcontracts.

(54)    Furthermore, for the 2018 amendment cited above, a stated purpose is to "[i]ncorporate the attached WDOL Wage Determination No. 2015-4503 Rev. 10 dated July 03, 2018."[110]  Other amendments to the same contract contain time-specific versions of the above note,[111] and each wage determination schedule contains approximately the same set of occupations but with hourly wages that stay the same or increase with each successive amendment.[112]  Based on the foregoing, I assume that wage determination schedules enclosed in the amendments to the contract between ICE and CoreCivic set the rates at which CoreCivic employees are to be paid for work performed at Stewart Detention Center.  These wage determination schedules

---

[108]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141).

[109]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0131).

[110]    CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0129).

[111]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 11/16/2011 (CCBVA0000000357–60, at CCBVA0000000357).

CoreCivic, Amendment of Solicitation/Modification of Contract, 6/19/2014 (CCBVA0000000392–96, at CCBVA0000000392).

[112]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 9/24/2019 (ICE-Barrientos 0229–50, at ICE-Barrientos 0233, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ").

CoreCivic, Amendment of Solicitation/Modification of Contract, 6/16/2020 (ICE-Barrientos 0262–75, at ICE-Barrientos 0265, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

list a variety of occupations, hourly wage rates at which workers in each occupation are paid, and benefits to be paid to workers pursuant to the contract between ICE and CoreCivic.  Figure 2 below is a screenshot of a sample portion of the wage determination schedule under the 2018 amendment.

(55)   Note that the amendments with wage determinations (or wage determination-related language) that I have reviewed as of the submission of this report cover 2011 through 2020.[113] Thus, for any years prior to the effective date of the 2011 amendment, I conservatively assume the comparison wage to be the applicable federal minimum wage.  I further note that there are fewer jobs listed in earlier amendments.  As such, for any years for which there is not a wage determination for a comparable occupation to VWP roles identified in the VWP pay data, I conservatively assume the minimum wage as the comparison.[114]   As an additional conservative measure, I always utilize the wage determination schedule of the earlier year between amendments (*e.g.*, I use 2011 wages for those pay records between the effective date of the 2011 contract amendment wage determination and the effective date of the 2014 contract amendment wage determination).

---

[113]   I respectfully reserve the right to update my analysis if any other relevant amendments become available to me after the submission of my report.

[114]   I discuss the identification of comparable occupations listed in the contract amendments to roles identified in the VWP pay data in greater detail below.

**Figure 2: Screenshot of Example Wage Determination Schedule[115]**



```
State: Georgia

Area: Georgia Counties of Schley, Stewart, Talbot, Taylor, Troup, Webster

                    **Fringe Benefits Required Follow the Occupational Listing**
OCCUPATION CODE - TITLE                                    FOOTNOTE            RATE
01000 - Administrative Support And Clerical Occupations
   01011 - Accounting Clerk I                                                 13.28
   01012 - Accounting Clerk II                                                15.15
   01013 - Accounting Clerk III                                              17.27
   01020 - Administrative Assistant                                          19.27
   01035 - Court Reporter                                                     16.17
   01041 - Customer Service Representative I                                 11.17
   01042 - Customer Service Representative II                                12.57
   01043 - Customer Service Representative III                               13.71
   01051 - Data Entry Operator I                                             12.11
   01052 - Data Entry Operator II                                            13.34
   01060 - Dispatcher, Motor Vehicle                                         17.44
   01070 - Document Preparation Clerk                                        12.88
   01090 - Duplicating Machine Operator                                      12.88
   01111 - General Clerk I                                                   11.78
   01112 - General Clerk II                                                  12.85
   01113 - General Clerk III                                                 14.43
   01120 - Housing Referral Assistant                                        18.03
   01141 - Messenger Courier                                                 11.05
   01191 - Order Clerk I                                                     12.39
   01192 - Order Clerk II                                                    13.51
   01261 - Personnel Assistant (Employment) I                               14.60
   01262 - Personnel Assistant (Employment) II                              16.33
   01263 - Personnel Assistant (Employment) III                             18.20
   01270 - Production Control Clerk                                          20.91
   01290 - Rental Clerk                                                      12.72
   01300 - Scheduler, Maintenance                                           14.46
   01311 - Secretary I                                                       14.46
   01312 - Secretary II                                                      16.17
   01313 - Secretary III                                                     18.03
```

(56)    From the *deposit from* memo in the VWP pay data, occupations were identified for pay entries, where possible. The following occupations were identified in the *deposit from* memos. ██

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████.[116] The occupation could not be identified in the remaining 43.9% and 32.8% of estimated shifts for the Forced Labor class and Unjust Enrichment class, respectively.[117]

(57)    I determined the appropriate comparison wage rate for each occupation using the contract amendments discussed above. Using VWP job descriptions produced by CoreCivic, I matched

---

[115]    CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0131).

[116]    Attachments E-2 and E-3.

[117]    Attachments E-2 and E-3.

VWP occupations with the roles listed on the contract amendments.[118]  In cases where multiple occupations could have been appropriate for comparison, I chose the occupation with the lowest hourly wage.  In addition, I reviewed the Department of Labor's Service Contract Act ("SCA") index of occupation descriptions corresponding to the roles listed on the contract amendment to ensure concordance between a given VWP role and its designated comparison occupation.[119]

(58)    The job designations in the VWP pay data do not always precisely match the job titles in the VWP job descriptions.  For example, the VWP pay data identify a ███████ role; however, the VWP job descriptions list a "porter" position and do not list a position specifically entitled "janitor."  Based on the description of the role, I conclude that the ██████ title in the pay data most likely matched the "porter" job description.  Furthermore, Jacqueline Norman, Assistant Warden at CoreCivic's Trousdale Turner Correctional Center and former Chief of Unit Management at Stewart, confirmed that a CoreCivic janitor would perform the role of a VWP porter absent the availability of a detained individual to perform porter work.[120]  Additionally, the Department of Labor's SCA occupation description for the "Janitor" role lists similar functions and roles to those described for a "Hall Porter" or "Front Office Porter" in the VWP job descriptions.[121]  Accordingly, I selected the hourly wage listed for "Janitor" in the contract amendment for pay entries with ████████ in the *deposit from* memo.  Entries with ███████ or ████████ in the *deposit from* memo in the VWP pay data were also identified as janitorial roles on the assumption that such roles encompassed janitorial duties such as groundskeeping and trash collection or removal.  Although my comparisons are accurate to a reasonable degree of economic certainty based on the information I have reviewed, in the event that a more appropriate comparable wage (be it another contract wage, the federal minimum wage, or the Executive Order minimum wage, to be discussed later in this section) is determined, it is my opinion that I could easily adjust my analysis to account for this change.

---

[118]    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710).

[119]    Department of Labor, "SCA Directory of Occupations," available at:
https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf.

[120]    Jacqueline Norman, Dep. Tr. 11/5/2021, at 82:7–82:19. ("Q For the administrative porter, if there were no volunteers for this position, who would do that job? A The staff would do it. Q What staff? A Whichever staff that was available, and the warden -- myself or the assistant warden or the warden asked to step in and assist with those tasks. Q Would a CoreCivic janitor have to do the job? A Yes. We had a janitor, but if the janitor was not available, then like I stated a staff member would assist and assist with those jobs.")

[121]    Department of Labor, "SCA Directory of Occupations," at 32, available at:
https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf.

CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004689–692).

(59)   Some cases were more complex.  For example, the VWP job descriptions produced by CoreCivic list both "Food Preparation Worker" and "Cook" as kitchen-related occupations.[122]  However, the *deposit from* memos in the pay data generally do not specify ██████████████████ ████████████████████████████████████.  In keeping with the conservative nature of my analysis, while the contract amendment lists hourly rates for each of the similarly named positions "Cook I," "Cook II," and "Food Service Worker," I selected the position holding the lowest hourly rate, "Food Service Worker," as the comparison wage for *all* kitchen workers.[123]  Furthermore, the Department of Labor's SCA occupation description for the "Food Service Worker" role lists similar functions to those described in the VWP job description for "Food Preparation Worker" and "Cook."[124]  Additionally, Susan Huffman ██████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████.[125]

(60)   For other positions identified within the pay data, a more thorough review of the responsibilities listed in the VWP job descriptions was necessary, especially for porter roles. Many pay entries specify ████████████████████ as the job performed in the *deposit from* memo.  Pay entries with memos containing ██████████ were thus identified as ███████, in addition to pay entries with memos containing ███████  The VWP job descriptions list multiple positions corresponding to porters, including "Front Office Porter," "Hall Porter," and "Pod Orderly."[126]  The descriptions for "Front Office Porter" and "Hall Porter" appear to be janitorial in nature, and both list "Perform general janitorial duties according to the Unit Housekeeping Schedule" as the primary job function.[127]  As seen in Figure 3 below, there is substantial overlap in the job descriptions for both roles.

---

[122]   CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004697–4700).

[123]   See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0132).

[124]   Department of Labor, "SCA Directory of Occupations," at 25, available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf.

CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004697–4700).

[125]   Susan Huffman, Dep. Tr., 7/14/2021 at 73:1–73:20. ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

[126]   CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004689–692, CCBVA0000004695–96).

[127]   CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004689–692).

---

**Figure 3: Screenshots of VWP Job Descriptions for Front Office and Hall Porter Jobs[128]**

INMATE/RESIDENT JOB DESCRIPTION

JOB TITLE: Front Office Porter
PLACE OF WORK: Administration Area
AREAS OF ACCESS: Administration Area
SUPERVISOR: Warden's Designee/Utility Officer
SUPERVISION: Direct/Indirect
DUTIES:
A. Perform general janitorial duties according to the Unit Housekeeping Schedule.
B. Assist in preparing area for special programs.
C. Report needed supplies or repairs.
D. Adhere to all safety rules and regulations.
E. Maintain a good working relationship with fellow inmate/resident workers and staff Supervisors.
F. Sweep, mop, empty trash, vacuum, and dust
G. Perform other tasks at the direction of a staff member.
SPECIAL INSTRUCTIONS:
Cleaning of administration offices is to be done under direct supervision. There are no requirements for special clothing.

Will eat meals with the general inmate/resident population.

A staff member has explained this job description to me and I have read and fully understand the duty requirements of this job.

Print Inmate/resident Name          Date

Inmate/resident Signature          Date

CCBVA0000004689

---

INMATE/RESIDENT JOB DESCRIPTION

JOB TITLE: Hall Porter
PLACE OF WORK: All Hallways
AREAS OF ACCESS: All Hallways
SUPERVISOR: Shift Supervisor or Designee
SUPERVISION: Direct/Indirect
DUTIES:
A. Perform general janitorial duties according to the Unit Housekeeping Schedule.
B. Perform general floor care duties according to the Floor Care Schedule.
C. Assist in preparing area for special programs.
D. Report needed supplies or repairs.
E. Inventory cleaning supplies and ensure that they are put away properly.
F. Maintain a good working relationship with fellow inmate/resident workers and staff Supervisors.
G. Pick up trash and recycling daily from the dorms.
H. Adhere to all safety rules and regulations.
I. Change mop heads and take to laundry for washing.
J. Performs other tasks at the direction of a staff member.

SPECIAL INSTRUCTIONS:

Will eat meals with the general inmate/resident population.

A staff member has explained this job description to me and I have read and fully understand the duty requirements of this job.

Print Inmate/resident Name          Date

Inmate/resident Signature          Date

CCBVA0000004691

(61)    Furthermore, the VWP job description for the "Pod Orderly" role entails many cleaning and janitorial responsibilities. See Figure 4, below.

---

128    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004689, CCBVA0000004691).

**Figure 4: Screenshot of VWP Job Description for Pod Orderly[129]**

INMATE/RESIDENT JOB DESCRIPTION

| | |
|---|---|
| JOB TITLE: | Pod Orderly |
| PLACE OF WORK: | Pod Currently Living On |
| AREAS OF ACCESS: | Pod Currently Living On |
| SUPERVISOR: | Shift Supervisor or Designee |
| SUPERVISION: | Direct/Indirect |

DUTIES:

A. Assist in preparing area for special programs.

B. Report needed supplies or repairs.

C. Wipe tables and sweep and mop floors.

D. Clean microwaves inside and outside.

E. Remove microwave from stand and clean stand

F. Dust rails, door jams, televisions, back of the stairs, and, dayroom sink area.

G. All supplies are to be inventoried and put away properly after each use.

H. Maintain a good working relationship with fellow inmate/resident workers and staff supervisors.

I. Adhere to all safety rules and regulations.

J. Perform other tasks at the direction of a staff member.

SPECIAL INSTRUCTIONS:

Will eat meals with the general inmate/resident population.

A staff member has explained this job description to me and I have read and fully understand the duty requirements of this job.

| | |
|---|---|
| _____ | _____ |
| Print Inmate/resident Name | Date |
| _____ | _____ |
| Inmate/resident Signature | Date |

CCBVA0000004695

(62)　There is no position in the contract amendment entitled "Porter." However, as discussed above, CoreCivic staff testified that janitors and porters are functionally the same.[130] Accordingly, I selected the hourly wage for "Janitor" for porters.

(63)　The contract amendments also list a variety of ranges for workers in medical positions, such as "Medical Assistant," "Nursing Assistant I," and "Nursing Assistant II." However, the VWP job description for "Medical/Clinic Worker" is more similar to those of the porter roles. See Figure 5 below.

---

[129]　CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004695).

[130]　Jacqueline Norman, Dep. Tr. 11/5/2021, at 82:7–82:19. ("Q For the administrative porter, if there were no volunteers for this position, who would do that job? A The staff would do it. Q What staff? A Whichever staff that was available, and the warden -- myself or the assistant warden or the warden asked to step in and assist with those tasks. Q Would a CoreCivic janitor have to do the job? A Yes. We had a janitor, but if the janitor was not available, then like I stated a staff member would assist and assist with those jobs.")

---

**Figure 5: Screenshot of VWP Job Description for Medical/Clinic Worker[131]**

INMATE/RESIDENT JOB DESCRIPTION

JOB TITLE: Medical/Clinic Worker
PLACE OF WORK: Medical Clinic
AREAS OF ACCESS: Medical/Clinic
SUPERVISOR: Shift Supervisor or Designee
SUPERVISON: Direct/Indirect

DUTIES:
A. Perform general janitorial duties according to the Unit Housekeeping Schedule.
B. Sanitize sinks and showers in all assigned areas of clinic, exam room, observation room, etc.
   Ensure proper protective equipment/clothing is used when required.
C. Maintain a good working relationship with fellow inmate/resident workers and staff
   Supervisors.
D. Distribute and maintain adequate cleaning and toiletry supplies for assigned area.
E. Change lines in observation weekly.
F. Report needed supplies and repairs.
G. Adhere to all safety rules and regulations.
H. Perform other tasks at the direction of a staff member.

SPECIAL INSTRUCTIONS:
   No inmate/resident may type, read, file, handle or have access to any record, document or
information sensitive in nature or dealing with another inmate/resident's personal information.
Must be trained in blood spills and clean up and will perform such tasks as needed.
   Will eat meals with general inmate/resident population.
A staff member explained this job description to me and I have read and fully understand the duty
requirements of this job.

_____        _____
Print Inmate/resident Name     Date

_____        _____
Inmate/resident Signature      Date

CCBVA0000004709

(64)    Given this, I selected the wage for "Janitor" to apply to medical workers. Again, this matching strategy is conservative given the increased responsibilities and training suggested by the VWP job description. Furthermore, Jacqueline Norman ███████████████████████████ ████████████████████████████████.[132]

(65)    Though over ███ of estimated shifts for both the Forced Labor and Unjust Enrichment classes correspond to ██████████████ per the *deposit from* memo, the VWP job descriptions produced by CoreCivic do not list a shower worker role.[133] However, the role of "Sanitation Orderly" listed in the VWP job descriptions states that the "Sanitation Orderly" will perform "specific

---

131    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004709).

132    Jacqueline Norman, Dep. Tr. 11/5/2021, at 193:11–193:13. ("█ ████████████████████████████ ██████████

133    Attachments E-2 and E-3.

janitorial duties" in such areas as "Sinks," "Toilets," and "Showers."[134]  This suggests a strong degree of overlap in the functions—even if a different venue—of a "Sanitation Orderly"/shower worker to that of a janitor or porter.  Thus, given that no positions are labeled "Sanitation Orderly" (or anything similar) within the contract amendment, I use the wage for "Janitor" for shower workers.  This is also conservative given higher wages are listed for comparable occupations such as "Laborer, Grounds Maintenance."[135]

(66)    Similarly, the position of "Laundry Worker" does not have a direct counterpart in the contract amendment.  There are a number of similarly titled positions in the contract amendments, such as "Washer, Machine" and "Dry Cleaner."[136]  The VWP job description for "Laundry Worker" lists responsibilities such as "Wash and dry all inmate/resident laundry mops, rags, and miscellaneous laundry using the machines as instructed by the Laundry Manager" and "Return laundry to the dorm laundry after washing."[137]  These roles appear to correspond to the responsibilities listed for "Washer, Machine" in the Department of Labor's SCA job descriptions, so the hourly rate for that position was selected for this group.[138]  I note that its hourly rate is lower than that of "Dry Cleaner."[139]

(67)    The VWP job description that applies to commissary workers is "Commissary Worker/Clerk."[140]  The listed functions of this role contain janitorial components in addition to store clerk-style responsibilities.  See Figure 6 below.

---

[134]    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004707).

[135]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0132).

[136]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0134).

[137]    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004693).

[138]    Department of Labor, "SCA Directory of Occupations," at 64, available at:
https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf

[139]    CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0134).

[140]    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004701).

**Figure 6: Screenshot of VWP Job Description for Commissary Worker/Clerk Job[141]**

INMATE/RESIDENT JOB DESCRIPTION

| | |
|---|---|
| JOB TITLE: | Commissary Worker/Clerk |
| PLACE OF WORK: | Commissary Department |
| AREAS OF ACCESS: | Commissary Department |
| SUPERVISOR: | Commissary Supervisor or Designee |
| SUPERVISION: | Direct/Indirect |

DUTIES:

A.   Assist Commissary Supervisor in filling commissary orders.

C.   Advise supervisor when stock items are getting low.

D.   Perform general janitorial duties according to the Unit Housekeeping Schedule.

E.   Maintain a good working relationship with fellow inmate/resident workers and staff supervisors.

F.   Stock shelves.

G.   Adhere to all safety rules and regulations.

H.   Assist in loading and unloading of freight or other items.

I.   Perform other tasks at the direction of a staff member.

J.   Report any supplies or repairs needed.

SPECIAL INSTRUCTIONS:

There are no special requirements for clothing except for heavy jackets due to inclement/cold weather conditions.

Will eat meals with the general inmate/resident population.

**DISALLOWED INMATE/RESIDENT DUTIES**

Listed below are those duties which commissary inmate/residents may not perform:

1.   No inmate/resident may type, read file, handle or have access to any record, document, or information sensitive in nature or dealing with another inmate/resident's personal information.

2.   Inmate/resident may not operate computer equipment, nor view the computer screen.

3.   Inmate/resident may not open the door of the Commissary.

CCBVA00000047C1

(68)   The contract amendments list a variety of positions that correspond to this role, such as "Stock Clerk," "Personnel Assistant (Employment) I," and "General Clerk I."[142]  The VWP job description of commissary worker overlaps with the functions of both the "Stock Clerk" and "General Clerk I" positions as described in the SCA occupation descriptions provided by the Department of Labor.[143]  However, given the contract amendments list different wages for these roles, I selected the wage for the position with the lowest hourly rate, "General Clerk I" to be conservative.[144]

---

[141]   CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004701).

[142]   See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0131–134).

[143]   Department of Labor, "SCA Directory of Occupations," at 6 and 67, available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf

[144]   The "Commissary Worker/Clerk" role contains both janitorial and clerk responsibilities and holds a higher hourly rate.

(69)    Finally, I identified a number of pay entries pertaining to ███████ jobs, and the VWP job descriptions contain a "Barber" position.[145]  However, I was unable to identify a comparable position for "Barber" in the contract amendments.  Here, I applied the federal minimum wage.[146]

(70)    Table 1 below summarizes the comparison occupations.  For a detailed overview of comparison jobs and associated wages, see Attachment E-8.  Note that, in cases where a comparison job could not be identified or a comparison job was not included in the IGSA modification in effect, the federal minimum wage is applied.[147]  This approach is conservative, especially regarding instances where an occupation was not able to be identified.

---

[145]    CoreCivic, Inmate/Resident Job Descriptions (CCBVA0000004685–4710, at CCBVA0000004685).

[146]    Applying the federal minimum wage is conservative; as I understand it, in a situation like this, CoreCivic would be obligated to submit the position to the Department of Labor to determine the appropriate wage.  Because such a wage would likely be higher that the federal minimum wage, my approach is conservative.  These submissions, called "conformance requests," are further discussed in Section 5.3.3.  As an example, see:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0140–41).

[147]    Attachment E-8.

**Table 1: Comparison Occupation**

| VWP Occupation | Comparison Occupation[148] |
| --- | --- |
| Kitchen Worker | Food Service Worker |
| Porter | Janitor |
| Shower Worker | Janitor |
| Laundry Worker | Washer, Machine |
| Commissary Worker | General Clerk I |
| Janitor | Janitor |
| Medical Worker | Janitor |
| Barber | N/A |
| No Job Identified | N/A |

(71)    As mentioned earlier in this section, IGSA amendments in later years with wage determinations include language about Executive Order ("EO") 13658.[149]  This EO established a minimum wage for contractors of $10.10 to take effect starting in 2015, subject to annual increases to adjust for inflation.[150]  For those years that are covered by this EO, the comparison wages pulled from the IGSA amendment wage determinations may also be too low, for at least some positions.  I have been asked to perform an additional analysis assuming that the IGSA contract amendments are bound to the EO.  The minimum wage for contractors changes annually and goes into effect on January 1 of each year.  Below is a list of the annual wage rates determined by the DOL according to EO 13658:

- 2015: $10.10.[151]

---

[148]    Note that the comparison occupation and associated wage are applied only to those time periods for which an IGSA amendment lists them as a contracted job.  For any periods where there is not a comparison occupation, the minimum wage remains the comparison wage.

[149]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 131).

[150]    Federal Register, "Establishing a Minimum Wage for Contractors," 2/20/2014, available at: https://www.federalregister.gov/documents/2014/02/20/2014-03805/establishing-a-minimum-wage-for-contractors.

[151]    Federal Register, "Establishing a Minimum Wage for Contractors," 2/20/2014, available at: https://www.federalregister.gov/documents/2014/02/20/2014-03805/establishing-a-minimum-wage-for-contractors.

- 2016: $10.15.[152]
- 2017: $10.20.[153]
- 2018: $10.35.[154]
- 2019: $10.60.[155]
- 2020: $10.80.[156]

(72)     Using the same methodology as the comparison wage analysis with differing comparison wage periods (see discussion of the comparison wage analysis in section 5.4.1), I perform this additional EO minimum wage analysis to estimate the value of VWP labor in wages to CoreCivic for both classes.  Specifically, for periods before the EO minimum wage went into effect (pre-2015), the analysis is identical to the comparison wage analysis.  For years in which the EO minimum wage is in effect (2015 onwards), the wage used for comparison is the higher of the EO minimum wage or the comparison contract wage for those VWP pay entries that can be matched with a comparison job.[157]  For those pay entries that cannot be matched with a comparison job, I conservatively assume the comparison wage is the federal minimum wage.  See Attachments F-9 and F-10.  To the extent that the EO minimum wages apply, this analysis provides a conservative estimate of damages under this pay structure.

### 5.3.3.  Comparison benefits

(73)     Damages were also calculated based on the value of the VWP labor to CoreCivic in terms of owed benefits, as an addition to the occupation-specific effective comparison wage analysis

---

[152]     Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2017," 9/20/2016, available at:  https://www.federalregister.gov/documents/2016/09/20/2016-22515/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2017.

[153]     Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2017," 9/20/2016, available at:  https://www.federalregister.gov/documents/2016/09/20/2016-22515/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2017.

[154]     Federal Register, "Minimum Wage for Federal Contracts Covered by Executive Order 13658, Notice of Rate Change in Effect as of January 1, 2022," 9/16/2021, available at: https://www.federalregister.gov/documents/2021/09/16/2021-19995/minimum-wage-for-federal-contracts-covered-by-executive-order-13658-notice-of-rate-change-in-effect.

[155]     Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2020," 9/19/2019, available at: https://www.federalregister.gov/documents/2019/09/19/2019-19673/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2020.

[156]     Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2020," 9/19/2019, available at: https://www.federalregister.gov/documents/2019/09/19/2019-19673/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2020.

[157]     Language in the IGSA contract amendments suggest that this is the correct approach for a contractor to conform to EO 13658.  See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0131).

---

discussed in Section 5.3.2.  This accounts for the fact that, absent access to forced detained individual labor, CoreCivic would have paid employees both an hourly wage and benefits.  See discussion in Section 5.3.2.  The Affordable Care Act requires that employers with 50 or more full-time employees offer health insurance or pay a fine.[158]  Further, the contract between ICE and CoreCivic states that all employees performing listed occupations receive a defined hourly rate of health benefits.[159]  Other than health benefits, additional benefits listed include vacation, holidays, and uniform allowance.  However, I conservatively include only the health benefits in the analysis; these additional benefits are excluded.  The comparison benefits determined to be owed to VWP participants across occupations that were able to be paired to a listed contract occupation are listed in Attachment E-8.

(74)    The contract (and related amendments) between ICE and CoreCivic requires that CoreCivic submit a "conformance request" consisting of "proposed rate(s)" for all non-listed occupations (*e.g.*, "Barber") such that the Wage and Hour Division of the Department of Labor can approve, modify, or disapprove the action related to a final determination of wage rate and/or fringe benefits prior to the start of work for employees performing such occupations.[160]  Thus, under the contract, any then-non-listed occupations would become listed occupations after this request and determination.  As such, contracted workers performing any occupation, whether "Barber" or "Kitchen Worker," would be employed under a listed occupation.  Given the contract amendments state benefits are owed to "ALL OCCUPATIONS LISTED ABOVE,"[161] as an additional analysis, I calculate the value of benefits assuming that comparison benefits would have been paid to any external worker hired to perform work at Stewart, regardless of comparison job identified.  This would also extend benefits to pay entries for which occupation could not be determined, given that for any contracted job CoreCivic would have been required to submit a conformance request, but would not extend to those pay entries that fall within a

---

[158]    Patient Protection and Affordable Care Act, § 1513 (2010) at 155–159.

[159]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0138).

[160]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 11/16/2011 (CCBVA0000000357–360, at CCBVA0000000359–360).

Note that the contractual language of the conformance requests slightly differs between amendments.

[161]    See, for example:

CoreCivic, Amendment of Solicitation/Modification of Contract, 8/1/2018 (ICE-Barrientos 0128–141, at ICE-Barrientos 0138).

---

time frame without a wage determination IGSA modification in place.  See Attachments E-11 and E-12.

## 5.4.    Estimated damages

### 5.4.1.    Forced Labor class

(75)    The Forced Labor class consists of detained individuals who performed work at Stewart from ten years prior to the date of the original complaint through the final judgment in this matter. The pay data analyzed for the Forced Labor class contain 889,053 analyzable pay entries for 32,103 unique individuals from December 23, 2008 to December 23, 2020.[162]  I estimated the Forced Labor class to have worked 5,532,204 hours during the class period and to have received $2,289,524 in total wages, leading to an estimated average hourly wage of $0.41 over the entire class period.[163]

(76)    Using the federal minimum wage as a comparison, I separate the Forced Labor class damages period into periods before and after the minimum wage increase on July 24, 2009.  The estimated hourly wage paid to VWP participants is calculated for both periods.  Prior to the wage increase, the hourly wage was $0.43 and after the increase, it was $0.41.[164]  Next, I calculated the difference between the estimated paid hourly wage and the federal minimum wage—$6.12 per hour prior to the federal minimum wage increase and $6.84 after.[165]  Finally, these differential rates are multiplied by the total number of hours worked in each respective sub-period to derive the total value to CoreCivic of the work performed by the detainees.[166] This results in approximately $37.6 million worth of value to CoreCivic of the work performed by detainee VWP workers in the Forced Labor class, absent benefits and assuming a but-for hourly rate of the minimum wage.

(77)    Using the comparison contract wages, based on the comparison occupations shown in in Table 1, and the proportions of shifts in each occupation in the given comparison wage period, I calculate a weighted average comparison wage for each comparison wage period, based on

---

[162]    Attachment B-2.

[163]    Attachment D-4.

[164]    Attachments D-4.

[165]    $6.55 - $0.43 = $6.12; $7.25 - $0.41 = $6.84.

[166]    Attachments D-5 and D-6.

the appropriate IGSA modification contract and the defined wage rates therein.[167]  I apply the effective comparison wage to the effective hourly rate paid to detainees and the number of hours worked (per comparison wage period) to calculate an alternative estimate of the value to CoreCivic of the work performed by detainee workers, that is, economic damages.[168]

(78)    Applying the same methodology employed in the federal minimum wage damages analysis to determine the value of unpaid wages, the differential wage rate between the comparison effective wages and the estimated hourly wage paid to VWP participants is multiplied by the total hours worked in the Forced Labor class damages period.[169]  This results in an estimated value of the work performed by detainee VWP workers in the Forced Labor class, absent benefits and assuming a but-for hourly rate based on the effective comparison wages, of approximately $40.7 million.[170]

(79)    For the EO minimum wage analysis, I apply a similar methodology as in the comparison wage analysis, with different comparison wage periods to account for the annual EO minimum wage rate changes.  I calculate a weighted average comparison wage for each comparison wage period and EO year, based on the appropriate IGSA contract amendment-defined wage rates and annual EO minimum wage.[171]  Then the differential wage rate between the calculated effective wage and the estimated hourly wage paid to VWP participants is multiplied by the total hours worked in the Forced Labor class damages period.[172]  The estimated value of labor in terms of wages, absent benefits and assuming a but-for hourly rate based on the effective wage calculated using the comparison contract wages and EO minimum wages, are approximately $42.2 million.

(80)    As discussed in Section 5.3.3, I also estimate damages constituting the value of benefits owed to hired workers in the but-for world.  This is estimated in two ways.  First, I assume benefits would have been owed only to those pay records for which a comparison job can be matched.  Second, I assume that, given the discussion in Section 5.3.3 relating to conformance requests, benefits would have been owed to *all* hired workers and are universally applied.  For the first analysis, using proportions of shifts in each occupation in the given comparison wage period,

---

[167]    Attachments E-9 and E-10.

[168]    Attachments E-11 and E-12.

[169]    Attachment E-11.

[170]    Attachment E-11.

[171]    Attachment F-8.

[172]    Attachment F-10.

I calculate a weighted average value of hourly benefits for each comparison wage period, based on the appropriate IGSA contract amendment and the defined benefits therein.[173]  Then, this effective rate was multiplied by the total hours worked during the Forced Labor period to determine that the value of VWP labor to CoreCivic in terms of benefits is approximately $6.3 million through the Forced Labor class period, if considering hourly benefits only for listed comparison occupations.[174]  In the second analysis, when applying benefits universally to all jobs across time periods with an IGSA wage determination in effect, the value of the VWP labor to CoreCivic in terms of benefits is approximately $16.7 million.[175]

### 5.4.2.  Unjust Enrichment class

(81)    The Unjust Enrichment class consists of detained individuals who performed work at Stewart from four years prior to the date of the original complaint through the final judgment in this matter.  The pay data analyzed for the UE class contain 531,631 analyzable pay entries for 13,719 unique individuals from April 17, 2014 to December 23, 2020.[176]  I estimated the Unjust Enrichment class to have worked 3,264,180 hours during the class period and to have received $1,442,513 in total wages, leading to an estimated average hourly wage of $0.44 over the entire class period.[177]

(82)    For the Unjust Enrichment class, a higher number of specific occupations performed could be identified, with notable increases to the proportion of shifts corresponding to porters and shower workers.[178]  Using the federal minimum wage as a comparison, the value to CoreCivic of the VWP labor during the UE class period is approximately $22.2 million.[179]  Using the effective comparison wages calculated via the distribution of occupations performed and occupation-specific comparison wages, the value to CoreCivic of the VWP labor totaled approximately $25.1 million during the Unjust Enrichment class period.[180]  Using the effective

---

[173]    Attachment E-9.

[174]    Attachment E-11.

[175]    Attachment E-11.

[176]    Attachment B-2.

[177]    Attachment D-4.  Much of the Unjust Enrichment class damages analysis follows the same principles used in the Forced Labor class damages analysis, performed over the shorter damages period.  The attachments referenced within the section above regarding the Forced Labor class damages analysis often include additional columns for the Unjust Enrichment class calculations or are calculated following the same principles in a separate attachment.

[178]    Attachment E-3.

[179]    Attachment D-6.

[180]    Attachment E-12.

comparison wages calculated using occupation-specific comparison wages and the EO minimum wage, the value to CoreCivic of the VWP labor totaled approximately $26.6 million during the Unjust Enrichment class period.[181]

(83)    As with the Forced Labor class, the value of VWP labor to CoreCivic in terms of benefits were calculated for the Unjust Enrichment class, in addition.  An effective rate for benefits was calculated, then multiplied by the total hours worked during the Unjust Enrichment period.[182] When considering unpaid benefits for comparison occupations only, these calculations resulted in approximately $5.9 million of value to CoreCivic of VWP labor in terms of benefits in the Unjust Enrichment class period.[183]  The same calculations were performed in applying benefits to all jobs in periods with an IGSA wage determination, resulting in a value of $13.4 million to CoreCivic in terms of benefits.[184]

---

[181]    Attachment F-11.

[182]    Attachments E-10 and E-12.

[183]    Attachment E-12.

[184]    Attachment E-12.

# 6.    Conclusion

(84)    CoreCivic derives substantial economic value from the detainees who perform work pursuant to the work program in place at Stewart.  Specifically, that value derives from the difference between the wages paid to detainees (as reflected in documents and data provided by CoreCivic) from what I understand are its ordinary-course-of-business books and records and the wages (plus benefits) that it would have paid to employees hired to perform those same tasks.

(85)    The value to CoreCivic of the VWP labor is calculated using a class-wide model and no individual-level analysis.  The formulaic approach to the calculation described in Section 5 is appropriate, reasonable, and does not rely on individual-specific evidence.  The value is calculated for two classes and two class periods.  The Forced Labor class period runs from April 17, 2008 to the date of final judgment in this matter.  The Unjust Enrichment class period runs from April 17, 2014 to the date of final judgment in thus matter.  The damages for the two classes are not additive.

(86)    The estimated damages to the Forced Labor class in wages are between $37.6 million and $42.2 million; the estimated damages to the Unjust Enrichment class in wages are between $22.2 million and $26.6 million.  The estimated damages to the Forced Labor class in benefits are between $6.3 million and $16.7 million; the estimated damages to the Unjust Enrichment class in benefits are between $5.9 million and $13.4 million.  The estimated damages are presented in Attachment G-1.



INTENSITY,  LLC
12730 High Bluff Drive, Suite 300
San Diego, California 92130
*telephone* 858.876.9101

**www.intensity.com**

**Attachment A-1**

December 2021

# Steven Schwartz, Ph.D.
*Managing Director*

Dr. Steven Schwartz is a Managing Director at Intensity, LLC. With extensive experience in economic consulting, he has been retained as an economic expert in numerous litigation and non-litigation matters and has provided testimony before the U.S. International Trade Commission and the U.S. Tax Court, federal and state courts.

Dr. Schwartz has over 35 years of economic consulting experience and has applied his expertise in high-stakes disputes related to commercial success, irreparable harm, lost profits, reasonable royalties, economic domestic industry considerations, unjust enrichment, and commercial success. His areas of expertise include:

- Antitrust and Competition

- Intellectual Property Damages and Valuation

- Damages Assessment in Complex Commercial Disputes

- Class Certification

- Securities and Finance Litigation

Examples of Dr. Schwartz work include:

- Analysis of pricing behavior by a company that pled guilty to price fixing as a part of a larger conspiracy to determine the impact on the firm and to assess the portion of its price increases attributable to the conspiracy as opposed to non-collusive factors such as cost increases.

- Assessment to the damages suffered by a residential home builder and land developer as a result of alleged breaches of contracts and fraud by another home builder. The analysis included a determination of the number of homes the Plaintiff would have built and sold in the absence of the alleged breaches and fraud, as well as the losses the firm would incur as it attempted to re-enter the market, post-fraud.

- Analysis of the commercial success of a branded drug in the context of a Hatch-Waxman dispute; the branded drug was a late entrant into the market, i.e., after the entry of competitors selling generic versions of first and second-generation drugs, and Dr. Schwartz provided an assessment of the drug's performance and success in the context of a market dominated by generic competitors.

- Analyzed the damages suffered by an aircraft manufacturer as a result of a patent infringement by a rival manufacturer of a component of the aircraft at issue. The royalty analysis considered the appropriate royalty in a case in which the infringing product was never sold.

Dr. Schwartz's consulting background spans many industries, such as hospitality, consumer goods, electronics, gaming, and pharmaceuticals, among others. He has also consulted in a variety of business, valuation and strategic planning issues.

## Education

Ph.D., Economics, University of Maryland

M.A., Economics, University of Maryland

B.A., Economics, Wesleyan University

## Professional Experience

Intensity, LLC. Managing Director, 2021 to present.

Charles River Associates, Vice President, 2015 to 2020.

Alvarez & Marsal, Global Forensic and Dispute Services, Managing Director, 2011 to 2015.

NERA Economic Consulting, Senior Vice President (Final Position), 1984 to 2011.

Miami University, Assistant Professor of Economics, 1980 to 1984.

Federal Trade Commission, Economist, 1979 to 1980.

