IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>                    Defendant. | Civil Action No. 4:18-cv-00070-CDL |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and the Court's June 16, 2023 Order, Defendant, CoreCivic, Inc. ("CoreCivic"), moves for partial summary judgment as to Plaintiffs' claims for: (1) declaratory and injunctive relief; and (2) unjust enrichment. The Court should dismiss these claims in their entirety and with prejudice, as there are no genuine disputes as to any facts material to these claims and CoreCivic is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

Specifically, Plaintiffs' claims for declaratory and injunctive relief are moot, as all three named Plaintiffs were released from CoreCivic's Stewart Detention Center ("SDC") many years ago, and their unjust enrichment claim fails without an underlying contract claim. (*See* Defendant's Separate Statement of Facts ("DSOF") at ¶¶ 1, 5, 8.) *See Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (finding the plaintiff's claims for declaratory and injunctive relief moot due to his release from the facility after initiating the lawsuit); *Tolson Firm, LLC v. Sistrunk*, 789 S.E.2d 265, 271 (Ga. App. 2016) ("A claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails.") (quoting *Wachovia Ins. Servcs. v. Fallon*, 682 S.E.2d 657, 665 (Ga. App. 2009)).

Alternatively, the Court should dismiss Plaintiffs' unjust enrichment claim because they each agreed to the rate of pay they received and/or lack any evidence to show that they were ever promised more. (DSOF at ¶¶ 3–4, 7, 10.) At a minimum, the Court should rule that, should the unjust enrichment claim survive, and should Plaintiffs prevail on it at trial, their damages are limited to the difference between what they were paid and what CoreCivic would have had to pay a regular employee to perform the same tasks for the same number of hours, and they are not entitled to any portion of CoreCivic's profits at SDC beyond that amount. *See Hollifield v. Monte Vista Biblical Gardens, Inc.*, 553 S.E.2d 662, 669 (Ga. App. 2001) ("The measure of damages under … unjust enrichment is based upon the benefit conferred upon the [defendant].").

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   FACTUAL BACKGROUND

Wilhen Hill-Barrientos ("Hill-Barrientos"), Margarito Velazquez Galicia ("Velazquez Galicia"), and Shoaib Ahmed ("Ahmed") filed the original Complaint in this matter on April 17, 2018. (Dkt. 1.) After the Court denied CoreCivic's Motion to Dismiss and certified it for interlocutory appeal, and the Eleventh Circuit affirmed the denial (Dkt. 38, 42), Hill-Barrientos, Gonzalo Bermudez Gutierrez ("Bermudez Gutierrez"), and Keysler Ramon Urbina-Rojas ("Urbina-Rojas") (collectively, "Plaintiffs"), filed an Amended Complaint on October 16, 2020. (Dkt. 87.) Plaintiffs allege that CoreCivic: (1) violated the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589, by forcing and/or coercing U.S. Immigration and Customs Enforcement ("ICE") detainees at SDC to participate in the VWP, and (2) was unjustly enriched by doing so. (*See, generally*, Doc. 87.) Plaintiffs sought certification of the case as a class action,

as well as declaratory and injunctive relief, disgorgement of profits, monetary damages (compensatory and punitive), and attorneys' fees and costs. (Id.)

### A. Declaratory and Injunctive Relief Claims

Plaintiffs allege they are entitled to declaratory and injunctive relief "necessary to protect the[ir] interests," including "enjoining CoreCivic from continuing to conduct business through the unlawful and unfair practices alleged." (Dkt. 87 at 33, ¶¶ e–f.)

Plaintiff Hill-Barrientos was detained at SDC on four occasions from July 2015 to June 2018: July 10, 2015 to May 1, 2016; May 26–27, 2016; September 14–19, 2016; and September 16, 2017 to June 19, 2018. (DSOF at ¶ 1.) Plaintiff Bermudez Gutierrez was detained at SDC on one occasion: from May 2, 2019 to January 10, 2020. (Id. at ¶ 5.) Plaintiff Urbina-Rojas was detained at SDC from May 27, 2015 to June 15, 2016. (Id. at ¶ 8.)

