IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WILHEN HILL BARRIENTOS, et al.,<br><br>         Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC.,<br><br>         Defendant. | Civil Action No. 4:18-cv-00070-CDL |

## DEFENDANT'S MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORTS AND EXCLUDE TESTIMONY

   Defendant CoreCivic, Inc. ("CoreCivic") moves to strike the untimely and improper "supplemental" reports of Plaintiffs' experts Pablo Stewart, M.D. and Steven Schwartz, Ph.D. and to exclude any testimony based on the previously undisclosed opinions stated in those reports. Specifically, CoreCivic seeks to exclude testimony by Plaintiffs' experts on matters that were not included in their original reports because the information upon which the new opinions are based was available before the expert discovery deadline. Plaintiffs' experts failed to state opinions regarding Plaintiff's individual claims prior to the filing of CoreCivic's Motion for Partial Summary Judgment and are now attempting to fill in holes in their reports to address the individual claims. Dr. Stewart's supplemental report should also be excluded because he offers opinions on "trauma-related injuries" that are just rebranded emotional distress damages which Plaintiffs explicitly stated they would no longer be seeking at the Motions Hearing on May 10, 2022. (Dkt. 202 at 4:11–5:22.) The Court should strike Plaintiff's "supplemental" expert reports as untimely and exclude any testimony relating to the undisclosed opinions contained in those reports. The Court should further strike Dr. Stewart's report as unhelpful to the jury in

understanding the evidence or determining a fact in issue. *See* Fed. R. Evid. 702; *Adams v. Laboratory Corp. of America*, 760 F.3d 1322, 1328 (11th Cir. 2014) (under *Daubert*, *Kumho*, and Rule 702, an expert's testimony "must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue") (internal citation and quotations omitted).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   BACKGROUND

Plaintiffs filed the original Complaint in this matter on November 14, 2018. (Dkt. 1.) After the case was remanded from the Eleventh Circuit on February 28, 2020, following CoreCivic's interlocutory appeal of the Order denying its Motion to Dismiss (Dkt. 46), Plaintiffs amended their Complaint to name Gonzalo Bermudez-Gutierrez and Keysler Urbina-Rojas as Plaintiffs (along with Wilhen Hill-Barrientos, who was named in the original Complaint), and the parties began extensive discovery that ultimately resulted in CoreCivic's production of 39,399 imaged documents (totaling more than 315,000 pages) and an additional 16,544 natively produced files, many of which if printed would be hundreds of pages each. (Dkt. 338; *see also* Dkt. 87.) The parties agreed to several extensions of the discovery deadlines, which resulted in Plaintiffs' initial expert reports being due by December 22, 2021 (Dkt. 160), CoreCivic's expert disclosures and rebuttal expert disclosures being due by February 22, 2022 (Dkt. 175), and expert discovery closing on March 8, 2022 (*Id.*).

Plaintiffs filed their Motion for Class Certification on July 1, 2022; the Court denied it on March 28, 2023. (Dkt. 287, 285.) On that same date, the Court also terminated both sides' motions to exclude experts as moot. (Dkt. 285.)

On July 17, 2023, CoreCivic moved for partial summary judgment, arguing in part that Plaintiffs lacked evidence to support their request for damages on their unjust enrichment claim because Dr. Schwartz estimated only class-wide damages and did not conduct any "individual-level analysis" or provide any opinions as to the value of the work performed by the three named Plaintiffs specifically. (Dkt. 304 at 5, 11.) Ten days later, on July 26, 2023, Plaintiffs served— without advance warning that they intended to do so — "supplemental" reports for Dr. Stewart and Dr. Schwartz. (*See* Exhibit 1, Email from Rebecca Cassler dated July 26, 2023.)

### A.   Dr. Schwartz's "Supplemental" Report

Dr. Schwartz's "supplemental" report attempts to fill the gaps identified in CoreCivic's Motion for Partial Summary Judgment by providing previously undisclosed opinions and calculations regarding the damages to which he believes each Plaintiff is entitled—opinions he could have but did not include in his original report. (Dkt. 318-3.) Specifically, he states that he was "asked to supplement [his] prior analysis of damages and calculate damages to the Named Plaintiffs"—information that should have been included in his original analysis in the event the class was not certified. (*Id*. at 1.) He also states that he employed the "same methodology" utilized in developing the class report, further demonstrating that his "supplemental" report merely focuses on a new subject—specifically, the named Plaintiffs. (*Id.* at 5.)

