**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| **WILHEN HILL BARRIENTOS, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**CORECIVIC, INC.,**<br><br>**Defendant.** | **Civil Action No.**<br>**4:18-cv-00070-CDL** |

**<u>PRETRIAL ORDER - JURY</u>**

This action is scheduled for jury trial to begin October 16, 2023, 8:30 A.M., at the United

States Courthouse, Columbus, Georgia.  The following constitutes a pretrial order entered in the

above-styled case after conference with counsel for the parties:

(1)    (a) The names, addresses, and telephone numbers of all attorneys who personally

appeared at pretrial and who will conduct the trial are as follows:

**<u>Plaintiffs</u>**:

Meredith B. Stewart
SOUTHERN POVERTY LAW
CENTER
201 Saint Charles Avenue
Ste. 2000
New Orleans, LA 70170
Tel.: (504) 486-8982

Rebecca M. Cassler
SOUTHERN POVERTY LAW
CENTER
1101 17th Street, NW
Ste. 705
Washington, DC 20036

Tel.: (404) 521-6700

Sharada Jambulapati
SOUTHERN POVERTY LAW
CENTER
150 East Ponce de Leon Avenue
Ste. 340
Decatur, GA 30030
Tel.: (404) 521-6700

Sarah Rich
SOUTHERN POVERTY LAW
CENTER
150 East Ponce de Leon Avenue
Ste. 340

1

Decatur, GA 30030
Tel.: (404) 521-6700

Alan B. Howard
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036
Tel.: (212) 262-6900

Emily Cooper
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036
Tel.: (212) 262-6900

Christian W. Marcelo
PERKINS COIE LLP
1201 Third Avenue
Ste. 4900
Seattle, Washington 98101
Tel.: (206) 359-8000

Gwyn Newsom
P.O. Box 629
Columbus, GA 31902
Tel.: (706) 566-4317

**Defendant**

Daniel P. Struck
STRUCK LOVE BOJANOWSKI
&ACEDO, PLC
3100 West Ray Road
Ste. 300
Chandler, Arizona 85226
Tel.: (480) 420-1600

Jacob B. Lee
STRUCK LOVE BOJANOWSKI
&ACEDO, PLC
3100 West Ray Road
Ste. 300
Chandler, Arizona 85226
Tel.: (480) 420-1600

Jacob D. Massee
OLIVER MANER LLP
218 W. State Street
Savannah, GA 31401
Tel.: (912) 236-3311

Amelia C. Stevens
OLIVER MANER LLP
218 W. State Street
Savannah, GA 31401
Tel.: (912) 236-3311

(b) The names, addresses, and telephone numbers of all nonparty persons including attorneys who have a fixed or contingent financial interest in this case are as follows: None.

(2)    (a) Companion cases pending in this and other federal / state courts are: None.

2

(b) Possible derivative claims not now the subject of pending litigation: None.

(3)    The estimated time required for trial is:

Plaintiffs propose 10 business days to account for additional time needed for witness interpretation. Defendant proposes 6–7 business days.

**BY THE COURT: The parties should plan for the presentation of all evidence to be completed by Friday, October 20, 2023.**

(4)    The parties agree that the court has jurisdiction of the parties and the subject matter pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1367; and 18 U.S.C. §§ 1589(a)-(b), 1594(a), and 1595(a).

(5)    The jury will be qualified as to relationship with the following:

Wilhen Hill Barrientos (Plaintiff), Gonzalo Bermudez Gutiérrez (Plaintiff), Keysler Ramón Urbina Rojas (Plaintiff), Margarito Velazquez Galicia (former Plaintiff), Shoaib Ahmed (former Plaintiff), all employees and contractors of CoreCivic, Inc. (Defendant), all employees and contractors of Trinity Services Group, Inc. (CoreCivic's food service provider at Stewart Detention Center), all employees and contractors of the Southern Poverty Law Center (Counsel for Plaintiffs), all employees and contractors of Project South (Counsel for Plaintiffs), all employees and contractors of Perkins Coie, LLP (Counsel for Plaintiffs), Gwyn Newsom (Counsel for Plaintiffs), all employees and contractors of Struck, Love, Bojanowski& Acedo, PLC (Counsel for Defendant), all employees and contractors of Oliver Maner LLP (Counsel for Defendant), and current and former Plaintiffs' family members, all potential witnesses, and members of the jury panel.