## Publications and Papers

"Antitrust Analysis of FRAND Licensing Post-FTC v. Qualcomm," *The Journal of the Antitrust and Unfair Competition Section of the California Lawyers Association,* Volume 31, No. 1, Spring 2021 (with Aminta Raffalovich).

"Pricing Challenges for Hotels in a Price Parity World." *The Price Point,* Volume 17, Issue 2, Spring 2017.

"The Economic Implications of American Needle on Joint Ventures and Other Collaborations." A roundtable discussion with Gregory Leonard, *Antitrust Insights,* NERA Economic Consulting, Fall 2009.

"Assessing the Competitive Impact of Resale Price Maintenance: Practical Implications of the Supreme Court's Decision in Leegin." A roundtable discussion with Timothy Daniel and Christine Meyer, *Antitrust Insights*, NERA Economic Consulting, April/June 2007.

"Monopoly Overcharges, Pass-Through Pricing, and Economic Damages." With Bryan Ray. *Antitrust Insights*, A NERA Perspective, March/April 2006.

"Beware the Transfer Pricing Trap." With Phillip Beutel and Bryan Ray. *Managing Intellectual Property*, June 2005.

"The Bottom Line on the Persistence of Profits." *Antitrust Insights, A NERA Perspective*, May/June 2002.

"Evenhandedness in Arbitration: The Case of Major League Baseball." With O. H. Erekson and J. W. Moser. *Eastern Economic Journal,* April - June 1989.

"Interfirm Relationships." With H. P. Kitt, *The Cutting Edge of Antitrust: Lessons from Deregulation*, June 1988.

"The Economic Rationale for Contracts: A Theory and Some Implications." With H. P. Kitt. *Practising Law Institute:  Distribution and Marketing*, January 1988.

"Aspects of Relevant Market Analysis--The Product Dimension." With H. P. Kitt. *27th Annual Practising Law Institute Advanced Antitrust Seminar: Mergers, Markets and Joint Ventures*, December 1987.

"The Intertemporal Behavior of Economic Profits." With R. Connolly. *International Journal of Industrial Organization* 3, 379-400, 1985.

"An Empirical Test of Managerial, Life Cycle, and Cost of Capital Models of Merger Activity." *Journal of Industrial Economics*, March 1984.

"The Factors Affecting the Probability of Being Acquired: Evidence for the United States." *Economic Journal*, 391-398, June 1983.

"Micro Determinants of Conglomerate Mergers." *Industrial Organization, Anti-Trust and Public Policy*, Craven, Ed., Kluwer-Nijhoff Publishers, Boston, October 1982.

"Savings Billions in Winter Fuel Costs: Quick Return Investments in Oil Heat Systems." With Paul London and Sueanne Pfifferling. Staff Research Paper No. 5, CONEG Policy Research Center, Washington, D. C., June 1979.

## Speaking Engagements

"Valuing Intellectual Property in the Case of Free-to-Consumer Goods, Webinar, April 6, 2021 and June 29, 2021.

Panelist, "Cyber Breach Aftermath: Civil Litigation, Insurance Risks and SEC Perspective", American Bar Association Annual Meeting, Chicago, IL, August 2, 2018.

"Dealing with a Breach's Long-Term Fallout" *Corporate Counsel*, March 2018.

Panel Presentation "Cyber Breach Aftermath: Civil Litigation, Insurance Claims and Regulatory Perspective" Association of Corporate Counsel CLE Program, Chicago, IL, January 2018.

Presentation to McGuire Woods LLP, Dallas, TX, August 8, 2017.

Public Symposium, Developments in Trade Secret Protection, sponsored by United States Patent and Trademark Office, Washington, D.C., May 8, 2017.

"Presenting Statistical Evidence…Effectively." Presented live in St. Louis, MO and presented through intra-firm webinar, SNR Denton, October 19, 2011.

"Presenting Statistical Evidence…Effectively." Presented to Antitrust and Litigation Lawyers, Bryan Cave LLP, October 18, 2011.

## Testimony

1. Deposition Testimony in *Baxalta Incorporated and Baxalta GmbH v. Genentech Inc. and Chugai Pharmaceutical Co., Ltd.*, District of Delaware, C.A. No. 17-509-TBD, August 2021.

2. Deposition Testimony in *Panasonic Corporation v. Getac Technology Corporation and Getac, Inc.,* Central District of California, Case No. 8:19-CV-01118-DOC-DFM, March 2021.

3. Deposition Testimony in *In re. Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020. (Retained by counsel to KCC Class Action Services, LLC and Kurtzman Carson Consultants, LLC)

4.    Deposition Testimony in *Impax Laboratories, Inc. v. Zydus Pharmaceuticals (USA) Inc., et al.*, United States District Court, District of New Jersey, Civil Action No. 2:17-cv-13476 (SRC)(CLW), January 2020. (Retained by counsel to Impax Laboratories)

5.    Deposition Testimony in *Rockwell Automation, Inc., v. Radwell International, Inc.*, U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, December 2019. (Retained by counsel to Rockwell Automation, Inc.)

6.    Trial Testimony in *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), March 2019. (Retained by counsel to Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera and FidoPharm, Inc.)

7.    Trial Testimony in *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), June 2018. (Retained by counsel to Boehringer Ingelheim Pharmaceuticals, Inc. et al.)

8.    Deposition Testimony in *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, March 2018. (Retained by counsel to Breland Homes, LLC et al. and Louis W. Breland)

9.    Deposition Testimony in *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), December 2017. (Retained by counsel to Boehringer Ingelheim Pharmaceuticals, Inc. et al.)

# Reports

1.  Report of Steven Schwartz, Ph.D., *PureCi8rcle USA Inc. and PureCircle SDN BHD v. Sweegen, Inc. and Phyto Tech Corp. d/b/a Blue California,* Case No. 8:18-cv-1679 JVS (JDE), United States District Court, Central District of California, Southern Division, December 2021.

2.  Rebuttal Expert Report of Steven Schwartz, Ph.D., *Baxalta Incorporated and Baxalta GmbH v. Genentech Inc. and Chugai Pharmaceutical Co., Ltd.*, District of Delaware, C.A. No. 17-509-TBD, June 2021.

3.  Report of Steven Schwartz, Ph.D., *Panasonic Corporation v. Getac Technology Corporation and Getac, Inc.,* Central District of California, Case No. 8:19-CV-01118-DOC-DFM, March 2021.

4.  Rebuttal Economist's Report of Steven Schwartz, *In re. Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020.

5.  Economist's Report of Steven Schwartz, *In re. Aetna Litigation*, Central District of California, Case No. 19-cv-04035, February 2020.

6.  Expert Report of Steven Schwartz, Ph.D., *Impax Laboratories, Inc. v. Zydus Pharmaceuticals (USA) Inc., et al.*, United States District Court, District of New Jersey, Civil Action No. 2:17-cv-13476 (SRC)(CLW), November 2019.

7.  Expert Report of Steven Schwartz in Rebuttal to the June 14, 2019 Report of Matthew Hoelle and to the July 15, 2019 Report of David W. DeRamus *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, October 2019.

8.  Supplement to June 14, 2019 Expert Report of Steven Schwartz *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, October 2019.

9.  Expert Report of Steven Schwartz in *Eli Lilly and Company v. Eagle Pharmaceuticals, Inc.*, United States District Court, District of Delaware, Case Mo. 17-cv-1293 (MSG), June 2019.

10. Expert Report of Steven Schwartz in *Rockwell Automation, Inc., v. Radwell International, Inc.,* U.S. District Court, District of New Jersey, Case No. 1:15-cv-05246-RBK-JS, June 2019.

11. Economist's Report in Connection with Plaintiff's Motion for Class Certification in *Medbor Chavez, individually and on behalf of all others similarly situated v. FBL Financial Group, Inc., Farm Bureau Property & Casualty Ins. Co., Farm Bureau Life Insurance and Western Agricultural Insurance Company*, U.S. District Court for the District of Kansas at Kansas City, Case No. 2:17-02393-DDC-ADM, May 2019.

12. Rebuttal Expert Witness Statement and Report of Steven Schwartz in Connection with *Hibernia v. Teza*, Hibernia Express (Ireland) Limited, successor to Hibernia Atlantic U.S. LLC v. Teza Technologies LLC, International Chamber of Commerce, ICC Case No. 22784/MK, June 2018.

13. Expert Witness Statement and Report of Steven Schwartz in Connection with *Hibernia v. Teza*, Hibernia Express (Ireland) Limited, successor to Hibernia Atlantic U.S. LLC v. Teza Technologies LLC, International Chamber of Commerce, ICC Case No. 22784/MK, April 2018.

14. Update to Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, April 2018.

15. Rebuttal Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, January 2018.

16. Rebuttal Expert Report in Connection with a Confidential Arbitration in Stockholm, Sweden, December 2017.

17. Expert Report in Connection with a Confidential Arbitration in Stockholm, Sweden, November 2017.

18. Expert Report of Steven Schwartz, Ph.D., *D.R. Horton, Inc.-Huntsville; D.R. Horton, Inc. v. Breland Homes, LLC, et al. and Louis W. Breland, et al. v. D.R. Horton, Inc.-Huntsville, et al.*, In the Circuit Court of Baldwin County, Alabama, Case No.: 2014-cv-901450.00, November 2017.

19. Expert Report of Steven Schwartz, *Boehringer Ingelheim Pharmaceuticals, Inc. et al. v. HEC Pharm Co., Ltd et al.*, United States District Court, District of New Jersey, Civil Action No. 3:15-cv-05982-PGS-TJB (consolidated), October 2017.

20. Expert Report of Steven Schwartz, Ph.D. Regarding Validity of U.S. Patent Nos. 8,557,283; 9,089,608, 9,463,246, and 9,533,046, *Impax Laboratories, Inc. v. Actavis Laboratories FL, Inc. and Actavis Pharma Inc.,* United States District Court, District of New Jersey, Civil Action No. 15-6934 (SRC) (CLW), September 2017.

21. Supplemental Economist's Report in Connection with *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), August 2017.

22. Economist's Report in Connection with *Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health, Velcera, Inc. and FidoPharm, Inc. v. Merial Limited d/b/a Merial LLC*, United States District Court for the Northern District of Georgia (Atlanta Division), Civ. Action No.: 1:15-cv-03674 (SCJ), May 2017.

23. Initial Report of Steven Schwartz in Connection with *Select Comfort v. Tempur Sealy International, Inc., d/b/a Tempur-Pedic*, United States District Court, District of Minnesota, 14-CV-00245-JNE-JSM, May 2016.

24. Report of Steven Schwartz in Connection with *Airbus Helicopters S.A.S. and Bell Helicopter Textron Canada Limitee*, Federal Court, Docket: T-737-08, April 2016.

25. Initial Report in Connection with *Steven C. Jacobs v. Las Vegas Sands Corp., et al.*, District Court, Clark County, Nevada, Case No; A-10-627691, Dept. No. XI., March 2016.

26.   Expert Report in *Thomas Skold v. Galderma Laboratories, L.P., Galderma Laboratories, Inc., and Galderma, S.A.*, United States District Court, Eastern District of Pennsylvania, Case No. 2:14-cv-05280-TJS, October 2015.

27.   Expert Report in connection with *Timberline Energy, LLC v. Waste Connections of Kansas, Inc.,* Case No. 2014CV03269, District Court, City and County of Denver, State of Colorado, August 2015.

28.   Expert Report in *TrueCar, Inc. v. Sonic Automotive, Inc. and Sonic Divisional Operations, LLC*, United States District Court, Central District of California (Western Division) Case No. 2:13-cv-05812-CBM-FFM, April 2015.

29.   Expert Report in *Virginia Forklift, Inc. v. Crown Equipment Corporation* in Arbitration before JAMS, January 2015.

30.   Expert Report in M.*B. Signal, Inc. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 00237 09, January 2014.

31.   Expert Report in *Cellular Cellutions, Inc. et al. v. AT&T/Cingular Wireless*, American Arbitration Association Case No. 54 494 Y 1382 08, January 2014.

32.   Expert Report and Rebuttal Expert Report in *Aloe Vera of America, Inc. et al. v. United States of America,* United States District Court for the District of Arizona Civil Action No. CIV-99-1794-PHX-JAT, June 2013 and July 2013.

33.   Expert Report in *Bristol-Myers Squibb Company v. Apotex, Inc. and Apotex Corp.*, United States District Court for the District of New Jersey, Civil Action No. 10-CV-5810, March 2013.

34.   Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. Goldman Sachs*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

35.   Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. J.P. Morgan Chase*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

36.   Expert Rebuttal Report, *Realtime Data, LLC d/b/a IXO v. Morgan Stanley, et al. (III)*, United States District Court for the Southern District of New York, Civil Action Nos. 1:11-CV-6696-KBF, 1:11-CV-6701-KBF; 1:11-CV-6704-KBF, July 2012.

37.   Economist's Report, *RegScan, Inc. v. The Bureau of National Affairs, Inc.*, United States District Court for the Eastern District of Virginia, Alexandria Division, Civil Action No. 1:11-cv-01129 (JCC-JFA), April 19, 2012.

**Attachment A-2**
Materials Considered

## Pleadings and filings

5/18/2018      Defendant CoreCivic, Inc.'s Corporate Disclosure Statement.

8/21/2020      Plaintiffs' First Set of Interrogatories.

8/21/2020      Plaintiffs' First Request for Production of Documents.

9/21/2020      CoreCivic's Response to Plaintiffs' First Request for Production of Documents.

9/21/2020      Defendant CoreCivic's Response to Plaintiffs' First Set of Interrogatories.

10/16/2020     Amended Complaint for Declaratory and Injunctive Relief and Damages.

10/30/2020     Defendant's Answer to Amended Complaint for Declaratory and Injunctive Relief and Damages and Counterclaim.

11/6/2020      Plaintiffs' First Amended Initial Disclosures.

12/14/2020     CoreCivic's First Supplemental Response to Plaintiffs' First Request for Production of Documents.

10/20/2021     Joint Motion to Extend Fact Discovery and Expert Disclosure Deadlines.

## Deposition testimony

Droudred Blackmon          CoreCivic, Chief of Unit Management, 10/14/2021.

Bethany Leanne Brazier      Mercer University, Associate Director of Finance and Operations, 11/18/2021.

Harrell Gray               CoreCivic, Unit Manager Lieutenant, 10/27/2021.

Freddie Hood               Department of Juvenile Justice, Correctional Officer, 10/22/2021.

| | |
|---|---|
| Susan Huffman | Trinity Services Group, Regional Vice President 7/15/2021. |
| Terrence Lane | CoreCivic, Assistant Chief of Security, 10/5/2021. |
| Matthew Moye | Stewart County, Manager, 10/21/2021. |
| Jacqueline Norman | CoreCivic, Assistant Warden, 11/15/2021. |
| Charlie Peterson | Ace Hardware Corporation, Warehouse Supervisor, 10/18/2021. |
| Troy P. Pollock | CoreCivic, Retired/Part-time employee/Former Assistant Warden, 9/30/2021. |
| Michael Swinton | CoreCivic, Vice President & Chief Operations Officer, 11/2/2021. |
| Russell Washburn | CoreCivic, Warden, 12/1/2021. |
| Russell Washburn | CoreCivic, Warden, 12/2/2021. |

## Research materials

18 U.S.C. § 1589.

18 U.S.C. § 1594.

18 U.S.C. § 1595.

*Arreguin v. Sanchez*, 398 F.Supp.3d 1314, 1326–1329 (S.D. Ga. 2019).

*Chem-Nuclear Systems, Inc. v. Arivec Chems., Inc.*, 978 F.Supp. 1105, 1110 (N.D. Ga. 1997.

*Cochran, et al. v. Ogletree*, 536 S.E.2d 194, 196–197 (Ct. App. Ga. 2000).

CoreCivic, About, https://www.corecivic.com/about (accessed 10/20/2021).

CoreCivic Website, Community, https://www.corecivic.com/community (accessed 10/21/2021).

CoreCivic Website, Detention Services, https://www.corecivic.com/safety/detention-services (accessed 10/21/2021).

CoreCivic Website, Home Page, https://www.corecivic.com/ (accessed 10/21/2021).

CoreCivic, Form 10-K, 2018.

CoreCivic, Form 10-K, 2019.

CoreCivic, Form 10-K, 2020.

Department of Labor, "SCA Directory of Occupations," available at:
https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/SCADirectVers5.pdf.

Detention Watch Network, "Stewart Detention Center Expose & Close," 11/2012,
available at:
https://www.detentionwatchnetwork.org/sites/default/files/reports/DWN%20
Expose%20and%20Close%20Stewart.pdf.

Fair Labor Standards Act, 29 U.S.C. § 213 (1938).

Fed.R.Civ.P. 23(b)(2) at Notes of Advisory Committee on Rules – 1966 Amendment.

Federal Register, "Establishing a Minimum Wage for Contractors," 2/20/2014,
available at:  https://www.federalregister.gov/documents/2014/02/20/2014-
03805/establishing-a-minimum-wage-for-contractors.

Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate
Change in Effect as of January 1, 2017," 9/20/2016, available at:
https://www.federalregister.gov/documents/2016/09/20/2016-
22515/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-
effect-as-of-january-1-2017.

Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate
Change in Effect as of January 1, 2020," 9/19/2019, available at:
https://www.federalregister.gov/documents/2019/09/19/2019-
19673/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-
effect-as-of-january-1-2020.

Federal Register, "Minimum Wage for Federal Contracts Covered by Executive
Order 13658, Notice of Rate Change in Effect as of January 1, 2022,"
9/16/2021, available at:
https://www.federalregister.gov/documents/2021/09/16/2021-
19995/minimum-wage-for-federal-contracts-covered-by-executive-order-13658-
notice-of-rate-change-in-effect.

National Immigration Forum, "Fact Sheet: Immigration Detention in the United States," 1/27/2021, https://immigrationforum.org/article/fact-sheet-immigration-detention-in-the-united-states/.

O.C.G.A. § 9-2-7.

O.C.G.A. § 34-4-3 (2001).

Patient Protection and Affordable Care Act, § 1513 (2010).

U.S. Department of Labor Website, State Minimum Wage Laws, https://www.dol.gov/agencies/whd/minimum-wage/state (accessed 12/15/2021).

U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

## Bates stamped documents

| | |
|---|---|
| CCBVA0000000001–0355 | CCBVA0000001308–316 |
| CCBVA0000000357–366 | CCBVA0000002364–69 |
| CCBVA0000000392–0432 | CCBVA0000003932–04100 |
| CCBVA0000000439–443 | CCBVA0000004102–4348 |
| CCBVA0000000446–48 | CCBVA0000004351–4526 |
| CCBVA0000000927–944 | CCBVA0000004529–4605 |
| CCBVA0000000949–961 | CCBVA0000004617 |
| CCBVA0000000965–999 | CCBVA0000004622–23 |
| CCBVA0000001100–05 | CCBVA0000004627 |
| CCBVA0000001108–110 | CCBVA0000004631 |
| CCBVA0000001171–74 | CCBVA0000004638 |
| CCBVA0000001264–66 | CCBVA0000004641–48 |

CCBVA0000004652–53

CCBVA0000004676–4710

CCBVA0000004717–05337

CCBVA0000005675–06059

CCBVA0000006419

CCBVA0000006768–770

CCBVA0000006808–09

CCBVA0000069503

CCBVA0000104597–05381

CCBVA0000105383–5886

CCBVA0000106126

CCBVA0000106546–550

CCBVA0000106554–588

CCBVA0000106590

CCBVA0000108352–8411

CCBVA0000117636–671

CCBVA0000117882–87

CCBVA0000118412–423

CCBVA0000118695–8747

CCBVA0000149686–9723

CCBVA0000149842–44

CCBVA0000150718

CCBVA0000152098–99

CCBVA0000155903

CCBVA0000155978

CCBVA0000156136

CCBVA0000156215

CCBVA0000156385

CCBVA0000156470

CCBVA0000156734

CCBVA0000157001

CCBVA0000157256

CCBVA0000157523

CCBVA0000157802

CCBVA0000158087

CCBVA0000158369

CCBVA0000158472–79

CCBVA0000159889–895

CCBVA0000160086

CCBVA0000160089

CCBVA0000160092

CCBVA0000160094

CCBVA0000160096

CCBVA0000160098

CCBVA0000173914–924

CCBVA0000173929–939

CCBVA0000173942–951

CCBVA0000180718

CCBVA0000182274–75

CCBVA0000182410–426

CCBVA0000182924–28

CCBVA0000182978–982

CCBVA0000183031–35

CCBVA0000183086–090

CCBVA0000183141–45          CCBVA0000184590–96

CCBVA0000183196–3200        CCBVA0000184647–653

CCBVA0000183249–253         CCBVA0000184702–08

CCBVA0000183305–09          CCBVA0000184755–761

CCBVA0000183360–64          CCBVA0000184800–815

CCBVA0000183415–19          CCBVA0000184852–867

CCBVA0000183469–474         CCBVA0000184907–922

CCBVA0000183524–29          CCBVA0000184964–979

CCBVA0000183581–86          CCBVA0000185013–028

CCBVA0000183639–644         CCBVA0000185074–089

CCBVA0000183694–99          CCBVA0000185125–140

CCBVA0000183751–56          CCBVA0000185183–199

CCBVA0000183804–09          CCBVA0000185239–255

CCBVA0000183855–860         CCBVA0000185295–5311

CCBVA0000183910–15          CCBVA0000185354–370

CCBVA0000183931–36          CCBVA0000185410–425

CCBVA0000183986–991         CCBVA0000185467–483

CCBVA0000184042–47          CCBVA0000185518–534

CCBVA0000184094–99          CCBVA0000185576–592

CCBVA0000184148–153         CCBVA0000185629–645

CCBVA0000184164–69          CCBVA0000185693–5709

CCBVA0000184259–264         CCBVA0000185750–766

CCBVA0000184312–18          CCBVA0000185809–825

CCBVA0000184369–375         CCBVA0000185868–884

CCBVA0000184422–28          CCBVA0000185924–940

CCBVA0000184477–483         CCBVA0000185984–86000

CCBVA0000184535–540         CCBVA0000186043–057

CCBVA0000186102–118          CCBVA0000187702–718

CCBVA0000186165–180          CCBVA0000187762–778

CCBVA0000186224–239          CCBVA0000187824–840

CCBVA0000186283–298          CCBVA0000187885–7901

CCBVA0000186342–357          CCBVA0000187946–961

CCBVA0000186402–418          CCBVA0000188007–023

CCBVA0000186463–479          CCBVA0000188070–086

CCBVA0000186489–6505         CCBVA0000188131–147

CCBVA0000186584–6600         CCBVA0000188193–8210

CCBVA0000186609–625          CCBVA0000188254–271

CCBVA0000186706–722          CCBVA0000188295–8303

CCBVA0000186768–784          CCBVA0000188333–341

CCBVA0000186859–875          CCBVA0000188369–377

CCBVA0000186919–935          CCBVA0000188406–414

CCBVA0000186983–89           CCBVA0000188440–48

CCBVA0000187038–044          CCBVA0000188492–8507

CCBVA0000187093–7100         CCBVA0000188552–567

CCBVA0000187149–156          CCBVA0000188608–623

CCBVA0000187208–214          CCBVA0000188663–678

CCBVA0000187263–69           CCBVA0000188718–733

CCBVA0000187322–28           CCBVA0000188743–759

CCBVA0000187376–382          CCBVA0000188825–841

CCBVA0000187430–36           CCBVA0000188875–891

CCBVA0000187488–494          CCBVA0000188928–944

CCBVA0000187543–49           CCBVA0000188981–997

CCBVA0000187598–7604         CCBVA0000189034–050

CCBVA0000187651–57           CCBVA0000189086–9102

CCBVA0000189138–154

CCBVA0000189192–9208

CCBVA0000189241–257

CCBVA0000189292–9308

CCBVA0000189342–358

CCBVA0000189398–9409

CCBVA0000189448–459

CCBVA0000189505–516

CCBVA0000189555–567

CCBVA0000189606–618

CCBVA0000189658–669

CCBVA0000189712–723

CCBVA0000189735–746

CCBVA0000190017

CCBVA0000190030–33

CCBVA0000190045

CCBVA0000190070

CCBVA0000190086

CCBVA0000190102

CCBVA0000190118

CCBVA0000190126

CCBVA0000190154

CCBVA0000190170

CCBVA0000190186

CCBVA0000190202

CCBVA0000190218

CCBVA0000190234

CCBVA0000190250

CCBVA0000190266

CCBVA0000190282

CCBVA0000190362

CCBVA0000190380

CCBVA0000190398

CCBVA0000190416

CCBVA0000190434

CCBVA0000190443

CCBVA0000190477

CCBVA0000190495

CCBVA0000190513

CCBVA0000190531

CCBVA0000190540

CCBVA0000190558

CCBVA0000190576

CCBVA0000190585

CCBVA0000190603

CCBVA0000190612

CCBVA0000190630

CCBVA0000190648

CCBVA0000190657

CCBVA0000190675

CCBVA0000190693

CCBVA0000190711

CCBVA0000190729

CCBVA0000190744

| | |
|---|---|
| CCBVA0000190753 | CCBVA0000191287 |
| CCBVA0000190771 | CCBVA0000191305 |
| CCBVA0000190789 | CCBVA0000191326 |
| CCBVA0000190798 | CCBVA0000191341 |
| CCBVA0000190806 | CCBVA0000191359 |
| CCBVA0000190825 | CCBVA0000191377 |
| CCBVA0000190834 | CCBVA0000191386 |
| CCBVA0000190852 | CCBVA0000191395 |
| CCBVA0000190870 | CCBVA0000191413 |
| CCBVA0000190888 | CCBVA0000191431 |
| CCBVA0000190906 | CCBVA0000191440 |
| CCBVA0000190924 | CCBVA0000191458 |
| CCBVA0000190942 | CCBVA0000191467 |
| CCBVA0000190951 | CCBVA0000191485 |
| CCBVA0000190960 | CCBVA0000191494 |
| CCBVA0000190978 | CCBVA0000191512 |
| CCBVA0000190996 | CCBVA0000191521 |
| CCBVA0000191014 | CCBVA0000191539 |
| CCBVA0000191140 | CCBVA0000191557 |
| CCBVA0000191161 | CCBVA0000191575 |
| CCBVA0000191182 | CCBVA0000191593 |
| CCBVA0000191197 | CCBVA0000191611 |
| CCBVA0000191206 | CCBVA0000191615–632 |
| CCBVA0000191224 | CCBVA0000191677 |
| CCBVA0000191242 | CCBVA0000191686 |
| CCBVA0000191260 | CCBVA0000191694 |
| CCBVA0000191278 | CCBVA0000191702 |

| | |
|---|---|
| CCBVA0000191710 | CCBVA0000192030 |
| CCBVA0000191718 | CCBVA0000192038 |
| CCBVA0000191726 | CCBVA0000192046 |
| CCBVA0000191734 | CCBVA0000192054 |
| CCBVA0000191750 | CCBVA0000192062 |
| CCBVA0000191758 | CCBVA0000192070 |
| CCBVA0000191766 | CCBVA0000192078 |
| CCBVA0000191782 | CCBVA0000192094 |
| CCBVA0000191798 | CCBVA0000192102 |
| CCBVA0000191806 | CCBVA0000192118 |
| CCBVA0000191814 | CCBVA0000192126 |
| CCBVA0000191822 | CCBVA0000192159 |
| CCBVA0000191830 | CCBVA0000192177 |
| CCBVA0000191838 | CCBVA0000192186 |
| CCBVA0000191854 | CCBVA0000192204 |
| CCBVA0000191870 | CCBVA0000192222 |
| CCBVA0000191886 | CCBVA0000192231 |
| CCBVA0000191902 | CCBVA0000192249 |
| CCBVA0000191918 | CCBVA0000192267 |
| CCBVA0000191934 | CCBVA0000192276 |
| CCBVA0000191950 | CCBVA0000192294 |
| CCBVA0000191966 | CCBVA0000192303 |
| CCBVA0000191974 | CCBVA0000192312 |
| CCBVA0000191990 | CCBVA0000192330 |
| CCBVA0000191998 | CCBVA0000192348 |
| CCBVA0000192006 | CCBVA0000192366 |
| CCBVA0000192014 | CCBVA0000192384 |

| | |
|---|---|
| CCBVA0000192402 | CCBVA0000192780 |
| CCBVA0000192420 | CCBVA0000192798 |
| CCBVA0000192429 | CCBVA0000192807 |
| CCBVA0000192438 | CCBVA0000192825 |
| CCBVA0000192447 | CCBVA0000192843 |
| CCBVA0000192456 | CCBVA0000192852 |
| CCBVA0000192474 | CCBVA0000192861 |
| CCBVA0000192492 | CCBVA0000192879 |
| CCBVA0000192501 | CCBVA0000192888 |
| CCBVA0000192519 | CCBVA0000192897 |
| CCBVA0000192537 | CCBVA0000192915 |
| CCBVA0000192555 | CCBVA0000192933 |
| CCBVA0000192564 | CCBVA0000192969 |
| CCBVA0000192582 | CCBVA0000192978 |
| CCBVA0000192591 | CCBVA0000192999 |
| CCBVA0000192600 | CCBVA0000193008 |
| CCBVA0000192609 | CCBVA0000193026 |
| CCBVA0000192627 | CCBVA0000193035 |
| CCBVA0000192645 | CCBVA0000193044 |
| CCBVA0000192672 | CCBVA0000193062 |
| CCBVA0000192690 | CCBVA0000193071 |
| CCBVA0000192717 | CCBVA0000193089 |
| CCBVA0000192735 | CCBVA0000193098 |
| CCBVA0000192744 | CCBVA0000193116 |
| CCBVA0000192753 | CCBVA0000193134 |
| CCBVA0000192762 | CCBVA0000193143 |
| CCBVA0000192771 | CCBVA0000193152 |

| | |
|---|---|
| CCBVA0000193170 | CCBVA0000193551 |
| CCBVA0000193188 | CCBVA0000193569 |
| CCBVA0000193206 | CCBVA0000193587 |
| CCBVA0000193224 | CCBVA0000193596 |
| CCBVA0000193251 | CCBVA0000193605 |
| CCBVA0000193269 | CCBVA0000193614 |
| CCBVA0000193287 | CCBVA0000193632 |
| CCBVA0000193296 | CCBVA0000193641 |
| CCBVA0000193305 | CCBVA0000193659 |
| CCBVA0000193314 | CCBVA0000193668 |
| CCBVA0000193332 | CCBVA0000193686 |
| CCBVA0000193344 | CCBVA0000193695 |
| CCBVA0000193362 | CCBVA0000193712 |
| CCBVA0000193380 | CCBVA0000193728 |
| CCBVA0000193389 | CCBVA0000193746 |
| CCBVA0000193398 | CCBVA0000193755 |
| CCBVA0000193407 | CCBVA0000193773 |
| CCBVA0000193425 | CCBVA0000193782 |
| CCBVA0000193443 | CCBVA0000193800 |
| CCBVA0000193452 | CCBVA0000193809 |
| CCBVA0000193461 | CCBVA0000193818 |
| CCBVA0000193479 | CCBVA0000193836 |
| CCBVA0000193488 | CCBVA0000193854 |
| CCBVA0000193497 | CCBVA0000193872 |
| CCBVA0000193515 | CCBVA0000193890 |
| CCBVA0000193533 | CCBVA0000193908 |
| CCBVA0000193542 | CCBVA0000193926 |

| | |
|---|---|
| CCBVA0000193944 | CCBVA0000194354 |
| CCBVA0000193962 | CCBVA0000194381 |
| CCBVA0000193971 | CCBVA0000194399 |
| CCBVA0000193989 | CCBVA0000194417 |
| CCBVA0000194007 | CCBVA0000194426 |
| CCBVA0000194025 | CCBVA0000194435 |
| CCBVA0000194034 | CCBVA0000194444 |
| CCBVA0000194043 | CCBVA0000194462 |
| CCBVA0000194052 | CCBVA0000194480 |
| CCBVA0000194061 | CCBVA0000194489 |
| CCBVA0000194079 | CCBVA0000194498 |
| CCBVA0000194097 | CCBVA0000194516 |
| CCBVA0000194115 | CCBVA0000194534 |
| CCBVA0000194133 | CCBVA0000194543 |
| CCBVA0000194151 | CCBVA0000194552 |
| CCBVA0000194160 | CCBVA0000194561 |
| CCBVA0000194169 | CCBVA0000194570 |
| CCBVA0000194178 | CCBVA0000194579 |
| CCBVA0000194187 | CCBVA0000194597 |
| CCBVA0000194195 | CCBVA0000194615 |
| CCBVA0000194203 | CCBVA0000194624 |
| CCBVA0000194211 | CCBVA0000194633 |
| CCBVA0000194220 | CCBVA0000194642 |
| CCBVA0000194247 | CCBVA0000194651 |
| CCBVA0000194265 | CCBVA0000194660 |
| CCBVA0000194274 | CCBVA0000194678 |
| CCBVA0000194345 | CCBVA0000194687 |

CCBVA0000194705

CCBVA0000194714

CCBVA0000194732

CCBVA0000194741

CCBVA0000194759

CCBVA0000194768

CCBVA0000194777

CCBVA0000194795

CCBVA0000194804

CCBVA0000194822

CCBVA0000194831

CCBVA0000194840

CCBVA0000194849

CCBVA0000194858

CCBVA0000194867

CCBVA0000194885

CCBVA0000194894

CCBVA0000194903

CCBVA0000194921

CCBVA0000194930

CCBVA0000194939

CCBVA0000194957

CCBVA0000194966

CCBVA0000194975

CCBVA0000194984

CCBVA0000194993

CCBVA0000195011

CCBVA0000195020

CCBVA0000195029

CCBVA0000195038

CCBVA0000195047

CCBVA0000195056

CCBVA0000195074

CCBVA0000195083

CCBVA0000195092

CCBVA0000195101

CCBVA0000195110

CCBVA0000195119

CCBVA0000195137

CCBVA0000195146

CCBVA0000195164

CCBVA0000195173

CCBVA0000195182

CCBVA0000195191

CCBVA0000195209

CCBVA0000195227

CCBVA0000195236

CCBVA0000195254

CCBVA0000195263

CCBVA0000195272

CCBVA0000195290

CCBVA0000195299

CCBVA0000195308

CCBVA0000195326

CCBVA0000195344

CCBVA0000195353

CCBVA0000195362

CCBVA0000195371

CCBVA0000195389

CCBVA0000195398

CCBVA0000195406

CCBVA0000195425

CCBVA0000195443

CCBVA0000195452

CCBVA0000195470

CCBVA0000195488

CCBVA0000195506

CCBVA0000195515

CCBVA0000195533

CCBVA0000195551

CCBVA0000195560

CCBVA0000195578

CCBVA0000195587

CCBVA0000195596

CCBVA0000195605

CCBVA0000195614

CCBVA0000195623

CCBVA0000195632

CCBVA0000195641

CCBVA0000195650

CCBVA0000195659

CCBVA0000195668

CCBVA0000195677

CCBVA0000195766

CCBVA0000196645–46

CCBVA0000196652–54

CCBVA0000196937

CCBVA0000197030

CCBVA0000198558–59

CCBVA0000216451–6520

CCBVA0000223420–437

CCBVA0000223560–578

CCBVA0000223616–633

CCBVA0000223646–663

CCBVA0000223706–723

CCBVA0000223735–770

CCBVA0000223803

CCBVA0000223824

CCBVA0000223841

CCBVA0000223865

CCBVA0000223905

CCBVA0000223927

CCBVA0000223949

CCBVA0000223971

CCBVA0000223993

CCBVA0000229397–9400

CCBVA0000229903

CCBVA0000230133

CCBVA0000230383                          TRINITY00000396–0448

CCBVA0000230465                          TRINITY00000704–0865

CCBVA0000233981                          TRINITY00001338–387

CCBVA0000238482–498                      TRINITY00001608–621

CCBVA0000238745–762                      TRINITY00001653–662

CCBVA0000256314–6580                     TRINITY-00012700–2866

CCBVA0000256805–57350                    TRINITY-00012935–38

CCBVA0000257365–370                      TRINITY-00020176

CCBVA0000258428–432                      TRINITY-00020221

CCBVA0000260462–479                      TRINITY-00020266

CCBVA0000261051–068                      TRINITY-00020309

CCBVA0000261176–193                      TRINITY-00020353

CCBVA0000269751–52                       TRINITY-00020402

CCBVA0000280509–543                      TRINITY-00020445

CTRL0000027–032                          TRINITY-00020495

CTRL0000050–098                          TRINITY-00020546

ICE-BARRIENTOS-0001–081                  TRINITY-00020588

ICE-BARRIENTOS-0128–141                  TRINITY-00020640

ICE-BARRIENTOS-0160–164                  TRINITY-00020682

ICE-BARRIENTOS-0174–253                  TRINITY-00020741

ICE-BARRIENTOS-0256–275                  TRINITY-00020794

ICE-BARRIENTOS-0024518–538               TRINITY-00020834

SCGA0000004–06                           TRINITY-00020891

SCGA0000009–020                          TRINITY-00020931

SECURUS_000094–0156                      TRINITY-00020982

TRINITY00000032–0229                     TRINITY-00021042

TRINITY00000267–0378                     TRINITY-00021101

| | |
|---|---|
| TRINITY-00021155 | TRINITY-00022715 |
| TRINITY-00021207 | TRINITY-00022767 |
| TRINITY-00021266 | TRINITY-00022829 |
| TRINITY-00021326 | TRINITY-00022887 |
| TRINITY-00021377 | TRINITY-00022947 |
| TRINITY-00021430 | TRINITY-00022996 |
| TRINITY-00021490 | TRINITY-00023058 |
| TRINITY-00021542 | TRINITY-00023114 |
| TRINITY-00021600 | TRINITY-00023174 |
| TRINITY-00021661 | TRINITY-00023235 |
| TRINITY-00021720 | TRINITY-00023296 |
| TRINITY-00021777 | TRINITY-00023345 |
| TRINITY-00021835 | TRINITY-00023401 |
| TRINITY-00021895 | TRINITY-00023458 |
| TRINITY-00021947 | TRINITY-00023519 |
| TRINITY-00022012 | TRINITY-00023580 |
| TRINITY-00022071 | TRINITY-00023627 |
| TRINITY-00022130 | TRINITY-00023687 |
| TRINITY-00022190 | TRINITY-00023742 |
| TRINITY-00022240 | TRINITY-00023802 |
| TRINITY-00022299 | TRINITY-00023865 |
| TRINITY-00022350 | TRINITY-00023913 |
| TRINITY-00022414 | TRINITY-00023970 |
| TRINITY-00022474 | TRINITY-00024031 |
| TRINITY-00022534 | TRINITY-00024093 |
| TRINITY-00022592 | TRINITY-00024153 |
| TRINITY-00022654 | TRINITY-00024210 |

| | |
|---|---|
| TRINITY-00024271 | TRINITY-00025995 |
| TRINITY-00024334 | TRINITY-00026059 |
| TRINITY-00024383 | TRINITY-00026106 |
| TRINITY-00024440 | TRINITY-00026167 |
| TRINITY-00024503 | TRINITY-00026231 |
| TRINITY-00024553 | TRINITY-00026278 |
| TRINITY-00024615 | TRINITY-00026338 |
| TRINITY-00024669 | TRINITY-00026398 |
| TRINITY-00024731 | TRINITY-00026463 |
| TRINITY-00024796 | TRINITY-00026527 |
| TRINITY-00024851 | TRINITY-00026575 |
| TRINITY-00024914 | TRINITY-00026635 |
| TRINITY-00024965 | TRINITY-00026695 |
| TRINITY-00025082 | TRINITY-00026757 |
| TRINITY-00025141 | TRINITY-00026802 |
| TRINITY-00025203 | TRINITY-00026867 |
| TRINITY-00025254 | TRINITY-00026925 |
| TRINITY-00025315 | TRINITY-00026971 |
| TRINITY-00025372 | TRINITY-00027034 |
| TRINITY-00025435 | TRINITY-00027096 |
| TRINITY-00025495 | TRINITY-00027154 |
| TRINITY-00025557 | TRINITY-00027200 |
| TRINITY-00025592 | TRINITY-00027267 |
| TRINITY-00025655 | TRINITY-00027327 |
| TRINITY-00025717 | TRINITY-00027374 |
| TRINITY-00025770–77 | TRINITY-00027441 |
| TRINITY-00025934 | TRINITY-00027501 |

TRINITY-00027550

TRINITY-00027611

TRINITY-00027676

TRINITY-00027721

TRINITY-00027782

TRINITY-00027842

TRINITY-00027905

TRINITY-00027965

TRINITY-00028026

TRINITY-00028090

TRINITY-00028150

TRINITY-00028215

TRINITY-00028277

TRINITY-00028336

TRINITY-00028401

TRINITY-00028463

TRINITY-00028533

TRINITY-00028599

TRINITY-00028663

TRINITY-00028729

TRINITY-00028790

TRINITY-00028857

TRINITY-00028915

TRINITY-00028975

TRINITY-00029036

TRINITY-00029097

TRINITY:00029156

TRINITY-00029217

TRINITY-00029276

TRINITY-00029336

TRINITY-00029396

TRINITY-00029454

TRINITY-00029511

TRINITY-00029566

TRINITY-00029621

TRINITY-00029676

TRINITY-00029729

TRINITY-00029784

TRINITY-00029840

TRINITY-00029898

TRINITY-00033645–47

TRINITY-00033947–952

TRINITY-00035334–35

TRINITY-00035722

TRINITY-00036589–590

TRINITY-00037594–95

TRINITY-00037717–18

TRINITY-00037720–27

TRINITY-00037762–67

TRINITY-00037772–73

TRINITY-00037775–77

TRINITY-00037871–73

TRINITY-00037917–920

TRINITY-00037922–28

TRINITY-00037979–982                TRINITY-00038572–73

TRINITY-00038109–110                TRINITY-00038581–82

TRINITY-00038112–13                 TRINITY-00038584–85

TRINITY-00038277–78                 TRINITY-00038587–88

TRINITY-00038285–88                 TRINITY-00038629–630

TRINITY-00038292–93                 TRINITY-00038632–33

TRINITY-00038410–12                 TRINITY-00038635–36

TRINITY-00038414–15                 TRINITY-00038671–74

TRINITY-00038471–72                 TRINITY-00038708–09

TRINITY-00038485–88

## Natively produced documents[1]

VWP Participants – 2009.xlsx

VWP Participants – 2010.xlsx

VWP Participants – 2011.xlsx

VWP Participants – 2012.xlsx

VWP Participants – 2013.xlsx

VWP Participants – 2014.xlsx

VWP Participants – 2015.xlsx

VWP Participants – 2016.xlsx

VWP Participants – 2017.xlsx

VWP Participants - Dec. 2008.xlsx

VWP Participants - Jan.-Sept. 2018.xlsx

---

[1]    I understand that these natively produced spreadsheets correspond to these Bates-stamped documents per instruction from counsel:

CoreCivic, VWP Pay Data, 11/2/2004–12/23/2020 (CCBVA0000006056-6059 and CCBVA0000106554).