### B. Unjust Enrichment Claims

Plaintiffs allege CoreCivic improperly reduced its operating costs and increased its profits at SDC by "obtaining undercompensated labor from" them and the putative class. (Dkt. 87 at ¶ 129.) Specifically, Plaintiffs allege they performed "work" in the VWP for $1.00 to $4.00 per day, and up to $8.00 per day for "kitchen workers under certain circumstances, for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more." (Id. at ¶ 130.) Plaintiffs allege they are entitled to "all amounts that CoreCivic has wrongfully and improperly obtained, and CoreCivic should be required to disgorge … the benefits it has unjustly obtained," as well as punitive damages. (Id. at ¶ 133.)

During his four combined stays at SDC, Plaintiff Hill-Barrientos received $675.00 from outside sources and $1,313.00 as an allowance for his participation as a kitchen worker. (Id. at ¶ 2.) He did not work in the kitchen during his two shorter detention periods at SDC. (Id.) In

response to CoreCivic's Interrogatory No. 3, which asked him to "[i]dentify each statement or representation made by any CoreCivic employee that [he] would be compensated at a rate higher than $4 per day for each day [he] attended [his] scheduled shift as a participant in the [VWP] at SDC," Hill-Barrientos responded that he "received documentation reflecting his pay," but that he "does not possess any such documentation at this time other than what CoreCivic has already produced in this action." (Id. at ¶ 3.) On September 16, 2017, Plaintiff Hill-Barrientos signed a VWP Agreement acknowledging that he would be paid "$1.00 to $4.00 per day based on the work assignment" for his participation in the VWP. (Id. at ¶ 4.)

Plaintiff Bermudez Gutierrez arrived at SDC with $20.00. (Id. at ¶ 6.) During his stay at SDC, he received $10.00 from outside sources and $932.00 as an allowance for his participation as a kitchen worker. (Id.) In response to CoreCivic's Interrogatory No. 2, which asked him to "[i]dentify each statement or representation made by any CoreCivic employee that [he] would be compensated at a rate higher than $4 per day for each day [he] attended [his] scheduled shift as a participant in the [VWP] at SDC," Bermudez Gutierrez responded that he "does not possess information responsive to this interrogatory." (Id. at ¶ 7.)

Plaintiff Urbina-Rojas arrived at SDC with $53.11. (Id. at ¶ 9.) During his stay at SDC, he received $71.97 from a prior account, $1,580.00 from outside sources, and $1,072 as an allowance for his participation as a kitchen worker. (Id.) In response to CoreCivic's Interrogatory No. 2, which asked him to "[i]dentify each statement or representation made by any CoreCivic employee that [he] would be compensated at a rate higher than $4 per day for each day [he] attended [his] scheduled shift as a participant in the [VWP] at SDC," Urbina-Rojas responded that he "does not possess information responsive to this interrogatory." (Id. at ¶ 10.)

Plaintiffs disclosed Steven Schwartz, Ph.D. to provide opinions regarding the putative class's alleged damages. (Id. at ¶ 11.) Per Dr. Schwartz, assuming CoreCivic's liability on the TVPA and unjust enrichment claims, the value conferred on CoreCivic by the detainees who participated in the VWP "derives from the difference between the wages paid to detainees … and the wages … that it would have paid to employees hired to perform those same tasks." (Id. at ¶ 12.) Dr. Schwartz purportedly calculated the estimated damages "using a class-wide model." (Id. at ¶ 13.) He did not conduct any "individual-level analysis," and he did not provide any opinions as to the value of the work performed by the three named Plaintiffs specifically. (Id.)

### C.     Class Certification and Related Briefing

On June 17, 2022, Plaintiffs filed their Motion for Class Certification. (Dkt. 213.) On that same date, Plaintiffs filed a *Daubert* Motion to Exclude Defendant's Proposed Expert Dr. Joseph V. Penn's Testimony and Opinions ("Motion to Exclude Dr. Penn"). (Dkt. 215.)

CoreCivic filed its response to the Motion for Class Certification on August 17, 2022. (Dkt. 250.) CoreCivic filed its Response to the Motion to Exclude Dr. Penn, along with a Motion to Exclude Testimony of Dr. Pablo Stewart ("Motion to Exclude Dr. Stewart") and a Motion to Exclude Steven Schwartz's Classwide Damages Model ("Motion to Exclude Dr. Schwartz") on August 24, 2022. (Dkt. 252, 253, 254.)