Dr. Schwartz cites only five documents with dates after the close of discovery deadline in support of his new opinions, but none of these documents are related to the development of his new opinion and some were available before he prepared his initial report. First, Dr. Schwartz cites Defendants' Motion to Exclude his class damages report, which has nothing to do with the named Plaintiffs' damages and is not cited in the substantive portions of his "supplemental" report. (*Id.* at 2.) Second, Dr Schwartz cites the declaration of Michael Giardina, addressing his

method for organizing information with respect to the class, which again contains no information related to the individual Plaintiffs. (*Id.*) Finally, the remaining three documents with dates after the close of expert discovery are declarations from the three named Plaintiffs, each of which is dated "6/17/2022." (*Id*. at 6–8.) This date is misleading, however, because although the declarations were attached to Plaintiffs' Motion for Class Certification on that date, they were all signed in December 2021. (*Id*.; Dkt. 213-57, 213-64, 213-79.) Thus, all of the information Dr. Schwartz relies on in the substantive portion of his "supplemental" report was available to him at the time he prepared and submitted his original report, or—at the very least—prior to the March 8, 2022, expert discovery deadline. (*Id.* at 9-25.)

   **B.**  **Dr. Stewart's "Supplemental" Report**

Dr. Stewart's "supplemental" report similarly provides previously undisclosed opinions, albeit about "trauma-related injuries" from which each Plaintiff allegedly suffers. (Dkt. 318-4.) Specifically, he opines that each Plaintiff suffers from an "Unspecified Trauma- and Stressor-related Disorder" that "do[es] not meet the full criteria for any of the disorders in the trauma- or stressor-related disorders diagnostic class." (*Id*. at ¶¶ 17, 32, 42.) Although Dr. Stewart states he conducted "retrospective psychiatric evaluations" of Plaintiffs in July 2023, he also admits he conducted "extensive interviews" with the Plaintiffs "over several months in 2021" in preparation of his original report; when asked during his deposition about the interviews for his original report, he indicated "[a]t least two" sessions with each Plaintiff and "each session lasted for around three hours." (*Id*. at ¶ 4; *see also* Dkt. 251 at 60:17–25, 61:11–62:5.)

More than one year ago, however, at a May 10, 2022, hearing on CoreCivic's Motion to Compel (among other things) social media and immigration records for the named Plaintiffs on

the grounds that the evidence was relevant to Plaintiffs' emotional distress claims, Plaintiffs' counsel explicitly conceded that they would no longer be pursuing emotional distress damages:

> 11 With regard to the motions to compel, the issues as I
> 12 understand it, that remain outstanding hinge upon, at least in
> 13 large part, whether the plaintiffs have a claim for emotional
> 14 distress damages. It's clear to me that neither of the
> 15 plaintiffs' remaining claims, the statutory claim or the unjust
> 16 enrichment claim, provide for the recovery of emotional
> 17 distress damages as an element of recovery. So it seems clear
> 18 to me that those are not in the case.
> 19 Ms. Cassler, do you agree with that?
> 20 MS. CASSLER: **So plaintiffs agree that they are not**
> 21 **seeking emotional distress damages**. I think there's a little
> 22 bit of a gray area here in terms of what's available under the
> 23 [TVPA], because the statute says not just unavailable; it's not a
> 24 model of clarity on what's available. So, like, I'm not going
> 25 to say that statutorily emotional distress damages would never
> 1 be available in such a case, **but plaintiffs are not seeking**
> 2 **emotional distress damages in this case** --
> 3 THE COURT: All right.
> 4 MS. CASSLER: **-- under the theory of liability.**
> 5 THE COURT: **All right. Then that's established for**
> 6 **the case that the plaintiffs are not seeking emotional distress**
> 7 **damages; and that, therefore, is not an issue in the case. I'm**
> 8 **assuming in light of that the defendants are no longer going to**
> 9 **pursue their discovery of social media discovery. Would that**
> 10 **be correct?**
> 11 MR. LEE: **That would be correct, Your Honor**.
> 12 THE COURT: **And what about the discovery you are**
> 13 **seeking with regard to immigration proceedings? Is that also**
> 14 **no longer discoverable given that they are not seeking**
> 15 **emotional distress damages?**
> 16 MR. LEE: **Yes, Your Honor. Given plaintiffs'**
> 17 **agreement that they are not seeking those damages, then we**
> 18 **would not need either of the two categories of documents that**
> 19 **are still at issue**. We just have been unable to get plaintiffs
> 20 to agree to that prior to today's hearing.
> 21 THE COURT: All right. So as far as those discovery
> 22 disputes, those are settled and the pending motions will be
> 23 terminated.