(6)    All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery except for good cause shown. The parties,

however, shall be permitted by agreement to take depositions of any person(s) for the preservation of evidence or for use at trial. **BY THE COURT: Depositions may only be used at trial if permitted by Federal Rule of Civil Procedure 32.**

(7)     Unless otherwise noted, the names of the parties as shown in the caption to this order are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

(8)     The following is the Plaintiffs' brief and succinct outline of the case and contentions:

Plaintiffs Wilhen Hill Barrientos, Gonzalo Bermudez Gutiérrez and Keysler Ramón Urbina Rojas ("Plaintiffs") were detained at Stewart Detention Center ("SDC") in Lumpkin, GA between 2015 and 2020. SDC is owned and operated by CoreCivic, Inc., a for-profit, private prison company, pursuant to contracts with U.S. Immigration and Customs Enforcement ("ICE") and Stewart County, to house individuals awaiting resolution of their civil immigration proceedings. While at SDC, Plaintiffs worked in CoreCivic's so-called Voluntary Work Program ("Work Program") in the kitchen preparing meals for the detained population, washing dishes, and cleaning the kitchen and cafeteria. On most days, CoreCivic paid the Plaintiffs $4 per day and, on occasion, CoreCivic paid as little as $1 per day and as much as $8 per day. CoreCivic financially benefitted from the Plaintiffs' cheap labor, as Plaintiffs performed tasks essential to SDC's operation, and to the maintenance of CoreCivic's contract with ICE, that would otherwise have been performed by full-time employees entitled to market and contractual wages and benefits.

CoreCivic, aware of the financial benefits of a cheap, detained workforce, forced and attempted to force Plaintiffs to join and remain in the Work Program. CoreCivic deprived Plaintiffs of food, personal hygiene items, clothes, and contact with loved ones, so that Plaintiffs had to work

to earn money to buy those necessities and phone time at the SDC commissary. CoreCivic also dangled access to those necessities, such as extra food, as well as safer and private housing, before Plaintiffs as "incentives" for working in the kitchen. If Plaintiffs did not work, CoreCivic, directly and through its agent, SDC food-service provider Trinity Service Group, Inc., instituted or threatened to institute discipline, including segregation and criminal prosecution, and other harmful consequences, such as transfer to less safe and private housing, loss of basic necessities (and the so-called "incentives"), and/or adverse recommendations in Plaintiffs' immigration cases. Plaintiffs labored in the Work Program to avoid deprivation of food and other basic necessities, segregation, housing transfers, and adverse legal consequences.

Plaintiffs contend that CoreCivic, in violation of the Trafficking Victims Protection Act ("TVPA"), knowingly obtained and attempted to obtain labor or services from Plaintiffs through (1) threatened or actual physical restraint; (2) serious harm or threats of harm, both physical and non-physical, including psychological harm; (3) by means of abuse or threatened abuse of legal process; and/or (4) "[a] scheme, plan or pattern that [Defendant] intended to cause... [Plaintiffs] to believe... that if, … [Plaintiffs] did not perform such labor or services,… [they] would suffer serious harm or physical restraint." Plaintiffs also contend that CoreCivic knowingly benefitted, and attempted to benefit, from participating in a venture that engages in the same conduct. Plaintiffs assert that CoreCivic materially and unjustly reduced its labor costs and expenses, and increased its corporate profits, by obtaining Plaintiffs' coerced labor in a manner amounting to unjust enrichment under Georgia law.

Plaintiffs have suffered concrete harm and injury, as a direct and proximate result of CoreCivic's forced labor and unjust enrichment. Plaintiffs seek monetary damages, including (1) the full amount of their losses as a result of CoreCivic's forced labor; (2) disgorgement of

CoreCivic's profits at SDC that it unjustly obtained from Plaintiffs' coerced labor; and (3) punitive damages assessed against CoreCivic.