**Attachment A-3**
Data Appendix

The following is an exhaustive list of steps performed in preparing the data for analysis, along with example entries to illustrate the step described.  The *receipt num*, *deposit from*, *amount*, and *date* variables are included as produced in the raw data.  The latter three variables are integral to the data preparation process.  *Receipt num* is a unique identifier of each pay entry and is included such that each example entry can be identified within the raw data.  The variables within the raw data that are not included for sample entries include:

- *Description*, which simply states "████████████████████████" for nearly all entries included in the analysis.  As such, this variable provides no additional information and is excluded from the examples below.  Furthermore, this variable is not used in the data preparation process.

- *Agency num*, which is a unique identifier of the detained individual who received pay in a given pay entry.  The identity of a detained individual has no influence on the data preparation or analytical process

- *Detainee name*, which is excluded from the sample entries for the same reason that *agency num* is excluded.

Assigned shift count, shaded in blue in the examples below, is the variable created through the data preparation process.  This variable indicates the number of shifts assigned to a given entry through the data preparation process.  Green text highlighting is used to emphasize aspects of the data used to assign shift counts.

The first data preparation step involved identifying entries corresponding to a single workday, and thus a single shift.[1]  To be assigned a single shift in the *Assigned shift count* variable, a pay entry must (1) be associated with a single, extractable date in the *deposit from* variable and (2) contain a payment amount of $1, $2, $3, or $4, the payment amounts understood to correspond to a single shift's payment.[2]  To satisfy the first criterion, a single, clean payment date from the *deposit from* memo is extracted, if applicable and easily obtained.  Accuracy of the extracted date is verified by ensuring that it was within a month of the provided *date* variable.  The second criterion is satisfied by examining the *amount* variable for a payment value of $1, $2,

---

[1]    Note that further data preparation steps also identify entries that correspond to a single shift through other methods.

[2]    See, for example:

████████████████████████████████████████ (CCBVA0000004011–CCBVA0000004100, at CCBVA0000004071).

Detainee Orientation Handbook Stewart Detention Center, 4/2014 (CCBVA0000000029–68, at CCBVA0000000042).

$3, or $4. This approach is conservative, because it does not account for situations in which a detainee worked multiple shifts on one date with total payment amount of $4 and under.



Next, all entries paid at $1 are assumed to correspond to a single shift, irrespective of the *deposit from* memo. Per the ICE Performance Based National Detention Standards, $1 is the minimum amount paid to a VWP worker for a single shift's work.[3]



All entries containing the words "1st shift," "2nd shift," "3rd shift," or "night shift," in the *deposit from* variable are assumed to correspond to a single shift due to the singular grammatical number. Variations on the above list are considered, as well. Language associating "1st shift," "2nd shift," and "3rd shift" with a single shift is observed in some CoreCivic produced documents describing the VWP.[4] Further, this approach is conservative, as it does not account for the possibility that such memos could pertain to multiple workdays of shifts, and, as such, could undercount the true number of shifts associated with such entries.



Review of pay data reveals that ampersands ("&") are used to separate distinct workdays within the *deposit from* variable.[5] The number of ampersands can generally indicate the number of days, contingent on different payment amounts. That is, a single ampersand for pay entries with payment amounts of $2 connects two days, with each day being paid $1; one or two ampersands for pay entries with payment amounts of $3 connect three days, with each day being paid $1;

---

[3]    U.S. Immigration and Customs Enforcement, "Performance-Based National Detention Standards 2011," revised 12/2016, at 407, available at: https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf.

[4]    CoreCivic, Stewart Detention Center 24 Hour Routine for General Population, 3/6/2019 (CCBVA0000004652–53).

[5]    For entries with ampersands, the *deposit from* memo is interpreted as indicating the detained individual received payment for shifts worked on multiple days, shown between the appropriate month and year (*e.g.*, a date format of "Month – Day 1 & Day 2 – Year"). For example, ██████████████████████████████████████████████████████████████████████████ Sample pay entries included in this step and in subsequent data preparation steps include *deposit from* memos that follow a similar format.

and one or two ampersands for pay entries with payment amounts of $4 usually connect two days, with each day being paid $2, except in special cases.



Similarly, review of pay data reveals that an asterisk ("*") can be used to separate two distinct days within the *deposit from* memo for pay entries with payment amounts of $2 and some pay entries with payment amounts of $3 and $4. Under these circumstances, a pay entry is assumed to correspond to two shifts, with daily pay rates of either $1 or $2. Along similar lines, pay entries with two asterisks in the *deposit from* memo appear to separate three distinct days for pay entries. Entries with two asterisks and payment amounts of $3 are assumed to correspond to three days of work, with a daily pay rate of $1. Entries with three asterisks in the *deposit from* memo appear to separate four distinct workdays for pay entries with payment amounts of $4, which would correspond, again, to a daily pay rate of $1. Shift counts are assigned according to the distinct number of days identified in the *deposit from* memo.



Some *deposit from* memos reference specific date ranges, such as "Mon-Wed," "Sat-Tues," and "Thurs-Friday." Pay entries with such memos are assumed to correspond to work performed on each day included within the range, with shift count assigned accordingly. For example, a pay entry with a "Mon-Wed" memo is assumed to correspond to three workdays, and, thus, three shifts.



Some pay entries contain a *deposit from* memo of "1." These memos are assumed to refer to a single shift, so entries with such memos are assigned one shift accordingly.



Some pay entries contain *deposit from* memos consisting of a single date in various formats and are assumed to correspond to a single workday, and thus, a single shift, according to the assumption that VWP workers performed one shift per day of work.



Some pay entries include multiple distinct dates within the *deposit from* memo, separated from one another by containing each date in parentheses. As such, the number of pairs of parentheses appears to correspond to the number of days worked. For example, a pay entry with four pairs of parentheses corresponds to four distinct days, and thus is assigned four shifts.



Similarly, some pay entries separate distinct dates worked via commas. Counting distinct days worked via the number of commas is particularly reliable with higher numbers of commas, as there is a lot of noise in entries with few commas. For example, ████████████████████ ████████████, ████████ ████████████████████████████████████████

Thus, for these types of entries, the number of workdays is determined to be the number of commas plus one, with one shift worked each of those workdays. For example, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████ ████████ ████████



Some entries have input dates in the *deposit from* memo that appear to have errors. For example, there are occasionally issues where the date extracted from the *deposit from* memo is at least a year separate from the *date* variable. Other issues of this nature include extracted years with an extra digit (*e.g.*, 20145) or extracted years missing a digit (*e.g.*, 202). When the payment amounts for such entries are low (*i.e.*, $2 or $3, amounts that we understand can be paid for a single day worked), the entries are assumed to correspond to a single workday, and, accordingly, a single shift. In other words, it is assumed that such entries correspond with just one day's worth of work.



Manual review of the data indicates small, systematic patterns for pay entries corresponding to a single shift. These patterns include payment amount of $2 with a memo containing the word "unit;" payment amount of $2 with a memo containing either two hyphens or two slashes; payment amount of $2–$4 with a memo containing no numeric digits; or payment amount of $3 with a memo containing a single comma. This approach is conservative in assuming that entries with poorly entered or no date information correspond to just one day's worth of work. For example, ███████████, ████████ ████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ████



Similarly, manual review of the data indicates systematic patterns for pay entries corresponding to two shifts. These patterns include payment amount of $2, $4, $6, or $8 with a memo containing a single comma, the word "unit," and either zero or multiple hyphens (indicating two separate days worked at an even wage rate); payment amount of $2 with a memo containing two hyphens and a slash; payment amount of $6 and a payment memo containing at least one hyphen and no commas or slashes; payment amount of $4 or $6 and at least one asterisk; and payment amounts of $4 and a payment memo containing a single comma. The unifying trend among such entries is that the *deposit from* memo appears to reference two distinct workdays. Amounts of $2, $4, $6, and $8 are referenced because they are the doubles of the amounts typically paid for one workday ($1, $2, $3, or $4).



Along similar lines, manual review of the data indicates systematic patterns for pay entries corresponding to three shifts. These patterns include *deposit from* memos indicating three distinct days of pay for payments of $6 or $9; payment amount of $3 and a memo containing two forward slashes and one hyphen; payment amount of $3 and memos containing two forward slashes and at least one asterisk; and payment amount of $3 with memos containing two commas. The unifying trend among such entries is that the *deposit from* memo appears to reference three distinct workdays; in cases where entries of $6 or $9 are examined, these indicate the triples of amounts typically paid for one workday ($2 or $3).



Lastly, manual review of the data indicates systematic patterns for pay entries corresponding to four shifts. These patterns include *deposit from* memos indicating four distinct days of pay; payment amount of $8 with a memo containing a single asterisk; or payment amount of $4 with a memo containing three or four commas. The unifying trend among such entries is that the *deposit from* memo appears to reference four distinct workdays; in cases where entries of $8 are examined, this indicates the quadruple of a typical amount paid for one workday, $2.



Approximately 6% of entries cannot be used in the analyses, even after the foregoing cleaning steps. Below are examples of records that would require significant effort and/or assumptions

in order to be processed for use in the analysis. Reasons that these are considered "non-cleanable" include one of or a combination of the following: (1) incomplete or unclear information in the *deposit from* variable (*e.g.*, records 1, 5–7, 11–12) ; (2) empty *deposit from* variable (*e.g.*, records 2–4); (3) payment amounts that differ vastly from expected payments without any sense of the number of days or shifts worked (*e.g.*, records 9–10); and/or (4) special case records requiring individualized manual review (*e.g.*, record 8).



**Attachment B-1**

Class Definitions and Associated Damages Start Dates

| Class | Definition | Start Date |
|---|---|---|
| | [A] | [B] |
| Forced Labor class | "All civil immigration detainees who performed work for CoreCivic at Stewart in the "Volunteer Work Program" starting ten years prior to the date the original complaint was filed (April 17, 2018) until the date of final judgment in this matter[.]" | 4/17/2008 |
| Unjust Enrichment class | "All civil immigration detainees who performed work for CoreCivic at Stewart in the "Volunteer Work Program" starting four years prior to the date the original complaint was filed (April 17, 2018) until the date of final judgment in this matter[.]" | 4/17/2014 |
| Excluded from class definitions | "Excluded from the class definitions are the defendants, their officers, directors, management, employees, subsidiaries, and affiliates, and all federal governmental entities." | n/a |

*Notes and sources:*

Note that estimated damages for the classes are not additive.

[A] Amended Complaint, 10/16/2020, at 26–27.

[B] Amended Complaint, 10/16/2020, at 26–27.

**Attachment B-2**

Data Summary by Class

| Metric | Source | Forced Labor Class | Unjust Enrichment Class |
|---|---|---|---|
| Data start date | [A] | 12/23/2008 | 4/17/2014 |
| Data end date | [B] | 12/23/2020 | 12/23/2020 |
| Unique individuals | [C] | 32,103 | 13,719 |
| Analyzable data entries | [D] | 889,053 | 531,631 |
| Analyzable data entries per individual | [E] | 27.69 | 38.75 |
| Total shifts | [F] | 922,034 | 544,030 |
| Shifts per individual | [G] | 28.72 | 39.66 |
| Total hours worked | [H] | 5,532,204 | 3,264,180 |
| Hours worked per individual | [I] | 172.33 | 237.93 |
| Total paid wages | [J] | $ 2,289,524 | $ 1,442,513 |
| Average paid wages per individual | [K] | $ 71.32 | $ 105.15 |
| Estimated paid hourly wage | [L] | $ 0.41 | $ 0.44 |

*Notes and sources:*
Note that estimated damages for the classes are not additive.
Note that the Forced Labor class is coextensive with the entirety of the analyzable pay data.
[A]–[B] Attachment B-1, at B and Attachment H-4.
[C] Attachment H-4.
[D] Attachment C-1, at Analyzable data entries.
[E] = [D] / [C].
[F] Attachment D-3, at Total shifts.
[G] = [F] / [C].
[H] Attachment D-3, at Total hours worked.
[I] = [H] / [C].
[J] Attachment D-4, at Total paid wages.
[K] = [J] / [C].
[L] Attachment D-4, at Estimated paid hourly wage.

**Attachment C-1**

Data Entry Preparation in CoreCivic's VWP Pay Data

| Entries | Forced Labor Class | | Unjust Enrichment Class | |
|---|---|---|---|---|
| | Count | Percentage | Count | Percentage |
| | [A] | [B] | [C] | [D] |
| Analyzable data entries | 889,053 | 94.1% | 531,631 | 93.9% |
| Unanalyzable data entries | 56,055 | 5.9% | 34,276 | 6.1% |
| Total data entries | 945,108 | 100.0% | 565,907 | 100.0% |

*Notes and sources:*

The ability for a data entry to be processed or prepared in this context means that the necessary information required to analyze the data for damages estimation can be parsed from the variables available. In the attachments and in my report, I refer to processed records as "analyzable" and to records that could not be adequately processed as "unanalyzable."
For detailed discussion of the produced data and required data preparation, see Section 5 of my report and Attachment A-3.

The damages period for the Forced Labor class begins ten years prior to the complaint filed April 17, 2018.  See:
Attachment B-1, at [B] for 'Forced Labor class.'

The damages period for the Unjust Enrichment class begins four years prior to the complaint filed April 17, 2018.  See:
Attachment B-1, at [B] for 'Unjust Enrichment class.'

See Section 5 of my report for a discussion of my analysis of the CoreCivic VWP data.

[A] Attachment H-4.

[B] = [A] / [A] at 'Total data entries'.

[C] Attachment H-4.

[D] = [C] / [C] at 'Total data entries'.

**Attachment C-2**

Entries in CoreCivic's VWP Pay Data by Year, Forced Labor Class

| Year | Analyzable Entries | | Unanalyzable Entries | |
|---|---|---|---|---|
| | Count | Percentage | Count | Percentage |
| 2008 | 2,102 | 97.1% | 63 | 2.9% |
| 2009 | 85,696 | 97.2% | 2,439 | 2.8% |
| 2010 | 71,188 | 94.5% | 4,159 | 5.5% |
| 2011 | 60,654 | 92.3% | 5,079 | 7.7% |
| 2012 | 55,936 | 91.7% | 5,069 | 8.3% |
| 2013 | 62,566 | 93.0% | 4,723 | 7.0% |
| 2014 | 75,041 | 99.1% | 705 | 0.9% |
| 2015 | 80,949 | 99.0% | 784 | 1.0% |
| 2016 | 79,194 | 98.6% | 1,088 | 1.4% |
| 2017 | 86,259 | 97.3% | 2,386 | 2.7% |
| 2018 | 73,079 | 88.3% | 9,654 | 11.7% |
| 2019 | 87,080 | 87.4% | 12,583 | 12.6% |
| 2020 | 69,309 | 90.4% | 7,323 | 9.6% |
| Total | 889,053 | 94.1% | 56,055 | 5.9% |

*Notes and sources:*

█████████████████████████████████ (CCBVA0000006056-CCBVA0000006059, CCBVA0000106554, and CCBVA0000150718).

See Attachment H-4.

See Section 5 of my report for a discussion of my analysis of the CoreCivic VWP data.

The damages period for the Forced Labor class begins ten years prior to the complaint filed April 17, 2018.

The damages period for the Unjust Enrichment class begins four years prior to the complaint filed April 17, 2018.

**Attachment C-3**

Entries in CoreCivic's VWP Pay Data by Year, Unjust Enrichment Class

| Year | Analyzable Entries | | Unanalyzable Entries | |
|---|---|---|---|---|
| | Count | Percentage | Count | Percentage |
| 2014 | 55,761 | 99.2% | 458 | 0.8% |
| 2015 | 80,949 | 99.0% | 784 | 1.0% |
| 2016 | 79,194 | 98.6% | 1,088 | 1.4% |
| 2017 | 86,259 | 97.3% | 2,386 | 2.7% |
| 2018 | 73,079 | 88.3% | 9,654 | 11.7% |
| 2019 | 87,080 | 87.4% | 12,583 | 12.6% |
| 2020 | 69,309 | 90.4% | 7,323 | 9.6% |
| Total | 531,631 | 93.9% | 34,276 | 6.1% |

*Notes and sources:*

███████████████████████ (CCBVA0000006056-CCBVA0000006059, CCBVA0000106554, and CCBVA0000150718).

See Attachment H-4.

See Section 5 of my report for a discussion of my analysis of the CoreCivic VWP data.

The damages period for the Forced Labor class begins ten years prior to the complaint filed April 17, 2018.

The damages period for the Unjust Enrichment class begins four years prior to the complaint filed April 17, 2018.

**Attachment D-1**

Overview of Shifts in Analyzable Entries of VWP Pay Data, Pre-Federal Minimum Wage Increase

| Number of Shifts in Pay Entry | Forced Labor Class | | Unjust Enrichment Class | |
|---|---|---|---|---|
| | Entries | Percentage | Entries | Percentage |
| | [A] | [B] | [C] | [D] |
| 1 | 48,112 | 99.1% | - | n/a |
| 2 | 377 | 0.8% | - | n/a |
| 3 | 15 | 0.0% | - | n/a |
| 4 | 21 | 0.0% | - | n/a |
| 5 | - | 0.0% | - | n/a |
| 6 | - | 0.0% | - | n/a |
| 7 | - | 0.0% | - | n/a |
| 8 | - | 0.0% | - | n/a |
| 9 | - | 0.0% | - | n/a |
| 10 | - | 0.0% | - | n/a |
| 11 | - | 0.0% | - | n/a |
| 12 | - | 0.0% | - | n/a |
| 13 | - | 0.0% | - | n/a |
| 14 | - | 0.0% | - | n/a |
| 15 | - | 0.0% | - | n/a |
| 16 | - | 0.0% | - | n/a |
| 17 | - | 0.0% | - | n/a |
| 18 | - | 0.0% | - | n/a |
| 19 | - | 0.0% | - | n/a |
| Total shifts | 48,995 | n/a | - | n/a |
| Total data entries | 48,525 | 100.0% | - | n/a |

*Notes and sources:*

See Section 5 of my report for a discussion of my analysis of the CoreCivic VWP data.

The Department of Labor raised the Federal Minimum Wage from $6.55 to $7.25 effective July 24, 2009. The previous wage increase to $6.55 from $5.85 occurred July 24, 2008. Data for this analysis span from December 23, 2008 to December 23, 2020. Damages for the Unjust Enrichment class begin to accrue in 2014, hence there are no pay entries for the Unjust Enrichment class prior to the Federal Minimum Wage increase relevant to this matter. See:

U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[A] See Attachment H-4.

[B] = [A] / [A] at 'Total data entries'.

[C] See Attachment H-4.

[D] = [C] / [C] at 'Total data entries'.

**Attachment D-2**

Overview of Shifts in Analyzable Entries of VWP Pay Data, Post-Federal Minimum Wage Increase

| Number of Shifts in Pay Entry | Forced Labor Class | | Unjust Enrichment Class | |
|---|---|---|---|---|
| | Entries | Percentage | Entries | Percentage |
| | [A] | [B] | [C] | [D] |
| 1 | 820,237 | 97.6% | 523,419 | 98.5% |
| 2 | 12,216 | 1.5% | 6,036 | 1.1% |
| 3 | 4,137 | 0.5% | 372 | 0.1% |
| 4 | 3,919 | 0.5% | 1,785 | 0.3% |
| 5 | - | 0.0% | - | 0.0% |
| 6 | - | 0.0% | - | 0.0% |
| 7 | - | 0.0% | - | 0.0% |
| 8 | - | 0.0% | - | 0.0% |
| 9 | - | 0.0% | - | 0.0% |
| 10 | - | 0.0% | - | 0.0% |
| 11 | - | 0.0% | - | 0.0% |
| 12 | - | 0.0% | - | 0.0% |
| 13 | 5 | 0.0% | 5 | 0.0% |
| 14 | 5 | 0.0% | 5 | 0.0% |
| 15 | 4 | 0.0% | 4 | 0.0% |
| 16 | 1 | 0.0% | 1 | 0.0% |
| 17 | 1 | 0.0% | 1 | 0.0% |
| 18 | 2 | 0.0% | 2 | 0.0% |
| 19 | 1 | 0.0% | 1 | 0.0% |
| Total shifts | 873,039 | n/a | 544,030 | n/a |
| Total data entries | 840,528 | 100.0% | 531,631 | n/a |

*Notes and sources:*

See Section 5 of my report for a discussion of my analysis of the CoreCivic VWP data.

The Department of Labor raised the Federal Minimum Wage from $6.55 to $7.25 effective July 24, 2009. The previous wage increase to $6.55 from $5.85 occurred July 24, 2008. Data for this analysis span from December 23, 2008 to December 23, 2020. Damages for the Unjust Enrichment class begin to accrue in 2014, hence there are no pay entries for the Unjust Enrichment class prior to the Federal Minimum Wage increase relevant to this matter. See: U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[A] See Attachment H-4.

[B] = [A] / [A] at 'Total data entries'.

[C] See Attachment H-4.

[D] = [C] / [C] at 'Total data entries'.

**Attachment D-3**

Hours Worked in CoreCivic's VWP Pay Data

| Metric | Source | Pre-Federal Minimum Wage Increase | | Post-Federal Minimum Wage Increase | | Total | |
|---|---|---|---|---|---|---|---|
| | | Forced Labor Class | Unjust Enrichment Class | Forced Labor Class | Unjust Enrichment Class | Forced Labor Class | Unjust Enrichment Class |
| Total shifts | [A] | 48,995 | - | 873,039 | 544,030 | 922,034 | 544,030 |
| Hours per shift | [B] | 6 | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | [C] | 293,970 | - | 5,238,234 | 3,264,180 | 5,532,204 | 3,264,180 |

*Notes and sources:*

The Department of Labor raised the Federal Minimum Wage from $6.55 to $7.25 effective July 24, 2009. The previous wage increase to $6.55 from $5.85 occurred July 24, 2008. Data for this analysis span from December 23, 2008 to December 23, 2020. Damages for the Unjust Enrichment class begin to accrue in 2014, hence there are no pay entries for the Unjust Enrichment class prior to the Federal Minimum Wage increase relevant to this matter. See: U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[A] Pre-Federal Minimum Wage Increase: Attachment D-1, at 'Total shifts' for [A] and [C].

Post-Federal Minimum Wage Increase: Attachment D-2, at 'Total shifts' for [A] and [C].

[B] See Section 5 of my report for a discussion of assumptions used in my analysis.

[C] = [A] × [B].

**Attachment D-4**

Estimated Paid Hourly Wage of VWP Participants

| Metric | Source | Pre-Federal Minimum Wage Increase | | Post-Federal Minimum Wage Increase | | Total | |
|---|---|---|---|---|---|---|---|
| | | Forced Labor Class | Unjust Enrichment Class | Forced Labor Class | Unjust Enrichment Class | Forced Labor Class | Unjust Enrichment Class |
| Total paid wages | [A] | $ 127,166 | $ - | $ 2,162,358 | $ 1,442,513 | $ 2,289,524 | $ 1,442,513 |
| Total hours worked | [B] | 293,970 | - | 5,238,234 | 3,264,180 | 5,532,204 | 3,264,180 |
| Estimated paid hourly wage | [C] | $ 0.43 | n/a | $ 0.41 | $ 0.44 | $ 0.41 | $ 0.44 |

*Notes and sources:*

The Department of Labor raised the Federal Minimum Wage from $6.55 to $7.25 effective July 24, 2009. The previous wage increase to $6.55 from $5.85 occurred July 24, 2008. Data for this analysis span from December 23, 2008 to December 23, 2020. Damages for the Unjust Enrichment class begin to accrue in 2014, hence there are no pay entries for the Unjust Enrichment class prior to the Federal Minimum Wage increase relevant to this matter. See: U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[A] See Attachment H-4.

For detailed discussion of my analysis of the CoreCivic VWP data, see Section 5 of my report.

[B] Attachment D-3, at [C].

[C] = [A] / [B].

**Attachment D-5**

Estimated Effective Federal Minimum Wage Rate

| Metric | Pre-Federal Minimum Wage Increase | | Post-Federal Minimum Wage Increase | | Total | |
|---|---|---|---|---|---|---|
| | Total Hours | Minimum Wage | Total Hours | Minimum Wage | Total Hours | Effective Minimum Wage |
| | [A] | [B] | [C] | [D] | [E] | [F] |
| Forced labor class | 293,970 | $ 6.55 | 5,238,234 | $ 7.25 | 5,532,204 | $ 7.21 |
| Unjust enrichment class | - | $ 6.55 | 3,264,180 | $ 7.25 | 3,264,180 | $ 7.25 |

*Notes and sources:*

The Department of Labor raised the Federal Minimum Wage from $6.55 to $7.25 effective July 24, 2009. The previous wage increase to $6.55 from $5.85 occurred July 24, 2008. Data for this analysis span from December 23, 2008 to December 23, 2020. Damages for the Unjust Enrichment class begin to accrue in 2014, hence there are no pay entries for the Unjust Enrichment class prior to the Federal Minimum Wage increase relevant to this matter. See: U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[A] Attachment D-3, at [C].

[B] U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[C] Attachment D-3, at [C].

[D] U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021).

[E] = [A] + [C].

[F] Equal to the weighted average of the minimum wage values, weighted by total hours in each time period.

**Attachment D-6**

Value of VWP Labor in Wages Using Effective Federal Minimum Wage

| Metric | Source | Forced Labor Class | Unjust Enrichment Class |
|---|---|---|---|
| Total hours worked | [A] | 5,532,204 | 3,264,180 |
| Effective federal minimum wage | [B] | $ 7.21 | $ 7.25 |
| Estimated paid hourly wage | [C] | $ 0.41 | $ 0.44 |
| Total value of labor in wages | [D] | $ 37,613,176 | $ 22,222,792 |

*Notes and sources:*

Note that estimated damages for the classes are not additive.

[A] Attachment D-5, at [E].

[B] Attachment D-5, at [F].

[C] Attachment D-4, at [C].

[D] = [A] × ([B] - [C]).

**Attachment E-1**

Comparison Wage Time Periods

| Comparison Wage Period | Source | Start Date | End Date | Wage Determination IGSA Modification Number |
|---|---|---|---|---|
| Comparison Wage Period 1 | [A] | 12/23/2008 | 7/23/2009 | n/a |
| Comparison Wage Period 2 | [B] | 7/24/2009 | 11/19/2011 | n/a |
| Comparison Wage Period 3 | [C] | 11/20/2011 | 9/21/2013 | 7 |
| Comparison Wage Period 4 | [D] | 9/22/2013 | 9/21/2014 | 14 |
| Comparison Wage Period 5 | [E] | 9/22/2014 | 3/1/2017 | 15 |
| Comparison Wage Period 6 | [F] | 3/2/2017 | 7/31/2018 | 26 |
| Comparison Wage Period 7 | [G] | 8/1/2018 | 7/31/2019 | 31 |
| Comparison Wage Period 8 | [H] | 8/1/2019 | 7/31/2020 | 37 |
| Comparison Wage Period 9 | [I] | 8/1/2020 | 12/23/2020 | 41 |

*Notes and sources:*

[A] Start Date: Earliest data date.  See Attachment B-2, at [A] for Forced Labor Class.

   End Date: Last day before Department of Labor increased the federal minumum wage.  See:

      U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021)

   Wage Determination IGSA Modification Number: n/a.

[B] Start Date: Date of federal minimum wage rate increase by Department of Labor.  See:

      U.S. Department of Labor, History of Changes to the Minimum Wage Law, https://www.dol.gov/agencies/whd/minimum-wage/history (accessed 12/20/2021)

   End Date: Day before IGSA Mod 7 wage determination effective date.

   Wage Determination IGSA Modification Number: n/a.

[C] Start Date: IGSA Mod 7 wage determination effective date.

   End Date: Day before IGSA Mod 14 wage determination effective date.

   Wage Determination IGSA Modification Number: CoreCivic, Amendment of Solicitation/Modification of Contract, 11/16/2011 (CCBVA0000000357–360)

      Note that IGSA Mod 8 specifies the "Start Date" reflected in the table above for [C]. CoreCivic, Amendment of Solicitation/Modification of Contract, 12/19/2011 (CCBVA0000000361).

[D] Start Date: IGSA Mod 14 wage determination effective date.

   End Date: Day before IGSA Mod 15 wage determination effective date.

Wage Determination IGSA Modification Number: CoreCivic, Amendment of Solicitation/Modification of Contract, 6/19/2014 (CCBVA0000000392–396)

 Note that IGSA Mod 16 specifies the "End Dates" reflected in the table above for [D] and [E]. CoreCivic, Amendment of Solicitation/Modification of Contract 9/4/2014 (CCBVA0000000402–404).

[E] Start Date: IGSA Mod 15 wage determination effective date.

 End Date: Day before IGSA Mod 26 wage determination effective date.

 Wage Determination IGSA Modification Number: CoreCivic, Amendment of Solicitation/Modification of Contract, 7/30/2014 (CCBVA0000000397–401)

 Note that IGSA Mod 16 specifies the "End Dates" reflected in the table above for [D] and [E]. CoreCivic, Amendment of Solicitation/Modification of Contract 9/4/2014 (CCBVA0000000402–404).

[F] Start Date: IGSA Mod 26 wage determination effective date.

 End Date: Day before IGSA Mod 31 wage determination effective date.

 ███████████████████████████████████████████ (CCBVA0000000931–944)

[G] Start Date: IGSA Mod 31 wage determination effective date.

 End Date: Day before IGSA Mod 37 wage determination effective date.

 Wage Determination IGSA Modification Number: CoreCivic, Amendment of Solicitation/Modification of Contract, 8/8/2018 (ICE-Barrientos 0128–141).

[H] Start Date: IGSA Mod 37 wage determination effective date.

 End Date: Day before IGSA Mod 41 wage determination effective date.

 ███████████████████████████████████████████ (ICE-Barrientos 0229–250).

[I] Start Date: IGSA Mod 41 wage determination effective date.

 End Date: Last date available in VWP pay data.  See Attachment B-2, at [B].

 ███████████████████████████████████████████ (ICE-Barrientos 0262–275).

**Attachment E-2**

Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period, Forced Labor Class

| Occupation | Comparison Wage Period 1 | | Comparison Wage Period 2 | | Comparison Wage Period 3 | |
|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 44,772 | 91.4% | 111,282 | 62.8% | 53,361 | 46.3% |
| Kitchen Worker | 4,120 | 8.4% | 54,805 | 30.9% | 47,487 | 41.2% |
| Porter | 6 | 0.0% | 970 | 0.5% | 1,312 | 1.1% |
| Shower Worker | 2 | 0.0% | 939 | 0.5% | 2,346 | 2.0% |
| Laundry Worker | 22 | 0.0% | 1,318 | 0.7% | 1,793 | 1.6% |
| Commissary Worker | 48 | 0.1% | 2,614 | 1.5% | 2,432 | 2.1% |
| Janitor | 21 | 0.0% | 4,532 | 2.6% | 5,912 | 5.1% |
| Barber | - | 0.0% | 89 | 0.1% | 83 | 0.1% |
| Medical Worker | 4 | 0.0% | 646 | 0.4% | 508 | 0.4% |
| Total | 48,995 | 100.0% | 177,195 | 100.0% | 115,234 | 100.0% |

*Notes and sources:*
See Attachment E-1 for definitions of Comparison Wage Periods.
'Shift Count': See Attachment H-4.
'Percentage' = 'Shift Count' / 'Total' Count for each period.

| Occupation | Comparison Wage Period 4 | | Comparison Wage Period 5 | | Comparison Wage Period 6 | |
|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 24,120 | 34.1% | 51,573 | 26.1% | 43,824 | 39.0% |
| Kitchen Worker | 25,644 | 36.3% | 67,265 | 34.0% | 34,905 | 31.1% |
| Porter | 8,759 | 12.4% | 38,836 | 19.6% | 15,209 | 13.5% |
| Shower Worker | 6,862 | 9.7% | 25,511 | 12.9% | 9,682 | 8.6% |
| Laundry Worker | 1,394 | 2.0% | 5,051 | 2.6% | 3,584 | 3.2% |
| Commissary Worker | 1,752 | 2.5% | 4,322 | 2.2% | 2,936 | 2.6% |
| Janitor | 1,205 | 1.7% | 1,864 | 0.9% | 817 | 0.7% |
| Barber | 548 | 0.8% | 2,679 | 1.4% | 1,288 | 1.1% |
| Medical Worker | 387 | 0.5% | 663 | 0.3% | 62 | 0.1% |
| Total | 70,671 | 100.0% | 197,764 | 100.0% | 112,307 | 100.0% |

| Occupation | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | |
|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 37,785 | 43.5% | 35,099 | 38.9% | 3,236 | 14.2% |
| Kitchen Worker | 28,579 | 32.9% | 35,471 | 39.3% | 11,276 | 49.6% |
| Porter | 10,115 | 11.6% | 10,357 | 11.5% | 4,733 | 20.8% |
| Shower Worker | 5,014 | 5.8% | 4,736 | 5.3% | 2,337 | 10.3% |
| Laundry Worker | 2,561 | 2.9% | 2,285 | 2.5% | 744 | 3.3% |
| Commissary Worker | 926 | 1.1% | 582 | 0.6% | 140 | 0.6% |
| Janitor | 784 | 0.9% | 79 | 0.1% | 5 | 0.0% |
| Barber | 987 | 1.1% | 840 | 0.9% | 199 | 0.9% |
| Medical Worker | 206 | 0.2% | 745 | 0.8% | 47 | 0.2% |
| Total | 86,957 | 100.0% | 90,194 | 100.0% | 22,717 | 100.0% |

| Occupation | Total | |
|---|---|---|
| | Shift Count | Percentage |
| No Job Identified | 405,052 | 43.9% |
| Kitchen Worker | 309,552 | 33.6% |
| Porter | 90,297 | 9.8% |
| Shower Worker | 57,429 | 6.2% |
| Laundry Worker | 18,752 | 2.0% |
| Commissary Worker | 15,752 | 1.7% |
| Janitor | 15,219 | 1.7% |
| Barber | 6,713 | 0.7% |
| Medical Worker | 3,268 | 0.4% |
| Total | 922,034 | 100.0% |

**Attachment E-3**

Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period, Unjust Enrichment Class

| Occupation | Comparison Wage Period 4 | | Comparison Wage Period 5 | | Comparison Wage Period 6 | |
|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 7,008 | 20.6% | 51,573 | 26.1% | 43,824 | 39.0% |
| Kitchen Worker | 11,984 | 35.2% | 67,265 | 34.0% | 34,905 | 31.1% |
| Porter | 6,820 | 20.0% | 38,836 | 19.6% | 15,209 | 13.5% |
| Shower Worker | 5,572 | 16.3% | 25,511 | 12.9% | 9,682 | 8.6% |
| Laundry Worker | 775 | 2.3% | 5,051 | 2.6% | 3,584 | 3.2% |
| Commissary Worker | 817 | 2.4% | 4,322 | 2.2% | 2,936 | 2.6% |
| Janitor | 487 | 1.4% | 1,864 | 0.9% | 817 | 0.7% |
| Barber | 457 | 1.3% | 2,679 | 1.4% | 1,288 | 1.1% |
| Medical Worker | 171 | 0.5% | 663 | 0.3% | 62 | 0.1% |
| Total | 34,091 | 100.0% | 197,764 | 100.0% | 112,307 | 100.0% |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins.