Plaintiffs filed their Replies in support of the Motion for Class Certification and Motion to Exclude Dr. Penn on September 23, 2022. (Dkt. 262, 264.) Plaintiffs filed their Responses to the Motion to Exclude Dr. Stewart and Motion to Exclude Dr. Schwartz on October 7, 2022. (Dkt. 267, 268.) CoreCivic filed its Replies in support of both Motions on November 10, 2022. (Dkt. 277, 278.)

The Court denied Plaintiffs' Motion for Class Certification on March 28, 2023, finding that "Plaintiffs have failed to carry their burden of establishing that this case should be certified for class action purposes." (Dkt. 285 at 1.) Specifically, the Court found that evaluating Plaintiffs' claims of being forced and/or coerced to join and remain in the VWP "requires an individualized assessment of each detainee's situation," such that the claims "are best suited for individual and not class treatment." (Id. at 11, 13.) The Court terminated all three Motions to Exclude Experts as moot without substantively ruling on them. (Id. at 16–18.)

Plaintiffs filed a Petition for Permission to Appeal Under Rule 23(f) ("Petition") in the Eleventh Circuit on April 11, 2023; they moved to stay the dispositive motions deadline pending the outcome of the Petition on April 24, 2023, which this Court granted on April 25, 2023. (Dkt. 287, 288.) The Eleventh Circuit denied the Petition on May 31, 2023, and this Court lifted the stay on June 1, 2023 and set a trial date. (Dkt. 296.) The Court then granted CoreCivic's Motion to Continue Trial, setting trial for October 16, 2023 and dispositive motions for July 17, 2023. (Dkt. 298, 299.)

## II.     LEGAL ARGUMENT

### A.     The Court Should Dismiss Plaintiffs' Declaratory and Injunctive Relief Claims With Prejudice.

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (citation omitted). A case becomes moot— and, hence, non-justiciable—if the "requisite personal interest" captured by the standing doctrine ceases to exist at any point during the litigation. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). In other words, a case is moot if there is no "present controversy as to which

effective relief can be granted." *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) (citation omitted).

"The general rule is that a detainee's transfer or release from a jail moots that detainee's claims for injunctive relief." *Rau v. Moats*, 772 F. App'x 814, 817 (11th Cir. 2019) (citing *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984)); *see also Zatler*, 802 F.2d at 399 (finding the plaintiff's claims for declaratory and injunctive relief moot due to his release from the facility after initiating the lawsuit) (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)). Class certification provides an exception to the general rule, but if no class is certified, a detainee's transfer moots his claims for declaratory and injunctive relief. *See Wahl*, 773 F.2d at 1174–1175.

Here, there is no class. (Dkt. 285.) All three named Plaintiffs were released from SDC years ago—i.e., seven years ago for Urbina-Rojas, five years for Hill-Barrientos, and three and a half years ago for Bermudez Gutierrez. (DSOF at ¶¶ 1, 5, 8.) Their claims for declaratory and injunctive are therefore moot, and the Court should dismiss them with prejudice.

### B. The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim With Prejudice.

#### 1. Plaintiffs' unjust enrichment claim fails as a matter of law.

"A claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." *Tolson Firm, LLC*, 789 F.2d at 271 (quoting *Wachovia Ins. Servcs.*, 682 S.E.2d at 665); *see also Rollins v. LOR, Inc.*, 815 S.E.2d 169, 177 & n.10 (Ga. App. 2018) (noting that claims for unjust enrichment are subject to a four-year limitation period under Ga. Code Ann., § 9-3-26, which provides that "All other actions upon contracts express or implied

not otherwise provided for shall be brought within four years from the accrual of the right of action.").[1]