(Dkt. 202 at 4:11–5:22) (emphasis added.) Dr. Stewart's "supplemental" report is nothing more than an attempted end-run around that concession.

## II. LEGAL ARGUMENT

### A. Plaintiffs' Supplemental Expert Reports Should Be Stricken and Any Expert Testimony Relying on the Opinions in the Supplemental Reports Should be Excluded as Untimely.

#### 1. The supplemental reports are based on information that was available to the experts prior to the applicable deadlines.

It is well-established in civil litigation that the scope of an expert's opinions at trial should be limited to the opinions disclosed in that expert's report. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368–69 (Fed. Cir. 2006) ("Under Rule 26(a)(2), a party must disclose, as directed by the court, its expert witnesses and a report that "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor." … Since the Vsense theory was not disclosed in these expert reports, as required by Fed. R. Civ. P. 26(a)(2), the court did not abuse its discretion in excluding the evidence. *See* Fed. R. Civ. P. 37(c)(1)."). Here, Plaintiffs' untimely and improper "supplemental" reports were only prepared and submitted after CoreCivic pointed out the gaping holes in Dr. Schwartz's original report—a complete failure to address the named Plaintiffs' individual claims—in its Motion for Partial Summary Judgment.[1] (Dkt. 304-1 at ¶ 13.)

"Courts have broad discretion to exclude untimely-disclosed expert witness testimony — even when they are designated as 'supplemental' reports." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277-MARTINEZ/GOODMAN, 2016 WL 3102225, at *5 (S.D. Fla. June 2, 2016). In *Companhia Energetica Potiguar*, the plaintiff's expert based his opinion

---

[1] Dr. Stewart's report suffered from the same problem. Although his report was not at issue in CoreCivic's Motion for Partial Summary Judgment, CoreCivic had previously filed a motion to exclude his opinions as it had with Dr. Schwartz. (Dkt. 247, 248.) Thus, when Plaintiffs realized they needed to plug holes in Dr. Schwartz's report, they apparently decided to do the same with Dr. Stewart's report.

on equipment not actually at issue in the case and referenced the wrong manual. *Id.* at 3. Almost three months later—after discovery closed, after the defendant filed its Motion for Summary Judgment and a *Daubert* motion, and without obtaining or seeking leave—the plaintiff's expert attempted to fix his report by submitting a declaration addressing flaws the opposing party had pointed out in their rebuttal reports. *Id.* at 4. The court noted that under Rule 26(e)(1)(A), an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* at 5. The court further explained, however, that "[a]n expert's duty to supplement under Rule 26(e), is not a right to supplement at will." *Id.* at 6 (quoting *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-CV-00705, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011)) (alteration in original). The court ultimately struck the expert's report as untimely, finding it was neither substantially justified nor harmless. *Id.*; *see also Rojas*, 2011 WL 4375297 at *6 (E.D. Cal. Sept. 19, 2011) ("[A] party may not rely on supplementation as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report.") (quoting *Medtronic Vascular, Inc. v. Abbot Cardiovascular Sys., Inc.*, No. C–06–1066 PJH (EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008), and citing cases).

Here, the original reports of Dr. Schwartz and Dr. Stewart were deficient from their creation, failing to address Plaintiffs' individual claims in the event class certification was denied. Like the expert in *Companhia Energetica Potiguar*, Plaintiffs' experts' attempts to supplement their original reports came after the close of discovery and after CoreCivic pointed out the reports' flaws in its Motion for Partial Summary Judgment. Notable here is that unlike in *Companhia Energetica Potiguar*, where the expert attempted to supplement three months after

the close of discovery, Plaintiffs' experts in this case attempted to supplement over a year and a half after the initial disclosure deadline, and over 15 months after the close of expert discovery.