(9)    The following is the defendant's brief and succinct outline of the case and contentions:

Defendant, CoreCivic, Inc. ("CoreCivic"), denies all liability and all allegations of wrongdoing. CoreCivic owns and operates Stewart Detention Center ("SDC") pursuant to a detention services agreement with U.S. Immigration and Customs Enforcement ("ICE").[1] ICE requires CoreCivic to follow ICE's Performance-Based National Detention Standards ("PBNDS"), which require CoreCivic to provide a Voluntary Work Program ("VWP") to detainees. The purpose of the VWP is to reduce the negative impact of confinement through decreased idleness, improved morale, and fewer disciplinary incidents by giving detainees a chance to be active, break up their day, leave their units, gain skills and training, and earn money to purchase luxury items in the commissary. Detainees who participate in the VWP prepare and serve food in the kitchen, clean and fold laundry, and perform other housekeeping/cleaning tasks in their housing units and throughout the facility. Consistent with the requirements of the PBNDS, CoreCivic pays detainees who participate in the VWP at least $1 per day, although it pays as much as $4 per day to detainees participating in certain assignments such as the kitchen.

In briefing on CoreCivic's appeal of the order denying its Motion to Dismiss, the United States took the position that operation of the VWP pursuant to the requirements of the PBNDS would not violate the TVPA. CoreCivic operated the VWP in accordance with the PBNDS at all relevant times. Specifically, participation in the VWP is and always has been purely voluntary;

---

[1] ICE entered into an Intergovernmental Service Agreement ("IGSA") with Stewart County, GA, which in turn entered into a Management Agreement with CoreCivic to house detainees at SDC pursuant to the terms of the IGSA.

most detainees at SDC (i.e., approximately 80%) chose not to participate in the VWP from 2008 to 2020.

CoreCivic did not force or coerce Plaintiffs to participate in the VWP at any time. To the contrary, CoreCivic provided Plaintiffs with food, clothing, and hygiene supplies as required by the PBNDS, including replacements when necessary. Plaintiffs were able to purchase additional or different food, clothing, and hygiene supplies through the facility commissary, but they were not required to do so, as CoreCivic provided the items listed above free of charge. CoreCivic has not contracted for telephone services at SDC since June 2017, when Talton Communications, which contracts directly with ICE, became the exclusive provider of detainee telephone services at SDC such that CoreCivic has no control over applicable rates. Prior to June 2017, CoreCivic contracted with Securus for detainee telephone services; all rates charged were within the caps set by the FCC.

CoreCivic's disciplinary policy in use at SDC during the relevant times, including the lists of violations and possible sanctions, was taken directly from the PBNDS. Plaintiffs were made aware of the policy, violations, and possible sanctions through multiple means, including but not limited to the Detainee Handbook Supplement each one received when they arrived at SDC and Policy 15-100, Detainee Discipline, which was available for detainee review through the law library. Plaintiffs were not punished for refusing to work. Plaintiffs, like all detainees who volunteered to participate in the VWP, could resign or decide not to work at any time; a detainee who consistently failed to work when scheduled, or whose work was unsatisfactory, could be removed from the VWP, but that was the extent of any "discipline" that would be imposed on such a detainee. Although a detainee who encouraged others not to work or to participate in a work stoppage could receive discipline for his actions, including segregation,

7

Plaintiffs were not disciplined simply for choosing not to work or threatened with discipline to coerce them into working. At times, CoreCivic offered incentives to detainees who participated in the VWP. ICE approved certain incentives for working in the VWP.

CoreCivic did not violate the Trafficking Victims Protection Act ("TVPA") and was not unjustly enriched by offering the VWP at SDC.

(10)    The issues for determination by the jury are as follows:

**<u>Plaintiffs</u>**:

(a) Whether CoreCivic knowingly obtained, or attempted to obtain, the labor or services of Plaintiffs by means of any one of, or any combination of, the following means:

   (1) physical restraint or threats of physical restraint;
   (2) serious harm or threats of serious harm;
   (3) abuse or threatened abuse of law or legal process; or
   (4) a scheme, plan or pattern that CoreCivic intended to cause Plaintiffs to believe that, if Plaintiffs did not perform such labor or services, they would suffer harm or physical restraint

(b) Whether CoreCivic knowingly benefitted, financially or by receiving anything of value, or attempted to benefit, from participation in a venture that obtained or attempted to obtain the labor or services of Plaintiffs by any of the means in 10(a)(1)-(4), knowing or in reckless disregard of the fact that the venture has engaged in obtaining or attempting to obtain labor or services by any such means.

(c) Whether, in the absence of a legal contract, a benefit was conferred upon CoreCivic by Plaintiffs that CoreCivic equitably ought to return or compensate for.

(d) Whether Plaintiffs are entitled to compensatory damages, disgorgement, and/or punitive damages, and if so in what amounts.