'Shift Count': See Attachment H-4.

'Percentage' = 'Shift Count' / 'Total' Count for each period.

| Occupation | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | |
|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 37,785 | 43.5% | 35,099 | 38.9% | 3,236 | 14.2% |
| Kitchen Worker | 28,579 | 32.9% | 35,471 | 39.3% | 11,276 | 49.6% |
| Porter | 10,115 | 11.6% | 10,357 | 11.5% | 4,733 | 20.8% |
| Shower Worker | 5,014 | 5.8% | 4,736 | 5.3% | 2,337 | 10.3% |
| Laundry Worker | 2,561 | 2.9% | 2,285 | 2.5% | 744 | 3.3% |
| Commissary Worker | 926 | 1.1% | 582 | 0.6% | 140 | 0.6% |
| Janitor | 784 | 0.9% | 79 | 0.1% | 5 | 0.0% |
| Barber | 987 | 1.1% | 840 | 0.9% | 199 | 0.9% |
| Medical Worker | 206 | 0.2% | 745 | 0.8% | 47 | 0.2% |
| Total | 86,957 | 100.0% | 90,194 | 100.0% | 22,717 | 100.0% |

| Occupation | Total | |
|---|---|---|
| | **Shift Count** | **Percentage** |
| No Job Identified | 178,525 | 32.8% |
| Kitchen Worker | 189,480 | 34.8% |
| Porter | 86,070 | 15.8% |
| Shower Worker | 52,852 | 9.7% |
| Laundry Worker | 15,000 | 2.8% |
| Commissary Worker | 9,723 | 1.8% |
| Janitor | 4,036 | 0.7% |
| Barber | 6,450 | 1.2% |
| Medical Worker | 1,894 | 0.3% |
| Total | 544,030 | 100.0% |

**Attachment E-4**

Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 | Comparison Wage Period 5 |
|---|---|---|---|---|---|---|
| Total shifts | [A] | 48,995 | 177,195 | 115,234 | 70,671 | 197,764 |
| Hours per shift | [B] | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | [C] | 293,970 | 1,063,170 | 691,404 | 424,026 | 1,186,584 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1.

[A] Attachment E-2, at 'Total' for each respective Comparison Wage Period.

[B] See Section 5 of my report for a discussion of assumptions used in my analysis

[C] = [A] × [B].

| Metric | Comparison Wage Period 6 | Comparison Wage Period 7 | Comparison Wage Period 8 | Comparison Wage Period 9 | Total |
|---|---|---|---|---|---|
| Total shifts | 112,307 | 86,957 | 90,194 | 22,717 | 922,034 |
| Hours per shift | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | 673,842 | 521,742 | 541,164 | 136,302 | 5,532,204 |

**Attachment E-5**

Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | Comparison Wage Period 6 | Comparison Wage Period 7 | Comparison Wage Period 8 |
|---|---|---|---|---|---|---|
| Total shifts | [A] | 34,091 | 197,764 | 112,307 | 86,957 | 90,194 |
| Hours per shift | [B] | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | [C] | 204,546 | 1,186,584 | 673,842 | 521,742 | 541,164 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1
   rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

[A] Attachment E-3, at 'Total' for each respective Comparison Wage Period.

[B] See Section 5 of my report for a discussion of assumptions used in my analysis

[C] = [A] × [B].

| Metric | Comparison Wage Period 9 | Total |
|---|---|---|
| Total shifts | 22,717 | 544,030 |
| Hours per shift | 6 | 6 |
| Total hours worked | 136,302 | 3,264,180 |

**Attachment E-6**

Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 | Comparison Wage Period 5 |
|---|---|---|---|---|---|---|
| Total paid wages | [A] | $ 127,166 | $ 391,291 | $ 245,595 | $ 165,290 | $ 480,912 |
| Total hours worked | [B] | 293,970 | 1,063,170 | 691,404 | 424,026 | 1,186,584 |
| Estimated paid hourly wage | [C] | $ 0.43 | $ 0.37 | $ 0.36 | $ 0.39 | $ 0.41 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1.

[A] See Attachment H-4.

    For detailed discussion of my analysis of the CoreCivic VWP data, see Section 5 of my report

[B] Attachment E-4, at [C].

[C] = [A] / [B].

| Metric | Comparison Wage Period 6 | | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| Total paid wages | $ | 278,177 | $ | 253,282 | $ | 275,431 | $ | 72,380 | $ | 2,289,524 |
| Total hours worked | | 673,842 | | 521,742 | | 541,164 | | 136,302 | | 5,532,204 |
| Estimated paid hourly wage | $ | 0.41 | $ | 0.49 | $ | 0.51 | $ | 0.53 | $ | 0.41 |

**Attachment E-7**

Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | Comparison Wage Period 6 | Comparison Wage Period 7 | Comparison Wage Period 8 |
|---|---|---|---|---|---|---|
| Total paid wages | [A] | $ 82,331 | $ 480,912 | $ 278,177 | $ 253,282 | $ 275,431 |
| Total hours worked | [B] | 204,546 | 1,186,584 | 673,842 | 521,742 | 541,164 |
| Estimated paid hourly wage | [C] | $ 0.40 | $ 0.41 | $ 0.41 | $ 0.49 | $ 0.51 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1
    rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

[A] See Attachment H-4.
    For detailed discussion of my analysis of the CoreCivic VWP data, see Section 5 of my report

[B] Attachment E-5, at [C].

[C] = [A] / [B].

| Metric | Comparison Wage Period 9 | | Total | |
|---|---|---|---|---|
| Total paid wages | $ | 72,380 | $ | 1,442,513 |
| Total hours worked | | 136,302 | | 3,264,180 |
| Estimated paid hourly wage | $ | 0.53 | $ | 0.44 |

**Attachment E-8**

Comparison Wages and Benefits for Jobs Performed at Stewart Detention Center by Comparison Wage Period

| VWP Occupation | Comparison Wage Period | Comparison Job | Comparison Wage | Comparison Benefits | Universal Benefits | Comparison Total | Universal Total |
|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] | [F] | [G] |
| Kitchen worker | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Kitchen worker | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Kitchen worker | 3 | n/a | $ 7.25 | $ - | $ 3.59 | $ 7.25 | $ 10.84 |
| Kitchen worker | 4 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Kitchen worker | 5 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Kitchen worker | 6 | n/a | $ 7.25 | $ - | $ 4.02 | $ 7.25 | $ 11.27 |
| Kitchen worker | 7 | Food service worker | $ 8.92 | $ 4.48 | $ 4.48 | $ 13.40 | $ 13.40 |
| Kitchen worker | 8 | Food service worker | $ 8.92 | $ 4.54 | $ 4.54 | $ 13.46 | $ 13.46 |
| Kitchen worker | 9 | Food service worker | $ 9.03 | $ 4.54 | $ 4.54 | $ 13.57 | $ 13.57 |
| Porter | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Porter | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Porter | 3 | Janitor | $ 9.25 | $ 3.59 | $ 3.59 | $ 12.84 | $ 12.84 |
| Porter | 4 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Porter | 5 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Porter | 6 | Janitor | $ 9.25 | $ 4.02 | $ 4.02 | $ 13.27 | $ 13.27 |
| Porter | 7 | Janitor | $ 9.41 | $ 4.48 | $ 4.48 | $ 13.89 | $ 13.89 |
| Porter | 8 | Janitor | $ 9.41 | $ 4.54 | $ 4.54 | $ 13.95 | $ 13.95 |
| Porter | 9 | Janitor | $ 9.60 | $ 4.54 | $ 4.54 | $ 14.14 | $ 14.14 |
| Shower worker | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Shower worker | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Shower worker | 3 | Janitor | $ 9.25 | $ 3.59 | $ 3.59 | $ 12.84 | $ 12.84 |
| Shower worker | 4 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Shower worker | 5 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Shower worker | 6 | Janitor | $ 9.25 | $ 4.02 | $ 4.02 | $ 13.27 | $ 13.27 |
| Shower worker | 7 | Janitor | $ 9.41 | $ 4.48 | $ 4.48 | $ 13.89 | $ 13.89 |
| Shower worker | 8 | Janitor | $ 9.41 | $ 4.54 | $ 4.54 | $ 13.95 | $ 13.95 |
| Shower worker | 9 | Janitor | $ 9.60 | $ 4.54 | $ 4.54 | $ 14.14 | $ 14.14 |

| VWP Occupation | Comparison Wage Period | Comparison Job | Comparison Wage | Comparison Benefits | Universal Benefits | Comparison Total | Universal Total |
|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] | [F] | [G] |
| Laundry worker | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Laundry worker | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Laundry worker | 3 | n/a | $ 7.25 | $ - | $ 3.59 | $ 7.25 | $ 10.84 |
| Laundry worker | 4 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Laundry worker | 5 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Laundry worker | 6 | n/a | $ 7.25 | $ - | $ 4.02 | $ 7.25 | $ 11.27 |
| Laundry worker | 7 | Washer, Machine | $ 9.39 | $ 4.48 | $ 4.48 | $ 13.87 | $ 13.87 |
| Laundry worker | 8 | Washer, Machine | $ 9.59 | $ 4.54 | $ 4.54 | $ 14.13 | $ 14.13 |
| Laundry worker | 9 | Washer, Machine | $ 9.78 | $ 4.54 | $ 4.54 | $ 14.32 | $ 14.32 |
| Commissary worker | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Commissary worker | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Commissary worker | 3 | General Clerk I | $ 10.64 | $ 3.59 | $ 3.59 | $ 14.23 | $ 14.23 |
| Commissary worker | 4 | General Clerk I | $ 10.64 | $ 3.81 | $ 3.81 | $ 14.45 | $ 14.45 |
| Commissary worker | 5 | General Clerk I | $ 10.66 | $ 3.81 | $ 3.81 | $ 14.47 | $ 14.47 |
| Commissary worker | 6 | General Clerk I | $ 10.66 | $ 4.02 | $ 4.02 | $ 14.68 | $ 14.68 |
| Commissary worker | 7 | General Clerk I | $ 11.78 | $ 4.48 | $ 4.48 | $ 16.26 | $ 16.26 |
| Commissary worker | 8 | General Clerk I | $ 11.78 | $ 4.54 | $ 4.54 | $ 16.32 | $ 16.32 |
| Commissary worker | 9 | General Clerk I | $ 12.41 | $ 4.54 | $ 4.54 | $ 16.95 | $ 16.95 |
| Janitor | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Janitor | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Janitor | 3 | Janitor | $ 9.25 | $ 3.59 | $ 3.59 | $ 12.84 | $ 12.84 |
| Janitor | 4 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Janitor | 5 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Janitor | 6 | Janitor | $ 9.25 | $ 4.02 | $ 4.02 | $ 13.27 | $ 13.27 |
| Janitor | 7 | Janitor | $ 9.41 | $ 4.48 | $ 4.48 | $ 13.89 | $ 13.89 |
| Janitor | 8 | Janitor | $ 9.41 | $ 4.54 | $ 4.54 | $ 13.95 | $ 13.95 |
| Janitor | 9 | Janitor | $ 9.60 | $ 4.54 | $ 4.54 | $ 14.14 | $ 14.14 |
| Medical worker | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Medical worker | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Medical worker | 3 | Janitor | $ 9.25 | $ 3.59 | $ 3.59 | $ 12.84 | $ 12.84 |

| VWP Occupation | Comparison Wage Period | Comparison Job | Comparison Wage | Comparison Benefits | Universal Benefits | Comparison Total | Universal Total |
|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] | [F] | [G] |
| Medical worker | 4 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Medical worker | 5 | Janitor | $ 9.25 | $ 3.81 | $ 3.81 | $ 13.06 | $ 13.06 |
| Medical worker | 6 | Janitor | $ 9.25 | $ 4.02 | $ 4.02 | $ 13.27 | $ 13.27 |
| Medical worker | 7 | Janitor | $ 9.41 | $ 4.48 | $ 4.48 | $ 13.89 | $ 13.89 |
| Medical worker | 8 | Janitor | $ 9.41 | $ 4.54 | $ 4.54 | $ 13.95 | $ 13.95 |
| Medical worker | 9 | Janitor | $ 9.60 | $ 4.54 | $ 4.54 | $ 14.14 | $ 14.14 |
| Barber | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| Barber | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| Barber | 3 | n/a | $ 7.25 | $ - | $ 3.59 | $ 7.25 | $ 10.84 |
| Barber | 4 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Barber | 5 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| Barber | 6 | n/a | $ 7.25 | $ - | $ 4.02 | $ 7.25 | $ 11.27 |
| Barber | 7 | n/a | $ 7.25 | $ - | $ 4.48 | $ 7.25 | $ 11.73 |
| Barber | 8 | n/a | $ 7.25 | $ - | $ 4.54 | $ 7.25 | $ 11.79 |
| Barber | 9 | n/a | $ 7.25 | $ - | $ 4.54 | $ 7.25 | $ 11.79 |
| No job identified | 1 | n/a | $ 6.55 | $ - | $ - | $ 6.55 | $ 6.55 |
| No job identified | 2 | n/a | $ 7.25 | $ - | $ - | $ 7.25 | $ 7.25 |
| No job identified | 3 | n/a | $ 7.25 | $ - | $ 3.59 | $ 7.25 | $ 10.84 |
| No job identified | 4 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| No job identified | 5 | n/a | $ 7.25 | $ - | $ 3.81 | $ 7.25 | $ 11.06 |
| No job identified | 6 | n/a | $ 7.25 | $ - | $ 4.02 | $ 7.25 | $ 11.27 |
| No job identified | 7 | n/a | $ 7.25 | $ - | $ 4.48 | $ 7.25 | $ 11.73 |
| No job identified | 8 | n/a | $ 7.25 | $ - | $ 4.54 | $ 7.25 | $ 11.79 |
| No job identified | 9 | n/a | $ 7.25 | $ - | $ 4.54 | $ 7.25 | $ 11.79 |

*Notes and sources:*

[A] See Attachment E-1 for definitions of Comparison Wage Periods.

[B] See Section 5.3.2 of my report for discussion of comparison jobs.  Comparison jobs are only paired in those time periods that have the comparison job listed in the associated IGSA amendment.
   For relevant amendments for each period, see Attachment E-1.

[C] Comparison wages are from the relevant IGSA amendment wage determinations for the applicable comparison job, if available.  For the relevant amendments for each time period, see Attachment E-1.

[D] Comparison benefits are from the relevant IGSA amendment benefits discussions.  Note that for 'Comparison Benefits', benefits are only applied to those positions listed in the relevant IGSA amendment wage determination. For discussion of the distinction between 'Comparison Benefits' and 'Universal Benefits', see Section 5.3.3 of my report.

[E] Benefits, if defined in the relevant IGSA amendment wage determination, are applied to all pay entries in that time period for 'Universal Benefits' irrespective of VWP job.

| VWP Occupation | Comparison Wage Period | Comparison Job | Comparison Wage | Comparison Benefits | Universal Benefits | Comparison Total | Universal Total |
|---|---|---|---|---|---|---|---|
| | [A] | [B] | [C] | [D] | [E] | [F] | [G] |

For discussion for the distinction between 'Comparison Benefits' and 'Universal Benefits', see Section 5.3.3 of my report.

[F] = [C] + [D].

[G] = [C] + [E].

**Attachment E-9**

Comparison Job Effective Wage Analysis, Forced Labor Class

| Occupation | Comparison Wage Period 1 | | | | Comparison Wage Period 2 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 8.4% | $ 6.55 | $ - | $ - | 30.9% | $ 7.25 | $ - | $ - |
| Porter | 0.0% | $ 6.55 | $ - | $ - | 0.5% | $ 7.25 | $ - | $ - |
| Shower worker | 0.0% | $ 6.55 | $ - | $ - | 0.5% | $ 7.25 | $ - | $ - |
| Laundry worker | 0.0% | $ 6.55 | $ - | $ - | 0.7% | $ 7.25 | $ - | $ - |
| Commissary worker | 0.1% | $ 6.55 | $ - | $ - | 1.5% | $ 7.25 | $ - | $ - |
| Janitor | 0.0% | $ 6.55 | $ - | $ - | 2.6% | $ 7.25 | $ - | $ - |
| Medical worker | 0.0% | $ 6.55 | $ - | $ - | 0.4% | $ 7.25 | $ - | $ - |
| Barber | 0.0% | $ 6.55 | $ - | $ - | 0.1% | $ 7.25 | $ - | $ - |
| No job identified | 91.4% | $ 6.55 | $ - | $ - | 62.8% | $ 7.25 | $ - | $ - |
| Effective wage | | $ 6.55 | $ - | $ - | | $ 7.25 | $ - | $ - |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1.

'Proportion of Analyzable Entry Shifts': Attachment E-2, at 'Percentage' for the associated job.

'Comparison Wage': Attachment E-8, at 'Comparison Wage' for the associated job and Comparison Wage Period.

'Comparison Benefits': Attachment E-8, at 'Comparison Benefits' for the associated job and Comparison Wage Period.

'Universal Benefits': Attachment E-8, at 'Universal Benefits' for the associated job and Comparison Wage Period.

| Occupation | Comparison Wage Period 3 | | | | Comparison Wage Period 4 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 41.2% | $ 7.25 | $ - | $ 3.59 | 36.3% | $ 7.25 | $ - | $ 3.81 |
| Porter | 1.1% | $ 9.25 | $ 3.59 | $ 3.59 | 12.4% | $ 9.25 | $ 3.81 | $ 3.81 |
| Shower worker | 2.0% | $ 9.25 | $ 3.59 | $ 3.59 | 9.7% | $ 9.25 | $ 3.81 | $ 3.81 |
| Laundry worker | 1.6% | $ 7.25 | $ - | $ 3.59 | 2.0% | $ 7.25 | $ - | $ 3.81 |
| Commissary worker | 2.1% | $ 10.64 | $ 3.59 | $ 3.59 | 2.5% | $ 10.64 | $ 3.81 | $ 3.81 |
| Janitor | 5.1% | $ 9.25 | $ 3.59 | $ 3.59 | 1.7% | $ 9.25 | $ 3.81 | $ 3.81 |
| Medical worker | 0.4% | $ 9.25 | $ 3.59 | $ 3.59 | 0.5% | $ 9.25 | $ 3.81 | $ 3.81 |
| Barber | 0.1% | $ 7.25 | $ - | $ 3.59 | 0.8% | $ 7.25 | $ - | $ 3.81 |
| No job identified | 46.3% | $ 7.25 | $ - | $ 3.59 | 34.1% | $ 7.25 | $ - | $ 3.81 |
| Effective wage | | $ 7.50 | $ 0.39 | $ 3.59 | | $ 7.82 | $ 1.02 | $ 3.81 |

| Occupation | Comparison Wage Period 5 | | | | Comparison Wage Period 6 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 34.0% | $ 7.25 | $ - | $ 3.81 | 31.1% | $ 7.25 | $ - | $ 4.02 |
| Porter | 19.6% | $ 9.25 | $ 3.81 | $ 3.81 | 13.5% | $ 9.25 | $ 4.02 | $ 4.02 |
| Shower worker | 12.9% | $ 9.25 | $ 3.81 | $ 3.81 | 8.6% | $ 9.25 | $ 4.02 | $ 4.02 |
| Laundry worker | 2.6% | $ 7.25 | $ - | $ 3.81 | 3.2% | $ 7.25 | $ - | $ 4.02 |
| Commissary worker | 2.2% | $ 10.66 | $ 3.81 | $ 3.81 | 2.6% | $ 10.66 | $ 4.02 | $ 4.02 |
| Janitor | 0.9% | $ 9.25 | $ 3.81 | $ 3.81 | 0.7% | $ 9.25 | $ 4.02 | $ 4.02 |
| Medical worker | 0.3% | $ 9.25 | $ 3.81 | $ 3.81 | 0.1% | $ 9.25 | $ 4.02 | $ 4.02 |
| Barber | 1.4% | $ 7.25 | $ - | $ 3.81 | 1.1% | $ 7.25 | $ - | $ 4.02 |
| No job identified | 26.1% | $ 7.25 | $ - | $ 3.81 | 39.0% | $ 7.25 | $ - | $ 4.02 |
| Effective wage | | $ 8.00 | $ 1.37 | $ 3.81 | | $ 7.80 | $ 1.03 | $ 4.02 |

| Occupation | Comparison Wage Period 7 | | | | Comparison Wage Period 8 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 32.9% | $ 8.92 | $ 4.48 | $ 4.48 | 39.3% | $ 8.92 | $ 4.54 | $ 4.54 |
| Porter | 11.6% | $ 9.41 | $ 4.48 | $ 4.48 | 11.5% | $ 9.41 | $ 4.54 | $ 4.54 |
| Shower worker | 5.8% | $ 9.41 | $ 4.48 | $ 4.48 | 5.3% | $ 9.41 | $ 4.54 | $ 4.54 |
| Laundry worker | 2.9% | $ 9.39 | $ 4.48 | $ 4.48 | 2.5% | $ 9.59 | $ 4.54 | $ 4.54 |
| Commissary worker | 1.1% | $ 11.78 | $ 4.48 | $ 4.48 | 0.6% | $ 11.78 | $ 4.54 | $ 4.54 |
| Janitor | 0.9% | $ 9.41 | $ 4.48 | $ 4.48 | 0.1% | $ 9.41 | $ 4.54 | $ 4.54 |
| Medical worker | 0.2% | $ 9.41 | $ 4.48 | $ 4.48 | 0.8% | $ 9.41 | $ 4.54 | $ 4.54 |
| Barber | 1.1% | $ 7.25 | $ - | $ 4.48 | 0.9% | $ 7.25 | $ - | $ 4.54 |
| No job identified | 43.5% | $ 7.25 | $ - | $ 4.48 | 38.9% | $ 7.25 | $ - | $ 4.54 |
| Effective wage | | $ 8.31 | $ 2.48 | $ 4.48 | | $ 8.38 | $ 2.73 | $ 4.54 |

| Occupation | Comparison Wage Period 9 | | | |
|---|---|---|---|---|
|  | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 49.6% | $ 9.03 | $ 4.54 | $ 4.54 |
| Porter | 20.8% | $ 9.60 | $ 4.54 | $ 4.54 |
| Shower worker | 10.3% | $ 9.60 | $ 4.54 | $ 4.54 |
| Laundry worker | 3.3% | $ 9.78 | $ 4.54 | $ 4.54 |
| Commissary worker | 0.6% | $ 12.41 | $ 4.54 | $ 4.54 |
| Janitor | 0.0% | $ 9.60 | $ 4.54 | $ 4.54 |
| Medical worker | 0.2% | $ 9.60 | $ 4.54 | $ 4.54 |
| Barber | 0.9% | $ 7.25 | $ - | $ 4.54 |
| No job identified | 14.2% | $ 7.25 | $ - | $ 4.54 |
| Effective wage |  | $ 8.98 | $ 3.85 | $ 4.54 |

**Attachment E-10**

Comparison Job Effective Wage Analysis, Unjust Enrichment Class

| Occupation | Comparison Wage Period 4 | | | | Comparison Wage Period 5 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 35.2% | $ 7.25 | $ - | $ 3.81 | 34.0% | $ 7.25 | $ - | $ 3.81 |
| Porter | 20.0% | $ 9.25 | $ 3.81 | $ 3.81 | 19.6% | $ 9.25 | $ 3.81 | $ 3.81 |
| Shower worker | 16.3% | $ 9.25 | $ 3.81 | $ 3.81 | 12.9% | $ 9.25 | $ 3.81 | $ 3.81 |
| Laundry worker | 2.3% | $ 7.25 | $ - | $ 3.81 | 2.6% | $ 7.25 | $ - | $ 3.81 |
| Commissary worker | 2.4% | $ 10.64 | $ 3.81 | $ 3.81 | 2.2% | $ 10.66 | $ 3.81 | $ 3.81 |
| Janitor | 1.4% | $ 9.25 | $ 3.81 | $ 3.81 | 0.9% | $ 9.25 | $ 3.81 | $ 3.81 |
| Medical worker | 0.5% | $ 9.25 | $ 3.81 | $ 3.81 | 0.3% | $ 9.25 | $ 3.81 | $ 3.81 |
| Barber | 1.3% | $ 7.25 | $ - | $ 3.81 | 1.4% | $ 7.25 | $ - | $ 3.81 |
| No job identified | 20.6% | $ 7.25 | $ - | $ 3.81 | 26.1% | $ 7.25 | $ - | $ 3.81 |
| Effective wage | | $ 8.10 | $ 1.55 | $ 3.81 | | $ 8.00 | $ 1.37 | $ 3.81 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins.

'Proportion of Analyzable Entry Shifts': Attachment E-3, at 'Percentage' for the associated job.

'Comparison Wage': Attachment E-8, at 'Comparison Wage' for the associated job and Comparison Wage Period.

'Comparison Benefits': Attachment E-8, at 'Comparison Benefits' for the associated job and Comparison Wage Period.

'Universal Benefits': Attachment E-8, at 'Universal Benefits' for the associated job and Comparison Wage Period.

| Occupation | Comparison Wage Period 6 | | | | Comparison Wage Period 7 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 31.1% | $ 7.25 | $ - | $ 4.02 | 32.9% | $ 8.92 | $ 4.48 | $ 4.48 |
| Porter | 13.5% | $ 9.25 | $ 4.02 | $ 4.02 | 11.6% | $ 9.41 | $ 4.48 | $ 4.48 |
| Shower worker | 8.6% | $ 9.25 | $ 4.02 | $ 4.02 | 5.8% | $ 9.41 | $ 4.48 | $ 4.48 |
| Laundry worker | 3.2% | $ 7.25 | $ - | $ 4.02 | 2.9% | $ 9.39 | $ 4.48 | $ 4.48 |
| Commissary worker | 2.6% | $ 10.66 | $ 4.02 | $ 4.02 | 1.1% | $ 11.78 | $ 4.48 | $ 4.48 |
| Janitor | 0.7% | $ 9.25 | $ 4.02 | $ 4.02 | 0.9% | $ 9.41 | $ 4.48 | $ 4.48 |
| Medical worker | 0.1% | $ 9.25 | $ 4.02 | $ 4.02 | 0.2% | $ 9.41 | $ 4.48 | $ 4.48 |
| Barber | 1.1% | $ 7.25 | $ - | $ 4.02 | 1.1% | $ 7.25 | $ - | $ 4.48 |
| No job identified | 39.0% | $ 7.25 | $ - | $ 4.02 | 43.5% | $ 7.25 | $ - | $ 4.48 |
| Effective wage | | $ 7.80 | $ 1.03 | $ 4.02 | | $ 8.31 | $ 2.48 | $ 4.48 |

Attachment E-10

Page 2 of 3

| Occupation | Comparison Wage Period 8 | | | | Comparison Wage Period 9 | | | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits | Proportion of Analyzable Entry Shifts | Comparison Wage | Comparison Benefits | Universal Benefits |
| Kitchen worker | 39.3% | $ 8.92 | $ 4.54 | $ 4.54 | 49.6% | $ 9.03 | $ 4.54 | $ 4.54 |
| Porter | 11.5% | $ 9.41 | $ 4.54 | $ 4.54 | 20.8% | $ 9.60 | $ 4.54 | $ 4.54 |
| Shower worker | 5.3% | $ 9.41 | $ 4.54 | $ 4.54 | 10.3% | $ 9.60 | $ 4.54 | $ 4.54 |
| Laundry worker | 2.5% | $ 9.59 | $ 4.54 | $ 4.54 | 3.3% | $ 9.78 | $ 4.54 | $ 4.54 |
| Commissary worker | 0.6% | $ 11.78 | $ 4.54 | $ 4.54 | 0.6% | $ 12.41 | $ 4.54 | $ 4.54 |
| Janitor | 0.1% | $ 9.41 | $ 4.54 | $ 4.54 | 0.0% | $ 9.60 | $ 4.54 | $ 4.54 |
| Medical worker | 0.8% | $ 9.41 | $ 4.54 | $ 4.54 | 0.2% | $ 9.60 | $ 4.54 | $ 4.54 |
| Barber | 0.9% | $ 7.25 | $ - | $ 4.54 | 0.9% | $ 7.25 | $ - | $ 4.54 |
| No job identified | 38.9% | $ 7.25 | $ - | $ 4.54 | 14.2% | $ 7.25 | $ - | $ 4.54 |
| Effective wage | | $ 8.38 | $ 2.73 | $ 4.54 | | $ 8.98 | $ 3.85 | $ 4.54 |

**Attachment E-11**

Value of VWP Labor in Wages and Benefits Using Comparison Job Effective Wage and Comparison Benefits, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 | Comparison Wage Period 5 |
|---|---|---|---|---|---|---|
| Total hours worked | [A] | 293,970 | 1,063,170 | 691,404 | 424,026 | 1,186,584 |
| Effective comparison job wage | [B] | $ 6.55 | $ 7.25 | $ 7.50 | $ 7.82 | $ 8.00 |
| Estimated paid hourly wage | [C] | $ 0.43 | $ 0.37 | $ 0.36 | $ 0.39 | $ 0.41 |
| Effective comparison benefits | [D] | $ - | $ - | $ 0.39 | $ 1.02 | $ 1.37 |
| Effective universal benefits | [E] | $ - | $ - | $ 3.59 | $ 3.81 | $ 3.81 |
| Total value of labor in wages | [F] | $ 1,798,338 | $ 7,316,692 | $ 4,937,487 | $ 3,151,090 | $ 9,012,738 |
| Total value of labor in comparison benefits | [G] | $ - | $ - | $ 269,465 | $ 433,540 | $ 1,627,541 |
| Total value of labor in universal benefits | [H] | $ - | $ - | $ 2,482,140 | $ 1,615,539 | $ 4,520,885 |
| Total value of labor in wages plus comparison benefits | [I] | $ 1,798,338 | $ 7,316,692 | $ 5,206,952 | $ 3,584,630 | $ 10,640,279 |
| Total value of labor in wages plus universal benefits | [J] | $ 1,798,338 | $ 7,316,692 | $ 7,419,627 | $ 4,766,629 | $ 13,533,623 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1.

Note that estimated damages for the classes are not additive.

[A] Attachment E-4, at 'Total hours worked' for each respective Comparison Wage Period

[B] Attachment E-9, at 'Effective wage' for each respective Comparison Wage Period.

[C] Attachment E-6, at 'Estimated paid hourly wage' for each respective Comparison Wage Period

[D] Attachment E-9, at 'Comparison Benefits' for each respective Comparison Wage Period.

[E] Attachment E-9, at 'Universal Benefits' for each respective Comparison Wage Period.

[F] = [A] × ([B] - [C]).

[G] = [A] × [D].

[H] = [A] × [E].

[I] = [F] + [G].

[J] = [F] + [H].

| Metric | Comparison Wage Period 6 | Comparison Wage Period 7 | Comparison Wage Period 8 | Comparison Wage Period 9 | Total |
|---|---|---|---|---|---|
| Total hours worked | 673,842 | 521,742 | 541,164 | 136,302 | 5,532,204 |
| Effective comparison job wage | $ 7.80 | $ 8.31 | $ 8.38 | $ 8.98 | n/a |
| Estimated paid hourly wage | $ 0.41 | $ 0.49 | $ 0.51 | $ 0.53 | n/a |
| Effective comparison benefits | $ 1.03 | $ 2.48 | $ 2.73 | $ 3.85 | n/a |
| Effective universal benefits | $ 4.02 | $ 4.48 | $ 4.54 | $ 4.54 | n/a |
| Total value of labor in wages | $ 4,976,488 | $ 4,082,663 | $ 4,257,612 | $ 1,152,286 | $ 40,685,393 |
| Total value of labor in comparison benefits | $ 692,389 | $ 1,295,213 | $ 1,477,906 | $ 525,242 | $ 6,321,295 |
| Total value of labor in universal benefits | $ 2,708,845 | $ 2,337,404 | $ 2,456,885 | $ 618,811 | $ 16,740,509 |
| Total value of labor in wages plus comparison benefits | $ 5,668,877 | $ 5,377,876 | $ 5,735,518 | $ 1,677,527 | $ 47,006,688 |
| Total value of labor in wages plus universal benefits | $ 7,685,333 | $ 6,420,067 | $ 6,714,496 | $ 1,771,097 | $ 57,425,902 |

**Attachment E-12**

Value of VWP Labor in Wages and Benefits Using Comparison Job Effective Wage and Comparison Benefits, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | Comparison Wage Period 6 | Comparison Wage Period 7 | Comparison Wage Period 8 |
|---|---|---|---|---|---|---|
| Total hours worked | [A] | 204,546 | 1,186,584 | 673,842 | 521,742 | 541,164 |
| Effective comparison job wage | [B] | $ 8.10 | $ 8.00 | $ 7.80 | $ 8.31 | $ 8.38 |
| Estimated paid hourly wage | [C] | $ 0.40 | $ 0.41 | $ 0.41 | $ 0.49 | $ 0.51 |
| Effective comparison benefits | [D] | $ 1.55 | $ 1.37 | $ 1.03 | $ 2.48 | $ 2.73 |
| Effective universal benefits | [E] | $ 3.81 | $ 3.81 | $ 4.02 | $ 4.48 | $ 4.54 |
| Total value of labor in wages | [F] | $ 1,573,845 | $ 9,012,738 | $ 4,976,488 | $ 4,082,663 | $ 4,257,612 |
| Total value of labor in comparison benefits | [G] | $ 317,000 | $ 1,627,541 | $ 692,389 | $ 1,295,213 | $ 1,477,906 |
| Total value of labor in universal benefits | [H] | $ 779,320 | $ 4,520,885 | $ 2,708,845 | $ 2,337,404 | $ 2,456,885 |
| Total value of labor in wages plus comparison benefits | [I] | $ 1,890,845 | $ 10,640,279 | $ 5,668,877 | $ 5,377,876 | $ 5,735,518 |
| Total value of labor in wages plus universal benefits | [J] | $ 2,353,166 | $ 13,533,623 | $ 7,685,333 | $ 6,420,067 | $ 6,714,496 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

Note that estimated damages for the classes are not additive.

[A] Attachment E-5, at 'Total hours worked' for each respective Comparison Wage Period

[B] Attachment E-10, at 'Effective wage' for each respective Comparison Wage Period.

[C] Attachment E-7, at 'Estimated paid hourly wage' for each respective Comparison Wage Period

[D] Attachment E-10, at 'Comparison Benefits' for each respective Comparison Wage Period.

[E] Attachment E-10, at 'Universal Benefits' for each respective Comparison Wage Period.

[F] = [A] × ([B] - [C]).

[G] = [A] × [D].

[H] = [A] × [E].

[I] = [F] + [G].

[J] = [F] + [H].

| Metric | Comparison Wage Period 9 | | Total | |
|---|---|---|---|---|
| Total hours worked | | 136,302 | | 3,264,180 |
| Effective comparison job wage | $ | 8.98 | | n/a |
| Estimated paid hourly wage | $ | 0.53 | | n/a |
| Effective comparison benefits | $ | 3.85 | | n/a |
| Effective universal benefits | $ | 4.54 | | n/a |
| Total value of labor in wages | $ | 1,152,286 | $ | 25,055,632 |
| Total value of labor in comparison benefits | $ | 525,242 | $ | 5,935,290 |
| Total value of labor in universal benefits | $ | 618,811 | $ | 13,422,150 |
| Total value of labor in wages plus comparison benefits | $ | 1,677,527 | $ | 30,990,922 |
| Total value of labor in wages plus universal benefits | $ | 1,771,097 | $ | 38,477,782 |

**Attachment F-1**

EO Minimum Wage History

| Calendar Year | Source | Wage Rate |
|---|---|---|
| 2015 | [A] | $ 10.10 |
| 2016 | [B] | $ 10.15 |
| 2017 | [C] | $ 10.20 |
| 2018 | [D] | $ 10.35 |
| 2019 | [E] | $ 10.60 |
| 2020 | [F] | $ 10.80 |

*Notes and sources:*

[A] Federal Register, "Establishing a Minimum Wage for Contractors," 2/20/2014, available at
   https://www.federalregister.gov/documents/2014/02/20/2014-03805/establishing-a-minimum-wage-for-contractors.