Where an unjust enrichment claim is asserted "as a separate tort and not an alternative theory of recovery for a failed contract," the "claim fails as a matter of law." *Wachovia Ins. Services*, 682 S.E.2d at 665–666 (affirming the trial court's order granting summary judgment for the defendants). In *Tidikis v. Network for Medical Communications & Research LLC*, 619 S.E.2d 481, 485 (Ga. App. 2005), the plaintiff alleged in his complaint that the defendants terminated his employment, divested him of his stock options, and denied him the full value of his membership units, "unjustly enrich[ing] themselves in an amount to be proven at trial." The Georgia Court of Appeals, reviewing the trial court's order granting the defendants' motion for judgment on the pleadings, opined that, as plead, the plaintiff was "treating the unjust enrichment claim like a tort—e.g., the defendants violated his legal right to property interests." *Id*. The Court of Appeals held that "a claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails"—i.e., "when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Id*. at 485 & n.13–14 (citing cases). Because the plaintiff did not challenge the validity of the contract between the parties, the Court of Appeals further held that "the unjust enrichment claim fail[ed] as a matter of law" and that the trial court "properly granted the defendants' motion for judgment on the pleadings with respect to [that] claim." *Id*.

---

[1] The title of § 9-3-26 is "Other actions ex contractu." "Ex contractu" is Latin for "arising from or based on a contract." (*See* https://www.law.cornell.edu/wex/ex_contractu, last accessed July 17, 2023.)

Here, Plaintiffs are also treating their unjust enrichment claim as a separate tort. (*See, generally,* Dkt. 87 & Count II.) The only contracts Plaintiffs mention in the Amended Complaint are CoreCivic's contracts with its government partners and vendors. They make no allegations about any contracts between themselves and CoreCivic related to the VWP or otherwise. Instead, the allegations in Count II (Unjust Enrichment) read like any other tort claim—CoreCivic reduced its labor costs and increased its profits by "obtaining undercompensated labor from Plaintiffs." (Dkt. 87 at ¶ 129.) Plaintiffs allegedly conferred benefits on CoreCivic by "performing work for $1 to $4 per day, and up to $8 per day for kitchen workers under certain circumstances, for which CoreCivic would otherwise have had to pay at least the applicable minimum wage or more, thereby significantly and materially increasing CoreCivic's profits and unjustly enriching CoreCivic and the expense of and detriment to Plaintiffs. (Id. at ¶ 130.) CoreCivic's retention of these benefits allegedly "violated principles of justice, equity, and good conscience," causing them "concrete harm and injury, including physical and emotional injury, and the unlawful violation of their rights," for which they are "entitled to recover from CoreCivic all amounts that CoreCivic has wrongfully and improperly obtained." (Id. at ¶¶ 131–133.)

Plaintiffs have no evidence of any type of contractual arrangement between them and CoreCivic. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (finding the moving party is entitled to judgment as a matter of law where the nonmoving party has failed to make a sufficient showing on an essential element of their case). Plaintiffs' unjust enrichment claim therefore fails as a matter of law. The Court should dismiss it with prejudice.

### 2. Plaintiffs cannot prove an essential element of their unjust enrichment claim.

Where a claim for unjust enrichment is properly asserted, the plaintiff must prove that "the defendant induced or encouraged the plaintiff to provide something of value to the

defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. App. 2016). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Morris v. Britt*, 620 S.E.2d 422, 424 (Ga. App. 2005) (citation omitted).

Even if the Court does not dismiss Plaintiffs' unjust enrichment claim with prejudice because it is invalid as a matter of law, it should dismiss the claim with prejudice because Plaintiffs cannot establish that they reasonably expected to be paid any more than what they received. *See Celotex Corp.*, 477 U.S. at 323.

This is not a case in which Plaintiffs were paid nothing for the tasks they performed. Nor is it a case in which Plaintiffs were paid less than what they had been promised or reasonably expected. Rather, Plaintiffs knew what they were getting paid and received exactly what they were promised.

On September 16, 2017, Plaintiff Hill-Barrientos signed a VWP Agreement acknowledging that he would be paid "$1.00 to $4.00 per day based on the work assignment" for his participation in the VWP. (DSOF at ¶ 4.) Consistent with that Agreement, he was paid $1,313.00 as an allowance for his participation in the VWP as a kitchen worker. (Id. at ¶ 2.) He has no evidence to suggest that anyone ever promised to pay him any more than that. (Id. at ¶ 3.)

Plaintiff Bermudez Gutierrez was paid $932.00 as an allowance for his participation in the VWP as a kitchen worker. (DSOF at ¶ 6.) He has no evidence to suggest that anyone ever promised to pay him any more than that. (Id. at ¶ 7.)