Plaintiffs' initial expert reports were due by December 22, 2021. (Dkt. 160.) Expert discovery closed on March 8, 2022. (Dkt. 175.) Dr. Schwartz and Dr. Stewart, however, did not provide opinions as to the three named Plaintiffs' individual claims until July 26, 2023, when Plaintiffs served "supplemental" reports from each expert with new opinions directed at their individual claims, which were absent from their original reports. (Ex. 1.)

There is no reason either expert could not have stated those opinions prior to the expert disclosure deadline. The information Dr. Schwartz and Dr. Stewart rely on in their "supplemental" reports was available to them prior to one or both of those expert discovery deadlines. (Dkt. 318-3, Dkt. 318-4; Ex. 4.) At a minimum, it was available to them prior to Plaintiffs' Motion for Class Certification. Plaintiffs should have known that denial of their Motion was a possibility (even if they did not think it was probable) and prepared accordingly so they could still prosecute their individual claims if the court declined to certify the class (as it ended up doing). In fact, Plaintiffs themselves acknowledged that "even if the Court declines to certify the class, the Plaintiffs' individual claims could still proceed on the merits." (Dkt. 63 at 3.) Therefore, Plaintiffs' attempts to fix their original expert reports more than a year after the close of expert discovery is inexcusable and improper. The Court should strike Plaintiffs' supplemental expert reports and exclude any expert testimony relying on the opinions stated in them at trial.

    **2.    The reports are not proper supplemental reports under Rule 26(e).**

To the extent Plaintiffs attempt to hide behind Rule 26(e) and their experts' generic statements reserving the right to supplement their opinions should they receive additional

information, the Court should reject these arguments. The "supplemental" reports do not amend or clarify opinions stated in the original reports based on new or unknown information. Instead, Dr. Stewart and Dr. Schwartz are attempting to bolster their reports by curing their complete failures to address Plaintiffs' individual claims based on information that was available to them before the discovery deadline. Rule 26(e) cannot be used to "cover failures of omission because the expert did an inadequate or incomplete preparation," *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947-J-34HTS, 2009 WL 1139575, at *2 (M.D. Fla. Apr. 27, 2009) (internal citations and quotations omitted) (denying the plaintiff's request to be allowed to supplement its expert's report if the court were to find it was insufficient in ruling on the defendant's motion to strike and exclude), or "to merely bolster a defective or problematic expert witness report." *Companhia Energetica Potiguar,* No. 14-CV-24277, 2016 WL 3102225 at *5.

In *Jones Creek Investors, LLC*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015)*,* the court declined to allow a "supplemental report" when "the new methodologies included in the revised impact analysis could have been included in the original." The court explained that the offering party "failed to show that Rule 26(e) permits this supplementation." *Id.* The court further noted the rule "does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies," concluding that the "supplemental report" was an attempt "to avert summary judgment by 'supplementing' an expert report with a 'new and improved' expert report." *Id.* at 1289-90; *see also Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 823–25 (11th Cir. 2009) (affirming the district court's order striking all opinions that were disclosed for the first time during or after the *Daubert* hearing); *U.S. v. Alabama Power Co.*, 274 F.R.D. 686, 689–91 (N.D. Ala. 2011) (granting the defendant's motion to strike and exclude new opinions from the plaintiff's expert disclosed after the defendant filed

its motion for summary judgment); *Kennis v. Metro. W. Asset Mgmt., LLC*, 2018 WL 9440483, at *5 (C.D. Cal. Nov. 29, 2018) (observing "Rule 26(e) does not provide a party free rein to continue developing expert testimony beyond the deadline set in the Scheduling Order" in granting in part defendant's motion to strike plaintiff's supplemental expert report for untimeliness, amongst substantive grounds).

Like the *Jones Creek Investors, LLC* expert's report, Dr. Schwartz's and Dr. Stewart's supplemental reports are attempts to offer new and improved versions of their original reports, which failed to address Plaintiffs' individual claims. Their attempts to continue developing expert testimony beyond the deadline are improper and not an acceptable use of Rule 26 (e). Since the opinions they are attempting to add pertaining to Plaintiffs' individual claims are based on information that was available to them before the discovery deadline, they cannot "supplement" their reports now by curing their inadequate preparation of opinions.