**<u>Defendant</u>:**

(a) Whether CoreCivic violated the TVPA by knowingly obtaining or attempting to obtain the labor or services of Plaintiffs through one or more of the means outlined in 18 U.S.C. § 1589(a);

(b) Whether CoreCivic violated the TVPA by knowingly benefitting or attempting to benefit from participation in a venture that engaged in obtaining the labor or services of Plaintiffs through one or more of the means outlined in 18 U.S.C. § 1589(a).

(c) Whether CoreCivic was unjustly enriched by Plaintiffs' participation in the VWP.

(d) Whether Plaintiffs are entitled to compensatory and/or punitive damages, and if so, how much.

(11)   If a tort action, specifications of negligence, including applicable code sections, are as follows: Not applicable.

(12)   If a contract action, the terms of the contract are as follows (or, the contract is attached as an exhibit to this order): Not applicable.

(13)   The types of damages and the applicable measure of those damages are as follows:

Plaintiffs' Damages and Applicable Measures[2]:

Plaintiffs seek damages for their Trafficking Victims Protection Act ("TVPA") claims, 18 U.S.C. §§ 1589(a)-(b), 1594(a), and 1595(a), and for unjust enrichment pursuant to Georgia common law.

A.   Forced Labor (18 U.S.C. §§ 1589(a)-(b), 1594(a), 1595(a))

Plaintiffs seek the full amount of their losses and punitive damages for CoreCivic's violations of the TVPA. CoreCivic obtained or attempted to obtain Plaintiffs' labor through threatened or actual physical restraint, serious harm, abuse of legal process, and/or a scheme involving any or all of those methods of coercion. 18 U.S.C. §§ 1589(a), 1594(a). CoreCivic also knowingly benefitted financially, or attempted to benefit, from participating in a venture that CoreCivic knew or should have known forced Plaintiffs to work. §§ 1589(b), 1594(a).

---

[2] Since the Plaintiffs are proceeding to trial on their individual TVPA claims following the denial of class certification, they do not seek declaratory or injunctive relief. However, Plaintiffs do not waive (1) the right to injunctive or declaratory relief as proposed class representatives, (2) the rights of any putative class members to such relief, or (3) the right to appeal the denial of class certification post-judgment. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (holding that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied"); *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 340 (1980) (similar).

Accordingly, Plaintiffs are entitled to the full amount of their actual, past or future losses, which includes, but is not limited to, the value of their labor. §§ 1593(b)(3), 1595(a); *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1326–29 (S.D. Ga. 2019); *Lagasan v. Al-Ghasel*, 92 F. Supp. 3d 445, 457 (E.D. Va. 2015) (citing § 1593(b)(3)).

The value of Plaintiffs' labor is based on a comparison of market and contractual wages and benefits that CoreCivic would have paid non-detained individuals to perform the same labor. Plaintiffs will present evidence of the dates and lengths of their shifts worked and the wages and benefits that CoreCivic would have been legally required to pay an employee for the same work, and will argue, based on this evidence, that the value of their labor is as follows:

Mr. Hill Barrientos –$36,002.00;

Mr. Urbina Ramos –$32,323.00; and

Mr. Bermudez Gutiérrez –$21,240.00.

*See* ECF No. 318-3 (S. Schwartz Supp. Expert Rep.) (calculating the individual Plaintiffs' damages). CoreCivic's argument, *infra*, that there is insufficient evidence to demonstrate the Plaintiffs' individual damages under this theory without Dr. Schwartz's supplemental report is inaccurate and misleadingly suggests that Dr. Schwartz's supplemental report, which was timely filed by operation of Rule 26(e)(2), injects new issues into the case. The underlying data and methodology Dr. Schwartz relied upon to make these Plaintiff-specific calculations is either listed on Plaintiffs' exhibit list and/or encompassed within Dr. Schwartz's original report.[3] There is more

---

[3] For example, in his supplemental report, Dr. Schwartz relies upon the following data:
- Plaintiffs' prior testimony regarding their shift lengths, ECF No. 318-3 at 9 & n.3-5, which Plaintiffs can testify to at trial;
- A list of dates each Plaintiff worked and the amount of pay they received per date, ECF No. 318-3 at 53-72, which also exists in documents CoreCivic produced and which Plaintiffs included on their Exhibit List (Pls.' Exs. 68, 69, 154);

than enough evidence in the record for Plaintiffs to put this damages theory to the jury. Excluding

Dr. Schwartz's supplemental report in a manner that disallows his testimony on the ultimate figures

will merely extend the length of the trial by complicating Plaintiffs' presentation of this evidence

rather than presenting it in a streamlined way through one witness. Finally, whether the data points

that Dr. Schwartz used to establish a comparison wage for purposes of calculating the value of the

Plaintiffs' labor, i.e., health benefits and "full time" status, are appropriate metrics is a question

for the jury, not, as Defendant asserts *infra*, a basis to exclude Dr. Schwartz or his opinions.