[B] Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2017," 9/20/2016, available at
   https://www.federalregister.gov/documents/2016/09/20/2016-22515/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2017.

[C] Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2017," 9/20/2016, available at
   https://www.federalregister.gov/documents/2016/09/20/2016-22515/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2017.

[D] Federal Register, "Minimum Wage for Federal Contracts Covered by Executive Order 13658, Notice of Rate Change in Effect as of January 1, 2022," 9/16/2021, available at
   https://www.federalregister.gov/documents/2021/09/16/2021-19995/minimum-wage-for-federal-contracts-covered-by-executive-order-13658-notice-of-rate-change-in-effect.

[E] Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2020," 9/19/2019, available at
   https://www.federalregister.gov/documents/2019/09/19/2019-19673/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2020.

[F] Federal Register, "Establishing a Minimum Wage for Contractors, Notice of Rate Change in Effect as of January 1, 2020," 9/19/2019, available at
   https://www.federalregister.gov/documents/2019/09/19/2019-19673/establishing-a-minimum-wage-for-contractors-notice-of-rate-change-in-effect-as-of-january-1-2020.

**Attachment F-2**

Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Forced Labor Class

| Occupation | Comparison Wage Period 1 | | Comparison Wage Period 2 | | Comparison Wage Period 3 | | Comparison Wage Period 4 | |
|---|---|---|---|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 44,772 | 91.4% | 111,282 | 62.8% | 53,361 | 46.3% | 24,120 | 34.1% |
| Kitchen Worker | 4,120 | 8.4% | 54,805 | 30.9% | 47,487 | 41.2% | 25,644 | 36.3% |
| Porter | 6 | 0.0% | 970 | 0.5% | 1,312 | 1.1% | 8,759 | 12.4% |
| Shower Worker | 2 | 0.0% | 939 | 0.5% | 2,346 | 2.0% | 6,862 | 9.7% |
| Laundry Worker | 22 | 0.0% | 1,318 | 0.7% | 1,793 | 1.6% | 1,394 | 2.0% |
| Commissary Worker | 48 | 0.1% | 2,614 | 1.5% | 2,432 | 2.1% | 1,752 | 2.5% |
| Janitor | 21 | 0.0% | 4,532 | 2.6% | 5,912 | 5.1% | 1,205 | 1.7% |
| Barber | - | 0.0% | 89 | 0.1% | 83 | 0.1% | 548 | 0.8% |
| Medical Worker | 4 | 0.0% | 646 | 0.4% | 508 | 0.4% | 387 | 0.5% |
| Total | 48,995 | 100.0% | 177,195 | 100.0% | 115,234 | 100.0% | 70,671 | 100.0% |

*Notes and sources:*
See Attachment E-1 for definitions of Comparison Wage Periods.  Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.
'Shift Count': See Attachment H-4.
'Percentage' = 'Shift Count' / 'Total' Count for each period.

| Occupation | Comparison Wage Period 5 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 9/22/2014–12/31/2014 | | 2015 | | 2016 | | 1/1/2017–3/1/2017 | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 3,438 | 15.8% | 13,707 | 16.9% | 27,408 | 34.5% | 7,020 | 45.8% |
| Kitchen Worker | 7,327 | 33.7% | 27,863 | 34.3% | 27,521 | 34.6% | 4,554 | 29.7% |
| Porter | 5,372 | 24.7% | 19,873 | 24.5% | 11,925 | 15.0% | 1,666 | 10.9% |
| Shower Worker | 4,003 | 18.4% | 13,414 | 16.5% | 7,030 | 8.8% | 1,064 | 6.9% |
| Laundry Worker | 489 | 2.2% | 1,987 | 2.4% | 2,110 | 2.7% | 465 | 3.0% |
| Commissary Worker | 465 | 2.1% | 1,848 | 2.3% | 1,662 | 2.1% | 347 | 2.3% |
| Janitor | 234 | 1.1% | 1,001 | 1.2% | 595 | 0.7% | 34 | 0.2% |
| Barber | 301 | 1.4% | 1,140 | 1.4% | 1,096 | 1.4% | 142 | 0.9% |
| Medical Worker | 105 | 0.5% | 373 | 0.5% | 134 | 0.2% | 51 | 0.3% |
| Total | 21,734 | 100.0% | 81,206 | 100.0% | 79,481 | 100.0% | 15,343 | 100.0% |

| Occupation | Comparison Wage Period 6 | | | | Comparison Wage Period 7 | | | |
| | 3/2/2017–12/31/2017 | | 1/1/2018–7/31/2018 | | 8/1/2018–12/31/2018 | | 1/1/2019–7/31/2019 | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
|---|---|---|---|---|---|---|---|---|
| No Job Identified | 31,686 | 44.4% | 12,138 | 29.7% | 15,272 | 43.2% | 22,513 | 43.6% |
| Kitchen Worker | 21,474 | 30.1% | 13,431 | 32.8% | 11,788 | 33.3% | 16,791 | 32.5% |
| Porter | 8,494 | 11.9% | 6,715 | 16.4% | 3,310 | 9.4% | 6,805 | 13.2% |
| Shower Worker | 4,398 | 6.2% | 5,284 | 12.9% | 2,484 | 7.0% | 2,530 | 4.9% |
| Laundry Worker | 2,169 | 3.0% | 1,415 | 3.5% | 1,089 | 3.1% | 1,472 | 2.9% |
| Commissary Worker | 1,766 | 2.5% | 1,170 | 2.9% | 677 | 1.9% | 249 | 0.5% |
| Janitor | 426 | 0.6% | 391 | 1.0% | 357 | 1.0% | 427 | 0.8% |
| Barber | 913 | 1.3% | 375 | 0.9% | 360 | 1.0% | 627 | 1.2% |
| Medical Worker | 62 | 0.1% | - | 0.0% | 13 | 0.0% | 193 | 0.4% |
| Total | 71,388 | 100.0% | 40,919 | 100.0% | 35,350 | 100.0% | 51,607 | 100.0% |

| Occupation | Comparison Wage Period 8 | | | | Comparison Wage Period 9 | | Total | |
| | 8/1/2019–12/31/2019 | | 1/1/2020–7/31/2020 | | | | | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
|---|---|---|---|---|---|---|---|---|
| No Job Identified | 17,929 | 44.1% | 17,170 | 34.6% | 3,236 | 14.2% | 405,052 | 43.9% |
| Kitchen Worker | 14,900 | 36.7% | 20,571 | 41.5% | 11,276 | 49.6% | 309,552 | 33.6% |
| Porter | 3,759 | 9.3% | 6,598 | 13.3% | 4,733 | 20.8% | 90,297 | 9.8% |
| Shower Worker | 1,959 | 4.8% | 2,777 | 5.6% | 2,337 | 10.3% | 57,429 | 6.2% |
| Laundry Worker | 1,125 | 2.8% | 1,160 | 2.3% | 744 | 3.3% | 18,752 | 2.0% |
| Commissary Worker | 217 | 0.5% | 365 | 0.7% | 140 | 0.6% | 15,752 | 1.7% |
| Janitor | - | 0.0% | 79 | 0.2% | 5 | 0.0% | 15,219 | 1.7% |
| Barber | 463 | 1.1% | 377 | 0.8% | 199 | 0.9% | 6,713 | 0.7% |
| Medical Worker | 275 | 0.7% | 470 | 0.9% | 47 | 0.2% | 3,268 | 0.4% |
| Total | 40,627 | 100.0% | 49,567 | 100.0% | 22,717 | 100.0% | 922,034 | 100.0% |

**Attachment F-3**

Distribution of Shifts by Jobs Performed in Analyzable Entries of VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

| Occupation | Comparison Wage Period 4 | | Comparison Wage Period 5 | | | | | |
| | | | 9/22/2014–12/31/2014 | | 2015 | | 2016 | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
|---|---|---|---|---|---|---|---|---|
| No Job Identified | 7,008 | 20.6% | 3,438 | 15.8% | 13,707 | 16.9% | 27,408 | 34.5% |
| Kitchen Worker | 11,984 | 35.2% | 7,327 | 33.7% | 27,863 | 34.3% | 27,521 | 34.6% |
| Porter | 6,820 | 20.0% | 5,372 | 24.7% | 19,873 | 24.5% | 11,925 | 15.0% |
| Shower Worker | 5,572 | 16.3% | 4,003 | 18.4% | 13,414 | 16.5% | 7,030 | 8.8% |
| Laundry Worker | 775 | 2.3% | 489 | 2.2% | 1,987 | 2.4% | 2,110 | 2.7% |
| Commissary Worker | 817 | 2.4% | 465 | 2.1% | 1,848 | 2.3% | 1,662 | 2.1% |
| Janitor | 487 | 1.4% | 234 | 1.1% | 1,001 | 1.2% | 595 | 0.7% |
| Barber | 457 | 1.3% | 301 | 1.4% | 1,140 | 1.4% | 1,096 | 1.4% |
| Medical Worker | 171 | 0.5% | 105 | 0.5% | 373 | 0.5% | 134 | 0.2% |
| Total | 34,091 | 100.0% | 21,734 | 100.0% | 81,206 | 100.0% | 79,481 | 100.0% |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.  Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins.

'Shift Count': See Attachment H-4.

'Percentage' = 'Shift Count' / 'Total' Count for each period.

| Occupation | Comparison Wage Period 5 | | Comparison Wage Period 6 | | | |
| | 1/1/2017–3/1/2017 | | 3/2/2017–12/31/2017 | | 1/1/2018–7/31/2018 | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
|---|---|---|---|---|---|---|
| No Job Identified | 7,020 | 45.8% | 31,686 | 44.4% | 12,138 | 29.7% |
| Kitchen Worker | 4,554 | 29.7% | 21,474 | 30.1% | 13,431 | 32.8% |
| Porter | 1,666 | 10.9% | 8,494 | 11.9% | 6,715 | 16.4% |
| Shower Worker | 1,064 | 6.9% | 4,398 | 6.2% | 5,284 | 12.9% |
| Laundry Worker | 465 | 3.0% | 2,169 | 3.0% | 1,415 | 3.5% |
| Commissary Worker | 347 | 2.3% | 1,766 | 2.5% | 1,170 | 2.9% |
| Janitor | 34 | 0.2% | 426 | 0.6% | 391 | 1.0% |
| Barber | 142 | 0.9% | 913 | 1.3% | 375 | 0.9% |
| Medical Worker | 51 | 0.3% | 62 | 0.1% | - | 0.0% |
| Total | 15,343 | 100.0% | 71,388 | 100.0% | 40,919 | 100.0% |

| Occupation | Comparison Wage Period 7 | | | | Comparison Wage Period 8 | | | |
| | 8/1/2018–12/31/2018 | | 1/1/2019–7/31/2019 | | 8/1/2019–12/31/2019 | | 1/1/2020–7/31/2020 | |
| | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage | Shift Count | Percentage |
|---|---|---|---|---|---|---|---|---|
| No Job Identified | 15,272 | 43.2% | 22,513 | 43.6% | 17,929 | 44.1% | 17,170 | 34.6% |
| Kitchen Worker | 11,788 | 33.3% | 16,791 | 32.5% | 14,900 | 36.7% | 20,571 | 41.5% |
| Porter | 3,310 | 9.4% | 6,805 | 13.2% | 3,759 | 9.3% | 6,598 | 13.3% |
| Shower Worker | 2,484 | 7.0% | 2,530 | 4.9% | 1,959 | 4.8% | 2,777 | 5.6% |
| Laundry Worker | 1,089 | 3.1% | 1,472 | 2.9% | 1,125 | 2.8% | 1,160 | 2.3% |
| Commissary Worker | 677 | 1.9% | 249 | 0.5% | 217 | 0.5% | 365 | 0.7% |
| Janitor | 357 | 1.0% | 427 | 0.8% | - | 0.0% | 79 | 0.2% |
| Barber | 360 | 1.0% | 627 | 1.2% | 463 | 1.1% | 377 | 0.8% |
| Medical Worker | 13 | 0.0% | 193 | 0.4% | 275 | 0.7% | 470 | 0.9% |
| Total | 35,350 | 100.0% | 51,607 | 100.0% | 40,627 | 100.0% | 49,567 | 100.0% |

| Occupation | Comparison Wage Period 9 | | Total | |
|---|---|---|---|---|
| | Shift Count | Percentage | Shift Count | Percentage |
| No Job Identified | 3,236 | 14.2% | 178,525 | 32.8% |
| Kitchen Worker | 11,276 | 49.6% | 189,480 | 34.8% |
| Porter | 4,733 | 20.8% | 86,070 | 15.8% |
| Shower Worker | 2,337 | 10.3% | 52,852 | 9.7% |
| Laundry Worker | 744 | 3.3% | 15,000 | 2.8% |
| Commissary Worker | 140 | 0.6% | 9,723 | 1.8% |
| Janitor | 5 | 0.0% | 4,036 | 0.7% |
| Barber | 199 | 0.9% | 6,450 | 1.2% |
| Medical Worker | 47 | 0.2% | 1,894 | 0.3% |
| Total | 22,717 | 100.0% | 544,030 | 100.0% |

**Attachment F-4**

Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 |
|---|---|---|---|---|---|
| Total shifts | [A] | 48,995 | 177,195 | 115,234 | 70,671 |
| Hours per shift | [B] | 6 | 6 | 6 | 6 |
| Total hours worked | [C] | 293,970 | 1,063,170 | 691,404 | 424,026 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1 Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.

[A] Attachment F-2, at total 'Shift Count' for each respective Comparison Wage Period.

[B] See Section 5 of my report for a discussion of assumptions used in my analysis

[C] = [A] × [B].

| Metric | Comparison Wage Period 5 | | | | Comparison Wage Period 6 | |
|---|---|---|---|---|---|---|
| | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 |
| Total shifts | 21,734 | 81,206 | 79,481 | 15,343 | 71,388 | 40,919 |
| Hours per shift | 6 | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | 130,404 | 487,236 | 476,886 | 92,058 | 428,328 | 245,514 |

| Metric | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | Total |
|---|---|---|---|---|---|---|
| | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 | | |
| Total shifts | 35,350 | 51,607 | 40,627 | 49,567 | 22,717 | 922,034 |
| Hours per shift | 6 | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | 212,100 | 309,642 | 243,762 | 297,402 | 136,302 | 5,532,204 |

**Attachment F-5**

Hours Worked in CoreCivic's VWP Pay Data by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | | | |
|---|---|---|---|---|---|---|
| | | | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 |
| Total shifts | [A] | 34,091 | 21,734 | 81,206 | 79,481 | 15,343 |
| Hours per shift | [B] | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | [C] | 204,546 | 130,404 | 487,236 | 476,886 | 92,058 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods. Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1 rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

[A] Attachment F-3, at total 'Shift Count' for each respective Comparison Wage Period.

[B] See Section 5 of my report for a discussion of assumptions used in my analysis

[C] = [A] × [B].

| Metric | Comparison Wage Period 6 | | Comparison Wage Period 7 | | Comparison Wage Period 8 | |
|---|---|---|---|---|---|---|
| | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 |
| Total shifts | 71,388 | 40,919 | 35,350 | 51,607 | 40,627 | 49,567 |
| Hours per shift | 6 | 6 | 6 | 6 | 6 | 6 |
| Total hours worked | 428,328 | 245,514 | 212,100 | 309,642 | 243,762 | 297,402 |

| Metric | Comparison Wage Period 9 | Total |
|---|---|---|
| Total shifts | 22,717 | 544,030 |
| Hours per shift | 6 | 6 |
| Total hours worked | 136,302 | 3,264,180 |

**Attachment F-6**

Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period and Year for Periods in EO Minimum
Wage Period, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 |
|---|---|---|---|---|---|
| Total paid wages | [A] | $ 127,166 | $ 391,291 | $ 245,595 | $ 165,290 |
| Total hours worked | [B] | 293,970 | 1,063,170 | 691,404 | 424,026 |
| Estimated paid hourly wage | [C] | $ 0.43 | $ 0.37 | $ 0.36 | $ 0.39 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1. Note that for this analysis, those periods that are also affected by the annual EO
  minimum wage change, the periods are further broken up by calendar year.

[A] See Attachment H-4.

  For detailed discussion of my analysis of the CoreCivic VWP data, see Section 5 of my report.

[B] Attachment F-4, at [C].

[C] = [A] / [B].

| Metric | Comparison Wage Period 5 | | | | Comparison Wage Period 6 | |
|---|---|---|---|---|---|---|
| | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 |
| Total paid wages | $ 51,658 | $ 196,212 | $ 195,527 | $ 37,515 | $ 172,443 | $ 105,734 |
| Total hours worked | 130,404 | 487,236 | 476,886 | 92,058 | 428,328 | 245,514 |
| Estimated paid hourly wage | $ 0.40 | $ 0.40 | $ 0.41 | $ 0.41 | $ 0.40 | $ 0.43 |

| Metric | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | Total |
| | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 | | |
|---|---|---|---|---|---|---|
| Total paid wages | $ 99,297 | $ 153,985 | $ 124,191 | $ 151,240 | $ 72,380 | $ 2,289,524 |
| Total hours worked | 212,100 | 309,642 | 243,762 | 297,402 | 136,302 | 5,532,204 |
| Estimated paid hourly wage | $ 0.47 | $ 0.50 | $ 0.51 | $ 0.51 | $ 0.53 | $ 0.41 |

**Attachment F-7**

Estimated Paid Hourly Wage of VWP Participants by Comparison Wage Period and Year for Periods in EO Minimum Wage Period, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | | | |
|---|---|---|---|---|---|---|
| | | | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 |
| Total paid wages | [A] | $ 82,331 | $ 51,658 | $ 196,212 | $ 195,527 | $ 37,515 |
| Total hours worked | [B] | 204,546 | 130,404 | 487,236 | 476,886 | 92,058 |
| Estimated paid hourly wage | [C] | $ 0.40 | $ 0.40 | $ 0.40 | $ 0.41 | $ 0.41 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods. Note that for this analysis, those periods that are also affected by the annual EO minimum wage
   change, the periods are further broken up by calendar year.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1
   rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

[A] See Attachment H-4.
   For detailed discussion of my analysis of the CoreCivic VWP data, see Section 5 of my report

[B] Attachment F-5, at [C].

[C] = [A] / [B].

| Metric | Comparison Wage Period 6 | | Comparison Wage Period 7 | | Comparison Wage Period 8 | |
|---|---|---|---|---|---|---|
| | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 |
| Total paid wages | $ 172,443 | $ 105,734 | $ 99,297 | $ 153,985 | $ 124,191 | $ 151,240 |
| Total hours worked | 428,328 | 245,514 | 212,100 | 309,642 | 243,762 | 297,402 |
| Estimated paid hourly wage | $ 0.40 | $ 0.43 | $ 0.47 | $ 0.50 | $ 0.51 | $ 0.51 |

| Metric | Comparison Wage Period 9 | Total |
|---|---|---|
| Total paid wages | $ 72,380 | $ 1,442,513 |
| Total hours worked | 136,302 | 3,264,180 |
| Estimated paid hourly wage | $ 0.53 | $ 0.44 |

**Attachment F-8**

Comparison Job and EO Minimum Wage Effective Wage Analysis, Forced Labor Class

| Occupation | Comparison Wage Period 1 | | Comparison Wage Period 2 | | Comparison Wage Period 3 | | Comparison Wage Period 4 | |
|---|---|---|---|---|---|---|---|---|
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
| Kitchen worker | 8.4% | $ 6.55 | 30.9% | $ 7.25 | 41.2% | $ 7.25 | 36.3% | $ 7.25 |
| Porter | 0.0% | $ 6.55 | 0.5% | $ 7.25 | 1.1% | $ 9.25 | 12.4% | $ 9.25 |
| Shower worker | 0.0% | $ 6.55 | 0.5% | $ 7.25 | 2.0% | $ 9.25 | 9.7% | $ 9.25 |
| Laundry worker | 0.0% | $ 6.55 | 0.7% | $ 7.25 | 1.6% | $ 7.25 | 2.0% | $ 7.25 |
| Commissary worker | 0.1% | $ 6.55 | 1.5% | $ 7.25 | 2.1% | $ 10.64 | 2.5% | $ 10.64 |
| Janitor | 0.0% | $ 6.55 | 2.6% | $ 7.25 | 5.1% | $ 9.25 | 1.7% | $ 9.25 |
| Medical worker | 0.0% | $ 6.55 | 0.4% | $ 7.25 | 0.4% | $ 9.25 | 0.5% | $ 9.25 |
| Barber | 0.0% | $ 6.55 | 0.1% | $ 7.25 | 0.1% | $ 7.25 | 0.8% | $ 7.25 |
| No job identified | 91.4% | $ 6.55 | 62.8% | $ 7.25 | 46.3% | $ 7.25 | 34.1% | $ 7.25 |
| Effective wage | | $ 6.55 | | $ 7.25 | | $ 7.50 | | $ 7.82 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1. Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.

'Proportion of Analyzable Entry Shifts': Attachment F-2, at 'Percentage' for the associated job.

'Comparison Wage': Attachment E-8, at 'Comparison Wage' for the associated job and Comparison Wage Period for periods prior to EO 13658 or without a Comparison job. For periods covered by EO 13658, the comparison wage is the higher of either the comparison wage provided in Attachment E-10 or the EO minimum wage in effect shown in Attachment F-1.

| Occupation | Comparison Wage Period 5 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 9/22/2014–12/31/2014 | | 2015 | | 2016 | | 1/1/2017–3/1/2017 | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
| Kitchen worker | 33.7% | $ 7.25 | 34.3% | $ 7.25 | 34.6% | $ 7.25 | 29.7% | $ 7.25 |
| Porter | 24.7% | $ 9.25 | 24.5% | $ 10.10 | 15.0% | $ 10.15 | 10.9% | $ 10.20 |
| Shower worker | 18.4% | $ 9.25 | 16.5% | $ 10.10 | 8.8% | $ 10.15 | 6.9% | $ 10.20 |
| Laundry worker | 2.2% | $ 7.25 | 2.4% | $ 7.25 | 2.7% | $ 7.25 | 3.0% | $ 7.25 |
| Commissary worker | 2.1% | $ 10.66 | 2.3% | $ 10.66 | 2.1% | $ 10.66 | 2.3% | $ 10.66 |
| Janitor | 1.1% | $ 9.25 | 1.2% | $ 10.10 | 0.7% | $ 10.15 | 0.2% | $ 10.20 |
| Medical worker | 0.5% | $ 9.25 | 0.5% | $ 10.10 | 0.2% | $ 10.15 | 0.3% | $ 10.20 |
| Barber | 1.4% | $ 7.25 | 1.4% | $ 7.25 | 1.4% | $ 7.25 | 0.9% | $ 7.25 |
| No job identified | 15.8% | $ 7.25 | 16.9% | $ 7.25 | 34.5% | $ 7.25 | 45.8% | $ 7.25 |
| Effective wage | | $ 8.22 | | $ 8.54 | | $ 8.04 | | $ 7.87 |

| Occupation | Comparison Wage Period 6 | | | | Comparison Wage Period 7 | | | |
|---|---|---|---|---|---|---|---|---|
| | 3/2/2017–12/31/2017 | | 1/1/2018–7/31/2018 | | 8/1/2018–12/31/2018 | | 1/1/2019–7/31/2019 | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
| Kitchen worker | 30.1% | $ 7.25 | 32.8% | $ 7.25 | 33.3% | $ 10.35 | 32.5% | $ 10.60 |
| Porter | 11.9% | $ 10.20 | 16.4% | $ 10.35 | 9.4% | $ 10.35 | 13.2% | $ 10.60 |
| Shower worker | 6.2% | $ 10.20 | 12.9% | $ 10.35 | 7.0% | $ 10.35 | 4.9% | $ 10.60 |
| Laundry worker | 3.0% | $ 7.25 | 3.5% | $ 7.25 | 3.1% | $ 10.35 | 2.9% | $ 10.60 |
| Commissary worker | 2.5% | $ 10.66 | 2.9% | $ 10.66 | 1.9% | $ 11.78 | 0.5% | $ 11.78 |
| Janitor | 0.6% | $ 10.20 | 1.0% | $ 10.35 | 1.0% | $ 10.35 | 0.8% | $ 10.60 |
| Medical worker | 0.1% | $ 10.20 | 0.0% | $ 10.35 | 0.0% | $ 10.35 | 0.4% | $ 10.60 |
| Barber | 1.3% | $ 7.25 | 0.9% | $ 7.25 | 1.0% | $ 7.25 | 1.2% | $ 7.25 |
| No job identified | 44.4% | $ 7.25 | 29.7% | $ 7.25 | 43.2% | $ 7.25 | 43.6% | $ 7.25 |
| Effective wage | | $ 7.89 | | $ 8.29 | | $ 9.01 | | $ 9.10 |

| Occupation | Comparison Wage Period 8 | | | | Comparison Wage Period 9 | |
| | 8/1/2019–12/31/2019 | | 1/1/2020–7/31/2020 | | | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
|---|---|---|---|---|---|---|
| Kitchen worker | 36.7% | $ 10.60 | 41.5% | $ 10.80 | 49.6% | $ 10.80 |
| Porter | 9.3% | $ 10.60 | 13.3% | $ 10.80 | 20.8% | $ 10.80 |
| Shower worker | 4.8% | $ 10.60 | 5.6% | $ 10.80 | 10.3% | $ 10.80 |
| Laundry worker | 2.8% | $ 10.60 | 2.3% | $ 10.80 | 3.3% | $ 10.80 |
| Commissary worker | 0.5% | $ 11.78 | 0.7% | $ 11.78 | 0.6% | $ 12.41 |
| Janitor | 0.0% | $ 10.60 | 0.2% | $ 10.80 | 0.0% | $ 10.80 |
| Medical worker | 0.7% | $ 10.60 | 0.9% | $ 10.80 | 0.2% | $ 10.80 |
| Barber | 1.1% | $ 7.25 | 0.8% | $ 7.25 | 0.9% | $ 7.25 |
| No job identified | 44.1% | $ 7.25 | 34.6% | $ 7.25 | 14.2% | $ 7.25 |
| Effective wage | | $ 9.09 | | $ 9.55 | | $ 10.27 |

**Attachment F-9**

Comparison Job and EO Minimum Wage Effective Wage Analysis, Unjust Enrichment Class

| Occupation | Comparison Wage Period 4 | | Comparison Wage Period 5 | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | 9/22/2014–12/31/2014 | | 2015 | | 2016 | | 1/1/2017–3/1/2017 | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
| Kitchen worker | 35.2% | $ 7.25 | 33.7% | $ 7.25 | 34.3% | $ 7.25 | 34.6% | $ 7.25 | 29.7% | $ 7.25 |
| Porter | 20.0% | $ 9.25 | 24.7% | $ 9.25 | 24.5% | $ 10.10 | 15.0% | $ 10.15 | 10.9% | $ 10.20 |
| Shower worker | 16.3% | $ 9.25 | 18.4% | $ 9.25 | 16.5% | $ 10.10 | 8.8% | $ 10.15 | 6.9% | $ 10.20 |
| Laundry worker | 2.3% | $ 7.25 | 2.2% | $ 7.25 | 2.4% | $ 7.25 | 2.7% | $ 7.25 | 3.0% | $ 7.25 |
| Commissary worker | 2.4% | $ 10.64 | 2.1% | $ 10.66 | 2.3% | $ 10.66 | 2.1% | $ 10.66 | 2.3% | $ 10.66 |
| Janitor | 1.4% | $ 9.25 | 1.1% | $ 9.25 | 1.2% | $ 10.10 | 0.7% | $ 10.15 | 0.2% | $ 10.20 |
| Medical worker | 0.5% | $ 9.25 | 0.5% | $ 9.25 | 0.5% | $ 10.10 | 0.2% | $ 10.15 | 0.3% | $ 10.20 |
| Barber | 1.3% | $ 7.25 | 1.4% | $ 7.25 | 1.4% | $ 7.25 | 1.4% | $ 7.25 | 0.9% | $ 7.25 |
| No job identified | 20.6% | $ 7.25 | 15.8% | $ 7.25 | 16.9% | $ 7.25 | 34.5% | $ 7.25 | 45.8% | $ 7.25 |
| Effective wage | | $ 8.10 | | $ 8.22 | | $ 8.54 | | $ 8.04 | | $ 7.87 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.  Note that for this analysis, those periods that are also affected by the annual EO minimum wage change, the periods are further broken up by calendar year.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the
Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins.

'Proportion of Analyzable Entry Shifts': Attachment F-3, at 'Percentage' for the associated job.

'Comparison Wage': Attachment E-8, at 'Comparison Wage' for the associated job and Comparison Wage Period for periods prior to EO 13658 or without a Comparison job.
For periods covered by EO 13658, the comparison wage is the higher of either the comparison wage provided in Comparison Job Effective Wage Analysis, Unjust Enrichment Class or the EO minimum wage in effect shown in
EO Minimum Wage History.

| Occupation | Comparison Wage Period 6 | | | | Comparison Wage Period 7 | | | |
| | 3/2/2017–12/31/2017 | | 1/1/2018–7/31/2018 | | 8/1/2018–12/31/2018 | | 1/1/2019–7/31/2019 | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
|---|---|---|---|---|---|---|---|---|
| Kitchen worker | 30.1% | $ 7.25 | 32.8% | $ 7.25 | 33.3% | $ 10.35 | 32.5% | $ 10.60 |
| Porter | 11.9% | $ 10.20 | 16.4% | $ 10.35 | 9.4% | $ 10.35 | 13.2% | $ 10.60 |
| Shower worker | 6.2% | $ 10.20 | 12.9% | $ 10.35 | 7.0% | $ 10.35 | 4.9% | $ 10.60 |
| Laundry worker | 3.0% | $ 7.25 | 3.5% | $ 7.25 | 3.1% | $ 10.35 | 2.9% | $ 10.60 |
| Commissary worker | 2.5% | $ 10.66 | 2.9% | $ 10.66 | 1.9% | $ 11.78 | 0.5% | $ 11.78 |
| Janitor | 0.6% | $ 10.20 | 1.0% | $ 10.35 | 1.0% | $ 10.35 | 0.8% | $ 10.60 |
| Medical worker | 0.1% | $ 10.20 | 0.0% | $ 10.35 | 0.0% | $ 10.35 | 0.4% | $ 10.60 |
| Barber | 1.3% | $ 7.25 | 0.9% | $ 7.25 | 1.0% | $ 7.25 | 1.2% | $ 7.25 |
| No job identified | 44.4% | $ 7.25 | 29.7% | $ 7.25 | 43.2% | $ 7.25 | 43.6% | $ 7.25 |
| Effective wage | | $ 7.89 | | $ 8.29 | | $ 9.01 | | $ 9.10 |

| Occupation | Comparison Wage Period 8 | | | | Comparison Wage Period 9 | |
| | 8/1/2019–12/31/2019 | | 1/1/2020–7/31/2020 | | | |
| | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage | Proportion of Analyzable Entry Shifts | Comparison Wage |
|---|---|---|---|---|---|---|
| Kitchen worker | 36.7% | $ 10.60 | 41.5% | $ 10.80 | 49.6% | $ 10.80 |
| Porter | 9.3% | $ 10.60 | 13.3% | $ 10.80 | 20.8% | $ 10.80 |
| Shower worker | 4.8% | $ 10.60 | 5.6% | $ 10.80 | 10.3% | $ 10.80 |
| Laundry worker | 2.8% | $ 10.60 | 2.3% | $ 10.80 | 3.3% | $ 10.80 |
| Commissary worker | 0.5% | $ 11.78 | 0.7% | $ 11.78 | 0.6% | $ 12.41 |
| Janitor | 0.0% | $ 10.60 | 0.2% | $ 10.80 | 0.0% | $ 10.80 |
| Medical worker | 0.7% | $ 10.60 | 0.9% | $ 10.80 | 0.2% | $ 10.80 |
| Barber | 1.1% | $ 7.25 | 0.8% | $ 7.25 | 0.9% | $ 7.25 |
| No job identified | 44.1% | $ 7.25 | 34.6% | $ 7.25 | 14.2% | $ 7.25 |
| Effective wage | | $ 9.09 | | $ 9.55 | | $ 10.27 |

**Attachment F-10**

Value of VWP Labor in Wages Using Comparison Occupation Job Wage and EO Minimum Wage Effective Wage, Forced Labor Class

| Metric | Source | Comparison Wage Period 1 | Comparison Wage Period 2 | Comparison Wage Period 3 | Comparison Wage Period 4 |
|---|---|---|---|---|---|
| Total hours worked | [A] | 293,970 | 1,063,170 | 691,404 | 424,026 |
| Effective wage | [B] | $ 6.55 | $ 7.25 | $ 7.50 | $ 7.82 |
| Estimated paid hourly wage | [C] | $ 0.43 | $ 0.37 | $ 0.36 | $ 0.39 |
| Total value of labor in wages | [D] | $ 1,798,338 | $ 7,316,692 | $ 4,937,487 | $ 3,151,090 |

*Notes and sources:*

For definitions of Comparison Wage Periods, see Attachment E-1.

Note that estimated damages for the classes are not additive.

[A] Attachment F-4, at 'Total hours worked' for each respective Comparison Wage Period

[B] Attachment F-8, at 'Effective wage' for each respective Comparison Wage Period.

[C] Attachment F-6, at 'Estimated paid hourly wage' for each respective Comparison Wage Period

[D] = [A] × ([B] - [C]).

| Metric | Comparison Wage Period 5 | | | | Comparison Wage Period 6 | |
|---|---|---|---|---|---|---|
| | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 |
| Total hours worked | 130,404 | 487,236 | 476,886 | 92,058 | 428,328 | 245,514 |
| Effective wage | $ 8.22 | $ 8.54 | $ 8.04 | $ 7.87 | $ 7.89 | $ 8.29 |
| Estimated paid hourly wage | $ 0.40 | $ 0.40 | $ 0.41 | $ 0.41 | $ 0.40 | $ 0.43 |
| Total value of labor in wages | $ 1,019,853 | $ 3,966,762 | $ 3,638,403 | $ 686,831 | $ 3,205,893 | $ 1,928,635 |

| Metric | Comparison Wage Period 7 | | Comparison Wage Period 8 | | Comparison Wage Period 9 | Total |
| | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 | | |
|---|---|---|---|---|---|---|
| Total hours worked | 212,100 | 309,642 | 243,762 | 297,402 | 136,302 | 5,532,204 |
| Effective wage | $ 9.01 | $ 9.10 | $ 9.09 | $ 9.55 | $ 10.27 | n/a |
| Estimated paid hourly wage | $ 0.47 | $ 0.50 | $ 0.51 | $ 0.51 | $ 0.53 | n/a |
| Total value of labor in wages | $ 1,810,991 | $ 2,664,869 | $ 2,091,543 | $ 2,689,097 | $ 1,327,869 | $ 42,234,352 |

**Attachment F-11**

Value of VWP Labor in Wages Using Comparison Occupation Job Wage and EO Minimum Wage Effective Wage, Unjust Enrichment Class

| Metric | Source | Comparison Wage Period 4 | Comparison Wage Period 5 | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | | 9/22/2014–12/31/2014 | 2015 | 2016 | 1/1/2017–3/1/2017 |
| Total hours worked | [A] | 204,546 | 130,404 | 487,236 | 476,886 | 92,058 |
| Effective wage | [B] | $ 8.10 | $ 8.22 | $ 8.54 | $ 8.04 | $ 7.87 |
| Estimated paid hourly wage | [C] | $ 0.40 | $ 0.40 | $ 0.40 | $ 0.41 | $ 0.41 |
| Total value of labor in wages | [D] | $ 1,573,845 | $ 1,019,853 | $ 3,966,762 | $ 3,638,403 | $ 686,831 |

*Notes and sources:*

See Attachment E-1 for definitions of Comparison Wage Periods.

Note that the UE class start date is within Comparison Wage Period 4.  As such, the analysis start date for the UE class is the class start date (see Attachment B-1) rather than the Comparison Wage Period 4 start date, and the Comparison Wage Period 4 rates apply until the next wage period begins

Note that estimated damages for the classes are not additive.

[A] Attachment F-5, at 'Total hours worked' for each respective Comparison Wage Period

[B] Attachment F-9, at 'Effective wage' for each respective Comparison Wage Period.