Plaintiff Urbina-Rojas was paid $1,072.00 as an allowance for his participation in the VWP as a kitchen worker. (DSOF at ¶ 9.) He has no evidence to suggest that anyone ever promised to pay him any more than that. (Id. at ¶ 10.)

"Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Sitterli v. Csachi*, 811 S.E.2d 454, 457 (Ga. 2018) (quoting *Estate of Crook v. Foster*, 775 S.E.2d 286 (2015)). Plaintiffs were paid what they were promised, such that they cannot prove that CoreCivic was unjustly enriched by the services they provided.

But even if they could, Plaintiffs have no evidence to establish the amount of the benefit they conferred on CoreCivic. Plaintiffs' expert, Dr. Schwartz, was very clear that his damages calculations were based on a "class-wide model" with no "individual-level analysis." (DSOF at ¶ 13.) Unfortunately for Plaintiffs, this includes their own claims. There are no calculations in Dr. Schwartz's report that purport to determine the number of hours each Plaintiff worked or the estimated damages they sustained based on the difference between the amount they were paid and the wages CoreCivic would have had to pay. (Id.) Because Plaintiffs cannot establish these essential elements of their unjust enrichment claim, the Court should dismiss it with prejudice.

    **C.**    **Alternatively, the Court Should Limit the Damages Available to Plaintiffs on the Unjust Enrichment Claim.**

A plaintiff who prevails on a claim of unjust enrichment is entitled to the value of the benefit conferred by the plaintiff on the defendant. *See Sitterli*, 811 S.E.2d at 457 ("Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged *has been conferred a benefit* by the party contending an unjust enrichment *which the benefitted party equitably ought to return or compensate for*.")

(internal citations and quotations omitted; emphasis added); *see also Morris*, 620 S.E.2d at 424 ("The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the *conferred benefits* when there was no legal contract to pay. The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment *for the value received*.") (internal citations and quotations omitted; emphasis added).

Plaintiffs have maintained throughout this litigation that, should they prevail on their unjust enrichment claim at trial, they are entitled to a disgorgement of CoreCivic's profits from SDC. (Dkt. 87 at 33, ¶ g.) Their only basis—a comment made in dicta in *AcryliCon USA, LLC v. Silikal GmbH*, in which the Eleventh Circuit stated: "Sometimes, however, the remedy for unjust enrichment gives the plaintiff something that the plaintiff did not previously possess. This species of restitution is called disgorgement, and it generally allows a plaintiff to recover the defendant's wrongful gain, even if that gain exceeds the plaintiff's provable loss." 985 F.3d 1350, 1368 (11th Cir. 2021) (internal citations, quotations, and alterations omitted). There, the plaintiff brought numerous claims against the defendant arising out of the defendant's sale of a product that was purportedly the subject of an agreement making the plaintiff the exclusive distributor of a product manufactured by the defendant. *Id*. at 1356–57. The parties went to trial on two claims—misappropriation of a trade secret and breach of contract, where the jury awarded the plaintiff a total of over $5 million ($1.5 million in compensatory damages, $3 million in punitive damages, and attorney fees and costs). *Id*. at 1357.

After concluding that the plaintiff failed to establish a critical element of the misappropriation claim, holding the district court erred by not granting the defendant's motion

for directed verdict on that claim, and vacating the punitive damages award (which was based on the misappropriation claim), the Eleventh Circuit turned to the breach of contract claim. *Id*. at 1367–68. As the Court noted, the district court's original judgment was unclear as to whether the $1.5 million compensatory damages award was for the misappropriation claim, the breach of contract claim, or both, as the jury verdict awarded $1.5 million on each. *Id*. at 1368. The Court issued a limited remand to get clarification, and the district court entered a revised final judgment stating that "each claim was an independent ground for the award." *Id*. After further briefing as to whether the breach of contract claim could support that award, the Eleventh Circuit held that it could not, as the plaintiff failed to prove actual damages from the breach, such that the plaintiff was entitled to only nominal damages. *Id*.

"To explain the district court's error," the Eleventh Circuit then explained the differences between the remedies of restitution (available on the misappropriation claim) and actual damages (available on the breach of contract claim). *Id*. In that context, the Eleventh Circuit noted that the remedy for unjust enrichment (i.e., restitution) could include disgorgement. *Id*. The Eleventh Circuit did not hold that the plaintiff was entitled to disgorgement in that case (in fact, it held the plaintiff was entitled only to nominal damages), which did not involve the alleged provision of labor without adequate pay. *Id*. In other words, *AcryliCon USA, LLC* is completely unhelpful to the determination of what damages would be available to Plaintiffs in the event they were to prevail on their unjust enrichment claim at trial.