Courts have allowed supplemental reports such as these where the other party "knew that [the expert's] initial report contained no opinions about [the other parties'] financial condition, and they knew that he planned to supplement his report once he received more information." *H&L Farms LLC v. Silicon Ranch Corp.,* No. 4:21-CV-134 (CDL), 2023 WL 167089, at *2 (M.D. Ga. Jan. 12, 2023). Here, however, CoreCivic was given no indication that Plaintiffs planned to supplement their experts' reports until they were submitted on July 26, 2023, and, as demonstrated above, the "supplemental" reports are not based on new information that was previously unavailable to the experts.

### 3. The untimely reports are neither substantially justified nor harmless.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("[A] supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed."); *Cook v. Royal Caribbean Cruises*, No. 11-20723-CIV, 2012 WL 2319089, at *2–*3 (S.D. Fla. June 15, 2012) (refusing to allow supplemental reports after discovery cut-off where the information relied upon was available to the experts prior to the cut-off).

Rule 37(c)(1) "gives teeth" to the requirement that a party timely disclose its expert and the expert's report under Rule 26(a)(2)(B) "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The burden to show justification or harmlessness is on the party seeking to avoid sanctions. *Id*. at 1107. If a court concludes that a discovery deadline violation is not substantially justified or harmless, it has "particularly wide latitude" in its discretion to "issue sanctions under Rule 37(c)(1)." *Id*. at 1106. Rule 37(c) is intended to provide a "self-executing," "automatic sanction provid[ing] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence … at a trial." Fed. R. Civ. P. 37, advisory committee note (1993). Because the rule incorporates the sanctions of Rule 37(b)(2)(A)(i)-(vi), a court may exclude entirely testimony that is based on untimely discovery. *See* Fed. R. Civ. P. 37(c)(1)(C); Fed. R. Ci. P. 37(b)(2)(A)(ii); *Yeti by Molly*, 259 F.3d at 1106 (citing *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001)).

Plaintiffs were not substantially justified in ignoring the expert discovery deadline and waiting more than a year beyond its expiration to produce supplemental reports based on

information available to the experts before the close of expert discovery, especially where they only did so after CoreCivic pointed out the flaws in Dr. Schwartz's report. Plaintiffs' eleventh-hour attempt to supplement their expert reports with information pertaining to their remaining claims is not harmless because allowing the supplemental reports would further delay trial and increase costs, as CoreCivic must be allowed to obtain discovery as to the new opinions—especially as to Dr. Stewart's new opinions, which seek to resurrect claims that CoreCivic was lead to believe Plaintiffs had abandoned, as discussed more fully below. Additionally, CoreCivic's experts would need to be permitted to review the new reports and offer any new opinions they may have based on the new opinions contained therein. Finally, CoreCivic would need the opportunity to depose the experts and Plaintiffs themselves (to the extent Dr. Stewart is permitted to testify as to his new opinions regarding Plaintiffs' alleged psychological and psychiatric harm). All of this would create significant delay in the disposition of the case, increase costs, and thwart the Court's existing trial date.

> **B.   Dr. Stewart's Supplemental Expert Report Should Further Be Stricken and Any Testimony Relying on the Opinions in his Supplemental Report Should Be Excluded Because Plaintiffs Abandoned Their Claim for Emotional Distress Damages.**
>
> **1.   Plaintiffs' alleged trauma- and stressor-related disorders are just rebranded emotional distress.**

On May 10, 2022, counsel for the parties appeared at a Motions Hearing, where—in response to the Court's question as to the damages available on Plaintiffs' TVPA claim—Plaintiffs' counsel unequivocally confirmed Plaintiffs are not seeking emotional distress damages in this case. (Dkt. 202 at 4:11–5:22.) As a result of that confirmation, counsel for CoreCivic withdrew CoreCivic's request for Plaintiffs' social media and immigration records, and the Court terminated Defendant's Motion to Compel as to those items. (Dkt. 202 at 5:5–20.)