Plaintiffs are also entitled to punitive damages under the TVPA because CoreCivic acted

with malice or reckless indifference to the rights of the Plaintiffs to be free from forced labor.

"Punitive damages are generally appropriate under the [TVPA] civil remedy provision because

[the TVPA] creates a cause of action for tortious conduct that is ordinarily intentional and

outrageous." *Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1329 (S.D. Ga. 2019) (citation omitted);

*Lagasan v.Al-Ghasel*, 92 F. Supp. 3d 445, 458 (E.D. Va. 2015) ("Courts routinely hold that

trafficking in violation of the [TVPA] is a particularly depraved act that warrants punitive

damages."); *David v. Signal Int'l, LLC*, No. CV 13-6219, 2015 WL 14018908, at *1 (E.D. La. Jan.

28, 2015) (ruling that punitive damages are available under the TVPA and noting that "every court

to consider the issue has held that punitive damages are available").

---

- Information about comparison wages and benefits during the periods when Plaintiffs worked at SDC, ECF No. 318-3 at 41-44, which was pulled directly from Dr. Schwartz's opening report, ECF No. 213-60 at 98-99, 115, 131;
- Dr. Schwartz's methodology for determining damages for the individual Plaintiff using these data points, *see, e.g.* ECF No. 318-3 at 45-52, which involves simple arithmetic (multiplying applicable comparison wages and benefits by hours worked) and aligns with the methodology he announced in his opening report, ECF No. 213-60 at 18-19 (explaining that Dr. Schwartz's methodology in his opening report involved multiplying estimated hours worked by the applicable comparison compensation).

11

B.  Unjust Enrichment

Plaintiffs are also seeking damages for unjust enrichment under Georgia law. Here, the damages for unjust enrichment are disgorgement of profits, which allow a plaintiff to recover the amount the defendant wrongfully gained at the plaintiff's expense, "even if that gain exceeds the plaintiff's provable loss." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1368 (11th Cir. 2021) (citing *Restatement (Third) of Restitution and Unjust Enrichment* § 3 cmt. a (2011)); *Beranger v. Harris*, No. 1:18-CV-5054-CAP, 2021 WL 4254940, at \*5 (N.D. Ga. Feb. 12, 2021) (applying Georgia law and noting that a "district court has broad equity powers to order the disgorgement of ill-gotten gains" (citation and internal quotation marks omitted)). Plaintiffs seek disgorgement of profits that CoreCivic gained from Plaintiffs' coerced labor in an amount to be determined at trial. Because Defendant's gain may exceed Plaintiffs' losses, the jury could determine that additional profits, beyond or different from the value of Plaintiffs' labor, as calculated for the TVPA damages, should be disgorged, in which case, those amounts would not constitute a "double recovery" as Defendant claims *infra*, and would be a damages award separate from the TVPA damages.

Defendant's Damages and Applicable Measures

The damages available to Plaintiffs should they prevail on liability are the same for both claims. That is, under both the TVPA and unjust enrichment claims, the applicable measure of damages is the value of the services provided by Plaintiffs to CoreCivic, which Plaintiffs' expert agrees "derives from the difference between the wages paid to detainees … and the wages … that it would have paid to employees fired to perform those same tasks."[4] (Dkt. 304 at 5; Dkt. 304-1 at

---

[4] Dr. Schwartz also calculated the amounts CoreCivic would have to pay a regular employee for health benefits. (Dkt. 213-60 at ¶¶ 12, 73–74, 80, 83.) As demonstrated in CoreCivic's Motion to Exclude Steven Schwartz's Classwide Damages Model ("Motion to Exclude Dr. Schwartz"),

¶¶ 11-12.) *See Arreguin v. Sanchez*, 398 F. Supp. 3d 1314, 1326 (S.D. Ga. 2019) (TVPA damages); *Morris v. Britt*, 620 S.E.2d 422, 424 (Ga. App. 2005) (unjust enrichment damages). These amounts are for the jury to decide, although Plaintiffs lack evidence that would allow the jury to do so, as their damages expert, Dr. Schwartz, did not address Plaintiffs' individual claims in his original report; his "supplemental" report attempting to do so is untimely and should be stricken from the record, and he should be precluded from offering testimony as to those amounts at trial. (*See* Dkt. 304 at 5, 11, 14; Dkt. 304-1 at ¶¶ 11-13; Dkt. 328 at 7-9.)