[C] Attachment F-7, at 'Estimated paid hourly wage' for each respective Comparison Wage Period

[D] = [A] × ([B] - [C]).

| Metric | Comparison Wage Period 6 | | Comparison Wage Period 7 | | Comparison Wage Period 8 | |
|---|---|---|---|---|---|---|
| | 3/2/2017–12/31/2017 | 1/1/2018–7/31/2018 | 8/1/2018–12/31/2018 | 1/1/2019–7/31/2019 | 8/1/2019–12/31/2019 | 1/1/2020–7/31/2020 |
| Total hours worked | 428,328 | 245,514 | 212,100 | 309,642 | 243,762 | 297,402 |
| Effective wage | $ 7.89 | $ 8.29 | $ 9.01 | $ 9.10 | $ 9.09 | $ 9.55 |
| Estimated paid hourly wage | $ 0.40 | $ 0.43 | $ 0.47 | $ 0.50 | $ 0.51 | $ 0.51 |
| Total value of labor in wages | $ 3,205,893 | $ 1,928,635 | $ 1,810,991 | $ 2,664,869 | $ 2,091,543 | $ 2,689,097 |

| Metric | Comparison Wage Period 9 | Total |
|---|---|---|
| Total hours worked | 136,302 | 3,264,180 |
| Effective wage | $ 10.27 | n/a |
| Estimated paid hourly wage | $ 0.53 | n/a |
| Total value of labor in wages | $ 1,327,869 | $ 26,604,591 |

**Attachment G-1**

Damages Summary

| Class | Value of Labor in Wages | | | Value of Labor in Benefits | |
|---|---|---|---|---|---|
| | Minimum Wage | Comparison Wage | EO Minimum Wage | Comparison Benefits | Universal Benefits |
| | [A] | [B] | [C] | [D] | [E] |
| Forced Labor class | $ 37,613,176 | $ 40,685,393 | $ 42,234,352 | $ 6,321,295 | $ 16,740,509 |
| Unjust Enrichment class | $ 22,222,792 | $ 25,055,632 | $ 26,604,591 | $ 5,935,290 | $ 13,422,150 |

*Notes and sources:*

Note that estimated damages for the classes are not additive.

[A] 'Forced Labor class': Attachment D-6, at [D] for 'Forced Labor Class'.
    'Unjust Enrichment class': Attachment D-6, at [D] for 'Unjust Enrichment Class'.

[B] 'Forced Labor class': Attachment E-11, at [F] at column 'Total'.
    'Unjust Enrichment class': Attachment E-12, at [F] at column 'Total'.

[C] 'Forced Labor class': Attachment F-10, at [D] at column 'Total'.
    'Unjust Enrichment class': Attachment F-11, at [D] at column 'Total'.

[D] 'Forced Labor class': Attachment E-11, at [G] at column 'Total'.
    'Unjust Enrichment class': Attachment E-12, at [G] at column 'Total'.

[E] 'Forced Labor class': Attachment E-11, at [H] at column 'Total'.
    'Unjust Enrichment class': Attachment E-12, at [H] at column 'Total'.

**Attachment H-1**

STATA Code for Data Preparation

```
* (c) 2021 Intensity LLC


************************************************************
*** 1. Setup
************************************************************

clear matrix
clear mata
clear
set maxvar 32767
set matsize 11000
set more off, perm
set type double, perm
pause on

log using "[PATH]\data_preparation.log", replace

local input "[PATH]"
local output "[PATH]"

cd `output'

************************************************************
*** 2. Import pay data
************************************************************

*Dec. 2008
import excel "`input'\VWP Participants - Dec. 2008.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2008_1.dta", replace
clear

*2009
import excel "`input'\VWP Participants - 2009.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
```

```
save "`output'\VWP_2009_1.dta", replace
clear


import excel "`input'\VWP Participants - 2009.xlsx", sheet("Sheet3") clear
rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2009_2.dta", replace
clear


*2010
import excel "`input'\VWP Participants - 2010.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2010_1.dta", replace
clear


*2011
import excel "`input'\VWP Participants - 2011.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2011_1.dta", replace
clear


*2012
import excel "`input'\VWP Participants - 2012.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2012_1.dta", replace
clear


import excel "`input'\VWP Participants - 2012.xlsx", sheet("Sheet3") clear
rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2012_2.dta", replace
clear


*2013
import excel "`input'\VWP Participants - 2013.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2013_1.dta", replace
clear
```

```
*2014
import excel "`input'\VWP Participants - 2014.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2014_1.dta", replace
clear


*2015
import excel "`input'\VWP Participants - 2015.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2015_1.dta", replace
clear


import excel "`input'\VWP Participants - 2015.xlsx", sheet("Sheet3") clear
rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2012_2.dta", replace
clear


*2016
import excel "`input'\VWP Participants - 2016.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2016_1.dta", replace
clear


*2017
import excel "`input'\VWP Participants - 2017.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2017_1.dta", replace
clear


*2018 (jan.-sept.)
import excel "`input'\VWP Participants - Jan.-Sept. 2018.xlsx", sheet("Sheet1") firstrow clear
rename *, lower
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
save "`output'\VWP_2018_1.dta", replace
clear


* CCBVA0000106554 (2018-2019)
```

```
import excel "`input'\CCBVA0000106554.xlsx", sheet("Sheet 1") firstrow clear
rename *, lower
rename transaction_date date
drop facility reversed billing_agency
rename * (agency_num detainee_name receipt_num deposit_from amount description date)
gen date2 = dofc(date)
format date2 %td
drop date
rename date2 date
save "`output'\2019_1.dta", replace
clear


*************************************************************
*** 2. Append data
*************************************************************

use "`output'\VWP_2008_1.dta"
append using "`output'\VWP_2009_1.dta"
append using "`output'\VWP_2009_2.dta"
append using "`output'\VWP_2010_1.dta"
append using "`output'\VWP_2011_1.dta"
append using "`output'\VWP_2012_1.dta"
append using "`output'\VWP_2012_2.dta"
append using "`output'\VWP_2013_1.dta"
append using "`output'\VWP_2014_1.dta"
append using "`output'\VWP_2015_1.dta"
append using "`output'\VWP_2016_1.dta"
append using "`output'\VWP_2017_1.dta"
append using "`output'\VWP_2018_1.dta"
append using "`output'\2019_1.dta"
save "`output'\full_pay_data.dta", replace


*************************************************************
*** 3. Initial data preparation
*************************************************************

use "`output'\full_pay_data.dta", replace
gen year = year(date)
gen year_str = string(year)
gen month = month(date)
gen month_str = string(month)
```

```stata
gen day = day(date)
gen day_str = string(day)

* Generate class indicators
gen forced_labor = 0
replace forced_labor = 1 if date >= td(17apr2008)

gen unjust_enrichment = 0
replace unjust_enrichment = 1 if date >= td(17apr2014)

***********************************************************
*** 4. Matching and extraction
***********************************************************

* Matches numerics n (nn/nn/nnnn or nn/nn/nn) also with "-".  Unresolved cases do exist.

*Extracted pay dates
gen work_date1 = regexs(0) if regexm(deposit_from, "[0-9]?[0-9]\/[0-9]?[0-9]\/[0-9]?[0-9]?[0-9][0-9]")

gen work_date2 = regexs(0) if regexm(deposit_from, "[0-9]?[0-9]-[0-9]?[0-9]-[0-9]?[0-9]?[0-9][0-9]")

* Matches nn/nn
gen work_date3 = regexs(0) if regexm(deposit_from, "[0-9]*[0-9]\/[0-9]*[0-9]") & work_date1 == ""

* Extracted year, month, and day to get work date
split work_date1, parse(/) gen(e1_)
split work_date2, parse(-) gen(e2_)

rename (e1_1 e1_2 e1_3 e2_1 e2_2 e2_3) (e1_month e1_day e1_year e2_month e2_day e2_year)

gen e_year = e1_year + e2_year
gen e_month = e1_month + e2_month
gen e_day = e1_day + e2_day
gen year_l2 = substr(year_str,-2,2)
gen e_year_l2 = substr(e_year,-2,2)
replace e_year = "20" + e_year_l2
drop e_year_l2 year_l2

destring e_year e_month e_day, replace
gen work_date = mdy(e_month,e_day,e_year)
format work_date %td
```

```
* Counts of various characters (intermediate variables used in later cleaning)

* Parentheses
gen nleftp = length(deposit_from) - length(subinstr(deposit_from, "(", "", .))
gen nrightp = length(deposit_from) - length(subinstr(deposit_from, ")", "", .))
gen number_paren = nleftp + nrightp

* Comma
gen number_comm = length(deposit_from) - length(subinstr(deposit_from, ",", "", .))

* Ampersand
gen number_amp = length(deposit_from) - length(subinstr(deposit_from, "&", "", .))

* Asterisk
gen number_ast = length(deposit_from) - length(subinstr(deposit_from, "*", "", .))

* Forward slash
gen number_fws = length(deposit_from) - length(subinstr(deposit_from, "/", "", .))

* Hyphen
gen number_hyp = length(deposit_from) - length(subinstr(deposit_from, "-", "", .))

* Length of memo
gen memo_length = strlen(deposit_from)

* Has unit?
gen unit_flag = strpos(lower(deposit_from), "unit") > 0

* Has some variant of "1st shift"
gen first_flag = strpos(lower(deposit_from), "1st shift") > 0
replace first_flag = 1 if strpos(lower(deposit_from), "1st shft") > 0
replace first_flag = 1 if strpos(lower(deposit_from), "1 st shft") > 0
replace first_flag = 1 if strpos(lower(deposit_from), "1st.shft") > 0

* Has some variant of "2nd shift"/"3rd shift"/"night shift"
gen snd_flag = strpos(lower(deposit_from), "2nd shift") > 0
replace snd_flag = 1 if strpos(lower(deposit_from), "2nd shft") > 0
replace snd_flag = 1 if strpos(lower(deposit_from), "2ndshift") > 0
replace snd_flag = 1 if (strpos(lower(deposit_from), "3rd shif") > 0 & amount <= 4)
replace snd_flag = 1 if (strpos(lower(deposit_from), "3rd shft") > 0 & amount <= 4)
```

```
replace snd_flag = 1 if (strpos(lower(deposit_from), "third shift") > 0 & amount <= 4)
replace snd_flag = 1 if strpos(lower(deposit_from), "night shift") > 0
replace snd_flag = 1 if strpos(lower(deposit_from), "nightshift") > 0


* Has number
gen num_flag = regexm(deposit_from, "[0-9]")


* Four shifts
gen four_day = strpos(lower(deposit_from), "fri-mon") > 0
replace four_day = 1 if strpos(lower(deposit_from), "sat-tue") > 0


* Three shifts
gen three_day = strpos(lower(deposit_from), "mon-wed") > 0
replace three_day = 1 if strpos(lower(deposit_from), "wed-fri") > 0
replace three_day = 1 if strpos(lower(deposit_from), "fri-sun") > 0
replace three_day = 1 if strpos(lower(deposit_from), "sat-mon") > 0
replace three_day = 1 if strpos(lower(deposit_from), "saturday-monday") > 0


* Two shifts
gen two_day = strpos(lower(deposit_from), "mon-tue") > 0
replace two_day = 1 if strpos(lower(deposit_from), "tue-wed") > 0
replace two_day = 1 if strpos(lower(deposit_from), "tues-wed") > 0
replace two_day = 1 if strpos(lower(deposit_from), "wed-thu") > 0
replace two_day = 1 if strpos(lower(deposit_from), "thurs-fri") > 0
replace two_day = 1 if strpos(lower(deposit_from), "sat-s") > 0
replace two_day = 1 if strpos(lower(deposit_from), "sun-mon") > 0


* Count number of integers observed in deposit_from memo
gen memo_copy = deposit_from
forval j = 0 / 9 {
                            replace memo_copy = subinstr(memo_copy, "`j'", "", .)
}


gen number_int = strlen(deposit_from) - strlen(memo_copy)


* Identify problematic entries (if extracted dates are more than a month apart)
gen issue = 0
gen between = abs(date-work_date)
replace issue = 1 if between > 31


* Set estimation sample (at this point in the code we are only considering entries with $1, 2, 3, or 4 paid. We consider entri
```

```
gen total_sample = 0
replace total_sample = 1 if (!mi(work_date)) & (issue == 0) &(amount == 4 | amount == 3 | amount == 2 | amount == 1)

* Assume one shift worked per pay observation as a baseline
gen shifts = 0
replace shifts = 1 if total_sample == 1

** Clean problematic entries. Each cleaning 'section' represents the cleaning of entries that share some sort of similar chara

* Check that initial sample has 115,793 unusable entries out of 945,108 (12.25%)
count if total_sample == 0
assert r(N) == 115793

* First Section: Include all entries paid at $1 as a single shift
replace total_sample = 1 if amount == 1
replace shifts = 1 if amount == 1

tab total_sample
count if total_sample == 0
assert r(N) == 106466
* Cuts unusable entries to 106,466 (11.26%)

* Second Section: Force all entries with either "1st shift" or "2nd shift"/"3rd shift"/"night shift" as one shift
gen shift_memo = 0
replace shift_memo = 1 if (total_sample == 0) & (first_flag == 1 | snd_flag == 1)
replace total_sample = 1 if shift_memo == 1
replace shifts = 1 if shift_memo == 1

tab total_sample
count if total_sample == 0
assert r(N) == 97086
* Cuts unusable entries to 97,086

* Third Section: Simple shift measurement via ampersand count based on manual review of data
generate two_amp = 0
replace two_amp = 1 if (total_sample == 0) & (amount == 2) & (number_amp == 1)
replace total_sample = 1 if two_amp == 1
replace shifts = 2 if two_amp == 1

generate three_amp = 0
replace three_amp = 1 if (total_sample == 0) & (amount == 3) & (number_amp == 1)
```

```
replace three_amp = 1 if (total_sample == 0) & (amount == 3) & (number_amp == 2)
replace total_sample = 1 if three_amp == 1
replace shifts = 3 if three_amp == 1

generate four_amp = 0
replace four_amp = 1 if (total_sample == 0 ) & (amount == 4) & (number_amp == 1)
replace four_amp = 1 if (total_sample == 0) & (amount == 4) & (number_amp == 2)
replace total_sample = 1 if four_amp == 1
replace shifts = 2 if four_amp == 1
replace shifts = 3 if (four_amp == 1) & (deposit_from == "08-9,14,15 Pod Porter &Dusting")
replace shifts = 4 if (four_amp == 1) & (shifts != 3) & (number_comm >= 2) & (deposit_from != "Aug20&23, 2010 Friday,Monday Un
replace shifts = 4 if (four_amp == 1) & (number_amp == 2)

* Fourth Section: Simple shift measurement via asterisk count based on manual review of data
generate two_ast = 0
replace two_ast = 1 if (total_sample == 0) & (amount == 2) & (number_ast > 0)
replace two_ast = 1 if (total_sample == 0) & (amount == 3) & (number_ast == 1) & (number_comm == 1)
replace two_ast = 1 if (total_sample == 0) & (amount == 3) & (number_ast == 2)
replace two_ast = 1 if (total_sample == 0) & (amount == 4) & (number_ast == 1)
replace two_ast = 1 if (total_sample == 0) & (amount == 4) & (number_ast == 3)
replace total_sample = 1 if two_ast == 1
replace shifts = 2 if two_ast == 1
replace shifts = 3 if (two_ast == 1) & (amount == 3) & (number_ast == 2)
replace shifts = 4 if (two_ast == 1) & (amount == 4) & (number_ast == 3)

tab total_sample
count if total_sample == 0
assert r(N) == 92763
* Sections three and four cut unusable entries to 92,763

* Fifth Section: Entries with specific date ranges referenced
gen date_range = 0
replace date_range = 1 if (total_sample == 0) & (four_day == 1 | three_day == 1 | two_day == 1)
replace total_sample = 1 if date_range == 1
replace shifts = 4 if four_day == 1
replace shifts = 3 if three_day == 1
replace shifts = 2 if two_day == 1

tab total_sample
count if total_sample == 0
assert r(N) == 90078
```

```
* Cuts unusable entries to 90,078

* Sixth Section: Include entries where deposit_from == 1
replace total_sample = 1 if deposit_from == "1"
replace shifts = 1 if deposit_from == "1"

* Seventh Section: Various memo length work. Most with memo_length == 3 into 1 shift
replace total_sample = 1 if (total_sample == 0) & (memo_length == 3) & (deposit_from != "SEG")
replace shifts = 1 if (total_sample == 1) & (memo_length == 3) & (deposit_from != "SEG")

* Most with memo_length == 4 into 1 shift
replace total_sample = 1 if (total_sample == 0) & (memo_length == 4) & (amount == 4 | amount == 3 | amount == 2 | amount == 1)
replace shifts = 1 if (total_sample == 1) & (memo_length == 4) & (amount == 4 | amount == 3 | amount == 2 | amount == 1)

* All with memo_length == 5 and 6 into 1 shift
replace total_sample = 1 if (total_sample == 0) & (memo_length == 5 | memo_length == 6)
replace shifts = 1 if (total_sample == 1) & (memo_length == 5 | memo_length == 6)

tab total_sample
count if total_sample == 0
assert r(N) == 86048
* Sections six and seven cut unusable entries to 86,048

* Eighth Section: All with 8 parentheses have four shifts
generate eight_paren = 0
replace eight_paren = 1 if (total_sample == 0) & (number_paren == 8)
replace total_sample = 1 if eight_paren == 1
replace shifts = 4 if eight_paren == 1

* Ninth Section: High number of commas
generate sixt_comma = 0
replace sixt_comma = 1 if (total_sample == 0) & (number_comm == 16)
replace total_sample = 1 if sixt_comma == 1
replace shifts = 18 if (sixt_comma == 1) & (amount == 36)
replace shifts = 19 if (sixt_comma == 1) & (amount == 38)
replace shifts = 17 if (sixt_comma == 1) & (amount == 51)

generate fift_comma = 0
replace fift_comma = 1 if (total_sample == 0) & (number_comm == 15)
replace total_sample = 1 if fift_comma == 1
replace shifts = 16 if fift_comma == 1
```

```
generate fourt_comma = 0
replace fourt_comma = 1 if (total_sample == 0) & (number_comm == 14)
replace total_sample = 1 if fourt_comma == 1
replace shifts = 15 if fourt_comma == 1

generate thirt_comma = 0
replace thirt_comma = 1 if (total_sample == 0) & (number_comm == 13)
replace total_sample = 1 if thirt_comma == 1
replace shifts = 15 if (thirt_comma == 1) & (amount == 30 | amount == 32)
replace shifts = 14 if (thirt_comma == 1) & (shifts == 0)

generate twelf_comma = 0
replace twelf_comma = 1 if (total_sample == 0) & (number_comm == 12)
replace total_sample = 1 if twelf_comma == 1
replace shifts = 13 if (twelf_comma == 1) & (amount == 26 | amount == 52)
replace shifts = 14 if (twelf_comma == 1) & (amount == 14 | amount == 28)
replace shifts = 15 if (twelf_comma == 1) & (amount == 28 & number_hyp == 4)

* Tenth Section: Account for poor date records using various fixes
* Between greater than 365 & amount in (1, 2)
gen bet_low = 0
replace bet_low = 1 if (total_sample == 0) & (between > 365 & !mi(between)) & (amount == 2 | amount == 3)
replace total_sample = 1 if bet_low == 1
replace shifts = 1 if bet_low == 1

tab total_sample
count if total_sample == 0
assert r(N) == 84391
* Sections eight through ten cut unusable entries to 84,391

* Eleventh Section: Special case 1 (one shift)
gen spec_case1 = 0
* Amount of 2, no asterisks, contains "Unit"
replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_ast == 0) & (unit_flag == 1)
* Amount of 2, two hyphens, no slashes; amount of 2, two slashes, no hyphens (one shift)
replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 2 & number_fws == 0)
replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 0 & number_fws == 2)
* Amount of 2, 3, or 4; no numbers in deposit_from
replace spec_case1 = 1 if (total_sample == 0) & (num_flag == 0) & (amount == 2 | amount == 3 | amount == 4)
* Amount of 3, one comma
```

```
replace spec_case1 = 1 if (total_sample == 0) & (amount == 3) & (number_comm == 1)
replace total_sample = 1 if spec_case1 == 1
replace shifts = 1 if spec_case1 == 1

tab total_sample
count if total_sample == 0
assert r(N) == 68766
* Cuts unusable entries to 68,766

* Twelfth Section: Special case 2 (two shifts)
gen spec_case2 = 0
* Amount of 2, 4, 6, or 8; 1 comma; contains "unit"; zero or multiple hypens
replace spec_case2 = 1 if (total_sample == 0) & (amount == 2 | amount == 4 | amount == 6 | amount == 8) & (number_comm == 1) &
* Amount of 2, three hyphens; amount of 2, two hyphens, one slash
replace spec_case2 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 2) & (number_fws == 1)
* Amount of 6, > 0 hyphen, no comma, no slash
replace spec_case2 = 1 if (total_sample == 0) & (amount == 6) & (number_hyp > 0) & (number_comm == 0) & (number_fws == 0)
* Amount of 4 or 6, asterisk
replace spec_case2 = 1 if (total_sample == 0) & (amount == 4 | 6) & (number_ast > 0)
* Amount of 4, one comma
replace spec_case2 = 1 if (amount == 4) & (number_comm == 1)
replace total_sample = 1 if spec_case2 == 1
replace shifts = 2 if spec_case2 == 1

tab total_sample
count if total_sample == 0
assert r(N) == 62221
* Cuts unusable entries to 62,221

* Thirteenth Section: Special case 3 (three shifts)
gen spec_case3 = 0
* Three distinct days of pay
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "1-3/") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "2-4/") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/3-5") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/4-6") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "5-7") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/6-8") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "7-9") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "8-20") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "8-30") > 0
```

```
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "9-21") > 0
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "9-31") > 0
* Amount of 3, 2 fwd slashes, one hyphen
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3) & (number_fws == 2) & (number_hyp == 1)
* Amount of 3, 2 fwd slashes, > 0 asterisks
replace spec_case3 = 1 if (total_sample == 0) & (amount == 3) & (number_fws == 2) & (number_ast > 0)
* Amount of 3, two commas
replace spec_case2 = 1 if (total_sample == 0) & (amount == 3) & (number_comm == 2)
replace total_sample = 1 if spec_case3 == 1
replace shifts = 3 if spec_case3 == 1

tab total_sample
count if total_sample == 0
assert r(N) == 59455
* Cuts unusable entries to 59,455

* Fourteenth Section (four shifts)
gen spec_case4 = 0
* Four distinct days of pay
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "1-4") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "/2-5/") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "3-6") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "4-7") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "5-8") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "6-9") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "7-10") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-11") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "9-12") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "10-13") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "7-20") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4) & strpos(lower(deposit_from), "7-20/") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "7-30") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-21") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-31") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "9-22") > 0
replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "0-23") > 0
* Amount of 8, one asterisk
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & (number_ast > 0)
* Amount of 4, three or four commas
replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & (number_comm == 3 | number_comm == 4)
replace total_sample = 1 if spec_case4 == 1
```

```
replace shifts = 4 if spec_case4 == 1

tab total_sample
count if total_sample == 0
assert r(N) == 56055
* Cuts unusable entries to 56,055

* save out
save "`output'\pay_data_processed.dta", replace

log close
```