So, too, is *Yoh v. Daniel*, 497 S.E.2d 392, 640–41 (Ga. App. 1998), which involved an alleged reneging of a contract to sell a house by the defendants after the plaintiffs "substantially improved the home in anticipation of the sale." Not only did the case involve a failed contract,

such that an unjust enrichment theory of recovery was available as a matter of law, it also involved a question of whether the plaintiffs' labor increased the value of the property. *Id.*

Here, there is no legitimate claim that Plaintiffs' services in the VWP increased the value of SDC itself. Rather, the value of any benefit Plaintiffs allegedly conferred on CoreCivic—as recognized repeatedly by Dr. Schwartz—"derives from the difference between the wages paid to detainees … and the wages … that it would have paid to employees hired to perform those same tasks." (DSOF at ¶ 12.)[2] The word "disgorgement" does not appear anywhere in Dr. Schwartz's report, and Plaintiffs have no authority that supports their demand for it. As such, if the unjust enrichment claim survives summary judgment, the Court should rule that Plaintiffs are not entitled to disgorgement of profits should they prevail on the claim at trial.

## III. CONCLUSION

For the reasons stated above, the Court should grant CoreCivic's Motion for Partial Summary Judgment and dismiss with prejudice Plaintiffs' claims for declaratory and injunctive relief and unjust enrichment. At a minimum, the Court should rule that, should the unjust enrichment claim survive, and should Plaintiffs prevail on it at trial, their damages are limited to the difference between what they were paid and what CoreCivic would have had to pay a regular

---

[2] Dr. Schwartz also calculated the amounts CoreCivic would have to pay a regular employee for health benefits. (Dkt. 213-60 at ¶¶ 12, 73–74, 80, 83.) As demonstrated in CoreCivic's Motion to Exclude Steven Schwartz's Classwide Damages Model ("Motion to Exclude Dr. Schwartz"), however, Dr. Schwartz incorrectly assumed that: (1) Plaintiffs did not receive health benefits, and (2) CoreCivic would have to hire one hypothetical replacement employee for each VWP participant and would have to pay each such employee health benefits even though they would only be working the same part-time schedule as the detainee they replaced. (Dkt. 248, 277.) The Court did not rule on the merits of the Motion to Exclude Dr. Schwartz but instead terminated it as moot because it denied Plaintiffs' Motion for Class Certification. (Dkt. 285.) For the reasons stated in the Motion and Reply, the Court should rule that health benefits for regular employees are not part of the amount to be used to calculate the value Plaintiffs conferred on CoreCivic. (Dkt. 248, 277.)

employee to perform the same tasks for the same number of hours, and they are not entitled to any portion of CoreCivic's profits at SDC beyond that amount.

Dated:  July 17, 2023                                     Respectfully submitted,

s/ Jacob B. Lee
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
Nicholas D. Acedo *(pro hac vice)*
Ashlee B. Hesman *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
Eden G. Cohen *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
ecohen@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
Amelia C. Stevens (GA Bar No. 758771)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
astevens@olivermaner.com

Attorneys for Defendant CoreCivic, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Priyanka Bhatt | priyanka@projectsouth.org |
| Meredith B. Stewart | meredith.stewart@splcenter.org |
| Rebecca M. Cassler | rebecca.cassler@splcenter.org |
| Sharada Jambulpati | sharada.jambulpati@splcenter.org |
| Azadeh Shahshahani | azadeh@projectsouth.org |
| Jessica Hasen | jhasen@perkinscoie.com |
| Emily B. Cooper | ecooper@perkinscoie.com |
| Alan B. Howard | ahoward@perkinscoie.com |
| John H. Gray | jhgray@perkinscoie.com |
| Jessica L. Everett-Garcia | jeverettgarcia@perkinscoie.com |
| Jacob D. Massee | jmassee@olivermaner.com |
| Amelia Stevens | astevens@olivermaner.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

s/Jacob B. Lee