However, Dr. Stewart's July 26, 2023, supplemental report describes "serious psychological and psychiatric harm" to Urbina-Rojas and diagnoses him with "Unspecified Trauma- and Stressor-related Disorder" based on "symptoms characteristic of a trauma- and stressor-related disorder that cause clinically significant distress … but do not meet the full criteria for any of the disorders in the trauma- or stressor-related diagnostic class." (Dkt. 318-4 at ¶¶ 6, 17.) Dr. Stewart identifies similar "psychological and psychiatric harm" to Hill-Barrientos and Bermudez-Gutierrez and makes the same diagnosis for each as he did for Urbina-Rojas: "Unspecified Trauma- and Stressor-related Disorder." (*Id.* at ¶¶ 18, 32–33, 42.)

Although Dr. Stewart carefully avoids using the words "emotional distress" in his supplemental report, that is exactly what he opines each Plaintiff suffers from. Giving Plaintiffs' alleged emotional distress another name—even one that attempts to incorporate terms from the DSM-5—does not change its nature. (Dkt. 318-4 at ¶ 17 n.7.) In *J.C. v. Board of Regents of University System of Georgia*, the court declined a similar rebranding of emotional distress, noting that "some courts have distinguished between medical expenses for physical injuries and expenses related to emotional or psychological harms, finding that the latter are merely emotional distress damages under another name." No. 1:20-CV-4445-JPB, 2023 WL 4938054, at *5 (N.D. Ga. Aug. 1, 2023); *see also Doe ex rel. Doe v. City of Pawtucket,* 633 F. Supp. 3d 583, 591 (D.R.I. 2022) (holding that emotional distress damages are precluded under Title IX and that "psychological damage, post traumatic syndrome, and loss of enjoyment" are merely "varying forms or descriptions of emotional distress"); *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35,* No. 3:20-CV-11, 2023 WL 348320, at *4 (S.D. Ill. Jan. 20, 2023) (rejecting plaintiffs' argument that "mental, emotional, psychological injuries" were different from emotional damages, which are not permitted under the Rehabilitation Act and the ADA).

### 2. Plaintiffs demonstrated a clear intent to abandon their claim for emotional distress damages.

Plaintiffs have withdrawn and abandoned their claim for emotional distress damages, and the Court should not permit them to now pursue the same claim through clever rebranding. *See Mitchell v. Siersma*, No. 14-CV-6069G, 2017 WL 2991425, at *3 (W.D.N.Y. July 14, 2017) (holding that that defendants were entitled to rely on representations by plaintiff that he would only seek "garden variety emotional distress" and precluding plaintiff from offering evidence or testimony that was "inconsistent with those representations," such as evidence regarding "mental or emotional disorders, severe emotional distress," etc.).

Plaintiffs' counsel stated on the record that "plaintiffs agree that they are not seeking emotional distress damages," indicating a clear intent to abandon their claim for such damages. (Dkt. 202 at 4:20–21.) The court then affirmed Plaintiffs' intent by confirming "then that's established for the case that plaintiffs are not seeking emotional distress damages" and confirmed with CoreCivic's counsel that CoreCivic was withdrawing its request for Plaintiffs' social media and immigration information. (*Id.* at 5:5–23.) These statements are sufficient for the Court to treat Plaintiffs' claim for emotional distress damages as abandoned. *See Harrod v. Express Scripts, Inc.,* No. 8:17-CV-1607-T-30TGW, 2017 WL 11615769, at *2 (M.D. Fla. Nov. 27, 2017) (dismissing with prejudice claims the plaintiff "stated she was abandoning"); *Robinson v. Cooper Tire & Rubber Co.*, No. 1:13-CV-02889-SCJ, 2014 WL 12013435, at *3 (N.D. Ga. Mar. 19, 2014) (rejecting defendant's arguments that the plaintiff abandoned her claims against certain defendants in her deposition where the testimony "[did] not definitely establish and intent to abandon the claims") (citing *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 32 (D.D.C. 2007) (recognizing that a claim may be abandoned by "an express and explicit indication that the plaintiff intended to leave one or more … claims by the wayside in the course of litigation"));

*Gailes v. Marengo Cnty. Sheriff's Dept.*, 916 F. Supp. 2d 1238, 1244 (S.D. Ala. 2013) (noting that the court "will of course treat … a claim as abandoned if the plaintiff has clearly manifested an intention to abandon it, as by express withdrawal or by a statement she is unopposed to the defendant's motion"); *Ramirez v. Michelin N. Am., Inc.*, No. C.A. C-07-228, 2007 WL 2126635, at *3–*5 (S.D. Tex. July 19, 2007) (recognizing "abandonment by deposition" where the plaintiffs testified in their depositions that one of the defendants did nothing wrong) (citing cases). The Court should therefore strike Dr. Stewart's supplemental report and exclude any testimony as to the opinions stated in that report.