Plaintiffs are not entitled to recover compensatory damages on both their TVPA claims and their unjust enrichment claims, as doing so would result in double recovery for the same harm, which the Court must not permit. *See Arreguin*, 398 F. Supp. 3d at 1326 (citing *Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1164 (D. Kan. 2018), for the proposition that "[P]emitting plaintiff to recover the same bundle of damages more than once under various overlapping legal theories would permit multiple recoveries. This, of course, is impermissible.") (alterations in original).

Nor are Plaintiffs entitled to disgorgement of profits on their unjust enrichment claims for the reasons stated in CoreCivic's Motion for Partial Summary Judgment and Reply in support of the Motion. (*See* Dkt. 304 at 11-14; Dkt. 328 at 9-10.) Even if disgorgement were available, however, Plaintiffs have no evidence from which the jury could determine what portion of

---

however, Dr. Schwartz incorrectly assumed that: (1) Plaintiffs did not receive health benefits, and (2) CoreCivic would have to hire one hypothetical replacement employee for each VWP participant and would have to pay each such employee health benefits even though they would only be working the same part-time schedule as the detainee they replaced. (Dkt. 248, 277.) The Court did not rule on the merits of the Motion to Exclude Dr. Schwartz but instead terminated it as moot because it denied Plaintiffs' Motion for Class Certification. (Dkt. 285.) For the reasons stated in the Motion to Exclude Dr. Schwartz and Reply, the Court should rule that health benefits for regular employees are not part of the amount to be used to calculate the value Plaintiffs conferred on CoreCivic. (Dkt. 248, 277.)

CoreCivic's profits resulted from their individual participation in the VWP, as neither Dr. Schwartz's original report nor his untimely "supplemental" report address this. (Id.)

Punitive damages are only available if: (1) Plaintiffs prevail on liability on their TVPA claims, and (2) Plaintiffs demonstrate that CoreCivic acted with the requisite intent. *See Arreguin*, 398 F. Supp. 3d at 1329. The parties appear to agree that punitive damages are not available on the unjust enrichment claim.

**BY THE COURT: In its summary judgment order, the Court ruled that the measure of damages for the unjust enrichment claim is "the reasonable value of the benefit Plaintiffs conferred on CoreCivic."  *Barrientos v. CoreCivic, Inc.*, No. 4:18-CV-70 (CDL), 2023 WL 5538164, at \*2 (M.D. Ga. Aug. 28, 2023).  At the pretrial conference, Plaintiffs' counsel stated that this value included costs in addition to labor costs.  The Court ordered Plaintiffs to file a brief that sets out a computation of damages (including the evidentiary basis for the computation) for their unjust enrichment claim; that brief is due by September 8, 2023.  Any response is due by September 15, 2023.**

**BY THE COURT: At the pretrial conference, the Court denied Defendant's motion to strike the testimony of Dr. Schwartz; he may offer opinions disclosed in his supplemental report, and Defendant may depose him before trial.**

(14)    All material undisputed facts established by the pleadings, depositions, or admissions of the parties are attached hereto as **Exhibit A**, are signed by counsel, and will be submitted to the jury at the beginning of trial [ALL PARTIES MUST STIPULATE TO THESE FACTS - otherwise there are NO undisputed facts].

(15)    Pursuant to the court's usual practice, pleadings will not be submitted to the jury.

14

(16)    Special authorities relied upon by defendant relating to peculiar legal questions are as follows:  Not Applicable.