**Attachment H-2**

STATA Log File for Data Preparation

```
-------------------------------------------------------------------------------------------------------
      name:  <unnamed>
       log:  [PATH]\data_preparation.log
  log type:  text
 opened on:  16 Dec 2021, 16:20:18


.

.

.
. local input "[PATH]"


.
. local output "[PATH]"


.

.

.
. cd `output'
[PATH]


.

.

.
. ***********************************************************


.
. *** 2. Import pay data


.
. ***********************************************************


.

.

.
. *Dec. 2008


.
```

```
. import excel "`input'\VWP Participants - Dec. 2008.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 2,165 obs)


.
. rename *, lower


.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)


.
. save "`output'\VWP_2008_1.dta", replace
file `output'\VWP_2008_1.dta saved


.
. clear


.
.

.
. *2009


.
. import excel "`input'\VWP Participants - 2009.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 81,979 obs)


.
. rename *, lower


.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)


.
. save "`output'\VWP_2009_1.dta", replace
file `output'\VWP_2009_1.dta saved


.
. clear


.
.

.
```

```
. import excel "`input'\VWP Participants - 2009.xlsx", sheet("Sheet3") clear
(7 vars, 6,156 obs)

.
. rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2009_2.dta", replace
file `output'\VWP_2009_2.dta saved

.
. clear

.
.
.
. *2010

.
. import excel "`input'\VWP Participants - 2010.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 75,347 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2010_1.dta", replace
file `output'\VWP_2010_1.dta saved

.
. clear

.
.
.
. *2011

.
```

```
. import excel "`input'\VWP Participants - 2011.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 65,733 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2011_1.dta", replace
file `output'\VWP_2011_1.dta saved

.
. clear

.
.
.
. *2012

.
. import excel "`input'\VWP Participants - 2012.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 61,005 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2012_1.dta", replace
file `output'\VWP_2012_1.dta saved

.
. clear

.
.
.
```

```
. import excel "`input'\VWP Participants - 2012.xlsx", sheet("Sheet3") clear
(7 vars, 5,641 obs)

.

. rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)

.

. save "`output'\VWP_2012_2.dta", replace
file `output'\VWP_2012_2.dta saved

.

. clear

.
.
.

. *2013

.

. import excel "`input'\VWP Participants - 2013.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 67,289 obs)

.

. rename *, lower

.

. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.

. save "`output'\VWP_2013_1.dta", replace
file `output'\VWP_2013_1.dta saved

.

. clear

.
.
.

. *2014

.
```

```
. import excel "`input'\VWP Participants - 2014.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 75,746 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2014_1.dta", replace
file `output'\VWP_2014_1.dta saved

.
. clear

.
.
.
. *2015

.
. import excel "`input'\VWP Participants - 2015.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 74,629 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2015_1.dta", replace
file `output'\VWP_2015_1.dta saved

.
. clear

.
.
.
```

```
. import excel "`input'\VWP Participants - 2015.xlsx", sheet("Sheet3") clear
(7 vars, 7,104 obs)

.

. rename (A B C D E F G) (agency_num detainee_name receipt_num deposit_from amount description date)

.

. save "`output'\VWP_2012_2.dta", replace
file `output'\VWP_2012_2.dta saved

.

. clear

.

.

.

. *2016

.

. import excel "`input'\VWP Participants - 2016.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 80,282 obs)

.

. rename *, lower

.

. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.

. save "`output'\VWP_2016_1.dta", replace
file `output'\VWP_2016_1.dta saved

.

. clear

.

.

.

. *2017

.
```

```
. import excel "`input'\VWP Participants - 2017.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 88,645 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2017_1.dta", replace
file `output'\VWP_2017_1.dta saved

.
. clear

.
.
.
. *2018 (jan.-sept.)

.
. import excel "`input'\VWP Participants - Jan.-Sept. 2018.xlsx", sheet("Sheet1") firstrow clear
(7 vars, 54,401 obs)

.
. rename *, lower

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. save "`output'\VWP_2018_1.dta", replace
file `output'\VWP_2018_1.dta saved

.
. clear

.
.
.
```

```
. * CCBVA0000106554 (2018-2019)

.
. import excel "`input'\CCBVA0000106554.xlsx", sheet("Sheet 1") firstrow clear
(10 vars, 204,627 obs)

.
. rename *, lower

.
. rename transaction_date date

.
. drop facility reversed billing_agency

.
. rename * (agency_num detainee_name receipt_num deposit_from amount description date)

.
. gen date2 = dofc(date)

.
. format date2 %td

.
. drop date

.
. rename date2 date

.
. save "`output'\2019_1.dta", replace
file `output'\2019_1.dta saved

.
. clear

.
.
.
. ************************************************************
```

```
.
. *** 2. Append data

.
. ************************************************************

.
.
.
. use "`output'\VWP_2008_1.dta"

.
. append using "`output'\VWP_2009_1.dta"
(variable amount was byte, now double to accommodate using data's values)
(variable description was str25, now str34 to accommodate using data's values)

.
. append using "`output'\VWP_2009_2.dta"

.
. append using "`output'\VWP_2010_1.dta"

.
. append using "`output'\VWP_2011_1.dta"

.
. append using "`output'\VWP_2012_1.dta"

.
. append using "`output'\VWP_2012_2.dta"

.
. append using "`output'\VWP_2013_1.dta"
(variable receipt_num was str8, now str9 to accommodate using data's values)

.
. append using "`output'\VWP_2014_1.dta"

.
. append using "`output'\VWP_2015_1.dta"
```

```
(variable detainee_name was str31, now str32 to accommodate using data's values)

.
. append using "`output'\VWP_2016_1.dta"
(variable deposit_from was str35, now str43 to accommodate using data's values)

.
. append using "`output'\VWP_2017_1.dta"

.
. append using "`output'\VWP_2018_1.dta"

.
. append using "`output'\2019_1.dta"
(variable agency_num was str9, now str15 to accommodate using data's values)
(variable deposit_from was str43, now str89 to accommodate using data's values)

.
. save "`output'\full_pay_data.dta", replace
file `output'\full_pay_data.dta saved

.
.
.
. ************************************************************

.
. *** 3. Initial data preparation

.
. ************************************************************

.
.
.
. use "`output'\full_pay_data.dta", replace

.
. gen year = year(date)

.
```

```
. gen year_str = string(year)

.
. gen month = month(date)

.
. gen month_str = string(month)

.
. gen day = day(date)

.
. gen day_str = string(day)

.
.
. * Generate class indicators

.
. gen forced_labor = 0

.
. replace forced_labor = 1 if date >= td(17apr2008)
(945,108 real changes made)

.
.
.
. gen unjust_enrichment = 0

.
. replace unjust_enrichment = 1 if date >= td(17apr2014)
(565,907 real changes made)

.
.
.
. ************************************************************

.
```

```
. *** 4. Matching and extraction

. ***********************************************************

. * Matches numerics n (nn/nn/nnnn or nn/nn/nn) also with "-".  Unresolved cases do exist.

. *Extracted pay dates

. gen work_date1 = regexs(0) if regexm(deposit_from, "[0-9]?[0-9]\/[0-9]?[0-9]\/[0-9]?[0-9]?[0-9][0-9]")
(414,833 missing values generated)

. gen work_date2 = regexs(0) if regexm(deposit_from, "[0-9]?[0-9]-[0-9]?[0-9]-[0-9]?[0-9]?[0-9][0-9]")
(629,403 missing values generated)

. * Matches nn/nn

. gen work_date3 = regexs(0) if regexm(deposit_from, "[0-9]*[0-9]\/[0-9]*[0-9]") & work_date1 == ""
(887,863 missing values generated)

. * Extracted year, month, and day to get work date

. split work_date1, parse(/) gen(e1_)
```

```
variables created as string:
e1_1  e1_2  e1_3


.
. split work_date2, parse(-) gen(e2_)
variables created as string:
e2_1  e2_2  e2_3


.
.
.
. rename (e1_1 e1_2 e1_3 e2_1 e2_2 e2_3) (e1_month e1_day e1_year e2_month e2_day e2_year)


.
.
.
. gen e_year = e1_year + e2_year
(99,135 missing values generated)


.
. gen e_month = e1_month + e2_month
(99,135 missing values generated)


.
. gen e_day = e1_day + e2_day
(99,135 missing values generated)


.
. gen year_l2 = substr(year_str,-2,2)


.
. gen e_year_l2 = substr(e_year,-2,2)
(99,135 missing values generated)


.
. replace e_year = "20" + e_year_l2
(650,463 real changes made)
```

```
.
. drop e_year_l2 year_l2


.
.
.
. destring e_year e_month e_day, replace
e_year: all characters numeric; replaced as int
e_month: all characters numeric; replaced as int
(99135 missing values generated)
e_day: all characters numeric; replaced as int
(99135 missing values generated)


.
. gen work_date = mdy(e_month,e_day,e_year)
(99,826 missing values generated)


.
. format work_date %td


.
.
.
. * Counts of various characters (intermediate variables used in later cleaning)


.
.
.
. * Parentheses


.
. gen nleftp = length(deposit_from) - length(subinstr(deposit_from, "(", "", .))


.
. gen nrightp = length(deposit_from) - length(subinstr(deposit_from, ")", "", .))
```

```
.
. gen number_paren = nleftp + nrightp

.
.
.
. * Comma

.
. gen number_comm = length(deposit_from) - length(subinstr(deposit_from, ",", "", .))

.
.
.
. * Ampersand

.
. gen number_amp = length(deposit_from) - length(subinstr(deposit_from, "&", "", .))

.
.
.
. * Asterisk

.
. gen number_ast = length(deposit_from) - length(subinstr(deposit_from, "*", "", .))

.
.
.
. * Forward slash

.
. gen number_fws = length(deposit_from) - length(subinstr(deposit_from, "/", "", .))

.
```

```
.
.
. * Hyphen

.
. gen number_hyp = length(deposit_from) - length(subinstr(deposit_from, "-", "", .))

.
.
.
. * Length of memo

.
. gen memo_length = strlen(deposit_from)

.
.
.
. * Has unit?

.
. gen unit_flag = strpos(lower(deposit_from), "unit") > 0

.
.
.
. * Has some variant of "1st shift"?

.
. gen first_flag = strpos(lower(deposit_from), "1st shift") > 0

.
. replace first_flag = 1 if strpos(lower(deposit_from), "1st shft") > 0
(1,301 real changes made)

.
```

```
. replace first_flag = 1 if strpos(lower(deposit_from), "1 st shft") > 0
(0 real changes made)


.
. replace first_flag = 1 if strpos(lower(deposit_from), "1st.shft") > 0
(0 real changes made)


.
.
.
. * Has some variant of "2nd shift"/"3rd shift"/"night shift"?

.
. gen snd_flag = strpos(lower(deposit_from), "2nd shift") > 0

.
. replace snd_flag = 1 if strpos(lower(deposit_from), "2nd shft") > 0
(1,103 real changes made)


.
. replace snd_flag = 1 if strpos(lower(deposit_from), "2ndshift") > 0
(152 real changes made)


.
. replace snd_flag = 1 if (strpos(lower(deposit_from), "3rd shif") > 0 & amount <= 4)
(10,548 real changes made)


.
. replace snd_flag = 1 if (strpos(lower(deposit_from), "3rd shft") > 0 & amount <= 4)
(374 real changes made)


.
. replace snd_flag = 1 if (strpos(lower(deposit_from), "third shift") > 0 & amount <= 4)
(58 real changes made)


.
```

```
. replace snd_flag = 1 if strpos(lower(deposit_from), "night shift") > 0
(209 real changes made)


.
. replace snd_flag = 1 if strpos(lower(deposit_from), "nightshift") > 0
(351 real changes made)


.
.
.
. * Has number?

.
. gen num_flag = regexm(deposit_from, "[0-9]")


.
.
.
. * Four shifts?

.
. gen four_day = strpos(lower(deposit_from), "fri-mon") > 0


.
. replace four_day = 1 if strpos(lower(deposit_from), "sat-tue") > 0
(225 real changes made)


.
.
.
. * Three shifts?

.
. gen three_day = strpos(lower(deposit_from), "mon-wed") > 0


.
```

```
. replace three_day = 1 if strpos(lower(deposit_from), "wed-fri") > 0
(85 real changes made)

.
. replace three_day = 1 if strpos(lower(deposit_from), "fri-sun") > 0
(17 real changes made)

.
. replace three_day = 1 if strpos(lower(deposit_from), "sat-mon") > 0
(1,036 real changes made)

.
. replace three_day = 1 if strpos(lower(deposit_from), "saturday-monday") > 0
(30 real changes made)

.
.
.
. * Two shifts?

.
. gen two_day = strpos(lower(deposit_from), "mon-tue") > 0

.
. replace two_day = 1 if strpos(lower(deposit_from), "tue-wed") > 0
(1 real change made)

.
. replace two_day = 1 if strpos(lower(deposit_from), "tues-wed") > 0
(269 real changes made)

.
. replace two_day = 1 if strpos(lower(deposit_from), "wed-thu") > 0
(291 real changes made)

.
```

```
. replace two_day = 1 if strpos(lower(deposit_from), "thurs-fri") > 0
(250 real changes made)

.
. replace two_day = 1 if strpos(lower(deposit_from), "sat-s") > 0
(26 real changes made)

.
. replace two_day = 1 if strpos(lower(deposit_from), "sun-mon") > 0
(43 real changes made)

.
.
.
. * Count number of integers observed in deposit_from memo

.
. gen memo_copy = deposit_from
(5,260 missing values generated)

.
. forval j = 0 / 9 {
                                2
. replace memo_copy = subinstr(memo_copy, "`j'", "", .)
                                3
. }
(635,515 real changes made)
(868,376 real changes made)
(710,349 real changes made)
(299,487 real changes made)
(237,732 real changes made)
(254,686 real changes made)
(247,973 real changes made)
(242,285 real changes made)
(234,828 real changes made)
(301,879 real changes made)
```

```
.
.
.
. gen number_int = strlen(deposit_from) - strlen(memo_copy)


.
.
.
. * Identify problematic entries (if extracted dates are more than a month apart)

.
. gen issue = 0

.
. gen between = abs(date-work_date)
(99,826 missing values generated)

.
. replace issue = 1 if between > 31
(105,969 real changes made)

.
.
.
. * Set estimation sample (at this point in the code we are only considering entries with $1, 2, 3, or 4 paid. We consider ent
> ith higher paid amounts later on)

.
. gen total_sample = 0

.
. replace total_sample = 1 if (!mi(work_date)) & (issue == 0) &(amount == 4 | amount == 3 | amount == 2 | amount == 1)
(829,315 real changes made)

.
```

```
.
.
. * Assume one shift worked per pay observation as a baseline

.
. gen shifts = 0

.
. replace shifts = 1 if total_sample == 1
(829,315 real changes made)


.
.
.
. ** Clean problematic entries. Each cleaning 'Section' represents the cleaning of entries that share some sort of similar cha
> tic

.
.
.
. * Check that initial sample has 115,793 unusable entries out of 945,108 (12.25%)

.
. count if total_sample == 0
                        115,793

.
. assert r(N) == 115793

.
.
.
. * First Section: Include all entries paid at $1 as a single shift

.
. replace total_sample = 1 if amount == 1
```

```
(9,327 real changes made)


.
. replace shifts = 1 if amount == 1
(9,327 real changes made)


.
.
.
. tab total_sample

total_sampl |
          e |       Freq.      Percent        Cum.
------------+-----------------------------------
          0 |     106,466        11.26       11.26
          1 |     838,642        88.74      100.00
------------+-----------------------------------
      Total |     945,108       100.00


.
. count if total_sample == 0
                      106,466


.
. assert r(N) == 106466


.
. * Cuts unusable entries to 106,466 (11.26%)


.
.
.
. * Second Section: Force all entries with either "1st shift" or "2nd shift"/"3rd shift"/"night shift" as one shift


.
. gen shift_memo = 0
```

```
.
. replace shift_memo = 1 if (total_sample == 0) & (first_flag == 1 | snd_flag == 1)
(9,380 real changes made)


.
. replace total_sample = 1 if shift_memo == 1
(9,380 real changes made)


.
. replace shifts = 1 if shift_memo == 1
(9,380 real changes made)


.
.
.
. tab total_sample

total_sampl |
          e |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |     97,086        10.27       10.27
          1 |    848,022        89.73      100.00
------------+-----------------------------------
      Total |    945,108       100.00


.
. count if total_sample == 0
                        97,086


.
. assert r(N) == 97086


.
. * Cuts unusable entries to 97,086
```

```
.
.
.
. * Third Section: Simple shift measurement via ampersand count based on manual review of data

.
. generate two_amp = 0

.
. replace two_amp = 1 if (total_sample == 0) & (amount == 2) & (number_amp == 1)
(627 real changes made)

.
. replace total_sample = 1 if two_amp == 1
(627 real changes made)

.
. replace shifts = 2 if two_amp == 1
(627 real changes made)

.
.
.
. generate three_amp = 0

.
. replace three_amp = 1 if (total_sample == 0) & (amount == 3) & (number_amp == 1)
(192 real changes made)

.
. replace three_amp = 1 if (total_sample == 0) & (amount == 3) & (number_amp == 2)
(0 real changes made)

.
. replace total_sample = 1 if three_amp == 1
(192 real changes made)
```

```
.
. replace shifts = 3 if three_amp == 1
(192 real changes made)


.
.
.
. generate four_amp = 0

.
. replace four_amp = 1 if (total_sample == 0 ) & (amount == 4) & (number_amp == 1)
(1,184 real changes made)


.
. replace four_amp = 1 if (total_sample == 0) & (amount == 4) & (number_amp == 2)
(6 real changes made)


.
. replace total_sample = 1 if four_amp == 1
(1,190 real changes made)


.
. replace shifts = 2 if four_amp == 1
(1,190 real changes made)


.
. replace shifts = 3 if (four_amp == 1) & (deposit_from == "08-9,14,15 Pod Porter &Dusting")
(1 real change made)


.
. replace shifts = 4 if (four_amp == 1) & (shifts != 3) & (number_comm >= 2) & (deposit_from != "Aug20&23, 2010 Friday,Monday
> ")
(19 real changes made)


.
```

```
. replace shifts = 4 if (four_amp == 1) & (number_amp == 2)
(6 real changes made)


.

.

.

. * Fourth Section: Simple shift measurement via asterisk count based on manual review of data

.

. generate two_ast = 0

.

. replace two_ast = 1 if (total_sample == 0) & (amount == 2) & (number_ast > 0)
(1,105 real changes made)

.

. replace two_ast = 1 if (total_sample == 0) & (amount == 3) & (number_ast == 1) & (number_comm == 1)
(1 real change made)

.

. replace two_ast = 1 if (total_sample == 0) & (amount == 3) & (number_ast == 2)
(27 real changes made)

.

. replace two_ast = 1 if (total_sample == 0) & (amount == 4) & (number_ast == 1)
(1,176 real changes made)

.

. replace two_ast = 1 if (total_sample == 0) & (amount == 4) & (number_ast == 3)
(5 real changes made)

.

. replace total_sample = 1 if two_ast == 1
(2,314 real changes made)

.
```

```
. replace shifts = 2 if two_ast == 1
(2,314 real changes made)


.
. replace shifts = 3 if (two_ast == 1) & (amount == 3) & (number_ast == 2)
(27 real changes made)


.
. replace shifts = 4 if (two_ast == 1) & (amount == 4) & (number_ast == 3)
(5 real changes made)


.
.
.
. tab total_sample

total_sampl |
          e |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |     92,763         9.82        9.82
          1 |    852,345        90.18      100.00
------------+-----------------------------------
      Total |    945,108       100.00


.
. count if total_sample == 0
                        92,763


.
. assert r(N) == 92763


.
. * Sections three and four cut unusable entries to 92,763


.
.
```

```
.
. * Fifth Section: Entries with specific date ranges referenced

.
. gen date_range = 0

.
. replace date_range = 1 if (total_sample == 0) & (four_day == 1 | three_day == 1 | two_day == 1)
(2,685 real changes made)

.
. replace total_sample = 1 if date_range == 1
(2,685 real changes made)

.
. replace shifts = 4 if four_day == 1
(716 real changes made)

.
. replace shifts = 3 if three_day == 1
(1,171 real changes made)

.
. replace shifts = 2 if two_day == 1
(828 real changes made)

.
.
.
. tab total_sample

total_sampl |
          e |      Freq.     Percent        Cum.
------------+-----------------------------------
          0 |     90,078        9.53        9.53
          1 |    855,030       90.47      100.00
```

```
------------+---------------------------------
      Total |    945,108       100.00


.
. count if total_sample == 0
                          90,078


.
. assert r(N) == 90078


.
. * Cuts unusable entries to 90,078


.
.
.
. * Sixth Section: Include entries where deposit_from == 1


.
. replace total_sample = 1 if deposit_from == "1"
(8 real changes made)


.
. replace shifts = 1 if deposit_from == "1"
(8 real changes made)


.
.
.
. * Seventh Section: Various memo length work. Most with memo_length == 3 into 1 shift


.
. replace total_sample = 1 if (total_sample == 0) & (memo_length == 3) & (deposit_from != "SEG")
(208 real changes made)


.
```

```
. replace shifts = 1 if (total_sample == 1) & (memo_length == 3) & (deposit_from != "SEG")
(208 real changes made)


.

.

.
. * Most with memo_length == 4 into 1 shift


.
. replace total_sample = 1 if (total_sample == 0) & (memo_length == 4) & (amount == 4 | amount == 3 | amount == 2 | amount ==
(2,047 real changes made)


.
. replace shifts = 1 if (total_sample == 1) & (memo_length == 4) & (amount == 4 | amount == 3 | amount == 2 | amount == 1)
(2,047 real changes made)


.

.

.
. * All with memo_length == 5 and 6 into 1 shift


.
. replace total_sample = 1 if (total_sample == 0) & (memo_length == 5 | memo_length == 6)
(1,767 real changes made)


.
. replace shifts = 1 if (total_sample == 1) & (memo_length == 5 | memo_length == 6)
(1,767 real changes made)


.

.

.
. tab total_sample


total_sampl |
          e |      Freq.     Percent       Cum.
```

```
------------+--------------------------------
          0 |      86,048          9.10          9.10
          1 |     859,060         90.90        100.00
------------+--------------------------------
      Total |     945,108        100.00


.
. count if total_sample == 0
                        86,048



.
. assert r(N) == 86048



.
. * Sections six and seven cut unusable entries to 86,048



.
.
.
. * Eighth Section: All with 8 parentheses have four shifts


.
. generate eight_paren = 0


.
. replace eight_paren = 1 if (total_sample == 0) & (number_paren == 8)
(3 real changes made)


.
. replace total_sample = 1 if eight_paren == 1
(3 real changes made)


.
. replace shifts = 4 if eight_paren == 1
(3 real changes made)
```

```
.
.
.
. * Ninth Section: High number of commas

.
. generate sixt_comma = 0

.
. replace sixt_comma = 1 if (total_sample == 0) & (number_comm == 16)
(4 real changes made)

.
. replace total_sample = 1 if sixt_comma == 1
(4 real changes made)

.
. replace shifts = 18 if (sixt_comma == 1) & (amount == 36)
(2 real changes made)

.
. replace shifts = 19 if (sixt_comma == 1) & (amount == 38)
(1 real change made)

.
. replace shifts = 17 if (sixt_comma == 1) & (amount == 51)
(1 real change made)

.
.
.
. generate fift_comma = 0

.
. replace fift_comma = 1 if (total_sample == 0) & (number_comm == 15)
(1 real change made)
```

```
.
. replace total_sample = 1 if fift_comma == 1
(1 real change made)


.
. replace shifts = 16 if fift_comma == 1
(1 real change made)


.
.
.
. generate fourt_comma = 0


.
. replace fourt_comma = 1 if (total_sample == 0) & (number_comm == 14)
(1 real change made)


.
. replace total_sample = 1 if fourt_comma == 1
(1 real change made)


.
. replace shifts = 15 if fourt_comma == 1
(1 real change made)


.
.
.
. generate thirt_comma = 0


.
. replace thirt_comma = 1 if (total_sample == 0) & (number_comm == 13)
(4 real changes made)


.
```

```
. replace total_sample = 1 if thirt_comma == 1
(4 real changes made)


.
. replace shifts = 15 if (thirt_comma == 1) & (amount == 30 | amount == 32)
(2 real changes made)


.
. replace shifts = 14 if (thirt_comma == 1) & (shifts == 0)
(2 real changes made)


.
.
.
. generate twelf_comma = 0


.
. replace twelf_comma = 1 if (total_sample == 0) & (number_comm == 12)
(9 real changes made)


.
. replace total_sample = 1 if twelf_comma == 1
(9 real changes made)


.
. replace shifts = 13 if (twelf_comma == 1) & (amount == 26 | amount == 52)
(5 real changes made)


.
. replace shifts = 14 if (twelf_comma == 1) & (amount == 14 | amount == 28)
(4 real changes made)


.
. replace shifts = 15 if (twelf_comma == 1) & (amount == 28 & number_hyp == 4)
(1 real change made)
```

```
.
.
.
. * Tenth Section: Account for poor date records using various fixes

.
. * Between greater than 365 & amount in (1, 2)

.
. gen bet_low = 0

.
. replace bet_low = 1 if (total_sample == 0) & (between > 365 & !mi(between)) & (amount == 2 | amount == 3)
(1,635 real changes made)

.
. replace total_sample = 1 if bet_low == 1
(1,635 real changes made)

.
. replace shifts = 1 if bet_low == 1
(1,635 real changes made)

.
.
.
. tab total_sample

total_sampl |
          e |      Freq.     Percent        Cum.
------------+-----------------------------------
          0 |     84,391        8.93        8.93
          1 |    860,717       91.07      100.00
------------+-----------------------------------
      Total |    945,108      100.00
```

```
.
. count if total_sample == 0
                        84,391

.
. assert r(N) == 84391

.
. * Sections eight through ten cut unusable entries to 84,391

.
.
.
. * Eleventh Section: Special case 1 (one shift)

.
. gen spec_case1 = 0

.
. * Amount of 2, no asterisks, contains "Unit"

.
. replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_ast == 0) & (unit_flag == 1)
(5,254 real changes made)

.
. * Amount of 2, two hyphens, no slashes; amount of 2, two slashes, no hyphens (one shift)

.
. replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 2 & number_fws == 0)
(144 real changes made)

.
. replace spec_case1 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 0 & number_fws == 2)
(550 real changes made)
```

```
.
. * Amount of 2, 3, or 4; no numbers in deposit_from

.
. replace spec_case1 = 1 if (total_sample == 0) & (num_flag == 0) & (amount == 2 | amount == 3 | amount == 4)
(9,023 real changes made)


.
. * Amount of 3, one comma

.
. replace spec_case1 = 1 if (total_sample == 0) & (amount == 3) & (number_comm == 1)
(654 real changes made)


.
. replace total_sample = 1 if spec_case1 == 1
(15,625 real changes made)


.
. replace shifts = 1 if spec_case1 == 1
(15,625 real changes made)


.
.
.
. tab total_sample

total_sampl |
          e |       Freq.      Percent        Cum.
------------+-----------------------------------
          0 |      68,766         7.28        7.28
          1 |     876,342        92.72      100.00
------------+-----------------------------------
      Total |     945,108       100.00


.
```

```
. count if total_sample == 0
                          68,766

.

. assert r(N) == 68766

.

. * Cuts unusable entries to 68,766

.

.

.

. * Twelfth Section: Special case 2 (two shifts)

.

. gen spec_case2 = 0

.

. * Amount of 2, 4, 6, or 8; 1 comma; contains "unit"; zero or multiple hypens

.

. replace spec_case2 = 1 if (total_sample == 0) & (amount == 2 | amount == 4 | amount == 6 | amount == 8) & (number_comm == 1)
> it_flag == 1) & (number_hyp != 1)
(1,090 real changes made)

.

. * Amount of 2, three hyphens; amount of 2, two hyphens, one slash

.

. replace spec_case2 = 1 if (total_sample == 0) & (amount == 2) & (number_hyp == 2) & (number_fws == 1)
(73 real changes made)

.

. * Amount of 6, > 0 hyphen, no comma, no slash

.
```

```
. replace spec_case2 = 1 if (total_sample == 0) & (amount == 6) & (number_hyp > 0) & (number_comm == 0) & (number_fws == 0)
(1,442 real changes made)


.

. * Amount of 4 or 6, asterisk


.

. replace spec_case2 = 1 if (total_sample == 0) & (amount == 4 | 6) & (number_ast > 0)
(241 real changes made)


.

. * Amount of 4, one comma


.

. replace spec_case2 = 1 if (amount == 4) & (number_comm == 1)
(5,536 real changes made)


.

. replace total_sample = 1 if spec_case2 == 1
(6,545 real changes made)


.

. replace shifts = 2 if spec_case2 == 1
(7,692 real changes made)


.

.

.

. tab total_sample

total_sampl |
          e |      Freq.     Percent        Cum.
------------+-----------------------------------
          0 |     62,221        6.58        6.58
          1 |    882,887       93.42      100.00
------------+-----------------------------------
```

```
       Total |    945,108      100.00


.

. count if total_sample == 0
                        62,221


.

. assert r(N) == 62221


.

. * Cuts unusable entries to 62,221


.
.
.

. * Thirteenth Section: Special case 3 (three shifts)


.

. gen spec_case3 = 0


.

. * Three distinct days of pay


.

. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "1-3/") > 0
(243 real changes made)


.

. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "2-4/") > 0
(66 real changes made)


.

. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/3-5") > 0
(92 real changes made)


.
```

```
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/4-6") > 0
(183 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "5-7") > 0
(124 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "/6-8") > 0
(72 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "7-9") > 0
(140 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "8-20") > 0
(184 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "8-30") > 0
(137 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "9-21") > 0
(124 real changes made)

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3 | amount == 6) & strpos(lower(deposit_from), "9-31") > 0
(145 real changes made)

.
. * Amount of 3, 2 fwd slashes, one hyphen

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3) & (number_fws == 2) & (number_hyp == 1)
```

```
(1,256 real changes made)

.
. * Amount of 3, 2 fwd slashes, > 0 asterisks

.
. replace spec_case3 = 1 if (total_sample == 0) & (amount == 3) & (number_fws == 2) & (number_ast > 0)
(0 real changes made)

.
. * Amount of 3, two commas

.
. replace spec_case2 = 1 if (total_sample == 0) & (amount == 3) & (number_comm == 2)
(752 real changes made)

.
. replace total_sample = 1 if spec_case3 == 1
(2,766 real changes made)

.
. replace shifts = 3 if spec_case3 == 1
(2,766 real changes made)

.
.
.
. tab total_sample

total_sampl |
          e |      Freq.      Percent       Cum.
------------+-----------------------------------
          0 |     59,455         6.29        6.29
          1 |    885,653        93.71      100.00
------------+-----------------------------------
      Total |    945,108       100.00
```

```
.
. count if total_sample == 0
                          59,455

.
. assert r(N) == 59455

.
. * Cuts unusable entries to 59,455

.
.
.
. * Fourteenth Section (four shifts)

.
. gen spec_case4 = 0

.
. * Four distinct days of pay

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "1-4") > 0
(155 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "/2-5/") > 0
(73 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "3-6") > 0
(45 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "4-7") > 0
```

```
(118 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "5-8") > 0
(110 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "6-9") > 0
(154 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "7-10") > 0
(111 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-11") > 0
(126 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "9-12") > 0
(93 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "10-13") > 0
(89 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "7-20") > 0
(64 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4) & strpos(lower(deposit_from), "7-20/") > 0
(17 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & strpos(lower(deposit_from), "7-30") > 0
```

```
(46 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-21") > 0
(225 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "8-31") > 0
(173 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "9-22") > 0
(122 real changes made)

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 4 | amount == 8) & strpos(lower(deposit_from), "0-23") > 0
(142 real changes made)

.
. * Amount of 8, one asterisk

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & (number_ast > 0)
(0 real changes made)

.
. * Amount of 4, three or four commas

.
. replace spec_case4 = 1 if (total_sample == 0) & (amount == 8) & (number_comm == 3 | number_comm == 4)
(1,537 real changes made)

.
. replace total_sample = 1 if spec_case4 == 1
(3,400 real changes made)
```

```
.
. replace shifts = 4 if spec_case4 == 1
(3,400 real changes made)


.
.
.
. tab total_sample

total_sampl |
          e |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |     56,055         5.93         5.93
          1 |    889,053        94.07       100.00
------------+-----------------------------------
      Total |    945,108       100.00


.
. count if total_sample == 0
                        56,055


.
. assert r(N) == 56055


.
. * Cuts unusable entries to 56,055


.
.
.
. * save out


.
. save "`output'\pay_data_processed.dta", replace
file `output'\pay_data_processed.dta saved
```

```
.
.
.
. log close
      name:  <unnamed>
       log:  `output'\logs\data_preparation.log
  log type:  text
 closed on:  16 Dec 2021, 16:23:38
---------------------------------------------------------------------------------------------------
```

**Attachment H-3**

STATA Code for Counts

```
* (c) 2021 Intensity LLC

** Purpose: Output counts for attachments to expert report.

*************************************************************
*** 1. Setup
*************************************************************

clear matrix
clear mata
clear
set maxvar 32767
set matsize 11000
set more off, perm
set type double, perm
pause on

log using "[PATH]\logs\data_counts.log", replace

local input "[PATH]"
local output "[PATH]"

cd `output'

*************************************************************
*** 2. Import and examine distributions
*************************************************************

use "`output'\pay_data_processed.dta"

keep agency_num detainee_name deposit_from amount date year_str month_str forced_labor unjust_enrichment total_sample shifts

* Breakdown of usable vs. non-usable entries by class and year
tab2 total_sample forced_labor unjust_enrichment, firstonly
tab total_sample year if forced_labor == 1
tab total_sample year if unjust_enrichment == 1
```

```
drop if total_sample == 0
drop total_sample

* Add variable related to DOL wage change
gen post_dol = date>td(24jul2009)

* Indicators for different comparison wage periods ("cwp")
gen cwp_one = date<td(24jul2009)
gen cwp_two = date>td(24jul2009) & date<td(20nov2011)
gen cwp_three = date>td(20nov2011) & date<td(22sep2013)
gen cwp_four = date>td(22sep2013) & date<td(22sep2014)
gen cwp_five = date>td(22sep2014) & date<td(02mar2017)
gen cwp_six = date>td(02mar2017) & date<td(01aug2018)
gen cwp_seven = date>td(01aug2018) & date<td(01aug2019)
gen cwp_eight = date>=td(01aug2019) & date<td(01aug2020)
gen cwp_nine = date>td(01aug2020)
** Note: coding for cwp_eight differs from other periods to account for data quirks

* Unjust enrichment period begins in the middle of cwp_four
gen cwp_four_ue = cwp_four == 1 & unjust_enrichment == 1

* Generate cwp_year combos
gen cwp_one_08 = cwp_one == 1 & year_str == "2008"
gen cwp_one_09 = cwp_one == 1 & year_str == "2009"

gen cwp_two_09 = cwp_two == 1 & year_str == "2009"
gen cwp_two_10 = cwp_two == 1 & year_str == "2010"
gen cwp_two_11 = cwp_two == 1 & year_str == "2011"

gen cwp_three_11 = cwp_three == 1 & year_str == "2011"
gen cwp_three_12 = cwp_three == 1 & year_str == "2012"
gen cwp_three_13 = cwp_three == 1 & year_str == "2013"

gen cwp_four_13 = cwp_four == 1 & year_str == "2013"
gen cwp_four_14 = cwp_four == 1 & year_str == "2014"

gen cwp_five_14 = cwp_five == 1 & year_str == "2014"
gen cwp_five_15 = cwp_five == 1 & year_str == "2015"
gen cwp_five_16 = cwp_five == 1 & year_str == "2016"
gen cwp_five_17 = cwp_five == 1 & year_str == "2017"
```

```
gen cwp_six_17 = cwp_six == 1 & year_str == "2017"
gen cwp_six_18 = cwp_six == 1 & year_str == "2018"

gen cwp_seven_18 = cwp_seven == 1 & year_str == "2018"
gen cwp_seven_19 = cwp_seven == 1 & year_str == "2019"

gen cwp_eight_19 = cwp_eight == 1 & year_str == "2019"
gen cwp_eight_20 = cwp_eight == 1 & year_str == "2020"

gen cwp_nine_20 = cwp_nine == 1 & year_str == "2020"

egen anycombocwp = rowtotal(cwp_one_* cwp_two_* cwp_three_* cwp_four_13 cwp_four_14 cwp_five_* cwp_six_* cwp_seven_* cwp_eight
assert anycombocwp ==1
drop anycombocwp

* Check that all observations have precisely one CWP (excluding cwp_four_ue & cwp_five_mw)
egen any_cwp = rowtotal(cwp_one cwp_two cwp_three cwp_four cwp_five cwp_six cwp_seven cwp_eight cwp_nine)
sum any_cwp
assert r(mean) == 1

* Start & end date by class
codebook date if forced_labor == 1
codebook date if unjust_enrichment == 1

* Unique detained individuals
codebook agency_num if forced_labor == 1
codebook agency_num if unjust_enrichment == 1

* Breakdown of number of shifts performed by class
tab shifts if post_dol == 0 & forced_labor == 1
tab shifts if post_dol == 1 & forced_labor == 1
tab shifts year if post_dol == 0 & forced_labor == 1
tab shifts year if post_dol == 1 & forced_labor == 1

tab shifts if post_dol == 0 & unjust_enrichment == 1
tab shifts if post_dol == 1 & unjust_enrichment == 1
tab shifts year if post_dol == 0 & unjust_enrichment == 1
tab shifts year if post_dol == 1 & unjust_enrichment == 1

* Sum all wages by class
sum amount if forced_labor == 1 & post_dol == 0
```

```
display r(sum)
sum amount if forced_labor == 1 & post_dol == 1
display r(sum)

sum amount if unjust_enrichment == 1 & post_dol == 0
display r(sum)
sum amount if unjust_enrichment == 1 & post_dol == 1
display r(sum)

* Sum all wages by cwp
sum amount if cwp_one == 1
display r(sum)
sum amount if cwp_two == 1
display r(sum)
sum amount if cwp_three == 1
display r(sum)
sum amount if cwp_four == 1
display r(sum)
sum amount if cwp_five == 1
display r(sum)
sum amount if cwp_six == 1
display r(sum)
sum amount if cwp_seven == 1
display r(sum)
sum amount if cwp_seven == 1
display r(sum)
sum amount if cwp_eight == 1
display r(sum)
sum amount if cwp_nine == 1
display r(sum)
sum amount if cwp_four_ue == 1
display r(sum)

* Sum all wages by cwp and year for those CWP with EO annual changes
sum amount if cwp_five_14 == 1
display r(sum)
sum amount if cwp_five_15 == 1
display r(sum)
sum amount if cwp_five_16 == 1
display r(sum)
sum amount if cwp_five_17 == 1
```

```
display r(sum)
sum amount if cwp_six_17 == 1
display r(sum)
sum amount if cwp_six_18 == 1
display r(sum)
sum amount if cwp_seven_18 == 1
display r(sum)
sum amount if cwp_seven_19 == 1
display r(sum)
sum amount if cwp_eight_19 == 1
display r(sum)
sum amount if cwp_eight_20 == 1
display r(sum)


sort year post_dol unjust_enrichment
by year post_dol unjust_enrichment: egen yearly_wages = total(amount)

tab yearly_wages year_str if post_dol == 0 & forced_labor == 1
tab yearly_wages year_str if post_dol == 0 & unjust_enrichment == 1

tab yearly_wages year_str if post_dol == 1 & forced_labor == 1
tab yearly_wages year_str if post_dol == 1 & unjust_enrichment == 1

**********************************************************
*** 3. Identify occupations performed
**********************************************************

* Identify role performed by detained worker. Replace certain values such that each entry pertains to a single job
gen porter_flag = strpos(lower(deposit_from), "porter") > 0
replace porter_flag = 1 if strpos(lower(deposit_from), "sally") > 0
replace porter_flag = 1 if strpos(lower(deposit_from), "pod") > 0

gen janitor_flag = strpos(lower(deposit_from), "janitor") > 0
replace janitor_flag = 1 if strpos(lower(deposit_from), "trash") > 0
replace janitor_flag = 1 if strpos(lower(deposit_from), "grounds") > 0
replace janitor_flag = 0 if porter_flag == 1

gen laundry_flag = strpos(lower(deposit_from), "laund") > 0
replace laundry_flag = 0 if janitor_flag == 1
replace laundry_flag = 0 if porter_flag == 1
```

```
gen barber_flag = strpos(lower(deposit_from), "barber") > 0
replace barber_flag = 0 if janitor_flag == 1
replace barber_flag = 0 if porter_flag == 1

gen shower_flag = strpos(lower(deposit_from), "shower") > 0
replace shower_flag = 0 if janitor_flag == 1
replace shower_flag = 0 if porter_flag == 1
replace shower_flag = 0 if barber_flag == 1

gen commis_flag = strpos(lower(deposit_from), "commissary") > 0
replace commis_flag = 0 if janitor_flag == 1
replace commis_flag = 0 if porter_flag == 1

gen medical_flag = strpos(lower(deposit_from), "medical") > 0
replace medical_flag = 0 if janitor_flag == 1
replace medical_flag = 0 if porter_flag == 1

gen kitchen_flag = strpos(lower(deposit_from), "kit") > 0
replace kitchen_flag = 0 if janitor_flag == 1
replace kitchen_flag = 0 if porter_flag == 1
replace kitchen_flag = 0 if shower_flag == 1

egen any_job_id = rowtotal(porter_flag janitor_flag laundry_flag barber_flag shower_flag commis_flag medical_flag kitchen_flag
gen no_job = any_job_id == 0
drop any_job_id

**********************************************************
*** 4. Examine distribution of jobs identified
**********************************************************

table no_job
* 380,429 entries have no job identified

* Forced labor class
tab1 porter_flag-kitchen_flag

* Unjust enrichment class
tab2 unjust_enrichment porter_flag-kitchen_flag, firstonly

** Number of shifts associated with each job performed during a given CWP
```

```
* Associate shift count with job performed
foreach x of varlist porter_flag-no_job {
                                        gen shift_`x' = shifts*`x'
}

*******
** CW Anaylsis Shift Counts

** FL class (CW analysis)
preserve

collapse (sum) shift_*, by(cwp_one-cwp_nine)
reshape long shift_, i(cwp*) j(job) string

gen cwp = 1 if cwp_one == 1
replace cwp = 2 if cwp_two == 1
replace cwp = 3 if cwp_three == 1
replace cwp = 4 if cwp_four == 1
replace cwp = 5 if cwp_five == 1
replace cwp = 6 if cwp_six == 1
replace cwp = 7 if cwp_seven == 1
replace cwp = 8 if cwp_eight == 1
replace cwp = 9 if cwp_nine == 1
assert cwp != .

drop cwp_*

replace job = subinstr(job, "_flag", "", .)

reshape wide shift_, i(job) j(cwp)
rename shift_* shift_cwp*

* FL CLASS SHIFT COUNTS (CW analysis)
list, ab(33) sep(0)

restore

* UE class (CW analysis)
preserve
```

```
keep if unjust_enrichment==1

assert cwp_four == cwp_four_ue
drop cwp_four_ue

collapse (sum) shift_*, by(cwp_four-cwp_nine)

reshape long shift_, i(cwp*) j(job) string

gen cwp = 4 if cwp_four == 1
replace cwp = 5 if cwp_five == 1
replace cwp = 6 if cwp_six == 1
replace cwp = 7 if cwp_seven == 1
replace cwp = 8 if cwp_eight == 1
replace cwp = 9 if cwp_nine == 1
assert cwp != .

drop cwp_*

replace job = subinstr(job, "_flag", "", .)

reshape wide shift_, i(job) j(cwp)
rename shift_* shift_cwp*

* UE CLASS SHIFT COUNTS (CW analysis)
list, ab(33) sep(0)

restore

*******
** EO Anaylsis Shift Counts (for CWPs affected by EO annual changes)
preserve

* CWP FIVE_14 TO EIGHT_20 (EO analysis)

collapse (sum) shift_*, by(cwp_five_14-cwp_eight_20)
reshape long shift_, i(cwp*) j(job) string

gen cwp = "cwp_five_14" if cwp_five_14 == 1
replace cwp = "cwp_five_15" if cwp_five_15 == 1
replace cwp = "cwp_five_16" if cwp_five_16 == 1
```

```
replace cwp = "cwp_five_17" if cwp_five_17 == 1
replace cwp = "cwp_six_17" if cwp_six_17 == 1
replace cwp = "cwp_six_18" if cwp_six_18 == 1
replace cwp = "cwp_seven_18" if cwp_seven_18 == 1
replace cwp = "cwp_seven_19" if cwp_seven_19 == 1
replace cwp = "cwp_eight_19" if cwp_eight_19 == 1
replace cwp = "cwp_eight_20" if cwp_eight_20 == 1

* Eliminate shift counts for other CWP & year combos
drop if missing(cwp)

drop cwp_*

replace job = subinstr(job, "_flag", "", .)

reshape wide shift_, i(job) j(cwp) string

* CWP FIVE_14 THROUGH EIGHT_20 SHIFT COUNTS (EO analysis)
list, ab(33) sep(0)

restore

* FINAL CWP IS CONTIGUOUS WITH CWP NINE

* save out
save "`output'\counts_data.dta", replace

log close
```

**Attachment H-4**

STATA Log File for Counts

```
--------------------------------------------------------------------------------------------------------
      name:  <unnamed>
       log:  `output'\logs\data_counts.log
  log type:  text
 opened on:  20 Dec 2021, 08:52:40


.
.
.
. local input "[PATH]"


.
. local output "[PATH]"


.
.
.
. cd `output'
`output'


.
.
.
. ************************************************************


.
. *** 2. Import and examine distributions


.
. ************************************************************


.
.
.
. use "`output'\pay_data_processed.dta"


.
```

```
.
.
. keep agency_num detainee_name deposit_from amount date year_str month_str forced_labor unjust_enrichment total_sample shifts


.
.
.
. * Breakdown of usable vs. non-usable entries by class and year


.
. tab2 total_sample forced_labor unjust_enrichment, firstonly

-> tabulation of total_sample by forced_labor

           | forced_lab
total_samp |     or
        le |         1 |     Total
-----------+-----------+----------
         0 |    56,055 |    56,055
         1 |   889,053 |   889,053
-----------+-----------+----------
     Total |   945,108 |   945,108

-> tabulation of total_sample by unjust_enrichment

total_samp |    unjust_enrichment
        le |         0          1 |     Total
-----------+----------------------+----------
         0 |    21,779     34,276 |    56,055
         1 |   357,422    531,631 |   889,053
-----------+----------------------+----------
     Total |   379,201    565,907 |   945,108


.
. tab total_sample year if forced_labor == 1
```

| total_samp le | year_str | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | |
| 0 | 63 | 2,439 | 4,159 | 5,079 | 5,069 | 4,723 | 705 | 784 | 1,088 | 56,055 |
| 1 | 2,102 | 85,696 | 71,188 | 60,654 | 55,936 | 62,566 | 75,041 | 80,949 | 79,194 | 889,053 |

```
-----------+-----------------------------------------------------------------------------------------------------+----------
     Total |     2,165      88,135      75,347      65,733      61,005      67,289      75,746      81,733      80,282 |   945,108


total_samp |                     year_str
        le |      2017        2018        2019        2020 |      Total
-----------+-------------------------------------------------+----------
         0 |     2,386       9,654      12,583       7,323 |     56,055
         1 |    86,259      73,079      87,080      69,309 |    889,053
-----------+-------------------------------------------------+----------
     Total |    88,645      82,733      99,663      76,632 |    945,108

.
. tab total_sample year if unjust_enrichment == 1

total_samp |                                       year_str
        le |      2014        2015        2016        2017        2018        2019        2020 |      Total
-----------+-----------------------------------------------------------------------------------+----------
         0 |       458         784       1,088       2,386       9,654      12,583       7,323 |    34,276
         1 |    55,761      80,949      79,194      86,259      73,079      87,080      69,309 |   531,631
-----------+-----------------------------------------------------------------------------------+----------
     Total |    56,219      81,733      80,282      88,645      82,733      99,663      76,632 |   565,907

.
.
.
. drop if total_sample == 0
(56,055 observations deleted)

.
. drop total_sample

.
.
.
. * Add variable related to DOL wage change

.
. gen post_dol = date>td(24jul2009)

.
```

```
.
.
. * Indicators for different comparison wage periods ("cwp")

.
. gen cwp_one = date<td(24jul2009)

.
. gen cwp_two = date>td(24jul2009) & date<td(20nov2011)

.
. gen cwp_three = date>td(20nov2011) & date<td(22sep2013)

.
. gen cwp_four = date>td(22sep2013) & date<td(22sep2014)

.
. gen cwp_five = date>td(22sep2014) & date<td(02mar2017)

.
. gen cwp_six = date>td(02mar2017) & date<td(01aug2018)

.
. gen cwp_seven = date>td(01aug2018) & date<td(01aug2019)

.
. gen cwp_eight = date>=td(01aug2019) & date<td(01aug2020)

.
. gen cwp_nine = date>td(01aug2020)

.
. ** Note: coding for cwp_eight differs from other periods to account for data quirks

.
.
.
. * Unjust enrichment period begins in the middle of cwp_four

.
. gen cwp_four_ue = cwp_four == 1 & unjust_enrichment == 1
```

```
.
.
.
. * Generate cwp_year combos

.
. gen cwp_one_08 = cwp_one == 1 & year_str == "2008"

.
. gen cwp_one_09 = cwp_one == 1 & year_str == "2009"

.
.
.
. gen cwp_two_09 = cwp_two == 1 & year_str == "2009"

.
. gen cwp_two_10 = cwp_two == 1 & year_str == "2010"

.
. gen cwp_two_11 = cwp_two == 1 & year_str == "2011"

.
.
.
. gen cwp_three_11 = cwp_three == 1 & year_str == "2011"

.
. gen cwp_three_12 = cwp_three == 1 & year_str == "2012"

.
. gen cwp_three_13 = cwp_three == 1 & year_str == "2013"

.
.
.
. gen cwp_four_13 = cwp_four == 1 & year_str == "2013"

.
. gen cwp_four_14 = cwp_four == 1 & year_str == "2014"
```

```
.
.
.
. gen cwp_five_14 = cwp_five == 1 & year_str == "2014"


.
. gen cwp_five_15 = cwp_five == 1 & year_str == "2015"


.
. gen cwp_five_16 = cwp_five == 1 & year_str == "2016"


.
. gen cwp_five_17 = cwp_five == 1 & year_str == "2017"


.
.
.
. gen cwp_six_17 = cwp_six == 1 & year_str == "2017"


.
. gen cwp_six_18 = cwp_six == 1 & year_str == "2018"


.
.
.
. gen cwp_seven_18 = cwp_seven == 1 & year_str == "2018"


.
. gen cwp_seven_19 = cwp_seven == 1 & year_str == "2019"


.
.
.
. gen cwp_eight_19 = cwp_eight == 1 & year_str == "2019"


.
. gen cwp_eight_20 = cwp_eight == 1 & year_str == "2020"


.
.
```

```
.
. gen cwp_nine_20 = cwp_nine == 1 & year_str == "2020"


.
.
.
. egen anycombocwp = rowtotal(cwp_one_* cwp_two_* cwp_three_* cwp_four_13 cwp_four_14 cwp_five_* cwp_six_* cwp_seven_* cwp_eig
> wp_nine_*)


.
. assert anycombocwp ==1


.
. drop anycombocwp


.
.
.
. * Check that all observations have precisely one CWP (excluding cwp_four_ue & cwp_five_mw)


.
. egen any_cwp = rowtotal(cwp_one cwp_two cwp_three cwp_four cwp_five cwp_six cwp_seven cwp_eight cwp_nine)


.
. sum any_cwp

    Variable |        Obs        Mean    Std. dev.       Min        Max
-------------+---------------------------------------------------------
     any_cwp |    889,053           1           0          1          1


.
. assert r(mean) == 1


.
.
.
. * Start & end date by class


.
. codebook date if forced_labor == 1
```

```
----------------------------------------------------------------------------------------------------------
date
----------------------------------------------------------------------------------------------------------

              Type: Numeric daily date (double)

             Range: [17889.628,22272]          Units: 1.000e-06
     Or equivalently: [23dec2008,23dec2020]     Units: days
       Unique values: 122,796                   Missing .: 0/889,053

              Mean: 20137.1 = 18feb2015(+ 4 hours)
         Std. dev.:  1278.5
       Percentiles:      10%        25%        50%        75%        90%
                     18268.5    19011.4    20269.4    21220.3      21839
                   06jan2010  19jan2012  30jun2015  05feb2018  17oct2019

.
. codebook date if unjust_enrichment == 1

----------------------------------------------------------------------------------------------------------
date
----------------------------------------------------------------------------------------------------------

              Type: Numeric daily date (double)

             Range: [19830.347,22272]          Units: 1.000e-06
     Or equivalently: [17apr2014,23dec2020]     Units: days
       Unique values: 90,509                    Missing .: 0/531,631

              Mean: 21041.3 = 10aug2017(+ 7 hours)
         Std. dev.: 689.519
       Percentiles:      10%        25%        50%        75%        90%
                     20075.4    20437.5    21018.7      21656      21976
                   18dec2014  15dec2015  18jul2017  17apr2019  02mar2020

.
.
.
. * Unique detained individuals

.
```

```
. codebook agency_num if forced_labor == 1

--------------------------------------------------------------------------------------------------------------
agency_num                                                                                                  AG
--------------------------------------------------------------------------------------------------------------

                 Type: String (str15)

       Unique values: 32,103                  Missing "": 0/889,053

             Examples: "205131823"
                       "208440897"
                       "215975146      "
                       "79488542"

             Warning: Variable has trailing blanks.


.
. codebook agency_num if unjust_enrichment == 1

--------------------------------------------------------------------------------------------------------------
agency_num                                                                                                  AG
--------------------------------------------------------------------------------------------------------------

                 Type: String (str15)

       Unique values: 13,719                  Missing "": 0/531,631

             Examples: "204402339"
                       "208284181"
                       "209840081"
                       "216372595"

             Warning: Variable has trailing blanks.


.
.
.
. * Breakdown of number of shifts performed by class

.
```

```
. tab shifts if post_dol == 0 & forced_labor == 1

     shifts |      Freq.      Percent        Cum.
------------+-----------------------------------
          1 |     48,112        99.15       99.15
          2 |        377         0.78       99.93
          3 |         15         0.03       99.96
          4 |         21         0.04      100.00
------------+-----------------------------------
      Total |     48,525       100.00

.
. tab shifts if post_dol == 1 & forced_labor == 1

     shifts |      Freq.      Percent        Cum.
------------+-----------------------------------
          1 |    820,237        97.59       97.59
          2 |     12,216         1.45       99.04
          3 |      4,137         0.49       99.53
          4 |      3,919         0.47      100.00
         13 |          5         0.00      100.00
         14 |          5         0.00      100.00
         15 |          4         0.00      100.00
         16 |          1         0.00      100.00
         17 |          1         0.00      100.00
         18 |          2         0.00      100.00
         19 |          1         0.00      100.00
------------+-----------------------------------
      Total |    840,528       100.00

.
. tab shifts year if post_dol == 0 & forced_labor == 1

            |      year_str
     shifts |     2008         2009 |     Total
-----------+----------------------+----------
          1 |    2,088       46,024 |    48,112
          2 |       14          363 |       377
          3 |        0           15 |        15
          4 |        0           21 |        21
-----------+----------------------+----------
```

```
     Total |     2,102       46,423 |     48,525


.

. tab shifts year if post_dol == 1 & forced_labor == 1

           |                                                        year_str
    shifts |     2009      2010      2011      2012      2013      2014      2015      2016      2017 |     Total
-----------+--------------------------------------------------------------------------------------------+----------
         1 |   38,595    68,490    55,788    52,995    61,697    74,973    80,810    79,004    85,876 |   820,237
         2 |      632     1,592     2,482     1,084       371        47        70       138       331 |    12,216
         3 |       15       543     1,641     1,137       424         8        20         7        15 |     4,137
         4 |       31       563       743       720        74        13        49        45        37 |     3,919
        13 |        0         0         0         0         0         0         0         0         0 |         5
        14 |        0         0         0         0         0         0         0         0         0 |         5
        15 |        0         0         0         0         0         0         0         0         0 |         4
        16 |        0         0         0         0         0         0         0         0         0 |         1
        17 |        0         0         0         0         0         0         0         0         0 |         1
        18 |        0         0         0         0         0         0         0         0         0 |         2
        19 |        0         0         0         0         0         0         0         0         0 |         1
-----------+--------------------------------------------------------------------------------------------+----------
     Total |   39,273    71,188    60,654    55,936    62,566    75,041    80,949    79,194    86,259 |   840,528


           |            year_str
    shifts |     2018      2019      2020 |     Total
-----------+--------------------------------+----------
         1 |   70,822    83,740    67,447 |   820,237
         2 |    1,766     2,464     1,239 |    12,216
         3 |       59        64       204 |     4,137
         4 |      431       801       412 |     3,919
        13 |        0         4         1 |         5
        14 |        1         0         4 |         5
        15 |        0         2         2 |         4
        16 |        0         1         0 |         1
        17 |        0         1         0 |         1
        18 |        0         2         0 |         2
        19 |        0         1         0 |         1
-----------+--------------------------------+----------
     Total |   73,079    87,080    69,309 |   840,528


.
```