### 3. The Court should exclude Dr. Stewart's opinions regarding Plaintiffs' rebranded emotional distress claims.

Rule 702 allows an expert to testify in the form of an opinion if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a); *see also Adams*, 760 F.3d at 1328. Plaintiffs' alleged emotional distress, however—whether referred to as "emotional distress," "psychological and psychiatric harm," or "Unspecified Trauma- and Stressor-related Disorder"—is no longer at issue. (*See* Dkt. 202 at 4:11–5:22.) The Eleventh Circuit has recognized that even "a reliable opinion expressed by a genuinely qualified expert may not help the jury if it does not pertain to a fact at issue in the case." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003). The Rule 702 requirement that expert testimony assist the trier of fact in understanding the evidence or determining a fact in issue is a relevancy issue. *United States v. Castaneda*, 997 F.3d 1318, 1330 (11th Cir. 2021). There must be a "'valid scientific connection to the pertinent inquiry'" for the expert testimony to be admissible. *Id.* at 1330–31. Dr. Stewart's "supplemental" report addressing Plaintiffs' emotional distress, which is no longer at issue, and any testimony related to it will only serve to confuse the issues, mislead the jury, and waste time

because the inquiry is no longer relevant to Plaintiffs' claims. *See* Fed. R. Evid. 401, 402, 403. The Court should exclude such testimony.

If the Court allows Plaintiffs to present testimony on these claims, then it should reopen discovery to allow CoreCivic to pursue discovery on them, including but not limited to the social media and immigration information that CoreCivic withdrew its requests for based on Plaintiffs' concession that they were not seeking damages for emotional distress. (Dkt. 202 at 5 ¶¶ 5–20.) CoreCivic must be allowed to prepare its defense to such claims by discovering information related to other potential sources of emotional, psychological, and/or psychiatric trauma or distress. Doing so would obviously delay the trial and resolution of this matter. This can be avoided, however, by striking Dr. Stewart's improper supplemental report and excluding any testimony as to the opinions stated in it at trial.

## II.  CONCLUSION

For the reasons stated above, the Court should strike the untimely and improper "supplemental" reports of Dr. Schwartz and Dr. Stewart and exclude any testimony as to the opinions stated in those reports at trial.

Dated: August 29, 2023                    Respectfully submitted,

                                                   s/ Jacob B. Lee
Daniel P. Struck *(pro hac vice)*
   Lead Counsel
Rachel Love *(pro hac vice)*
Nicholas D. Acedo *(pro hac vice)*
Ashlee B. Hesman *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
Eden G. Cohen *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
ecohen@strucklove.com

Jacob D. Massee (GA Bar No. 551890)
Amelia Stevens (GA Bar No. 758771)
OLIVER MANER LLP
PO Box 10186
Savannah, Georgia 31412
Phone: (912) 236-3311
Fax: (912) 236-8725
jmassee@olivermaner.com
astevens@olivermaner.com

Attorneys for Defendant CoreCivic, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Priyanka Bhatt | priyanka@projectsouth.org |
| Meredith B. Stewart | meredith.stewart@splcenter.org |
| Rebecca M. Cassler | rebecca.cassler@splcenter.org |
| Sharada Jambulpati | sharada.jambulpati@splcenter.org |
| Azadeh Shahshahani | azadeh@projectsouth.org |
| Jessica Hasen | jhasen@perkinscoie.com |
| Emily B. Cooper | ecooper@perkinscoie.com |
| Alan B. Howard | ahoward@perkinscoie.com |
| John H. Gray | jhgray@perkinscoie.com |
| Jessica L. Everett-Garcia | jeverettgarcia@perkinscoie.com |
| Gwyn Newsom | gwyn@gnewsomlaw.com |
| Sarah M. Rich | sarah.rich@splcenter.org |
| Christian W. Marcelo | cmarcelo@perkinscoie.com |
| Jacob D. Massee | jmassee@olivermaner.com |
| Amelia Stevens | astevens@olivermaner.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

                                              s/   Jacob B. Lee