(17)    The following are lists of witnesses the:

(a) Plaintiffs <u>will</u> have present at trial:

     i.     Wilhen Hill Barrientos
    ii.     Keysler Ramón Urbina Rojas
   iii.     Gonzalo Bermudez Gutiérrez
   iv.     Leonora Renda
     v.     Dr. Dora Schriro
   vi.     Dr. Steven Schwartz
  vii.     Dr. Pablo Stewart

(b) Plaintiffs <u>may</u> have present at trial:

     i.     Droudred Blackmon (by designation)
    ii.     Calvin Blue (by designation)
   iii.     Bethany Brazier
   iv.     Marquita Crawford
     v.     Juliette Drew
   vi.     Harrell Gray (by designation)
  vii.     Freddie Hood
 viii.     Susan Huffman
   ix.     Terrance Lane
     x.     Matthew Moye
   xi.     Charlie Peterson (by designation)
  xii.     Troy Pollock
 xiii.     Michael Swinton
 xiv.     Russell Washburn

Plaintiffs may also present any witness identified by Defendants, any witness that must be called because of any authentication of records issue, and any witness necessary for impeachment or rebuttal. Witnesses may be presented live or remotely, as permitted by the Court.

**BY THE COURT: Defendant consents to the presentation of the testimony of Dr. Pablo Stewart remotely.**

(c) Defendant <u>will</u> have present at trial:

     i.     Russell Washburn

      ii.    Jason Ellis

     iii.    Joseph Penn, M.D.

(d) Defendant <u>may</u> have present at trial:

     iv.    Charlie Peterson

      v.    Troy Pollock

     vi.    Terrence Lane

    vii.    Freddie Hood

   viii.    Maggie Giunta

Defendant may also present any witness identified by Plaintiffs, any witness that must be called because of any authentication of records issue, and any witness necessary for impeachment or rebuttal. Witnesses may be presented live or remotely, as permitted by the Court.

Opposing counsel may rely on representation by the designated party that it will have a witness present unless notice to the contrary is given in sufficient time prior to trial to allow the other party to subpoena the witness or obtain this testimony by other means. Counsel should be prepared to state at the pretrial conference objections to any witness listed.

**BY THE COURT: The party calling a witness is responsible for assuring that a qualified translator is available for any witness who needs translation services. Furthermore, to the extent that Plaintiffs need a translator during all or part of the trial, Plalintiffs' counsel shall assure that a qualified translator is available to provide such translation.**

(18)    Attached hereto as **Exhibit B** is a list of all depositions that each party intends to introduce at trial. If parties do not intend to read the entire deposition into the record, page and line designations and counter designations should be included.

(19)    Attached hereto as **Exhibit C** is a list of all exhibits that each party intends to tender into evidence at trial. (Please designate with an asterisk (\*) those exhibits to which an authenticity objection exists.)

(20)    Attached hereto as **Exhibit D** is the form of all possible verdicts to be considered by the jury.

(21)    The possibilities of settling this case are being considered by the parties.

(22)    A jury of twelve will be selected and all jurors shall participate in the verdict unless excused from service by the court.

**BY THE COURT:   Each side shall have 3 peremptory challenges.    Plaintiffs collectively get 3, and Defendant gets 3.**

**BY THE COURT:  Proposed voir dire questions and a jointly proposed supplemental juror questionnaire shall be provided to the Court by October 2, 2023.**

(23)    The parties are notified that if this action is settled after jurors have been summoned and it is too late to notify jurors that it is no longer necessary for them to report for jury service, the cost of compensating those jurors who report for jury service unnecessarily shall be taxed as costs upon the parties, as the Court determines appropriate.

(24)    Other matters:

<u>Time Limitations at Trial</u>

Defendant requests that the court set hourly time limitations on the parties for each side to conduct voir dire, opening statements, witness testimony, and closing argument in order to ensure that the parties present an efficient and streamlined case.

Plaintiffs object to Defendant's request to impose unspecified and arbitrary time limits on trial proceedings.  Plaintiffs defer to the Court's discretion on how to direct the trial and to impose time limitations as needed if either side is not presenting their case efficiently

**BY THE COURT: The Court addressed this issue at the pretrial conference; please see transcript for details.  Each side shall have 30 minutes for opening statements, but the Court does not at this time impose any additional specific time limits.  The Court expects counsel to try this case efficiently without duplication or wasting time.   When the Court's expectations are not met, counsel will be properly notified.**

Trial Exhibit Objections Other Than Authenticity and Improper Disclosure

Plaintiffs understand the Court's Order (ECF No. 303) to displace the disclosure requirements and corresponding deadlines set in Rule 26(a)(3). Defendant advised Plaintiffs that it disagrees, but when Plaintiffs asked, Defendant did not specify the date it believes objections under Rule 26(a)(3)(B) are due under the rule. In light of this confusion, Plaintiffs are planning to request clarity from the Court during the pretrial conference about whether the parties have any remaining obligations under Rule 26(a)(3).