.
.
. tab shifts if post_dol == 0 & unjust_enrichment == 1
no observations

.
. tab shifts if post_dol == 1 & unjust_enrichment == 1

```
     shifts |      Freq.      Percent        Cum.
------------+-----------------------------------
          1 |    523,419        98.46       98.46
          2 |      6,036         1.14       99.59
          3 |        372         0.07       99.66
          4 |      1,785         0.34      100.00
         13 |          5         0.00      100.00
         14 |          5         0.00      100.00
         15 |          4         0.00      100.00
         16 |          1         0.00      100.00
         17 |          1         0.00      100.00
         18 |          2         0.00      100.00
         19 |          1         0.00      100.00
------------+-----------------------------------
      Total |    531,631       100.00
```

.
. tab shifts year if post_dol == 0 & unjust_enrichment == 1
no observations

.
. tab shifts year if post_dol == 1 & unjust_enrichment == 1

| | | | | year_str | | | | |
| shifts | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | Total |
|---|---|---|---|---|---|---|---|---|
| 1 | 55,720 | 80,810 | 79,004 | 85,876 | 70,822 | 83,740 | 67,447 | 523,419 |
| 2 | 28 | 70 | 138 | 331 | 1,766 | 2,464 | 1,239 | 6,036 |
| 3 | 3 | 20 | 7 | 15 | 59 | 64 | 204 | 372 |
| 4 | 10 | 49 | 45 | 37 | 431 | 801 | 412 | 1,785 |
| 13 | 0 | 0 | 0 | 0 | 0 | 4 | 1 | 5 |
| 14 | 0 | 0 | 0 | 0 | 1 | 0 | 4 | 5 |
| 15 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 4 |

```
   16 |        0          0          0          0          0          1          0 |         1
   17 |        0          0          0          0          0          1          0 |         1
   18 |        0          0          0          0          0          2          0 |         2
   19 |        0          0          0          0          0          1          0 |         1
-----------+-------------------------------------------------------------------------------+----------
 Total |   55,761     80,949     79,194     86,259     73,079     87,080     69,309 |   531,631
```

.
.
.
. * Sum all wages by class


.
. sum amount if forced_labor == 1 & post_dol == 0

```
    Variable |        Obs       Mean    Std. dev.       Min        Max
-------------+-----------------------------------------------------------
      amount |     48,525   2.620629   2.246445        -12         24
```

.
. display r(sum)
                    127166


.
. sum amount if forced_labor == 1 & post_dol == 1

```
    Variable |        Obs       Mean    Std. dev.       Min        Max
-------------+-----------------------------------------------------------
      amount |    840,528   2.572619    1.17776         -6         60
```

.
. display r(sum)
                   2162358


.
.
.
. sum amount if unjust_enrichment == 1 & post_dol == 0

```
    Variable |        Obs       Mean    Std. dev.       Min        Max
-------------+-----------------------------------------------------------
```

```
    amount |          0

.
. display r(sum)
                        0

.
. sum amount if unjust_enrichment == 1 & post_dol == 1

    Variable |       Obs        Mean    Std. dev.       Min        Max
-------------+---------------------------------------------------------
      amount |   531,631    2.713373      1.2516        -4         60

.
. display r(sum)
                  1442513

.
.
.
. * Sum all wages by cwp

.
. sum amount if cwp_one == 1

    Variable |       Obs        Mean    Std. dev.       Min        Max
-------------+---------------------------------------------------------
      amount |    48,525    2.620629    2.246445       -12         24

.
. display r(sum)
                   127166

.
. sum amount if cwp_two == 1

    Variable |       Obs        Mean    Std. dev.       Min        Max
-------------+---------------------------------------------------------
```

```
    amount |    165,008    2.371346    .9535911         -6          18

.
. display r(sum)
                    391291

.
. sum amount if cwp_three == 1

    Variable |        Obs       Mean    Std. dev.       Min         Max
-------------+---------------------------------------------------------
    amount |    107,359    2.287605    1.023188         -3          16

.
. display r(sum)
                    245595

.
. sum amount if cwp_four == 1

    Variable |        Obs       Mean    Std. dev.       Min         Max
-------------+---------------------------------------------------------
    amount |     70,569    2.342247    1.164364         -4           8

.
. display r(sum)
                    165290

.
. sum amount if cwp_five == 1

    Variable |        Obs       Mean    Std. dev.       Min         Max
-------------+---------------------------------------------------------
    amount |    197,102    2.439914    1.243684         -4          12

.
```

```
. display r(sum)
                    480912


.
. sum amount if cwp_six == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+------------------------------------------------------------
      amount |    109,872    2.531828    1.211543          1         20


.
. display r(sum)
                    278177


.
. sum amount if cwp_seven == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+------------------------------------------------------------
      amount |     82,705    3.062475    1.155445          1         60


.
. display r(sum)
                    253282


.
. sum amount if cwp_seven == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+------------------------------------------------------------
      amount |     82,705    3.062475    1.155445          1         60


.
. display r(sum)
                    253282
```

.
. sum amount if cwp_eight == 1

```
    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+---------------------------------------------------------
      amount |     86,042    3.201123    1.185361          1         52
```

.
. display r(sum)
                        275431

.
. sum amount if cwp_nine == 1

```
    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+---------------------------------------------------------
      amount |     21,871    3.309405    .9992969          1         28
```

.
. display r(sum)
                         72380

.
. sum amount if cwp_four_ue == 1

```
    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+---------------------------------------------------------
      amount |     34,039    2.418726    1.258135         -1          8
```

.
. display r(sum)
                         82331

.
.
.

```
. * Sum all wages by cwp and year for those CWP with EO annual changes

.
. sum amount if cwp_five_14 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     21,722     2.378142    1.246217         -1           8

.
. display r(sum)
                      51658


.
. sum amount if cwp_five_15 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     80,949     2.423897    1.248038         -4          12

.
. display r(sum)
                     196212


.
. sum amount if cwp_five_16 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     79,194     2.468962    1.243686          1          12

.
. display r(sum)
                     195527


.
```

```
. sum amount if cwp_five_17 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     15,237    2.462099    1.211906          1          10

.
. display r(sum)
                     37515


.
. sum amount if cwp_six_17 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     71,022    2.428022     1.15685          1          10

.
. display r(sum)
                    172443


.
. sum amount if cwp_six_18 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
-------------+----------------------------------------------------------
      amount |     38,850    2.721596    1.284122          1          20

.
. display r(sum)
                    105734


.
. sum amount if cwp_seven_18 == 1

    Variable |        Obs        Mean    Std. dev.        Min         Max
```

```
-------------+-------------------------------------------------------------
      amount |    34,229    2.900961    1.119017          1          60

.
. display r(sum)
                      99297


.
. sum amount if cwp_seven_19 == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+-------------------------------------------------------------
      amount |    48,476     3.17652    1.167114          1          36

.
. display r(sum)
                     153985


.
. sum amount if cwp_eight_19 == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+-------------------------------------------------------------
      amount |    38,604     3.21705    1.239105          1          52

.
. display r(sum)
                     124191


.
. sum amount if cwp_eight_20 == 1

    Variable |        Obs        Mean    Std. dev.        Min        Max
-------------+-------------------------------------------------------------
      amount |    47,438    3.188161    1.139606          1          32
```

```
.
. display r(sum)
                                151240


.
.
.
.
.
. sort year post_dol unjust_enrichment


.
. by year post_dol unjust_enrichment: egen yearly_wages = total(amount)


.
.
.
. tab yearly_wages year_str if post_dol == 0 & forced_labor == 1

yearly_wag |        year_str
       es |    2008        2009 |     Total
-----------+----------------------+----------
     6033 |    2,102           0 |    2,102
   121133 |        0      46,423 |   46,423
-----------+----------------------+----------
    Total |    2,102      46,423 |   48,525


.
. tab yearly_wages year_str if post_dol == 0 & unjust_enrichment == 1
no observations


.
.
.
. tab yearly_wages year_str if post_dol == 1 & forced_labor == 1
```

| yearly_wages | year_str | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | |
| 47385 | 0 | 0 | 0 | 0 | 0 | 19,280 | 0 | 0 | 0 | 19,280 |
| 95664 | 39,273 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 39,273 |
| 130066 | 0 | 0 | 0 | 55,936 | 0 | 0 | 0 | 0 | 0 | 55,936 |
| 133989 | 0 | 0 | 0 | 0 | 0 | 55,761 | 0 | 0 | 0 | 55,761 |
| 135956 | 0 | 0 | 0 | 0 | 62,566 | 0 | 0 | 0 | 0 | 62,566 |
| 142045 | 0 | 0 | 60,654 | 0 | 0 | 0 | 0 | 0 | 0 | 60,654 |
| 168729 | 0 | 71,188 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 71,188 |
| 195527 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 79,194 | 0 | 79,194 |
| 196212 | 0 | 0 | 0 | 0 | 0 | 0 | 80,949 | 0 | 0 | 80,949 |
| 205031 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 73,079 |
| 209958 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 86,259 | 86,259 |
| 223620 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 69,309 |
| 278176 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 87,080 |
| Total | 39,273 | 71,188 | 60,654 | 55,936 | 62,566 | 75,041 | 80,949 | 79,194 | 86,259 | 840,528 |

| yearly_wages | year_str | | | Total |
|---|---|---|---|---|
| | 2018 | 2019 | 2020 | |
| 47385 | 0 | 0 | 0 | 19,280 |
| 95664 | 0 | 0 | 0 | 39,273 |
| 130066 | 0 | 0 | 0 | 55,936 |
| 133989 | 0 | 0 | 0 | 55,761 |
| 135956 | 0 | 0 | 0 | 62,566 |
| 142045 | 0 | 0 | 0 | 60,654 |
| 168729 | 0 | 0 | 0 | 71,188 |
| 195527 | 0 | 0 | 0 | 79,194 |
| 196212 | 0 | 0 | 0 | 80,949 |
| 205031 | 73,079 | 0 | 0 | 73,079 |
| 209958 | 0 | 0 | 0 | 86,259 |
| 223620 | 0 | 0 | 69,309 | 69,309 |
| 278176 | 0 | 87,080 | 0 | 87,080 |

```
-----------+-------------------------------+----------
     Total |   73,079     87,080    69,309 |  840,528


.
. tab yearly_wages year_str if post_dol == 1 & unjust_enrichment == 1

yearly_wag |                               year_str
        es |    2014      2015      2016      2017      2018      2019      2020 |    Total
-----------+---------------------------------------------------------------------------+----------
    133989 |  55,761         0         0         0         0         0         0 |   55,761
    195527 |       0         0    79,194         0         0         0         0 |   79,194
    196212 |       0    80,949         0         0         0         0         0 |   80,949
    205031 |       0         0         0         0    73,079         0         0 |   73,079
    209958 |       0         0         0    86,259         0         0         0 |   86,259
    223620 |       0         0         0         0         0         0    69,309 |   69,309
    278176 |       0         0         0         0         0    87,080         0 |   87,080
-----------+---------------------------------------------------------------------------+----------
     Total |  55,761    80,949    79,194    86,259    73,079    87,080    69,309 |  531,631


.
.
.
. ************************************************************


.
. *** 3. Identify occupations performed


.
. ************************************************************



.
.
.
. * Identify role performed by detained worker. Replace certain values such that each entry pertains to a single job


.
```

```
. gen porter_flag = strpos(lower(deposit_from), "porter") > 0

.
. replace porter_flag = 1 if strpos(lower(deposit_from), "sally") > 0
(20,629 real changes made)

.
. replace porter_flag = 1 if strpos(lower(deposit_from), "pod") > 0
(38,897 real changes made)

.
.
.
. gen janitor_flag = strpos(lower(deposit_from), "janitor") > 0

.
. replace janitor_flag = 1 if strpos(lower(deposit_from), "trash") > 0
(14,755 real changes made)

.
. replace janitor_flag = 1 if strpos(lower(deposit_from), "grounds") > 0
(6 real changes made)

.
. replace janitor_flag = 0 if porter_flag == 1
(4 real changes made)

.
.
.
. gen laundry_flag = strpos(lower(deposit_from), "laund") > 0

.
. replace laundry_flag = 0 if janitor_flag == 1
(0 real changes made)
```

```
.
. replace laundry_flag = 0 if porter_flag == 1
(0 real changes made)


.
.
.
. gen barber_flag = strpos(lower(deposit_from), "barber") > 0

.
. replace barber_flag = 0 if janitor_flag == 1
(0 real changes made)

.
. replace barber_flag = 0 if porter_flag == 1
(7 real changes made)


.
.
.
. gen shower_flag = strpos(lower(deposit_from), "shower") > 0

.
. replace shower_flag = 0 if janitor_flag == 1
(0 real changes made)

.
. replace shower_flag = 0 if porter_flag == 1
(2,609 real changes made)

.
. replace shower_flag = 0 if barber_flag == 1
(1 real change made)

.
.
```

```
.
. gen commis_flag = strpos(lower(deposit_from), "commissary") > 0

.
. replace commis_flag = 0 if janitor_flag == 1
(0 real changes made)

.
. replace commis_flag = 0 if porter_flag == 1
(0 real changes made)

.
.
.
. gen medical_flag = strpos(lower(deposit_from), "medical") > 0

.
. replace medical_flag = 0 if janitor_flag == 1
(20 real changes made)

.
. replace medical_flag = 0 if porter_flag == 1
(233 real changes made)

.
.
.
. gen kitchen_flag = strpos(lower(deposit_from), "kit") > 0

.
. replace kitchen_flag = 0 if janitor_flag == 1
(2,939 real changes made)

.
. replace kitchen_flag = 0 if porter_flag == 1
(0 real changes made)
```

```
.
. replace kitchen_flag = 0 if shower_flag == 1
(2 real changes made)


.
.
.
. egen any_job_id = rowtotal(porter_flag janitor_flag laundry_flag barber_flag shower_flag commis_flag medical_flag kitchen_fl

.
. gen no_job = any_job_id == 0

.
. drop any_job_id

.
.
.
. ************************************************************


.
. *** 4. Examine distribution of jobs identified

.
. ************************************************************


.
.
.
. table no_job

--------------------
        |  Frequency
--------+-----------
no_job  |
```

```
   0    |   508,624
   1    |   380,429
 Total  |   889,053
--------------------


.
. * 380,429 entries have no job identified


.
.
.
. * Forced labor class


.
. tab1 porter_flag-kitchen_flag


-> tabulation of porter_flag

porter_flag |      Freq.      Percent       Cum.
------------+-----------------------------------
          0 |    804,257        90.46       90.46
          1 |     84,796         9.54      100.00
------------+-----------------------------------
      Total |    889,053       100.00


-> tabulation of janitor_flag

janitor_fla |
          g |      Freq.      Percent       Cum.
------------+-----------------------------------
          0 |    874,292        98.34       98.34
          1 |     14,761         1.66      100.00
------------+-----------------------------------
      Total |    889,053       100.00


-> tabulation of laundry_flag
```

```
laundry_fla |
          g |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |    870,531        97.92        97.92
          1 |     18,522         2.08       100.00
------------+-----------------------------------
      Total |    889,053       100.00
```

-> tabulation of barber_flag

```
barber_flag |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |    882,483        99.26        99.26
          1 |      6,570         0.74       100.00
------------+-----------------------------------
      Total |    889,053       100.00
```

-> tabulation of shower_flag

```
shower_flag |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |    833,043        93.70        93.70
          1 |     56,010         6.30       100.00
------------+-----------------------------------
      Total |    889,053       100.00
```

-> tabulation of commis_flag

```
commis_flag |      Freq.      Percent        Cum.
------------+-----------------------------------
          0 |    873,436        98.24        98.24
          1 |     15,617         1.76       100.00
------------+-----------------------------------
      Total |    889,053       100.00
```

```
-> tabulation of medical_flag

medical_fla |
          g |       Freq.       Percent        Cum.
------------+-----------------------------------
        0 |     885,938         99.65        99.65
        1 |       3,115          0.35       100.00
------------+-----------------------------------
    Total |     889,053        100.00


-> tabulation of kitchen_flag

kitchen_fla |
          g |       Freq.       Percent        Cum.
------------+-----------------------------------
        0 |     579,820         65.22        65.22
        1 |     309,233         34.78       100.00
------------+-----------------------------------
    Total |     889,053        100.00


.
.
.
. * Unjust enrichment class

.
. tab2 unjust_enrichment porter_flag-kitchen_flag, firstonly

-> tabulation of unjust_enrichment by porter_flag

unjust_enr |       porter_flag
   ichment |         0           1 |      Total
-----------+----------------------+----------
        0 |     353,774       3,648 |    357,422
        1 |     450,483      81,148 |    531,631
-----------+----------------------+----------
```

```
      Total |   804,257      84,796 |   889,053


-> tabulation of unjust_enrichment by janitor_flag


unjust_enr |      janitor_flag
   ichment |         0          1 |     Total
-----------+----------------------+----------
         0 |   346,631      10,791 |   357,422
         1 |   527,661       3,970 |   531,631
-----------+----------------------+----------
     Total |   874,292      14,761 |   889,053


-> tabulation of unjust_enrichment by laundry_flag


unjust_enr |      laundry_flag
   ichment |         0          1 |     Total
-----------+----------------------+----------
         0 |   353,714       3,708 |   357,422
         1 |   516,817      14,814 |   531,631
-----------+----------------------+----------
     Total |   870,531      18,522 |   889,053


-> tabulation of unjust_enrichment by barber_flag


unjust_enr |      barber_flag
   ichment |         0          1 |     Total
-----------+----------------------+----------
         0 |   357,180         242 |   357,422
         1 |   525,303       6,328 |   531,631
-----------+----------------------+----------
     Total |   882,483       6,570 |   889,053


-> tabulation of unjust_enrichment by shower_flag


unjust_enr |      shower_flag
   ichment |         0          1 |     Total
```

```
-----------+--------------------+----------
         0 |   352,963     4,459 |   357,422
         1 |   480,080    51,551 |   531,631
-----------+--------------------+----------
     Total |   833,043    56,010 |   889,053
```

-> tabulation of unjust_enrichment by commis_flag

```
unjust_enr |       commis_flag
  ichment |         0          1 |     Total
-----------+--------------------+----------
         0 |   351,512     5,910 |   357,422
         1 |   521,924     9,707 |   531,631
-----------+--------------------+----------
     Total |   873,436    15,617 |   889,053
```

-> tabulation of unjust_enrichment by medical_flag

```
unjust_enr |       medical_flag
  ichment |         0          1 |     Total
-----------+--------------------+----------
         0 |   356,089     1,333 |   357,422
         1 |   529,849     1,782 |   531,631
-----------+--------------------+----------
     Total |   885,938     3,115 |   889,053
```

-> tabulation of unjust_enrichment by kitchen_flag

```
unjust_enr |       kitchen_flag
  ichment |         0          1 |     Total
-----------+--------------------+----------
         0 |   237,409   120,013 |   357,422
         1 |   342,411   189,220 |   531,631
-----------+--------------------+----------
     Total |   579,820   309,233 |   889,053
```

```
. ** Number of shifts associated with each job performed during a given CWP


. * Associate shift count with job performed

. foreach x of varlist porter_flag-no_job {
. gen shift_`x' = shifts*`x'
. }


. *******


. ** CW Anaylsis Shift Counts


. ** FL class (CW analysis)

. preserve


```

```
. collapse (sum) shift_*, by(cwp_one-cwp_nine)


.
. reshape long shift_, i(cwp*) j(job) string
(j = barber_flag commis_flag janitor_flag kitchen_flag laundry_flag medical_flag no_job porter_flag shower_flag)

Data                              Wide   ->   Long
-----------------------------------------------------------------------------
Number of observations               9   ->   81
Number of variables                 18   ->   11
j variable (9 values)                    ->   job
xij variables:
shift_barber_flag shift_commis_flag ... shift_shower_flag->shift_
-----------------------------------------------------------------------------


.
.
.
. gen cwp = 1 if cwp_one == 1
(72 missing values generated)


.
. replace cwp = 2 if cwp_two == 1
(9 real changes made)


.
. replace cwp = 3 if cwp_three == 1
(9 real changes made)


.
. replace cwp = 4 if cwp_four == 1
(9 real changes made)


.
. replace cwp = 5 if cwp_five == 1
(9 real changes made)
```

```
.
. replace cwp = 6 if cwp_six == 1
(9 real changes made)


.
. replace cwp = 7 if cwp_seven == 1
(9 real changes made)


.
. replace cwp = 8 if cwp_eight == 1
(9 real changes made)


.
. replace cwp = 9 if cwp_nine == 1
(9 real changes made)


.
. assert cwp != .


.
.
.
. drop cwp_*


.
.
.
. replace job = subinstr(job, "_flag", "", .)
(72 real changes made)


.
.
.
. reshape wide shift_, i(job) j(cwp)
(j = 1 2 3 4 5 6 7 8 9)
```

```
Data                              Long   ->   Wide
-------------------------------------------------------------------------------
Number of observations              81   ->   9
Number of variables                  3   ->   10
j variable (9 values)              cwp   ->   (dropped)
xij variables:
                                 shift_   ->   shift_1 shift_2 ... shift_9
-------------------------------------------------------------------------------


.
. rename shift_* shift_cwp*


.
.
.
. * FL CLASS SHIFT COUNTS (CW analysis)


.
. list, ab(33) sep(0)


     +----------------------------------------------------------------------------------------------------------+
  1. |      job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
     |   barber |          0 |         89 |         83 |        548 |       2679 |       1288 |        987 |        840 |
     |----------------------------------------------------------------------------------------------------------|
     |                                               shift_cwp9                                                 |
     |                                                    199                                                   |
     +----------------------------------------------------------------------------------------------------------+


     +----------------------------------------------------------------------------------------------------------+
  2. |      job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
     |   commis |         48 |       2614 |       2432 |       1752 |       4322 |       2936 |        926 |        582 |
     |----------------------------------------------------------------------------------------------------------|
     |                                               shift_cwp9                                                 |
     |                                                    140                                                   |
     +----------------------------------------------------------------------------------------------------------+
```

3.

| job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
|---|---|---|---|---|---|---|---|---|
| janitor | 21 | 4532 | 5912 | 1205 | 1864 | 817 | 784 | 79 |

| shift_cwp9 |
|---|
| 5 |

4.

| job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
|---|---|---|---|---|---|---|---|---|
| kitchen | 4120 | 54805 | 47487 | 25644 | 67265 | 34905 | 28579 | 35471 |

| shift_cwp9 |
|---|
| 11276 |

5.

| job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
|---|---|---|---|---|---|---|---|---|
| laundry | 22 | 1318 | 1793 | 1394 | 5051 | 3584 | 2561 | 2285 |

| shift_cwp9 |
|---|
| 744 |

6.

| job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
|---|---|---|---|---|---|---|---|---|
| medical | 4 | 646 | 508 | 387 | 663 | 62 | 206 | 745 |

| shift_cwp9 |
|---|
| 47 |

7.

| job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
|---|---|---|---|---|---|---|---|---|
| no_job | 44772 | 111282 | 53361 | 24120 | 51573 | 43824 | 37785 | 35099 |

```
|------------------------------------------------------------------------------------------------|
|                                        shift_cwp9                                              |
|                                          3236                                                  |
+------------------------------------------------------------------------------------------------+


    +-------------------------------------------------------------------------------------------------+
8.  |      job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
    |   porter |         6  |       970  |      1312  |      8759  |     38836  |     15209  |     10115  |     10357  |
    |------------------------------------------------------------------------------------------------|
    |                                        shift_cwp9                                              |
    |                                          4733                                                  |
    +-------------------------------------------------------------------------------------------------+


    +-------------------------------------------------------------------------------------------------+
9.  |      job | shift_cwp1 | shift_cwp2 | shift_cwp3 | shift_cwp4 | shift_cwp5 | shift_cwp6 | shift_cwp7 | shift_cwp8 |
    |   shower |         2  |       939  |      2346  |      6862  |     25511  |      9682  |      5014  |      4736  |
    |------------------------------------------------------------------------------------------------|
    |                                        shift_cwp9                                              |
    |                                          2337                                                  |
    +-------------------------------------------------------------------------------------------------+
```

.
.
.
. restore

.
.
.
. * UE class (CW analysis)

.
. preserve

.
.

```
.
. keep if unjust_enrichment==1
(357,422 observations deleted)


.

.

.
. assert cwp_four == cwp_four_ue


.
. drop cwp_four_ue


.

.

.
. collapse (sum) shift_*, by(cwp_four-cwp_nine)


.

.

.
. reshape long shift_, i(cwp*) j(job) string
(j = barber_flag commis_flag janitor_flag kitchen_flag laundry_flag medical_flag no_job porter_flag shower_flag)

Data                             Wide   ->   Long
-----------------------------------------------------------------------------
Number of observations                6   ->   54
Number of variables                  15   ->   8
j variable (9 values)                     ->   job
xij variables:
shift_barber_flag shift_commis_flag ... shift_shower_flag->shift_
-----------------------------------------------------------------------------


.

.

.
. gen cwp = 4 if cwp_four == 1
```

```
(45 missing values generated)

.
. replace cwp = 5 if cwp_five == 1
(9 real changes made)


.
. replace cwp = 6 if cwp_six == 1
(9 real changes made)


.
. replace cwp = 7 if cwp_seven == 1
(9 real changes made)


.
. replace cwp = 8 if cwp_eight == 1
(9 real changes made)


.
. replace cwp = 9 if cwp_nine == 1
(9 real changes made)


.
. assert cwp != .


.
.
.
. drop cwp_*


.
.
.
. replace job = subinstr(job, "_flag", "", .)
(48 real changes made)
```

```
.
.
.
. reshape wide shift_, i(job) j(cwp)
(j = 4 5 6 7 8 9)

Data                               Long   ->   Wide
-----------------------------------------------------------------------------
Number of observations              54    ->   9
Number of variables                  3    ->   7
j variable (6 values)              cwp    ->   (dropped)
xij variables:
                                  shift_  ->   shift_4 shift_5 ... shift_9
-----------------------------------------------------------------------------


.
. rename shift_* shift_cwp*


.
.
.
. * UE CLASS SHIFT COUNTS (CW analysis)


.
. list, ab(33) sep(0)

    +-----------------------------------------------------------------------------+
    |     job   shift_cwp4   shift_cwp5   shift_cwp6   shift_cwp7   shift_cwp8   shift_cwp9 |
    |-----------------------------------------------------------------------------|
 1. |  barber          457         2679         1288          987          840          199 |
 2. |  commis          817         4322         2936          926          582          140 |
 3. |  janitor         487         1864          817          784           79            5 |
 4. |  kitchen       11984        67265        34905        28579        35471        11276 |
 5. |  laundry         775         5051         3584         2561         2285          744 |
 6. |  medical         171          663           62          206          745           47 |
 7. |   no_job        7008        51573        43824        37785        35099         3236 |
```

```
  8. |   porter         6820       38836       15209       10115       10357       4733 |
  9. |   shower         5572       25511        9682        5014        4736       2337 |
     +----------------------------------------------------------------------------------+

.

.

.
. restore


.

.

.
. *******


.
. ** EO Anaylsis Shift Counts (for CWPs affected by EO annual changes)


.
. preserve


.

.

.
. * CWP FIVE_14 TO EIGHT_20 (EO analysis)


.

.

.
. collapse (sum) shift_*, by(cwp_five_14-cwp_eight_20)


.
. reshape long shift_, i(cwp*) j(job) string
(j = barber_flag commis_flag janitor_flag kitchen_flag laundry_flag medical_flag no_job porter_flag shower_flag)

Data                              Wide   ->   Long
-----------------------------------------------------------------------------
```

```
Number of observations                    11   ->    99
Number of variables                       19   ->    12
j variable (9 values)                          ->    job
xij variables:
shift_barber_flag shift_commis_flag ... shift_shower_flag->shift_
-----------------------------------------------------------------------------


.

.

.
. gen cwp = "cwp_five_14" if cwp_five_14 == 1
(90 missing values generated)


.
. replace cwp = "cwp_five_15" if cwp_five_15 == 1
(9 real changes made)


.
. replace cwp = "cwp_five_16" if cwp_five_16 == 1
(9 real changes made)


.
. replace cwp = "cwp_five_17" if cwp_five_17 == 1
(9 real changes made)


.
. replace cwp = "cwp_six_17" if cwp_six_17 == 1
(9 real changes made)


.
. replace cwp = "cwp_six_18" if cwp_six_18 == 1
(9 real changes made)


.
. replace cwp = "cwp_seven_18" if cwp_seven_18 == 1
variable cwp was str11 now str12
```

```
(9 real changes made)

.
. replace cwp = "cwp_seven_19" if cwp_seven_19 == 1
(9 real changes made)

.
. replace cwp = "cwp_eight_19" if cwp_eight_19 == 1
(9 real changes made)

.
. replace cwp = "cwp_eight_20" if cwp_eight_20 == 1
(9 real changes made)

.
.
.
. * Eliminate shift counts for other CWP & year combos

.
. drop if missing(cwp)
(9 observations deleted)

.
.
.
. drop cwp_*

.
.
.
. replace job = subinstr(job, "_flag", "", .)
(80 real changes made)

.
.
```

```
.
. reshape wide shift_, i(job) j(cwp) string
(j = cwp_eight_19 cwp_eight_20 cwp_five_14 cwp_five_15 cwp_five_16 cwp_five_17 cwp_seven_18 cwp_seven_19 cwp_six_17 cwp_six_18

Data                                  Long   ->   Wide
-----------------------------------------------------------------------------
Number of observations                  90   ->   9
Number of variables                      3   ->   11
j variable (10 values)                 cwp   ->   (dropped)
xij variables:
                                    shift_   ->   shift_cwp_eight_19 shift_cwp_eight_20 ... shift_cwp_six_18
-----------------------------------------------------------------------------


.
.
.
. * CWP FIVE_14 THROUGH EIGHT_20 SHIFT COUNTS (EO analysis)


.
. list, ab(33) sep(0)
```

```
    +-----------------------------------------------------------------------------------------------------+
 1. |     job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
    | barber |               463 |              377 |             301 |            1140 |           1096 |
    |-----------------------------------------------------------------------------------------------------|
    | shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
    |            142 |              360 |              627 |            913 |             375 |
    +-----------------------------------------------------------------------------------------------------+


    +-----------------------------------------------------------------------------------------------------+
 2. |     job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
    | commis |               217 |              365 |             465 |            1848 |           1662 |
    |-----------------------------------------------------------------------------------------------------|
    | shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
    |            347 |              677 |              249 |           1766 |            1170 |
    +-----------------------------------------------------------------------------------------------------+
```

3.

| job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
|---|---|---|---|---|---|
| janitor | 0 | 79 | 234 | 1001 | 595 |

| shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
|---|---|---|---|---|
| 34 | 357 | 427 | 426 | 391 |

4.

| job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
|---|---|---|---|---|---|
| kitchen | 14900 | 20571 | 7327 | 27863 | 27521 |

| shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
|---|---|---|---|---|
| 4554 | 11788 | 16791 | 21474 | 13431 |

5.

| job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
|---|---|---|---|---|---|
| laundry | 1125 | 1160 | 489 | 1987 | 2110 |

| shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
|---|---|---|---|---|
| 465 | 1089 | 1472 | 2169 | 1415 |

6.

| job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
|---|---|---|---|---|---|
| medical | 275 | 470 | 105 | 373 | 134 |

| shift_cwp_five_17 | shift_cwp_seven_18 | shift_cwp_seven_19 | shift_cwp_six_17 | shift_cwp_six_18 |
|---|---|---|---|---|
| 51 | 13 | 193 | 62 | 0 |

7.

| job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
|---|---|---|---|---|---|
| no_job | 17929 | 17170 | 3438 | 13707 | 27408 |

```
       |---------------------------------------------------------------------------------------------------|
       | shift_cwp_five_17  |  shift_cwp_seven_18  |  shift_cwp_seven_19  |  shift_cwp_six_17  |  shift_cwp_six_18  |
       |             7020  |             15272  |             22513  |             31686  |             12138  |
       +---------------------------------------------------------------------------------------------------+


       +---------------------------------------------------------------------------------------------------+
 8.  |     job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
     | porter |             3759 |             6598 |             5372 |             19873 |             11925 |
       |---------------------------------------------------------------------------------------------------|
       | shift_cwp_five_17  |  shift_cwp_seven_18  |  shift_cwp_seven_19  |  shift_cwp_six_17  |  shift_cwp_six_18  |
       |             1666  |             3310  |             6805  |             8494  |             6715  |
       +---------------------------------------------------------------------------------------------------+


       +---------------------------------------------------------------------------------------------------+
 9.  |     job | shift_cwp_eight_19 | shift_cwp_eight_20 | shift_cwp_five_14 | shift_cwp_five_15 | shift_cwp_five_16 |
     | shower |             1959 |             2777 |             4003 |             13414 |             7030 |
       |---------------------------------------------------------------------------------------------------|
       | shift_cwp_five_17  |  shift_cwp_seven_18  |  shift_cwp_seven_19  |  shift_cwp_six_17  |  shift_cwp_six_18  |
       |             1064  |             2484  |             2530  |             4398  |             5284  |
       +---------------------------------------------------------------------------------------------------+
```

.
.
.
. restore

.
.
.
. * FINAL CWP IS CONTIGUOUS WITH CWP NINE

.
.
.
. * save out

```
.
. save "`output'\counts_data.dta", replace
file `output'\counts_data.dta saved


.
.
.
. log close
      name:  <unnamed>
       log:  `output'\logs\data_counts.log
  log type:  text
 closed on:  20 Dec 2021, 08:53:29
-----------------------------------------------------------------------------------------------------
```