Defendant further advises that it intends to submit objections to Plaintiffs' proposed trial exhibits other than authenticity and improper disclosure (the deadlines for which are set by the Order Setting Pretrial Conference, Dkt. 303 at 6) within the timeline set by Fed. R. Civ. P. 26(a)(3)(B) (i.e., within 14 days after the Rule 26(a)(3)(A) deadline for submission of the parties' pretrial disclosures). Plaintiffs have informed Defendant that it is their position that Rule 26(a)(3) does not apply, but Defendants reserve the right to oppose any objections Plaintiffs make to Defendants' exhibits at trial that are not timely submitted pursuant to Rule 26(a)(3)(B).

18

**BY THE COURT: The Court addressed this issue at the pretrial conference; please see transcript for details.**

Date: August 23, 2023                                    Respectfully submitted,

/s/ Meredith B. Stewart
Meredith B. Stewart*
SOUTHERN POVERTY LAW CENTER
201 Saint Charles Avenue, Suite 2000
New Orleans, LA 70170
Telephone: (504) 486-8982
Facsimile: (504) 486-8947
meredith.stewart@splcenter.org

Rebecca M. Cassler (GA Bar No. 487886)
SOUTHERN POVERTY LAW CENTER
1101 17th Street, NW, Ste. 705
Washington, DC 20036
Telephone: (404) 521-6700
Facsimile: (877) 349-7039
rebecca.cassler@splcenter.org

Sharada Jambulapati (GA Bar No. 413477)
Sarah M. Rich (GA Bar No. 281985)*
SOUTHERN POVERTY LAW CENTER
150 East Ponce de Leon Avenue
Suite 340
Decatur, GA 30030
Telephone: (404) 521-6700
sharada.jambulapati@splcenter.org
sarah.rich@splcenter.org

Alan B. Howard*
Emily B. Cooper*
PERKINS COIE LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711
Telephone: (212) 262-6900
Facsimile: (212) 977-1649
AHoward@perkinscoie.com
ECooper@perkinscoie.com

Jessica L. Everett-Garcia*
John H. Gray*

/s/ Jacob B. Lee
Jacob B. Lee
STRUCK LOVE BOJANOWSKI
&ACEDO, PLC
3100 West Ray Road
Ste. 300
Chandler, Arizona 85226
Tel.: (480) 420-1600
Daniel P. Struck
STRUCK LOVE BOJANOWSKI
&ACEDO, PLC
3100 West Ray Road
Ste. 300
Chandler, Arizona 85226
Tel.: (480) 420-1600

Jacob D. Massee
OLIVER MANER LLP
218 W. State Street
Savannah, GA 31401
Tel.: (912) 236-3311

Amelia C. Stevens
OLIVER MANER LLP
218 W. State Street
Savannah, GA 31401
Tel.: (912) 236-3311

PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone: (602) 351-8000
Facsimile: (602) 648-7000
jeverettgarcia@perkinscoie.com
jhgray@perkinscoie.com

Jessica Tseng Hasen*
Christian W. Marcelo*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-3293
Facsimile: (206) 359-9000
jhasen@perkinscoie.com
cmarcelo@perkinscoie.com

Gwyn P. Newsom (GA Bar No. 541450)
GWYN NEWSOM LAW, LLC
P.O. Box 629
Columbus, GA
Telephone: (706) 324-4900
gwyn@gnewsomlaw.com

Azadeh Shahshahani (GA Bar No. 509008)
Priyanka Bhatt (GA Bar No. 307315)
PROJECT SOUTH
9 Gammon Avenue SE
Atlanta, GA 30315
Telephone: (404) 622-0602
Facsimile: (404) 622-4137
azadeh@projectsouth.org
priyanka@projectsouth.org
*Attorneys for Plaintiffs*
*Admitted pro hac vice

*** ORDER ***

It is hereby ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and supersedes the pleadings which may not be further amended except by order of the court to prevent manifest injustice.

This  1st  day of September, 2023.

S/Clay D. Land

CLAY D. LAND
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF GEORGIA